

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

February 6, 2017

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com



LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:  Policyholder: LESTER E COX MEDICAL CENTER
Policy Number: 00001015732600000
Claim Number: 1130226196
Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 11/24/2015. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

*TOTAL DISABILITY* or *TOTALLY DISABLED* will be defined as follows:
1. *During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.*
2. *After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.*
*The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.*

*OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.*

©2017 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

This policy has a 24 month Own Occupation Period which ended on 11/24/2015. In order to be considered Totally Disabled beyond this date, the medical evidence must support that your client would be unable to perform each of the main duties of any occupation for which your client is qualified. As such, in considering your client's eligibility for Long Term Disability benefits beyond 11/24/2015, we evaluated whether your client would be restricted or limited from performing the main duties of any occupation for which your client is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 11/24/2015 forward, which will be the focus of our determination.

## Summary of Initial Claim Filing

As you know your client's claim was originally approved to 11/24/2015 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 11/24/2015, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation including consultation with Dr. Meghana C. Karande, an independent physician who is Board Certified in Physical Medicine and Rehabilitation. For complete details please refer to our letter dated September 28, 2015. The decision in part noted the following.

> "… restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted."

## Summary of First Level of Appeal

On 2/3/2016, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your appeal.

Our review of the medical documentation which included consultation with Dr. Joseph G Thomas, an independent physician who is Board Certified in Occupational Medicine, did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 11/24/2015. For complete details please refer to our letter dated April 26, 2016. The decision in part noted the following.

> The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.
> - Per the FCE, the claimant could lift up to 7 pounds occasionally.
> - She could perform frequent sitting with 20 minutes of continuous sitting.
> - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> - She could perform occasional bending and stooping.

- *She could perform frequent reaching and fingering.*

  *… However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward.*

## Summary of Second Level of Appeal

On 10/21/2016, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your appeal.

An evaluation with Dr. Hopewell was done on October 22, 2014 for lumbar spondylosis, post laminectomy lumbar syndrome and lumbar spondylolisthesis all occurring in the setting of mixed connective tissue disease.

In a consult note dated December 7, 2015 with Dr. Mace for low back and leg pain, it was noted the imaging showed what appeared to be a good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at that time.

Records form Dr. Hopewell indicated that your client was seen on January 20, 2015 and noted the neuro exam was normal.

On April 16, 2015, your client was seen at Dr. Hopewell's office and your client reported having another flare of low back and bilateral leg pain. It was noted you were having personal stress.

Your client underwent a lumbar spine MR on October 15, 2015.

In the record from Dr. Newbold dated December 1, 2015 for chronic low back pain, GERN, anxiety, depression. Your client stated he was doing well except for recurring episodes of urticarial (rash). He stated his anxiety and depression were well controlled on oral mediciatons for the most part.

An evaluation with Dr. Hopewell was done on December 9, 2015 and she was seen to discuss the denial of disability which seemed to center around your client's physical exams being normal and fluctuation of pain levels. The provider noted normal physical exams were common in spine based pain issues and she felt overall the pain was doing well on current meds without complications.

In a consult note dated January 28, 2016 the exam was normal, with no focal motor/sensory deficits.

Records from Dr. Hopewell indicated that your client was seen on February 29, 2016 for chronic low back and bilateral leg pain that your client reported was reasonably stable overall.

On June 16, 2016, your client was seen at Dr. Winkler's office as a follow up for undifferentiated connective tissue disease (UCTD). The exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling.

The record from Dr. Winkler dated September 1, 2016 reported your client felt better with a steroid course that lasted for 1-2 months and pain meds were helping and at times he was hurting all over with swelling of hands/fingers that reportedly would occur about twice per month. He denied feeling depressed and was still not sleeping well due to pain radiating to right thigh. The exam noted no documented focal motor, sensory, cognitive, neurological deficits on exam.

Records from Dr. Kokoszka and Dr. Tonkin indicated that your client was seen from October 5, 2016 to October 31, 2016 for issues with ADL's due to pain with significant issues driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs and sexual functions. The exam noted no deformities, edema, cyanosis, atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. It was suggested you client have interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage and physical therapy.

## Second Level Appeal Decision

Our review of the medical documentation, which included consultation with a health care consultant, did not support that your client was Totally Disabled beyond 11/24/2015. We therefore find that your client is no longer Totally Disabled under the terms of our policy.

A full review of the file found on exam no documentation of any focal motor weakness, sensory loss, cognitive or memory deficits and no gait issues. Your client had a history of "HTN", "GERD", depression and pain. Overall, the provider noted been to be well controlled on a steady med regimen. Your client had full range of motion all extremities with intact sensation throughout and normal gait without use of assistive device. We found no clinical findings noted in the file demonstrating any functional limitation that would support your client was unable to perform duties of any sedentary occupation.

The review concluded there is no functional impairment from your client performing any occupation as of November 24, 2015. The review did not support any functional limitations/impairment that would preclude your clients ability to perform duties of any sedentary occupation. Would have the ability to lift/carry up to 10 pounds occasionally, ability to sit up to total of 6 hours per 8 hour workday and continuously for 20 minutes at a time, can stand or walk for up to a total of 2 hours per 8 hour work day with position changes as needed for comfort. Your client can fingering, handling, reach, grip, keyboard, type, interact with co-workers, problem solve as needed on a full time basis as of November 24, 2015 and forward. The medical records and other file documentation do not support the payment of additional benefits.

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following sedentary occupations:

| DOT# | Occupation | Wage (mean) |
|---|---|---|
| 075.127-014 | Nurse, Consultant | $5,347.00/mo |
| *075.374-916 | Call Center Nurse | $5,481.00/mo |
| *eDOT code | | |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

On appeal the medical review done clearly outlined restriction and limitation that would fall in line with sedentary work and thus the prior Transferable Skills Analysis would still be valid.

We are aware that your client has qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our policy provisions and review processes are independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and independent information received by the SSA. The claim decision made under your client's Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim by clinical staff.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. Your client has the right to pursue litigation and your client may request copies of the pertinent documents.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Joseph Jackson
800-423-2765 *7735
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company

00000018 LF5994M1