# LTD CLAIM PROFILE

**Date:** 8/21/2017 | **LFG** | **Claim #:** 1130226196

| | | |
|---|---|---|
| **Insurer:** The Lincoln National Life Insurance Company | **Posted:** 11/15/2013 | **Location:** HOME |
| **Policy:** 00001015732600000 - | **Status:** EXTENDED | **User ID:** LAW |
| Lester E. Cox Medical Center | **Business:** TRUE LTD | |

## Claimant Information

| | | |
|---|---|---|
| **Name:** JAMIE FLANAGAN | **Phone:** (417)459-5879 | **DOB:** ▇▇▇▇ |
| **SSN:** ▇▇▇▇ | **Sex:** F | **Hire:** 3/1/2010 |
| **Address:** 1625 MUSKY DME DRIVE | **Ins Eff:** 5/1/2013 | **Class:** 3 |
| CRANE MO 65633 USA | **Occ:** NURSE PRACTITIONER (med ser.) | **DOT:** alt75264010 s: |
| | **Salary:** $7,503.60 | **Period:** Monthly |

## Claim Information

**Special Provisions:**   **Min Ben:** $675.32

**Ben:** 60% / 0%    **A/S:** 0%    **Age:** 33    **Elim Per:** 90 day

**DLW:** 8/25/2013    **DOD:** 8/26/2013    **S/A:** S    **W/R:** N    **Ben Amt:** $4,502.16

**Max Duration:** RBDSS    **Res ID:** NONE

**Diagnosis  Pri:** 722.83  Postlaminectomy Syndrome Lumbar Region    **Limits:**

**Sec:** 724.02  Spinal Stenosis Lumbar Region    **Prognosis:**

**Recovery Date:** 4/3/2047

## Benefit Information

| | | |
|---|---|---|
| **Date Ben Begin:** 11/24/2013 | **Months Paid:** 24 | **Actual Age:** 33 |
| **Modal:** $4,502.16 | **Reins:** $0.00 | **Reserve:** $0.00 |

## Policy Information

**M/N Limits:** Y    **Drug Limits:** Y    **Pension Sup:** N    **Own Occ:** 24 Mos

**SS Offset:** Primary & Family    **Prex:**

**COLA:** NONE

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| SS EMP | PROCESSED | 2/1/2014 | | $2,289.00 | $2,289.00 |
| SS DEPT | PROCESSED | 2/1/2014 | 7/1/2023 | $1,144.00 | $1,144.00 |
| Fam Care | PENDNG | 11/24/2013 | | $250.00 | |
| PIB | PENDNG | 11/24/2013 | | $0.00 | |
| FED TX | PROCESSED | 11/24/2013 | | $100.00 | |

## Dependent Information

| Type | DOB | Name |
|---|---|---|
| Spouse | 10/5/1973 | Jason |
| Child | ▇▇▇▇ | ▇▇▇▇ |
| Child | ▇▇▇▇ | ▇▇▇▇ |

**LTD CLAIM PROFILE**

**Date:** 8/21/2017　　　　　　**LFG**　　　　　　**Claim #:**　1130226196

---

**Alert Information**

| Status | Level | Description | Posted | Resolved |
|--------|-------|-------------|--------|----------|
| T | W | INSURED LESS THAN SIX MONTHS | 11/19/2013 | 11/21/2013 |
| T | W | REHAB PROFILE | 11/18/2013 | 11/21/2013 |
| T | W | FAMILY CARE EXPENSE RIDER EXISTS | 11/18/2013 | 11/21/2013 |

---

**Action Plan**

***********************ATTORNEY REPRESENTATION - 2/18/2013*******************
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735
***********************************************************************************************

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension.  tme

6/20/14 Releasing initial benefit.  J2D

6/20/14-recd email w/salary info,  ee makes $43.29 for 80 hrs biweekly,  $43.29 x 2080 = $90,004.32 / 12 = $7,503.60.  will release benefits.tme

6/20/14-to er for salary info.  tme

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme
6/17/14-phone call to attorney
left mess, getting ready to release benefits, do we pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement.  left direct number.  tme
6/17/14 to er to verfiy if ee receiving pension. tme

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  Per peer review, ee had r & ls that would prevent her from performing her OO.  PATH: reqst voc survery and review to determine if ee would have ability to work sed w/r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling.  J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City.  Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review  R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would

2

LIN002

## LTD CLAIM PROFILE

**Date:** 8/21/2017           **LFG**           **Claim #:** 1130226196

be unrestricted." Based on all medical information received for review, the claimant would have restrictions and limitations precluding full time work in her own light occupation. . Therefore, I am overturning own occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review. R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H

5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review. R2H

5-21-14 Scheduled 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review, as long as we recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and will begin review. R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's work status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H

5/13/14 Assigned 1st level appeal to R2H. c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
  SSS receipt of NOA dated 4/14/14 from EE
date of entitlement = 2/1/14
amount of the award =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro award = $3433.50
claimant has not enrolled in CORS,

3

**LTD CLAIM PROFILE**

**Date:** 8/21/2017        **LFG**        **Claim #:** 1130226196

---

Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXM

4/28/14 recvd mail from Atty - EE has been awarded SSD. Set flup to SSA to review award details. SSD starts 02/2014 in amt of $2289.00. There will be no ovp on the claim. LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE with respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I will send him a copy of the file. LML

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She will appeal. LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13 Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes buprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

Initial Claims Summary

## LTD CLAIM PROFILE

**Date:** 8/21/2017        **LFG**        **Claim #:** 1130226196

---

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FNDNG: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FNANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML***************************************

11/19/13 Nurse Practicioner - Light Occ. We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG

LIN005

# Chronological Activity List

| | | | |
|---|---|---|---|
| **Claimant:** | JAMIE FLANAGAN | **Occupation:** | NURSE PRACTITIONER (medical ser.) alternate titles: |
| **SSN:** | ▮▮▮▮▮ | **DOB:** ▮▮▮▮ | **Posted:** 11/15/2013 **Months Dis:** 47 |
| **Claim #:** | 1130226196 | **DOD:** 8/26/2013 | **Ben:** $4,502.16 **Months Pd:** 24 |
| **Coverage:** | LTD | **Status:** EXTENDED | **Assignee:** LAW |
| **Policy Holder:** | Lester E. Cox Medical Center | | **Deceased:** |
| **Case Mgr. Status:** | INV 9/19/2014 | | |

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Action Plan

***********************ATTORNEY REPRESENTATION - 2/18/2013*****************LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee ATTN RICK VASQUEZ1736 EAST SUNSHINESUITE 103SPRINGFIELD MO 65804PHONE (417) 889-7735******************************************************************************7/14/14-phone callper call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme 7/7/14 per email from er, ee not receiving her pension. tme 6/20/14 Releasing initial benefit. J2D6/20/14-recd email w/salary info, ee makes $43.29 for 80 hrs biw eekly, $43.29 x 2080 = $90,004.32 / 12 = $7,503.60. w ill release benefits.tme 6/20/14- to er for salary info. tm e6/18/14-phone callPer call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme6/17/14-phone call to attorneyleft mess, getting ready to release benefits, do w e pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement. left direct number. tme 6/17/14 to er to verfiy if ee receiving pension. tm e6/17/14-DIRECTIONEE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. Per peer review , ee had r & ls that w ould prevent her from performing her OO. PATH: reqst voc survery and review to determine if ee w ould have ability to w ork sed w/r & ls that are permanent. poss voc stlmnt tme 6/17/14 Claim assigned to TME for further handling. J2D6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City. Appeal OT assigned to J2D. TCC 6/16/14 Appeal OVERTURNED: Peer Review R2H6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file w as sent for a review w ith an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted." Based on all medical information received for review , the claimant w ould have restrictions and limitations precluding full time w ork in her ow n light occupation. . Therefore, I am overturning ow n occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H6/16/14 DRO - DECISION REVIEW - REVIEWED CLA M AND AGREE WITH RECOMMENDATION TO OT 6-12-14 Scheduled Mgr review . R2H6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review . R2H5-22-14 Referred for file scan. Once completed, w ill place med review into VOC coordinator initials to send for Physiatry peer review . R2H5-21-14 Scheduled 5/21/14 appeal direction. R2H5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H5/14/14 Pending Reason: Medical Records R2H5-14-14 Pending Rationale: - 1st level of Appeal- Additional Information Appeal? Yes- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.Recvd 4/14/14 SSDI aw ard letter.Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.- Reason(s) for AppealRecvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.- Summary Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.- Pending Reason and Next StepsPending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H5/13/14 Assigned 1st level appeal to R2H. c1g5/13/14 Level of Appeal: 1st Level Appeal NEW4/28/14- SSDI AWARD SSS receipt of NOA

8/21/2017

1

dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXM4/28/14 recvd mail from Atty - EE has been awarded SSD. Set flup to SSA to review award details. SSD starts 02/2014 in amt of $2289.00. There will be no ovp on the claim. LML1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE with respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I will send him a copy of the file. LML12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She will appeal. LML12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML11/26/13 Medical review completed. KMF RN BSN11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML 11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML Initial Claims SummaryDATE: 11/19/13RATIONALE/DIRECTION: Pending REASON: Sending for a full med review for R/L's from a Light occ based on info in fileEXPECTED RETURN TO WORK DATE: N/ACOMMENTS: per APS no RTW to be expectedDIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbarSUBJECTIVE FINDING: low back pain spread into Lower extremitiesOBJECTIVE FNDNG: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarringMEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013TX: pain medications, lumbar braceDOCTOR: Dr. Donald Hopewell Neurology and PainMEMBER IS ELIGIBLE: YesCOMMENTS: Self Billed, 100% ER Paid NATL ACCTPOLICY INFORMATION: VerifiedCOMMENTS: Reviewed DOCS, ARDIS, Policy, Claim FromsPRE-X INVESTIGATION: Plan has pre-ex & invest is neededCOMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER INITIAL CALL. Will also confirm Pension info.CLAIM INFORMATION: VerifiedCOMMENTS: Reviewed DOCS, ARDIS, Policy, Claim FromsFNANCIAL OFFSETS: VerifiedCOMMENTS: No offsets currentlyINL: LML****************************************11/19/13 Nurse Practicioner - Light Occ. We have all claims forms - claim is now INITIAL. EE wants $100 taken out for FIT. 11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG

| | | | | |
|---|---|---|---|---|
| 2/21/2017 3:20:48 PM | Claim Tasks | 39 | Paper File | Requested | SARCH6 |

Please prepare a full file copy. Include Claim number/numbers LTD 1130226196 and WOP 1140128972. As a

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 7 of 550    LHN007

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

reminder, the file copy should include all documents within the administrative claim file including the policy and/or the certificate that was effective on the Date of Disability, all AWD or paper documents, activity lists, phone notes, etc. support staff can send the file copy letter out. - JDJACKS - Feb 21, 2017 03:22:29 pm

Copy has been prepared, it is in the CSS Folder/Claim File Scans Folder as:

J FLANAGAN 1130226196 - 1140128972  2-27-17

Please review , advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.
 - SARCH6 - Feb 27, 2017 02:02:18 pm

**Remove blank pages 139, 141 - once done would appear ok to send copy out. Thank you*** - JDJACKS - Feb 28, 2017 10:29:01 am


Created and mailed CD (secure) with instructions to attorney. - SARCH6 - Mar 01, 2017 02:37:35 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/1/2017 | Claim Tasks | 39 | Paper File | Completed | SARCH6 |

Please prepare a full file copy. Include Claim number/numbers LTD 1130226196 and WOP 1140128972. As a reminder, the file copy should include all documents within the administrative claim file including the policy and/or the certificate that was effective on the Date of Disability, all AWD or paper documents, activity lists, phone notes, etc. support staff can send the file copy letter out. - JDJACKS - Feb 21, 2017 03:22:29 pm

Copy has been prepared, it is in the CSS Folder/Claim File Scans Folder as:

J FLANAGAN 1130226196 - 1140128972  2-27-17

Please review , advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.
 - SARCH6 - Feb 27, 2017 02:02:18 pm

**Remove blank pages 139, 141 - once done would appear ok to send copy out. Thank you*** - JDJACKS - Feb 28, 2017 10:29:01 am


Created and mailed CD (secure) with instructions to attorney. - SARCH6 - Mar 01, 2017 02:37:35 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/27/2017 | Documents/Mail | 102 | Atty Ltr with Copy of Claim File | Completed | SARCH6 |

Atty Ltr with Copy of Claim File

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/22/2017 | Documents/Mail | 101 | Incoming Correspondence | Completed | JDJACKS |

2017-02-22-08.27.33.535400O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/17/2017 2:19:58 PM | Documents/Mail | 100 | Incoming Correspondence | Received | JDJACKS |

2017-02-17-10.45.55.650320O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/21/2017 | Documents/Mail | 100 | Incoming Correspondence | Completed | JDJACKS |

2017-02-17-10.45.55.650320O01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/7/2017 | Summary/Assessment/Path | 6 | Appeal Decision SAP - JDJACKS - Feb 07, 2017 10:04:10 am | Completed | JDJACKS |


Summary Notes
Appeal Decision SAP - JDJACKS - Feb 07, 2017 10:04:10 am
Assessment Notes
see path notes - JDJACKS - Feb 07, 2017 10:04:10 am
Path Notes
PATH UPHOLD

- Demographics - ---   the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Initial Claim Decision Sept 28, 2015 - Dr. Meghana C. Karande, an independent physician w ho is Board Certified in Physical Medicine and Rehabilitation
"May stand/w alk up to 2 hours each per 8 hour day w ith normal breaks. Sit up 6 out of 8. Lift, push, carry, pull up 20 pounds occasionally and 10 pounds frequently.

1st lvl appeal Decision April 26, 2016 - Dr. Joseph G Thomas, an independent physician w ho is Board Certified in Occupational Medicine
"Peer agreement w ith abilities form from Dr Hopew ell of April 21, 2015 w ith the exception of lifting.
"Peer FCE lift up 8 pounds occasionally, frequent sitting w ith 20 minutes of continuous sitting. Occasionally standing/w alking w ith 10 minutes of continuous standing or w alking

Add Summary:

Appeal Decision SAP info w as rcvd on appeal - Case sent to a NDC for review .

"On exam no documentation of any focal motor w eakness, sensory loss, cognitive or memory deficits and no gait issues.
"History of "HTN", "GERD" and "depression" and "pain" but overall providers noted clmts has been w ell controlled on steady med regiment.
"Full ROM all extremities w ith intact sensation thru out and normal gait w /o using an assistive device.
"No clinical findings noted demonstrating any functional limitation that w ould support clmt w ould be unable to perform duties of any sedentary occupation as Nov 24, 2015.
"The records and other file documentation do not support the payment of addiotnal benefits.
"On appeal medical review  clearly outlined R&L that w ould fall in line w ith sed w ork - thru the prior TSA w ould still be valid.

Final Determination - Review ed w ith tjsva7, cxgeary, and AE. Proceed w ith uphold. See review  tab and clinical review  for details.  - MASCHAA - Feb 06, 2017 02:37:44 pm

PATH letter sent, call made - appeal closed - see AWD and DOCSNET for all the details.
 - JDJACKS - Feb 07, 2017 10:04:10 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/24/2016 9:20:45 AM | Appeal | 3 | Level 2 | New | JDJACKS |
| 2/7/2017 | Appeal | 3 | Level 2 | Closed | JDJACKS |
| 2/2/2017 3:02:50 PM | Documents/Mail | 99 | Appeal Any Occ Level 2 Uphold Atty | Work In Progress | JDJACKS |
| 2/7/2017 | Documents/Mail | 99 | Appeal Any Occ Level 2 Uphold Atty | Completed | JDJACKS |
| 2/7/2017 | Telephone (OUT) | 46 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

Appeal Any Occ Level 2 Uphold Atty

Appeal Any Occ Level 2 Uphold Atty

OUTGOING call the phone rang spoke w ith office staff w hom stated atty w as unable to take the call. Spoke w ith office staff w ent over out of the appeal w ith her and did confirm letter w ill be sent via the USPS - JDJACKS - Feb 07, 2017 10:06:32 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 3:21:20 PM | Summary/Assessment/Path | 25 | Appeal PENDING rationale 2nd lvl - JDJACKS - Oct 28, 2016 | Requested | JDJACKS |

Summary Notes
Appeal PENDNG rationale 2nd lvl - JDJACKS - Oct 28, 2016 03:22:32 pm
Assessment Notes
see path notes - JDJACKS - Oct 28, 2016 03:22:32 pm
Path Notes
Date Appeal Received: Oct 21, 2016
45th Day: Dec 5, 2016
90th Day: Jan 19, 2017

Claimant Name:  Jamie Flanagan
Claim Number:   LTD 1130226196
Group ID:  LESTERECOX

- Demographics - ---   the clmt is a 36 year old nurse practitioner w hich is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis,

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047
Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found. No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ TSA Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting with 20 minutes of continuous sitting.      - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.      - She could perform occasional bending and stooping      - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015 Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently finger, handle, reach above the shoulder - sit 20 min duration

MRI - Oct 2015 - Lumbar w/o contrast -

## Chronological Activity List

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 - Nancy Beissw enger OTR/L
"Low er extremity strength w as 5/5 - could perform occasional sitting and occasional w alking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and w hen benefits w ill be reinstituted. Feels the prior peer review w as for less than sedentary w ork

Information Submitted w ith appeal
"Voc eval from Phil Eldre

Pending Reason
"Ack letter dated oct 28, 2016 gave to Nov 11, 2016
 - JDJACKS - Oct 28, 2016 03:22:32 pm

***Spoke w ith attys office and w ill give them until Nov 28, 2016 to send in records*** - JDJACKS - Oct 28, 2016 03:49:07 pm

***rcvd medical records - call out to atty LM, w ill try again prior to doing anything else w ith the appeal case*** - JDJACKS - Nov 28, 2016 10:09:44 am

****INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he w ill need a few more w eeks - stated/did ask he send in a letter asking for more time -- check case in a few to see if atty sends in letter** - JDJACKS - Nov 28, 2016 10:42:22 am

***UPDATED PATH rcvd letter from atty w ith records and asking for more time w ill give until Jan 7, 2017 to send in records*** - JDJACKS - Dec 07, 2016 10:18:16 am

****UPDATED PATH rcvd record w ill get case ready for AD then review *** - JDJACKS - Jan 13, 2017 07:20:37 am

***UPDATED PATH rcvd NDC review proceeding w ith decision SEE decision SAP once I am able to make decision*** - JDJACKS - Feb 02, 2017 03:00:32 pm

2/6/2017   Summary/Assessment/Path   Appeal PENDING rationale 2nd lvl - JDJACKS - Oct 28, 2016   Completed   JDJACKS

Summary Notes
Appeal PEND NG rationale 2nd lvl - JDJACKS - Oct 28, 2016 03:22:32 pm
Assessment Notes
see path notes - JDJACKS - Oct 28, 2016 03:22:32 pm
Path Notes
Date Appeal Received: Oct 21, 2016
45th Day: Dec 5, 2016
90th Day: Jan 19, 2017

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner w hich is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013

## Chronological Activity List

EP:  90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date:  Nov 24, 2015
Max Duration Date:  April 2047
Occupation:  Nurse Practitioner -  Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial:  CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande

orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination:  AS - based on the below review sent for TSA and gainful occ found.  No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o  - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting with 20 minutes of continuous sitting.      - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.      - She could perform occasional bending and stooping      - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

MRI - Oct 2015 -  Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 -  Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed

Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre

Pending Reason
"Ack letter dated oct 28, 2016 gave to Nov 11, 2016
 - JDJACKS - Oct 28, 2016 03:22:32 pm

***Spoke with attys office and will give them until Nov 28, 2016 to send in records*** - JDJACKS - Oct 28, 2016 03:49:07 pm

***rcvd medical records - call out to atty LM, will try again prior to doing anything else with the appeal case*** - JDJACKS - Nov 28, 2016 10:09:44 am

****INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he will need a few more weeks - stated/did ask he send in a letter asking for more time -- check case in a few to see if atty sends in letter** - JDJACKS - Nov 28, 2016 10:42:22 am

***UPDATED PATH rcvd letter from atty with records and asking for more time will give until Jan 7, 2017 to send in records*** - JDJACKS - Dec 07, 2016 10:18:16 am

****UPDATED PATH rcvd record will get case ready for AD then review *** - JDJACKS - Jan 13, 2017 07:20:37 am

***UPDATED PATH rcvd NDC review proceeding with decision SEE decision SAP once I am able to make decision*** - JDJACKS - Feb 02, 2017 03:00:32 pm

| 1/13/2017 10:48:35 AM | Referrals | 20413 Ongoing Claim Review | | Initial | JDJACKS |

NDC review

Claimant Name:  Jamie Flanagan
Claim Number:  LTD 1130226196
Group ID:  LESTERECOX

- Demographics - ---   the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP:  90 days
Benefit Commencement Date:  Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date:  Nov 24, 2015
Max Duration Date:  April 2047
Occupation:  Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse

**Chronological Activity List**

Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found.  No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o   - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting with 20 minutes of continuous sitting.      - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.      - She could perform occasional bending and stooping      - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"May 26, 2016 - was stable in terms of pain issues until the last few months. Felt this was more of a flare of connective tissue process rather than chronic neuropathic pain associated with back issues. Clmt states issues with hand swelling and hand joint swelling.
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Powell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low  back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016
"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 -  Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 -  Nancy Beisswenger OTR/L

8/21/2017                                                                                                                                    9

## Chronological Activity List

"Low er extremity strength w as 5/5 - could perform occasional sitting and occasional w alking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and w hen benefits w ill be reinstituted. Feels the prior peer review w as for less than sedentary w ork

Information Submitted w ith appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopew ell
"Crystal Pow el PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve New bold Nov 2015


 Questions

1.Please provide a review summary of the medical findings. Nov 24, 2015.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from Nov 24, 2015 and forw ard.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to w hich the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at w ith specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent w ith the medical findings? Please explain. - JDJACKS - Jan 13, 2017 10:50:03 am
Clinical Response Template

Claimant name:  Jamie Flanagan
Claim number:    LTD ap #1130226196
Date of Review :   01/27/17

Documents review ed: APS by Dr. Hopew ell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain, multiple pain management/family practice/neurosurgery fu exam visit notes from 09/19/12 through November 2016, 09/19/12 fu ov noe Dr. Mace for chronic low back pain noted clmt w as s/p L5-S1 PLIF, rheumatology fu exam notes from December 2015 through 09/01/16, November 2016 Voc rehab consult, labs/multiple imaging studies/diagnostic reports w ith dates ranging from 2010 through 2016.

APS by Dr. Hopew ell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain w ith MD noted failed fusion in 2011 and failed spinal column stimulator (date not given by MD) w ith restrictions/limitations (R&L's) stating "pain increased throughout the day/w eek and unable to control pain w ith medications, w ork w ith unlimited ability to rest/take breaks, estimated RTW stated never, and abilities portion of APS w as bracketed and stated "unqualifiable".

Conclusion:  Medical findings submitted in file did not support clmt had functional limitations/ impairment that w ould preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour w orkday and continuously for 20 min at a time, can stand or w alk up to total of 2 hours /8 hour w orkday allow ing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting w ith cow orkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forw ard ongoing.

Rationale w ith supportive medical findings: 36yr/M nurse practitioner (light occ) w ith DOD 08/26/13 due to severe low back/leg pain, post laminectomy syndrome, spinal stenosis, chronic low back pain/lumbar spondylosis, and autoimmune disease w ith noted BCD of 11/24/13 and benefit approved to COD dated 11/24/15.  PMH included L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain.

09/19/12 fu ov note Dr. Mace for chronic low back pain noted clmt w as s/p L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain and bilateral leg pain, burning sensation in toes/heels all have been w orsening, symptoms improved some w ith w earing lumbar brace.  The clmt denied any leg w eakness, bow el/

bladder dysfunctions, and has neck pain that radiates to Lt shoulder. MD exam noted normal muscle strength/tone/ROM throughout, normal gait without mention of any assistive device used to ambulate, and intact sensation throughout. MD stated cervical MRI showed Lt C5-6 disc herniation (date of study not given in MD note), and stated lumbar CT scan showed confluent bone at L5-S1 cage/screws looked fine, and progressive endplate sclerosis. MD stated to try PT for neck pain with traction and will consider surgical intervention with ACDF or maybe spinal stimulator if no better. MD stated history of L%-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 S1 radicular symptoms that are quite problematic, to check myelogram and consider re-exploration-MD ordered cervical and lumbar CT myelogam, PT, and fu after testing.

12/28/12 MRI of lumbar spine showed postsurgical changes posterior interbody fusion at L5-S1 secondary to pars defects at L5 and grade 2 spondylolisthesis. There is extensive evidence of postoperative fibrosis in the posterior operative bed extending along the Rt and Lt lateral margins of the thecal sac and extending anteriorly on the Lt to involve the S1 nerve root. The central canal was noted to be patent and thoracic spine MRI was normal. Cervical MRI same date showed prior changes posterior lumbar interbody fusion at L5-S1 secondary to pars defect, stable anterolisthesis compared to remote studies, more extensive endplate sclerosis noted, and persistent lucency around the bone cage as well as some increased erosion of the posterior aspect of the L5 vertebral body could represent evidence of disc space instability. Anterior epidural soft tissue at the operative level suggesting an extensive postoperative fibrosis and MR scan with contrast is suggested as fu. Cervical/lumbar myelogram showed remote cervical changes posterior lumbar fusion L5-S1 with stable spondylolisthesis of L5-S1 unchanged from October 2011.

08/15/13 fy ov note Dr. Cornelison for evaluation for spinal column stimulator for severe low back/leg pain (postolateral legs and noted symptoms have been present since August 2010 with no injury as cause) and s/p lumbar fusion L5-S1 in April 2011. Currently followed by Dr. Hopewell for pain management and Dr.Cornelison for injection therapy and has MD exam findings pain/numbness bilateral posterior lateral legs, increasing pain with any position for prolonged period. MD exam stated palpation tenderness over lumbosacral spine, increased low back pain with spine extension/axial loading/lateral side bending of lumbar spine reproduces pain, deep tendon reflexes symmetrical and 2+ throughout, straight leg raising on Rt equivocal. MD stated most of clmt's pain is in both legs and clmt suffering from significant epidural fibrosis in old surgical area and is on high doses of narcotic pain medications. MD stated at this time recommends spinal column stimulator and noted clmt to proceed with dual lead spinal column stimulator trial per MD note.

09/19/13 fu Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome stated clmt feeling has weakness in legs but MD stated no true motor deficits, and stated this is a sensation and not a motor problem. Pain is reported to be worse with prolonged position but comfortable in chair, seeking insurance approval for spinal stimulator trial. MD noted neurological exam was normal and fu in 3 months with continuation of same regimen.

11/18/13 EMG/NCS showed abnormal study- conduction studies noted within normal limits but showed evidence of lumbosacral radiculopathy predominently affecting the Rt L5-S1 nerve root.

10/31/16 fu with Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome noted clmt requested spinal cord stimulator-MD stated clmt received no benefit from trial per MD note.

04/23/14 functional capacity evaluation was performed on 04/22/14 and validity criterion she passed indicated she gave maximum voluntary effort and results are as follows: upper/lower extremity ROM and strength were within normal limits 5/5 including pronation/supination and no cardiovascular compromise was noted. Hip abduction ROM within normal limits but with pain at end of range bilaterally Rt> Lt and strength 5-/5 bilateral hips abduction, and 4+/5 for Rt plantar flexion, cervical ROM within normal limits with pain posterior neck with flexion, and mild decrease sensation lateral calves but otherwise no focal deficits noted. MD concluded 7 b lifting restriction, sitting tolerance 20 min duration, occasional walking to very occasional, crawling/bending/working at heights not recommended, and work level was deemed to be less than sedentary functional level. The clmt is noted to have current pain medication regimen consisting of MS Contin 5 pills twice/day -?actual dose), Dilaudid 1-2 tabs up to 3-6 x day, Robaxin 1-2 tabs 3xday, Topamax 1 tab twice/day, and buprofen 800mg 3-4 x day in addition to PRN Xanax 0.5mg up to 4xday PRN, and Wellbutrin twice/day. The MD noted clmt takes Plaquenil 2 tabs at night for autoimmune disease. The clmt does not feel she can RTW as she was not able to work for prolonged times and would lie down between each patient and could not tolerate the positional changes or static position of prolonged sitting or standing.

06/09/14 peer physician review by Board Certified Physical Medicine/ Rehabilitation Medicine MD) concluded that although the clmt reported ongoing pain, exam were normal, and imaging showed minimal findings with some scarring of S1 nerve root but normal 5/5 muscle strength both upper/lower extremities, normal gait without use of assistive device, and concluded based on review of all records and noted discussion with treating MD that he

based R&L's on what clmt told him and was unable to provide peer MD with further information on clmt's R&L's. Peer opined appropriated R&L's would include: the clmt could walk/stand up to 2 hours /8 hour normal workday with normal breaks, may sit up to 6-8 hours/8 hour workday, would require position changes as needed or for 5 min every hour as needed, may lift/carry/push/pull up to 20lbs occasionally/10lbs frequently, reaching in all directions okay, occasional climb stairs/kneel/bend/stoop/squat/ and crouch, and never climb robes/ladders/ scaffolds/or crawl, and unrestricted ability to handle/finger/feel objects as needed-R&L's apply from 11/24/13 forward and would be likely be permanent. Peer stated treating providers including Dr. Hopewell exams revealed no neurological deficits, and MD does not quantify her pain at each visit by using measurable scales and admitted on phone to peer his opinions/R&L's were based largely on reported symptoms by clmt rather than on clinical examination findings and/or diagnostic findings and R&L's of no work were not consistent with the documented medical findings.

10/22/14 fu ov note by Dr. Hopewell for lumbar spondylosis, post laminectomy lumbar syndrome, and lumbar spondylolisthesis all occurring in setting of mixed connective tissue disease. MD stated over past few weeks lumbar pain is radiating down legs, more lateral aspect of Rt leg to heel, and occasionally to Lt side, no new weakness or sensory changes noted, and denied bowel or bladder dysfunction. The clmt stated she was off Plaquenil for about 3 weeks and has just restarted it and thinks may have contributed to pain flare, and noted she had been walking more than usual because they were looking at properties. The clmt stated pain definitely worse with prolonged standing more than if walking, and noticed she has to sit down if up on feet for 15 min, and sitting most comfortable but pain will worsen with prolonged sitting as well, no clear flare of joint symptoms, and next fu in 3 months. MD stated clmt reported recent rash with swelling of fingers/lips that resolved within 72 hours and stated was referring clmt to rheumatology for evaluation of skin issues recently.

12/07/15 rheumatology fu note by Dr. Mace for progressive low back and leg pain Rt> Lt stated clmt having increased low back and Rt leg pain, with Rt L5 type leg pains described as aching/burning pain, denies leg weakness or bladder issues. MD exam noted no joint pain or swelling and has fair ROM throughout, no palpation tenderness of spine, normal 5/5 muscle strength/tone/bulk with intact sensation to light touch throughout, able to heel-toe -tandem walk without difficulty. MD stated imaging showed what appears to be good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at this time, and noted clmt to try water exercises for core strengthening.

01/20/15 fu ov note by Dr. Hopewell for post lumbar laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis stated clmt's last flare of pain when last seen was significantly improved with short course of Dexamethasone, states clmt continues to do reasonably well with pain overall with slight increase pain with colder weather. The clmt reports occasional dysesthetic pain in lower extremities particularly in feet and mostly at night but reports no new motor or sensory/bowel or bladder complaints and no problems from medications. MD stated neurological exam remains normal, and noted trial of amitriptyline for neuropathy sensation in feet at night in past caused some reported daytime hypersomnolence that was tolerable so MD stated will try again to see if helps and fu in 3 months.

04/16/15 fu ov note Dr. Hopewell stated clmt having another flare of low back and bilateral leg pain Rt> Lt and dysesthesia symptoms in feet more frequently due to prolonged car rides and personal stress including loss of her father recently, remains neurologically intact, and needs to stop amitriptyline due to excessive daytime somnolence and to perform sleep study as well with next fu in 3 months.

04/21/15 abilities form by Dr. Hopewell stated clmt could lift/carry 0 weight at any time, could sit frequently at 20 min intervals, could stand/walk/drive/operate foot controls occasionally, frequently finger/handle/reach above shoulder level, and never climb/bend/kneel.

10/15/15 MR lumbar spine showed prior PLIF L5-S1 without complicating features, L4-5 facet joint arthropathy adn Lt extraforaminal zone disc protrusion with annular fissure, with contact with exiting Lt L4 nerve root. CT scan of lumbar spine showed expected postop PLIF changes L5-S1, degenerative disc disease and spondylosis L4-5 with facet joint arthropathy and disc bulge/protrusion Lt subarticular and extraforaminal zone. It was noted there is contact with the exiting Lt L4 nerve root but no definite impingement noted.

12/01/15 fu ov note by Dr. Newbold for chronic low back pain, GERD, anxiety, depression here for fu stated clmt is actually doing well except for recurring episodes of urticarial (rash) and angioedema, marked swelling of her kips and a couple of times also her throat, and stated rheumatologist gave he an epipen and noted she is not taking antihystamines presently, denies dysphagia, and stated her anxiety/depression is well controlled on oral medications for most part.

12/09/15 fu ov note by Dr. Hopewell stated clmt here to discuss her denial of disability which seemed to center around her physical exams being normal and fluctuations in her pain levels that had paralleled other physical

problems or stress related issues. MD stated normal physical exam are common in patients with spine based pain issues and there is always fluctuation of any chronic medical problems based on other physical and emotional stressors is not unusual. MD stated overall her pain is doing reasonably well on current medication regimen without complications and next fu to be in 3 months again.

01/28/16 pain management fu for chronic low back pain and UCTD stated clmt needs refill of epipen which she uses PRN for angioedema and skin reactions and was referred to allergist in past but does not wish to see allergist at this time, likely due to insurance issues, stated not taking antihystamines as they have not helped in past, no recent flare ups of symptoms, and continues multiple pain meds for chronic low back/leg pain and muscle relaxants s/p L5-S1 PLIF with Dr. Mace in April 2011. MD stated clmt is NP but not currently working and on disability due to her multiple medical health problems, although MD notes indicated GERD/anxiety and depression were all well controlled at this time on oral medications. MD exam findings noted no abnormal findings, no focal motor/sensory deficits, and noted epipen prescription was refilled.

02/29/16 fu ov note Dr. Hopewell for chronic low back and bilateral leg pain stated clmt is reasonably stable overall, does have some daytime somnolence and is not physically active, pain continues to be occasional radiation down posterior Rt leg> Lt, and note narcotic pain medication change from Hydromorphone to oxycodone 30mg every 6 hours for breakthrough pain and will continue morphine unchanged. MD suggested sleep study due to hypersomnolence during day and fu in 3 months.

03/09/16 peer physician review Board Certified in Occupational Medicine concluded that he agreed with treating MD R&L's placed on 04/21/15 abilities form with the exception of lifting: peer felt clmt per FCE could lift up to 7lbs occasionally, frequent sitting with continuous sitting up to 20min at a time, standing/walking occasionally for 10 min continuously at a time, occasional bending, stooping, and frequent reaching and fingering working 8 hour days/40 hour workweek and apply from 11/25/15 and forward.

05/23/16 -05/26/16 telephone call to MD office from clmt having increase leg and hip pain for last 2-3 weeks and now having some neck pain into her shoulder issues and wanted to know if she needs burst of steroid to see if helps. MD finally reached clmt and to office for evaluation on 05/26/16. MD stated over last couple of months her pain has changed somewhat with worsening pain, particularly at night, feeling intensely fatigued, and has had to increase pain medication recently due to discomfort, has not had sleep study MD recommended due to insurance issues and continues to have problems sleeping and daytime hypersomnolence. MD exam stated clmt neurologically intact but has significant tenderness lower extremities and calf muscles bilaterally. MD stated felt that flare of pain seemed more soft tissue that neuropathic pain increase associated with back. MD recommended clmt fu with rheumatologist first to evaluate soft tissue inflammation or changes and if still having symptoms after that will try 5 day course of Dexamethasone but until then continue current medication regimen until sees rheumatology.

06/16/16 rheumatology fu note by Dr. Winkler fu for her UCTD (undifferentiated connective tissue disease) and stated clmt is on Plaquenil, has significant DDD of cervical and lumbar spine, has been out of Plaquenil for 3 weeks and has had increased aching in shoulders/hands and knows medications helps. MD stated clmt does have history of large number of tic bites, stated shoulders and elbows hurting more past few weeks off Plaquenil, also feels she is having more swelling in her hands/elbows and has been hurting all over and worse areas are hands/elbows/hips, shoulders, and cannot wear rings due to hand swelling. Currently taking Dilaudid 6 x day for breakthrough pain and did have hives on Sunday and had to use epipen-needs refill for epipen. No rash today but states not sleeping again and gets so fatigue. MD exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling, and MD noted to recheck inflammatory labs stating may need to changes Plaquenil and prescribed Medrol DosePak in meantime with next fu in one month.

09/01/16 fu ov Dr. Winkler for UCTD (Rheumatology) stated clmt reported feeling better with steroid course and lasted for 1-2 months, and pain medications helping, limited with insurance coverage in what is covered, back pain severe and sometimes hurting all over with swelling of hands/fingers, that occurs about twice/month, denies feeling depressed, and still not sleeping well due to pain radiating to Rt thigh. MD stated to continue Plaquenil and use Medrol for flares, and PRN trial again of amitriptyline at bedtime. MD noted no synovitis of any joint noted on MD physical exam and no documented focal motor/sensory/cognitive/neurological deficits identified in MD exam note provided.

10/05/16 to 10/31/16 fu ov notes by pain management Dr. Kokoszka/Dr Tonkin respectively for bilateral lower back pain radiating to Rt lower extremity in L5 dermatomal distribution to the level of the ankle. MD stated today's pain rating 4/10 scale, developes pain while sitting/standing/walking that cannot be ignored more than 30 min and requires position change/multiple pain medications and denies extremity weakness/bowel or bladder dysfunction, but had problems with ADL's due to pain with significant difficulty driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, and sexual functions. Current medications notes by MD

included Opana ER 20mg every 12 hours, Oxycodone 30mg every 6 hours and noted mild depression score, no evidence of anxiety, s/p > 10 ESI lumbar injections with temporary improvement, and no improvement with spinal stimulator trial. MD exam noted no deformities/edema/ cyanosis/atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. MD stated clmt does not have reproduction of axial back pain with passive oblique extension of lumbar spine or facet loading on either side and negative straight leg raising bilaterally. MD recommended interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage, and PT. Oxygen saturations 98% on room air, weight 150lbs and exam remained unchanged.

November 2016 Voc rehab consult noted essentially concluded that due to functional restrictions demonstrated on FCE the clmt can only lift total of 7 lbs occasionally sitting up to 20 min continuously before she has to change position/rest, and can only stand or walk for 10 min continuously before having to change position/sit to rest, from 11/25/15 forward and that the clmt has no real transferable skills to sedentary job, and would have great difficulties with any retraining, unable to do manual labor or unskilled jobs and overall functional status was stated to agree with FCE results which stated clmt performed at less than sedentary level.

Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing. There was no MD exam documentation of any focal motor weakness/sensory loss/cognitive or memory deficits, and no gait issues identified in MD exam notes provided in file. The clmt's HTN, GERD, depression and pain overall is stated by MD notes to be well controlled on steady medication regimen, has full ROM all extremities with intact sensation throughout, and normal gait without use of assistive device. FCE from April 2014 noted clmt unable to lift > 7lbs without significant increase in pain back, shoulders, and neck particularly with any overhead lifting. Overall muscle strength noted to be 5/5 in all 4 extremities with intact sensory exam throughout. The clmt admitted to having good pain control and wearing lumbar brace helps pain. There are no clinical findings noted in file demonstrating any functional limitation that would support clmt unable to perform duties of any sedentary occupation detailed above. There was pain diary from clmt's home records submitted at all that might support any impairing level of pain frequency/intensity/duration/amount of pain medication required on daily basis.

Specific clinical recommendations: None

Return to Work: MD Guidelines gives 0/1/14 days recovery for chronic low back pain with sedentary occupation.

Karen Mills RN
Clinical Nurse Consultant - KLMILLS - Jan 27, 2017 04:07:26 pm

2/2/2017   Referrals             20413tOngoing Claim Review                            Completed        JDJACKS
NDC review

Claimant Name:  Jamie Flanagan
Claim Number:  LTD 1130226196
Group ID:  LESTERECOX

- Demographics - ---   the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence:  MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP:  90 days
Benefit Commencement Date:  Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date:  Nov 24, 2015
Max Duration Date:  April 2047

**Chronological Activity List**

Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found.  No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o  - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting with 20 minutes of continuous sitting.      - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.      - She could perform occasional bending and stooping      - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"May 26, 2016 - was stable in terms of pain issues until the last few months. Felt this was more of a flare of connective tissue process rather than chronic neuropathic pain associated with back issues. Clmt states issues with hand swelling and hand joint swelling.
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Powell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 - worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016

8/21/2017                                                                                                                                    15

**Chronological Activity List**

"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 - Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 - Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopewell
"Crystal Powel PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve Newbold Nov 2015


 Questions

1.Please provide a review summary of the medical findings. Nov 24, 2015.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from Nov 24, 2015 and forward.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - JDJACKS - Jan 13, 2017 10:50:03 am
Clinical Response Template

Claimant name: Jamie Flanagan
Claim number: LTD ap #1130226196
Date of Review: 01/27/17

Documents reviewed: APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain, multiple pain management/family practice/neurosurgery fu exam visit notes from 09/19/12 through November 2016, 09/19/12 fu ov noe Dr. Mace for chronic low back pain noted clmt was s/p L5-S1 PLIF, rheumatology fu exam notes from December 2015 through 09/01/16, November 2016 Voc rehab consult, labs/multiple imaging studies/diagnostic reports with dates ranging from 2010 through 2016.

APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain with MD noted failed fusion in 2011 and failed spinal column stimulator (date not given by MD) with restrictions/limitations (R&L's) stating "pain increased throughout the day/week and unable to control pain with medications, work with unlimited ability to rest/take breaks, estimated RTW stated never, and abilities portion of APS was bracketed and stated "unqualifiable".

Conclusion: Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted

fingering/handling/reaching/gripping/keyboarding/typing/interacting with cow orkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forw ard ongoing.

Rationale w ith supportive medical findings: 36yr/M nurse practitioner (light occ) w ith DOD 08/26/13 due to severe low back/leg pain, post laminectomy syndrome, spinal stenosis, chronic low back pain/lumbar spondylosis, and autoimmune disease w ith noted BCD of 11/24/13 and benefit approved to COD dated 11/24/15. PMH included L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain.

09/19/12 fu ov note Dr. Mace for chronic low back pain noted clmt w as s/p L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain and bilateral leg pain, burning sensation in toes/heels all have been w orsening, symptoms improved some w ith w earing lumbar brace. The clmt denied any leg w eakness, bow el/ bladder dysfunctions, and has neck pain that radiates to Lt shoulder. MD exam noted normal muscle strength/tone/ROM throughout, normal gait w ithout mention of any assistive device used to ambulate, and intact sensation throughout. MD stated cervical MRI show ed Lt C5-6 disc herniation (date of study not given in MD note), and stated lumbar CT scan show ed confluent bone at L5-S1 cage/screw s looked fine, and progressive endplate sclerosis. MD stated to try PT for neck pain w ith traction and w ill consider surgical intervention w ith ACDF or maybe spinal stimulator if no better. MD stated history of L%-S1 PLIF 18 months ago w ith progressive mechanical back pain and some L5 S1 radicular symptoms that are quite problematic, to check myelogram and consider re-exploration-MD ordered cervical and lumbar CT myelogam, PT, and fu after testing.

12/28/12 MRI of lumbar spine show ed postsurgical changes posterior interbody fusion at L5-S1 secondary to pars defects at L5 and grade 2 spondylolisthesis. There is extensive evidence of postoperative fibrosis in the posterior operative bed extending along the Rt and Lt lateral margins of the thecal sac and extending anteriorly on the Lt to involve the S1 nerve root. The central canal w as noted to be patent and thoracic spine MRI w as normal. Cervical MRI same date show ed prior changes posterior lumbar interbody fusion at L5-S1 secondary to pars defect, stable anterolisthesis compared to remote studies, more extensive endplate sclerosis noted, and persistent lucency around the bone cage as w ell as some increased erosion of the posterior aspect of the L5 vertebral body could represent evidence of disc space instability. Anterior epidural soft tissue at the operative level suggesting an extensive postoperative fibrosis and MR scan w ith contrast is suggested as fu. Cervical/lumbar myelogram show ed remote cervical changes posterior lumbar fusion L5-S1 w ith stable spondylolisthesis of L5-S1 unchanged from October 2011.

08/15/13 fy ov note Dr. Cornelison for evaluation for spinal column stimulator for severe low back/leg pain (postolateral legs and noted symptoms have been present since August 2010 w ith no injury as cause) and s/p lumbar fusion L5-S1 in April 2011. Currently follow ed by Dr. Hopew ell for pain management and Dr.Cornelison for injection therapy and has MD exam findings pain/numbness bilateral posterior lateral legs, increasing pain w ith any position for prolonged period. MD exam stated palpation tenderness over lumbosacral spine, increased low back pain w ith spine extension/axial loading/lateral side bending of lumbar spine reproduces pain, deep tendon reflexes symmetrical and 2+ throughout, straight leg raising on Rt equivocal. MD stated most of clmt's pain is in both legs and clmt suffering from significant epidural fibrosis in old surgical area and is on high doses of narcotic pain medications. MD stated at this time recommends spinal column stimulator and noted clmt to proceed w ith dual lead spinal column stimulator trial per MD note.

09/19/13 fu Dr. Hopew ell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome stated clmt feeling has w eakness in legs but MD stated no true motor deficits, and stated this is a sensation and not a motor problem. Pain is reported to be w orse w ith prolonged position but comfortable in chair, seeking insurance approval for spinal stimulator trial. MD noted neurological exam w as normal and fu in 3 months w ith continuation of same regimen.

11/18/13 EMG/NCS show ed abnormal study- conduction studies noted w ithin normal limits but show ed evidence of lumbosacral radiculopathy predominently affecting the Rt L5-S1 nerve root.

10/31/16 fu w ith Dr. Hopew ell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome noted clmt requested spinal cord stimulator-MD stated clmt received no benefit from trial per MD note.

04/23/14 functional capacity evaluation w as performed on 04/22/14 and validity criterion she passed indicated she gave maximum voluntary effort and results are as follow s: upper/low er extremity ROM and strength w ere w ithin normal limits 5/5 including pronation/supination and no cardiovascular compromise w as noted. Hip abduction ROM w ithin normal limits but w ith pain at end of range bilaterally Rt> Lt and strength 5-/5 bilateral hips abduction, and 4+/5 for Rt plantar flexion, cervical ROM w ithin normal limits w ith pain posterior neck w ith flexion, and mild decrease sensation lateral calves but otherw ise no focal deficits noted. MD concluded 7 b lifting restriction, sitting tolerance 20 min duration, occasional w alking to very occasional, craw ling/bending/w orking at heights not recommended, and

work level was deemed to be less than sedentary functional level. The clmt is noted to have current pain medication regimen consisting of MS Contin 5 pills twice/day -?actual dose), Dilaudid 1-2 tabs up to 3-6 x day, Robaxin 1-2 tabs 3xday, Topamax 1 tab twice/day, and buprofen 800mg 3-4 x day in addition to PRN Xanax 0.5mg up to 4xday PRN, and Wellbutrin twice/day. The MD noted clmt takes Plaquenil 2 tabs at night for autoimmune disease. The clmt does not feel she can RTW as she was not able to work for prolonged times and would lie down between each patient and could not tolerate the positional changes or static position of prolonged sitting or standing.

06/09/14 peer physician review by Board Certified Physical Medicine/ Rehabilitation Medicine MD) concluded that although the clmt reported ongoing pain, exam were normal, and imaging showed minimal findings with some scarring of S1 nerve root but normal 5/5 muscle strength both upper/lower extremities, normal gait without use of assistive device, and concluded based on review of all records and noted discussion with treating MD that he based R&L's on what clmt told him and was unable to provide peer MD with further information on clmt's R&L's. Peer opined appropriated R&L's would include: the clmt could walk/stand up to 2 hours /8 hour normal workday with normal breaks, may sit up to 6-8 hours/8 hour workday, would require position changes as needed or for 5 min every hour as needed, may lift/carry/push/pull up to 20lbs occasionally/10lbs frequently, reaching in all directions okay, occasional climb stairs/kneel/bend/stoop/squat/ and crouch, and never climb robes/ladders/ scaffolds/or crawl, and unrestricted ability to handle/finger/feel objects as needed-R&L's apply from 11/24/13 forward and would be likely be permanent. Peer stated treating providers including Dr. Hopewell exams revealed no neurological deficits, and MD does not quantify her pain at each visit by using measurable scales and admitted on phone to peer his opinions/R&L's were based largely on reported symptoms by clmt rather than on clinical examination findings and/or diagnostic findings and R&L's of no work were not consistent with the documented medical findings.

10/22/14 fu ov note by Dr. Hopewell for lumbar spondylosis, post laminectomy lumbar syndrome, and lumbar spondylolisthesis all occurring in setting of mixed connective tissue disease. MD stated over past few weeks lumbar pain is radiating down legs, more lateral aspect of Rt leg to heel, and occasionally to Lt side, no new weakness or sensory changes noted, and denied bowel or bladder dysfunction. The clmt stated she was off Plaquenil for about 3 weeks and has just restarted it and thinks may have contributed to pain flare, and noted she had been walking more than usual because they were looking at properties. The clmt stated pain definitely worse with prolonged standing more than if walking, and noticed she has to sit down if up on feet for 15 min, and sitting most comfortable but pain will worsen with prolonged sitting as well, no clear flare of joint symptoms, and next fu in 3 months. MD stated clmt reported recent rash with swelling of fingers/lips that resolved within 72 hours and stated was referring clmt to rheumatology for evaluation of skin issues recently.

12/07/15 rheumatology fu note by Dr. Mace for progressive low back and leg pain Rt> Lt stated clmt having increased low back and Rt leg pain, with Rt L5 type leg pains described as aching/burning pain, denies leg weakness or bladder issues. MD exam noted no joint pain or swelling and has fair ROM throughout, no palpation tenderness of spine, normal 5/5 muscle strength/tone/bulk with intact sensation to light touch throughout, able to heel-toe -tandem walk without difficulty. MD stated imaging showed what appears to be good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at this time, and noted clmt to try water exercises for core strengthening.

01/20/15 fu ov note by Dr. Hopewell for post lumbar laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis stated clmt's last flare of pain when last seen was significantly improved with short course of Dexamethasone, states clmt continues to do reasonably well with pain overall with slight increase pain with colder weather. The clmt reports occasional dysesthetic pain in lower extremities particularly in feet and mostly at night but reports no new motor or sensory/bowel or bladder complaints and no problems from medications. MD stated neurological exam remains normal, and noted trial of amitriptyline for neuropathy sensation in feet at night in past caused some reported daytime hypersomnolence that was tolerable so MD stated will try again to see if helps and fu in 3 months.

04/16/15 fu ov note Dr. Hopewell stated clmt having another flare of low back and bilateral leg pain Rt> Lt and dysesthesia symptoms in feet more frequently due to prolonged car rides and personal stress including loss of her father recently, remains neurologically intact, and needs to stop amitriptyline due to excessive daytime somnolence and to perform sleep study as well with next fu in 3 months.

04/21/15 abilities form by Dr. Hopewell stated clmt could lift/carry 0 weight at any time, could sit frequently at 20 min intervals, could stand/walk/drive/operate foot controls occasionally, frequently finger/handle/reach above shoulder level, and never climb/bend/kneel.

10/15/15 MR lumbar spine showed prior PLIF L5-S1 without complicating features, L4-5 facet joint arthropathy adn Lt extraforaminal zone disc protrusion with annular fissure, with contact with exiting Lt L4 nerve root. CT scan of lumbar spine showed expected postop PLIF changes L5-S1, degenerative disc disease and spondylosis L4-5 with

facet joint arthropathy and disc bulge/protrusion Lt subarticular and extraforaminal zone. It was noted there is contact with the exiting Lt L4 nerve root but no definite impingement noted.

12/01/15 fu ov note by Dr. Newbold for chronic low back pain, GERD, anxiety, depression here for fu stated clmt is actually doing well except for recurring episodes of urticarial (rash) and angioedema, marked swelling of her kips and a couple of times also her throat, and stated rheumatologist gave he an epipen and noted she is not taking antihystamines presently, denies dysphagia, and stated her anxiety/depression is well controlled on oral medications for most part.

12/09/15 fu ov note by Dr. Hopewell stated clmt here to discuss her denial of disability which seemed to center around her physical exams being normal and fluctuations in her pain levels that had paralleled other physical problems or stress related issues. MD stated normal physical exam are common in patients with spine based pain issues and there is always fluctuation of any chronic medical problems based on other physical and emotional stressors is not unusual. MD stated overall her pain is doing reasonably well on current medication regimen without complications and next fu to be in 3 months again.

01/28/16 pain management fu for chronic low back pain and UCTD stated clmt needs refill of epipen which she uses PRN for angioedema and skin reactions and was referred to allergist in past but does not wish to see allergist at this time, likely due to insurance issues, stated not taking antihystamines as they have not helped in past, no recent flare ups of symptoms, and continues multiple pain meds for chronic low back/leg pain and muscle relaxants s/p L5-S1 PLIF with Dr. Mace in April 2011. MD stated clmt is NP but not currently working and on disability due to her multiple medical health problems, although MD notes indicated GERD/anxiety and depression were all well controlled at this time on oral medications. MD exam findings noted no abnormal findings, no focal motor/sensory deficits, and noted epipen prescription was refilled.

02/29/16 fu ov note Dr. Hopewell for chronic low back and bilateral leg pain stated clmt is reasonably stable overall, does have some daytime somnolence and is not physically active, pain continues to be occasional radiation down posterior Rt leg> Lt, and note narcotic pain medication change from Hydromorphone to oxycodone 30mg every 6 hours for breakthrough pain and will continue morphine unchanged. MD suggested sleep study due to hypersomnolence during day and fu in 3 months.

03/09/16 peer physician review Board Certified in Occupational Medicine concluded that he agreed with treating MD R&L's placed on 04/21/15 abilities form with the exception of lifting: peer felt clmt per FCE could lift up to 7lbs occasionally, frequent sitting with continuous sitting up to 20min at a time, standing/walking occasionally for 10 min continuously at a time, occasional bending, stooping, and frequent reaching and fingering working 8 hour days/40 hour workweek and apply from 11/25/15 and forward.

05/23/16 -05/26/16 telephone call to MD office from clmt having increase leg and hip pain for last 2-3 weeks and now having some neck pain into her shoulder issues and wanted to know if she needs burst of steroid to see if helps. MD finally reached clmt and to office for evaluation on 05/26/16. MD stated over last couple of months her pain has changed somewhat with worsening pain, particularly at night, feeling intensely fatigued, and has had to increase pain medication recently due to discomfort, has not had sleep study MD recommended due to insurance issues and continues to have problems sleeping and daytime hypersomnolence. MD exam stated clmt neurologically intact but has significant tenderness lower extremities and calf muscles bilaterally. MD stated felt that flare of pain seemed more soft tissue that neuropathic pain increase associated with back. MD recommended clmt fu with rheumatologist first to evaluate soft tissue inflammation or changes and if still having symptoms after that will try 5 day course of Dexamethasone but until then continue current medication regimen until sees rheumatology.

06/16/16 rheumatology fu note by Dr. Winkler fu for her UCTD (undifferentiated connective tissue disease) and stated clmt is on Plaquenil, has significant DDD of cervical and lumbar spine, has been out of Plaquenil for 3 weeks and has had increased aching in shoulders/hands and knows medications helps. MD stated clmt does have history of large number of tic bites, stated shoulders and elbows hurting more past few weeks off Plaquenil, also feels she is having more swelling in her hands/elbows and has been hurting all over and worse areas are hands/elbows/hips, shoulders, and cannot wear rings due to hand swelling. Currently taking Dilaudid 6 x day for breakthrough pain and did have hives on Sunday and had to use epipen-needs refill for epipen. No rash today but states not sleeping again and gets so fatigue. MD exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling, and MD noted to recheck inflammatory labs stating may need to changes Plaquenil and prescribed Medrol DosePak in meantime with next fu in one month.

09/01/16 fu ov Dr. Winkler for UCTD (Rheumatology) stated clmt reported feeling better with steroid course and lasted for 1-2 months, and pain medications helping, limited with insurance coverage in what is covered, back pain severe and sometimes hurting all over with swelling of hands/fingers, that occurs about twice/month, denies feeling

depressed, and still not sleeping well due to pain radiating to Rt thigh. MD stated to continue Plaquenil and use Medrol for flares, and PRN trial again of amitriptyline at bedtime. MD noted no synovitis of any joint noted on MD physical exam and no documented focal motor/sensory/cognitive/neurological deficits identified in MD exam note provided.

10/05/16 to 10/31/16 fu ov notes by pain management Dr. Kokoszka/Dr Tonkin respectively for bilateral lower back pain radiating to Rt lower extremity in L5 dermatomal distribution to the level of the ankle. MD stated today's pain rating 4/10 scale, developes pain while sitting/standing/walking that cannot be ignored more than 30 min and requires position change/multiple pain medications and denies extremity weakness/bowel or bladder dysfunction, but had problems with ADL's due to pain with significant difficulty driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, and sexual functions. Current medications notes by MD included Opana ER 20mg every 12 hours, Oxycodone 30mg every 6 hours and noted mild depression score, no evidence of anxiety, s/p > 10 ESI lumbar injections with temporary improvement, and no improvement with spinal stimulator trial. MD exam noted no deformities/edema/ cyanosis/atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. MD stated clmt does not have reproduction of axial back pain with passive oblique extension of lumbar spine or facet loading on either side and negative straight leg raising bilaterally. MD recommended interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage, and PT. Oxygen saturations 98% on room air, weight 150lbs and exam remained unchanged.

November 2016 Voc rehab consult noted essentially concluded that due to functional restrictions demonstrated on FCE the clmt can only lift total of 7 lbs occasionally sitting up to 20 min continuously before she has to change position/rest, and can only stand or walk for 10 min continuously before having to change position/sit to rest, from 11/25/15 forward and that the clmt has no real transferable skills to sedentary job, and would have great difficulties with any retraining, unable to do manual labor or unskilled jobs and overall functional status was stated to agree with FCE results which stated clmt performed at less than sedentary level.

Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing. There was no MD exam documentation of any focal motor weakness/sensory loss/cognitive or memory deficits, and no gait issues identified in MD exam notes provided in file. The clmt's HTN, GERD, depression and pain overall is stated by MD notes to be well controlled on steady medication regimen, has full ROM all extremities with intact sensation throughout, and normal gait without use of assistive device. FCE from April 2014 noted clmt unable to lift > 7lbs without significant increase in pain back, shoulders, and neck particularly with any overhead lifting. Overall muscle strength noted to be 5/5 in all 4 extremities with intact sensory exam throughout. The clmt admitted to having good pain control and wearing lumbar brace helps pain. There are no clinical findings noted in file demonstrating any functional limitation that would support clmt unable to perform duties of any sedentary occupation detailed above. There was pain diary from clmt's home records submitted at all that might support any impairing level of pain frequency/intensity/duration/amount of pain medication required on daily basis.

Specific clinical recommendations: None

Return to Work: MD Guidelines gives 0/1/14 days recovery for chronic low back pain with sedentary occupation.

Karen Mills RN
Clinical Nurse Consultant - KLMILLS - Jan 27, 2017 04:07:26 pm

| 1/13/2017 | Referrals | 20413|Management Review | | Completed | JDJACKS |

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 25 of 550   LIN0025

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

State of Residence:  MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP:  90 days
Benefit Commencement Date:  Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date:  Nov 24, 2015
Max Duration Date:  April 2047
Occupation:  Nurse Practitioner -  Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial:  CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination:  AS - based on the below  review  sent for TSA and gainful occ found.  No medical or clinical evidence of a functionally impairing condition that w ould preclude or require restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician w ho is Board Certified in Occupational Medicine
o   - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting w ith 20 minutes of continuous sitting.      - She could perform occasional standing/w alking w ith 10 minutes of continuous standing or w alking.      - She could perform occasional bending and stooping      - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopew ell - Neuro/pain - 417-659-6873
"May 26, 2016 - w as stable in terms of pain issues until the last few  months. Felt this w as more of a flare of connective tissue process rather than chronic neuropathic pain associated w ith back issues. Clmt states issues w ith hand sw elling and hand joint sw elling.
"Letter/note - Dec 2015 - "I have no recollection of any conversation w ith the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients w ith spine based pain issues. - "I don't think there is anything that I can do to sw ay opinion to of her insurance carrier." Pain is doing reasonably w ell w ith current regimen w /o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, w alk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Pow ell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016
"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 -  Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 -  Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL -  via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopewell
"Crystal Powel PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve Newbold Nov 2015

Appeal Direction Recommendation:
"NDC
 - Management Review  - JDJACKS - Jan 13, 2017 07:23:35 am
Discussed with tjsva7, cxgeary, and AE. Determination to proceed with  NDC review .  - Management Review  - MASCHAA - Jan 13, 2017 10:04:46 am

| | | | | | |
|---|---|---|---|---|---|
| 1/10/2017 9:00:37 AM | Documents/Mail | 98 | Medical Records | Received | JDJACKS |
| | 2017-01-09-17.15.12.566520O01 | | | | |

"Dr. Steve Newbold Nov 2015 - medical records*** - JDJACKS - Jan 13, 2017 07:20:13 am

| | | | | | |
|---|---|---|---|---|---|
| 1/13/2017 | Documents/Mail | 98 | Medical Records | Completed | JDJACKS |
| | 2017-01-09-17.15.12.566520O01 | | | | |

"Dr. Steve Newbold Nov 2015 - medical records*** - JDJACKS - Jan 13, 2017 07:20:13 am

| | | | | | |
|---|---|---|---|---|---|
| 12/7/2016 | Documents/Mail | 97 | Appeal Dis Atty Extension Letter | Completed | JDJACKS |
| | Appeal Dis Atty Extension Letter | | | | |
| 12/1/2016 8:09:12 AM | Documents/Mail | 96 | Medical Records | Received | JDJACKS |
| | 2016-12-01-09.08.39.081740O01 | | | | |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:40 am

| | | | | | |
|---|---|---|---|---|---|
| 12/7/2016 | Documents/Mail | 96 | Medical Records | Completed | JDJACKS |
| | 2016-12-01-09.08.39.081740O01 | | | | |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:40 am

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 27 of 550     LIN0027

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/1/2016 8:09:10 AM | Documents/Mail | 94 | Fax | Received | JDJACKS |

2016-11-30-10.45.21.282700O01

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:32 am

| 12/7/2016 | Documents/Mail | 94 | Fax | Completed | JDJACKS |

2016-11-30-10.45.21.282700O01

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:32 am

| 12/1/2016 8:09:11 AM | Documents/Mail | 95 | Incoming Correspondence | Received | JDJACKS |

2016-12-01-09.08.27.334740O01

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:49 am

| 12/7/2016 | Documents/Mail | 95 | Incoming Correspondence | Completed | JDJACKS |

2016-12-01-09.08.27.334740O01

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:49 am

| 12/7/2016 | Telephone (OUT) | 45 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

OUTGOING call to the atty the phone rang a few times then office staff did answer gave then my name and their clients name - was placed on hold only after office staff stated they would see if was able to take the call.

Then atty did answer the line did ack his letter and info - stated will give him more time to send in records stated giving him 1 month/about 30 days - However if we get the record prior to deadline will start the review prior - went over status of the case and atty did agree
- JDJACKS - Dec 07, 2016 10:33:49 am

| 11/28/2016 | Documents/Mail | 93 | Incoming Correspondence | Completed | JDJACKS |

2016-11-28-07.39.40.705680O01

***rcvd letter from the atty*** - JDJACKS - Nov 28, 2016 09:54:38 am

| 11/28/2016 | Documents/Mail | 91 | Envelope | Completed | JDJACKS |

2016-11-25-16.10.25.284640O01

| 11/28/2016 | Documents/Mail | 92 | Medical Records | Completed | JDJACKS |

2016-11-28-07.39.14.811680O01

***rcvd medical records*** - JDJACKS - Nov 28, 2016 10:09:03 am

| 11/28/2016 | Telephone (IN) | 44 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

**INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he will need a few more weeks - stated/did ask he send in a letter asking for more time*** - JDJACKS - Nov 28, 2016 10:41:40 am

| 11/28/2016 | Telephone (OUT) | 43 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

OUTGOING call to the atty office spoke with office staff and did ask for the atty told with a client left my name and number  and asking for a call back to review the Nov 21, 2016 letter - JDJACKS - Nov 28, 2016 09:54:11 am

| 10/28/2016 | Documents/Mail | 90 | Appeal Dis Atty Ackappeal | Completed | JDJACKS |

Appeal Dis Atty Ackappeal

| 10/28/2016 | Documents/Mail | 89 | Appeal Dis Atty Ackappeal | Completed | JDJACKS |

Record was canceled.  Completed to remove from case diary.  Date: 31-OCT-16
Appeal Dis Atty Ackappeal

| 10/21/2016 9:47:02 AM | Claim Tasks | 38 | Open Review | Requested | RDHASTI |

APPEAL REQUEST AND FULL REPORT RECVD?

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am

10-28-16 Full report and appeal recvd in AWD. Addigned to JDJACKS. Rdhasti - RDHASTI - Oct 28, 2016 10:10:24 am

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 28 of 550   LIN0028

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Claim Tasks | 38 | Open Review | Completed | RDHASTI |

APPEAL REQUEST AND FULL REPORT RECVD?

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am

10-28-16 Full report and appeal recvd in AWD. Addigned to JDJACKS. Rdhasti - RDHASTI - Oct 28, 2016 10:10:24 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Telephone (IN) | 42 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

INCOMING call from the attys office did ack the appeal and info with the appeal - decide she would try to get records from Dr. Hopewell from 2016 - I went over status of the appeal case with her and she felt she would need 30 to 45 days _ I stated we would start with about 30. - JDJACKS - Oct 28, 2016 03:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Telephone (OUT) | 41 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

***OUTGOING call to the attys office unable to speak with atty or legal staff left my name and number** - JDJACKS - Oct 28, 2016 02:57:50 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/20/2016 8:18:02 AM | Documents/Mail | 88 | Incoming Correspondence | Received | RDHASTI |

2016-10-19-10.15.20.078080O01
10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:46:58 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/21/2016 | Documents/Mail | 88 | Incoming Correspondence | Completed | RDHASTI |

2016-10-19-10.15.20.078080O01
10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:46:58 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/21/2016 | Telephone (OUT) | 40 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am - RDHASTI - Oct 28, 2016 10:09:42 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/19/2016 12:10:51 PM | Claim Tasks | 37 | Paper File | Requested | ALTKA6 |

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

INCLUDE:
LTD 1130226196
WOP 1140128972

**NOTE - A previous file scan was completed on 2/19/2016 (see SEGDA4 letters to atty on 2/24/16 and 2/25/16). Attorney has advised that it is sufficient to provide all records in file that were added after that date. Rdhasti - RDHASTI - Aug 19, 2016 12:19:44 pm


Copy has been prepared, it is in the CSS folder as (U Drive: CSS_ Support_ Folder: Claim_ File_ Scans):

J FLANAGAN 1130226196 8-24-16

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney/claimant. - ALTKA6 - Aug 24, 2016 11:24:36 am

8-24-16 OK to send. Rdhasti - RDHASTI - Aug 24, 2016 01:27:54 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Created and mailed CD (secure) with instructions to claimant/ attorney. - ALTKA6 - Aug 25, 2016 08:45:34 am

| 8/25/2016 | Claim Tasks | 37 | Paper File | Completed | ALTKA6 |

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

INCLUDE:
LTD 1130226196
WOP 1140128972

**NOTE - A previous file scan was completed on 2/19/2016 (see SEGDA4 letters to atty on 2/24/16 and 2/25/16). Attorney has advised that it is sufficient to provide all records in file that were added after that date. Rdhasti - RDHASTI - Aug 19, 2016 12:19:44 pm

Copy has been prepared, it is in the CSS folder as (U Drive: CSS_ Support_ Folder: Claim_ File_ Scans):

J FLANAGAN 1130226196 8-24-16

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney/claimant. - ALTKA6 - Aug 24, 2016 11:24:36 am

8-24-16 OK to send. Rdhasti - RDHASTI - Aug 24, 2016 01:27:54 pm

Created and mailed CD (secure) with instructions to claimant/ attorney. - ALTKA6 - Aug 25, 2016 08:45:34 am

| 8/24/2016 | Documents/Mail | 87 | Atty Ltr with Copy of Claim File | Completed | ALTKA6 |

Atty Ltr with Copy of Claim File

| 8/22/2016 | Documents/Mail | 86 | Envelope | Completed | RDHASTI |

2016-08-19-15.39.32.459560O01

| 8/18/2016 7:01:06 AM | Documents/Mail | 85 | Email | Received | RDHASTI |

2016-08-17-10.03.18.987580O01
8-19-16 Recvd atty email adv 1) have not recvd file copy which was requested in 5/2016; 2) they do have a previous file copy that went to 2/24/2016, and it would be sufficient to provide everything from that date forward. I am submitting file copy request. Rdhasti - RDHASTI - Aug 19, 2016 12:20:03 pm

| 8/19/2016 | Documents/Mail | 85 | Email | Completed | RDHASTI |

2016-08-17-10.03.18.987580O01
8-19-16 Recvd atty email adv 1) have not recvd file copy which was requested in 5/2016; 2) they do have a previous file copy that went to 2/24/2016, and it would be sufficient to provide everything from that date forward. I am submitting file copy request. Rdhasti - RDHASTI - Aug 19, 2016 12:20:03 pm

| 6/14/2016 | Documents/Mail | 84 | Incoming Correspondence | Completed | RDHASTI |

2016-06-13-15.45.38.984860O01
Letter from attorney acknowledging receipt of CV info that was sent. - CXGEARY - Jun 14, 2016 03:41:39 pm

| 6/6/2016 1:17:58 PM | Documents/Mail | 83 | Free Form Letter | Work In Progress | RDHASTI |

Free Form Letter

| 6/7/2016 | Documents/Mail | 83 | Free Form Letter | Completed | RDHASTI |

Free Form Letter

| 6/1/2016 10:46:24 AM | Claim Tasks | 36 | Open Review | Requested | RDHASTI |

CVs RECVD?

6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's. Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:41 am

| 6/6/2016 | Claim Tasks | 36 | Open Review | Completed | RDHASTI |

CVs RECVD?

6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:41 am

| 5/24/2016 8:57:10 AM | Documents/Mail | 82 | Incoming Correspondence | Received | RDHASTI |

2016-05-23-13.33.29.808740O01
6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's.
Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:13 am

| 6/1/2016 | Documents/Mail | 82 | Incoming Correspondence | Completed | RDHASTI |

2016-05-23-13.33.29.808740O01
6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's.
Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:13 am

| 3/15/2016 1:28:38 PM | Referrals | 20413!TSA | | Initial | RDHASTI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review ? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please perform updated TSA for sedentary with the following r/l's as decribed by peer reviewer:
- The claimant could lift up to 7 pounds occasionally.
- She could perform frequent sitting with 20 minutes of continuous sitting.
- She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- She could perform occasional bending and stooping
- She could perform frequent reaching and fingering.
- These limitations are for an 8 hour work day and 40 hour work week.
- CXGEARY - Mar 15, 2016 01:31:35 pm


Vocational Response-

VRC discussed results with CE.

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. There were two occupations identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.

Brandy Thomas, MA, CRC
- BRSTH6 - Mar 21, 2016 03:54:47 pm

| 4/26/2016 | Referrals | 20413!TSA | | Completed | RDHASTI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review ? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please perform updated TSA for sedentary with the following r/l's as decribed by peer reviewer:
   - The claimant could lift up to 7 pounds occasionally.
   - She could perform frequent sitting with 20 minutes of continuous sitting.
   - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   - She could perform occasional bending and stooping
   - She could perform frequent reaching and fingering.
   - These limitations are for an 8 hour work day and 40 hour work week.
 - CXGEARY - Mar 15, 2016 01:31:35 pm


Vocational Response-

VRC discussed results with CE.

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. There were two occupations identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.

Brandy Thomas, MA, CRC
 - BRSTH6 - Mar 21, 2016 03:54:47 pm

| 4/26/2016 | Referrals | 20413 | Consultant Review | Completed | RDHASTI |

4-26-16 Requesting 2 week extension beyond 90th day to 5/17/2016.

Request for addendum was sent to support in March, but it was never forwarded to peer reviewer. It is being forwarded now. - Consultant Review - RDHASTI - Apr 26, 2016 08:48:54 am

| 4/26/2016 | Summary/Assessment/P; | 4h | - 1st LEVEL APPEAL DECISION RATIONALE - RDHASTI - Apr | Completed | RDHASTI |

Summary Notes
- 1st LEVEL APPEAL DECISION RATIONALE - RDHASTI - Apr 26, 2016 11:35:27 am
Assessment Notes
- See Path tab - RDHASTI - Apr 26, 2016 11:35:27 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Received? Yes
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical

**Chronological Activity List**

information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

During the course of our review, we consulted with Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine. His review stated in part: "The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.
· Per the FCE, the claimant could lift up to 7 pounds occasionally.
· She could perform frequent sitting with 20 minutes of continuous sitting.
· She could perform occasional standing/walking with 10 minutes of continuous
standing or walking.
· She could perform occasional bending and stooping.
· She could perform frequent reaching and fingering."

Based on supported restrictions, the file was sent for a TSA which was able to identify two gainful occupations.

The medical information received from Dr. Hopewell confirms that the claimant would have decreased capacity for sitting, standing, lifting, bending, and stooping. However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward. Therefore, the decision to terminate benefits is upheld. Rdhasti
PATH
-Next Steps
ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) closed flups. Rdhasti
 - RDHASTI - Apr 26, 2016 11:35:27 am

| 2/10/2016 11:08:36 AM | Summary/Assessment/Path | 3 | - 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 | Requested | RDHASTI |

Summary Notes
- 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 11:08:58 am
Assessment Notes
- See Path tab - RDHASTI - Feb 10, 2016 11:08:58 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 1/25/16 atty appeal letter.
Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Records received that were not available at the claim level: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.

ASSESSMENT
- Reason(s) for Appeal
Recvd 1/25/16 atty appeal letter adv 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work; 4) req copy of documentation related to claim including copy of transcript and notes of the conversation between Dr. Karande (peer reviewer) and Dr. Hopewell; 5) letter adv including MRI and CT results, OV note, and letter; I did not receive a letter.
- Pending Reason
Pending for medical records.
PATH
-Next Steps

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) set 30, 45, 90 day flups. Rdhasti - RDHASTI - Feb 10, 2016 11:08:58 am

2-10-16 ATTY appeal request letter requested a copy of transcripts and notes from 6/2014 peer reviewer and Dr. Hopewell. I contacted support to check if these were available. Per the vendor, "Unfortunately with this review being conducted almost two years ago, Dr. Karande would have destroyed any notes she might have had. There is only brief mention of the AP teleconference in the report (copy attached, though I'm sure you already had this), so that is all we have available. Sorry I couldn't dig up more on this!" Rdhasti - RDHASTI - Feb 10, 2016 11:35:52 am

2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:41 pm

2-19-16 Scheduled appeal directin. Rdhasti - RDHASTI - Feb 19, 2016 04:12:50 pm

2-24-16 Referred for Occ Med peer review . Rdhasti - RDHASTI - Feb 24, 2016 10:47:20 am

Peer review returned. Submitted to Voc for updated TSA with the r/l's as outlined by peer reviewer. - CXGEARY - Mar 15, 2016 01:32:30 pm

Called clmt. Advised we are approaching the 45th day and file is still under review . Med report is back, but now we are having a vocational review done. Advised we will need to take our 45 day extension and gave explanation of what that entails. Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:48:05 pm

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was. Called atty's office to advise of 45 day extension and apologize for reaching out to clmt. Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:34 pm

3-23-16 TSA recvd identifying 2 gainful occupations. Rdhasti

3-23-16 On review , appears the peer reviewer did not attempt to contact the treating provider to discuss the medical disagreement on the claimant's ligting ability. i sent back to support to have peer reviewer attempt to contat Dr. Hopewell. Rdhasti - RDHASTI - Mar 23, 2016 11:44:38 am

4-26-16 Recvd notice from support that Dr. Hopewell will not speak to peer reviewer. Rdhasti - RDHASTI - Apr 26, 2016 11:30:04 am

| 4/26/2016 | Summary/Assessment/Path | 3 | - 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 | Completed | RDHASTI |
|---|---|---|---|---|---|

Summary Notes
- 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 11:08:58 am
Assessment Notes
- See Path tab - RDHASTI - Feb 10, 2016 11:08:58 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 1/25/16 atty appeal letter.
Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Records received that were not available at the claim level: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.

ASSESSMENT

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

- Reason(s) for Appeal

Recvd 1/25/16 atty appeal letter adv 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work; 4) req copy of documentation related to claim including copy of transcript and notes of the conversation between Dr. Karande (peer reviewer) and Dr. Hopewell; 5) letter adv including MRI and CT results, OV note, and letter; I did not receive a letter.

- Pending Reason

Pending for medical records.

PATH

-Next Steps

ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) set 30, 45, 90 day flups. Rdhasti
 - RDHASTI - Feb 10, 2016 11:08:58 am

2-10-16 ATTY appeal request letter requested a copy of transcripts and notes from 6/2014 peer reviewer and Dr. Hopewell. I contacted support to check if these were available. Per the vendor, "Unfortunately with this review being conducted almost two years ago, Dr. Karande would have destroyed any notes she might have had.  There is only brief mention of the AP teleconference in the report (copy attached, though I'm sure you already had this), so that is all we have available.  Sorry I couldn't dig up more on this!" Rdhasti - RDHASTI - Feb 10, 2016 11:35:52 am

2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:41 pm

2-19-16 Scheduled appeal directin. Rdhasti - RDHASTI - Feb 19, 2016 04:12:50 pm

2-24-16 Referred for Occ Med peer review. Rdhasti - RDHASTI - Feb 24, 2016 10:47:20 am

Peer review returned.  Submitted to Voc for updated TSA with the r/l's as outlined by peer reviewer. - CXGEARY - Mar 15, 2016 01:32:30 pm

Called clmt.  Advised we are approaching the 45th day and file is still under review.  Med report is back, but now we are having a vocational review done.  Advised we will need to take our 45 day extension and gave explanation of what that entails.  Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:48:05 pm

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was.  Called atty's office to advise of 45 day extension and apologize for reaching out to clmt.  Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:34 pm

3-23-16 TSA recvd identifying 2 gainful occupations. Rdhasti

3-23-16 On review, appears the peer reviewer did not attempt to contact the treating provider to discuss the medical disagreement on the claimant's ligting ability. i sent back to support to have peer reviewer attempt to contat Dr. Hopewell. Rdhasti - RDHASTI - Mar 23, 2016 11:44:38 am

4-26-16 Recvd notice from support that Dr. Hopewell will not speak to peer reviewer. Rdhasti - RDHASTI - Apr 26, 2016 11:30:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/4/2016 8:41:21 AM | Appeal | 2 | Level 1 | New | RDHASTI |
| 4/26/2016 | Appeal | 2 | Level 1 | Closed | RDHASTI |
| 4/26/2016 | Documents/Mail | 81 | Appeal Any Occ Level 1 Uphold Atty | Completed | RDHASTI |

Appeal Any Occ Level 1 Uphold Atty

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/10/2016 12:30:55 PM | Claim Tasks | 35 | Appeal 90 Day Extension | Requested | RDHASTI |

90th day is 5/3/2016 - RDHASTI - Feb 10, 2016 12:31:16 pm

4-26-16 Requested extension to 5/17/2016. Rdhasti - RDHASTI - Apr 26, 2016 08:49:22 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/26/2016 | Claim Tasks | 35 | Appeal 90 Day Extension | Completed | RDHASTI |

90th day is 5/3/2016 - RDHASTI - Feb 10, 2016 12:31:16 pm

4-26-16 Requested extension to 5/17/2016. Rdhasti - RDHASTI - Apr 26, 2016 08:49:22 am

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/26/2016 | Telephone (OUT) | 39 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

4-26-16 Called atty office to adv uphold decision. Spoke to Katrina and adv. Rdhasti - RDHASTI - Apr 26, 2016 11:31:49 am

| 2/10/2016 11:08:02 AM | Claim Tasks | 31 | Open Review | Requested | RDHASTI |

ANY ADDTL NFO RECVD? - If not, begin review - RDHASTI - Feb 10, 2016 11:08:25 am

2-10-16 Recvd call from Katrina in ATTY office confirming we did not receive Dr. Hopwerll letter advising that Dr. Hopewell had no recollection of speaking to the peer reviewer. I confirmed letter not recvd with appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review. Rdhasti - RDHASTI - Feb 10, 2016 11:40:49 am

Peer review recd. Sent for updated TSA wiht new r/ls. - CXGEARY - Mar 15, 2016 01:33:25 pm

| 3/23/2016 | Claim Tasks | 31 | Open Review | Completed | RDHASTI |

ANY ADDTL NFO RECVD? - If not, begin review - RDHASTI - Feb 10, 2016 11:08:25 am

2-10-16 Recvd call from Katrina in ATTY office confirming we did not receive Dr. Hopwerll letter advising that Dr. Hopewell had no recollection of speaking to the peer reviewer. I confirmed letter not recvd with appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review. Rdhasti - RDHASTI - Feb 10, 2016 11:40:49 am

Peer review recd. Sent for updated TSA wiht new r/ls. - CXGEARY - Mar 15, 2016 01:33:25 pm

| 2/23/2016 1:46:22 PM | Referrals | 204135 | Ongoing Claim Review | Initial | RDHASTI |

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

1st Appeal
Peer review with an Occupational Medicine Physician
Diagnosis: POSTLAMINECTOMY SYNDROME LUMBAR REGION, SPINAL STENOSIS LUMBAR REGION

Peer to peer call to be made if there is a medical disagreement on functionality:

Dr. Donald Hopewell / Neurology
Phone: 417-659-6873

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

 Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3. Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings?  Please explain.


 - SARCH6 - Mar 02, 2016 02:45:55 pm
Date:  2/19/2016
Claimant Name:  Jamie Flanagan
Claim Number:  1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP:  90
Benefits Commencement Date:  11/24/2013
Benefits Paid To:  11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD:  Nurse Practitioner
DOT Classification:  Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?  Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service:  12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical

8/21/2017

32

information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - BKGALL - Feb 23, 2016 01:46:54 pm
Clinical Consultation Response:

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 01:46:54 pm
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:46:54 pm
INCLUDE LTD 1130226196

Specialty Requested:Occupational Medicine peer with Dr-to-Dr call made to treating providers if there is a need for clarification, of if there is a medical disagreement on functionality.

**NOTE** If the treating provider is contacted, provide a transcript of the conversation with your review.**

Claimant's Physician Name and Specialty: Dr. Donald Hopewell (neurology)
Claimant's Physician Phone Number: (417) 659-6873

Has this file had a prior external review? Yes
UDC, Dr. Meghana Karande, Physical Medicine and Rehabilitation

Claim Summary

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

**Chronological Activity List**

a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3.Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings?  Please explain. - RDHASTI - Feb 24, 2016 10:47:03 am

Case submitted to RRS conf #14252 for a peer review with an Occupational Medicine Physician, see notes tab for additional information. - SARCH6 - Mar 02, 2016 02:45:56 pm

The final report from RRS was received and sent to LFGAppeals for attachment to AWD. - SARCH6 - Mar 10, 2016 02:26:00 pm

QA RESPONSE: Physician Peer Review

Claimant:  Jamie Flanagan

Claim Number:  1130226196

Vendor: RRS

Audit Date: 3/11/16

Peer Reviewer:  Joseph G. Thomas, MD

Peer Reviewer Board Certifications:  Occupational Medicine

Teleconference was not attempted but/ was not completed with Dr. Hopewell due to no significant medical disagreement.

Received and reviewed peer report. The peer reviewer notes the claimant's pertinent clinical history and responds to questions posed.  The peer reviewer concluded that the medical records support restrictions and limitations as follows from 11/25/2015 and forward:

The claimant could lift up to 7 pounds occasionally.

She could perform frequent sitting with 20 minutes of continuous sitting.

She could perform occasional standing/walking with 10 minutes of continuous standing or walking.

She could perform occasional bending and stooping

She could perform frequent reaching and fingering.

These limitations are for an 8 hour work day and 40 hour work week.

Clinical rationale is provided.  See report for details.

Referring DOCSNET case to: RDHASTI

Report is located in AWD: The report was sent to imaging per SARCH6.

Please call with any questions.

Virginia Rush, RN, BS

Nurse Disability Consultant - VXRUSH - Mar 11, 2016 09:30:01 am

| 3/15/2016 | Referrals | 20413!Ongoing Claim Review | | Completed | RDHASTI |

Claimant Name: Jamie Flanagan

Claim Number: 1130226196

1st Appeal

Peer review with an Occupational Medicine Physician

Diagnosis: POSTLAMNECTOMY SYNDROME LUMBAR REGION, SPINAL STENOSIS LUMBAR REGION

Peer to peer call to be made if there is a medical disagreement on functionality:

Dr. Donald Hopewell / Neurology

Phone: 417-659-6873

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3. Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

 - SARCH6 - Mar 02, 2016 02:45:55 pm
Date: 2/19/2016
Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: 11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service: 12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - BKGALL - Feb 23, 2016 01:46:54 pm
Clinical Consultation Response:

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 01:46:54 pm
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:46:54 pm
INCLUDE LTD 1130226196

Specialty Requested:Occupational Medicine peer with Dr-to-Dr call made to treating providers if there is a need for clarification, of if there is a medical disagreement on functionality.

**NOTE** If the treating provider is contacted, provide a transcript of the conversation with your review.**

Claimant's Physician Name and Specialty: Dr. Donald Hopewell (neurology)
Claimant's Physician Phone Number: (417) 659-6873

Has this file had a prior external review? Yes
UDC, Dr. Meghana Karande, Physical Medicine and Rehabilitation

Claim Summary

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

 Questions

1.Please provide a review summary of the medical findings.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3.Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - RDHASTI - Feb 24, 2016 10:47:03 am
Case submitted to RRS conf #14252 for a peer review with an Occupational Medicine Physician, see notes tab for additional information. - SARCH6 - Mar 02, 2016 02:45:56 pm
The final report from RRS was received and sent to LFGAppeals for attachment to AWD. - SARCH6 - Mar 10, 2016 02:26:00 pm
QA RESPONSE: Physician Peer Review
Claimant: Jamie Flanagan
Claim Number: 1130226196

Vendor: RRS
Audit Date: 3/11/16
Peer Reviewer: Joseph G. Thomas, MD
Peer Reviewer Board Certifications: Occupational Medicine
Teleconference was not attempted but/was not completed with Dr. Hopewell due to no significant medical disagreement.

Received and reviewed peer report. The peer reviewer notes the claimant's pertinent clinical history and responds to questions posed. The peer reviewer concluded that the medical records support restrictions and limitations as follows from 11/25/2015 and forward:

The claimant could lift up to 7 pounds occasionally.
She could perform frequent sitting with 20 minutes of continuous sitting.
She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
She could perform occasional bending and stooping
She could perform frequent reaching and fingering.
These limitations are for an 8 hour work day and 40 hour work week.

Clinical rationale is provided. See report for details.

Referring DOCSNET case to: RDHASTI

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 42 of 550    LIN0042

**Chronological Activity List**

Report is located in AWD: The report was sent to imaging per SARCH6.

Please call with any questions.

Virginia Rush, RN, BS
Nurse Disability Consultant - VXRUSH - Mar 11, 2016 09:30:01 am

| 3/15/2016 | Documents/Mail | 80 | Appeal Dis Atty Extension Letter | Completed | CXGEARY |
|---|---|---|---|---|---|

Appeal Dis Atty Extension Letter

| 2/10/2016 12:30:18 PM | Claim Tasks | 34 | Appeal - 45 Day Reminder | Requested | RDHASTI |
|---|---|---|---|---|---|

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:38 pm

| 3/15/2016 | Claim Tasks | 34 | Appeal - 45 Day Reminder | Completed | RDHASTI |
|---|---|---|---|---|---|

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:38 pm

| 3/15/2016 | Telephone (OUT) | 38 | LAW OFFICES OF RICK VASQUEZ | Completed | CXGEARY |
|---|---|---|---|---|---|

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was. Called atty's office to advise of 45 day extension and apologize for reaching out to clmt. Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:18 pm

| 3/15/2016 | Telephone (OUT) | 37 | JAMIE FLANAGAN | Completed | CXGEARY |
|---|---|---|---|---|---|

Called clmt. Advised we are approaching the 45th day and file is still under review. Med report is back, but now we are having a vocational review done. Advised we will need to take our 45 day extension and gave explanation of what that entails. Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:47:39 pm

| 3/11/2016 7:20:22 AM | Documents/Mail | 79 | Medical Records | Received | RDHASTI |
|---|---|---|---|---|---|

2016-03-10-15.25.09.204920O01
Peer review - CXGEARY - Mar 14, 2016 03:48:27 pm

| 3/14/2016 | Documents/Mail | 79 | Medical Records | Completed | RDHASTI |
|---|---|---|---|---|---|

2016-03-10-15.25.09.204920O01
Peer review - CXGEARY - Mar 14, 2016 03:48:27 pm

| 3/11/2016 7:20:21 AM | Documents/Mail | 78 | Email | Received | RDHASTI |
|---|---|---|---|---|---|

2016-03-10-15.25.09.169920O01
Med review with peer review. - CXGEARY - Mar 14, 2016 03:48:02 pm

| 3/14/2016 | Documents/Mail | 78 | Email | Completed | RDHASTI |
|---|---|---|---|---|---|

2016-03-10-15.25.09.169920O01
Med review with peer review. - CXGEARY - Mar 14, 2016 03:48:02 pm

| 3/7/2016 8:33:51 AM | Documents/Mail | 77 | Incoming Correspondence | Received | RDHASTI |
|---|---|---|---|---|---|

2016-03-04-11.53.55.318900O01
3-10-16 Recvd 2/29/16 atty letter adv 1) Dr. Hopewell's letter that I adv was not recvd, was included with the atty's 2/3/16 appeal request letter, and also faxed on 2/10/16; 2) aty adv he still has not recvd the requested file copy. Rdhasti - RDHASTI - Mar 10, 2016 12:36:33 pm

| 3/10/2016 | Documents/Mail | 77 | Incoming Correspondence | Completed | RDHASTI |
|---|---|---|---|---|---|

2016-03-04-11.53.55.318900O01
3-10-16 Recvd 2/29/16 atty letter adv 1) Dr. Hopewell's letter that I adv was not recvd, was included with the atty's 2/3/16 appeal request letter, and also faxed on 2/10/16; 2) aty adv he still has not recvd the requested file copy. Rdhasti - RDHASTI - Mar 10, 2016 12:36:33 pm

| 3/10/2016 | Telephone (OUT) | 36 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |
|---|---|---|---|---|---|

3-10-16 Called atty office to ask if file copy recvd, and to adv Dr. Hopewell's letter was recvd. Spoke to Katrina who adv file copy recvd. I adv file out for peer and I would call once decision was ready. Rdhasti - RDHASTI - Mar 10, 2016 12:41:26 pm

| 2/25/2016 | Documents/Mail | 76 | Atty Ltr with Copy of Claim File | Completed | SEGDA4 |
|---|---|---|---|---|---|

Atty Ltr with Copy of Claim File

| 2/10/2016 11:27:28 AM | Claim Tasks | 32 | Paper File | Requested | SEGDA4 |
|---|---|---|---|---|---|

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

Include LTD 1130226196 - RDHASTI - Feb 10, 2016 11:27:58 am

File copy goes to an attorney. - RDHASTI - Feb 10, 2016 11:33:07 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Copy has been prepared, it is in the CSS folder as:

J FLANAGAN 1130226196  2-19-16

Please review , advise if any pages need to be removed and flip the task back to my initials. I w ill burn the copy to a disk and mail to the attorney.

 - SARCH6 - Feb 19, 2016 09:18:49 am

2-19-16 OK to send. Rdhasti - RDHASTI - Feb 19, 2016 03:52:15 pm

Created letter, combined letter w ith PDF and created CD, printed and enclosed instructions, and mailed CD.  - SEGDA4 - Feb 25, 2016 10:22:20 am

| 2/25/2016 | Claim Tasks | 32 | Paper File | Completed | SEGDA4 |

Please prepare a full file copy.  As a reminder, the file copy should include all documents w ithin the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

Include LTD 1130226196 - RDHASTI - Feb 10, 2016 11:27:58 am

File copy goes to an attorney. - RDHASTI - Feb 10, 2016 11:33:07 am

Copy has been prepared, it is in the CSS folder as:

J FLANAGAN 1130226196  2-19-16

Please review , advise if any pages need to be removed and flip the task back to my initials. I w ill burn the copy to a disk and mail to the attorney.

 - SARCH6 - Feb 19, 2016 09:18:49 am

2-19-16 OK to send. Rdhasti - RDHASTI - Feb 19, 2016 03:52:15 pm

Created letter, combined letter w ith PDF and created CD, printed and enclosed instructions, and mailed CD.  - SEGDA4 - Feb 25, 2016 10:22:20 am

| 2/24/2016 | Documents/Mail | 75 | Atty Ltr w ith Copy of Claim File | Completed | SEGDA4 |

Atty Ltr w ith Copy of Claim File

| 2/19/2016 4:12:53 PM | Referrals | 20413 | Ongoing Claim Review | Initial | MA-MGR |

Date:  2/19/2016
Claimant Name:  Jamie Flanagan
Claim Number:  1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP:  90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: 11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD:  Nurse Practitioner
DOT Classification:  Medium
Primary Diagnoses: Chronic low  back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service: 12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review . - RDHASTI - Feb 19, 2016 04:13:11 pm
Clinical Consultation Response:

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 06:24:30 am

**Chronological Activity List**

Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:45:28 pm

| 2/23/2016 | Referrals | 20413 Ongoing Claim Review | Completed | MA-MGR |

Date: 2/19/2016
Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: 11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service: 12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review . - RDHASTI - Feb 19, 2016 04:13:11 pm
Clinical Consultation Response:

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claimant;  Jamie Flanagan
Claim #:  1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 06:24:30 am
Appeal direction completed.  Consensus is Occ Med peer.  BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/16/2016 5:18:18 PM | Documents/Mail | 74 | Medical Records | Received | RDHASTI |

2016-02-10-12.45.27.156260O01
2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/19/2016 | Documents/Mail | 74 | Medical Records | Completed | RDHASTI |

2016-02-10-12.45.27.156260O01
2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/11/2016 8:14:35 AM | Documents/Mail | 73 | Incoming Correspondence | Received | RDHASTI |

2016-02-10-12.45.11.793200O01
2-16-16 Recvd 12/9/15 Dr. Donald Hopewell (neuro) letter adv he has no recollection of any conversation with the clmnt's insurance company regarding any aspect of clmnt's care including disability. Rdhasti - RDHASTI - Feb 16, 2016 09:56:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/16/2016 | Documents/Mail | 73 | Incoming Correspondence | Completed | RDHASTI |

2016-02-10-12.45.11.793200O01
2-16-16 Recvd 12/9/15 Dr. Donald Hopewell (neuro) letter adv he has no recollection of any conversation with the clmnt's insurance company regarding any aspect of clmnt's care including disability. Rdhasti - RDHASTI - Feb 16, 2016 09:56:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/10/2016 | Documents/Mail | 72 | Appeal Dis Atty Ackappeal | Completed | RDHASTI |

Appeal Dis Atty Ackappeal

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/10/2016 | Claim Tasks | 33 | Open Review | Completed | RDHASTI |

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:15 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/9/2016 8:04:12 PM | Claim Tasks | 30 | Appeal - 4 day notice | Requested | RDHASTI |
| 2/10/2016 | Claim Tasks | 30 | Appeal - 4 day notice | Completed | RDHASTI |
| 2/10/2016 | Telephone (IN) | 35 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

2-10-16 Recvd call from Katrina in ATTY office confirming we did not receive Dr. Hopwerll letter advising that Dr. Hopewell had no recollection of speaking to the peer reviewer. I confirmed letter not recvd with appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review. Rdhasti - RDHASTI - Feb 10, 2016 11:40:33 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/4/2016 8:41:44 AM | Claim Tasks | 29 | Appeal - Review Any OCC | Requested | MXMACHI |
| 2/5/2016 | Claim Tasks | 29 | Appeal - Review Any OCC | Completed | MXMACHI |
| 10/6/2015 | Documents/Mail | 71 | Decision Letter | Completed | MXMACHI |

2015-10-01-17.26.54.189580O01

8/21/2017

42

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/6/2015 | Documents/Mail | 70 | Email | Completed | MXMACHI |

2015-10-01-17.26.54.157580O01

| 9/28/2015 3:11:21 PM | Documents/Mail | 69 | Denial Any Occupation | Work In Progress | MXMACHI |

Record w as canceled.  Completed to remove from case diary.  Date: 02-OCT-15
Denial Any Occupation


emaield manually - MXMACHI - Oct 01, 2015 04:25:57 pm

| 10/1/2015 | Documents/Mail | 69 | Denial Any Occupation | Completed | MXMACHI |

Record w as canceled.  Completed to remove from case diary.  Date: 02-OCT-15
Denial Any Occupation


emaield manually - MXMACHI - Oct 01, 2015 04:25:57 pm

| 10/1/2015 | Claim Tasks | 28 | Unable to process correspondence | Completed | MXMACHI |

No e-mail address found for manifest seqence number 69.  Please populate the e-mail address.
emailed manually - MXMACHI - Oct 01, 2015 04:25:14 pm

| 10/1/2015 | Telephone (OUT) | 34 | JAMIE FLANAGAN | Completed | MXMACHI |

10/1/15
EE emailed in about last payment, called and adv of denial and that appeal process is in letter.
 - MXMACHI - Oct 01, 2015 11:22:12 am

| 9/28/2015 3:43:29 PM | Referrals | 20413 | Management Review | Initial | MXMACHI |

9/28/15
DENIAL RATIONALE:  Clmt is a 35 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file w as sent for a review w ith an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review  stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted."  Review  also noted that R&LS on APS of inability to w ork w ithout unlimited ability to rest and take breaks, w ere based off of w hat EE told him. Peerlinical review  states Based on review  of the more recent neurology MD follow  notes through 07/15/15 as w ell as phone call to DR Hopew ell's office along w ith the previous UDC peer review  report, does not appear to be evidence of physical exam changes or w orsening symptoms that w ould change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and w alking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldow se for review
 - Management Review  - MXMACHI - Sep 28, 2015 03:43:44 pm


Agree w ith determination to deny benefits beyond the COD.  Based on the information contained in Ms. Flanagan's file she w ould have a sed capacity.  TSA completed and gainful found.   - Management Review  - JLDOWSE - Sep 28, 2015 04:23:19 pm

| 9/29/2015 | Referrals | 20413 | Management Review | Completed | MXMACHI |

9/28/15
DENIAL RATIONALE:  Clmt is a 35 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file w as sent for a review  w ith an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review  stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted."  Review  also noted that R&LS on APS of inability to w ork w ithout unlimited ability to rest and take breaks, w ere based off of w hat EE told him. Peerlinical review  states

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
 - Management Review - MXMACHI - Sep 28, 2015 03:43:44 pm

Agree with determination to deny benefits beyond the COD.  Based on the information contained in Ms. Flanagan's file she would have a sed capacity.  TSA completed and gainful found.   - Management Review - JLDOWSE - Sep 28, 2015 04:23:19 pm

| 6/8/2015 2:32:39 PM | Summary/Assessment/P:2h | open sap - MXMACHI - Jun 08, 2015 02:33:08 pm | Requested | MXMACHI |

Summary Notes
open sap - MXMACHI - Jun 08, 2015 02:33:08 pm
Assessment Notes
see path - MXMACHI - Jun 08, 2015 02:33:08 pm
Path Notes

***********************ATTORNEY REPRESENTATION - 2/18/2013*******************
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735

5/20/15
Response from Beth knox fnp stating no recs received

5/18/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time.

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension

4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness.  TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)

4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>

4/6/15

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 49 of 550   LIN0049

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
 - B1SMITH - Apr 06, 2015 05:16:14 pm

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm

3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months.

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm

EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  - TMELDER - Nov 24, 2014 06:49:00 am

Per peer review, ee had r & ls that would prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am

fu w/ee, if appears unable to rtoo, check voc, poss stlmnt.  - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs  - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review will refer to STL/PTD or deny claim.  - AS0DE7 - Mar 02, 2015 04:10:11 pm

**Chronological Activity List**

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension.  tme

6/20/14 Releasing initial benefit.  J2D

6/20/14-recd email w/salary info,  ee makes $43.29 for 80 hrs biweekly,  $43.29 x 2080 = $90,004.32 / 12 = $7,503.60.  will release benefits.tme

6/20/14-to er for salary info.  tme

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme

6/17/14-phone call to attorney
left mess, getting ready to release benefits, do we pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement.  left direct number.   tme

6/17/14 to er to verfiy if ee receiving pension. tme

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  Per peer review, ee had r & ls that would prevent her from performing her OO.  PATH:  reqst voc survery and review to determine if ee would have ability to work sed w/r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling.  J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City.  Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review  R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review, the claimant would have restrictions and limitations precluding full time work in her own light occupation. . Therefore, I am overturning own occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review. R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H

5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for

**Chronological Activity List**

Physiatry peer review . R2H

5-21-14 Schedued 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI aw ard letter.
Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w /my contact info. R2H

5/13/14  Assigned 1st level appeal to R2H.  c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
  SSS receipt of NOA dated 4/14/14 from EE
date of entitlement =  2/1/14
amount of the aw ard =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro aw ard = $3433.50
claimant has not enrolled in CORS,
Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit..     BXM

4/28/14 recvd mail from Atty - EE has been aw arded SSD. Set flup to SSA to review aw ard details.  SSD starts 02/2014 in amt of $2289.00. There w ill be no ovp on the claim.  LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE w ith respect to LTD claim.  He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim.   I w ill send him a copy of the file.   LML

12/6/13 Recvd vm from ER - clld ER back.  ADvised of denial.  No questions. LML

12/5/13 clld EE to advise of denial - being mailed today.  Discussed denial.  She w ill appeal.  LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree w ith determination to deny benefits.  Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord

stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13 Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

Initial Claims Summary

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FNDNG: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FNANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML***************************************


11/19/13 Nurse Practicioner - Light Occ. We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG
 - MXMACHI - Jun 08, 2015 02:33:08 pm
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:22:05 am
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
 - MXMACHI - Aug 27, 2015 03:29:34 pm
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours

each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
 - MXMACHI - Sep 28, 2015 03:43:23 pm

| | | | | |
|---|---|---|---|---|
| 9/29/2015 | Summary/Assessment/Path | open sap - MXMACHI - Jun 08, 2015 02:33:08 pm | Completed | MXMACHI |

Summary Notes
open sap - MXMACHI - Jun 08, 2015 02:33:08 pm
Assessment Notes
see path - MXMACHI - Jun 08, 2015 02:33:08 pm
Path Notes


***********************ATTORNEY REPRESENTATION - 2/18/2013*******************
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735


5/20/15
Response from Beth knox fnp stating no recs received

5/18/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time.

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension


4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)

4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>


4/6/15

8/21/2017                                                                                                                        50

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation how ever she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
- B1SMITH - Apr 06, 2015 05:16:14 pm

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm

3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months.

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm

EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. - TMELDER - Nov 24, 2014 06:49:00 am

Per peer review, ee had r & ls that would prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am

fu w/ee, if appears unable to rtoo, check voc, poss stlmnt. - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review will refer to STL/PTD or deny claim. - AS0DE7 - Mar 02, 2015 04:10:11 pm

**Chronological Activity List**

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension.  tme

6/20/14 Releasing initial benefit.  J2D

6/20/14-recd email w/salary info,  ee makes $43.29 for 80 hrs biweekly,  $43.29 x 2080 = $90,004.32 / 12 = $7,503.60.  will release benefits.tme

6/20/14-to er for salary info.  tme

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme
6/17/14-phone call to attorney
left mess, getting ready to release benefits, do we pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement.  left direct number.   tme
6/17/14 to er to verfiy if ee receiving pension. tme

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  Per peer review, ee had r & ls that would prevent her from performing her OO.  PATH: reqst voc survery and review to determine if ee would have ability to work sed w/r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling.  J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City.  Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review  R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review, the claimant would have restrictions and limitations precluding full time work in her own light occupation. . Therefore, I am overturning own occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review . R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H

5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for

Physiatry peer review . R2H

5-21-14 Schedued 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI aw ard letter.
Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w /my contact info. R2H

5/13/14  Assigned 1st level appeal to R2H.  c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
  SSS receipt of NOA dated 4/14/14 from EE
date of entitlement =   2/1/14
amount of the aw ard =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro aw ard = $3433.50
claimant has not enrolled in CORS,
Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit..     BXM

4/28/14 recvd mail from Atty - EE has been aw arded SSD.  Set flup to SSA to review aw ard details.  SSD starts 02/2014 in amt of $2289.00. There w ill be no ovp on the claim.  LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE w ith respect to LTD claim.  He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim.   I w ill send him a copy of the file.   LML

12/6/13 Recvd vm from ER - clld ER back.  ADvised of denial.  No questions. LML

12/5/13 clld EE to advise of denial - being mailed today.  Discussed denial.  She w ill appeal.  LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree w ith determination to deny benefits.  Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord

stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13 Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

 Initial Claims Summary

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FNDNG: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FNANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML*************************************


11/19/13 Nurse Practicioner - Light Occ.   We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG
 - MXMACHI - Jun 08, 2015 02:33:08 pm
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:22:05 am
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
 - MXMACHI - Aug 27, 2015 03:29:34 pm
9/28/15
DENIAL RATIONALE:  Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours

**Chronological Activity List**

each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:23 pm

| | | | | | |
|---|---|---|---|---|---|
| 9/28/2015 3:11:21 PM | Documents/Mail<br>Denial Any Occupation | 68 | Denial Any Occupation | Work In Progress | MXMACHI |
| 9/29/2015 | Documents/Mail<br>Denial Any Occupation | 68 | Denial Any Occupation | Completed | MXMACHI |
| 9/28/2015 3:11:21 PM | Documents/Mail<br>Denial Any Occupation | 67 | Denial Any Occupation | Work In Progress | MXMACHI |
| 9/29/2015 | Documents/Mail<br>Denial Any Occupation | 67 | Denial Any Occupation | Completed | MXMACHI |
| 6/17/2014 11:35:56 AM | Claim Tasks<br>DOCSQL Investigation Type: Claim Update<br>Source: 6 mo<br>6 mo to term | 15 | Update Claim Information | Requested | MXMACHI |
| 9/29/2015 | Claim Tasks<br>DOCSQL Investigation Type: Claim Update<br>Source: 6 mo<br>6 mo to term | 15 | Update Claim Information | Completed | MXMACHI |
| 6/17/2014 11:36:59 AM | Claim Tasks<br>DOCSQL Investigation Type: Employer Contact | 17 | Call Employer | Requested | MXMACHI |

Source: pension

7/7/14 per email from er, ee not receiving her pension. tme

verify pension

6/18/14-Per Attorneys ofc ee has not applied for pensions.

to er to verify if ee taking penson - TMELDER - Jan 07, 2015 09:45:03 am
emailed er - MXMACHI - Apr 28, 2015 08:28:59 am
looking it it as of 4/28/15 - MXMACHI - Apr 30, 2015 11:16:42 am
emailed again - MXMACHI - May 05, 2015 08:38:38 am

if no response call crystal Morehouse, at 417-269-6544 - MXMACHI - May 05, 2015 01:29:27 pm
5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
- MXMACHI - May 11, 2015 11:54:34 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time. - MXMACHI - May 18, 2015 10:28:56 am

| | | | | | |
|---|---|---|---|---|---|
| 9/29/2015 | Claim Tasks<br>DOCSQL Investigation Type: Employer Contact | 17 | Call Employer | Completed | MXMACHI |

Source: pension

7/7/14 per email from er, ee not receiving her pension. tme

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

verify pension

6/18/14-Per Attorneys ofc ee has not applied for pensions.

to er to verify if ee taking penson - TMELDER - Jan 07, 2015 09:45:03 am
emailed er - MXMACHI - Apr 28, 2015 08:28:59 am
looking it it as of 4/28/15 - MXMACHI - Apr 30, 2015 11:16:42 am
emailed again - MXMACHI - May 05, 2015 08:38:38 am

if no response call crystal Morehouse, at 417-269-6544 - MXMACHI - May 05, 2015 01:29:27 pm
5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
 - MXMACHI - May 11, 2015 11:54:34 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any
withdrawal at this time.  - MXMACHI - May 18, 2015 10:28:56 am

| 6/20/2014 12:27:12 PM | Claim Tasks | 18 | Call Claimant | Requested | MXMACHI |

DOCSQL Investigation Type: Claimant Contact

Source: ee

fu w/ee 3 mon
Any occ investigation in process.  - MXMACHI - Mar 09, 2015 01:21:56 pm

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however
she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day.
She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to
be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she
could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can
wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn
then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to
get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms
absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at
903-822-3342 if needed
 - B1SMITH - Apr 06, 2015 05:16:14 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from
B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to
send rest of forms separate. I adv of my email and direct fax#>
 - MXMACHI - Apr 13, 2015 12:32:13 pm
ee emailed in ao forms on 4/17/15 - MXMACHI - Apr 17, 2015 04:02:29 pm

recs ordered - MXMACHI - May 18, 2015 04:10:39 pm
Sent for tsa - MXMACHI - Sep 17, 2015 02:28:56 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:22 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt
had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file
was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and
Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion
and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours
each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She
would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs
occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs,
kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be
never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to
work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states
Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:58 pm

| 9/29/2015 | Claim Tasks | 18 | Call Claimant | Completed | MXMACHI |

DOCSQL Investigation Type: Claimant Contact

Source: ee

fu w/ee 3 mon
Any occ investigation in process. - MXMACHI - Mar 09, 2015 01:21:56 pm

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
- B1SMITH - Apr 06, 2015 05:16:14 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:13 pm
ee emailed in ao forms on 4/17/15 - MXMACHI - Apr 17, 2015 04:02:29 pm

recs ordered - MXMACHI - May 18, 2015 04:10:39 pm
Sent for tsa - MXMACHI - Sep 17, 2015 02:28:56 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:22 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:58 pm

| 2/27/2015 8:07:43 PM | Claim Tasks | 24 | Begin AO Investigation | Requested | MXMACHI |

Mailed Begin AO ltr, will f/u with EE in 30 days. COD 11/24/15. - AS0DE7 - Mar 02, 2015 04:06:01 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>

**Chronological Activity List**

- MXMACHI - Apr 13, 2015 12:31:53 pm
ee emailed in forms 4/17/15 - MXMACHI - Apr 17, 2015 04:04:20 pm
4/21/15
ANY OCC forms received under aw d 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)
- MXMACHI - Apr 21, 2015 09:32:28 am


recs ordered - MXMACHI - Jun 03, 2015 07:48:50 am


send to consult - MXMACHI - Aug 27, 2015 03:28:50 pm
in clinical review - MXMACHI - Aug 31, 2015 07:52:45 am
sent for tsa - MXMACHI - Sep 17, 2015 02:28:35 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:01 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:44:08 pm

| 9/29/2015 | Claim Tasks | 24 | Begin AO Investigation | Completed | MXMACHI |

Mailed Begin AO ltr, will f/u with EE in 30 days. COD 11/24/15. - AS0DE7 - Mar 02, 2015 04:06:01 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:31:53 pm
ee emailed in forms 4/17/15 - MXMACHI - Apr 17, 2015 04:04:20 pm
4/21/15
ANY OCC forms received under aw d 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)
- MXMACHI - Apr 21, 2015 09:32:28 am


recs ordered - MXMACHI - Jun 03, 2015 07:48:50 am


send to consult - MXMACHI - Aug 27, 2015 03:28:50 pm
in clinical review - MXMACHI - Aug 31, 2015 07:52:45 am
sent for tsa - MXMACHI - Sep 17, 2015 02:28:35 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:01 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:44:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/10/2015 1:01:24 PM | Documents/Mail | 66 | Denial Any Occupation | Work In Progress | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 29-SEP-15
Denial Any Occupation

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/28/2015 | Documents/Mail | 66 | Denial Any Occupation | Completed | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 29-SEP-15
Denial Any Occupation

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/17/2015 2:27:35 PM | Referrals | 20413 | TSA | Initial | MXMACHI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review? (yes, date and location):
Own Occupation
Job Title from ER: nurse practicner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:
Please perform TSA for sedentary
- MXMACHI - Sep 17, 2015 02:27:50 pm

E-mailed CE requested clarification regarding what medical information should be reviewed for TSA.
S. Nidositko, MS, CRC - STFNI3 - Sep 23, 2015 01:35:52 pm

Rec'd clarification from CE that VRC is to review Peer Review dated 6-9-14.
S. Nidositko

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. Occupations were identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.
Stacey Nidositko, MS, CRC
- STFNI3 - Sep 23, 2015 02:30:38 pm

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/25/2015 | Referrals | 20413 | TSA | Completed | MXMACHI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:
Please perform TSA for sedentary
 - MXMACHI - Sep 17, 2015 02:27:50 pm

E-mailed CE requested clarification regarding what medical information should be reviewed for TSA.
S. Nidositko, MS, CRC - STFNl3 - Sep 23, 2015 01:35:52 pm

Rec'd clarification from CE that VRC is to review Peer Review dated 6-9-14.
S. Nidositko

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. Occupations were identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.
Stacey Nidositko, MS, CRC
 - STFNl3 - Sep 23, 2015 02:30:38 pm

| 8/28/2015 1:15:14 PM | Referrals | 20413 | Change of Definition | Initial | MXMACHI |
|---|---|---|---|---|---|

Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35
Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note

8/21/2017

61

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):

   Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review, the claim"
 - MXMACHI - Aug 28, 2015 08:08:39 am - TMHARTS - Aug 28, 2015 01:15:25 pm
Claimant Name:  Flannagan, Jamie
Claim Number:  1130226196

Documents Reviewed:  Reviewed neurology MD progress notes through 07/15/15 with diagnostic test results long with the previous peer review report from 06/09/14.

Conclusion: Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach.  See that report for details. This reviewer phone call to claimant also indicated claimant is able to perform own ADL's.

Rationale with supportive medical finding: See recent full medical review for specific history and information. This is a 35 year old female nurse (Med occ) with DOD of 08/26/13 with diagnosis of post laminectomy syndrome. Appears SSDI has been awarded and COD is 11/24/15.

Per the claimant's submitted ISS form, claimant reports she can drive up to 20 minutes, needs help in housework, and spouse needs to help her shave legs.

Submitted AF dated 04/21/5 from Neurology Pain Management MD DR Hopewell indicates claimant can sit frequently in 20 minute duration, can frequently finger, handle and reach above shoulder level. Cannot lift any weight. Can occasionally stand, walk, drive and operate foot controls. Never climb, bend or kneel.

Neurology MD notes dated 01/20/15 indicates claimant in for post laminectomy syndrome. Last flare was significantly improved with Dexamethasone. Doing reasonably well with taking pain medications. Has no new motor, sensory, or bowel or bladder complaints and denies medication side effects.

Neurologist follow up note dated 07/15/15 indicates claimant in for chronic LBP due to lumbar spondylosis, post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component.
  Claimant reports her pain has been marginally controlled. Has issues with dysphoria and cries a lot. Also reports having a hard time getting up in the morning. MD states exam remains normal.
  Assessment is claimant is clearly depressed that is likely related to her pain. To see the rheumatologist for her autoimmune disease. To follow up in 3 months.

Per the previous UDC peer review from 06/09/14, the peer reviewer indicated the records supported functional impairments that would preclude lifting > 20 lbs, can sit 6-8 hours per day with position changes, can stand and walk up to hours per day, and may climb stairs, kneel, stoop and may reach. See that report for details. Can frequently handle and finger.

Please see this reviewer phone note with DR Hopewell's office nurse.

Specific clinical recommendations for next steps and time frames for follow up: Referring to upper management for oversight review .

Return to work. No plans at this time.

Ted Hartsock, RN, BSN
Nurse Disability Consultant - TMHARTS - Sep 03, 2015 09:53:36 am
9/17/2015
Manager Oversight Review

Jamie Flanagan
1130226196

No peer review necessary at this time, due to no material difference in the medical information reviewed by the peer reviewer and currently submitted information.

Sending back to mxmachi for further handling.

Karen Greni, RN
Manager Clinical Operations - KXGRENI - Sep 17, 2015 10:50:50 am

9/17/2015    Referrals              20413!Change of Definition                    Completed        MXMACHI
Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35

**Chronological Activity List**

Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):

  Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis.  Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be

unrestricted." Based on all medical information received for review, the claim"
- MXMACHI - Aug 28, 2015 08:08:39 am - TMHARTS - Aug 28, 2015 01:15:25 pm
Claimant Name: Flannagan, Jamie
Claim Number: 1130226196

Documents Reviewed: Reviewed neurology MD progress notes through 07/15/15 with diagnostic test results long with the previous peer review report from 06/09/14.

Conclusion: Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. See that report for details. This reviewer phone call to claimant also indicated claimant is able to perform own ADL's.

Rationale with supportive medical finding: See recent full medical review for specific history and information. This is a 35 year old female nurse (Med occ) with DOD of 08/26/13 with diagnosis of post laminectomy syndrome. Appears SSDI has been awarded and COD is 11/24/15.

Per the claimant's submitted ISS form, claimant reports she can drive up to 20 minutes, needs help in housework, and spouse needs to help her shave legs.

Submitted AF dated 04/21/5 from Neurology Pain Management MD DR Hopewell indicates claimant can sit frequently in 20 minute duration, can frequently finger, handle and reach above shoulder level. Cannot lift any weight. Can occasionally stand, walk, drive and operate foot controls. Never climb, bend or kneel.

Neurology MD notes dated 01/20/15 indicates claimant in for post laminectomy syndrome. Last flare was significantly improved with Dexamethasone. Doing reasonably well with taking pain medications. Has no new motor, sensory, or bowel or bladder complaints and denies medication side effects.

Neurologist follow up note dated 07/15/15 indicates claimant in for chronic LBP due to lumbar spondylosis, post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component.
  Claimant reports her pain has been marginally controlled. Has issues with dysphoria and cries a lot. Also reports having a hard time getting up in the morning. MD states exam remains normal.
  Assessment is claimant is clearly depressed that is likely related to her pain. To see the rheumatologist for her autoimmune disease. To follow up in 3 months.

Per the previous UDC peer review from 06/09/14, the peer reviewer indicated the records supported functional impairments that would preclude lifting > 20 lbs, can sit 6-8 hours per day with position changes, can stand and walk up to hours per day, and may climb stairs, kneel, stoop and may reach. See that report for details. Can frequently handle and finger.

Please see this reviewer phone note with DR Hopewell's office nurse.

Specific clinical recommendations for next steps and time frames for follow up: Referring to upper management for oversight review.

Return to work. No plans at this time.

Ted Hartsock, RN, BSN
Nurse Disability Consultant - TMHARTS - Sep 03, 2015 09:53:36 am
9/17/2015
Manager Oversight Review

Jamie Flanagan
1130226196

No peer review necessary at this time, due to no material difference in the medical information reviewed by the peer reviewer and currently submitted information.

Sending back to mxmachi for further handling.

Karen Greni, RN
Manager Clinical Operations - KXGRENI - Sep 17, 2015 10:50:50 am

| | | | | | |
|---|---|---|---|---|---|
| 9/3/2015 | Telephone (OUT) | 33 | JAMIE FLANAGAN | Completed | TMHARTS |

Talked with claimant to get verification if she can perform own ADL's. Jamie stated she is able to do most own ADL"s, can bath, shower and dress self, can do some cooking. Indicated she cannot sit long periods unless she changes positions often. Does not drive. Also gets sleep taking her pain meds and has poor sleep. Also said she has a appointment with her rheumatologist today. Thanked her for her time. Ted Hartsock, RN. - TMHARTS - Sep 03, 2015 09:50:28 am

| | | | | | |
|---|---|---|---|---|---|
| 9/2/2015 | Telephone (OUT) | 32 | JAMIE FLANAGAN | Completed | TMHARTS |

Dr Hopewell's office. Talked with RN Cherry to clarify if the claimant can lift any amount of weight <5 lbs or less). RN indicated her or MD would know what weight claimant can lift. Ted Hartsock, RN. - TMHARTS - Sep 02, 2015 02:00:52 pm

| | | | | | |
|---|---|---|---|---|---|
| 8/28/2015 | Referrals | 20413!Change of Definition | | Completed | TMHARTS |

Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35
Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):


Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review, the claim"
- MXMACHI - Aug 28, 2015 08:08:39 am

| 8/26/2015 9:55:03 AM | Documents/Mail | 64 | Medical Records | Received | MXMACHI |

2015-08-25-12.21.27.516480:O:01
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:09 pm

| 8/27/2015 | Documents/Mail | 64 | Medical Records | Completed | MXMACHI |

2015-08-25-12.21.27.516480:O:01
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP w hich cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it w as improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain follow ing a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been  having increasing problems w ith dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to w ork very w ell. having problems w ith heat intolerance. EE tearful during interview  and exam. It is clear having significant depression w hich is increasing her pain issue.
  - MXMACHI - Aug 27, 2015 03:29:09 pm

| 8/26/2015 9:55:03 AM | Documents/Mail | 65 | Email | Received | MXMACHI |

2015-08-25-12.21.27.478480:O:01

| 8/27/2015 | Documents/Mail | 65 | Email | Completed | MXMACHI |

2015-08-25-12.21.27.478480:O:01

| 7/24/2015 10:35:56 AM | Medical | 7 | | Initial | MXMACHI |

mednotice already sent

please use spec au under aw d 2015-7-22 - MXMACHI - Jul 24, 2015 10:36:55 am

I had to mail the request because the pdf file for the auth w as too large and w ould not load up into GP Bridge.

  - SH6MI5 - Jul 29, 2015 02:59:03 pm

TT Angie at DO, Waiting on payment, Processed by Healthport Id. No -174400652 - CHVNA7 - Aug 13, 2015 04:11:22 pm
invoice reiceved - MXMACHI - Aug 19, 2015 12:15:29 pm
8/27/15
Med recs received from DR. Hopew ell under aw d 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain w hich significantly improved w ith short course of dexamethasone. Doing reasonably w ell w ith her pain overall although having more problems w ith cold w eather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the low er extremities particularly in the feet that occurs w hen she tries to sleep. Area of pain otherw ise is lumbar location and is w orse w ith prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP w hich cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it w as improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain follow ing a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been  having increasing problems w ith dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to w ork very w ell. having problems w ith heat intolerance. EE tearful during interview  and exam. It is clear having significant depression w hich is increasing her pain issue.
  - MXMACHI - Aug 27, 2015 03:29:01 pm

| 8/27/2015 | Medical | 7 | | Closed | MXMACHI |

mednotice already sent

please use spec au under aw d 2015-7-22 - MXMACHI - Jul 24, 2015 10:36:55 am

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

I had to mail the request because the pdf file for the auth was too large and would not load up into GP Bridge.

- SH6MI5 - Jul 29, 2015 02:59:03 pm

TT Angie at DO, Waiting on payment, Processed by Healthport Id. No -174400652 - CHVNA7 - Aug 13, 2015 04:11:22 pm
invoice reiceved - MXMACHI - Aug 19, 2015 12:15:29 pm
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:01 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/14/2015 10:21:46 AM | Documents/Mail | 62 | Pre-Payment Invoice | Received | ADYOUNG |

2015-08-13-14.17.52.839300:O:01
paid w / cc, Your HealthPort transaction ID for this payment is CC3324872. The credit card confirmation number for this transaction is 4400975683995000001338. - ADYOUNG - Aug 20, 2015 02:11:20 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/20/2015 | Documents/Mail | 62 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-08-13-14.17.52.839300:O:01
paid w / cc, Your HealthPort transaction ID for this payment is CC3324872. The credit card confirmation number for this transaction is 4400975683995000001338. - ADYOUNG - Aug 20, 2015 02:11:20 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/14/2015 | Documents/Mail | 63 | Email | Completed | MXMACHI |

From: Machian, Mike
Sent: Friday, August 14, 2015 3:08 PM
To: 'Jamie Flanagan'
Subject: RE: Release

We have not received them yet, but I expect to have them soon.

From: Jamie Flanagan [mailto:jamieandjason0306@gmail.com]
Sent: Friday, August 14, 2015 10:18 AM
To: Machian, Mike
Subject: Release

Mr . Machian,
Have you gotten my records from Dr. Hopewell yet?
Thanks,
Jamie
- MXMACHI - Aug 14, 2015 03:08:33 pm

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/29/2015 | Documents/Mail<br>Med Rec Request | 61 | Med Rec Request | Completed | SH6MI5 |
| 7/23/2015 7:40:20 AM | Documents/Mail<br>2015-07-22-13.07.54.919360:O:01 | 60 | Email | Received | MXMACHI |
| 7/24/2015 | Documents/Mail<br>2015-07-22-13.07.54.919360:O:01 | 60 | Email | Completed | MXMACHI |
| 7/23/2015 7:40:20 AM | Documents/Mail<br>2015-07-22-13.07.54.961360:O:01 | 59 | Claim Form - Authorization | Received | MXMACHI |
| 7/24/2015 | Documents/Mail<br>2015-07-22-13.07.54.961360:O:01 | 59 | Claim Form - Authorization | Completed | MXMACHI |
| 5/26/2015 8:07:32 AM | Medical | 6 | | Initial | MXMACHI |

RESENT NEW REQUEST WITH DIFFERENT ADDRESS.
MEDNOTICE ALREADY SENT - MXMACHI - May 26, 2015 08:08:13 am

No answer at DO. Set f/up for 6/19. - MEZBR8 - Jun 18, 2015 04:50:06 pm

Cld provider, tt Lisa, per notes in clmt's file the MRR was sent via fax & they don't accept faxed reqs. Please remail.
***NOTE PLEASE PUT ATTN MEDICAL RECORDS ON THE MAILNG*** - PAACO8 - Jun 19, 2015 03:07:24 pm

Cld provider, there are conflicting notes in their sys. 1. Shows a ltr sent bk stateing needing orginial ink signature from clmt. No date on when ltr was sent. 2. Shows that an inv needs to be sent for release of records. Angie entered these notes & is out of the ofc. for the wk. Once this status is clarified provider will c/b. - PAACO8 - Jun 22, 2015 10:47:04 am
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:21:41 am
45th day follow up - MXMACHI - Jul 16, 2015 07:08:03 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
 - MXMACHI - Jul 22, 2015 11:23:25 am
spec auth received, sending new request cancelling this one - MXMACHI - Jul 24, 2015 10:37:14 am

| 7/24/2015 | Medical | 6 | | Closed | MXMACHI |

RESENT NEW REQUEST WITH DIFFERENT ADDRESS.
MEDNOTICE ALREADY SENT - MXMACHI - May 26, 2015 08:08:13 am

No answer at DO. Set f/up for 6/19. - MEZBR8 - Jun 18, 2015 04:50:06 pm

Cld provider, tt Lisa, per notes in clmt's file the MRR was sent via fax & they don't accept faxed reqs. Please remail.
***NOTE PLEASE PUT ATTN MEDICAL RECORDS ON THE MAILNG*** - PAACO8 - Jun 19, 2015 03:07:24 pm

Cld provider, there are conflicting notes in their sys. 1. Shows a ltr sent bk stateing needing orginial ink signature from clmt. No date on when ltr was sent. 2. Shows that an inv needs to be sent for release of records. Angie entered these notes & is out of the ofc. for the wk. Once this status is clarified provider will c/b. - PAACO8 - Jun 22, 2015 10:47:04 am
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:21:41 am
45th day follow up - MXMACHI - Jul 16, 2015 07:08:03 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
 - MXMACHI - Jul 22, 2015 11:23:25 am
spec auth received, sending new request cancelling this one - MXMACHI - Jul 24, 2015 10:37:14 am

| 7/16/2015 8:38:44 PM | Investigation | 4 | Determine Disability | Requested | MXMACHI |
| 7/24/2015 | Investigation | 4 | Determine Disability | Received | MXMACHI |
| 7/2/2015 8:47:22 PM | Investigation | 3 | Determine Disability | Requested | MXMACHI |

45th day on spec au is 8/18

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

call on spec au for dr hopewell - MXMACHI - Jul 16, 2015 07:08:27 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days
and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:31 am

| 7/24/2015 | Investigation | 3 | Determine Disability | Received | MXMACHI |

45th day on spec au is 8/18

call on spec au for dr hopewell - MXMACHI - Jul 16, 2015 07:08:27 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days
and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:31 am

| 7/22/2015 | Telephone (OUT) | 31 | JAMIE FLANAGAN | Completed | MXMACHI |

7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days
and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:05 am

| 7/16/2015 | Documents/Mail | 58 | 2nd Request Letter | Completed | MXMACHI |

2nd Request LetterAttachments:flanagan spec au.pdf

| 7/2/2015 | Documents/Mail | 57 | Special Authorization | Completed | MXMACHI |

Special AuthorizationAttachments:flanagan spec au.pdf

| 7/1/2015 1:55:25 PM | Documents/Mail | 56 | Email | Received | MXMACHI |

2015-07-01-10.27.21.814040:O:01

| 7/2/2015 | Documents/Mail | 56 | Email | Completed | MXMACHI |

2015-07-01-10.27.21.814040:O:01

| 7/1/2015 1:55:25 PM | Documents/Mail | 55 | Medical Records | Received | MXMACHI |

2015-07-01-10.27.21.853040:O:01
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:56 am

| 7/2/2015 | Documents/Mail | 55 | Medical Records | Completed | MXMACHI |

2015-07-01-10.27.21.853040:O:01
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:56 am

| 6/22/2015 5:15:33 PM | Documents/Mail | 54 | Pre-Payment Invoice | Received | ADYOUNG |

2015-06-22-12.58.15.455040:O:01
Received Healthport prepayment invoice #0171205265 for $28.14, paid with cc, Your HealthPort transaction ID for
this payment is CC3225689. The credit card confirmation number for this transaction is 4353538903765000001353. -
ADYOUNG - Jun 26, 2015 04:28:59 pm

| 6/26/2015 | Documents/Mail | 54 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-06-22-12.58.15.455040:O:01
Received Healthport prepayment invoice #0171205265 for $28.14, paid with cc, Your HealthPort transaction ID for
this payment is CC3225689. The credit card confirmation number for this transaction is 4353538903765000001353. -
ADYOUNG - Jun 26, 2015 04:28:59 pm

| 6/16/2015 | Telephone (OUT) | 30 | JAMIE FLANAGAN | Completed | MXMACHI |

6/16/15
EE called about status of any occ. I adv waiting on recs from dr Hopewell and request was Remailed may 28. She
adv she would give them a call
- MXMACHI - Jun 16, 2015 10:07:15 am

| 11/24/2014 6:48:19 AM | Summary/Assessment/P | 1h | EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 1 | Requested | MXMACHI |

Summary Notes

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  - TMELDER - Nov 24, 2014 06:49:00 am
records show  EE had flare in her symtpoms that required a change in treatment. EE still TDOO - MXMACHI - Mar 11, 2015 09:38:20 am
Assessment Notes
Per peer review , ee had r & ls that w ould prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am
Path Notes
fu w /ee, if appears unable to rtoo,  check voc, poss stlmnt.  - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs  - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw  OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review w ill refer to STL/PTD or deny claim.  - AS0DE7 - Mar 02, 2015 04:10:11 pm
4/24/15
Abilities completed by dr Hopew ell received under aw d 2014-4-21. Form is signed 4/21/14. Says EE can't lift any w eight, can sit for 20 minute duration (although this is w ritten under 'frequently'), can stand, w alk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:36 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any w ithdraw al at this time.  - MXMACHI - May 18, 2015 10:29:19 am

| 6/8/2015 | Summary/Assessment/Path | 1 | EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 1 | Completed | MXMACHI |

Summary Notes
EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.   - TMELDER - Nov 24, 2014 06:49:00 am
records show  EE had flare in her symtpoms that required a change in treatment. EE still TDOO - MXMACHI - Mar 11, 2015 09:38:20 am
Assessment Notes
Per peer review , ee had r & ls that w ould prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am
Path Notes
fu w /ee, if appears unable to rtoo,  check voc, poss stlmnt.  - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs  - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw  OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review w ill refer to STL/PTD or deny claim.  - AS0DE7 - Mar 02, 2015 04:10:11 pm
4/24/15
Abilities completed by dr Hopew ell received under aw d 2014-4-21. Form is signed 4/21/14. Says EE can't lift any w eight, can sit for 20 minute duration (although this is w ritten under 'frequently'), can stand, w alk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:36 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any w ithdraw al at this time.  - MXMACHI - May 18, 2015 10:29:19 am

| 5/28/2015 | Documents/Mail | 53 | Med Rec Request | Completed | MEGHA4 |

Med Rec RequestAttachments:J Flanagan AUTH.pdf

| 4/21/2015 9:21:37 AM | Medical | 3 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:45 am

processed on the 28th, w ill try to get it pushed through so w e can get it a little faster.  - JUXNA0 - May 12, 2015 10:56:23 am

called do and they gave me med rec dept number at 417-556-2175 & they informed me that they didnt recieve it please remail to;  100 mercy w ay, joplin mo, 64804. attention med rec.  - JUXNA0 - May 20, 2015 11:37:24 am

8/21/2017

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Per procedure, close out old request and create new referral with new address as stated in youir notes. Thanks! - DAJIMER - May 22, 2015 04:36:12 pm

| 5/27/2015 | Medical | 3 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:45 am

processed on the 28th, will try to get it pushed through so we can get it a little faster. - JUXNA0 - May 12, 2015 10:56:23 am

called do and they gave me med rec dept number at 417-556-2175 & they informed me that they didnt recieve it please remail to; 100 mercy way, joplin mo, 64804. attention med rec. - JUXNA0 - May 20, 2015 11:37:24 am

Per procedure, close out old request and create new referral with new address as stated in youir notes. Thanks! - DAJIMER - May 22, 2015 04:36:12 pm

| 5/20/2015 1:19:16 PM | Documents/Mail | 52 | Medical Records | Received | MXMACHI |

2015-05-19-18.00.20.954420:O:01

| 5/22/2015 | Documents/Mail | 52 | Medical Records | Completed | MXMACHI |

2015-05-19-18.00.20.954420:O:01

| 4/21/2015 9:29:31 AM | Medical | 5 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:09 am

unable to contain an connection. - JUXNA0 - May 12, 2015 10:24:10 am
DOB ▮▮▮▮ MXMACHI - May 14, 2015 10:56:08 am

COX MEDICAL CENTER BRANSON ROI (IN-HOUSE HPORT): 417-348-8600
Brittney adv. reqst recvd & in-house Hport processed reqst on 4/23, refrd to Hport in ATL.
Pierre w/ Hport adv. 1 page copied on 4/23 w/ $26.49 charge. (NV: 167859776). He adv. no records found for DOS. Asked him to fax letter RE: no records ATTN: MXMACHI. He faxed letter today & adv. we need to pay invoice for search fee. Set f/up for 5/20 for CE to review & contact ADYOUNG RE: invoice paymt.

** CE - ADYOUNG adv. in invoice notes from 5/15 that she would email Hport to cancel this invoice. Please put reqst in closed status. - MEZBR8 - May 19, 2015 05:05:16 pm
5/20/15
Response from Beth knox fnp stating no recs received with invoice $26.49. it appears phone call earlier on request for recs from cox medical center was refernecing that request and not the request from the cox medical center. will have another call made to check status
- MXMACHI - May 20, 2015 10:25:17 am

HPORT "NO RECDS FOR DOS" LTR N - MOVE TO CLOSED
This rejection ltr RE: this reqst was recvd on 5/19 as I requested from Hport on 5/19. Set f/up for 5/26 for CE to put reqst in closed status. - MEZBR8 - May 22, 2015 11:03:14 am

| 5/22/2015 | Medical | 5 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:09 am

unable to contain an connection. - JUXNA0 - May 12, 2015 10:24:10 am
DOB ▮▮▮▮ MXMACHI - May 14, 2015 10:56:08 am

COX MEDICAL CENTER BRANSON ROI (IN-HOUSE HPORT): 417-348-8600
Brittney adv. reqst recvd & in-house Hport processed reqst on 4/23, refrd to Hport in ATL.
Pierre w/ Hport adv. 1 page copied on 4/23 w/ $26.49 charge. (NV: 167859776). He adv. no records found for DOS. Asked him to fax letter RE: no records ATTN: MXMACHI. He faxed letter today & adv. we need to pay invoice for search fee. Set f/up for 5/20 for CE to review & contact ADYOUNG RE: invoice paymt.

** CE - ADYOUNG adv. in invoice notes from 5/15 that she would email Hport to cancel this invoice. Please put reqst

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

in closed status. - MEZBR8 - May 19, 2015 05:05:16 pm
5/20/15
Response from Beth knox fnp stating no recs received with invoice $26.49. it appears phone call earlier on request for recs from cox medical center was refernecing that request and not the request from the cox medical center. will have another call made to check status
- MXMACHI - May 20, 2015 10:25:17 am

HPORT "NO RECDS FOR DOS" LTR N - MOVE TO CLOSED
This rejection ltr RE: this reqst was recvd on 5/19 as I requested from Hport on 5/19. Set f/up for 5/26 for CE to put reqst in closed status. - MEZBR8 - May 22, 2015 11:03:14 am

| 4/21/2015 9:24:41 AM | Medical | 4 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:27:23 am

records are still in process - JUXNA0 - May 12, 2015 11:21:58 am

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:04 am
5/20/15
Response from Beth knox fnp stating no recs received
- MXMACHI - May 20, 2015 10:24:04 am

| 5/20/2015 | Medical | 4 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:27:23 am

records are still in process - JUXNA0 - May 12, 2015 11:21:58 am

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:04 am
5/20/15
Response from Beth knox fnp stating no recs received
- MXMACHI - May 20, 2015 10:24:04 am

| 5/18/2015 | Telephone (OUT) | 29 | LESTER E COX MEDICAL CENTER | Completed | MXMACHI |

Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time. - MXMACHI - May 18, 2015 10:29:12 am

| 5/12/2015 12:49:46 PM | Documents/Mail | 51 | Pre-Payment Invoice | Received | ADYOUNG |

2015-05-11-18.08.03.309340:O:01

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:21 am

| 5/15/2015 | Documents/Mail | 51 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-05-11-18.08.03.309340:O:01

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:21 am

| 5/11/2015 | Telephone (OUT) | 28 | LESTER E COX MEDICAL CENTER | Completed | MXMACHI |

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
- MXMACHI - May 11, 2015 11:54:23 am

| 5/5/2015 | Documents/Mail | 50 | Email | Completed | MXMACHI |

From: Lasky,Heather [mailto:Heather.Lasky@coxhealth.com]
Sent: Tuesday, May 05, 2015 8:45 AM
To: Machian, Mike

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 79 of 550   LIN0079

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Subject: RE: Jamie Flanagan 1130226196

I don't do anything with the Pension here at Cox Health, and I think I overheard that Crystal is out of the office today. You may try to call her tomorrow at 417-269-6544. Thanks!


Heather Lasky
, Human Resources
Phone: (417) 269-6537 | Fax: (417) 269-6518
Heather.Lasky@coxhealth.com

coxhealth.com



From: Machian, Mike [mailto:Mike.Machian@lfg.com]
Sent: Tuesday, May 05, 2015 8:38 AM
To: Lasky,Heather; Morehouse,Crystal
Subject: RE: Jamie Flanagan 1130226196

Were you able to find anything out on this?

Thank you.

From: Lasky,Heather [mailto:Heather.Lasky@coxhealth.com]
Sent: Tuesday, April 28, 2015 8:31 AM
To: Machian, Mike; Morehouse,Crystal
Subject: RE: Jamie Flanagan 1130226196

Crystal,

Would you be able to help Mike out with his question below? Thanks!


Heather Lasky
, Human Resources
Phone: (417) 269-6537 | Fax: (417) 269-6518
Heather.Lasky@coxhealth.com

coxhealth.com



From: Machian, Mike [mailto:Mike.Machian@lfg.com]
Sent: Tuesday, April 28, 2015 8:29 AM
To: HR - Benefits
Subject: FW: Jamie Flanagan 1130226196

To whom it may concern, I am with the long term disability carrier for Ms. Flanagan and I was inquiring if she had taken out her retirement/pension yet?

Thank you

From: Burlison,Courtney [mailto:Courtney.Burlison@coxhealth.com]
Sent: Tuesday, April 28, 2015 8:27 AM
To: Machian, Mike
Subject: Automatic reply: Jamie Flanagan 1130226196

Thank you for your email!

My last day with CoxHealth will be next Friday, November 14th. For questions, please contact the following for assistance:

FMLA - Alicia.Hathaway@coxhealth.com
Benefits - HR-Benefits@coxhealth.com
Employee Store - 1906@coxhealth.com

Thanks and have a great day!

Courtney


Courtney Burlison
Benefits Coordinator, Human Resources
Phone: (417) 269-6656 | Fax: (417) 269-6518
Courtney.Burlison@coxhealth.com

coxhealth.com



CoxHealth - ranked one of Missouri's Best Hospitals by U.S. News & World Report
COXHEALTH CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information protected by law. ?Any unauthorized review, use, disclosure or distribution is prohibited. ?If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
Notice of Confidentiality: **This E-mail and any of its attachments may contain
Lincoln National Corporation proprietary information, which is privileged, confidential,
or subject to copyright belonging to the Lincoln National Corporation family of
companies. This E-mail is intended solely for the use of the individual or entity to
which it is addressed. If you are not the intended recipient of this E-mail, you are
hereby notified that any dissemination, distribution, copying, or action taken in
relation to the contents of and attachments to this E-mail is strictly prohibited
and may be unlawful. If you have received this E-mail in error, please notify the
sender immediately and permanently delete the original and any copy of this E-mail
and any printout. Thank You.**
Notice of Confidentiality: **This E-mail and any of its attachments may contain
Lincoln National Corporation proprietary information, which is privileged, confidential,
or subject to copyright belonging to the Lincoln National Corporation family of
companies. This E-mail is intended solely for the use of the individual or entity to
which it is addressed. If you are not the intended recipient of this E-mail, you are
hereby notified that any dissemination, distribution, copying, or action taken in
relation to the contents of and attachments to this E-mail is strictly prohibited
and may be unlawful. If you have received this E-mail in error, please notify the
sender immediately and permanently delete the original and any copy of this E-mail
and any printout. Thank You.**
 - MXMACHI - May 05, 2015 01:28:01 pm

| Date/Time | Type | | Category | Status | User |
|---|---|---|---|---|---|
| 4/22/2015 11:02:50 AM | Documents/Mail | 45 | Medical Records | Received | MXMACHI |

2015-04-21-17.15.37.100040:O:01
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:27 am

| Date/Time | Type | | Category | Status | User |
|---|---|---|---|---|---|
| 4/24/2015 | Documents/Mail | 45 | Medical Records | Completed | MXMACHI |

2015-04-21-17.15.37.100040:O:01
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

w eight, can sit for 20 minute duration (although this is w ritten under 'frequently'), can stand, w alk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:27 am

| | | | | | |
|---|---|---|---|---|---|
| 4/23/2015 | Documents/Mail | 49 | Med Rec Request Follow Up | Completed | MXMACHI |
| | Med Rec Request Follow Up | | | | |
| 4/22/2015 | Documents/Mail | 47 | Med Rec Request | Completed | DAJ MER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/22/2015 | Documents/Mail | 48 | Med Rec Request | Completed | DAJ MER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/22/2015 | Documents/Mail | 46 | Med Rec Request | Completed | DAJ MER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 43 | Incoming Correspondence | Received | MXMACHI |
| | 2015-04-20-08.59.53.620080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 43 | Incoming Correspondence | Completed | MXMACHI |
| | 2015-04-20-08.59.53.620080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 41 | Voc Rehab Forms | Received | MXMACHI |
| | 2015-04-20-09.00.12.268080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 41 | Voc Rehab Forms | Completed | MXMACHI |
| | 2015-04-20-09.00.12.268080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 39 | Medical Records | Received | MXMACHI |
| | 2015-04-20-09.00.05.746080:O:01 | | | | |
| | 2ND PAGE OF TMP - MXMACHI - Apr 21, 2015 09:31:44 am | | | | |
| 4/21/2015 | Documents/Mail | 39 | Medical Records | Completed | MXMACHI |
| | 2015-04-20-09.00.05.746080:O:01 | | | | |
| | 2ND PAGE OF TMP - MXMACHI - Apr 21, 2015 09:31:44 am | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 44 | Email | Received | MXMACHI |
| | 2015-04-17-13.33.43.248960:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 44 | Email | Completed | MXMACHI |
| | 2015-04-17-13.33.43.248960:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 42 | Claim Form - Authorization | Received | MXMACHI |
| | 2015-04-20-08.59.27.796080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 42 | Claim Form - Authorization | Completed | MXMACHI |
| | 2015-04-20-08.59.27.796080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 40 | Email | Received | MXMACHI |
| | 2015-04-17-13.33.43.210960:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 40 | Email | Completed | MXMACHI |
| | 2015-04-17-13.33.43.210960:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 38 | Incoming Correspondence | Received | MXMACHI |
| | 2015-04-20-08.59.43.507080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 38 | Incoming Correspondence | Completed | MXMACHI |
| | 2015-04-20-08.59.43.507080:O:01 | | | | |
| 4/21/2015 | Claim Tasks | 27 | Audit | Completed | ANBEYER |
| | LTD OPEN AUDIT - ANBEYER - Apr 21, 2015 03:20:46 pm | | | | |
| 3/2/2015 8:44:32 PM | Investigation | 1 | Any Occ | Requested | MXMACHI |
| | 4/13/1 | | | | |

EE called to adv her father passed aw ay last Tuesday and she is back in tow n today. I adv did get message from B1SMITH last w eek. I adv ok to w ait for dr visit on 4/16/15 to fill out abilities. I adv if dr w ont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
 - MXMACHI - Apr 13, 2015 12:32:24 pm

| | | | | | |
|---|---|---|---|---|---|
| 4/20/2015 | Investigation | 1 | Any Occ | Received | MXMACHI |
| | 4/13/1 | | | | |

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 82 of 550    LIN0082

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

EE called to adv her father passed aw ay last Tuesday and she is back in tow n today. I adv did get message from B1SMITH last w eek. I adv ok to w ait for dr visit on 4/16/15 to fill out abilities. I adv if dr w ont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:24 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/1/2015 8:33:45 PM | Investigation | 2 | Any Occ | Requested | MXMACHI |
| 4/13/2015 | Investigation | 2 | Any Occ | Received | MXMACHI |
| 4/13/2015 | Telephone (OUT) | 27 | JAMIE FLANAGAN | Completed | MXMACHI |

4/13/1

EE called to adv her father passed aw ay last Tuesday and she is back in tow n today. I adv did get message from B1SMITH last w eek. I adv ok to w ait for dr visit on 4/16/15 to fill out abilities. I adv if dr w ont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:03 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/6/2015 | Telephone (OUT) | 26 | JAMIE FLANAGAN | Completed | B1SMITH |

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation how ever she had to drop everything and go dow n to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She w anted to know if the forms had to be turned all together or if she could w ait until her doctor's appointment on 4/16/2014 to turn it in so that w ay she could get the abilities form completed. I said is there any w ay you could turn in the rest of the forms and w e can w ait on the abilities form. She said w ell I w ould have to have someone mail me my completed forms so I could turn then in. I said that I w ould put a note into Mike letting him know that you are communicating and w ith him and trying to get it all done. I said I w ould have Mike reach out to you in a w eek and he could further assess w hen the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
- B1SMITH - Apr 06, 2015 05:14:36 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/6/2015 | Telephone (OUT) | 25 | JAMIE FLANAGAN | Completed | B1SMITH |

I returned a call from voicemail to Ms. Flanagan. I reached her voicemail, (as she predicted I might b/c her service is spotty) I left a message saying I w ould call the provided house # for her. And to feel free to call me back at my direct line. - B1SMITH - Apr 06, 2015 04:43:17 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/1/2015 | Documents/Mail | 37 | Any Occ Follow Up | Completed | MXMACHI |

Any Occ Follow UpAttachments:TMPEducational BackgroundISSAuth Medical

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/1/2015 | Documents/Mail | 36 | Any Occ Follow Up | Completed | MXMACHI |

Any Occ Follow UpAttachments:TMPEducational BackgroundISSAuth Medical

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/12/2014 7:00:02 AM | Referrals | 20413 | Correspondence Questions | Initial | MXMACHI |

DOCSQL Investigation Type: Attorney/Client Privilege
7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.   tmecall to see if future claims and corres can go to ee or attorney

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/16/2015 | Referrals | 20413 | Correspondence Questions | Completed | MXMACHI |

DOCSQL Investigation Type: Attorney/Client Privilege
7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.   tmecall to see if future claims and corres can go to ee or attorney

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/13/2015 9:10:59 AM | Claim Tasks | 26 | Call Claimant | Requested | MXMACHI |

3/11/15
Received 2nd eob back as w rong address. Address w as changed in may by different CE, then a new CE received eob back last month, unable to tell if address w as verified or not.called attny w ho gave previous address and said it w as ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from law yer previously) to ask about address as 2nd eob came back.
- MXMACHI - Mar 13, 2015 09:11:23 am
3/16/15
Called ee again (had received ok from law yer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
- MXMACHI - Mar 16, 2015 11:35:51 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/16/2015 | Claim Tasks | 26 | Call Claimant | Completed | MXMACHI |

3/11/15

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
 - MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
 - MXMACHI - Mar 13, 2015 09:11:23 am
3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
 - MXMACHI - Mar 16, 2015 11:35:51 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/16/2015 | Telephone (IN) | 24 | JAMIE FLANAGAN | Completed | MXMACHI |

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633
 - MXMACHI - Mar 16, 2015 11:49:52 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/16/2015 | Telephone (OUT) | 23 | JAMIE FLANAGAN | Completed | MXMACHI |

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
 - MXMACHI - Mar 16, 2015 11:36:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 7:30:55 AM | Documents/Mail | 35 | Return Mail | Received | MXMACHI |

2015-03-10-10.53.27.590760:O:01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/13/2015 | Documents/Mail | 35 | Return Mail | Completed | MXMACHI |

2015-03-10-10.53.27.590760:O:01

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 9:09:24 AM | Claim Tasks | 25 | Missing Info | Requested | MXMACHI |

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
 - MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
 - MXMACHI - Mar 13, 2015 09:10:56 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/13/2015 | Claim Tasks | 25 | Missing Info | Completed | MXMACHI |

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
 - MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
 - MXMACHI - Mar 13, 2015 09:10:56 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/14/2014 10:42:35 AM | Medical | 2 | | Initial | MXMACHI |

please fax. thank you - TMELDER - Nov 14, 2014 10:42:58 am

send med ntc 1 - TMELDER - Nov 24, 2014 06:49:43 am

left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:46 am

per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:27 am

left vm to verify if they recd our rqst for med recs  - TMELDER - Dec 16, 2014 11:43:11 am

Per Michelle w/drs ofc, she did receive the rqst and sent it to copy service  - TMELDER - Dec 16, 2014 11:52:29 am

8/21/2017

79

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

no recs need current auth- will send rqst for auth, cc attorney - TMELDER - Dec 23, 2014 07:43:50 am

fu rqst for auth to ee and attorney - TMELDER - Jan 08, 2015 07:22:51 am

current auth rcd in awd 1/20- please resend rqst w/new auth. thank you - TMELDER - Jan 22, 2015 07:01:53 am
resent request with new auth today - ADYOUNG - Jan 29, 2015 03:29:13 pm

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 thank you - TMELDER - Feb 09, 2015 08:24:58 am

refaxed request today to FAX# 417-885-0874. - ADYOUNG - Feb 17, 2015 10:04:53 am

rcd prepayment 2/17 - TMELDER - Feb 23, 2015 07:45:55 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 425483276222017 6196194.
 - ADYOUNG - Mar 04, 2015 09:34:56 am - TMELDER - Mar 09, 2015 08:46:27 am
received, sent to be scanned - MXMACHI - Mar 09, 2015 01:22:43 pm
3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
 - MXMACHI - Mar 12, 2015 11:51:24 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/12/2015 | Medical | 2 | | Closed | MXMACHI |

please fax. thank you - TMELDER - Nov 14, 2014 10:42:58 am

send med ntc 1 - TMELDER - Nov 24, 2014 06:49:43 am

left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:46 am

per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:27 am

left vm to verify if they recd our rqst for med recs  - TMELDER - Dec 16, 2014 11:43:11 am

Per Michelle w/drs ofc, she did receive the rqst and sent it to copy service  - TMELDER - Dec 16, 2014 11:52:29 am

no recs need current auth- will send rqst for auth, cc attorney - TMELDER - Dec 23, 2014 07:43:50 am

fu rqst for auth to ee and attorney - TMELDER - Jan 08, 2015 07:22:51 am

current auth rcd in awd 1/20- please resend rqst w/new auth. thank you - TMELDER - Jan 22, 2015 07:01:53 am
resent request with new auth today - ADYOUNG - Jan 29, 2015 03:29:13 pm

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 thank you - TMELDER - Feb 09, 2015 08:24:58 am

refaxed request today to FAX# 417-885-0874. - ADYOUNG - Feb 17, 2015 10:04:53 am

rcd prepayment 2/17 - TMELDER - Feb 23, 2015 07:45:55 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635.

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

The credit card confirmation number for this transaction is 4254832762220176196194.
 - ADYOUNG - Mar 04, 2015 09:34:56 am - TMELDER - Mar 09, 2015 08:46:27 am
received, sent to be scanned - MXMACHI - Mar 09, 2015 01:22:43 pm
3/11/15
Med recs received from Dr. Hopw ell under aw d 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp w ith radiation dow n the legs over the last couple of w eeks. There has been no new w eakness, sensory change or bow el/bladder symptoms. Just restarted plaquenil after being off for 3 w eeks.  Pain is definitely w orse w ith prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position w ill make her pain w orse including prolonged sitting. Had a rash and some sw elling of her digits and some lip sw elling that came and w ent over 72 hour period during same time frame. Neurologic exam remains normal.  ASSESSMENT: she had recent flare of symptoms w hich w ere probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
 - MXMACHI - Mar 12, 2015 11:51:24 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/10/2015 7:56:08 AM | Documents/Mail | 34 | Medical Records | Received | MXMACHI |
| | 2015-03-10-08.46.41.958740:O:01 | | | | |

3/11/15
Med recs received from Dr. Hopw ell under aw d 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp w ith radiation dow n the legs over the last couple of w eeks. There has been no new w eakness, sensory change or bow el/bladder symptoms. Just restarted plaquenil after being off for 3 w eeks.  Pain is definitely w orse w ith prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position w ill make her pain w orse including prolonged sitting. Had a rash and some sw elling of her digits and some lip sw elling that came and w ent over 72 hour period during same time frame. Neurologic exam remains normal.  ASSESSMENT: she had recent flare of symptoms w hich w ere probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
 - MXMACHI - Mar 11, 2015 09:35:00 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 | Documents/Mail | 34 | Medical Records | Completed | MXMACHI |
| | 2015-03-10-08.46.41.958740:O:01 | | | | |

3/11/15
Med recs received from Dr. Hopw ell under aw d 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp w ith radiation dow n the legs over the last couple of w eeks. There has been no new w eakness, sensory change or bow el/bladder symptoms. Just restarted plaquenil after being off for 3 w eeks.  Pain is definitely w orse w ith prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position w ill make her pain w orse including prolonged sitting. Had a rash and some sw elling of her digits and some lip sw elling that came and w ent over 72 hour period during same time frame. Neurologic exam remains normal.  ASSESSMENT: she had recent flare of symptoms w hich w ere probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
 - MXMACHI - Mar 11, 2015 09:35:00 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/10/2015 7:56:08 AM | Documents/Mail | 32 | Email | Received | MXMACHI |
| | 2015-03-09-11.26.23.118620:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 32 | Email | Completed | MXMACHI |
| | 2015-03-09-11.26.23.118620:O:01 | | | | |
| 3/10/2015 7:56:08 AM | Documents/Mail | 33 | Email | Received | MXMACHI |
| | 2015-03-09-11.26.23.158620:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 33 | Email | Completed | MXMACHI |
| | 2015-03-09-11.26.23.158620:O:01 | | | | |
| 3/10/2015 7:56:08 AM | Documents/Mail | 31 | Claim Form - Authorization | Received | MXMACHI |
| | 2015-03-10-08.46.33.596740:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 31 | Claim Form - Authorization | Completed | MXMACHI |
| | 2015-03-10-08.46.33.596740:O:01 | | | | |

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 | Telephone (OUT) 3/11/15 | 22 | JAMIE FLANAGAN | Completed | MXMACHI |

Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:21 am

| | | | | | |
|---|---|---|---|---|---|
| 3/9/2015 | Documents/Mail Rep Change Letter | 30 | Rep Change Letter | Completed | MXMACHI |
| 3/9/2015 | Documents/Mail Rep Change Letter | 29 | Rep Change Letter | Completed | MXMACHI |
| 3/5/2015 11:10:10 AM | Documents/Mail 2015-03-05-09.01.47.507520:O:01 | 28 | Email | Received | MXMACHI |
| 3/9/2015 | Documents/Mail 2015-03-05-09.01.47.507520:O:01 | 28 | Email | Completed | MXMACHI |
| 2/17/2015 3:31:20 PM | Documents/Mail 2015-02-17-13.14.43.935000:O:01 | 26 | Pre-Payment Invoice | Received | ADYOUNG |

Received healthport prepayment invoice # 0163276489 for $27.02 only 2 pages e-mailing healthport to see if actual records. - ADYOUNG - Feb 23, 2015 10:16:43 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 4254832762220176196194.
- ADYOUNG - Mar 04, 2015 09:34:56 am

| | | | | | |
|---|---|---|---|---|---|
| 3/4/2015 | Documents/Mail 2015-02-17-13.14.43.935000:O:01 | 26 | Pre-Payment Invoice | Completed | ADYOUNG |

Received healthport prepayment invoice # 0163276489 for $27.02 only 2 pages e-mailing healthport to see if actual records. - ADYOUNG - Feb 23, 2015 10:16:43 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 4254832762220176196194.
- ADYOUNG - Mar 04, 2015 09:34:56 am

| | | | | | |
|---|---|---|---|---|---|
| 3/2/2015 | Documents/Mail | 27 | Begin Any Occ Investigation | Completed | AS0DE7 |

Begin Any Occ InvestigationAttachments:TMPAbilitiesEducational BackgroundISSAuth Medical

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2014 11:36:30 AM | Claim Tasks | 16 | Own Occ - See Contract Language | Requested | AS0DE7 |

DOCSQL Investigation Type: Any Occ Investigation
Source: AO
begin ao inv

| | | | | | |
|---|---|---|---|---|---|
| 3/2/2015 | Claim Tasks | 16 | Own Occ - See Contract Language | Completed | AS0DE7 |

DOCSQL Investigation Type: Any Occ Investigation
Source: AO
begin ao inv

| | | | | | |
|---|---|---|---|---|---|
| 2/11/2015 12:19:06 PM | Documents/Mail 2015-02-11-13.03.24.887060:O:01 | 25 | Return Mail | Received | AS0DE7 |

Group Explanation of Benefits that was mailed to EE marked as returned to sender - AS0DE7 - Feb 12, 2015 02:48:34 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/12/2015 | Documents/Mail 2015-02-11-13.03.24.887060:O:01 | 25 | Return Mail | Completed | AS0DE7 |

Group Explanation of Benefits that was mailed to EE marked as returned to sender - AS0DE7 - Feb 12, 2015 02:48:34 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/12/2015 | Claim Tasks | 23 | Paper File | Completed | AS0DE7 |

Mail was returned on 2/12/2015, manually remailed after calling EE and verifying that the adderss on fie is correct. - AS0DE7 - Feb 12, 2015 03:36:27 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/9/2015 | Telephone (OUT) | 21 | DR DONALD HOPEWELL | Completed | TMELDER |

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 -

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | TMELDER - Feb 09, 2015 08:24:33 am | | | | |
| 2/3/2015 | Documents/Mail | 24 | Rep Change Letter | Completed | AS0DE7 |
| | Rep Change Letter | | | | |
| 1/21/2015 11:04:11 AM | Documents/Mail | 23 | Claim Form - Authorization | Received | TMELDER |
| | 2015-01-20-16.56.52.036740:O:01 | | | | |
| 1/22/2015 | Documents/Mail | 23 | Claim Form - Authorization | Completed | TMELDER |
| | 2015-01-20-16.56.52.036740:O:01 | | | | |
| 1/9/2015 8:30:28 AM | Claim Tasks | 21 | Update Claim Direction | Requested | TMELDER |

This claim has been identified by the U.S. Postal Service as having had a change of address. Please update the contact address in Entity Manager, then refresh Entity screen. This will update the claim screen and benefit information. You do not need to resend any letters or reissue any checks. Please call the claimant to advise we have updated the address on record.
New Address:
1625 MUSKY DIME DR
CRANE MO 65633 8050
 - KXTHOMA - Jan 09, 2015 08:30:44 am

PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:04:02 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/12/2015 | Claim Tasks | 21 | Update Claim Direction | Completed | TMELDER |

This claim has been identified by the U.S. Postal Service as having had a change of address. Please update the contact address in Entity Manager, then refresh Entity screen. This will update the claim screen and benefit information. You do not need to resend any letters or reissue any checks. Please call the claimant to advise we have updated the address on record.
New Address:
1625 MUSKY DIME DR
CRANE MO 65633 8050
 - KXTHOMA - Jan 09, 2015 08:30:44 am

PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:04:02 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/12/2015 | Claim Tasks | 22 | Validate Payee Info | Completed | TMELDER |
| 1/12/2015 | Telephone (OUT) | 20 | JAMIE FLANAGAN | Completed | TMELDER |
| | PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:03:43 am | | | | |
| 1/8/2015 | Documents/Mail | 22 | Request Sign Authorization | Completed | TMELDER |
| | Request Sign AuthorizationAttachments:Authorization.pdf | | | | |
| 1/8/2015 | Documents/Mail | 21 | Request Sign Authorization | Completed | TMELDER |
| | Request Sign AuthorizationAttachments:Authorization.pdf | | | | |
| 12/31/2014 | Telephone (IN) | 19 | JAMIE FLANAGAN | Completed | WE2NE8 |
| | Advised what the AUTH form was for | | | | |
| 12/23/2014 | Documents/Mail | 19 | Request Sign Authorization | Completed | TMELDER |
| | Attachments:Authorization.pdfRequest Sign Authorization | | | | |
| 12/23/2014 | Documents/Mail | 20 | Request Sign Authorization | Completed | TMELDER |
| | Attachments:Authorization.pdfRequest Sign Authorization | | | | |
| 12/22/2014 2:47:28 PM | Documents/Mail | 17 | Email | Received | TMELDER |
| | 2014-12-22-10.22.55.225560:O:01 | | | | |
| 12/23/2014 | Documents/Mail | 17 | Email | Completed | TMELDER |
| | 2014-12-22-10.22.55.225560:O:01 | | | | |
| 12/22/2014 2:47:28 PM | Documents/Mail | 18 | Medical Records | Received | TMELDER |
| | 2014-12-22-10.22.55.272560:O:01 | | | | |

no recs need current auth - TMELDER - Dec 23, 2014 07:42:30 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/23/2014 | Documents/Mail | 18 | Medical Records | Completed | TMELDER |
| | 2014-12-22-10.22.55.272560:O:01 | | | | |

LIN0088

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | no recs need current auth - TMELDER - Dec 23, 2014 07:42:30 am | | | | |
| 12/16/2014 | Telephone (IN) | 18 | DR DONALD HOPEWELL | Completed | TMELDER |
| | Per Michelle w/drs ofc, she did receive the rqst and sent it to copy service  - TMELDER - Dec 16, 2014 11:52:17 am | | | | |
| 12/16/2014 | Telephone (OUT) | 17 | DR DONALD HOPEWELL | Completed | TMELDER |
| | left vm to verify if they recd our rqst for med recs  - TMELDER - Dec 16, 2014 11:43:01 am | | | | |
| 12/15/2014 4:19:27 PM | Telephone (IN) | 16 | JAMIE FLANAGAN | Requested | TMELDER |
| | Phone: 417-659-6876 | | | | |
| | Fax: 417-659-6873 | | | | |
| | dr. donald hopewell contact information. | | | | |
| | please extend the timeframe to get the records back since we had the wrong telephone/fax #'s for the doctor. | | | | |
| 12/16/2014 | Telephone (IN) | 16 | JAMIE FLANAGAN | Completed | TMELDER |
| | Phone: 417-659-6876 | | | | |
| | Fax: 417-659-6873 | | | | |
| | dr. donald hopewell contact information. | | | | |
| | please extend the timeframe to get the records back since we had the wrong telephone/fax #'s for the doctor. | | | | |
| 12/15/2014 | Telephone (OUT) | 15 | DR DONALD HOPEWELL | Completed | TMELDER |
| | per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:14 am | | | | |
| 12/11/2014 | Telephone (OUT) | 14 | DR DONALD HOPEWELL | Completed | TMELDER |
| | left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:36 am | | | | |
| 11/24/2014 | Documents/Mail | 16 | Med Rec Request Follow Up | Completed | TMELDER |
| | Med Rec Request Follow Up | | | | |
| 11/22/2014 | Documents/Mail | 15 | Med Rec Request | Completed | ADYOUNG |
| | Med Rec RequestAttachments:flanagan.pdf | | | | |
| 10/22/2014 7:43:42 AM | Medical | 1 | | Initial | TMELDER |
| | please fax. thank you  - TMELDER - Oct 22, 2014 07:44:04 am | | | | |
| | Med request was in "11OLDLTD" in error.  Date of task 10/23/14 - moving to bs initials and current date.  - TCCAMPB - Nov 14, 2014 10:15:14 am | | | | |
| | cancell and re-request recs  - TMELDER - Nov 14, 2014 10:42:13 am | | | | |
| 11/14/2014 | Medical | 1 | | Closed | TMELDER |
| | please fax. thank you  - TMELDER - Oct 22, 2014 07:44:04 am | | | | |
| | Med request was in "11OLDLTD" in error.  Date of task 10/23/14 - moving to bs initials and current date.  - TCCAMPB - Nov 14, 2014 10:15:14 am | | | | |
| | cancell and re-request recs  - TMELDER - Nov 14, 2014 10:42:13 am | | | | |
| 9/18/2014 2:14:28 PM | Claim Tasks | 20 | Obtain Missing Info | Requested | TMELDER |
| | rqst med recs from dr hopewell after 10/22 office visit  - TMELDER - Sep 18, 2014 02:15:08 pm | | | | |
| 10/22/2014 | Claim Tasks | 20 | Obtain Missing Info | Completed | TMELDER |
| | rqst med recs from dr hopewell after 10/22 office visit  - TMELDER - Sep 18, 2014 02:15:08 pm | | | | |
| 7/12/2014 7:00:02 AM | Claim Tasks | 19 | Send for Legal Review | Requested | TMELDER |
| | DOCSQL Investigation Type: Attorney/Client Privilege | | | | |
| | 7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.   tmecall to see if future claims and corres can go to ee or attorney | | | | |
| 9/18/2014 | Claim Tasks | 19 | Send for Legal Review | Completed | TMELDER |
| | DOCSQL Investigation Type: Attorney/Client Privilege | | | | |
| | 7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.   tmecall to see if future claims and corres can go to ee or attorney | | | | |
| 9/18/2014 | Telephone (OUT) | 13 | JAMIE FLANAGAN | Completed | TMELDER |
| | Per call to ee, there has been no real improvement, saw Dr Hopewell in July and will have another aptmnt 10/22. she is just doing home exercises and is on pain meds.  I advised I will reqst med recs after next visit to get the most updated.  - TMELDER - Sep 18, 2014 02:14:14 pm | | | | |

8/21/2017

84

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/14/2014 12:29:27 PM | Telephone (OUT) | 7 | Vicki | Requested | RDHASTI |

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H

| | | | | | |
|---|---|---|---|---|---|
| 7/19/2014 | Telephone (OUT) | 7 | Vicki | Completed | RDHASTI |

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H

| | | | | | |
|---|---|---|---|---|---|
| 7/14/2014 | Telephone (OUT) | 12 | Rick Vasquez ofc | Completed | TMELDER |

per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.

| | | | | | |
|---|---|---|---|---|---|
| 6/20/2014 12:38:49 PM | Referrals | 20413!UNKNOWN | | Initial | JLDOWSE |
| 6/23/2014 | Referrals | 20413!UNKNOWN | | Completed | JLDOWSE |
| 6/18/2014 | Telephone (IN) | 11 | Katrina | Completed | TMELDER |

Per call from attorneys ofc, ee is not receiving retirement, ssdi only, please make the payment to the attorneys ofc.

| | | | | | |
|---|---|---|---|---|---|
| 4/28/2014 3:49:54 PM | Referrals | 20413!UNKNOWN | | Initial | SSA |

6/17/14 Claim on SS Overturn Report - OPEN status forwarded award to award box. LAJ.5/13/14 - recd duplicate award ltr. no action required at this time. claim under appeal. reset flup 120 days to ck ltd claim status. if approved, send award info to ssa inbox. eac 4/28/14- SSDI AWARD SSS receipt of NOA dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXMSS Award info recvd in AWD 4/25/14
18-JUL-14 - converted from DOCSQL -Begin_Date: 01-FEB-14
[2503919: Entered By BXM on 06/23/2014 12:59:14 PM]
6/23/14- clmt has been awarded ssdi. bxm

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2014 | Referrals | 20413!UNKNOWN | | Completed | SSA |

6/17/14 Claim on SS Overturn Report - OPEN status forwarded award to award box. LAJ.5/13/14 - recd duplicate award ltr. no action required at this time. claim under appeal. reset flup 120 days to ck ltd claim status. if approved, send award info to ssa inbox. eac 4/28/14- SSDI AWARD SSS receipt of NOA dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXMSS Award info recvd in AWD 4/25/14
18-JUL-14 - converted from DOCSQL -Begin_Date: 01-FEB-14
[2503919: Entered By BXM on 06/23/2014 12:59:14 PM]
6/23/14- clmt has been awarded ssdi. bxm

| | | | | | |
|---|---|---|---|---|---|
| 6/16/2014 1:05:02 PM | Claim Tasks | 6 | Open Review | Requested | TMELDER |

DOCSQL Investigation Type: Other
Source: Overturn decision
Claim assigned to TME for further hanlding. J2D

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2014 | Claim Tasks | 6 | Open Review | Completed | TMELDER |

DOCSQL Investigation Type: Other
Source: Overturn decision
Claim assigned to TME for further hanlding. J2D

| | | | | | |
|---|---|---|---|---|---|
| 6/16/2014 1:04:09 PM | Claim Tasks | 5 | Open Review | Requested | SSA |

DOCSQL Investigation Type: Other
Source: Overturn decision
Per action plan, notifying SS dept to adv overturn decision

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2014 | Claim Tasks | 5 | Open Review | Completed | SSA |

DOCSQL Investigation Type: Other
Source: Overturn decision
Per action plan, notifying SS dept to adv overturn decision

| | | | | | |
|---|---|---|---|---|---|
| 6/17/2014 | Telephone (OUT) | 10 | Rick Vasquez ofc | Completed | TMELDER |

left mess, getting ready to release benefits, do we pay him or her, does he know if she has been receiving any of

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | her employer retirement | | | | |
| 5/13/2014 | Appeal | 1 | Level 1 | New | RDHASTI |
| | Appeal Reason: 3f Denial of claim. | | | | |
| | Appealed by: JAMIE FLANAGAN | | | | |
| | Source State: MO | | | | |
| 6/16/2014 | Appeal | 1 | Level 1 | Closed | RDHASTI |
| | Appeal Reason: 3f Denial of claim. | | | | |
| | Appealed by: JAMIE FLANAGAN | | | | |
| | Source State: MO | | | | |
| 5/14/2014 12:02:54 PM | Claim Tasks | 8 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: 90 days = 8/10/14 | | | | |
| | Appeal recvd 5/12/14, 90 days = 8/10/14 | | | | |
| 6/16/2014 | Claim Tasks | 8 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: 90 days = 8/10/14 | | | | |
| | Appeal recvd 5/12/14, 90 days = 8/10/14 | | | | |
| 5/14/2014 12:02:26 PM | Claim Tasks | 7 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: 45 days = 6/26/14 | | | | |
| | Appeal recvd 5/12/14, 45 days = 6/26/14 | | | | |
| 6/16/2014 | Claim Tasks | 7 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: 45 days = 6/26/14 | | | | |
| | Appeal recvd 5/12/14, 45 days = 6/26/14 | | | | |
| 6/16/2014 | Telephone (OUT) | 9 | Vickie | Completed | RDHASTI |
| | 6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H | | | | |
| 6/10/2014 10:03:32 AM | Claim Tasks | 14 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: Next steps due 6/16/14 | | | | |
| | 6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H | | | | |
| 6/12/2014 | Claim Tasks | 14 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: Next steps due 6/16/14 | | | | |
| | 6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H | | | | |
| 6/10/2014 | Documents/Mail | 14 | EMAIL | Completed | RDHASTI |
| 6/10/2014 | Documents/Mail | 13 | MEDICAL RECORDS | Completed | RDHASTI |
| 5/23/2014 9:35:14 AM | Claim Tasks | 13 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: Peer recvd? | | | | |
| | 5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H | | | | |
| 6/10/2014 | Claim Tasks | 13 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other | | | | |
| | Source: Peer recvd? | | | | |
| | 5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H | | | | |
| 5/22/2014 12:03:11 PM | Referrals | | 20156'UNKNOWN | Initial | RDHASTI |
| | [2487077: Entered By AYR on 06/09/2014 11:04:55 AM] | | | | |

8/21/2017

86

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

3.Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

**Chronological Activity List**

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?   SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review .

[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
          CLNICAL RESPONSE/CONSULTATION RESPONSE

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

**Chronological Activity List**

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW

DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ██████ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64      Weight: 112
Dominant Side: Right

## Chronological Activity List

Previous Med Review ? NA
Attorney Contact? No
MDA recommendations for recovery: unknow n - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability

CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopew ell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13

MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate

MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopew ell

Per Provider w hat are claimant's current Limitations?

pain increases through the day/w eek. Unable to control w ith medications
Per Provider w hat are claimant's current Restrictions?
Cannot w ork w ithout unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:


·       According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's w ork activities by his/her attending physician reasonable and consistent w ith the medical findings? Please explain.
·Can w e expect any clinical improvement in her condition?


| 6/9/2014 | Referrals | 20156¨UNKNOWN | Completed | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC w as received and sent to LFGAppeals for attachment to AWD

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1. Please state your findings upon review of the medical information.

2. Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

3. Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

8/21/2017                                                                                              91

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.

[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
        CLINICAL RESPONSE/CONSULTATION RESPONSE

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 97 of 550    LIN0097

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW

DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ▓▓▓▓▓▓ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review ? NA

Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability

CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain 10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13

MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate

MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:

· According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

5/22/2014 12:04:07 PM   Claim Tasks          12      Open Review                                    Requested         RDHASTI
DOCSQL Investigation Type: Other
Source: File scan
5/23/14 Scan completed & ok to send out - less than 500 pages.....s4h for k1zAll AWD, please scan

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/23/2014 | Claim Tasks | 12 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: File scan
5/23/14 Scan completed & ok to send out - less than 500 pages.....s4h for k1zAll AWD, please scan

| 5/22/2014 12:03:58 PM | Claim Tasks | 11 | Open Review | Requested | RDHASTI |

DOCSQL Investigation Type: Other
Source: Scan recvd?
5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review . R2H

| 5/23/2014 | Claim Tasks | 11 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: Scan recvd?
5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review . R2H

| 5/19/2014 12:06:07 PM | Referrals | 20116 | UNKNOWN | Initial | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number:  (417) 881-1282

Has this file had a prior external review ?   No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her  ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below  and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.

8/21/2017                                                                                                                                95

a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

3.Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?   SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 101 of 550

LINC00101

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.

[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
        CLNICAL RESPONSE/CONSULTATION RESPONSE

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and
prolonged standing, walking with brief change of position should be permitted as necessary from current
and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to
lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar
interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks.
He states pain increases through the day/week, unable to control with pain meds. Did not complete hr.
capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain
with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but
said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace.
Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but
no evidence of compression of neurological structures or progressively worsening weakness in
extremities. Physical findings report relatively good range of motion with hardware intact and no
instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is
unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that
cannot be objectively quantified although reasonable to assume that some degree of discomfort in the
back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive
functioning was appropriate but safety issue to be considered if involvement with plan of patient care.
Based on the medical evidence, claimant is not totally impaired from returning to work in a light
occupation from current and beyond. It may be beneficial for the claimant to briefly change positions
with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 102 of 550
LINC00102

**Chronological Activity List**

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW


DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ▮▮▮▮▮▮▮ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO


Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review ? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability


CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13


MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate


MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:


·      According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the

impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| 5/21/2014 | Referrals | 201161UNKNOWN | | Completed | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 104 of 550    LINC00104

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

to which the limitations and/or restrictions apply.

3.Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to

lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.

[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
    CLINICAL RESPONSE/CONSULTATION RESPONSE

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

**Chronological Activity List**

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW


DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ▮▮▮▮▮▮ 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO


Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review ? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A


CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability


CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13


MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate


MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:


·      According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the impairment(s), describe their impact to the claimant's functional status

LINC00107

and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| 5/14/2014 12:42:07 PM | Claim Tasks | 10 | Open Review | | Requested | RDHASTI |
|---|---|---|---|---|---|---|

DOCSQL Investigation Type: Other
Source: Begin review
5-14-14 Referred for OA for Nurse Practitioner

| | 5/19/2014 | Claim Tasks | 10 | Open Review | | Completed | RDHASTI |
|---|---|---|---|---|---|---|---|

DOCSQL Investigation Type: Other
Source: Begin review
5-14-14 Referred for OA for Nurse Practitioner

| 5/14/2014 11:55:21 AM | Referrals | 20079:Occ Analysis | | Initial | RDHASTI |
|---|---|---|---|---|---|

[2462216: Entered By BRS on 05/16/2014 02:29:17 PM]
5/16/14 VOCATIONAL RESPONSE
Based on the available information, it would appear that Jamie Flanagan's occupation is that of DOT#075.264-010, Nurse
Practitioner. This occupation is light physical requirement under the standards determined by the US Department of Labor.
BRS for JLM.


[2458351: Entered By R2H on 05/14/2014 11:56:43 AM]
Please do an occupational analysis for a Nurse Practitioner. Job description located under AWD transaction dated 11/15/13.

[2261489: Entered By LML on 11/19/2013 02:46:35 PM]
Nurse PractitionerNurse Practitioner 075.264-010Diagnose and treat chronic health conditions. May prescribe medication. Perform patient examinations. May order and
interpret diagnostic testsMust be Registered Nurses with specialized graduate coursework Light


| | 5/16/2014 | Referrals | 20079:Occ Analysis | | Completed | RDHASTI |
|---|---|---|---|---|---|---|

[2462216: Entered By BRS on 05/16/2014 02:29:17 PM]
5/16/14 VOCATIONAL RESPONSE
Based on the available information, it would appear that Jamie Flanagan's occupation is that of DOT#075.264-010, Nurse
Practitioner. This occupation is light physical requirement under the standards determined by the US Department of Labor.
BRS for JLM.


[2458351: Entered By R2H on 05/14/2014 11:56:43 AM]
Please do an occupational analysis for a Nurse Practitioner. Job description located under AWD transaction dated 11/15/13.

[2261489: Entered By LML on 11/19/2013 02:46:35 PM]
Nurse PractitionerNurse Practitioner 075.264-010Diagnose and treat chronic health conditions. May prescribe

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 108 of 550

LINC00108

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

medication. Perform patient examinations. May order and
interpret diagnostic testsMust be Registered Nurses w ith specialized graduate coursew orkLight

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/14/2014 12:30:03 PM | Claim Tasks | 9 | Open Review | Requested | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H5-14-14 Mailed ACK letters, 30 days = 6/13/14. R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/16/2014 | Claim Tasks | 9 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H5-14-14 Mailed ACK letters, 30 days = 6/13/14. R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/15/2014 | Telephone (OUT) | 8 | Katrina | Completed | RDHASTI |

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/13/2014 | Documents/Mail | 12 | SOCIAL SECURITY FORMS | Completed | SSA |
| 4/28/2014 | Documents/Mail | 11 | SOCIAL SECURITY FORMS | Completed | LMLOBDO |
| 4/28/2014 | Claim Tasks | 1 | Open Review | Completed | SSA |

DOCSQL Investigation Type: Other
Source: SSA
SS Aw ard info recvd in AWD 4/25/14

| | | | | | |
|---|---|---|---|---|---|
| 1/7/2014 7:32:44 AM | Documents/Mail | 10 | INCOMING CORRESPONDENCE | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 10 | INCOMING CORRESPONDENCE | Completed | LMLOBDO |
| 1/7/2014 7:32:43 AM | Documents/Mail | 8 | CLA M FORM - AUTHORIZATION | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 8 | CLA M FORM - AUTHORIZATION | Completed | LMLOBDO |
| 1/7/2014 7:32:43 AM | Documents/Mail | 7 | DECISION LETTER | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 7 | DECISION LETTER | Completed | LMLOBDO |
| 1/7/2014 | Documents/Mail | 9 | ENVELOPE | Completed | LMLOBDO |
| 12/6/2013 | Telephone (OUT) | 6 | Judy | Completed | LMLOBDO |

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2013 1:37:20 PM | Claim Tasks | 4 | Open Review | Requested | LMLOBDO |

DOCSQL Investigation Type: Other
Source: DENIAL REVIEW
12/4/13 Agree w ith determination to deny benefits. Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM w ith hardw are intact and no instability noted. Neurological and motor exam w as normal. Agree w ith denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT w ith a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record w ere review ed by KMF and R/L's are not supported based on medical documentation inthe file. Denial w ritten today and sent for final review . LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Claim Tasks | 4 | Open Review | Completed | LMLOBDO |

DOCSQL Investigation Type: Other
Source: DENIAL REVIEW
12/4/13 Agree w ith determination to deny benefits. Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM w ith hardw are intact and no instability noted. Neurological and motor exam w as normal. Agree w ith denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT w ith a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal

## Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

stenosis. Medical record w ere review ed by KMF and R/L's are not supported based on medical documentation inthe file. Denial w ritten today and sent for final review . LML

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/19/2013 3:16:59 PM | Claim Tasks | 3 | Open Review | Requested | LMLOBDO |

DOCSQL Investigation Type: Other
Source: PEND NG
12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT w ith a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record w ere review ed by KMF and R/L's are not supported based on medical documentation inthe file. Denial w ritten today and sent for final review . LML11/26/13 R/L not supported based on med review . Will need to w rite DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next w eek to w rite letter. LML11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay dow n for 30-45 minutes. gets shooting pains dow n legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not w ant to do it - feels fusion is solid enough and that another fusion w ouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being w oken up w ith shooting pains dow n legs, etc. Meds make unable to be alert - tried new meds last w eek - felt depressed and anxious (Methadone). No discussion regarding trying to w ork part-time - ER Will not accomodate. Issue w ith w orking part-time is doesn't know w hen episodes are going to hit - if at w ork even part-time and leg goes numb or gets shooting pains and needs to lie dow n then interrupts her day.. Has had epidurals and nerve root injections. They last a w eek or tw o and thats it. Prior to SCS tried a transforaminal injection - this w as really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review . also advised if approved first check w ill be released on or about 12/17. need to w rite up med review and send pend letters. LML 11/19/13 ER Initial call confirm coverage eff date, w as it 5/1/12 Pol Eff Date or w as it 5/1/13? What time missed since 3/1/10 DOH? Was she w orking the required 72 hours every 2 w eeks? did she have prior LTD claims w ith the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? w hat is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/5/2013 | Claim Tasks | 3 | Open Review | Completed | LMLOBDO |

DOCSQL Investigation Type: Other
Source: PEND NG
12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT w ith a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record w ere review ed by KMF and R/L's are not supported based on medical documentation inthe file. Denial w ritten today and sent for final review . LML11/26/13 R/L not supported based on med review . Will need to w rite DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next w eek to w rite letter. LML11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay dow n for 30-45 minutes. gets shooting pains dow n legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not w ant to do it - feels fusion is solid enough and that another fusion w ouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being w oken up w ith shooting pains dow n legs, etc. Meds make unable to be alert - tried new meds last w eek - felt depressed and anxious (Methadone). No discussion regarding trying to w ork part-time - ER Will not accomodate. Issue w ith w orking part-time is doesn't know w hen episodes are going to hit - if at w ork even part-time and leg goes numb or gets shooting pains and needs to lie dow n then interrupts her day.. Has had epidurals and nerve root injections. They last a w eek or tw o and thats it. Prior to SCS tried a transforaminal injection - this w as really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review . also advised if approved first check w ill be released on or about 12/17. need to w rite up med review and send pend letters. LML 11/19/13 ER Initial call confirm coverage eff date, w as it 5/1/12 Pol Eff Date or w as it 5/1/13? What time missed since 3/1/10 DOH? Was she w orking the required 72 hours every 2 w eeks? did she have prior LTD claims w ith the prior

**Chronological Activity List**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

carrier?  Need to do EE initial.  What is plan for RTW?  What is current treatment plans?  what is current Other income?  Did you apply for SSD yet?   Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder.   LML

| | | | | | |
|---|---|---|---|---|---|
| 11/19/2013 2:43:01 PM | Claim Tasks | 2 | Open Review | Requested | LMLOBDO |

DOCSQL Investigation Type: Other
Source: RETIREMENT
Defined Contribution Plan - eligible at age 59 1/2. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Claim Tasks | 2 | Open Review | Completed | LMLOBDO |

DOCSQL Investigation Type: Other
Source: RETIREMENT
Defined Contribution Plan - eligible at age 59 1/2. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (OUT) | 5 | JAMIE FLANAGAN | Completed | LMLOBDO |

12/5/13 clld EE to advise of denial - being mailed today.  Discussed denial.  She will appeal.  LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (OUT) | 4 | JAMIE FLANAGAN | Completed | LMLOBDO |

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2013 10:12:39 AM | Telephone (IN) | 3 | JAMIE FLANAGAN | Requested | LMLOBDO |

DOCSQL SubCategory: EOB (post claim)
EE called to check status of the claim
adv claim still in review
Will send a f/u to bs to call EE

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (IN) | 3 | JAMIE FLANAGAN | Completed | LMLOBDO |

DOCSQL SubCategory: EOB (post claim)
EE called to check status of the claim
adv claim still in review
Will send a f/u to bs to call EE

| | | | | | |
|---|---|---|---|---|---|
| 11/21/2013 12:51:17 PM | Referrals | 18588 | UNKNOWN | Initial | LMLOBDO |
| 11/26/2013 | Referrals | 18588 | UNKNOWN | Completed | LMLOBDO |
| 11/20/2013 | Telephone (OUT) | 2 | JAMIE FLANAGAN | Completed | LMLOBDO |

11/20/13 clld EE for initial interview  - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes.  gets shooting pains down legs unexpectedly.  no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any.  alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc.  Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone).  No discussion regarding trying to work part-time - ER Will not accomodate.  Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help.  current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours.  That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone.  Advised of pend for med review.  also advised if approved first check will be released on or about 12/17.  need to write up med review and send pend letters.   LML

| | | | | | |
|---|---|---|---|---|---|
| 11/20/2013 | Telephone (OUT) | 1 | Judy | Completed | LMLOBDO |

11/20/13 Clld ER for initial interview  -  This facility transitioned on 5/1/13 after being bought by Cox Medical.  This is why Eff 5/1/13.  EE did work full-time until 8/26/13 DOD.  Policy has a 30/5 pre-ex clause - no pre-ex investigation is required.  LML

| | | | | | |
|---|---|---|---|---|---|
| 11/19/2013 | Referrals | 18565 | Occ Analysis | Completed | LMLOBDO |
| 11/19/2013 | Documents/Mail | 6 | Acknowledgement letter | Completed | AUT |
| 11/18/2013 2:03:29 PM | Documents/Mail | 5 | CLAIM FORM - EMPLOYEE SECTION | Received | LMLOBDO |

8/21/2017

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/19/2013 | Documents/Mail | 5 | CLA M FORM - EMPLOYEE SECTION | Completed | LMLOBDO |
| 11/18/2013 2:01:43 PM | Documents/Mail | 4 | CLA M FORM - AUTHORIZATION | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 4 | CLA M FORM - AUTHORIZATION | Completed | LMLOBDO |
| 11/18/2013 1:58:24 PM | Documents/Mail | 3 | MEDICAL RECORDS | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 3 | MEDICAL RECORDS | Completed | LMLOBDO |
| 11/18/2013 1:58:12 PM | Documents/Mail | 2 | CLA M FORM - EE, ER, APS | Received | JLDOWSE |
| 11/19/2013 | Documents/Mail | 2 | CLA M FORM - EE, ER, APS | Completed | JLDOWSE |
| 11/18/2013 1:57:23 PM | Documents/Mail | 1 | CLA M FORM - AUTHORIZATION | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 1 | CLA M FORM - AUTHORIZATION | Completed | LMLOBDO |
| 11/19/2013 2:42:30 PM | Other Income | 1 | Retirement | UNKNOWN | LMLOBDO |
| | | | Defined Contribution - eligible at Age 59 1/2. Flup set for this date. LML | | |
| 11/19/2013 2:50:04 PM | Dependents | 3 | ███████ | Child | LMLOBDO |
| 11/19/2013 2:49:50 PM | Dependents | 2 | ███████ | Child | LMLOBDO |
| 11/19/2013 2:49:39 PM | Dependents | 1 | Jason | Spouse | LMLOBDO |
| 8/16/2017 12:39:10 PM | Status | | | REOPENED | CXGEARY |
| 2/7/2017 10:07:08 AM | Status | | Not TD Any Occ | CLOSED | JDJACKS |
| 10/24/2016 9:20:37 AM | Status | | | REOPENED | DO4RO2 |
| 4/26/2016 11:36:34 AM | Status | | Not TD Any Occ | CLOSED | RDHASTI |
| 2/4/2016 8:41:14 AM | Status | | | REOPENED | DO4RO2 |
| 9/29/2015 9:00:37 PM | Status | | Not TD Any Occ | CLOSED | BRMCLSDIRY |
| 4/28/2014 4:22:39 PM | Status | | Not TD Ow n Occ | CLOSED | LMLOBDO |
| 4/28/2014 4:18:47 PM | Status | | | REOPENED | LMLOBDO |
| 5/13/2014 1:48:59 PM | Status | | | CONTESTED | LMLOBDO |
| 5/13/2014 1:48:58 PM | Status | | | REOPENED | LMLOBDO |
| 12/5/2013 2:01:25 PM | Status | | Not TD Ow n Occ | CLOSED | LMLOBDO |
| 9/29/2015 9:00:37 PM | Payments | | DEPOSIT 9/24/2015 - 11/24/2015 | CURRENT | MXMACHI |
| 6/20/2014 8:36:57 PM | Payments | | CHECK 11/24/2013 - 6/24/2014 | NITIAL | TMELDER |

AMENDMENT NO. 3

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010157326

ISSUED TO: Lester E. Cox Medical Center

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated July 1, 2013.

The effective date of this amendment is July 1, 2013; but only with respect to disabilities incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

**THE LINCOLN NATIONAL LIFE INSURANCE COMPANY**

_____
Officer of the Company

Accepted by the Group Policyholder this _____ day of _____ 20_____

By _____ Title _____

GL1100 AMEND.

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

In Consideration of the Application for this Policy made by

Lester E. Cox Medical Center

(herein called the Policyholder)

and the payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the person or persons entitled to them.

Policy No.    000010157326          Policy Effective Date:    May 1, 2012

Monthly Premium:  .46% of Total Covered Payroll per Month

The above rate is guaranteed until January 1, 2016, unless any of the Policy's terms are changed.

Policy Anniversaries will be annual beginning on:  January 1, 2016

The first premium is due on this Policy's Effective Date, and subsequent premiums are due on June 1, 2012, and on the same day of each month thereafter.

This Policy is delivered in the state of Missouri and subject to the laws of that jurisdiction.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska this 4th day of June, 2013.


SECRETARY                              PRESIDENT

**GROUP LONG-TERM DISABILITY INSURANCE POLICY**

GL3001-LTD 10 MO                              -1 10  Policy Face Page (MO)

## TABLE OF CONTENTS

Schedule of Benefits……………………………………………………3

 Definitions ……………………………………………………………4

General Provisions ……………………………………………… 11

Claims Procedures ……………………………………………… 13

Eligibility …………………………………………………………… 16

Effective Dates……………………………………………………… 16

Individual Termination …………………………………………… 18

Policy Termination………………………………………………… 19

Conversion Privilege …………………………………………… 20

Premiums and Premium Rates ………………………………… 21

Total Disability Monthly Benefit ……………………………… 22

Progressive Income Benefit……………………………………… 23

Partial Disability Monthly Benefit……………………………… 25

Other Income Benefits…………………………………………… 27

Recurrent Disability……………………………………………… 30

Exclusions ………………………………………………………… 31

Specified Injuries or Sicknesses Limitation…………………… 32

Voluntary Vocational Rehabilitation Benefit Provision……………… 34

Reasonable Accommodation Benefit…………………………… 35

Prior Insurance Credit Upon Transfer of Insurance Carriers………… 36

Family Income Benefit …………………………………………… 37

Family Care Expense Benefit …………………………………… 38

Notice ……………………………………………………………… 40

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 115 of 550

LINC0115

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 1     Executives and Physicians

MINIMUM HOURS PER PAY PERIOD:  72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $10,000

MINIMUM MONTHLY BENEFIT:     $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:     None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:     Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO                                                              -SB 10 (MO)
07/01/13

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 2     All Full-Time Weekend Option Participants

MINIMUM HOURS PER PAY PERIOD: 48

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $10,000

MINIMUM MONTHLY BENEFIT:     $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:     One year of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:     Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO                                                                                       -SB 10 (MO)

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 3    All Other Full-Time Employees excluding Regular Part-time Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD:  72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    One year of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

-SB 10 (MO)

3-3

07/01/13

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 4    Regular Part-time Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD  40

### LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):    The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

3-4

-SB 10 (MO)
07/01/13

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS: Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 5    Grandfathered Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson   (Closed Class)

MINIMUM HOURS PER PAY PERIOD  72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   66 2/3%

MAXIMUM MONTHLY BENEFIT:   $12,000

MINIMUM MONTHLY BENEFIT:     $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:     None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

-SB 10 (MO)
07/01/13

3-5

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 6  All Regular Part-Time Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson (Closed Class)

MINIMUM HOURS PER PAY PERIOD  40
MINIMUM HOURS PER WEEK:  20

### LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:   66 2/3%

MAXIMUM MONTHLY BENEFIT:   $12,000

MINIMUM MONTHLY BENEFIT:   $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):  The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO                                                                -SB 10 (MO)
3-6
07/01/13

LINC00121

## DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below.  Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
1. the Employer's usual place of business; or
2. any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1. a Saturday, Sunday or holiday that is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is **not** due to the Employee's own health condition.

For Classes 1 and 5
**ANNUAL SALARY** means the Insured Employee's Contracted **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**Contracted BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means:
the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date.  The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:
1.
   bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, overtime pay, or any other extra compensation.  It does not include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.)  Exception:  For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

Classes 2 and 3
Bonus Eligible Employees, **ANNUAL SALARY** means the Insured Employee's **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date.  The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:

1.  bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter.  The Insured Employee must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits or any other extra compensation.  It does not include income from a source other than the Employer.  It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the

GL3001-LTD 10 MO

-3 10 MO

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 122 of 550    LINC00122

**DEFINITIONS**
**(continued)**

Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

Classes 2 and 3
**FOR PRODUCTION-BASED EMPLOYEES BASIC MONTHLY EARNINGS or PREDISABILITY INCOME** means 1/13th of the Insured Employee's production earnings from the Employer for the 13 months prior to the Determination Date. The "Determination Date" is the last day worked prior to the date of Disability. The Employee's production earnings are averaged over the 13 month period just prior to the Determination Date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the amount of the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records

For Classes 4 and 6
**ANNUAL SALARY** means the Insured Employee's Contracted **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**Contracted BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means:
the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

GL3001-LTD 10 MO                                                                                         -3 10 MO
                                                                                                         07/01/13

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 123 of 550    LINC00123

## DEFINITIONS
### (continued)

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY** or **DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan due to disability as defined in that plan; and
2. does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1. The Elimination Period:
   a. begins on the first day of Disability; and
   b. is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
   During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2. Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** or **FULL-TIME EMPLOYEE** means a person:
1. whose employment with the Employer is the person's main occupation;
2. whose employment is for regular wage or salary;
3. who is regularly scheduled to work at such occupation at least the Minimum Hours Per Week shown in the Schedule of Benefits;
4. who is a member of an Eligible Class which is eligible for coverage under this Policy;
5. who is not a temporary or seasonal employee; and
6. who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
1. is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
2. is taken in accord with the Employer's leave policy and the law which applies; and
3. does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period, as defined by the Employer. The 12 weeks:
1. may consist of consecutive or intermittent work days; or
2. may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Monthly Benefit, means the average number of hours the Insured Employee was regularly scheduled to work, at his or her Own Occupation, during the month just prior to:
1. the date the Elimination Period begins; or
2. the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**INJURY** means an accidental bodily Injury that:
1. requires treatment by a Physician; and
2. directly, and independently of all other causes, results in a Disability that begins while the Insured Employee is insured under this Policy.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
1. beginning at 12:01 a.m. Standard Time, at the Policyholder's place of business on the first day of any calendar month; and
2. ending at 12:00 midnight on the last day of the same calendar month.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

## DEFINITIONS
### (continued)

Main Duties include those job tasks:
1.   as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2.   as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1.   by a Physician whose license and any specialty are consistent with the disabling condition; and
2.   according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
1.   is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
2.   is taken in accord with the Employer's leave policy and the federal USERRA law; and
3.   does not exceed the period required by that law.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally Disabled or Partially Disabled.

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:
1.   in which the Insured Employee was employed with the Employer prior to Disability; and
2.   which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
1.   whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2.   whether a suitable opening is currently available with the Employer or in the local labor market.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

**DEFINITIONS**
**(continued)**

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
1. the Insured Employee's hours or production is reduced;
2. one or more Main Duties of the job are reassigned; or
3. the Insured Employee is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
1. must be at least 20% of Predisability Income; and
2. may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1. a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2. any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. Relatives include:
1. the Insured Employee's spouse, siblings, parents, children and grandparents; and
2. his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, company, trust or other organization as shown on the Face Page of this Policy.

**PREDISABILITY INCOME**—See Basic Monthly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

Such care will be deemed medically necessary until the attending Physician certifies in writing that the Insured Employee has reached his or her maximum point of recovery and that further treatment would be useless.

**REGULAR OCCUPATION**—See Own Occupation or Regular Occupation definition.

GL3001-LTD 10 MO

-3 10 MO

07/01/13

LINC00127

## DEFINITIONS
### (continued)

**RETIREMENT BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Insured Employee (Payments representing Employee contributions are deemed to be received over the Insured Employee's expected remaining life, regardless of when they are actually received.); and
3. is payable upon:
   a. early or normal retirement; or
   b. disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
1. provides Retirement Benefits to Employees; and
2. is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Insured Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
1. is established and maintained by the Employer for the benefit of Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under this Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
1. this Policy and any amendments to it;
2. the Policyholder's application (a copy of which is attached);
3. any Participating Employers' applications or Participation Agreements; and
4. any individual applications of the Insured Employees.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties. No statement made by an Insured Employee will be used to contest the coverage provided by this Policy, unless:
1. it is contained in a written statement signed by that Insured Employee; and
2. a copy of the statement has been furnished to that Insured Employee.

**AUTHORITY TO MAKE OR AMEND CONTRACT**. Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
1. determine the insurability of a group or any individual within a group;
2. make a contract in the Company's name;
3. amend or waive any provision of this Policy; or
4. extend the time for payment of any premium.

No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Employee, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
1. this Policy's eligibility requirements, exclusions and limitations; and
2. other Policy provisions unrelated to the validity of coverage.

**RESCISSION**. The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
1. an Insured Employee incurs a claim during the first two years of coverage; and
2. the Company discovers that the Insured Employee made a Material Misrepresentation on his or her application.

A "**Material Misrepresentation**" is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NON-PARTICIPATION**. This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED**. The Employer is required to furnish the Company any information needed to administer this Policy, including:
1. information about Employees:
   a. who become eligible for insurance;
   b. whose amounts of coverage change; or
   c. whose eligibility or coverage ends;
2. occupational information and other facts that may be needed to manage a claim; and
3. any other information that the Company may reasonably require.

The Company may inspect any of the Employer's records that relate to this Policy, at any reasonable time.

Clerical error by the Employer:
1. will not void or terminate insurance that otherwise would be in effect;
2. will not result in insurance coverage that otherwise would not be in effect; and
3. will not continue insurance that otherwise would be terminated.

Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof that such an adjustment should be made.

GL3001-LTD 10 MO

-7 04 MO

07/01/13

11

## GENERAL PROVISIONS
### (continued)

**MISSTATEMENTS OF FACTS**.  If relevant facts about any person were misstated:
1.  a fair adjustment of the premium will be made; and
2.  the true facts will decide if and in what amount insurance is valid under this Policy.

If an Insured Employee's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER**.  In administering this Policy, the Policyholder must:
1.  treat Employees the same in like situations; and
2.  allow the Company, without inquiry, to rely on its acts.

**POLICYHOLDER'S AGENCY**.  For all purposes of this Policy, the Policyholder acts on its own behalf or as the Employee's agent.  Under no circumstances will the Policyholder be deemed the Company's agent.

**CERTIFICATES**.  The Employer will be furnished with individual Certificates for delivery to each Insured Employee.  These Certificates summarize the benefits provided by this Policy.  If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES**.  If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY**.  In administering this Policy:
1.  all Predisability Income will be expressed in U.S. dollars; and
2.  all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE**.  This Policy does not:
1.  replace or provide; or
2.  relieve the Policyholder of providing;

benefits required by:
1.  Workers' Compensation laws; or
2.  any state disability insurance plan laws.

**ASSIGNMENT**.  The rights and benefits under this Policy may not be assigned.

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 130 of 550    LIN00130

## CLAIMS PROCEDURES

**NOTICE OF CLAIM**.  Written notice of claim must be given within 20 days after the loss occurs, or by the end of the Elimination Period, if later.  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
1.   the Insured Employee's name and address; and
2.   the number of this Policy.
If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS**.  When notice of claim is received, the Company will send claim forms to the Insured Employee.  If the Company does not send the forms within 15 days, the Insured Employee shall be deemed to have complied with the requirements of this Policy as to proof of loss upon submitting, within the time fixed in this Policy for filing proof of loss, written proof covering the occurrence, character, and extent of the loss for which claim is made.  The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM**.  The Company must be given written proof of claim within 90 days after the end of the Elimination Period.  When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1.   as soon as reasonably possible; and
2.   in no event later than one year after it was required.
These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense.  It must show the date the Disability began, its cause and degree.  Documentation must include:
1.   completed statements by the Insured Employee and the Employer;
2.   a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3.   proof of any other income received;
4.   proof of any benefits available from other income sources, which may affect Policy benefits;
5.   a signed authorization for the Company to obtain more information; and
6.   any other items the Company may reasonably require in support of the claim.
Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company.  This must be supplied within 45 days after the Company requests it.  If it is not, benefits may be denied or suspended.

**EXAMINATION.**  The Company may have the Insured Employee examined:
1.   by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2.   as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1.   failed to cooperate with an examiner;
2.   failed to take an exam scheduled by the Company; or
3.   postponed such an exam more than twice.
In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.**  Benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.  After that:
1.   Any benefits will be paid monthly, during any period for which the Company is liable.  If benefits are due for less than a month, they will be paid on a pro rata basis.  The daily rate will equal 1/30 of the Monthly Benefit.
2.   Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3001-LTD 10 MO                                                                                       -8 10 MO
07/01/13

## CLAIMS PROCEDURES
### (continued)

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that section.
2. Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1. the Insured Employee's estate; or
2. a minor or any other person who is not legally competent to give a valid receipt;

then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1. the reason for the denial, under the terms of this Policy and any internal guidelines;
2. how the Insured Employee may request a review of the Company's decision; and
3. whether more information is needed to support the claim.

This notice will be sent:
1. within 15 days after the Company resolves the claim;
2. within 30 days after the Company receives acceptable proof of claim; and
3. within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1. by the 15th day after receiving the first proof of claim; and
2. every 30 days after that, until the claim is resolved.

The notice will explain:
1. what additional information is needed to determine liability; and
2. when a decision can be expected.

If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1. a written request; and
2. any written comments or other items to support the claim.

The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1. any further appeal procedures available under this Policy;
2. the right to access relevant claim information; and
3. the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

GL3001-LTD 10 MO -8 10 MO

07/01/13

LIN00132

## CLAIMS PROCEDURES
### (continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1. an extension of up to 45 more days will be permitted; and
2. the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. the special circumstances which require the delay;
2. whether more information is needed to review the claim; and
3. when a decision can be expected.

**Exception:** The Company may need more information from the Insured Employee to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1. an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1. reduce future benefits and suspend payment of the Minimum Monthly Benefit under this Policy, until full reimbursement is made;
2. reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1. the Company's error in processing a claim;
2. the Insured Employee's receipt of Other Income Benefits;
3. fraud, misrepresentation or omission of relevant facts; or
4. any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

## ELIGIBILITY

**ELIGIBLE CLASSES**. The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY DATE**. An Employee becomes eligible for coverage provided by this Policy on the later of:
1.    this Policy's date of issue; or
2.    the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period**. The Waiting Period is shown in the Schedule of Benefits. Prior service in an Eligible Class will apply toward the Waiting Period, when:
1.    a former Employee is rehired within six months after his or her employment ends; or
2.    an Employee returns from an approved Family or Medical Leave within:
    a.    the 12-week leave period required by federal law; or
    b.    any longer period required by a similar state law; or
3.    an Employee returns from a Military Leave within the period required by federal USERRA law.

## EFFECTIVE DATES

**EFFECTIVE DATE**. An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1.    (a)    for Classes 1, 4, 5 and 6, the date the Employee becomes eligible for the coverage; or
    (b)    for Classes 2 and 3, the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2.    the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3.    the date the Employee makes written application for coverage and signs;
    a.    a payroll deduction order, if the Employees pay any part of the Policy premium; or
    b.    an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4.    the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1.    the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2.    the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3.    the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

**EVIDENCE OF INSURABILITY**. Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
1.    an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2.    an Employee makes written application to enroll for coverage after he or she has requested:
    a.    to cancel insurance;
    b.    to stop payroll deductions for the insurance; or
    c.    to stop premium payments from the Flexible Benefits Plan account;
3.    coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4.    optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

GL3001-LTD 10 MO                                                      -9 04

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 134 of 550    LIN00134

**EFFECTIVE DATES**
**(Continued)**

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS**.  An Insured Employee may become a member of a different Eligible Class.  Coverage under the different Eligible Class will be effective:
1.  on the first day of the Insurance Month coinciding with or next following the date of the change;
2.  except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS**.  If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe.  "**Reinstatement**" or "**to reinstate**" means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability.  Reinstatement is available upon:
1.  return from an approved Family or Medical Leave within:
    a.  the 12-week period required by federal law; or
    b.  any longer period required by a similar state law;
2.  return from a Military Leave within the period required by federal USERRA law;
3.  return from any other approved leave of absence within six months after the leave begins;
4.  return within six months following a lay off; or
5.  return within six months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class.  The reinstated amount of insurance may not exceed the amount that terminated.  Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:
1.  the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2.  a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.
A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

## INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.** An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1. the date this Policy or the Employer's participation terminates; (but without prejudice to any claim incurred prior to termination);
2. the date the Insured Employee's Class is no longer eligible for insurance;
3. the date such Insured Employee ceases to be a member of an Eligible Class;
4. the last day of the Insurance Month in which the Insured Employee requests termination;
5. the last day of the last Insurance Month for which premium payment is made on the Insured Employee's behalf;
6. the end of the period for which the last required premium has been paid;
7. with respect to a particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
8. the date the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below; or
9. the date the Insured Employee enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Employee sends proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Employee's eligibility for insurance, but coverage may be continued as follows.

1. **Disability**. If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment, coverage may be continued during:
   a. the Elimination Period; provided the Company receives the required premium from the Employer; and
   b. the period for which benefits are payable, without payment of premium.
   Premium payments will be waived from the satisfaction of the Elimination Period until the end of the period for which benefits are payable. If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed, as they become due.

2. **Family or Medical Leave**. If an Insured Employee goes on an approved Family or Medical Leave, and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued, until the earliest of:
   a. the end of the leave period approved by the Employer;
   b. the end of the 12-week leave period required by federal law, or any more favorable period required by a similar state law;
   c. the date the Insured Employee notifies the Employer that he or she will not return; or
   d. the date the Insured Employee begins employment with another employer.
   The required premium payments must be received from the Employer, throughout the period of continued coverage.

3. **Military Leave**. If an Insured Employee goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

4. **Lay-off or Other Leave**. When an Insured Employee ceases work due to a temporary lay-off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay-off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

## INDIVIDUAL TERMINATION
### (Continued)

**Conditions.** In administering the above continuation(s), the Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## POLICY TERMINATION

**POLICY TERMINATION BY THE COMPANY.** To terminate this Policy, the Company must give the Group Policyholder at least 31 days advance written notice of its intent to do so. The Company may terminate this Policy on the due date of any premium if:
1. the number of Insured Employees totals less than 10;
2. part of the premium is paid by the Insured Employee and less than 75% of those eligible for coverage are insured;
3. all of the premium is paid by the Policyholder and less than 100% of those eligible for coverage are insured;
4. the Policyholder, without good cause, fails to:
   a. promptly furnish any information which the Company may reasonably require;
   b. perform its duties pertaining to this Policy in good faith;
5. the Employer ceases to be covered under the state Workers' Compensation program or any other program of like intent.
6. the Company terminates all other policies where permitted by their terms, which provide long-term disability benefits in the same state in which this Policy was issued; or
7. state law otherwise requires this Policy to be terminated.

**POLICY TERMINATION BY THE POLICYHOLDER.** The Policyholder may terminate this Policy at any time by giving the Company advance written notice. This Policy will then terminate on:
1. the date the Company receives the notice; or
2. some later date on which the Policyholder and the Company have agreed.

However, termination will not become effective during any period for which premium has been paid to the Company. The Policyholder remains liable for the payment of premiums to the date of termination.

**AUTOMATIC POLICY TERMINATION.** If any premium is not paid before the end of the Grace Period; then this Policy will terminate at the end of the Grace Period, without any action on the Company's part. The Policyholder remains liable for the payment of premiums to the date of termination.

**POLICY TERMINATION DURING DISABILITY.** Termination of this Policy or an Employer's participation during a Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability.

GL3001-LTD 10 MO

-10 04

07/01/13

## CONVERSION PRIVILEGE

ELIGIBILITY.  This Policy provides a conversion privilege, when an Insured Employee's insurance under this Policy ends because he or she:
1.   resigns from employment with the Employer;
2.   is terminated from employment with the Employer, with or without cause;
3.   goes on a lay-off or leave of absence; or
4.   remains on a lay-off or leave of absence beyond the continuation period provided in the Individual Termination section of this Policy.

The Insured Employee may obtain converted long term disability insurance, without medical evidence of insurability.  To be eligible for a converted policy, the Insured Employee must have been insured under the Employer's group plan for at least 12 months in a row, just before his or her insurance under this Policy terminated.  The 12 months can be a combination of coverages under this Policy, and under any prior group long term disability plan which this Policy replaces.

APPLICATION.  Application to convert must be made within 31 days after insurance under this Policy terminates.  The converted benefits and amount of insurance may differ from those under this Policy.

CONDITIONS AND LIMITATIONS.  This conversion privilege is not available to any Insured Employee whose insurance terminates because:
1.   this Policy is terminated by the Employer or the Company;
2.   this Policy is amended to exclude the class to which the Insured Employee belongs:
3.   the Insured Employee no longer belongs to a class eligible for coverage under this Policy;
4.   the Insured Employee retires or dies;
5.   the Insured Employee fails to pay the required premium; or
6.   the Insured Employee is Disabled under the terms of this Policy.

Also, this conversion privilege is not available to an Insured Employee who becomes insured for long term disability benefits under any other group plan; unless the other coverage takes effect more than 31 days after his or her insurance under this Policy terminates.

If an Insured Employee converts his or her Policy coverage, and later resumes active employment in an eligible class; then the Insured Employee's conversion coverage will terminate on the day before he or she is re-enrolled under this Policy.  In no event will benefits be paid under both this Policy and the conversion coverage for the same period of Disability.

Conversion Privilege

For

GL3001-LTD 10 MO

-10.1

07/01/13

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUM.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, the Employer must pay each subsequent premium on or before its due date at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

**PREMIUM RATES.** The initial premium rates for this Policy are shown on the Face Page of this Policy. Premium rates are subject to change.

**PREMIUM RATE CHANGE.** The Company may change any premium rate on any of the following dates:
1. the date this Policy's terms are changed;
2. the date the Company's liability is changed due to a change in federal, state, or local law;
3. the date the Company's liability is changed because the Policyholder (or any covered division, subsidiary or affiliated company):
   a. relocates, dissolves or merges, or is added to or removed from this Policy; or
   b. ceases to be covered by the state Workers' Compensation program or any other program of like intent; or
   c. ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
4. the date any coverage for one or more classes ceases to be provided under this Policy;
5. the date the number of Insured Employees changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later;
6. on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**MONTHLY PREMIUM AMOUNT.** The amount of monthly premium due on each due date will be the Total Covered Payroll multiplied by the premium rate. Changes will not be pro-rated daily. Instead, premium will be adjusted as follows.
1. When an Insured Employee's insurance (or increased amount of insurance) takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
2. When all or part of an Insured Employee's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
3. When premiums are paid other than monthly, increases or decreases will result in an adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated.

Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the amount of the return will be limited to the prior 12-month period.

**GRACE PERIOD.** A Grace Period of 60 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the Grace Period. The Policyholder will be liable to the Company for the payment of all premiums due for the period this Policy remains in effect, however.

**WAIVER OF PREMIUM.** Premium will be administered as follows during any period for which benefits are payable.
1. Premium payments are waived for an Insured Employee who is Disabled:
   a. from the first premium due date following the satisfaction of the Elimination Period;
   b. until the end of any period for which benefits are payable.
2. If coverage is to be continued following a period during which premiums were waived, premium payments must be resumed as they become due.

GL3001-LTD 10 MO

21

-11 04
07/01/13

## TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT**.  The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
1.	is Totally Disabled;
2.	becomes Disabled while insured for this benefit;
3.	is under the Regular Care of a Physician; and
4.	at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1.	the date the Insured Employee ceases to be Totally Disabled or dies;
2.	the date the Maximum Benefit Period ends; or
3.	the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
	a.	in his or her Own Occupation, during the Own Occupation Period; or
	b.	in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1.	the date the Insured Employee (without good cause):
	a.	fails to take a required medical exam;
	b.	fails to cooperate with the examiner; or
	c.	postpones a required exam more than twice;
2.	the 45th day after the Company mails a request for additional proof, if not given; or
3.	the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

**AMOUNT**.  The amount of the Total Disability Monthly Benefit equals:
1.	the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2.	Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit.

The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Any Occ

GL3001-LTD 10 MO

-12 10 MO, Standard Integ.

07/01/13

22

LIN00140

## PROGRESSIVE INCOME BENEFIT

**EFFECTIVE DATE.** An Insured Employee will become insured for the Progressive Income Benefit on:
1. the effective date of his or her coverage for Long Term Disability Benefits under this Policy; or
2. the effective date of this provision, if it is added later by amending this Policy.

**Exception:** The effective date will be delayed for an Insured Employee who is unable to perform one or more Activities of Daily Living or suffers from a Cognitive Impairment on that date. In that event, the Insured Employee will become insured for this benefit on the first day he or she:
1. is able to safely and completely perform all of the Activities of Daily Living without another person's active, hands-on help; or
2. no longer suffers from a Cognitive Impairment.

**BENEFIT.** After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she:
1. is receiving Total Disability or Partial Disability Monthly Benefits under this Policy; and
2. submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment (as defined below).
Proof must be submitted at the Insured Employee's own expense.

**AMOUNT.** The amount of the Progressive Income Benefit:
1. will equal 10% of the Insured Employee's Basic Monthly Earnings; but
2. will not exceed the Maximum Monthly Benefit for Long Term Disability Benefits, or $5,000 per month (whichever is less).
The Maximum Monthly Benefit for Long Term Disability Benefits is shown in the Schedule of Insurance. The Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment.

**DURATION.** This Progressive Income Benefit will cease on the earliest of:
1. the date the Insured Employee no longer suffers from the Loss of Activities of Daily Living or Cognitive Impairment (as defined below);
2. the date the Insured Employee is no longer entitled to Total Disability or Partial Disability Monthly Benefits under this Policy;
3. the date the Maximum Benefit Period ends; or
4. the date the Insured Employee dies.
If this Policy includes a Family Income Benefit, the amount paid to the Eligible Surviving Spouse or Children will not increase due to the Insured Employee's receipt of this Progressive Income Benefit.

## DEFINITIONS

**"Loss of Activities of Daily Living"** means that, due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** - washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** - putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** - getting to, from, on and off toilet; and performing related personal hygiene.
4. **Transferring** - moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** - voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** - once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

GL3001-LTD 10 MO

-12D 01 ADL Benefit (MO)

07/01/13

23

## PROGRESSIVE INCOME BENEFIT
### (continued)

**"Cognitive Impairment"** means that due to an Injury or Sickness, the Insured Employee:
1. has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2. requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

**"Mental Sickness"** as used in this provision, means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from stroke; trauma; viral infection; Alzheimer's disease; or other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Pre-Existing Condition,"** as used in this provision, means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to his or her effective date for this benefit. Treatment includes a Physician's consultation, care and services; diagnostic measures; and the prescription, refill or taking of prescribed drugs or medicines.

## EXCLUSIONS AND LIMITATIONS

**Prior Disability.** This benefit will not be payable during a period of Disability which begins before the Insured Employee's effective date of coverage under this benefit.

**Pre-Existing Conditions.** This benefit will not be payable for a Loss of Activities of Daily Living or Cognitive Impairment:
1. which is caused or contributed to by, or results from a Pre-Existing Condition (as defined above); and
2. which begins in the first 12 months after the Insured Employee's effective date under this benefit; unless the Insured Employee received no Treatment of the condition for 6 consecutive months after his or her effective date under this benefit.

**Mental Sickness and Substance Abuse.** This benefit will not be payable during a period of Disability which is caused or contributed to by or results from a Mental Sickness, alcoholism, or voluntary use of a Controlled Substance; unless prescribed by a Physician. Controlled Substances are those defined as such in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and any amendments to it.

**Other Provisions.** This benefit will be subject to all of the Definitions, Exclusions, Proof of Claim, Waiver of Premium and other provisions of this Policy.

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT**.  The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period, if he or she:
1. is Disabled;
2. becomes Disabled while insured for this benefit;
3. is engaged in Partial Disability Employment;
4. is earning at least 20% of Predisability Income when Partial Disability Employment begins;
5. is under the Regular Care of a Physician, if required; and
6. at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits.  The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination of these.

The Partial Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Partially Disabled or dies;
2. the date the Maximum Benefit Period ends;
3. the date the Insured Employee earns more than:
   a. 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   b. 85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;
4. the date the Insured Employee is able, but chooses not to work full-time:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Partial Disability.

At the Company's option, Partial Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 143 of 550    LIN00143

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT.  The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

    A.    LOST INCOME:  The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

    B.    TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
        1.    The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
        2.    Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit.  The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

For Classes 1, 2, 3, 4, 5, 6

GL3001-LTD 10 MO

-13.4

26

07/01/13

# OTHER INCOME BENEFITS

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under this Policy.

**Workers' Compensation**. Any benefits for which the Insured Employee is eligible under a law that compensates for job related Injury or Sickness. This includes:
1. any Workers' Compensation or occupational disease law;
2. the Jones Act;
3. the Longshoreman's and Harbor Worker's Act;
4. the Maritime Doctrine of Maintenance, Wages or Cure; or
5. any plan provided in place of one of the above plans.

It includes any benefits for partial or total disability, whether temporary or permanent. It also includes any benefits for vocational rehabilitation.

**Other Compulsory Benefits**. Any disability income benefits the Insured Employee is eligible to receive under any other compulsory benefit act or law. This includes (but is not limited to):
1. state temporary disability income benefit laws;
2. state no fault auto insurance laws; or
3. any other compulsory benefit act or law.

**Other Insurance Plans**. Any disability income benefits for which the Insured Employee is eligible under:
1. any other group insurance plan (except credit or mortgage insurance); or
2. any no fault auto plan.

**Employee Benefit Plans**. Any disability income benefits for which the Insured Employee is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay or pay for work actually performed during a Disability.

**Employer's Retirement Plan**. Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans**. The following Social Security or other Government Retirement Plan benefits will be offset:
1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
1. the federal Social Security Act, Jones Act or Railroad Retirement Act;
2. the Canada Pension Plan or Quebec Pension Plan;
3. any similar plan or act of any country, state, province or other political unit; or
4. any plan provided in place of one of the above plans.

## OTHER INCOME BENEFITS
### (continued)

"**Earnings**", as used in this provision, means pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:

1. salaried or hourly Employee's gross earnings (shown on Form W-2); including:
   a. wages, tips, commissions, bonuses and overtime pay; and
   b. any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
2. proprietor's net profit (figured from Form 1040, Schedule C);
3. professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
4. partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
5. Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Exceptions**. The following will **not** be considered Other Income Benefits, and will not be offset in determining the Monthly Benefit:

1. a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
2. reimbursement for hospital, medical or surgical expense;
3. reimbursement for attorney fees and other reasonable costs of claiming Other Income Benefits;
4. group credit or mortgage disability insurance benefits;
5. early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
6. any amounts under the Employer's Retirement Plan that:
   a. represent the Insured Employee's contributions; or
   b. are received upon termination of employment without being disabled or retired;
7. benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
8. vacation pay, holiday pay, or severance pay; or
9. disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

GL3001-LTD 10 MO -14-INT 10 MO Any Occ, Prim & Fam SS Integ.

28

07/01/13

Case 3:17-cv-05060-MDH Document 33-1 Filed 05/15/18 Page 146 of 550 LINC0146

## OTHER INCOME BENEFITS
### (continued)

**RULES FOR OTHER INCOME BENEFIT OFFSETS**.  If the Insured Employee may be entitled to Other Income Benefits that affect Policy benefits, the following rules will apply.

**Claiming Other Income Benefits.**  An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it.  For example, if benefits may be payable under the federal Social Security Act, the Insured Employee:
1. must apply for such benefits on a timely basis;
2. must file a request for reconsideration, if benefits are denied; and
3. must request a hearing before an Administrative Law Judge, if denied again (unless the Company waives this in writing).

An Employer whose Insured Employee may be entitled to Workers' Compensation or similar benefits is also required to cooperate in filing that claim.  If the Insured Employee fails to pursue Other Income Benefits on a timely basis, the Company has the option to:
1. deny or suspend Monthly Benefits; or
2. reduce Monthly Benefits by an estimated amount.

**Estimating Offsets**.  While a claim for Social Security or other Government Retirement Plan benefits is pending, the Insured Employee must elect one of the following options in writing.  (If no written election is made, Monthly Benefits will be reduced in accord with Option 1.)

1. **Reduced Monthly Benefits**.  The Insured Employee may receive Monthly Benefits reduced by estimated Social Security or other Government Retirement Plan benefits.  The Company will adjust Policy benefits and will refund any underpayment, in a lump sum, upon receiving proof of:
   a. the amount actually awarded; or
   b. the claim denial and completion of any appeal the Company requires.

2. **Unreduced Monthly Benefits**.  The Insured Employee may receive unreduced Monthly Benefits while the claim is pending.  He or she must agree in writing to promptly refund any overpayment that results, in a lump sum, upon receiving Social Security or other Government Retirement Plan benefits.  If he or she does not promptly refund an overpayment:
   a. the Company will reduce or eliminate future payments; and
   b. the Minimum Monthly Benefit will not apply, until the amount is repaid.

**Lump Sum Payments**.  Other Income Benefits that are paid in a lump sum will be pro rated as follows.
1. The lump sum will be pro rated on a monthly basis, over the time period for which it is given.
2. If no time period is stated, the Company will continue its estimated monthly offset for that benefit, until full amount is offset.
3. If no estimated monthly offset was being made for that benefit, the lump sum will be pro rated on a monthly basis over a reasonable time period.  It will not exceed 60 months or the Maximum Benefit Period (whichever occurs first).

**Cost-of-Living Freeze.**  After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen.  The Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

# RECURRENT DISABILITY

"**Recurrent Disability**" means a Disability caused by an Injury or Sickness that is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable.  A Recurrent Disability will be treated as follows.

1. **New Disability.**  A Recurrent Disability will be treated as a new Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
   a.   on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; and
   b.   for six consecutive months or more following the date the prior Disability benefits ended.

   A new Elimination Period must be completed before further Monthly Benefits become payable.  A new Maximum Benefit Period will apply.

2. **Prior Disability.**  A Recurrent Disability will be treated as part of the prior Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
   a.   on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; but
   b.   for less than six consecutive months following the date the prior Disability benefits ended.

   The completion of a new Elimination Period is not required before further Monthly Benefits become payable.  The same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability.  The Predisability Income used in determining the prior Disability benefit will apply as well.

   In addition, a Recurrent Disability will be treated as a prior Disability if all of the subsequent events occur in less than six consecutive months following the date the prior Disability benefits end under this Policy:
   a.   a job opening is not available for the Insured Employee to return to work with the Employer;
   b.   the Insured Employee's coverage under this Policy terminates;
   c.   the former Employee returns to his or her Own Occupation with a new employer on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits;
   d.   benefits are not payable under any other group long-term disability plan; and
   e.   a Recurrent Disability begins.

   Benefits for the former Employee will be reinstated for the Recurrent Disability and the completion of a new Elimination Period will not be required before further Monthly Benefits become payable.  The same Maximum Benefit Period, Exclusions, and Limitations will apply to the Recurrent Disability as to the prior Disability.  The Predisability Income used in determining the prior Disability benefit will apply as well.  Benefits reinstated under this provision are subject to this Policy's terms and conditions that were in effect at the time the prior Disability began.

To qualify for a Monthly Benefit, the Insured Employee or former Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section.  Monthly Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Employee or former Employee who becomes eligible for coverage under any other group long-term disability plan.

GL3001-LTD 10 MO                                                                                               -15 04

## EXCLUSIONS

**GENERAL EXCLUSIONS.** This Policy will not cover any period of Total or Partial Disability:
1. due to war, declared or undeclared, or any act of war;
2. due to intentionally self-inflicted injuries;
3. due to active participation in a riot;
4. due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5. during which the Insured Employee is incarcerated for the commission of a felony;
6. during which the Insured Employee is not under the Regular Care of a Physician; or
7. after the Insured Employee has resided outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer.

**PRE-EXISTING CONDITION EXCLUSION.** This Policy will not cover any Total or Partial Disability:
1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
2. which begins in the first 5 days after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 30 days prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician. It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

GL3001-LTD 10 MO

-16 10 MO 5-day Pre-Ex.

07/01/13

31

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

LIMITATION. If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1.  will be payable subject to the terms of this Policy; but
2.  will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

CONDITIONS
1.  If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2.  In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

**"Hospital,"** as used in this provision, means:
1.  a general hospital which:
    a.  is licensed, approved or certified by the state where it is located; or
    b.  is recognized by the Joint Commission on the Accreditation of Healthcare Organizations; and
    c.  is operated to treat resident inpatients; has a registered nurse always on duty or call; and has a lab, x-ray facility and place where surgery is performed.
2.  a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1.  a Mental Hospital when treatment is for a Mental Sickness; and
2.  a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:
1.  is licensed, certified or approved as a mental hospital by the state where it is located;
2.  is equipped to treat resident inpatients' mental diseases or disorders; and
3.  has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1.  schizophrenia or schizoaffective disorder;
2.  bipolar affective disorder, manic depression, or other psychosis; and
3.  obsessive-compulsive, depressive, panic or anxiety disorders.
These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does not include irreversible dementia resulting from:
1.  stroke, trauma, viral infection, Alzheimer's disease; or
2.  other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

GL3001-LTD 10 MO

-17 04 MO Specified Limit.

07/01/13

**"Substance Abuse"** means alcoholism, drug abuse, or chemical dependency of any type.

**"Treatment Center"** means a health care facility (or its medical or psychiatric unit) which:
1. is licensed, certified or approved by the state where it is located;
2. has a program for inpatient treatment of substance abuse; and
3. provides such treatment based upon a written plan approved and supervised by a Physician.

## VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

BENEFIT.   If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit.  This Benefit consists of services which may include:
1.   vocational evaluation, counseling, training or job placement;
2.   job modification or special equipment; and
3.   other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

ELIGIBILITY.  An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1.   has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2.   has the physical and mental abilities needed to complete a Program; and
3.   is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

AMOUNT.   The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability.  This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program.  Payment may be made to the provider of the services, at the Company's option.

CONDITIONS.   Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation.   When a Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

LIMITATION.   This Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

DEFINITIONS

"**Good Cause**", as used in this provision, means the Insured Employee's:
1.   documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2.   involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3.   participating in good faith in some other vocational rehabilitation program, which:
   a.   conflicts with taking part in or completing a Program developed by the Company; and
   b.   is reasonably expected to return the Insured Employee to work.

"**Program**" means a written vocational rehabilitation program:
1.   which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2.   which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

GL3001-LTD 10 MO

34

-17.3 98 Voluntary Rehab.
07/01/13

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:
1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:
1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:
a. whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
b. who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
c. who is reasonably expected to return to work with the help of the proposed accommodation.
The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:
1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.
The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:
1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3001-LTD 10 MO                                                                                -17.3

07/01/13

LINC00153

**PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS**

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, this Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.  Subject to premium payments, this Policy will provide coverage to an Employee:
1.   who was insured by the prior carrier's policy at the time of transfer; and
2.   who was not Actively-At-Work due to Injury or Sickness on this Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:
1.   the benefit that the prior carrier would have paid; minus
2.   any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION.  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
1.   was insured by the prior carrier's policy at the time of transfer; and
2.   was Actively-At-Work and insured under this Policy on this Policy's Effective Date.

The benefits will be determined as follows:
1.   The Company will apply this Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to this Policy's benefit schedule.
2.   If the Insured Employee cannot satisfy this Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
     a.   this Policy without applying the Pre-Existing Condition Exclusion; or
     b.   the prior carrier's policy;
     whichever is less.
3.   If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of this Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

GL3001-LTD 10 MO

-18 99

07/01/13

# FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1.  after Disability had continued for 180 or more consecutive days; and
2.  while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death.  Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1.  surviving spouse; or, if none
2.  surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1.  the surviving children, in equal shares; or
2.  a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3001-LTD 10 MO

-19 94

07/01/13

LINC00155

## FAMILY CARE EXPENSE BENEFIT

**BENEFIT.** The Company will reimburse an Insured Employee's Family Care Expenses as described below, while he or she is:
1.    receiving a Partial Disability Monthly Benefit under this Policy; or
2.    receiving a Total Disability Benefit under this Policy, and:
    a.    is Terminally Ill;
    b.    has suffered a Cognitive Impairment; or
    c.    has suffered a Loss of Activities of Daily Living.

The Family Care Expense Benefit is paid in addition to all other Policy benefits and will not be offset by Other Income Benefits.

**PROOF.** The Insured Employee must submit to the Company satisfactory proof that a Family Care Expense has been incurred for a Dependent and paid by the Insured Employee. Proof must be submitted on a monthly basis. Satisfactory proof is a signed receipt from the Dependent care provider showing:
1.    Dependent name;
2.    Dependent age;
3.    if Dependent age exceeds the maximum shown in definition of "Dependent" below, reason for care;
4.    dates of care;
5.    total charges for care;
6.    total payments for care; and
7.    provider name, address, telephone number, and Federal Employer Identification Number/Taxpayer Identification Number.

**AMOUNT.** The Family Care Expense Benefit will equal actual Family Care Expenses paid by the Insured Employee that are not reimbursable from other sources, up to $250 per month for each eligible Dependent.

**DURATION.** The Family Care Expense Benefit will cease on the earliest of:
1.    the date the Insured Employee's Total or Partial Disability Benefits under this Policy cease;
2.    the date an Insured Employee's Dependents no longer meet the definition of Dependent in this provision; or
3.    the date the Company has made 12 monthly Family Care Expense Benefit payments.

**DEFINITIONS.**

**"Child"** includes the Insured Employee's naturally born child, legally adopted child, stepchild, foster child, or child for whom the Insured Employee is the legal guardian.

**"Cognitive Impairment"** means that the Insured Employee or Dependent:
1.    has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2.    requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician, based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 156 of 550   LIN00156

## FAMILY CARE EXPENSE BENEFIT
### (Continued)

**"Dependent"** means the Insured Employee's:
1. legal spouse, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition;
2. Child less than age 16;
3. unmarried Child age 16 years or older, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition; or
4. parent or parent-in-law, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition.

**"Family Care Expense"** means an expense for the care of a Dependent, charged by a licensed care provider who:
1. is not a member of the Insured Employee's immediate family; and
2. is not living in the Insured Employee's home.

**"Incapable of Independent Living"** means the Dependent:
1. is Terminally Ill;
2. suffers a Cognitive Impairment; or
3. suffers a Loss of Activities of Daily Living.

**"Loss of Activities of Daily Living"** means that the Insured Employee or Dependent has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** – washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** – putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** – getting to, from, on and off toilet and performing related personal hygiene.
4. **Transferring** – moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** – voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** – once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

**"Terminally Ill"** means the Insured Employee or Dependent has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
## HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Missouri who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state, to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And as noted below this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, MO 65109

Missouri Division of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. Included is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

MO NOTICE A 06

07/01/13

Generally, persons will be protected by the Life and Health Insurance Guaranty Association if they live in this state, and hold a life or health insurance contract, or an annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when:

1. The person is eligible for protection under the laws of another state;
2. The person purchased the insurance from a company that was not authorized to do business in this state;
3. The policy is issued by an organization which is not a member insurer of the association; or
4. The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

MO NOTICE A 06

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        000010157326        has been issued to

Lester E. Cox Medical Center
(The Group Policyholder)

The Issue Date of the Policy is May 1, 2012.

Certificate of Insurance for Class 3

{INSURED}

**{Schedule of Insurance}**
**{Coverage}**
{BENEFIT_1}
{BENEFIT_2}
{BENEFIT_3}

You are entitled to the benefits described in this Certificate only if you are eligible, become and remain insured under the provisions of the Policy.  This Certificate replaces any other certificates for the benefits described inside.  As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.  If the provisions of this Certificate and the Policy do not agree, the provisions of the Policy will apply.

*Dennis R Glass*
President

**CERTIFICATE OF GROUP LONG TERM DISABILITY INSURANCE**

GL3002-CERT 10 MO                                                                 -LTD-CERT 10 Face Page
{LFGLOGO}            {USER}            {CERT_ID}            05/01/12

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 160 of 550    LIN00160

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 161 of 550   LIN00161

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Cox Monnett

ELIGIBLE CLASS means: Class 3    All Other Full-Time Employees excluding Regular Part-time Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD:  72

### LONG-TERM DISABILITY BENEFITS

WAITING PERIOD:    One year of continuous Active Work (For date insurance begins, refer to "Effective Dates" section)

BENEFIT PERCENTAGE:   60%

MAXIMUM MONTHLY BENEFIT:   $10,000

MINIMUM MONTHLY BENEFIT:   $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury or Pre-Existing Condition):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

GL3002-CERT 10 MO                                             -SB 10 (MO)

05/01/12

LIN00163

## TABLE OF CONTENTS

Definitions ……………………………………………………………………… 3

General Provisions …………………………………………………………… 9

Claims Procedures……………………………………………………………… 10

Eligibility …………………………………………………………………… 13

Effective Dates………………………………………………………………… 13

Individual Termination ……………………………………………………… 15

Conversion Privilege…………………………………………………………… 17

Total Disability Monthly Benefit ……………………………………………… 18

Partial Disability Monthly Benefit…………………………………………… 19

Other Income Benefits ………………………………………………………… 21

Recurrent Disability…………………………………………………………… 24

Progressive Income Benefit…………………………………………………… 25

Exclusions ……………………………………………………………………… 27

Specified Injuries or Sicknesses Limitation ………………………………… 28

Voluntary Vocational Rehabilitation Benefit Provision……………………… 30

Reasonable Accommodation Benefit ………………………………………… 31

Prior Insurance Credit Upon Transfer of Insurance Carriers………………… 32

Family Income Benefit………………………………………………………… 33

Family Care Expense Benefit………………………………………………… 34

Notice…………………………………………………………………………… 36

## DEFINITIONS

**As used throughout the Policy, the following terms shall have the meanings indicated below. Other parts of the Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
1. the Employer's usual place of business; or
2. any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1. a Saturday, Sunday or holiday that is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is **not** due to the Employee's own health condition.

Bonus Eligible Employees, **ANNUAL SALARY** means the Insured Employee's **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:

1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter. The Insured Employee must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

**FOR PRODUCTION-BASED EMPLOYEES BASIC MONTHLY EARNINGS or PREDISABILITY INCOME** means 1/13th of the Insured Employee's production earnings from the Employer for the 13 months prior to the Determination Date. The "Determination Date" is the last day worked prior to the date of Disability. The Employee's production earnings are averaged over the 13 month period just prior to the Determination Date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the amount of the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records

## DEFINITIONS
### (continued)

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY** or **DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1.    is payable under a Retirement Plan due to disability as defined in that plan; and
2.    does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.
If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1.    The Elimination Period:
  a.    begins on the first day of Disability; and
  b.    is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
    During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2.    Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** or **FULL-TIME EMPLOYEE** means a person:
1.    whose employment with the Employer is the person's main occupation;
2.    whose employment is for regular wage or salary;
3.    who is regularly scheduled to work at such occupation at least the Minimum Hours Per Week shown in the Schedule of Benefits;
4.    who is a member of an Eligible Class which is eligible for coverage under the Policy;
5.    who is not a temporary or seasonal employee; and
6.    who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

GL3002-CERT 10 MO                                                                                          -2 10 MO
                                                                                                        05/01/12

**DEFINITIONS**
**(continued)**

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
1.  is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
2.  is taken in accord with the Employer's leave policy and the law which applies; and
3.  does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period, as defined by the Employer. The 12 weeks:
1.  may consist of consecutive or intermittent work days; or
2.  may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Monthly Benefit, means the average number of hours the Insured Employee was regularly scheduled to work, at his or her Own Occupation, during the month just prior to:
1.  the date the Elimination Period begins; or
2.  the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**INJURY** means an accidental bodily Injury that:
1.  requires treatment by a Physician; and
2.  directly, and independently of all other causes, results in a Disability that begins while the Insured Employee is insured under the Policy.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
1.  beginning at 12:01 a.m. Standard Time, at the Policyholder's place of business on the first day of any calendar month; and
2.  ending at 12:00 midnight on the last day of the same calendar month.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
1.  are normally required to perform the Insured Employee's Own Occupation; and
2.  could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1.  the Employer is subject to the Act; or
2.  the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

## DEFINITIONS
### (continued)

Main Duties include those job tasks:
1. as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2. as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1. by a Physician whose license and any specialty are consistent with the disabling condition; and
2. according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
1. is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
2. is taken in accord with the Employer's leave policy and the federal USERRA law; and
3. does not exceed the period required by that law.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally Disabled or Partially Disabled.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
1. in which the Insured Employee was employed with the Employer prior to Disability; and
2. which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
1. whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2. whether a suitable opening is currently available with the Employer or in the local labor market.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

GL3002-CERT 10 MO

-2 10 MO

05/01/12

LINC00168

## DEFINITIONS
### (continued)

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** will be defined as follows.
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
1. the Insured Employee's hours or production is reduced;
2. one or more Main Duties of the job are reassigned; or
3. the Insured Employee is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
1. must be at least 20% of Predisability Income; and
2. may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1. a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2. any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. Relatives include:
1. the Insured Employee's spouse, siblings, parents, children and grandparents; and
2. his or her spouse's relatives of like degree.

**POLICY** means the group insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, company, trust or other organization as shown on the Face Page of the Policy.

**PREDISABILITY INCOME**—See Basic Monthly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

Such care will be deemed medically necessary until the attending Physician certifies in writing that the Insured Employee has reached his or her maximum point of recovery and that further treatment would be useless.

**REGULAR OCCUPATION**—See Own Occupation or Regular Occupation definition.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 169 of 550   LIN00169

## DEFINITIONS
### (continued)

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Insured Employee (Payments representing Employee contributions are deemed to be received over the Insured Employee's expected remaining life, regardless of when they are actually received.); and
3. is payable upon:
   a. early or normal retirement; or
   b. disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
1. provides Retirement Benefits to Employees; and
2. is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Insured Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
1. is established and maintained by the Employer for the benefit of Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.

It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under the Policy.

**TOTAL DISABILITY or TOTALLY DISABLED** will be defined as follows.
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under the Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

## GENERAL PROVISIONS

**ENTIRE CONTRACT**.  The entire contract between the parties shall consist of:
1. the Policy and any amendments to it;
2. the Policyholder's application (a copy of which is attached to the Policy);
3. any Participating Employers' applications or Participation Agreements; and
4. any individual applications of the Insured Employees.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties.  No statement made by an Insured Employee will be used to contest the coverage provided by the Policy, unless:
1. it is contained in a written statement signed by that Insured Employee; and
2. a copy of the statement has been furnished to that Insured Employee.

**INCONTESTABILITY.**  Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy after it has been in force for two years from its date of issue; and as to any Insured Employee, after his or her coverage has been in force for two years during his or her lifetime.  This clause does not preclude, at any time, the assertion of defenses based upon:
1. the Policy's eligibility requirements, exclusions and limitations; and
2. other Policy provisions unrelated to the validity of coverage.

**RESCISSION**.  The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
1. an Insured Employee incurs a claim during the first two years of coverage; and
2. the Company discovers that the Insured Employee made a Material Misrepresentation on his or her application.

A "**Material Misrepresentation**" is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth.  "**To rescind**" means to cancel insurance back to its effective date.  In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's claims.  The Company reserves the right to recover any claims paid in excess of such premiums.

**MISSTATEMENTS OF FACTS**.  If relevant facts about any person were misstated:
1. a fair adjustment of the premium will be made; and
2. the true facts will decide if and in what amount insurance is valid under the Policy.

If an Insured Employee's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**POLICYHOLDER'S AGENCY**.  For all purposes of the Policy, the Policyholder acts on its own behalf or as the Employee's agent.  Under no circumstances will the Policyholder be deemed the Company's agent.

**CURRENCY**.  In administering the Policy:
1. all Predisability Income will be expressed in U.S. dollars; and
2. all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE**.  The Policy does not:
1. replace or provide; or
2. relieve the Policyholder of providing;

benefits required by:
1. Workers' Compensation laws; or
2. any state disability insurance plan laws.

**ASSIGNMENT**.  The rights and benefits under this Certificate may not be assigned.

## CLAIMS PROCEDURES

**NOTICE OF CLAIM**.  Written notice of claim must be given within 20 days after the loss occurs, or by the end of the Elimination Period, if later.  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
1.    the Insured Employee's name and address; and
2.    the number of the Policy.

If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS**.  When notice of claim is received, the Company will send claim forms to the Insured Employee.  If the Company does not send the forms within 15 days, the Insured Employee shall be deemed to have complied with the requirements of the Policy as to proof of loss upon submitting, within the time fixed in the  Policy for filing proof of loss, written proof covering the occurrence, character, and extent of the loss for which claim is made.  The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM**.  The Company must be given written proof of claim within 90 days after the end of the Elimination Period.  When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1.    as soon as reasonably possible; and
2.    in no event later than one year after it was required.

These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense.  It must show the date the Disability began, its cause and degree.  Documentation must include:
1.    completed statements by the Insured Employee and the Employer;
2.    a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3.    proof of any other income received;
4.    proof of any benefits available from other income sources, which may affect Policy benefits;
5.    a signed authorization for the Company to obtain more information; and
6.    any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company.  This must be supplied within 45 days after the Company requests it.  If it is not, benefits may be denied or suspended.

**EXAMINATION.**  The Company may have the Insured Employee examined:
1.    by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2.    as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1.    failed to cooperate with an examiner;
2.    failed to take an exam scheduled by the Company; or
3.    postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.**  Benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.  After that:
1.    Any benefits will be paid monthly, during any period for which the Company is liable.  If benefits are due for less than a month, they will be paid on a pro rata basis.  The daily rate will equal 1/30 of the Monthly Benefit.
2.    Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3002-CERT 10 MO

-6 10 MO

## CLAIMS PROCEDURES
### (continued)

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that section.
2. Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1. the Insured Employee's estate; or
2. a minor or any other person who is not legally competent to give a valid receipt;

then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1. the reason for the denial, under the terms of the Policy and any internal guidelines;
2. how the Insured Employee may request a review of the Company's decision; and
3. whether more information is needed to support the claim.

This notice will be sent:
1. within 15 days after the Company resolves the claim;
2. within 30 days after the Company receives acceptable proof of claim; and
3. within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1. by the 15th day after receiving the first proof of claim; and
2. every 30 days after that, until the claim is resolved.

The notice will explain:
1. what additional information is needed to determine liability; and
2. when a decision can be expected.

If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1. a written request; and
2. any written comments or other items to support the claim.

The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1. any further appeal procedures available under the Policy;
2. the right to access relevant claim information; and
3. the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

## CLAIMS PROCEDURES
### (continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1. an extension of up to 45 more days will be permitted; and
2. the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. the special circumstances which require the delay;
2. whether more information is needed to review the claim; and
3. when a decision can be expected.

**Exception:** The Company may need more information from the Insured Employee to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1. an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1. reduce future benefits and suspend payment of the Minimum Monthly Benefit under the Policy, until full reimbursement is made;
2. reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1. the Company's error in processing a claim;
2. the Insured Employee's receipt of Other Income Benefits;
3. fraud, misrepresentation or omission of relevant facts; or
4. any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

GL3002-CERT 10 MO

-6 10 MO

12

05/01/12

## ELIGIBILITY

**ELIGIBLE CLASSES.**  The classes of Employees eligible for insurance are shown in the Schedule of Benefits.  The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY DATE.**  An Employee becomes eligible for coverage provided by the Policy on the later of:
1. the Policy's date of issue; or
2. the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.**  The Waiting Period is shown in the Schedule of Benefits. Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within six months after his or her employment ends; or
2. an Employee returns from an approved Family or Medical Leave within:
    a. the 12-week leave period required by federal law; or
    b. any longer period required by a similar state law; or
3. an Employee returns from a Military Leave within the period required by federal USERRA law.

## EFFECTIVE DATES

**EFFECTIVE DATE.**  An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2. the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3. the date the Employee makes written application for coverage and signs;
    a. a payroll deduction order, if the Employees pay any part of the Policy premium; or
    b. an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4. the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2. the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3. the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

**EVIDENCE OF INSURABILITY.**  Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
1. an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2. an Employee makes written application to enroll for coverage after he or she has requested:
    a. to cancel insurance;
    b. to stop payroll deductions for the insurance; or
    c. to stop premium payments from the Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4. optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 175 of 550   LINC00175

## EFFECTIVE DATES
### (continued)

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
1. on the first day of the Insurance Month coinciding with or next following the date of the change;
2. except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:
1. return from an approved Family or Medical Leave within:
   a. the 12-week period required by federal law; or
   b. any longer period required by a similar state law;
2. return from a Military Leave within the period required by federal USERRA law;
3. return from any other approved leave of absence within six months after the leave begins;
4. return within six months following a lay off; or
5. return within six months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:
1. the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2. a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.
A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 176 of 550    LIN00176

## INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.**  An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:
1.  the date the Policy or the Employer's participation terminates; but without prejudice to any claim incurred prior to termination;
2.  the date the Insured Employee's Class is no longer eligible for insurance;
3.  the date such Insured Employee ceases to be a member of an Eligible Class;
4.  the last day of the Insurance Month in which the Insured Employee requests termination;
5.  the last day of the Insurance Month for which premium payment is made on the Insured Employee's behalf;
6.  the end of the period for which the last required premium has been paid;
7.  with respect to a particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
8.  the date  which the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below; or
9.  the date the Insured Employee enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Employee sends proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.**  Ceasing Active Work results in termination of the Insured Employee's eligibility for insurance, but coverage may be continued as follows.

1.  **Disability**.  If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment, coverage may be continued during:
    a.  the Elimination Period; provided the Company receives the required premium from the Employer; and
    b.  the period for which benefits are payable, without payment of premium.
    Premium payments will be waived from the satisfaction of the Elimination Period until the end of the period for which benefits are payable.  If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed, as they become due.

2.  **Family or Medical Leave**.  If an Insured Employee goes on an approved Family or Medical Leave, and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued, until the earliest of:
    a.  the end of the leave period approved by the Employer;
    b.  the end of the 12-week leave period required by federal law, or any more favorable period required by a similar state law;
    c.  the date the Insured Employee notifies the Employer that he or she will not return; or
    d.  the date the Insured Employee begins employment with another employer.
    The required premium payments must be received from the Employer, throughout the period of continued coverage.

3.  **Military Leave**.  If an Insured Employee goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave.  The required premium payments must be received from the Employer, throughout the period of continued coverage.

4.  **Lay-off or Other Leave**.  When an Insured Employee ceases work due to a temporary lay-off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay-off or leave begins.  The required premium payments must be received from the Employer, throughout the period of continued coverage.

## INDIVIDUAL TERMINATION
### (Continued)

**Conditions.** In administering the above continuation, the Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may **not** be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY**. Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

GL3002-CERT 10 MO                                                                                           -8 04

16                                                                                           05/01/12

LINC00178

## CONVERSION PRIVILEGE

ELIGIBILITY. The Policy provides a conversion privilege, when an Insured Employee's insurance under the Policy ends because he or she:
1.   resigns from employment with the Employer;
2.   is terminated from employment with the Employer, with or without cause;
3.   goes on a lay-off or leave of absence; or
4.   remains on a lay-off or leave of absence beyond the continuation period provided in the Individual Termination section of the Policy.

The Insured Employee may obtain converted long term disability insurance, without medical evidence of insurability. To be eligible for a converted policy, the Insured Employee must have been insured under the Employer's group plan for at least 12 months in a row, just before his or her insurance under the Policy terminated. The 12 months can be a combination of coverages under the Policy, and under any prior group long term disability plan which the Policy replaces.

APPLICATION. Application to convert must be made within 31 days after insurance under the Policy terminates. The converted benefits and amount of insurance may differ from those under the Policy.

CONDITIONS AND LIMITATIONS. This conversion privilege is not available to any Insured Employee whose insurance terminates because:
1.   the Policy is terminated by the Employer or the Company;
2.   the Policy is amended to exclude the class to which the Insured Employee belongs:
3.   the Insured Employee no longer belongs to a class eligible for coverage under the Policy;
4.   the Insured Employee retires or dies;
5.   the Insured Employee fails to pay the required premium; or
6.   the Insured Employee is Disabled under the terms of the Policy.

Also, this conversion privilege is not available to an Insured Employee who becomes insured for long term disability benefits under any other group plan; unless the other coverage takes effect more than 31 days after his or her insurance under the Policy terminates.

If an Insured Employee converts his or her Policy coverage, and later resumes active employment in an eligible class; then the Insured Employee's conversion coverage will terminate on the day before he or she is re-enrolled under the Policy. In no event will benefits be under both the Policy and the conversion coverage for the same period of Disability.

Conversion Privilege

GL3002-CERT 10 MO                                                                                                          -8.1

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 179 of 550   LINC00179

## TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT**.  The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
1. is Totally Disabled;
2. becomes Disabled while insured for this benefit;
3. is under the Regular Care of a Physician; and
4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Totally Disabled or dies;
2. the date the Maximum Benefit Period ends; or
3. the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

**AMOUNT**.  The amount of the Total Disability Monthly Benefit equals:
1. the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2. Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit.

The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Any Occ, Standard Integ.

GL3002-CERT 10 MO

-9 10 MO

05/01/12

18

LINC00180

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT**.  The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period, if he or she:
1.	is Disabled;
2.	becomes Disabled while insured for this benefit;
3.	is engaged in Partial Disability Employment;
4.	is earning at least 20% of Predisability Income when Partial Disability Employment begins;
5.	is under the Regular Care of a Physician, if required; and
6.	at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits.  The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination of these.

The Partial Disability Monthly Benefit will cease on the earliest of:
1.	the date the Insured Employee ceases to be Partially Disabled or dies;
2.	the date the Maximum Benefit Period ends;
3.	the date the Insured Employee earns more than:
	a.	99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
	b.	85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;
4.	the date the Insured Employee is able, but chooses not to work full-time:
	a.	in his or her Own Occupation, during the Own Occupation Period; or
	b.	in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Partial Disability.

At the Company's option, Partial Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1.	the date the Insured Employee (without good cause):
	a.	fails to take a required medical exam;
	b.	fails to cooperate with the examiner; or
	c.	postpones a required exam more than twice;
2.	the 45th day after the Company mails a request for additional proof, if not given; or
3.	the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 181 of 550   LINC0181

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT.  The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

    A.    LOST INCOME:  The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

    B.    TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
        1.    The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
        2.    Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit.  The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

GL3002-CERT 10 MO

20

-10.4

05/01/12

## OTHER INCOME BENEFITS

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under the Policy.

**Workers' Compensation**. Any benefits for which the Insured Employee is eligible under a law that compensates for job related Injury or Sickness. This includes:
1. any Workers' Compensation or occupational disease law;
2. the Jones Act;
3. the Longshoreman's and Harbor Worker's Act;
4. the Maritime Doctrine of Maintenance, Wages or Cure; or
5. any plan provided in place of one of the above plans.

It includes any benefits for partial or total disability, whether temporary or permanent. It also includes any benefits for vocational rehabilitation.

**Other Compulsory Benefits**. Any disability income benefits the Insured Employee is eligible to receive under any other compulsory benefit act or law. This includes (but is not limited to):
1. state temporary disability income benefit laws;
2. state no fault auto insurance laws; or
3. any other compulsory benefit act or law.

**Other Insurance Plans**. Any disability income benefits for which the Insured Employee is eligible under:
1. any other group insurance plan (except credit or mortgage insurance); or
2. any no fault auto plan.

**Employee Benefit Plans**. Any disability income benefits for which the Insured Employee is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay or pay for work actually performed during a Disability.

**Employer's Retirement Plan**. Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans**. The following Social Security or other Government Retirement Plan benefits will be offset:
1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
1. the federal Social Security Act, Jones Act or Railroad Retirement Act;
2. the Canada Pension Plan or Quebec Pension Plan;
3. any similar plan or act of any country, state, province or other political unit; or
4. any plan provided in place of one of the above plans.

## OTHER INCOME BENEFITS
### (continued)

"**Earnings**", as used in this provision, means pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:
1.  salaried or hourly Employee's gross earnings (shown on Form W-2); including:
    a.  wages, tips, commissions, bonuses and overtime pay; and
    b.  any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
2.  proprietor's net profit (figured from Form 1040, Schedule C);
3.  professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
4.  partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
5.  Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Exceptions**. The following will **not** be considered Other Income Benefits, and will not be offset in determining the Monthly Benefit:
1.  a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
2.  reimbursement for hospital, medical or surgical expense;
3.  reimbursement for attorney fees and other reasonable costs of claiming Other Income Benefits;
4.  group credit or mortgage disability insurance benefits;
5.  early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
6.  any amounts under the Employer's Retirement Plan that:
    a.  represent the Insured Employee's contributions; or
    b.  are received upon termination of employment without being disabled or retired;
7.  benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
8.  vacation pay, holiday pay, or severance pay; or
9.  disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 184 of 550    LINC00184

## OTHER INCOME BENEFITS
### (continued)

**RULES FOR OTHER INCOME BENEFIT OFFSETS**.  If the Insured Employee may be entitled to Other Income Benefits that affect Policy benefits, the following rules will apply.

**Claiming Other Income Benefits.**  An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it.  For example, if benefits may be payable under the federal Social Security Act, the Insured Employee:
1.  must apply for such benefits on a timely basis;
2.  must file a request for reconsideration, if benefits are denied; and
3.  must request a hearing before an Administrative Law Judge, if denied again (unless the Company waives this in writing).

An Employer whose Insured Employee may be entitled to Workers' Compensation or similar benefits is also required to cooperate in filing that claim.  If the Insured Employee fails to pursue Other Income Benefits on a timely basis, the Company has the option to:
1.  deny or suspend Monthly Benefits; or
2.  reduce Monthly Benefits by an estimated amount.

**Estimating Offsets**.  While a claim for Social Security or other Government Retirement Plan benefits is pending, the Insured Employee must elect one of the following options in writing.  (If no written election is made, Monthly Benefits will be reduced in accord with Option 1.)

1.  **Reduced Monthly Benefits**.  The Insured Employee may receive Monthly Benefits reduced by estimated Social Security or other Government Retirement Plan benefits.  The Company will adjust Policy benefits and will refund any underpayment, in a lump sum, upon receiving proof of:
    a.  the amount actually awarded; or
    b.  the claim denial and completion of any appeal the Company requires.

2.  **Unreduced Monthly Benefits**.  The Insured Employee may receive unreduced Monthly Benefits while the claim is pending.  He or she must agree in writing to promptly refund any overpayment that results, in a lump sum, upon receiving Social Security or other Government Retirement Plan benefits.  If he or she does not promptly refund an overpayment:
    a.  the Company will reduce or eliminate future payments; and
    b.  the Minimum Monthly Benefit will not apply, until the amount is repaid.

**Lump Sum Payments**.  Other Income Benefits that are paid in a lump sum will be pro rated as follows.
1.  The lump sum will be pro rated on a monthly basis, over the time period for which it is given.
2.  If no time period is stated, the Company will continue its estimated monthly offset for that benefit, until full amount is offset.
3.  If no estimated monthly offset was being made for that benefit, the lump sum will be pro rated on a monthly basis over a reasonable time period.  It will not exceed 60 months or the Maximum Benefit Period (whichever occurs first).

**Cost-of-Living Freeze.**  After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen.  The Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 185 of 550     LINC00185

## RECURRENT DISABILITY

"**Recurrent Disability**" means a Disability caused by an Injury or Sickness that is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1. **New Disability.** A Recurrent Disability will be treated as a new Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:

   a. on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; and

   b. for six consecutive months or more following the date the prior Disability benefits ended.

   A new Elimination Period must be completed before further Monthly Benefits become payable. A new Maximum Benefit Period will apply.

2. **Prior Disability.** A Recurrent Disability will be treated as part of the prior Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:

   a. on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; but

   b. for less than six consecutive months following the date the prior Disability benefits ended.

   The completion of a new Elimination Period is not required before further Monthly Benefits become payable. The same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well.

   In addition, a Recurrent Disability will be treated as a prior Disability if all of the subsequent events occur in less than six consecutive months following the date the prior Disability benefits end under the Policy:

   a. a job opening is not available for the Insured Employee to return to work with the Employer;

   b. the Insured Employee's coverage under the Policy terminates;

   c. the former Employee returns to his or her Own Occupation with a new employer on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits;

   d. benefits are not payable under any other group long-term disability plan; and

   e. a Recurrent Disability begins.

   Benefits for the former Employee will be reinstated for the Recurrent Disability and the completion of a new Elimination Period will not be required before further Monthly Benefits become payable. The same Maximum Benefit Period, Exclusions, and Limitations will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well. Benefits reinstated under this provision are subject to the Policy's terms and conditions that were in effect at the time the prior Disability began.

To qualify for a Monthly Benefit, the Insured Employee, or former Employee, must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of the Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Employee, or former Employee, who becomes eligible for coverage under any other group long-term disability plan.

GL3002-CERT 10 MO

24

-12 04

05/01/12

## PROGRESSIVE INCOME BENEFIT

**EFFECTIVE DATE.**  An Insured Employee will become insured for the Progressive Income Benefit on:
1.    the effective date of his or her coverage for Long Term Disability Benefits under the Policy; or
2.    the effective date of this provision, if it is added later by amending the Policy.

**Exception:**  The effective date will be delayed for an Insured Employee who is unable to perform one or more Activities of Daily Living or suffers from a Cognitive Impairment on that date.  In that event, the Insured Employee will become insured for this benefit on the first day he or she:
1.    is able to safely and completely perform all of the Activities of Daily Living without another person's active, hands-on help; or
2.    no longer suffers from a Cognitive Impairment.

**BENEFIT.**  After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she:
1.    is receiving Total Disability or Partial Disability Monthly Benefits under the Policy; and
2.    submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment (as defined below).
Proof must be submitted at the Insured Employee's own expense.

**AMOUNT.**  The amount of the Progressive Income Benefit:
1.    will equal 10% of the Insured Employee's Basic Monthly Earnings; but
2.    will not exceed the Maximum Monthly Benefit for Long Term Disability Benefits, or $5,000 per month (whichever is less).
The Maximum Monthly Benefit for Long Term Disability Benefits is shown in the Schedule of Insurance.  The Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment.

**DURATION.**  This Progressive Income Benefit will cease on the earliest of:
1.    the date the Insured Employee no longer suffers from the Loss of Activities of Daily Living or Cognitive Impairment (as defined below);
2.    the date the Insured Employee is no longer entitled to Total Disability or Partial Disability Monthly Benefits under the Policy;
3.    the date the Maximum Benefit Period ends; or
4.    the date the Insured Employee dies.
If the Policy includes a Family Income Benefit, the amount paid to the Eligible Surviving Spouse or Children will not increase due to the Insured Employee's receipt of this Progressive Income Benefit.

## DEFINITIONS

**"Loss of Activities of Daily Living"** means that, due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1.    **Bathing** - washing self in a tub, in a shower or by sponge bath; with or without equipment.
2.    **Dressing** - putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3.    **Toileting** - getting to, from, on and off toilet; and performing related personal hygiene.
4.    **Transferring** - moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5.    **Continence** - voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6.    **Eating** - once food is prepared and made available, getting nourishment into one's body by any means.  This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

GL3002-CERT 10 MO                                                    -12D 01 ADL Benefit (MO)
                                                                                                       05/01/12

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 187 of 550   LINC00187

## PROGRESSIVE INCOME BENEFIT
### (continued)

**"Cognitive Impairment"** means that due to an Injury or Sickness, the Insured Employee:
1. has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2. requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

**"Mental Sickness"** as used in this provision, means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from stroke; trauma; viral infection; Alzheimer's disease; or other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Pre-Existing Condition,"** as used in this provision, means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to his or her effective date for this benefit. Treatment includes a Physician's consultation, care and services; diagnostic measures; and the prescription, refill or taking of prescribed drugs or medicines.

## EXCLUSIONS AND LIMITATIONS

**Prior Disability.** This benefit will not be payable during a period of Disability which begins before the Insured Employee's effective date of coverage under this benefit.

**Pre-Existing Conditions.** This benefit will not be payable for a Loss of Activities of Daily Living or Cognitive Impairment:
1. which is caused or contributed to by, or results from a Pre-Existing Condition (as defined above); and
2. which begins in the first 12 months after the Insured Employee's effective date under this benefit; unless the Insured Employee received no Treatment of the condition for 6 consecutive months after his or her effective date under this benefit.

**Mental Sickness and Substance Abuse.** This benefit will not be payable during a period of Disability which is caused or contributed to by or results from a Mental Sickness, alcoholism, or voluntary use of a Controlled Substance; unless prescribed by a Physician. Controlled Substances are those defined as such in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and any amendments to it.

**Other Provisions.** This benefit will be subject to all of the Definitions, Exclusions, Proof of Claim, Waiver of Premium and other provisions of the Policy.

## EXCLUSIONS

**GENERAL EXCLUSIONS.**  The Policy will not cover any period of Total or Partial Disability:
1.  due to war, declared or undeclared, or any act of war;
2.  due to intentionally self-inflicted injuries;
3.  due to active participation in a riot;
4.  due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5.  during which the Insured Employee is incarcerated for the commission of a felony;
6.  during which the Insured Employee is not under the Regular Care of a Physician; or
7.  after the Insured Employee has resided outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer.

**PRE-EXISTING CONDITION EXCLUSION.**  The Policy will not cover any Total or Partial Disability:
1.  which is caused or contributed to by, or results from a Pre-Existing Condition; and
2.  which begins in the first 5 days after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 30 days prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician.  It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 189 of 550
LIN00189

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

LIMITATION.  If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1.    will be payable subject to the terms of the Policy; but
2.    will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

CONDITIONS
1.    If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2.    In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

**"Hospital,"** as used in this provision, means:
1.    a general hospital which:
      a.    is licensed, approved or certified by the state where it is located; or
      b.    is recognized by the Joint Commission on the Accreditation of Healthcare Organizations; and
      c.    is operated to treat resident inpatients; has a registered nurse always on duty or on call; and has a lab, x-ray facility and place where surgery is performed.
2.    a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1.    a Mental Hospital when treatment is for a Mental Sickness; and
2.    a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:
1.    is licensed, certified or approved as a mental hospital by the state where it is located;
2.    is equipped to treat resident inpatients' mental diseases or disorders; and
3.    has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause.  It includes, but is not limited to:
1.    schizophrenia or schizoaffective disorder;
2.    bipolar affective disorder, manic depression, or other psychosis; and
3.    obsessive-compulsive, depressive, panic or anxiety disorders.
These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider.  Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from:
1.    stroke, trauma, viral infection, Alzheimer's disease; or
2.    other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

GL3002-CERT 10 MO

-14 04 MO Specified Limit.
05/01/12

LIN00190

**"Substance Abuse"** means alcoholism, drug abuse, or chemical dependency of any type.

**"Treatment Center"** means a health care facility (or its medical or psychiatric unit) which:
1. is licensed, certified or approved by the state where it is located;
2. has a program for inpatient treatment of substance abuse; and
3. provides such treatment based upon a written plan approved and supervised by a Physician.

## VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

BENEFIT. If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit. This Benefit consists of services which may include:
1. vocational evaluation, counseling, training or job placement;
2. job modification or special equipment; and
3. other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

ELIGIBILITY. An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1. has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2. has the physical and mental abilities needed to complete a Program; and
3. is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

AMOUNT. The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

CONDITIONS. Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation. When a Program is approved by the Company, the Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

LIMITATION. The Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

DEFINITIONS

**"Good Cause",** as used in this provision, means the Insured Employee's:
1. documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2. involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3. participating in good faith in some other vocational rehabilitation program, which:
   a. conflicts with taking part in or completing a Program developed by the Company; and
   b. is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1. which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2. which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

GL3002-CERT 10 MO
30
-14.3 98 Voluntary Rehab.
05/01/12

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:
1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:
1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:
1. whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
2. who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
3. who is reasonably expected to return to work with the help of the proposed accommodation.
The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:
1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.
The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:
1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3002-CERT 10 MO

-14.3

05/01/12

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, the Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.  Subject to premium payments, the Policy will provide coverage to an Employee:
1. who was insured by the prior carrier's policy at the time of transfer; and
2. who was not Actively-At-Work due to Injury or Sickness on the Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force.  The Company will pay:
1. the benefit that the prior carrier would have paid; minus
2. any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION.  Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
1. was insured by the prior carrier's policy at the time of transfer; and
2. was Actively-At-Work and insured under the Policy on the Policy's Effective Date.

The benefits will be determined as follows:
1. The Company will apply the Policy's Pre-Existing Condition Exclusion.  If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to the Policy's benefit schedule.
2. If the Insured Employee cannot satisfy the Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
   a. the Policy without applying the Pre-Existing Condition Exclusion; or
   b. the prior carrier's policy;
   whichever is less.
3. If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of the Policy or that of the prior carrier, no benefit will be paid.

GL3002-CERT 10 MO

-15 99

05/01/12

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 194 of 550    LINC00194

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1.  after Disability had continued for 180 or more consecutive days; and
2.  while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death.  Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1.  surviving spouse; or, if none
2.  surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1.  the surviving children, in equal shares; or
2.  a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3002-CERT 10 MO                                                                    -16 94

33

05/01/12

LINC00195

## FAMILY CARE EXPENSE BENEFIT

**BENEFIT.** The Company will reimburse an Insured Employee's Family Care Expenses as described below, while he or she is:
1. receiving a Partial Disability Monthly Benefit under the Policy; or
2. receiving a Total Disability Benefit under the Policy, and:
    a. is Terminally Ill;
    b. has suffered a Cognitive Impairment; or
    c. has suffered a Loss of Activities of Daily Living.

The Family Care Expense Benefit is paid in addition to all other Policy benefits and will not be offset by Other Income Benefits.

**PROOF.** The Insured Employee must submit to the Company satisfactory proof that a Family Care Expense has been incurred for a Dependent and paid by the Insured Employee. Proof must be submitted on a monthly basis. Satisfactory proof is a signed receipt from the Dependent care provider showing:
1. Dependent name;
2. Dependent age;
3. if Dependent age exceeds the maximum shown in definition of "Dependent" below, reason for care;
4. dates of care;
5. total charges for care;
6. total payments for care; and
7. provider name, address, telephone number, and Federal Employer Identification Number/Taxpayer Identification Number.

**AMOUNT.** The Family Care Expense Benefit will equal actual Family Care Expenses paid by the Insured Employee that are not reimbursable from other sources, up to $250 per month for each eligible Dependent.

**DURATION.** The Family Care Expense Benefit will cease on the earliest of:
1. the date the Insured Employee's Total or Partial Disability Benefits under the Policy cease;
2. the date an Insured Employee's Dependents no longer meet the definition of Dependent in this provision; or
3. the date the Company has made 12 monthly Family Care Expense Benefit payments.

**DEFINITIONS.**

**"Child"** includes the Insured Employee's naturally born child, legally adopted child, stepchild, foster child, or child for whom the Insured Employee is the legal guardian.

**"Cognitive Impairment"** means that the Insured Employee or Dependent:
1. has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2. requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician, based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 196 of 550   LIN00196

## FAMILY CARE EXPENSE BENEFIT
### (Continued)

**"Dependent"** means the Insured Employee's:
1. legal spouse, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition;
2. Child less than age 16;
3. unmarried Child age 16 years or older, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition; or
4. parent or parent-in-law, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition.

**"Family Care Expense"** means an expense for the care of a Dependent, charged by a licensed care provider who:
1. is not a member of the Insured Employee's immediate family; and
2. is not living in the Insured Employee's home.

**"Incapable of Independent Living"** means the Dependent:
1. is Terminally Ill;
2. suffers a Cognitive Impairment; or
3. suffers a Loss of Activities of Daily Living.

**"Loss of Activities of Daily Living"** means that the Insured Employee or Dependent has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** – washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** – putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** – getting to, from, on and off toilet and performing related personal hygiene.
4. **Transferring** – moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** – voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** – once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

**"Terminally Ill"** means the Insured Employee or Dependent has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
## HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Missouri who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state, to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And as noted below this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, MO 65109

Missouri Division of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. Included is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

MO NOTICE A 06

36

05/01/12

LINC00198

EXHIBIT A

Generally, persons will be protected by the Life and Health Insurance Guaranty Association if they live in this state, and hold a life or health insurance contract, or an annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when:

1. The person is eligible for protection under the laws of another state;
2. The person purchased the insurance from a company that was not authorized to do business in this state;
3. The policy is issued by an organization which is not a member insurer of the association; or
4. The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

MO NOTICE A 06

37

05/01/12

## SUMMARY PLAN DESCRIPTION

The following information together with your group insurance certificate issued to you by The Lincoln National Life Insurance Company of Fort Wayne, Indiana, is the Summary Plan Description required by the Employee Retirement Income Security Act of 1974 to be distributed to participants in the Plan. This Summary Plan Description is only intended to provide an outline of the Plan's benefits. The Plan Document will govern if there is any discrepancy between the information contained in this Description and the Plan.

The name of the Plan is: Group Long Term Disability Insurance for Employees of Lester E. Cox Medical Center.

The name, address and ZIP code of the Sponsor of the Plan is: Lester E. Cox Medical Center, 3801 S National Ave, Springfield, MO, 65807.

Employer Identification Number (EIN): 44-0577118           IRS Plan Number: 507

The name, business address, ZIP code and business telephone number of the Plan Administrator is: Lester E. Cox Medical Center, 3801 S National Ave, Springfield, MO, 65807, (417) 269-6843.

The Plan Administrator is responsible for the administration of the Plan and is the designated agent for the service of legal process for the Plan. Functions performed by the Plan Administrator include: the receipt and deposit of contributions, maintenance of records of Plan participants, authorization and payment of Plan administrative expenses, selection of the insurance consultant, selection of the insurance carrier and assisting The Lincoln National Life Insurance Company. The Lincoln National Life Insurance Company has the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions, on the Plan Administrator's behalf (this does not apply to employers sitused in California or to California residents).

Type of Administration. The Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by The Lincoln National Life Insurance Company whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska.

Type of Plan. The benefits provided under the Plan are: Group Long Term Disability Insurance benefits.

Type of Funding Arrangement: The Lincoln National Life Insurance Company.

All employees are given a Certificate of Group Insurance which contains a detailed description of the Benefits, Pre-Existing Condition Limitation, Exclusions and Prior Carrier Credit provisions. The Certificate also contains the Schedule of Benefits which includes information on the Benefit Percentage, Maximum and Minimum Monthly Benefits, Elimination Period, Maximum Benefit Period, Own Occupation Period and Waiting Period. If your Booklet, Certificate or Schedule of Benefits has been misplaced, you may obtain a copy from the Plan Administrator at no charge.

Eligibility. Full-time employees working at least 72 hours per pay period.

Employees become eligible on the first of the month coinciding with or next following completion of 1 year of active full-time employment.

Contributions. Insured employees are not required to contribute to the cost of the coverage.

The Plan's fiscal year ends on: December 31st of each year.

The name and section of relevant Collective Bargaining Agreements: None

The name, title and address of each Plan Trustee: None

GL-SPD-2                                            2002(LTD)
05/01/12

**Loss of Benefits**. The Plan Administrator may terminate the policy, or subject to The Lincoln National Life Insurance Company's approval, may modify, amend or change the provisions, terms and conditions of the policy. Coverage will also terminate if the premiums are not paid when due. No consent of any Insured Person or any other person referred to in the policy will be required to terminate, modify, amend or change the policy. See your Plan Administrator to determine what, if any, arrangements may be made to continue your coverage beyond the date you cease active work.

**Claims Procedures**. You may obtain claim forms and instructions for filing claims from the Plan Administrator or from the Group Insurance Service Office of The Lincoln National Life Insurance Company. To expedite the processing of your claim, instructions on the claim form should be followed carefully; be sure all questions are answered fully. In accordance with ERISA, The Lincoln National Life Insurance Company will send you a written notice of its claim decision within:
- 45 days after receiving the first proof of a claim (105 days under special circumstances).

If a claim is partially or wholly denied, this written notice will explain the reason(s) for denial, how a review of the decision may be requested, and whether more information is needed to support the claim. You may request a review of the claim by making a written request to The Lincoln National Life Insurance Company within:
- 180 days after receiving a denial notice of a claim.

This written request for review should state the reasons why you feel the claim should not have been denied and should include any additional documentation to support your claim. You may also submit for consideration additional questions or comments you feel are appropriate, and you may review certain non-privileged information relating to the request for review. The Lincoln National Life Insurance Company will make a full and fair review of the claim and provide a final written decision to you within:
- 45 days after receiving the request for review (90 days under special circumstances).

If more information is needed to resolve a claim, the information must be supplied within 45 days after requested. Any resulting delay will not count toward the above time limits for claims or appeals processing. Please refer to your certificate of insurance for more information about how to file a claim, how to appeal a denied claim, and for details regarding the claims procedures.

### Statement of ERISA Rights

The following statement of ERISA rights is required by federal law and regulation. As a participant in this plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all Plan participants shall be entitled to:

**Receive Information About Your Plan and Benefits.** Examine, without charge, at the Plan Administrator's office and at other specified locations, such as work sites and union halls, all documents governing the plan, including insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series), if any, filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Pension and Welfare Benefit Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the plan, including insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series), if any, and updated summary plan description. The administrator may make a reasonable charge for copies.

Receive a summary of the plan's annual financial report if the plan covers 100 or more participants. The Plan Administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries.** In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and other plan participants and beneficiaries. No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights.** If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a Federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions.** If you have any questions about your plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Pension and Welfare Benefits Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Pension and Welfare Benefits Administration, U.S. Department of Labor, 200 Constitution Avenue, N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Pension and Welfare Benefits Administration.

GL-SPD-2

2002(LTD)
05/01/12



## LINCOLN FINANCIAL GROUP® PRIVACY PRACTICES NOTICE

The Lincoln Financial Group companies* are committed to protecting your privacy.  To provide the products and services you expect from a financial services leader, we must collect personal information about you.  **We do not sell your personal information to third parties.**  We share your personal information with third parties as necessary to provide you with the products or services you request and to administer your business with us.  This Notice describes our current privacy practices.  While your relationship with us continues, we will update and send our Privacy Practices Notice as required by law.  Even after that relationship ends, we will continue to protect your personal information.  **You do not need to take any action because of this Notice, but you do have certain rights as described below.**

### INFORMATION WE MAY COLLECT AND USE

We collect personal information about you to help us identify you as our customer or our former customer; to process your requests and transactions; to offer investment or insurance services to you; to pay your claim; or to tell you about our products or services we believe you may want and use.  The type of personal information we collect depends on the products or services you request and may include the following:

- **Information from you**:  When you submit your application or other forms, you give us information such as your name, address, Social Security number; and your financial, health, and employment history.

- **Information about your transactions**:  We keep information about your transactions with us, such as the products you buy from us; the amount you paid for those products; your account balances; and your payment history.

- **Information from outside our family of companies**:  If you are purchasing insurance products, we may collect information from consumer reporting agencies such as your credit history; credit scores; and driving and employment records.  With your authorization, we may also collect information, such as medical information from other individuals or businesses.

- **Information from your employer**:  If your employer purchases group products from us, we may obtain information about you from your employer in order to enroll you in the plan.

### HOW WE USE YOUR PERSONAL INFORMATION

We may share your personal information within our companies and with certain service providers.  They use this information to process transactions you have requested; provide customer service; and inform you of products or services we offer that you may find useful.  Our service providers may or may not be affiliated with us.  They include financial service providers (for example, third party administrators; broker-dealers; insurance agents and brokers, registered representatives; reinsurers and other financial services companies with whom we have joint marketing agreements).  Our service providers also include non-financial companies and individuals (for example, consultants; vendors; and companies that perform marketing services on our behalf).  Information we obtain  from a report prepared by a service provider may be kept by the service provider and shared with other persons; however, we require our service providers to protect your personal information and to use or disclose it only for the work they are performing for us, or as permitted by law.

When you apply for one of our products, we may share information about your application with credit bureaus.  We also may provide information to group policy owners, regulatory authorities and law enforcement officials and to others when we believe in good faith that the law requires disclosure.  In the event of a sale of all or part of our businesses, we may share customer information as part of the sale.  **We do not sell or share your information with outside marketers who may want to offer you their own products and services; nor do we share information we receive about you from a consumer reporting agency.  You do not need to take any action for this benefit.**

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

GB06714

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 202 of 550    LINC00202

## SECURITY OF INFORMATION

We have an important responsibility to keep your information safe. We use safeguards to protect your information from unauthorized disclosure. Our employees are authorized to access your information only when they need it to provide you with products, services, or to maintain your accounts. Employees who have access to your personal information are required to keep it confidential. Employees are trained on the importance of data privacy.

Questions about your personal information should be directed to:

> Lincoln Financial Group
> Attn: Enterprise Services Compliance-Privacy, 7C-01
> 1300 S. Clinton St.
> Fort Wayne, IN 46802

**Please include all policy/contract/account numbers with your correspondence.**

\*This information applies to the following Lincoln Financial Group companies:

| | |
|---|---|
| First Penn-Pacific Life Insurance Company | Lincoln Life & Annuity Company of New York |
| Lincoln Financial Investment Services Corporation | Lincoln Variable Insurance Products Trust |
| Lincoln Investment Advisors Corporation | The Lincoln National Life Insurance Company |

## *ADDITIONAL PRIVACY INFORMATION FOR INSURANCE PRODUCT CUSTOMERS*

### CONFIDENTIALITY OF MEDICAL INFORMATION

We understand that you may be especially concerned about the privacy of your medical information. We do not sell or rent your medical information to anyone; nor do we share it with others for marketing purposes. We only use and share your medical information for the purpose of underwriting insurance, administering your policy or claim and other purposes permitted by law, such as disclosure to regulatory authorities or in response to a legal proceeding.

### MAKING SURE MEDICAL INFORMATION IS ACCURATE

We want to make sure we have accurate information about you. Upon written request we will tell you, within 30 business days, what personal information we have about you. You may see a copy of your personal information in person or receive a copy by mail, whichever you prefer. We will share with you who provided the information. In some cases we may provide your medical information to your personal physician. We will not provide you with information we have collected in connection with, or in anticipation of, a claim or legal proceeding. If you believe that any of our records are not correct, you may write and tell us of any changes you believe should be made. We will respond to your request within 30 business days. A copy of your request will be kept on file with your personal information so anyone reviewing your information in the future will be aware of your request. If we make changes to your records as a result of your request, we will notify you in writing and we will send the updated information, at your request, to any person who may have received the information within the prior two years. We will also send the updated information to any insurance support organization that gave us the information, and any service provider that received the information within the prior 7 years.

Questions about your personal medical information should be directed to:

> Lincoln Financial Group
> Attn: Medical Underwriting
> P.O. Box 21008
> Greensboro, NC 27420-1008

The CONFIDENTIALITY OF MEDICAL INFORMATION and MAKING SURE INFORMATION IS ACCURATE sections of this Notice apply to the following Lincoln Financial Group companies:

First Penn-Pacific Life Insurance Company
Lincoln Life & Annuity Company of New York
The Lincoln National Life Insurance Company

# Chronological Activity List

| | | | | | | |
|---|---|---|---|---|---|---|
| **Claimant:** | JAMIE FLANAGAN | | | **Occupation:** | NURSE PRACTITIONER (medical ser.) alternate titles: | |
| **SSN:** | ▮▮▮▮▮ | **DOB:** | ▮▮▮▮ | **Posted:** | 11/15/2013 | **Months Dis:** 47 |
| **Claim #:** | 1130226196 | **DOD:** | 8/26/2013 | **Ben:** | $4,502.16 | **Months Pd:** 24 |
| **Coverage:** | LTD | **Status:** | CLOSED | **Close Date:** | 2/7/2017 | **Assignee:** JDJACKS |
| **Policy Holder:** | Lester E. Cox Medical Center | | | **Deceased:** | | |
| **Case Mgr. Status:** | INV 9/19/2014 | | | **Close Code:** | Not TD Any Occ | |

| Posted Date | Category | Seq | Item | | Status | User |
|---|---|---|---|---|---|---|
| 2/2/2017 | Referrals | 204136 | Ongoing Claim Review | | Completed | JDJACKS |

NDC review

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047
Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review, Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found. No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ TSA Nurse Consultant and Call center nurse
Type of Medical Review, Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o - The claimant could lift up to 7 pounds occasionally.    - She could perform frequent sitting with 20 minutes of continuous sitting.    - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.    - She could perform occasional bending and stooping    - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873

8/16/2017    1

## Chronological Activity List

"May 26, 2016 - was stable in terms of pain issues until the last few months. Felt this was more of a flare of connective tissue process rather than chronic neuropathic pain associated with back issues. Clmt states issues with hand swelling and hand joint swelling.

"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."

"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.

"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Powell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016
"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 -  Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016


FCE - April 2014 -  Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY F LED THE APPEAL -  via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopewell
"Crystal Powel PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve Newbold Nov 2015


 Questions

1.Please provide a review summary of the medical findings. Nov 24, 2015.

2.Based on the medical  findings, please provide  a description of the  claimant's impairments,  and how  these  would translate into functional  limitations or  medically  appropriate  restrictions  from Nov 24, 2015 and forward.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent with the medical findings?  Please explain. - JDJACKS - Jan 13, 2017 10:50:03 am
Clinical Response Template

Claimant name:  Jamie Flanagan
Claim number:    LTD ap #1130226196

**Chronological Activity List**

Date of Review:  01/27/17

Documents reviewed: APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain, multiple pain management/family practice/neurosurgery fu exam visit notes from 09/19/12 through November 2016, 09/19/12 fu ov noe Dr. Mace for chronic low back pain noted clmt was s/p L5-S1 PLIF, rheumatology fu exam notes from December 2015 through 09/01/16, November 2016 Voc rehab consult, labs/multiple imaging studies/diagnostic reports with dates ranging from 2010 through 2016.

APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain with MD noted failed fusion in 2011 and failed spinal column stimulator (date not given by MD) with restrictions/limitations (R&L's) stating "pain increased throughout the day/week and unable to control pain with medications, work with unlimited ability to rest/take breaks, estimated RTW stated never, and abilities portion of APS was bracketed and stated "unqualifiable".

Conclusion:  Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours /8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing.

Rationale with supportive medical findings: 36yr/M nurse practitioner (light occ) with DOD 08/26/13 due to severe low back/leg pain, post laminectomy syndrome, spinal stenosis, chronic low back pain/lumbar spondylosis, and autoimmune disease with noted BCD of 11/24/13 and benefit approved to COD dated 11/24/15.  PMH included L5-S1 PLIF for chronic low back/leg pain on 04/01/11 with continued low back pain.

09/19/12 fu ov note Dr. Mace for chronic low back pain noted clmt was s/p L5-S1 PLIF for chronic low back/leg pain on 04/01/11 with continued low back pain and bilateral leg pain, burning sensation in toes/heels all have been worsening, symptoms improved some with wearing lumbar brace.  The clmt denied any leg weakness, bowel/ bladder dysfunctions, and has neck pain that radiates to Lt shoulder.  MD exam noted normal muscle strength/tone/ROM throughout, normal gait without mention of any assistive device used to ambulate, and intact sensation throughout.  MD stated cervical MRI showed Lt C5-6 disc herniation (date of study not given in MD note), and stated lumbar CT scan showed confluent bone at L5-S1 cage/screws looked fine, and progressive endplate sclerosis.   MD stated to try PT for neck pain with traction and will consider surgical intervention with ACDF or maybe spinal stimulator if no better.  MD stated history of L%-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 S1 radicular symptoms that are quite problematic, to check myelogram and consider re-exploration-MD ordered cervical and lumbar CT myelogam, PT, and fu after testing.

12/28/12 MRI of lumbar spine showed postsurgical changes posterior interbody fusion at L5-S1 secondary to pars defects at L5 and grade 2 spondylolisthesis.  There is extensive evidence of postoperative fibrosis in the posterior operative bed extending along the Rt and Lt lateral margins of the thecal sac and extending anteriorly on the Lt to involve the S1 nerve root.  The central canal was noted to be patent and thoracic spine MRI was normal.  Cervical MRI same date showed prior changes posterior lumbar interbody fusion at L5-S1 secondary to pars defect, stable anterolisthesis compared to remote studies, more extensive endplate sclerosis noted, and persistent lucency around the bone cage as well as some increased erosion of the posterior aspect of the L5 vertebral body could represent evidence of disc space instability.  Anterior epidural soft tissue at the operative level suggesting an extensive postoperative fibrosis and MR scan with contrast is suggested as fu.  Cervical/lumbar myelogram showed remote cervical changes posterior lumbar fusion L5-S1 with stable spondylolisthesis of L5-S1 unchanged from October 2011.

08/15/13 fy ov note Dr. Cornelison for evaluation for spinal column stimulator for severe low back/leg pain (postolateral legs and noted symptoms have been present since August 2010 with no injury as cause) and s/p lumbar fusion L5-S1 in April 2011.  Currently followed by Dr. Hopewell for pain management and Dr.Cornelison for injection therapy and has MD exam findings pain/numbness bilateral posterior lateral legs, increasing pain with any position for prolonged period.  MD exam stated palpation tenderness over lumbosacral spine, increased low back pain with spine extension/axial loading/lateral side bending of lumbar spine reproduces pain, deep tendon reflexes symmetrical and 2+ throughout, straight leg raising on Rt equivocal.  MD stated most of clmt's pain is in both legs and clmt suffering from significant epidural fibrosis in old surgical area and is on high doses of narcotic pain medications.  MD stated at this time recommends spinal column stimulator and noted clmt to proceed with dual lead spinal column stimulator trial per MD note.

09/19/13 fu Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome stated clmt feeling has weakness in legs but MD stated no true motor deficits, and stated this is a sensation and not a motor problem.  Pain is reported to be worse with prolonged position but comfortable in chair, seeking insurance approval for spinal stimulator trial.  MD noted neurological exam was normal and fu in 3 months with continuation of same regimen.

11/18/13 EMG/NCS showed abnormal study- conduction studies noted within normal limits but showed evidence of lumbosacral radiculopathy predominently affecting the Rt L5-S1 nerve root.

10/31/16 fu with Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome noted clmt requested spinal cord stimulator-MD stated clmt received no benefit from trial per MD note.

04/23/14 functional capacity evaluation was performed on 04/22/14 and validity criterion she passed indicated she gave maximum voluntary effort and results are as follows: upper/lower extremity ROM and strength were within normal limits 5/5 including pronation/supination and no cardiovascular compromise was noted.  Hip abduction ROM within normal limits but with pain at end of range bilaterally Rt> Lt and strength 5-/5 bilateral hips  abduction, and 4+/5 for Rt plantar flexion, cervical ROM within normal limits with pain posterior neck with flexion, and mild decrease sensation lateral calves but otherwise no focal deficits noted.  MD concluded 7 lb lifting restriction, sitting tolerance 20 min duration, occasional walking to very occasional, crawling/bending/working at heights not recommended, and work level was deemed to be less than sedentary functional level.  The clmt is noted to have current pain medication regimen consisting of MS Contin 5 pills twice/day -?actual dose), Dilaudid 1-2 tabs up to 3-6 x day, Robaxin 1-2 tabs 3xday, Topamax 1 tab twice/day, and Ibuprofen 800mg 3-4 x day in addition to PRN Xanax 0.5mg up to 4xday PRN, and Wellbutrin twice/day.  The MD noted clmt takes Plaquenil 2 tabs at night for autoimmune disease.  The clmt does not feel she can RTW as she was not able to work for prolonged times and would lie down between each patient and could not tolerate the positional changes or static position of prolonged sitting or standing.

06/09/14 peer physician review by Board Certified Physical Medicine/ Rehabilitation Medicine MD) concluded that although the clmt reported ongoing pain, exam were normal, and imaging showed minimal findings with some scarring of S1 nerve root but normal 5/5 muscle strength both upper/lower extremities, normal gait without use of assistive device, and concluded based on review of all records and noted discussion with treating MD that he based R&L's on what clmt told him and was unable to provide peer MD with further information on clmt's R&L's.  Peer opined appropriated R&L's would include: the clmt could walk/stand up to 2 hours /8 hour normal workday with normal breaks, may sit up to 6-8 hours/8 hour workday, would require position changes as needed or for 5 min every hour as needed, may lift/carry/push/pull up to 20lbs occasionally/10lbs frequently, reaching in all directions okay, occasional climb stairs/kneel/bend/stoop/squat/ and crouch, and never climb robes/ladders/ scaffolds/or crawl, and unrestricted ability to handle/finger/feel objects as needed-R&L's apply from 11/24/13 forward and would be likely be permanent.  Peer stated treating providers including Dr. Hopewell exams revealed no neurological deficits, and MD does not quantify her pain at each visit by using measurable scales and admitted on phone to peer his opinions/R&L's were based largely on reported symptoms by clmt rather than on clinical examination findings and/or diagnostic findings and R&L's of no work were not consistent with the documented medical findings.

10/22/14 fu ov note by Dr. Hopewell for lumbar spondylosis, post laminectomy lumbar syndrome, and lumbar spondylolisthesis all occurring in setting of mixed connective tissue disease.  MD stated over past few weeks lumbar pain is radiating down legs, more lateral aspect of Rt leg to heel, and occasionally to Lt side, no new weakness or sensory changes noted, and denied bowel or bladder dysfunction.  The clmt stated she was off Plaquenil for about 3 weeks and has just restarted it and thinks may have contributed to pain flare, and noted she had been walking more than usual because they were looking at properties.  The clmt stated pain definitely worse with prolonged standing more than if walking, and noticed she has to sit down if up on feet for 15 min, and sitting most comfortable but pain will worsen with prolonged sitting as well, no clear flare of joint symptoms, and next fu in 3 months.  MD stated clmt reported recent rash with swelling of fingers/lips that resolved within 72 hours and stated was referring clmt to rheumatology for evaluation of skin issues recently.

12/07/15 rheumatology fu note by Dr. Mace for progressive low back and leg pain Rt> Lt stated clmt having increased low back and Rt leg pain, with Rt L5 type leg pains described as aching/burning pain, denies leg weakness or bladder issues.  MD exam noted no joint pain or swelling and has fair ROM throughout, no palpation tenderness of spine, normal 5/5 muscle strength/tone/bulk with intact sensation to light touch throughout, able to heel-toe -tandem walk without difficulty.  MD stated imaging showed what appears to be good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at this time, and noted clmt to try water exercises for core strengthening.

01/20/15 fu ov note by Dr. Hopewell for post lumbar laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis stated clmt's last flare of pain when last seen was significantly improved with short course of Dexamethasone, states clmt continues to do reasonably well with pain overall with slight increase pain with colder weather.  The clmt reports occasional dysesthetic pain in lower extremities particularly in feet and mostly at night but reports no new motor or sensory/bowel or bladder complaints and no problems from medications.  MD stated neurological exam remains normal, and noted trial of amitriptyline for neuropathy sensation in feet at night in past caused some reported daytime hypersomnolence that was tolerable so MD stated will try again to see if helps and fu in 3 months.

04/16/15 fu ov note Dr. Hopewell stated clmt having another flare of low back and bilateral leg pain Rt> Lt and dysesthesia symptoms in feet more frequently due to prolonged car rides and personal stress including loss of her father recently, remains neurologically intact, and needs to stop amitriptyline due to excessive daytime somnolence and to perform sleep study as well with next fu in 3 months.

04/21/15 abilities form by Dr. Hopewell stated clmt could lift/carry 0 weight at any time, could sit frequently at 20 min intervals, could stand/walk/drive/operate foot controls occasionally, frequently finger/handle/reach above shoulder level, and never climb/bend/kneel.

10/15/15 MR lumbar spine showed prior PLIF L5-S1 without complicating features, L4-5 facet joint arthropathy adn Lt extraforaminal zone disc protrusion with annular fissure, with contact with exiting Lt L4 nerve root. CT scan of lumbar spine showed expected postop PLIF changes L5-S1, degenerative disc disease and spondylosis L4-5 with facet joint arthropathy and disc bulge/protrusion Lt subarticular and extraforaminal zone. It was noted there is contact with the exiting Lt L4 nerve root but no definite impingement noted.

12/01/15 fu ov note by Dr. Newbold for chronic low back pain, GERD, anxiety, depression here for fu stated clmt is actually doing well except for recurring episodes of urticarial (rash) and angioedema, marked swelling of her kips and a couple of times also her throat, and stated rheumatologist gave he an epipen and noted she is not taking antihystamines presently, denies dysphagia, and stated her anxiety/depression is well controlled on oral medications for most part.

12/09/15 fu ov note by Dr. Hopewell stated clmt here to discuss her denial of disability which seemed to center around her physical exams being normal and fluctuations in her pain levels that had paralleled other physical problems or stress related issues. MD stated normal physical exam are common in patients with spine based pain issues and there is always fluctuation of any chronic medical problems based on other physical and emotional stressors is not unusual. MD stated overall her pain is doing reasonably well on current medication regimen without complications and next fu to be in 3 months again.

01/28/16 pain management fu for chronic low back pain and UCTD stated clmt needs refill of epipen which she uses PRN for angioedema and skin reactions and was referred to allergist in past but does not wish to see allergist at this time, likely due to insurance issues, stated not taking antihystamines as they have not helped in past, no recent flare ups of symptoms, and continues multiple pain meds for chronic low back/leg pain and muscle relaxants s/p L5-S1 PLIF with Dr. Mace in April 2011. MD stated clmt is NP but not currently working and on disability due to her multiple medical health problems, although MD notes indicated GERD/anxiety and depression were all well controlled at this time on oral medications. MD exam findings noted no abnormal findings, no focal motor/sensory deficits, and noted epipen prescription was refilled.

02/29/16 fu ov note Dr. Hopewell for chronic low back and bilateral leg pain stated clmt is reasonably stable overall, does have some daytime somnolence and is not physically active, pain continues to be occasional radiation down posterior Rt leg> Lt, and note narcotic pain medication change from Hydromorphone to oxycodone 30mg every 6 hours for breakthrough pain and will continue morphine unchanged. MD suggested sleep study due to hypersomnolence during day and fu in 3 months.

03/09/16 peer physician review Board Certified in Occupational Medicine concluded that he agreed with treating MD R&L's placed on 04/21/15 abilities form with the exception of lifting: peer felt clmt per FCE could lift up to 7lbs occasionally, frequent sitting with continuous sitting up to 20min at a time, standing/walking occasionally for 10 min continuously at a time, occasional bending, stooping, and frequent reaching and fingering working 8 hour days/40 hour workweek and apply from 11/25/15 and forward.

05/23/16 -05/26/16 telephone call to MD office from clmt having increase leg and hip pain for last 2-3 weeks and now having some neck pain into her shoulder issues and wanted to know if she needs burst of steroid to see if helps. MD finally reached clmt and to office for evaluation on 05/26/16. MD stated over last couple of months her pain has changed somewhat with worsening pain, particularly at night, feeling intensely fatigued, and has had to increase pain medication recently due to discomfort, has not had sleep study MD recommended due to insurance issues and continues to have problems sleeping and daytime hypersomnolence. MD exam stated clmt neurologically intact but has significant tenderness lower extremities and calf muscles bilaterally. MD stated felt that flare of pain seemed more soft tissue that neuropathic pain increase associated with back. MD recommended clmt fu with rheumatologist first to evaluate soft tissue inflammation or changes and if still having symptoms after that will try 5 day course of Dexamethasone but until then continue current medication regimen until sees rheumatology.

06/16/16 rheumatology fu note by Dr. Winkler fu for her UCTD (undifferentiated connective tissue disease) and stated clmt is on Plaquenil, has significant DDD of cervical and lumbar spine, has been out of Plaquenil for 3 weeks and has had increased aching in shoulders/hands and knows medications helps. MD stated clmt does have history of large number of tic bites, stated shoulders and elbows hurting more past few weeks off Plaquenil, also feels she is having more swelling in her hands/elbows and has been hurting all over and worse areas are hands/elbows/hips, shoulders, and cannot wear rings due to hand swelling. Currently taking Dilaudid 6 x day for breakthrough pain and did have hives on Sunday and had to use epipen-needs refill for epipen. No rash today but states not sleeping again and gets so fatigue. MD exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling, and MD noted to recheck inflammatory labs stating may need to changes Plaquenil and prescribed Medrol DosePak in meantime with next fu in one month.

09/01/16 fu ov Dr. Winkler for UCTD (Rheumatology) stated clmt reported feeling better with steroid course and lasted for 1-2 months, and pain medications helping, limited with insurance coverage in what is covered, back pain severe and sometimes hurting all over with swelling of hands/fingers, that occurs about twice/month, denies feeling depressed, and still not sleeping well due to pain radiating to Rt thigh. MD stated to continue Plaquenil and use Medrol for flares, and PRN trial again of amitriptyline at bedtime. MD noted no synovitis of any joint noted on MD physical exam and no documented focal motor/sensory/cognitive/neurological deficits identified in MD exam note provided.

**Chronological Activity List**

10/05/16 to 10/31/16 fu ov notes by pain management Dr. Kokoszka/Dr Tonkin respectively for bilateral lower back pain radiating to Rt lower extremity in L5 dermatomal distribution to the level of the ankle. MD stated today's pain rating 4/10 scale, developes pain while sitting/standing/walking that cannot be ignored more than 30 min and requires position change/multiple pain medications and denies extremity weakness/bowel or bladder dysfunction, but had problems with ADL's due to pain with significant difficulty driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, and sexual functions. Current medications notes by MD included Opana ER 20mg every 12 hours, Oxycodone 30mg every 6 hours and noted mild depression score, no evidence of anxiety, s/p > 10 ESI lumbar injections with temporary improvement, and no improvement with spinal stimulator trial. MD exam noted no deformities/edema/ cyanosis/atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. MD stated clmt does not have reproduction of axial back pain with passive oblique extension of lumbar spine or facet loading on either side and negative straight leg raising bilaterally. MD recommended interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage, and PT. Oxygen saturations 98% on room air, weight 150lbs and exam remained unchanged.

November 2016 Voc rehab consult noted essentially concluded that due to functional restrictions demonstrated on FCE the clmt can only lift total of 7 lbs occasionally sitting up to 20 min continuously before she has to change position/rest, and can only stand or walk for 10 min continuously before having to change position/sit to rest, from 11/25/15 forward and that the clmt has no real transferable skills to sedentary job, and would have great difficulties with any retraining, unable to do manual labor or unskilled jobs and overall functional status was stated to agree with FCE results which stated clmt performed at less than sedentary level.

Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing. There was no MD exam documentation of any focal motor weakness/sensory loss/cognitive or memory deficits, and no gait issues identified in MD exam notes provided in file. The clmt's HTN, GERD, depression and pain overall is stated by MD notes to be well controlled on steady medication regimen, has full ROM all extremities with intact sensation throughout, and normal gait without use of assistive device. FCE from April 2014 noted clmt unable to lift > 7lbs without significant increase in pain back, shoulders, and neck particularly with any overhead lifting. Overall muscle strength noted to be 5/5 in all 4 extremities with intact sensory exam throughout. The clmt admitted to having good pain control and wearing lumbar brace helps pain. There are no clinical findings noted in file demonstrating any functional limitation that would support clmt unable to perform duties of any sedentary occupation detailed above. There was pain diary from clmt's home records submitted at all that might support any impairing level of pain frequency/intensity/duration/amount of pain medication required on daily basis.

Specific clinical recommendations: None

Return to Work: MD Guidelines gives 0/1/14 days recovery for chronic low back pain with sedentary occupation.

Karen Mills RN
Clinical Nurse Consultant - KLMILLS - Jan 27, 2017 04:07:26 pm

| | | | | | |
|---|---|---|---|---|---|
| 11/26/2013 | Referrals | 185882 | UNKNOWN | Completed | LMLOBDO |
| 9/17/2015 | Referrals | 204135 | Change of Definition | Completed | MXMACHI |

Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35
Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review:06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FA LED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for followup in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. t is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):

Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review, the claim"
 - MXMACHI - Aug 28, 2015 08:08:39 am - TMHARTS - Aug 28, 2015 01:15:25 pm
Claimant Name: Flannagan, Jamie
Claim Number: 1130226196

Documents Reviewed: Reviewed neurology MD progress notes through 07/15/15 with diagnostic test results long with the previous peer review report from 06/09/14.

Conclusion: Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. See that report for details. This reviewer phone call to claimant also indicated claimant is able to perform own ADL's.

Rationale with supportive medical finding: See recent full medical review for specific history and information. This is a 35 year old female nurse (Med occ) with DOD of 08/26/13 with diagnosis of post laminectomy syndrome. Appears SSDI has been awarded and COD is 11/24/15.

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 210 of 550

LIN00210

## Chronological Activity List

Per the claimant's submitted ISS form, claimant reports she can drive up to 20 minutes, needs help in housework, and spouse needs to help her shave legs.

Submitted AF dated 04/21/5 from Neurology Pain Management MD DR Hopewell indicates claimant can sit frequently in 20 minute duration, can frequently finger, handle and reach above shoulder level. Cannot lift any weight. Can occasionally stand, walk, drive and operate foot controls. Never climb, bend or kneel.

Neurology MD notes dated 01/20/15 indicates claimant in for post laminectomy syndrome. Last flare was significantly improved with Dexamethasone. Doing reasonably well with taking pain medications. Has no new motor, sensory, or bowel or bladder complaints and denies medication side effects.

Neurologist follow up note dated 07/15/15 indicates claimant in for chronic LBP due to lumbar spondylosis, post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component.
  Claimant reports her pain has been marginally controlled. Has issues with dysphoria and cries a lot. Also reports having a hard time getting up in the morning. MD states exam remains normal.
  Assessment is claimant is clearly depressed that is likely related to her pain. To see the rheumatologist for her autoimmune disease. To follow up in 3 months.

Per the previous UDC peer review from 06/09/14, the peer reviewer indicated the records supported functional impairments that would preclude lifting > 20 lbs, can sit 6-8 hours per day with position changes, can stand and walk up to hours per day, and may climb stairs, kneel, stoop and may reach. See that report for details. Can frequently handle and finger.

Please see this reviewer phone note with DR Hopewell's office nurse.

Specific clinical recommendations for next steps and time frames for follow up: Referring to upper management for oversight review.

Return to work. No plans at this time.

Ted Hartsock, RN, BSN
Nurse Disability Consultant - TMHARTS - Sep 03, 2015 09:53:36 am
9/17/2015
Manager Oversight Review

Jamie Flanagan
1130226196

No peer review necessary at this time, due to no material difference in the medical information reviewed by the peer reviewer and currently submitted information.

Sending back to mxmachi for further handling.

Karen Greni, RN
Manager Clinical Operations - KXGRENI - Sep 17, 2015 10:50:50 am

6/9/2014   Referrals            201567UNKNOWN                                      Completed          RDHASTI

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number:  (417) 881-1282

Has this file had a prior external review?   No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey, OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates
to which the limitations and/or restrictions apply.

3.Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?    SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)

AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service:  4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.


[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
           CLINICAL RESPONSE/CONSULTATION  RESPONSE


Claimant Name:  Jamie Flanagan
Claim Number:  1130226196


Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon):  office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and
prolonged standing, walking with brief change of position should be permitted as necessary from current
and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to
lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar
interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks.
He states pain increases through the day/week, unable to control with pain meds. Did not complete hr.
capacity, wrote unquantifiable.


Claimant  is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar  pain
with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but
said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace.
Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but
no evidence of compression of neurological structures or progressively worsening weakness in
extremities. Physical findings report relatively good range of motion with hardware intact and no
instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is
unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that
cannot be objectively quantified although reasonable to assume that some degree of discomfort in the
back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive
functioning was appropriate but safety issue to be considered if  involvement  with plan of  patient care.
Based on the medical evidence, claimant is not totally impaired from returning to work in a light

occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.


Recommendations: None


Kathy Freygang RN BSN
Nurse Disability Consultant

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW


DEMOGRAPHICS:


Date:  November 21, 2013
Claimant:  JAMIE FLANAGAN
Claim Number:  1130226196
Occupation:  Nurse Practitioner - light
Diagnosis:  Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ▮▮▮▮▮▮- 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO


Current Height:   64          Weight: 112
Dominant Side:  Right
Previous Med Review? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A


CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability


CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13


MAIN DUTIES OF OCCUPATION:


Treat patients - LIGHT - ER does not accomodate


MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell


Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FA LED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:

**Chronological Activity List**

·      According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| | | | | |
|---|---|---|---|---|
| 3/15/2016 | Referrals | 204135Ongoing Claim Review | Completed | RDHASTI |

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

1st Appeal
Peer review with an Occupational Medicine Physician
Diagnosis: POSTLAMINECTOMY SYNDROME LUMBAR REGION, SPINAL STENOSIS LUMBAR REGION

Peer to peer call to be made if there is a medical disagreement on functionality:

Dr. Donald Hopewell / Neurology
Phone: 417-659-6873

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease.  t was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/ or limitations of the treating  provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

 Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical  findings, please provide  a description of the  claimant's impairments,  and how  these  would translate into functional  limitations or  medically  appropriate  restrictions  from 11/25/2015 and forward.

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3. Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings?  Please explain.

 - SARCH6 - Mar 02, 2016 02:45:55 pm
Date:  2/19/2016
Claimant Name:  Jamie Flanagan
Claim Number:  1130226196

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 215 of 550    LIN00215

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP:   90
Benefits Commencement Date:  11/24/2013
Benefits Paid To:  11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD:  Nurse Practitioner
DOT Classification:  Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?  Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service:  12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - BKGALL - Feb 23, 2016 01:46:54 pm
Clinical Consultation Response:

Claimant;  Jamie Flanagan
Claim #:  1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 01:46:54 pm
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:46:54 pm
INCLUDE LTD 1130226196

Specialty Requested:Occupational Medicine peer with Dr-to-Dr call made to treating providers if there is a need for clarification, of if there is a medical disagreement on functionality.

**NOTE** If the treating provider is contacted, provide a transcript of the conversation with your review.**

Claimant's Physician Name and Specialty: Dr. Donald Hopewell (neurology)
Claimant's Physician Phone Number: (417) 659-6873

Has this file had a prior external review? Yes
UDC, Dr. Meghana Karande, Physical Medicine and Rehabilitation

Claim Summary

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. t was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/ or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

 Questions

1.Please provide a review summary of the medical findings.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3.Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - RDHASTI - Feb 24, 2016 10:47:03 am
Case submitted to RRS conf #14252 for a peer reviewwith an Occupational Medicine Physician, see notes tab for additional information. - SARCH6 - Mar 02, 2016 02:45:56 pm
The final report from RRS was received and sent to LFGAppeals for attachment to AWD. - SARCH6 - Mar 10, 2016 02:26:00 pm
QA RESPONSE: Physician Peer Review
Claimant: Jamie Flanagan
Claim Number: 1130226196

Vendor: RRS
Audit Date: 3/11/16
Peer Reviewer: Joseph G. Thomas, MD
Peer Reviewer Board Certifications: Occupational Medicine
Teleconference was not attempted but/ was not completed with Dr. Hopewell due to no significant medical disagreement.

Received and reviewed peer report. The peer reviewer notes the claimant's pertinent clinical history and responds to

questions posed.  The peer reviewer concluded that the medical records support restrictions and limitations as follows from 11/25/2015 and forward:

The claimant could lift up to 7 pounds occasionally.
She could perform frequent sitting with 20 minutes of continuous sitting.
She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
She could perform occasional bending and stooping
She could perform frequent reaching and fingering.
These limitations are for an 8 hour work day and 40 hour work week.

Clinical rationale is provided.  See report for details.

Referring DOCSNET case to: RDHASTI

Report is located in AWD: The report was sent to imaging per SARCH6.

Please call with any questions.

Virginia Rush, RN, BS
Nurse Disability Consultant - VXRUSH - Mar 11, 2016 09:30:01 am



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

February 27, 2017

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re: Policyholder: LESTER E COX MEDICAL CENTER
    Claim Number: 1130226196 & 1140128972
    Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term disability claim file and Life Waiver for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policies, all file documentation and any correspondence in the files.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

Secure password: Social Security number (no spaces/dashes)

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.

Sincerely,

Samantha Gabrie
Assisting on behalf of Joseph Jackson
800-423-2765 *7735
Coordinator, Administrative Services
The Lincoln National Life Insurance Company

©2017 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Law Offices of
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

FIRST-CLASS MAIL

$00.46⁰

Hasler
02/17/2017
US POSTAGE

ZIP 65804
011D12810600

FEB 2 1 2017

Joseph Jackson, Sr Claims Examiner, Claims
Professional
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

68114-406699

 **Law Offices of Rick S. Vasquez**

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

FEB 2 1 2017

February 17, 2017

**VIA FACSIMILE: 402-361-1460**

Joseph Jackson, Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

Re:    *Claimant: Jamie Flanagan*
       *Policyholder: Lester E. Cox Medical Center*
       *Policy# 00001015732600000*
       *Claim# 1130226196*

Dear Mr. Jackson:

Please provide a copy of each and every document utilized in making the determination of February 6, 2017, to deny Mrs. Flanagan's claim.

Thank you for your attention to this matter.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
cc: Jamie Flanagan



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

February 17, 2017

**VIA FACSIMILE: 402-361-1460**

Joseph Jackson, Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

*Re:    Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 000010157326000000*
*Claim# 1130226196*

Dear Mr. Jackson:

Please provide a copy of each and every document utilized in making the determination of February 6, 2017, to deny Mrs. Flanagan's claim.

Thank you for your attention to this matter.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
cc: Jamie Flanagan

PAGE 1/1 * RCVD AT 2/17/2017 9:32:15 AM [Central Standard Time] * SVR:NE1PWFAX101/7 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-29

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 222 of 550    LIN00222



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

February 6, 2017

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

We have completed our review of your client's Long Term Disability appeal.  Based on the information provided, we have determined that we are unable to approve benefits beyond 11/24/2015. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy.  This includes, but is not limited to, the following:

> ***TOTAL DISABILITY* or *TOTALLY DISABLED* will be defined as follows:**
> 1.  *During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.*
> 2.  *After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.*
> *The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.*
>
> *OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.*

©2017  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

This policy has a 24 month Own Occupation Period which ended on 11/24/2015. In order to be considered Totally Disabled beyond this date, the medical evidence must support that your client would be unable to perform each of the main duties of any occupation for which your client is qualified. As such, in considering your client's eligibility for Long Term Disability benefits beyond 11/24/2015, we evaluated whether your client would be restricted or limited from performing the main duties of any occupation for which your client is qualified.

Your client's entire file was reviewed upon appeal. Disability must be supported from 11/24/2015 forward, which will be the focus of our determination.

## Summary of Initial Claim Filing

As you know your client's claim was originally approved to 11/24/2015 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 11/24/2015, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation including consultation with Dr. Meghana C. Karande, an independent physician who is Board Certified in Physical Medicine and Rehabilitation. For complete details please refer to our letter dated September 28, 2015. The decision in part noted the following.

> *"… restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted."*

## Summary of First Level of Appeal

On 2/3/2016, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your appeal.

Our review of the medical documentation which included consultation with Dr. Joseph G Thomas, an independent physician who is Board Certified in Occupational Medicine, did not support restrictions and limitations that would render your client unable to perform the main duties of any gainful occupation beyond 11/24/2015. For complete details please refer to our letter dated April 26, 2016. The decision in part noted the following.

> *The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.*
> - *Per the FCE, the claimant could lift up to 7 pounds occasionally.*
> - *She could perform frequent sitting with 20 minutes of continuous sitting.*
> - *She could perform occasional standing/walking with 10 minutes of continuous standing or walking.*
> - *She could perform occasional bending and stooping.*

LINC00224

- *She could perform frequent reaching and fingering.*

    *… However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward.*

**Summary of Second Level of Appeal**

On 10/21/2016, your client filed a second and final appeal in response to our determination to uphold our previous decision to terminate benefits. Additional information was submitted with your appeal.

An evaluation with Dr. Hopewell was done on October 22, 2014 for lumbar spondylosis, post laminectomy lumbar syndrome and lumbar spondylolisthesis all occurring in the setting of mixed connective tissue disease.

In a consult note dated December 7, 2015 with Dr. Mace for low back and leg pain, it was noted the imaging showed what appeared to be a good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at that time.

Records form Dr. Hopewell indicated that your client was seen on January 20, 2015 and noted the neuro exam was normal.

On April 16, 2015, your client was seen at Dr. Hopewell's office and your client reported having another flare of low back and bilateral leg pain. It was noted you were having personal stress.

Your client underwent a lumbar spine MR on October 15, 2015.

In the record from Dr. Newbold dated December 1, 2015 for chronic low back pain, GERN, anxiety, depression. Your client stated he was doing well except for recurring episodes of urticarial (rash). He stated his anxiety and depression were well controlled on oral mediciatons for the most part.

An evaluation with Dr. Hopewell was done on December 9, 2015 and she was seen to discuss the denial of disability which seemed to center around your client's physical exams being normal and fluctuation of pain levels. The provider noted normal physical exams were common in spine based pain issues and she felt overall the pain was doing well on current meds without complications.

In a consult note dated January 28, 2016 the exam was normal, with no focal motor/sensory deficits.

Records from Dr. Hopewell indicated that your client was seen on February 29, 2016 for chronic low back and bilateral leg pain that your client reported was reasonably stable overall.

On June 16, 2016, your client was seen at Dr. Winkler's office as a follow up for undifferentiated connective tissue disease (UCTD). The exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling.

The record from Dr. Winkler dated September 1, 2016 reported your client felt better with a steroid course that lasted for 1-2 months and pain meds were helping and at times he was hurting all over with swelling of hands/fingers that reportedly would occur about twice per month. He denied feeling depressed and was still not sleeping well due to pain radiating to right thigh. The exam noted no documented focal motor, sensory, cognitive, neurological deficits on exam.

Records from Dr. Kokoszka and Dr. Tonkin indicated that your client was seen from October 5, 2016 to October 31, 2016 for issues with ADL's due to pain with significant issues driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs and sexual functions. The exam noted no deformities, edema, cyanosis, atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. It was suggested you client have interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage and physical therapy.

## Second Level Appeal Decision

Our review of the medical documentation, which included consultation with a health care consultant, did not support that your client was Totally Disabled beyond 11/24/2015. We therefore find that your client is no longer Totally Disabled under the terms of our policy.

A full review of the file found on exam no documentation of any focal motor weakness, sensory loss, cognitive or memory deficits and no gait issues. Your client had a history of "HTN", "GERD", depression and pain. Overall, the provider noted been to be well controlled on a steady med regimen. Your client had full range of motion all extremities with intact sensation throughout and normal gait without use of assistive device. We found no clinical findings noted in the file demonstrating any functional limitation that would support your client was unable to perform duties of any sedentary occupation.

The review concluded there is no functional impairment from your client performing any occupation as of November 24, 2015. The review did not support any functional limitations/impairment that would preclude your clients ability to perform duties of any sedentary occupation. Would have the ability to lift/carry up to 10 pounds occasionally, ability to sit up to total of 6 hours per 8 hour workday and continuously for 20 minutes at a time, can stand or walk for up to a total of 2 hours per 8 hour work day with position changes as needed for comfort. Your client can fingering, handling, reach, grip, keyboard, type, interact with co-workers, problem solve as needed on a full time basis as of November 24, 2015 and forward. The medical records and other file documentation do not support the payment of additional benefits.

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

REF #1788663

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following sedentary occupations:

| DOT# | Occupation | Wage (mean) |
|---|---|---|
| 075.127-014 | Nurse, Consultant | $5,347.00/mo |
| *075.374-916 | Call Center Nurse | $5,481.00/mo |

*eDOT code

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

On appeal the medical review done clearly outlined restriction and limitation that would fall in line with sedentary work and thus the prior Transferable Skills Analysis would still be valid.

We are aware that your client has qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our policy provisions and review processes are independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and independent information received by the SSA. The claim decision made under your client's Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim by clinical staff.

You and your client have exhausted all rights of appeal, and your client's administrative file is now closed.

If your client's plan is subject to ERISA, your client may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office and your client's State insurance regulatory agency. Your client has the right to pursue litigation and your client may request copies of the pertinent documents.

REF #1788663

Please contact me directly at the number below with any questions you may have or email us at  LFGAppeals@lfg.com.

Sincerely,

Joseph Jackson
800-423-2765 *7735
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company

LIN00228



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, MO 65804
Telephone: (417) 889-7735
Facsimile: (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

## FACSIMILE COVER SHEET

**DATE:**      1/9/17

**TO:**   Joseph Jackson

**FAX NO.:**   *402-361-1460*

**SENDER:**   Catrina-Law offices of Rick Vasquez

**RE.:**   Jamie Flanagan- *Policy# 00001015732600000*
       *Claim# 1130226196*

**NUMBER OF PAGES** (Including this cover sheet):   <u>3</u>

**CONFIRMATION HARD COPY TO FOLLOW VIA MAIL:**

                                          Yes _ No _X_
**SPECIAL INSTRUCTIONS/COMMENTS:**
**The following is the remaining records requested for your review-Cox Health**
**Dr. Steve Newbold.**

*Thank you,*

*IF YOU DID NOT RECEIVE ALL OF THE PAGES IN GOOD CONDITION,*
*PLEASE ADVISE US AT YOUR EARLIEST CONVENIENCE.  THANK YOU.*

## *CoxHealth*

Cox Family Medicine of Monett

Patient Name:     FLANAGAN, JAMIE SUE                          Location:  Fam Med Monett; Exam Room 10
Account Number: AMB000000229496
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB: ▮▮▮▮          Age: 36 years     Female          Admit Date:  11/16/2015          Discharge Date:  12/1/2015

### Office Clinic Notes

Result Date/Time:                          11/16/2015 09:54 CST
Performed By:                              Newbold MD,Steve (11/16/2015 09:56 CST)
Electronically Signed By:                  Newbold MD,Steve (11/16/2015 09:56 CST)

**Chief Complaint**
6 mo med check

**Nurse Intake**
**Nursing Intake**

| General Information | Pain Information | Travel History |
| --- | --- | --- |
| Information Given By: | Pain Present: Yes | Recent Travel History: |
| Patient 11/16/15 | actual or suspected | No recent travel |
| | pain 11/16/15 | 11/16/15 |
| Physicians and | Pain Intensity: 7 | |
| Specialties: Dr Beth | Critical 11/16/15 | |
| Knox (pcp) Dr Ann | | |
| Winkler | | |
| (rheumatologist) Dr | | |
| Donald Hopewell (pain | | |
| management) Dr | | |
| Diane Cornelison | | |
| (neurologist) 11/16/15 | | |

Pain Location: lower
back 11/16/15
Pain Quality: chronic
11/16/15

**History of Present Illness**
35-year-old lady with chronic back pain and GERD anxiety depression here for follow-up.
She is actually doing well except she's had recurring episodes of urticaria and angioedema.
Nothing new in her environment that she is aware. She has had marked swelling of her
lips and a couple of times of her throat. Her rheumatologist has given her EpiPen. She is
not taking antihistamine presently. No dysphagia. Anxiety depression well controlled as is
her pain for the most part

**Review of Systems**
See history of present illness. Other systems negative or not pertinent

**Problem List/Past Medical History**
**Angioedema:**
**Chronic back pain:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**

**Procedure/Surgical History**
Breast reconstruction, Cesarean section,
Cholecystectomy, foot surgery bilateral, spinal
fusion with cage and graft, TAH BSO - Total
abdominal hysterectomy and bilateral
salpingo-oophorectomy.

**Medications**
belladonna/caffeine/ergotamine/pentobarbit
al, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By
mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
ibuprofen, 800 mg, By mouth, as needed,
PRN
Limu vegetabl/fruit juic, 4 oz, By mouth,
Daily
MiraLax oral powder for reconstitution, 17 g,
By mouth, at bedtime
MS Contin 15 mg/12 hr oral tablet,
extended release, 15 mg, 1 tab, By
mouth, BID
MS Contin 60 mg/12 hours oral tablet,
extended release, 120 mg, 2 tab, By
mouth, Q12H
Phenergan 25 mg oral tablet, 25 mg, 1 tab,
By mouth, Q4-6H
Plaquenil Sulfate 200 mg oral tablet, 400
mg, 2 tab, By mouth, at bedtime
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By
mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000229496                    DOS: 11/16/2015          Report Request ID:  80837946
Patient Name:     FLANAGAN, JAMIE SUE              DOB: 4/3/1980           Print Date/Time:  1/3/2017 15:51 CST

PAGE 2/3 * RCVD AT 1/9/2017 4:02:47 PM [Central Standard Time] * SVR:NE1PWFAX101/11 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-51

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 230 of 550   LIN00230

## *CoxHealth*

*Office Clinic Notes*

<u>**Physical Exam**</u>

<u>Vitals & Measurements</u>
**T:** 98.0 °F **HR:** 72 **BP:** 107 / 58 **HT:** 64 in **WT:** 145 lb **BMI:** 24.9
Alert oriented and appropriate

<u>**Assessment/Plan**</u>
Angioedema
Ordered:
Office Visit Level 4 Established 99214
Referral Allergy/Immunology

Anxiety and depression
  Continue present plan
Ordered:
Office Visit Level 4 Established 99214

Chronic back pain
  Continue present medications
Ordered:
Office Visit Level 4 Established 99214
Return to Clinic, Return in 6 months

GERD (gastroesophageal reflux disease)
  Reflux precautions reviewed.  Continue present meds
Ordered:
Office Visit Level 4 Established 99214

  <u>Other</u>
Rheumatology follow-up as scheduled

Topamax 50 mg oral tablet, 50 mg, 1 tab,
  By mouth, BID
Tums E-X 750 mg oral tablet, chewable,
  1500 mg, 2 tab, By mouth, Q1Hr, PRN
Wellbutrin SR 150 mg/12 hours oral tablet,
  extended release, 150 mg, 1 tab, By
  mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By
  mouth, Q6H, PRN

<u>**Allergies**</u>
Ambien (Sleep walking)
Darvocet-N 50 (Rash)
Lunesta (Sleep walking)
adhesive (Rash)

<u>**Social History**</u>
  <u>Alcohol</u>
    Denies
  <u>Substance Abuse</u>
    Denies
  <u>Tobacco</u>
    Never smoker

<u>**Family History**</u>

<u>**Health Maintenance**</u>
**Health Maintenance**
**Pending** (in the next year)
<u>OverDue</u>
Influenza Vaccine due 09/01/15 and every 1 yr
<u>Due</u>
Cervical Cancer Screening due 11/16/15 and
every 5 yr
HIV AB due 11/16/15 One-time only
Pertussis Vaccine due 11/16/15 One-time only
Tetanus/TD Vaccine due 11/16/15 and every
10 yr
**Satisfied** (in the past 1 year)
There are no satisfied recommendations within
the defined date range

<u>**Lab Results**</u>

<u>**POC Lab Results**</u>
No qualifying data available.

<u>**Diagnostic Results**</u>

<u>**Other**</u>

*Electronically signed by:Newbold MD, Steve 11/16/15 09:56*

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000229496                 DOS: 11/16/2015          Report Request ID:   80837946
Patient Name:     FLANAGAN, JAMIE SUE            DOB: ▉▉▉▉▉     Print Date/Time:   1/3/2017 15:51 CST

PAGE 3/3 * RCVD AT 1/9/2017 4:02:47 PM [Central Standard Time] * SVR:NE1PWFAX101/11 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-51

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 231 of 550    LIN00231



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

December 7, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
         Policy Number: 00001015732600000
         Claim Number: 1130226196
         Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

On October 28, 2016, we acknowledged your client's appeal and advised that it may be in your best interest to provide additional medical documentation in support of Mrs. Flanagan's appeal.

Although we received some of the additional information, we are approaching our initial deadline for deciding your client's appeal under the Employee Retirement Income Security Act (ERISA), and have not yet reached a determination. The appeal decision is currently pending as your office has not received all of the requested medical records. An extension of time to process Mrs. Flanagan's appeal is required. Due to these special circumstances, we are exercising our right to take a 45-day extension of time to decide the appeal.

If we do not receive the additional information by January 7, 2017, we will review your client's appeal and render a decision as soon as possible based upon the information currently available in your client's file.

You can expect to receive a decision from us within 45 days after receiving all of the medical records.

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #1676956

Please contact me directly at (XXX-XXX-XXXX) with any questions you may have or email us at  LFGAppeals@lfg.com.

Sincerely,

Joseph Jackson
800-423-2765 *7735
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri  65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

November 29, 2016

**VIA FACSIMILE: 402-361-1460**

Joseph Jackson, Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

Re:  *Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Mr. Jackson:

I would note that there is one provider that is still processing, ie Dr. Steven Newbold. We are requesting additional time to receive and submit Dr. Newbold's records.  However, I am enclosing the following for your review:

1. Donald Hopewell, M.D.; 12/09/15-06/28/16;
2. Crystal Powell, PA for Damon Thomas, M.D.; 01/28/16;
3. Anne Winkler, M.D.; 06/16/16-09/01/16; and
4. J. Charles Mace, M.D.; 12/07/15.

To date our office has not received all of the requested medical records regarding Mrs. Flanagan's appeal.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
cc: Jamie Flanagan

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB ████████ Sex: F
                               Enc. Date: 12/09/15

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 12/9/2015 12:19 PM**                    Version 1 of 1

Author: Hopewell, Donald K, MD        Service: (none)               Author Type: Physician
Filed: 12/9/2015 12:28 PM             Note Time: 12/9/2015 12:19 PM  Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 12/9/2015 12:28 PM

## Call Documentation

**Hopewell, Donald K, MD at 12/9/2015 12:19 PM**

Status: Signed

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

PAGE 2/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 235 of 550
LIN00235

MERCY HOSPITAL JOPLIN          FLANAGAN, JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB ███████ Sex: F
                               Enc. Date: 12/09/15

## Call Documentation (continued)

**Hopewell, Donald K, MD at 12/9/2015 12:19 PM (continued)**

## End of Encounter

JOPL HEALTH INFORMATION        FLANAGAN, JAMIE S
MANAGEMENT                     MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 236 of 550    LIN00236

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                 MRN: E140238803
Joplin MO 64804-4524          DOB:▮▮▮▮ Sex: F
                              Enc. Date: 02/29/16

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 2/29/2016 10:58 AM**                    Version 1 of 1

Author: Hopewell, Donald K, MD          Service: (none)                    Author Type: Physician
Filed: 2/29/2016 11:03 AM               Note Time: 2/29/2016 10:58 AM      Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

Patient is a 35-year-old returns for followup of chronic pain related to lumbar post laminectomy syndrome, lumbar spondylolisthesis, and inflammatory arthropathy related to mixed connective tissue disease. The patient overall is reasonably stable and told me today she feels that she is developing more acceptance of her limitations and the fact that she has to deal with pain on a daily basis. She continues to have more problems at night and she does during the day but does complain about daytime hypersomnolence and he time she is not physically active. This is particularly a problem for her when she is driving. She has cut down on her driving considerably because of this. Her pain continues to be lumbar with occasional radiation into the lateral aspect of the right leg, right for leg, and into the heel and the foot on the right side. Because of insurance changes we're going to change her narcotic regimen in terms of her breakthrough pain medication from hydromorphone to oxycodone.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented intercurrent records. Neurologic examination on this date remains normal.

This is a patient with chronic pain related to her spine disease that is at least reasonably controlled on her current regimen. We'll change her to oxycodone 30 mg tablets every 6 hours as needed for the breakthrough pain. We'll continue the morphine unchanged. Because of the hypersomnolence issues I suggest we get a sleep study to see whether this is all medication effect or there may be some other issue that can be addressed more specifically. She scheduled for routine followup in 3 months.

DK Hopewell M.D.

    Electronically signed by Hopewell, Donald K, MD at 2/29/2016 11:03 AM

## Call Documentation

**Hopewell, Donald K, MD at 2/29/2016 10:58 AM**

    Status: Signed

Patient is a 35-year-old returns for followup of chronic pain related to lumbar post laminectomy syndrome, lumbar spondylolisthesis, and inflammatory arthropathy related to mixed connective tissue disease. The patient overall is reasonably stable and told me today she feels that she is developing more acceptance of her limitations and the fact that she has to deal with pain on a daily basis. She continues to have more problems at night and she does during the day but does complain about daytime hypersomnolence and he time she is not physically active. This is particularly a problem for her when she is driving. She has cut down on her driving considerably because of this. Her pain continues to be lumbar with occasional radiation into the lateral aspect

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN            FLANAGAN,JAMIE S
100 Mercy Way                    MRN: E140238803
Joplin MO 64804-4524             DOB: ████████ Sex: F
                                 Enc. Date: 02/29/16

## Call Documentation (continued)

**Hopewell, Donald K, MD at 2/29/2016 10:58 AM (continued)**

of the right leg, right for leg, and into the heel and the foot on the right side. Because of insurance changes we're going to change her narcotic regimen in terms of her breakthrough pain medication from hydromorphone to oxycodone.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented intercurrent records. Neurologic examination on this date remains normal.

This is a patient with chronic pain related to her spine disease that is at least reasonably controlled on her current regimen. We'll change her to oxycodone 30 mg tablets every 6 hours as needed for the breakthrough pain. We'll continue the morphine unchanged. Because of the hypersomnolence issues I suggest we get a sleep study to see whether this is all medication effect or there may be some other issue that can be addressed more specifically. She scheduled for routine followup in 3 months.

DK Hopewell M.D.

## End of Encounter

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                   MRN: E140238803
Joplin MO 64804-4524            DOB: ███████ Sex: F
                                Enc. Date: 05/23/16

## Call Documentation

**Newman, Laura C, LPN at 5/23/2016  9:29 AM**
Status: Signed

Have returned patients call multiple times without any response from her.

## End of Encounter

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

| MERCY HOSPITAL JOPLIN | FLANAGAN,JAMIE S |
|---|---|
| 100 Mercy Way | MRN: E140238803 |
| Joplin MO 64804-4524 | DOB: ▓▓▓▓ Sex: F |
| | Enc. Date: 05/23/16 |

## Call Documentation

**Newman, Laura C, LPN at 5/23/2016  9:56 AM**
    Status:  Signed

Have called patient several times regarding call on 5/19, she has not returned my calls.

**Newman, Laura C, LPN at 5/23/2016  9:56 AM**
    Status:  Signed

---- Message from Michelle Darr sent at 5/19/2016  2:47 PM CDT ----
Hey Chris,

I had a voicemail from Jamie. She has an upcoming appt,but has been having leg and hip pain for the last 2-3 weeks. Now she is having some neck and shoulder issues. She didn't know if she possibly needs a steroid and doesn't know if she will be able to make it through to her appt.

Thanks

Could you please call her?

459-5879

## End of Encounter

| JOPL HEALTH INFORMATION | FLANAGAN,JAMIE S |
|---|---|
| MANAGEMENT | MRN: E140238803 |
| 100 Mercy Way | |

Printed by 95369 at 11/14/16 10:59 AM

PAGE 7/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 240 of 550  LIN00240

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB: ▮▮▮▮▮▮ Sex: F
                               Enc. Date: 05/26/16

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 5/26/2016 12:27 PM**                    Version 1 of 1

Author: Hopewell, Donald K, MD          Service: (none)              Author Type: Physician
Filed: 5/26/2016 12:33 PM               Note Time: 5/26/2016 12:27 PM    Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

The patient is a 36-year-old who returns for followup of lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and episodic problems with inflammatory arthropathy associated with mixed connective tissue disease. Her low back pain continues to be lumbar with occasional radiation down the lateral aspect of the right leg into the foot. Over the last couple of months her pain has changed somewhat in character. There was no precipitating factor for this and it especially bothers her at night it tends to wax and wane with a couple of days where it is much worse than a couple of days where it is better. She has a difficult time describing the uncomfortable sensation in the legs. It is somewhere between her myalgia symptom and a feeling of intense fatigue. She says because of this sensation she basically does not want to get up and move around although there is no new weakness or sensory symptomatology. She has been using increased numbers of her when necessary pain medication because of this discomfort. She tells me that she has not had her sleep study done yet do to insurance issues. She continues to have problems sleeping through the night and continues with daytime hypersomnolence as well.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal but the patient does have muscle tenderness in the lower extremities particularly in the calves bilaterally.

This is a patient who has been stable in terms of her pain issues until the last couple of months. I told her that this sounds more like a flare of her connective tissue process rather than her chronic neuropathic pain associated with her back issues. She does tell me that she's also had some problems with hand swelling and hand joint swelling as well. We discussed the possibility of using a course of dexamethasone. I have strongly encouraged her to followup with her rheumatologist and she tells me that she has a office visit scheduled in 2 weeks. I told her to check with rheumatology to make sure that using steroids would not alter anything that they would want to do prior to that visit and if not that we would do a five-day course of dexamethasone. We will continue her pain medications otherwise unchanged and she'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 5/26/2016 12:33 PM

## Call Documentation

**Hopewell, Donald K, MD at 5/26/2016 12:27 PM**

Status: Signed

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

PAGE 8/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 241 of 550

LIN00241

MERCY HOSPITAL JOPLIN            FLANAGAN,JAMIE S
100 Mercy Way                   MRN: E140238803
Joplin MO 64804-4524            DOE▮▮▮▮▮▮ Sex: F
                                Enc. Date: 05/26/16

### Call Documentation (continued)

**Hopewell, Donald K, MD at 5/26/2016 12:27 PM (continued)**

The patient is a 36-year-old who returns for followup of lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and episodic problems with inflammatory arthropathy associated with mixed connective tissue disease. Her low back pain continues to be lumbar with occasional radiation down the lateral aspect of the right leg into the foot. Over the last couple of months her pain has changed somewhat in character. There was no precipitating factor for this and it especially bothers her at night it tends to wax and wane with a couple of days where it is much worse than a couple of days where it is better. She has a difficult time describing the uncomfortable sensation in the legs. It is somewhere between her myalgia symptom and a feeling of intense fatigue. She says because of this sensation she basically does not want to get up and move around although there is no new weakness or sensory symptomatology. She has been using increased numbers of her when necessary pain medication because of this discomfort. She tells me that she has not had her sleep study done yet do to insurance issues. She continues to have problems sleeping through the night and continues with daytime hypersomnolence as well.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal but the patient does have muscle tenderness in the lower extremities particularly in the calves bilaterally.

This is a patient who has been stable in terms of her pain issues until the last couple of months. I told her that this sounds more like a flare of her connective tissue process rather than her chronic neuropathic pain associated with her back issues. She does tell me that she's also had some problems with hand swelling and hand joint swelling as well. We discussed the possibility of using a course of dexamethasone. I have strongly encouraged her to followup with her rheumatologist and she tells me that she has a office visit scheduled in 2 weeks. I told her to check with rheumatology to make sure that using steroids would not alter anything that they would want to do prior to that visit and if not that we would do a five-day course of dexamethasone. We will continue her pain medications otherwise unchanged and she'll return for routine followup in 3 months.

DK Hopewell M.D.

### End of Encounter

JOPL HEALTH INFORMATION            FLANAGAN,JAMIE S
MANAGEMENT                         MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN
100 Mercy Way
Joplin MO 64804-4524

FLANAGAN,JAMIE S
MRN: E140238803
DOB: ▮▮▮▮ Sex: F
Enc. Date: 06/28/16

## Call Documentation

**Newman, Laura C, LPN at 6/28/2016  5:14 PM**
Status:  Signed

Advised patient per Dr Hopewell she may take her oxycodone q 4-6 and we will fill early if she needs. She voices understanding.

**Hopewell, Donald K, MD at 6/28/2016  4:51 PM**
Status:  Signed

She can increase her oxycodone to q 4-6 hours prn pain and we can fill early when she needs it

**Newman, Laura C, LPN at 6/28/2016  3:41 PM**
Status:  Signed

Patient called states she is in Florida, had an abscess on her leg she went to have it lanced and the dr gave her a rx for norco 5. She asked him to call here, she explained that she cant take pain meds from anyone else but he wouldn't call. She asked what do you want her to do I told her do not fill that script she said she will not, she needs to know if she needs to do anything different with her current regimen, because she is in a lot of pain.  Please advise

### End of Encounter

### END OF REPORT

JOPL HEALTH INFORMATION
MANAGEMENT
100 Mercy Way

FLANAGAN,JAMIE S
MRN: E140238803

Printed by 95369 at 11/14/16 10:59 AM

## *CoxHealth*

CoxHealth Center Crane

Patient Name:    FLANAGAN, JAMIE SUE                              Location:  CHC Crane
Account Number: AMB000000452070
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB [redacted]      Age:  36 years      Female      Admit Date:  1/28/2016        Discharge Date:  2/12/2016

---

### Office Clinic Notes

Result Date/Time:                           1/28/2016 10:41 CST
Performed By:                               Powell PA,Crystal J (1/28/2016 10:42 CST)
Electronically Signed By:                   Thomas MD,Damon (2/12/2016 11:25 CST); Powell PA,Crystal
                                            J (2/11/2016 22:41 CST)

**Chief Complaint**
New Establish Care Med refill.

**Nurse Intake**
**Nursing Intake**

General Information
Physicians and Specialties: Dr
Beth Knox (pcp) Dr Ann Winkler
(rheumatologist) Dr Donald
Hopewell (pain management) Dr
Diane Cornelison (neurologist)
01/28/16

Pain Information
Pain Present: Yes actual or
suspected pain 01/28/16

Pain Intensity: 3 01/28/16
Pain Location: Leg 01/28/16

**General Nurse Comments:**

**History of Present Illness**
Here today to establish care.
Needing refill of her Epi Pen. Uses this for hx of angioedema, uncertain of the cause. Has
been referred for allergist consult in the past but did not go, does not wish to see allergist
at this time. Not taking an antihistamine, hasn't helped in the past apparently. No recent
flare ups.
Has hx of chronic back pain, had L5-S1 PLIF with Dr. Mace 4/2011.  Is on multiple
chronic pain medications and muscle relaxant, managed per pain clinic.
Also has hx of undifferentiated autoimmune d/o, followed by Dr. Winkler.
Also has hx of GERD, anxiety, and depression.  She feels these are well-controlled at this
time.
She is a NP, but not currently working, on disability due to her multiple health problems.

**Review of Systems**
See HPI. All other ROS reviewed as negative or not pertinent.

**Problem List/Past Medical History**
**Angioedema:**
**Chronic back pain:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**

**Procedure/Surgical History**
Breast reconstruction, Cesarean section,
Cholecystectomy, foot surgery bilateral, spinal
fusion with cage and graft, TAH BSO - Total
abdominal hysterectomy and bilateral
salpingo-oophorectomy.

**Medications**
ALPRAZolam 0.5 mg oral tablet, See
   Instructions, 2 refills
belladonna/caffeine/ergotamine/pentobarbit
   al, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By
   mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
EPINEPHrine 0.3 mg injectable kit, IM,
   ONCE
ibuprofen, 800 mg, By mouth, as needed,
   PRN
MiraLax oral powder for reconstitution, 17 g,
   By mouth, at bedtime
morphine 100 mg/24 hours oral capsule,
   extended release, 200 mg, 2 cap, By
   mouth, Q12H
Plaquenil Sulfate 200 mg oral tablet, 400
   mg, 2 tab, By mouth, at bedtime
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By
   mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab,
   By mouth, BID

**CONFIDENTIAL PATIENT INFORMATION**
UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000452070                    DOS: 1/28/2016          Report Request ID:  77482572
Patient Name:    FLANAGAN, JAMIE SUE                DOB [redacted]        Print Date/Time:  11/16/2016 08:40 CST

## *CoxHealth*

### *Office Clinic Notes*

**Physical Exam**

Vitals & Measurements

**HR:** 68  **RR:** 12  **BP:** 100 / 60  **HT:** 65.5  in  **WT:** 147  lb  **BMI:** 24.1

General: In no acute distress. Alert & oriented. Behavior and affect appropriate to situation

Skin: Warm and dry with no rash or suspicious lesions noted.

CV: Regular rate and rhythm without murmur.

Chest: Respirations even and unlabored. Lungs clear to auscultation. No rhonchi. No crackles. No wheezing.

**Assessment/Plan**

Encounter to establish care

Meds reviewed. Pt is aware of clinic's policy for new pts regarding controlled medications. She will continue f/u with pain clinic.

Ordered:

Office Visit Level 2 New 99202

Hx of angioedema

Epi pen refilled today. Recommended referral for allergy consult, but pt declines at this time.

Ordered:

Office Visit Level 2 New 99202

Other

Rx for Epi pen sent to pharmacy.

She will return soon for well exam.

Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID

Xanax, 0.25 mg, at bedtime, PRN

Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

**Allergies**

Ambien (Sleep walking)

Lunesta (Sleep walking)

adhesive (Rash)

**Social History**

Alcohol

Denies

Substance Abuse

Denies

Tobacco

Never smoker

**Family History**

**Health Maintenance**

**Health Maintenance**

**Pending** (in the next year)

OverDue

Influenza Vaccine due 08/31/15 and every 1 yr

Due

Cervical Cancer Screening due 01/28/16 and every 5 yr

HIV AB due 01/28/16 One-time only

Pertussis Vaccine due 01/28/16 One-time only

Tetanus/TD Vaccine due 01/28/16 and every 10 yr

**Satisfied** (in the past 1 year)

There are no satisfied recommendations within the defined date range

**Lab Results**

**POC Lab Results**

No qualifying data available.

**Diagnostic Results**

**Other**

*Electronically signed by:Powell PA, Crystal J 02/11/16 22:41*

*Electronically cosigned by: Thomas MD, Damon  02/12/16 11:25*

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000452070          DOS: 1/28/2016          Report Request ID:  77482572

Patient Name:    FLANAGAN, JAMIE SUE          DOB          Print Date/Time:  11/16/2016 08:40 CST

PAGE 12/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 245 of 550    LIN00245

## CoxHealth

---

### Office Clinic Notes

---

Result Date/Time:                    6/16/2016 07:48 CDT
Performed By:                        Winkler MD,Anne (6/16/2016 07:50 CDT)
Electronically Signed By:            Winkler MD,Anne (6/16/2016 09:46 CDT)

### History of Present Illness

10/2/14 Jamie returns today for followup of her UCTD. she is on plaquenil. She also has significant DDD of cervical and lumbar spine. she has been out of her plaquenil for three weeks and she has had mild achiness in her shoulders and hands. she knows that the medication does help. she did have large number of seed tick bites.
4/2/15 Jamie returns today for followup of her UCTD she is on plaquenil and has stopped it inthe past with worsening symptoms off plaquenil. Shd also has DDD of cervical and lumbar spine which continues to be ongoing problems for her. Seh had flare in december which were treated with steroids and that helped. she continues to have fatigue more in the recent past. her shoulders and elbows were hurting more for a few weeks. she did not call or take steroids. however it has gotten better. sleep is ok but she is not rested.
9/3/15 Jamie returns today for followup of her mild synovitis. she is on plaquenil. she had one flare this summer which required mdrol dose pack and did help. she states that she feels more achy in general. she gets her pain medicine from Dr Hopewell. she is very depressed and anxious. she feels tired some days. she is not sure if it is related to sun exposure. it takes two days to recover from the spells of fatigue and feeling that she has the flu. she does not know if prednisone would help these spells. she has a tens unit but has not been using it. she is sleeping not too badly but she does awaken due to pain usually in her legs. she feels a grinding in her back. she has not seen Dr Mace for over a year. she is now taking 6 daily of dilaudid for breakthrough pain. she did have hives on sunday and used her epipen.

6/16/16  Jamie returns today for UTD>  she states that she was ok for some time but now is not doing as well for the last 3-4 months.  she feels that she Is swelling more in her hands and elbows and also having increased fatigue.  she hurts all over as well but she does feel that her worse areas hands and elbows and shoulders and hips. she is not wearing any rings due to swelling in her fingers.  she has had one dose pak (but not full one) about a few weeks ago.  the steroids did help.  she is not sleeping again.  she has problems in tehesun and gets very faitgued and sleeps for two days.  she does not have a rash

PAST MEDICAL HISTORY:
congenital flexible flat foot
Anxiety
Depression
Insomnia
pars defect with chronic back pain/spondylolysthesis
annular tear x 2-cervical

### SOCIAL HISTORY:

SOCIAL HISTORY: She is married. She is a nurse practitioner but is presently not working due to her health issues. She does not smoke or use alcohol.

FAMILY HISTORY: Positive for rheumatoid arthritis, lupus, psoriatic arthritis, pseudotumor cerebri, cancer,

### Problem List/Past Medical History
**Angioedema:**
**Chronic back pain:**
**Drug therapy observations:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**
**Undifferentiated connective tissue disease:**

### Procedure/Surgical History
spinal fusion with cage and graft (2011), Cholecystectomy (2004), Breast reconstruction, Cesarean section, foot surgery bilateral, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

### Medications
ALPRAZolam 0.5 mg oral tablet, See Instructions
belladonna/caffeine/ergotamine/pentobarbital, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
ibuprofen, 800 mg, By mouth, as needed, PRN
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
morphine 100 mg/24 hours oral capsule, extended release, 200 mg, 2 cap, By mouth, Q12H
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime, 3 refills
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

### Allergies
Ambien (Sleep walking)
Lunesta (Sleep walking)
adhesive (Rash)
Darvocet A500

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000871247              DOS: 6/16/2016          Report Request ID:  76713384
Patient Name:    FLANAGAN, JAMIE SUE          DOB:▮▮▮▮▮    Print Date/Time:  11/9/2016 07:16 CST

PAGE 13/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 246 of 550    LIN00246

## *CoxHealth*

### *Office Clinic Notes*

diabetes, heart disease, hypertension, hypercholesterolemia.

**Review of Systems**
review of systems: hair loss, dry eyes and dry mouth, lymphadenopathy, pulmonary or cardiac problems, GI problems, infections, fever, sweats or chills, sleep issues, mouth or nasal sores. All were negative as per return patient form dated 6/16/16 except for bladder infections and dry eyes and sleep issues and GI issues.

**Physical Exam**
PE: general appropriate build

HEENT: pupils equal and round no conjunctival irritation no temporal artery tenderness

SKIN: clear without rashes or lesions

NECK: no lymphadenopathy or thyromegaly or parotid gland swelling

LUNGS: clear to a and p without rales or wheezing

COR: RRR without murmurs or gallops

MUSCULOSKELETAL:

**Assessment/Plan**
1. Undifferentiated connective tissue disease
   will recheck lab including hla b27 and esr and crp and ana and ccp
2. Drug therapy
   may need to change plaquenil meanwhile will gie medrol dose pack again

Other
rtc in 1months

*Electronically signed by:Winkler MD, Anne 06/16/16 09:46*

**Social History**
Alcohol
  Denies
Employment/School
  Highest education level: University
    degree(s). Status: Full time.
    Occupation: Nurse
    practitioner-Neurology Office.
Home/Environment
  Marital status Married. Lives with:
    Children, Spouse.
Nutrition/Health
  Type of diet: Follows healthy diet. Caffeine
    intake amount: Denies.
Sexual
  Sexually active: Yes.
Substance Abuse
  Denies
Tobacco
  Never smoker

**Family History**
  Alcohol abuse: FATHER and PGF.
  Depression: MOTHER and AUNT.
  Diabetes mellitus: FATHER.
  Heart disease: FATHER, MGF, MGM, PGF
    and PGM.
  Hypertension: MOTHER, BROTHER, MGF,
    MGM and PGF.
  Liver cancer: MGF.
  Stroke: MGF.
  Tongue cancer: PGF.

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000871247          DOS: 6/16/2016          Report Request ID:  76713384
Patient Name:    FLANAGAN, JAMIE SUE       DOB:           Print Date/Time:  11/9/2016 07:16 CST

PAGE 14/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 247 of 550   LIN00247

## *CoxHealth*

CoxHealth Rheumatology - Branson
121 Cahill Rd # 205
Branson, MO 65616-

(417) 348-8253

Patient Name:    FLANAGAN, JAMIE SUE                         Location:  CHC Rheum Br
Account Number: AMB000001108003
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB ████████      Age: 36 years    Female      Admit Date: 9/1/2016        Discharge Date:  9/16/2016

---

### Office Clinic Notes

---

Result Date/Time:                          9/1/2016 07:36 CDT
Performed By:                              Winkler MD,Anne (9/1/2016 07:37 CDT)
Electronically Signed By:                  Winkler MD,Anne (9/1/2016 11:08 CDT)

### History of Present Illness

10/2/14 Jamie returns today for followup of her UCTD. she is on plaquenil. She also has significant DDD of cervical and lumbar spine. she has been out of her plaquenil for three weeks and she has had mild achiness in her shoulders and hands. she knows that the medication does help. she did have large number of seed tick bites.

4/2/15 Jamie returns today for followup of her UCTD she is on plaquenil and has stopped it inthe past with worsening symptoms off plaquenil. Shd also has DDD of cervical and lumbar spine which continues to be ongoing problems for her. Seh had flare in december which were treated with steroids and that helped. she continues to have fatigue more in the recent past. her shoulders and elbows were hurting more for a few weeks. she did not call or take steroids. however it has gotten better. sleep is ok but she is not rested.

9/3/15 Jamie returns today for followup of her mild synovitis. she is on plaquenil. she had one flare this summer which required mdrol dose pack and did help. she states that she feels more achy in general. she gets her pain medicine from Dr Hopewell. she is very depressed and anxious. she feels tired some days. she is not sure if it is related to sun exposure. it takes two days to recover from the spells of fatigue and feeling that she has the flu. she does not know if prednisone would help these spells. she has a tens unit but has not been using it. she is sleeping not too badly but she does awaken due to pain usually in her legs. she feels a grinding in her back. she has not seen Dr Mace for over a year. she is now taking 6 daily of dilaudid for breakthrough pain. she did have hives on sunday and used her epipen.

6/16/16  Jamie returns today for UCTD> she states that she was ok for some time but now is not doing as well for the last 3-4 months. she feels that she is swelling more in her hands and elbows and also having increased fatigue. she hurts all over as well but she does feel that her worse areas hands and elbows and shoulders and hips. she is not wearing any rings due to swelling in her fingers. she has had one dose pak (but not full one) about a few weeks ago. the steroids did help. she is not sleeping again. she has problems in the sun and gets very fatigued and sleeps for two days. she does not have a rash

9/1/16  Jamie returns today for UCTD. she states that she did feel better with the medrol dose pack and it lasted for about one - two months. she does feel that the pain medicines that she is on is helping much. she is limited though in what her insurance will cover. her worse areas are her back and then sometimes all over pain and then she has swelling in her fingers. this ocurs one or two times a month. she feels that she is not depressed. she is not sleeping well due to the pain. her right thigh pain is the worse at present.

PAST MEDICAL HISTORY:

### Problem List/Past Medical History

**Angioedema:**
**Chronic back pain:**
**Drug therapy:**
**GERD (gastroesophageal reflux disease):**
**Anxiety and depression:**
**Undifferentiated connective tissue disease:**

### Procedure/Surgical History

spinal fusion with cage and graft (2011), Cholecystectomy (2004), Breast reconstruction, Cesarean section, foot surgery bilateral, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

### Medications

ALPRAZolam 0.5 mg oral tablet, See Instructions
Donnatal, 1 tab, By mouth, as needed, PRN
Ibuprofen, 800 mg, By mouth, as needed, PRN
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
morphine 100 mg/24 hours oral capsule, extended release, 200 mg, 2 cap, By mouth, Q12H
oxyCODONE 30 mg oral tablet, 30 mg, 1 tab, By mouth, Q6H, PRN
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime, 3 refills
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000001108003                    DOS: 9/1/2016              Report Request ID:  76713390
Patient Name:    FLANAGAN, JAMIE SUE                DOB ██████              Print Date/Time:  11/9/2016 07:17 CST

PAGE 15/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 248 LIN00248

## *CoxHealth*

### *Office Clinic Notes*

congenital flexible flat foot
Anxiety
Depression
Insomnia
pars defect with chronic back pain/spondylolysthesis
annular tear x 2-cervical

**SOCIAL HISTORY:**

SOCIAL HISTORY: She is married. She is a nurse practitioner but is
presently not working due to her health issues. She does
not smoke or use alcohol.

FAMILY HISTORY: Positive for rheumatoid arthritis, lupus,
psoriatic arthritis, pseudotumor cerebri, cancer,
diabetes, heart disease, hypertension,
hypercholesterolemia.

#### Review of Systems
review of systems:  hair loss, dry eyes and  dry mouth,  lymphadenopathy, pulmonary or
cardiac problems, GI problems, infections,  fever, sweats or chills, sleep issues, mouth or
nasal sores.  All were negative as per return patient form dated  9/1/16   except for dry eyes
and abscess on left leg and sleep issues

#### Physical Exam
PE:  general  thin wf

HEENT:  pupils equal and round  noconjunctival irritation  no temporal artery tenderness

SKIN: clear without rashes or lesions

NECK: no lymphadenopathy or thyromegaly or parotid gland swelling

LUNGS:  clear to a and p without rales or wheezing

COR: RRR without murmurs or gallops

 MUSCULOSKELETAL:  no synovitis in any joints

#### Assessment/Plan
1. Undifferentiated connective tissue disease
   will cotnineu plauqenil and use prn medrol for flares
2. Drug therapy
   q 6month lab and yearly eye exam

   Other
 sleep issues - will try amitryptilene - she has at home and she will call  us regarding her
dose and we will tell her how to start it

*Electronically signed by:Winkler MD, Anne 09/01/16 11:08*

Zofran 4 mg oral tablet, 4 mg, 1 tab, By
   mouth, Q6H, PRN

#### Allergies
Ambien (Sleep walking)
Lunesta (Sleep walking)
adhesive (Rash)
Darvocet A500

#### Social History
Alcohol
   Denies
Employment/School
   Highest education level: University
      degree(s). Status: Full time.
      Occupation: Nurse
      practitioner-Neurology Office.
Home/Environment
   Marital status Married. Lives with:
      Children, Spouse.
Nutrition/Health
   Type of diet: Follows healthy diet. Caffeine
      intake amount: Denies.
Sexual
   Sexually active: Yes.
Substance Abuse
   Denies
Tobacco
   Never smoker

#### Family History
Alcohol abuse: FATHER and PGF.
Depression: MOTHER and AUNT.
Diabetes mellitus: FATHER.
Heart disease: FATHER, MGF, MGM, PGF
   and PGM.
Hypertension: MOTHER, BROTHER, MGF,
   MGM and PGF.
Liver cancer 13-JUL-2016 12:15:47<$>:
   MGF.
Stroke 13-JUL-2016 12:19:01<$>: MGF.
Tongue cancer 13-JUL-2016 12:26:32<$>:
   PGF.

## CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000001108003             DOS: 9/1/2016             Report Request ID:  76713390
Patient Name:     FLANAGAN, JAMIE SUE             DOB             Print Date/Time:   11/9/2016 07:17 CST

PAGE 16/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 249 of 550    LIN00249

## CoxHealth

### Office Clinic Notes

Result Date/Time:                          12/7/2015 08:26 CST
Performed By:                              Mace MD,J Charles (12/7/2015 08:27 CST)
Electronically Signed By:                  Mace MD,J Charles (12/7/2015 09:58 CST)

### Chief Complaint
increased low back pain
R>L leg pain

### Nurse Intake
### Nursing Intake

### Problem List/Past Medical History
**Angioedema:**
**Chronic back pain:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**

### Procedure/Surgical History
Breast reconstruction, Cesarean section, Cholecystectomy, foot surgery bilateral, spinal fusion with cage and graft, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

General Information
Onset of Symptoms: 6 months ago 12/07/15
Information Given By: Patient 12/07/15
Physicians and Specialties: Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison (neurologist) 12/07/15

Pain Information
Pain Present: Yes actual or suspected pain 12/07/15
Pain Intensity: 5 12/07/15

Pain Location: low back 12/07/15

Pain Quality: worse with sitting 12/07/15

### Medications
belladonna/caffeine/ergotamine/pentobarbit al, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
ibuprofen, 800 mg, By mouth, as needed, PRN
Limu vegetabl/fruit juic, 4 oz, By mouth, Daily
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
MS Contin 15 mg/12 hr oral tablet, extended release, 15 mg, 1 tab, By mouth, BID
MS Contin 60 mg/12 hours oral tablet, extended release, 120 mg, 2 tab, By mouth, Q12H
Phenergan 25 mg oral tablet, 25 mg, 1 tab, By mouth, Q4-6H
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Tums E-X 750 mg oral tablet, chewable, 1500 mg, 2 tab, By mouth, Q1Hr, PRN
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

### History of Present Illness
35 year old female returns in follow up of L5-S1 PLIF for LBP and R>L leg pains 4/1/2011. Slow to improve following surgery. Returns with c/o progressive LBP and Right more than left leg pains. LBP feels "like something is moving" that is worse with bending and flexing to the right. Right L5 type leg pains described as aching and burning pain.
Denies leg weakness. Bowel and bladder intact.
Treatments: ESI with Dr Cornelison- no help, Morphine 400mg daily, hydromorphone 8mg tabs- 6 per day, muscle relaxers from Dr Hopewell.

### Review of Systems
General Statement:    Denies significant change in weight, fever, chills & fatigue
Eye Statement:    Denies changes in vision.
ENT Statement:    Denies changes in hearing, sinus headaches or ENT symptoms.
Cardiovascular Statement:    Denies chest pain, palpitations, and edema
Respiratory Statement:    Denies cough, wheezing, and dyspnea
GI Statement:    Denies nausea, vomiting, food intolerance, abdominal pain, & change in bowel pattern
GU Statement:    Denies dysuria, urinary incontinence, breast lumps & vaginal discharge
Musculoskeletal Admits to:    Back pain
Skin Statement:    Denies rashes, lesions & pruritus
Neurologic Admits to:    Paresthesia,Other: numbness in right foot and leg
Psychiatric Statement:    Denies symptoms of anxiety, depression, & insomnia
Endocrine Statement:    Denies excessive thirst, excessive urination, and changes in skin or hair texture
Heme/Lymph Statement:    Denies easy bleeding and bruising
Allergy/Immunology Statement:    Denies seasonal allergies and persistent infections

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE        DOB          Print Date/Time:  11/9/2016 08:27 CST

PAGE 17/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 250 LING0250

## *CoxHealth*

### Office Clinic Notes

Sleep Statement:   Denies sleep problems

### Physical Exam

#### Vitals & Measurements
**HR:** 69  **RR:** 17  **BP:** 106 / 66  **HT:** 65 in  **WT:** 135 lb  **BMI:** 22.5
LBP, right more than left L5 pain

Except as noted above:

General:  Well developed, well nourished, in no distress
Lungs:  clear to auscultation
Heart:  regular rate and rhythm
Abdomen:  soft, non-tender, normal bowel sounds
Skin:  without rash or lesions
Extremities:  no edema, cyanosis or clubbing
Musculoskeletal:  no joint pain or swelling with fair range of motion, no pain with palpation of spine.  No pain in F/E
MS: Oriented to person, place and time. Recent and remote memory are intact. Attention span and concentration are normal. Speech is fluent, without dysarthria or aphasia. Adequate historian with normal fund of knowledge. Moods are consistent with situation, affect is euthymic. Thought process is coherent, content is without delusions or hallucinations.
Motor: Strength is 5/5 throughout for age and stature. Tone and bulk are normal, without gross atrophy, fasciculations or adventitious movements.
SENS: Intact to light touch
DTR: 2/4 throughout upper and lower extremities.
COORD: intact
GAIT: Able to heel, toe and tandem walk without significant difficulty.

### Assessment/Plan
Chronic low back pain
Lumbar radiculopathy

  Other
History of L5-S1 PLIF in 2011

Chronic low back pain and associated bilateral (R>L) leg pain, she has continued to have symptom even after 2011 surgery

Imaging with what appears to be good fusion L5-S1 but some progression of the degeneration at L4-5 with some left L4-5 foraminal stenosis.

No role for surgical intervention at this time,    she will try water exercises and exercise for core strengthening.

### Allergies
Ambien (Sleep walking)
Darvocet-N 50 (Rash)
Lunesta (Sleep walking)
adhesive (Rash)

### Social History
  Alcohol
    Denies
  Substance Abuse
    Denies
  Tobacco
    Never smoker

### Family History

### Health Maintenance
**Health Maintenance**
**Pending** (in the next year)
OverDue
Influenza Vaccine due 09/01/15 and every 1 yr
Due
Cervical Cancer Screening due 12/07/15 and every 5 yr
HIV AB due 12/07/15 One-time only
Pertussis Vaccine due 12/07/15 One-time only
Tetanus/TD Vaccine due 12/07/15 and every 10 yr
**Satisfied** (in the past 1 year)
There are no satisfied recommendations within the defined date range

### Lab Results

### POC Lab Results
No qualifying data available.

### Diagnostic Results

IMPRESSION LUMBAR CT SPINE:

1. PLIF L5-S1 without complicating feature and expected postoperative change.

2. Degenerative disk disease and spondylosis L4-5 with facet joint arthropathy and disk bulge/protrusion left subarticular and extraforaminal zone. There is contact with the exiting left L4 nerve root but no definite impingement. [1]

IMPRESSION: MR lumbar

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619              DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE          DOB:            Print Date/Time:  11/9/2016 08:27 CST

PAGE 18/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 251 of 550   LIN00251

## *CoxHealth*

> ### *Office Clinic Notes*

1. PLIF L5-S1 without complicating feature.

2. L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with annular fissure. There is contact with the exiting left L4 nerve root. [2]

**Other**

[1]CT Lumbar Spine wo Contrast Routine; Marcum , Laura L 10/15/2015 09:47
[2]MR Lumbar w wo Contrast; Taylor , Jennifer A 10/15/2015 08:56

*Electronically signed by:Mace MD, J Charles 12/07/15 09:58*

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                     DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                DOB                     Print Date/Time:   11/9/2016 08:27 CST

PAGE 19/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 252 of 550
LIN00252

*CoxHealth*

Springfield Neurological and Spine Institute
3801 S National Ave
Ste 700
Springfield, MO 65807-
(111) 111-1111

Patient Name:   FLANAGAN, JAMIE SUE                      Location:  SNSI; Exam 2
Account Number: AMB000000289619
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB ▓▓▓▓     Age:  36 years    Female     Admit Date:  12/7/2015          Discharge Date:   12/22/2015

### *Allergies*

| Substance | Allergy Type | Allergy Category | Severity | Reaction Status | Reaction Symptom | Recorded On Behalf Of | Updated Date/Time | Updated By | Reviewed By | Reviewed Date/Time |
|---|---|---|---|---|---|---|---|---|---|---|
| Lunesta | Allergy | Drug | Moderate | Active | Sleep walking | McCroskey RN, Darla L | 5/10/2013 10:33 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| Darvocet-N 50 | Allergy | Drug | Moderate | Canceled | Rash | McCroskey RN, Darla L | 1/28/2016 10:13 CST | Moore CMA,Lisa E | Moore CMA,Lisa E | 1/28/2016 10:13 CST |
| Darvocet A500 | Allergy | Drug | | Active | | Godown , April | 6/11/2016 19:20 CDT | Godown , April | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| Ambien | Allergy | Drug | Moderate | Active | Sleep walking | McCroskey RN, Darla L | 5/10/2013 10:33 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| adhesive | Allergy | Drug | Moderate | Active | Rash | McCroskey RN, Darla L | 5/10/2013 10:34 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |

**CONFIDENTIAL PATIENT INFORMATION**
UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619          DOS: 12/7/2015        Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE       DOB ▓▓▓▓         Print Date/Time:   11/9/2016 08:27 CST

PAGE 20/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43
Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 253 of 550
LIN00253

## *CoxHealth*

> ### *Powerform*

Result Date/Time:                          12/7/2015 09:10 CST
Performed By:                              Hernandez MA,Lauren (12/7/2015 09:10 CST)
Electronically Signed By:                  Hernandez MA,Lauren (12/7/2015 09:10 CST)

### Adult Ambulatory Care Intake and History Entered On: 12/7/2015 9:19
### Performed On: 12/7/2015 9:10 by Hernandez MA, Lauren

**General Info**
Chief Complaint Details :  increased low back pain
Onset of Symptoms :  6 months ago
Information Given By :  Patient
Physicians and Specialties :  Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison (neurologist)

Hernandez MA, Lauren - 12/7/2015 9:10

**Vital Signs**
Pulse Rate :  69
Respiratory Rate :  17
BP Systolic :  106
BP Diastolic :  66
BP Location :  Arm, left
MAP :  79
Pain Present :  Yes actual or suspected pain
Pain Intensity :  5
Location :  low back
Quality :  worse with sitting
Weight (lb) (Clinical) :  135 lb(Converted to: 61 kg)
Height (inches) :  65 in(Converted to: 5 ft 5 in, 165.10 cm)
BMI (Clinical) :  22.5 kg/m2

Hernandez MA, Lauren - 12/7/2015 9:10

**Allergy**

(As Of: 12/7/2015 09:19:45 CST)

Allergies (Active)

| | |
|---|---|
| adhesive | Estimated Onset Date:  Unspecified ; Reactions:  Rash ; Created By:  McCroskey RN, Darla L; Reaction Status:  Active ;  Category:  Drug ; Substance:  adhesive ; Type:  Allergy ;  Severity:  Moderate ; Updated By:  McCroskey RN, Darla L; Source:  Patient ; Reviewed Date:  12/7/2015 9:14 |
| Ambien | Estimated Onset Date:  Unspecified ; Reactions:  Sleep walking ; Created By:  McCroskey RN, Darla L; Reaction Status:  Active ; Category:  Drug ; Substance:  Ambien ; Type:  Allergy ; Severity:  Moderate ; Updated By:  McCroskey RN, Darla L; Source:  Patient ; Reviewed Date:  12/7/2015 9:14 |
| Darvocet-N 50 | Estimated Onset Date:  Unspecified ; Reactions:  Rash ; Created By:  McCroskey RN, Darla L; Reaction Status:  Active ;  Category:  Drug ; Substance:  Darvocet-N 50 ; Type:  Allergy ;  Severity:  Moderate ; Updated By:  McCroskey RN, Darla L; Source:  Patient Survey ; Reviewed Date:  12/7/2015 9:14 |
| Lunesta | Estimated Onset Date:  Unspecified ; Reactions:  Sleep walking ; Created By:  McCroskey RN, Darla L; Reaction Status:  Active ; Category:  Drug ; Substance:  Lunesta ; Type: |

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                 DOB:              Print Date/Time:  11/9/2016 08:27 CST

PAGE 21/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 254 of 550

LIN00254

## CoxHealth

### Powerform

Allergy ; Severity:  Moderate ; Updated By:  McCroskey RN,
Darla L; Source:  Patient ; Reviewed Date:  12/7/2015 9:14

**Medication History**
<u>Medication List</u>

(As Of: 12/7/2015 09:19:45 CST)

Home Meds

| | |
|---|---|
| morphine | : morphine ; Status:  Documented ; Ordered As Mnemonic: morphine 100 mg/24 hours oral capsule, extended release ; Simple Display Line:  200 mg, 2 cap, By mouth, Q12H, 0 Refill(s) ; Catalog Code:  morphine ; Order Dt/Tm:  12/7/2015 09:17:22 |
| Special Drug Order-MED | : Special Drug Order-MED ; Status:  Deleted ; Ordered As Mnemonic:  Limu vegetabl/fruit juic ; Simple Display Line:  4 oz, By mouth, Daily ; Catalog Code:  Special Drug Order-MED ; Order Dt/Tm:  5/10/2013 10:32:16 |
| ibuprofen | : ibuprofen ; Status:  Documented ; Ordered As Mnemonic: ibuprofen ; Simple Display Line:  800 mg, By mouth, as needed, stopped taking 4-29, PRN: as needed for pain ; Catalog Code: ibuprofen ; Order Dt/Tm:  5/10/2013 10:25:05 |
| calcium carbonate | : calcium carbonate ; Status:  Deleted ; Ordered As Mnemonic:  Tums E-X 750 mg oral tablet, chewable ; Simple Display Line:  1,500 mg, 2 tab, By mouth, Q1Hr, 480 tab, PRN: for control of stomach acid ; Catalog Code:  calcium carbonate ; Order Dt/Tm:  5/10/2013 10:24:42 |
| pantoprazole | : pantoprazole ; Status:  Documented ; Ordered As Mnemonic:  Protonix ; Simple Display Line:  40 mg, By mouth, as needed, PRN: as needed for acid reflux ; Catalog Code:  pantoprazole ; Order Dt/Tm:  5/10/2013 10:23:55 |
| alprazolam | : alprazolam ; Status:  Documented ; Ordered As Mnemonic: Xanax ; Simple Display Line:  0.25 mg, By mouth, at bedtime, PRN: as needed for sleep ; Catalog Code:  ALPRAZolam ; Order Dt/Tm:  5/10/2013 10:23:36 |
| topiramate | : topiramate ; Status:  Documented ; Ordered As Mnemonic: Topamax 50 mg oral tablet ; Simple Display Line:  50 mg, 1 tab, By mouth, BID ; Catalog Code:  topiramate ; Order Dt/Tm: 5/10/2013 10:22:53 |
| bupropion | : bupropion ; Status:  Documented ; Ordered As Mnemonic: Wellbutrin SR 150 mg/12 hours oral tablet, extended release ; Simple Display Line:  150 mg, 1 tab, By mouth, BID, 180 tab ; Catalog Code:  bupropion ; Order Dt/Tm:  5/10/2013 10:22:41 |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619               DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE            DOB▮▮▮▮▮▮        Print Date/Time:  11/9/2016 08:27 CST

PAGE 22/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 255 of 550     LIN00255

## *CoxHealth*

.......................................................................................................................................................
: *Powerform*
.......................................................................................................................................................

hydroxychloroquine : hydroxychloroquine ; Status: Documented ; Ordered As Mnemonic: Plaquenil Sulfate 200 mg oral tablet ; Simple Display Line: 400 mg, 2 tab, By mouth, at bedtime, 180 tab ; Catalog Code: hydroxychloroquine ; Order Dt/Tm: 5/10/2013 10:22:20

ondansetron : ondansetron ; Status: Documented ; Ordered As Mnemonic: Zofran 4 mg oral tablet ; Simple Display Line: 4 mg, 1 tab, By mouth, Q6H, PRN: as needed for nausea/vomiting ; Catalog Code: ondansetron ; Order Dt/Tm: 5/10/2013 10:22:02

promethazine : promethazine ; Status: Deleted ; Ordered As Mnemonic: Phenergan 25 mg oral tablet ; Simple Display Line: 25 mg, 1 tab, By mouth, Q4-6H, as needed for nausea and vomiting ; Catalog Code: promethazine ; Order Dt/Tm: 5/10/2013 10:21:47

atropine/hyoscyamine/PB/scop : atropine/hyoscyamine/PB/scopolamine ; Status: olamine Documented ; Ordered As Mnemonic: Donnatal ; Simple Display Line: 1 tab, By mouth, as needed, PRN: as needed for irritable bowel symptoms ; Catalog Code: atropine/hyoscyamine/PB/scopolamine ; Order Dt/Tm: 5/10/2013 10:21:32

belladonna/caffeine/ergotamine : belladonna/caffeine/ergotamine/pentobarbital ; Status: /pentobarbital Documented ; Ordered As Mnemonic: belladonna/caffeine/ergotamine/pentobarbital ; Simple Display Line: 1 tab, By mouth, as needed, PRN: as needed for stomach cramps ; Catalog Code: belladonna/caffeine/ergotamine/pentobarb ; Order Dt/Tm: 5/10/2013 10:21:07

polyethylene glycol 3350 : polyethylene glycol 3350 (Miralax) ; Status: Documented ; (Miralax) Ordered As Mnemonic: MiraLax oral powder for reconstitution ; Simple Display Line: 17 g, By mouth, at bedtime, dissolve in water before taking, 255 g ; Catalog Code: polyethylene glycol 3350 (Miralax) ; Order Dt/Tm: 5/10/2013 10:20:30

methocarbamol : methocarbamol ; Status: Documented ; Ordered As Mnemonic: Robaxin-750 oral tablet ; Simple Display Line: 750 mg, 1 tab, By mouth, Q8H, PRN: as needed for pain ; Catalog Code: methocarbamol ; Order Dt/Tm: 5/10/2013 10:19:45

carisoprodol : carisoprodol ; Status: Documented ; Ordered As Mnemonic: Soma ; Simple Display Line: 350 mg, By mouth, Q8H, PRN: as needed for pain ; Catalog Code: carisoprodol ; Order Dt/Tm: 5/10/2013 10:19:23

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE            DOB:              Print Date/Time:  11/9/2016 08:27 CST

## *CoxHealth*

*Powerform*

| | |
|---|---|
| HYDROmorphone | : HYDROmorphone ; Status: Documented ; Ordered As Mnemonic: Dilaudid 4 mg oral tablet ; Simple Display Line: 4 mg, 1 tab, By mouth, as needed, PRN: as needed for pain ; Catalog Code: HYDROmorphone ; Order Dt/Tm: 5/10/2013 10:18:59 |
| morphine | : morphine ; Status: Deleted ; Ordered As Mnemonic: MS Contin 15 mg/12 hr oral tablet, extended release ; Simple Display Line: 15 mg, 1 tab, By mouth, BID ; Catalog Code: morphine ; Order Dt/Tm: 5/10/2013 10:18:31 |
| morphine | : morphine ; Status: Deleted ; Ordered As Mnemonic: MS Contin 60 mg/12 hours oral tablet, extended release ; Simple Display Line: 120 mg, 2 tab, By mouth, Q12H ; Catalog Code: morphine ; Order Dt/Tm: 5/10/2013 10:18:13 |

**Social History**
Social History

(As Of: 12/7/2015 09:19:45 CST)

Tobacco:

Never smoker   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

Alcohol:

Denies   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

Substance Abuse:

Denies   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

**Procedure History**

Procedure History

(As Of: 12/7/2015 09:19:45 CST)

Anesthesia Minutes:  0 ; Procedure Name:  Cesarean section ;
Procedure Minutes:  0 ; Last Reviewed Dt/Tm:  12/7/2015
09:16:15 CST

Anesthesia Minutes:  0 ; Procedure Name:  Breast
reconstruction ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm:
12/7/2015 09:16:15 CST

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                  DOB          Print Date/Time:  11/9/2016 08:27 CST

### *CoxHealth*

---
### *Powerform*
---

Anesthesia Minutes:   0 ; Procedure Name:   spinal fusion with cage and graft ; Procedure Minutes:   0 ; Last Reviewed Dt/Tm: 12/7/2015 09:16:15 CST

Anesthesia Minutes:   0 ; Procedure Name:   TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy ; Procedure Minutes:   0 ; Last Reviewed Dt/Tm:   12/7/2015 09:16:15 CST

Anesthesia Minutes:   0 ; Procedure Name:   foot surgery bilateral ; Procedure Minutes:   0 ; Last Reviewed Dt/Tm: 12/7/2015 09:16:15 CST

Anesthesia Minutes:   0 ; Procedure Name:   Cholecystectomy ; Procedure Minutes:   0 ; Last Reviewed Dt/Tm:   12/7/2015 09:16:15 CST

**Family History**
Family History

(As Of: 12/7/2015 09:19:46 CST)

**ROS**
ROS General Statement :   Denies significant change in weight, fever, chills & fatigue
ROS Eye Statement :   Denies changes in vision.
ROS ENT Statement :   Denies changes in hearing, sinus headaches or ENT symptoms.
ROS Cardiovascular Statement :   Denies chest pain, palpitations, and edema
ROS Respiratory Statement :   Denies cough, wheezing, and dyspnea
ROS GI Statement :   Denies nausea, vomiting, food intolerance, abdominal pain, & change in bowel pattern
ROS Genitourinary Statement :   Denies dysuria, urinary incontinence, breast lumps & vaginal discharge
ROS Musculoskeletal Admits To :   Back pain
ROS Skin Statement :   Denies rashes, lesions & pruritus
ROS Neurologic Admits To :   Paresthesia, Other: numbness in right foot and leg
ROS Psychiatric Statement :   Denies symptoms of anxiety, depression, & insomnia
ROS Endocrine Statement :   Denies excessive thirst, excessive urination, and changes in skin or hair texture
ROS Heme/Lymph Statement :   Denies easy bleeding and bruising
ROS Allergy/Immunology Statement :   Denies seasonal allergies and persistent infections
Sleep Statement :   Denies sleep problems

Hernandez MA, Lauren - 12/7/2015 9:10

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:   76717755
Patient Name:    FLANAGAN, JAMIE SUE                DOB:             Print Date/Time:   11/9/2016 08:27 CST

PAGE 25/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 258 of 550   LIN00258

***CoxHealth***

| *Visit Summary* |
| --- |

Electronically Signed By:

**Visit Summary**

Visit Summary | Springfield Neurological and Spine Institute

# JAMIE FLANAGAN

Race: White | Ethnicity: Not Hispanic or Latino | Gender: Female | DOB: ▮▮▮▮▮▮▮ Language: eng

Patient IDs: 5209675

# Table of Contents

- Encounter
- Visit
- Reason for Visit
- Vital Signs
- Problem List
- Allergies, Adverse Reactions, Alerts
- Medications
- Results
- Medications Administered During Your Visit
- Immunizations
- Encounter Procedures
- Social History
- Assessment and Plan
- Instructions

Back to TopEncounter

12/7/15

Springfield Neurological and Spine Institute 3801 S National Ave Ste 700 Springfield, MO 65807- USA

Discharge Diagnosis: Chronic low back pain

Discharge Diagnosis: Lumbar radiculopathy

Attending Physician: Mace MD, J Charles

Referring Physician: Winkler MD, Anne

Back to TopVisit

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                     DOS: 12/7/2015          Report Request ID:  76717755

Patient Name:    FLANAGAN, JAMIE SUE                 DOB ▮▮▮▮▮     Print Date/Time:  11/9/2016 08:27 CST

PAGE 26/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 259 of 550    LIN00259

## *CoxHealth*

### Visit Summary

| Visit Date | Reason for Visit | Provider |
|---|---|---|
| 12/7/15 | Follow Up | Mace MD, J Charles |

Back to TopReason for Visit

Follow Up

Back to TopVital Signs

12/7/15

| | | |
|---|---|---|
| Pulse Rate | 69 | |
| Respiratory Rate | 17 | |
| Blood Pressure | 106/66 | |
| Height (inches) (Clinical) | 65 in | |
| Weight (lb) (Clinical) | 135 lb | |
| Weight (kg) (Clinical) | 61.36 kg | |
| BMI (Clinical) | 22.5 kg/m2 | |

Back to TopProblem List

Angioedema | Anxiety and depression | Chronic back pain | GERD (gastroesophageal reflux disease)

Back to TopAllergies, Adverse Reactions, Alerts

adhesive (Rash) | Ambien (Sleep walking) | Darvocet-N 50 (Rash) | Lunesta (Sleep walking)

Back to Top
Medications

alprazolam (Xanax)
0.25 mg, By mouth, at bedtime, As Needed, as needed for sleep, Refills: 0
atropine/hyoscyamine/PB/scopolamine (Donnatal)

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                DOB                     Print Date/Time:  11/9/2016 08:27 CST

PAGE 27/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH      Document 33-1      Filed 05/15/18      Page 260 of 550
LIN00260

## *CoxHealth*

### *Visit Summary*

1 tab, By mouth, as needed, As Needed, as needed for irritable bowel symptoms, Refills: 0

belladonna/caffeine/ergotamine/pentobarbital
1 tab, By mouth, as needed, As Needed, as needed for stomach cramps, Refills: 0

bupropion (Wellbutrin SR 150 mg/12 hours oral tablet, extended release)
1 tab, By mouth, twice daily, Refills: 0

carisoprodol (Soma)
350 mg, By mouth, every 8 hours, As Needed, as needed for pain, Refills: 0

HYDROmorphone (Dilaudid 4 mg oral tablet)
1 tab, By mouth, as needed, As Needed, as needed for pain, Refills: 0

hydroxychloroquine (Plaquenil Sulfate 200 mg oral tablet)
2 tab, By mouth, at bedtime, Refills: 0

ibuprofen
800 mg, By mouth, as needed, stopped taking 4-29, As Needed, as needed for pain, Refills: 0

methocarbamol (Robaxin-750 oral tablet)
1 tab, By mouth, every 8 hours, As Needed, as needed for pain, Refills: 0

morphine (morphine 100 mg/24 hours oral capsule, extended release)
2 cap, By mouth, every 12 hours, Refills: 0

ondansetron (Zofran 4 mg oral tablet)
1 tab, By mouth, every 6 hours, As Needed, as needed for nausea/vomiting, Refills: 0

pantoprazole (Protonix)
40 mg, By mouth, as needed, As Needed, as needed for acid reflux, Refills: 0

polyethylene glycol 3350 (Miralax) (MiraLax oral powder for reconstitution)
17 g, By mouth, at bedtime, dissolve in water before taking, Refills: 0

topiramate (Topamax 50 mg oral tablet)
1 tab, By mouth, twice daily, Refills: 0
Back to TopResults


No data available for this section

Back to TopMedications Administered During Your Visit


### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                     DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                 DOB:               Print Date/Time:  11/9/2016 08:27 CST

PAGE 28/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 261 of 550 LIN00261

4178897096          Law Offices of Rick S. Vasquez                    09:36:10 a.m.     11-30-2016       29 /35

EXHIBIT A

## *CoxHealth*

### *Visit Summary*

No data available for this section

Back to TopImmunizations

No data available for this section

Back to TopEncounter Procedures

No data available for this section

Back to TopSocial History

| Social History Type | Response |
|---|---|
| Smoking Status | Never smoker |

Back to TopAssessment and Plan
Extracted from:
Title: Office Visit - Comprehensive     Author: Mace MD, J Charles          Date: 12/7/15
Assessment/Plan
Chronic low back pain
Lumbar radiculopathy
Other
History of L5-S1 PLIF in 2011

Chronic low back pain and associated bilateral (R>L) leg pain, she has continued to have symptom even after 2011 surgery

Imaging with what appears to be good fusion L5-S1 but some progression of the degeneration at L4-5 with some left L4-5 foraminal stenosis.

No role for surgical intervention at this time, she will try water exercises and exercise for core strengthening.

Future Appointments

Appointment Date: 05/09/2016 09:15:00 am
Scheduled Provider: Newbold MD, Steve
Location: Fam Med Monett
Appointment Type: Established Patient

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE       DOB:              Print Date/Time:  11/9/2016 08:27 CST

PAGE 29/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 262 of 550     LIN00262

EXHIBIT A

*CoxHealth*

*Visit Summary*

Future Scheduled Tests

**Referral:**

- Referral Allergy/Immunology 11/16/15 3:00 AM

Referrals to Other Providers

Referred by: Newbold MD, Steve

Back to TopInstructions

No data available for this section

We invite you to access your health record at www.CoxHealth.com/Express. Create your account and use your Patient ID at the top of this document as your access code to Connect to Your Chart. If you wish to connect to a patient under the age of 18, please ask the front desk for assistance.

Document Created
December 9, 2015

Encounter Date
From December 7, 2015

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015              Report Request ID: 76717755
Patient Name:    FLANAGAN, JAMIE SUE                DOB███████  Print Date/Time: 11/9/2016 08:27 CST

## CoxHealth

### Clinical Diagnosis

**Diagnosis: Chronic low back pain**
**Last Reviewed Date:** 12/7/2015              **Responsible Provider:** Mace MD, J Charles
**Status:** Active

**Diagnosis: Lumbar radiculopathy**
**Last Reviewed Date:** 12/7/2015              **Responsible Provider:** Mace MD, J Charles
**Status:** Active

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                        DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                   DOB              Print Date/Time:   11/9/2016 08:27 CST

PAGE 31/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 264 of 550   LIN00264

## CoxHealth

### Medications

#### Documented medications

Order: **morphine (morphine 100 mg/24 hours oral capsule,extended release)**
Order Date/Time: 12/7/2015 09:17 CST
Order Status: Documented
Ordering Physician:                                        Consulting Physician:
Entered By: Hernandez MA,Lauren on 12/7/2015 09:17 CST
Order Details: 200 mg, 2 cap, By mouth, Q12H, 0, 0, Substitution Permitted
Order Comment:
Action Type: Document          Action Date/Time: 12/7/2015 09:17 CST    Action Personnel: Hernandez MA,Lauren
Responsible Provider:                                        Communication Type:
Order Details: 200 mg, 2 cap, By mouth, Q12H, 0, 0, Substitution Permitted
Review Information:
Doctor Cosign: Not Required

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                 DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE            DOB ▮▮▮▮▮  Print Date/Time:  11/9/2016 08:27 CST

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 265 of 550  LIN00265

## *CoxHealth*

### *All Specialty Flowsheet*

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
| --- | --- | --- | --- | --- |
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | - | in | |
| Weight (kg) (Clinical) | - | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | - | lb | |
| MAP | 79 | - | | |
| Respiratory Rate | 17 | - | | |
| BP Location | Arm, left | - | | |
| Pain Quality | worse with sitting | - | | |
| Pain Location | low back | - | | |
| Pain Intensity | 5 | - | | [5] |
| Pulse Rate | 69 | - | | |
| BP Systolic | 106 | - | | |
| BP Diastolic | 66 | - | | |
| Chief Complaint Details | increased low back pain | - | | |
| Physicians and Specialties | See Below T1 | - | | |
| Information Given By | Patient | - | | |
| BMI (Clinical) | 22.5 | - | kg/m2 | |

Textual Results

T1:   12/7/2015 09:10 CST (Physicians and Specialties)
Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison
(neurologist)

### *Measurement*

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
| --- | --- | --- | --- | --- |
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | - | in | |
| Weight (kg) (Clinical) | - | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | - | lb | |
| BMI (Clinical) | 22.5 | - | kg/m2 | |
| Pulse Rate | 69 | - | | |
| BP Systolic | 106 | - | | |
| BP Diastolic | 66 | - | | |
| MAP | 79 | - | | |
| Respiratory Rate | 17 | - | | |
| BP Location | Arm, left | - | | |
| Pain Intensity | 5 | - | | [5] |
| Pain Location | low back | - | | |
| Pain Quality | worse with sitting | - | | |

### **CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

| | | |
| --- | --- | --- |
| Account Number: AMB000000289619 | DOS: 12/7/2015 | Report Request ID:   76717755 |
| Patient Name:   FLANAGAN, JAMIE SUE | DOB: █████ | Print Date/Time:   11/9/2016 08:27 CST |

PAGE 33/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 266 of 550    LIN00266

## CoxHealth

### Measurements

#### Measurements

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   SYSTEM

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Height | 65.00 | in | |
| Weight | 61.36 | kg | |

#### Measurements(Clinical)

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
|---|---|---|---|---|
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | - | in | |
| Weight (kg) (Clinical) | - | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | - | lb | |
| BMI (Clinical) | 22.5 | - | kg/m2 | |

### Pain

#### Pain/Aldrete/Sedation Score

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   Hernandez MA,Lauren

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Pain Intensity | 5 | | [5] |
| Pain Location | low back | | |
| Pain Quality | worse with sitting | | |

### Vital Signs

#### Vital Sign Documentation

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   Hernandez MA,Lauren

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Pulse Rate | 69 | | |
| BP Systolic | 106 | | |
| BP Diastolic | 66 | | |
| MAP | 79 | | |
| Respiratory Rate | 17 | | |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE          DOB:          Print Date/Time:  11/9/2016 08:27 CST

PAGE 34/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 267 of 550    LIN00267

EXHIBIT A

*CoxHealth*

| Vital Signs |
| --- |

| Vital Sign Documentation |
| --- |

Recorded Date      12/7/2015
Recorded Time      09:10 CST
Recorded By    Hernandez MA,Lauren

| Procedure | Units | Reference Range |
| --- | --- | --- |
| BP Location                Arm, left | | |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE          DOB          Print Date/Time:  11/9/2016 08:27 CST

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 268 of 550
LIN00268



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri  65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

November 29, 2016

***VIA FACSIMILE: 402-361-1460***

Joseph Jackson, Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

> *Re:  Claimant: Jamie Flanagan*
> *Policyholder: Lester E. Cox Medical Center*
> *Policy# 00001015732600000*
> *Claim# 1130226196*

Dear Mr. Jackson:

I would note that there is one provider that is still processing, ie Dr. Steven Newbold. We are requesting additional time to receive and submit Dr. Newbold's records.  However, I am enclosing the following for your review:

1. Donald Hopewell, M.D.; 12/09/15-06/28/16;
2. Crystal Powell, PA for Damon Thomas, M.D.; 01/28/16;
3. Anne Winkler, M.D.; 06/16/16-09/01/16; and
4. J. Charles Mace, M.D.; 12/07/15.

To date our office has not received all of the requested medical records regarding Mrs. Flanagan's appeal.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
cc: Jamie Flanagan

PAGE 1/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 269 of 550    LIN00269

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB ███████ Sex: F
                               Enc. Date: 12/09/15

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 12/9/2015 12:19 PM**                    Version 1 of 1

Author: Hopewell, Donald K, MD      Service: (none)              Author Type: Physician
Filed: 12/9/2015 12:28 PM           Note Time: 12/9/2015 12:19 PM   Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 12/9/2015 12:28 PM

## Call Documentation

**Hopewell, Donald K, MD at 12/9/2015 12:19 PM**

Status: Signed

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN          FLANAGAN, JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB ▮▮▮▮▮▮  Sex: F
                               Enc. Date: 12/09/15

## Call Documentation (continued)

**Hopewell, Donald K, MD at 12/9/2015 12:19 PM (continued)**

### End of Encounter

JOPL HEALTH INFORMATION        FLANAGAN, JAMIE S
MANAGEMENT                     MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

PAGE 3/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH      Document 33-1      Filed 05/15/18      Page 271 of 550

LIN00271

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB: ████ Sex: F
                               Enc. Date: 02/29/16

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 2/29/2016 10:58 AM**                              Version 1 of 1

Author: Hopewell, Donald K, MD     Service: (none)                  Author Type: Physician
Filed: 2/29/2016 11:03 AM          Note Time: 2/29/2016 10:58 AM    Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

Patient is a 35-year-old returns for followup of chronic pain related to lumbar post laminectomy syndrome, lumbar spondylolisthesis, and inflammatory arthropathy related to mixed connective tissue disease. The patient overall is reasonably stable and told me today she feels that she is developing more acceptance of her limitations and the fact that she has to deal with pain on a daily basis. She continues to have more problems at night and she does during the day but does complain about daytime hypersomnolence and he time she is not physically active. This is particularly a problem for her when she is driving. She has cut down on her driving considerably because of this. Her pain continues to be lumbar with occasional radiation into the lateral aspect of the right leg, right for leg, and into the heel and the foot on the right side. Because of insurance changes we're going to change her narcotic regimen in terms of her breakthrough pain medication from hydromorphone to oxycodone.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented intercurrent records. Neurologic examination on this date remains normal.

This is a patient with chronic pain related to her spine disease that is at least reasonably controlled on her current regimen. We'll change her to oxycodone 30 mg tablets every 6 hours as needed for the breakthrough pain. We'll continue the morphine unchanged. Because of the hypersomnolence issues I suggest we get a sleep study to see whether this is all medication effect or there may be some other issue that can be addressed more specifically. She scheduled for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 2/29/2016 11:03 AM

## Call Documentation

**Hopewell, Donald K, MD at 2/29/2016 10:58 AM**
Status: Signed

Patient is a 35-year-old returns for followup of chronic pain related to lumbar post laminectomy syndrome, lumbar spondylolisthesis, and inflammatory arthropathy related to mixed connective tissue disease. The patient overall is reasonably stable and told me today she feels that she is developing more acceptance of her limitations and the fact that she has to deal with pain on a daily basis. She continues to have more problems at night and she does during the day but does complain about daytime hypersomnolence and he time she is not physically active. This is particularly a problem for her when she is driving. She has cut down on her driving considerably because of this. Her pain continues to be lumbar with occasional radiation into the lateral aspect

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB: ▮▮▮▮ Sex: F
                               Enc. Date: 02/29/16

## Call Documentation (continued)

**Hopewell, Donald K, MD at 2/29/2016 10:58 AM (continued)**

of the right leg, right for leg, and into the heel and the foot on the right side. Because of insurance changes we're going to change her narcotic regimen in terms of her breakthrough pain medication from hydromorphone to oxycodone.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented intercurrent records. Neurologic examination on this date remains normal.

This is a patient with chronic pain related to her spine disease that is at least reasonably controlled on her current regimen. We'll change her to oxycodone 30 mg tablets every 6 hours as needed for the breakthrough pain. We'll continue the morphine unchanged. Because of the hypersomnolence issues I suggest we get a sleep study to see whether this is all medication effect or there may be some other issue that can be addressed more specifically. She scheduled for routine followup in 3 months.

DK Hopewell M.D.

## End of Encounter

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN                FLANAGAN,JAMIE S
100 Mercy Way                        MRN: E140238803
Joplin MO 64804-4524                 DOB: ■■■■■■ Sex: F
                                     Enc. Date: 05/23/16

### Call Documentation

**Newman, Laura C, LPN at 5/23/2016 9:29 AM**
    Status: Signed

Have returned patients call multiple times without any response from her.

### End of Encounter

JOPL HEALTH INFORMATION              FLANAGAN,JAMIE S
MANAGEMENT                           MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

| MERCY HOSPITAL JOPLIN | FLANAGAN,JAMIE S |
|---|---|
| 100 Mercy Way | MRN: E140238803 |
| Joplin MO 64804-4524 | DOB ▮▮▮▮ Sex: F |
| | Enc. Date: 05/23/16 |

## Call Documentation

**Newman, Laura C, LPN at 5/23/2016  9:56 AM**

Status:  Signed

Have called patient several times regarding call on 5/19, she has not returned my calls.

**Newman, Laura C, LPN at 5/23/2016  9:56 AM**

Status:  Signed

---- Message from Michelle Darr sent at 5/19/2016  2:47 PM CDT ----
Hey Chris,

I had a voicemail from Jamie. She has an upcoming appt,but has been having leg and hip pain for the last 2-3 weeks. Now she is having some neck and shoulder issues. She didn't know if she possibly needs a steroid and doesn't know if she will be able to make it through to her appt.

Thanks

Could you please call her?

459-5879

## End of Encounter

| JOPL HEALTH INFORMATION | FLANAGAN,JAMIE S |
|---|---|
| MANAGEMENT | MRN: E140238803 |
| 100 Mercy Way | |

Printed by 95369 at 11/14/16 10:59 AM

PAGE 7/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 275 of 550 LIN00275

MERCY HOSPITAL JOPLIN          FLANAGAN, JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB          Sex: F
                               Enc. Date: 05/26/16

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 5/26/2016 12:27 PM**                    Version 1 of 1

Author: Hopewell, Donald K, MD     Service: (none)                Author Type: Physician
Filed: 5/26/2016 12:33 PM          Note Time: 5/26/2016 12:27 PM   Status: Signed
Editor: Hopewell, Donald K, MD (Physician)

The patient is a 36-year-old who returns for followup of lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and episodic problems with inflammatory arthropathy associated with mixed connective tissue disease. Her low back pain continues to be lumbar with occasional radiation down the lateral aspect of the right leg into the foot. Over the last couple of months her pain has changed somewhat in character. There was no precipitating factor for this and it especially bothers her at night it tends to wax and wane with a couple of days where it is much worse than a couple of days where it is better. She has a difficult time describing the uncomfortable sensation in the legs. It is somewhere between her myalgia symptom and a feeling of intense fatigue. She says because of this sensation she basically does not want to get up and move around although there is no new weakness or sensory symptomatology. She has been using increased numbers of her when necessary pain medication because of this discomfort. She tells me that she has not had her sleep study done yet do to insurance issues. She continues to have problems sleeping through the night and continues with daytime hypersomnolence as well.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal but the patient does have muscle tenderness in the lower extremities particularly in the calves bilaterally.

This is a patient who has been stable in terms of her pain issues until the last couple of months. I told her that this sounds more like a flare of her connective tissue process rather than her chronic neuropathic pain associated with her back issues. She does tell me that she's also had some problems with hand swelling and hand joint swelling as well. We discussed the possibility of using a course of dexamethasone. I have strongly encouraged her to followup with her rheumatologist and she tells me that she has a office visit scheduled in 2 weeks. I told her to check with rheumatology to make sure that using steroids would not alter anything that they would want to do prior to that visit and if not that we would do a five-day course of dexamethasone. We will continue her pain medications otherwise unchanged and she'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 5/26/2016 12:33 PM

## Call Documentation

**Hopewell, Donald K, MD at 5/26/2016 12:27 PM**

Status: Signed

JOPL HEALTH INFORMATION          FLANAGAN, JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

MERCY HOSPITAL JOPLIN  
100 Mercy Way  
Joplin MO 64804-4524  

FLANAGAN,JAMIE S  
MRN: E140238803  
DOE ▮▮▮▮▮ Sex: F  
Enc. Date: 05/26/16  

## Call Documentation (continued)

### Hopewell, Donald K, MD at 5/26/2016 12:27 PM (continued)

The patient is a 36-year-old who returns for followup of lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and episodic problems with inflammatory arthropathy associated with mixed connective tissue disease. Her low back pain continues to be lumbar with occasional radiation down the lateral aspect of the right leg into the foot. Over the last couple of months her pain has changed somewhat in character. There was no precipitating factor for this and it especially bothers her at night it tends to wax and wane with a couple of days where it is much worse than a couple of days where it is better. She has a difficult time describing the uncomfortable sensation in the legs. It is somewhere between her myalgia symptom and a feeling of intense fatigue. She says because of this sensation she basically does not want to get up and move around although there is no new weakness or sensory symptomatology. She has been using increased numbers of her when necessary pain medication because of this discomfort. She tells me that she has not had her sleep study done yet do to insurance issues. She continues to have problems sleeping through the night and continues with daytime hypersomnolence as well.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal but the patient does have muscle tenderness in the lower extremities particularly in the calves bilaterally.

This is a patient who has been stable in terms of her pain issues until the last couple of months. I told her that this sounds more like a flare of her connective tissue process rather than her chronic neuropathic pain associated with her back issues. She does tell me that she's also had some problems with hand swelling and hand joint swelling as well. We discussed the possibility of using a course of dexamethasone. I have strongly encouraged her to followup with her rheumatologist and she tells me that she has a office visit scheduled in 2 weeks. I told her to check with rheumatology to make sure that using steroids would not alter anything that they would want to do prior to that visit and if not that we would do a five-day course of dexamethasone. We will continue her pain medications otherwise unchanged and she'll return for routine followup in 3 months.

DK Hopewell M.D.

## End of Encounter

JOPL HEALTH INFORMATION  
MANAGEMENT  
100 Mercy Way  

FLANAGAN,JAMIE S  
MRN: E140238803  

Printed by 95369 at 11/14/16 10:59 AM

PAGE 9/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 277  LIN00277

MERCY HOSPITAL JOPLIN          FLANAGAN,JAMIE S
100 Mercy Way                  MRN: E140238803
Joplin MO 64804-4524           DOB: ▮▮▮▮▮▮ Sex: F
                               Enc. Date: 06/28/16

## Call Documentation

**Newman, Laura C, LPN at 6/28/2016  5:14 PM**
Status: Signed

Advised patient per Dr Hopewell she may take her oxycodone q 4-6 and we will fill early if she needs. She voices understanding.

**Hopewell, Donald K, MD at 6/28/2016  4:51 PM**
Status: Signed

She can increase her oxycodone to q 4-6 hours prn pain and we can fill early when she needs it

**Newman, Laura C, LPN at 6/28/2016  3:41 PM**
Status: Signed

Patient called states she is in Florida, had an abscess on her leg she went to have it lanced and the dr gave her a rx for norco 5. She asked him to call here, she explained that she cant take pain meds from anyone else but he wouldn't call. She asked what do you want her to do I told her do not fill that script she said she will not, she needs to know if she needs to do anything different with her current regimen, because she is in a lot of pain.  Please advise

### End of Encounter

### END OF REPORT

JOPL HEALTH INFORMATION          FLANAGAN,JAMIE S
MANAGEMENT                       MRN: E140238803
100 Mercy Way

Printed by 95369 at 11/14/16 10:59 AM

## *CoxHealth*

CoxHealth Center Crane

Patient Name:    FLANAGAN, JAMIE SUE                Location:  CHC Crane
Account Number: AMB000000452070
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB [redacted]    Age: 36 years    Female    Admit Date: 1/28/2016        Discharge Date:  2/12/2016

### *Office Clinic Notes*

Result Date/Time:                1/28/2016 10:41 CST
Performed By:                    Powell PA,Crystal J (1/28/2016 10:42 CST)
Electronically Signed By:        Thomas MD,Damon (2/12/2016 11:25 CST); Powell PA,Crystal J (2/11/2016 22:41 CST)

**Chief Complaint**
New Establish Care Med refill.

**Nurse Intake**
**Nursing Intake**

General Information
Physicians and Specialties: Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison (neurologist) 01/28/16

Pain Information
Pain Present: Yes actual or suspected pain 01/28/16

Pain Intensity: 3 01/28/16
Pain Location: Leg 01/28/16

**General Nurse Comments:**

**History of Present Illness**
Here today to establish care.
Needing refill of her Epi Pen. Uses this for hx of angioedema, uncertain of the cause. Has been referred for allergist consult in the past but did not go, does not wish to see allergist at this time. Not taking an antihistamine, hasn't helped in the past apparently. No recent flare ups.
Has hx of chronic back pain, had L5-S1 PLIF with Dr. Mace 4/2011. Is on multiple chronic pain medications and muscle relaxant, managed per pain clinic.
Also has hx of undifferentiated autoimmune d/o, followed by Dr. Winkler.
Also has hx of GERD, anxiety, and depression. She feels these are well-controlled at this time.
She is a NP, but not currently working, on disability due to her multiple health problems.

**Review of Systems**
See HPI. All other ROS reviewed as negative or not pertinent.

**Problem List/Past Medical History**
**Angioedema:**
**Chronic back pain:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**

**Procedure/Surgical History**
Breast reconstruction, Cesarean section, Cholecystectomy, foot surgery bilateral, spinal fusion with cage and graft, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

**Medications**
  ALPRAZolam 0.5 mg oral tablet, See Instructions, 2 refills
  belladonna/caffeine/ergotamine/pentobarbital, 1 tab, By mouth, as needed, PRN
  Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By mouth, as needed, PRN
  Donnatal, 1 tab, By mouth, as needed, PRN
  EPINEPHrine 0.3 mg injectable kit, IM, ONCE
  ibuprofen, 800 mg, By mouth, as needed, PRN
  MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
  morphine 100 mg/24 hours oral capsule, extended release, 200 mg, 2 cap, By mouth, Q12H
  Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime
  Protonix, 40 mg, By mouth, as needed, PRN
  Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
  Soma, 350 mg, Q8H, PRN
  Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID

**CONFIDENTIAL PATIENT INFORMATION**
UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000452070        DOS: 1/28/2016      Report Request ID:  77482572
Patient Name:    FLANAGAN, JAMIE SUE        DOB [redacted]    Print Date/Time:  11/16/2016 08:40 CST

## CoxHealth

### Office Clinic Notes

**Physical Exam**

Vitals & Measurements
**HR:** 68 **RR:** 12 **BP:** 100 / 60 **HT:** 65.5 in **WT:** 147 lb **BMI:** 24.1
General: In no acute distress. Alert & oriented. Behavior and affect appropriate to situation
Skin: Warm and dry with no rash or suspicious lesions noted.
CV: Regular rate and rhythm without murmur.
Chest: Respirations even and unlabored. Lungs clear to auscultation. No rhonchi. No crackles. No wheezing.

**Assessment/Plan**
Encounter to establish care
 Meds reviewed. Pt is aware of clinic's policy for new pts regarding controlled medications. She will continue f/u with pain clinic.
Ordered:
Office Visit Level 2 New 99202

Hx of angioedema
 Epi pen refilled today. Recommended referral for allergy consult, but pt declines at this time.
Ordered:
Office Visit Level 2 New 99202

 Other
Rx for Epi pen sent to pharmacy.
She will return soon for well exam.

Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

**Allergies**
Ambien (Sleep walking)
Lunesta (Sleep walking)
adhesive (Rash)

**Social History**
 Alcohol
  Denies
 Substance Abuse
  Denies
 Tobacco
  Never smoker

**Family History**

**Health Maintenance**
**Health Maintenance**
**Pending** (in the next year)
OverDue
Influenza Vaccine due 08/31/15 and every 1 yr
Due
Cervical Cancer Screening due 01/28/16 and every 5 yr
HIV AB due 01/28/16 One-time only
Pertussis Vaccine due 01/28/16 One-time only
Tetanus/TD Vaccine due 01/28/16 and every 10 yr
**Satisfied** (in the past 1 year)
There are no satisfied recommendations within the defined date range

**Lab Results**

**POC Lab Results**
No qualifying data available.

**Diagnostic Results**

**Other**

*Electronically signed by:Powell PA, Crystal J 02/11/16 22:41*
*Electronically cosigned by: Thomas MD, Damon 02/12/16 11:25*

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000452070            DOS: 1/28/2016            Report Request ID:  77482572
Patient Name:    FLANAGAN, JAMIE SUE        DOB:                 Print Date/Time:  11/16/2016 08:40 CST

PAGE 12/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH      Document 33-1      Filed 05/15/18      Page 280 of 550    LIN00280

## CoxHealth

### Office Clinic Notes

Result Date/Time:                          6/16/2016 07:48 CDT
Performed By:                              Winkler MD,Anne (6/16/2016 07:50 CDT)
Electronically Signed By:                  Winkler MD,Anne (6/16/2016 09:46 CDT)

### History of Present Illness

10/2/14 Jamie returns today for followup of her UCTD. she is on plaquenil. She also has significant DDD of cervical and lumbar spine. she has been out of her plaquenil for three weeks and she has had mild achiness in her shoulders and hands. she knows that the medication does help. she did have large number of seed tick bites.
4/2/15 Jamie returns today for followup of her UCTD she is on plaquenil and has stopped it inthe past with worsening symptoms off plaquenil. Shd also has DDD of cervical and lumbar spine which continues to be ongoing problems for her. Seh had flare in december which were treated with steroids and that helped. she continues to have fatigue more in the recent past. her shoulders and elbows were hurting more for a few weeks. she did not call or take steroids. however it has gotten better. sleep is ok but she is not rested.
9/3/15 Jamie returns today for followup of her mild synovitis. she is on plaquenil. she had one flare this summer which required mdrol dose pack and did help. she states that she feels more achy in general. she gets her pain medicine from Dr Hopewell. she is very depressed and anxious. she feels tired some days. she is not sure if it is related to sun exposure. it takes two days to recover from the spells of fatigue and feeling that she has the flu. she does not know if prednisone would help these spells. she has a tens unit but has not been using it. she is sleeping not too badly but she does awaken due to pain usually in her legs. she feels a grinding in her back. she has not seen Dr Mace for over a year. she is now taking 6 daily of dilaudid for breakthrough pain. she did have hives on sunday and used her epipen.

6/16/16  Jamie returns today for UTD>  she states that she was ok for some time but now is not doing as well for the last 3-4 months.   she feels that she  Is swelling more in her hands and elbows and also having increased fatigue.   she hurts all over as well but she does feel that her worse areas hands and elbows and shoulders and hips.  she is not wearing any rings due to swelling in her fingers.  she has had one dose pak (but not full one) about a  few weeks ago.  the steroids did help.  she is not sleeping again.   she has problems in tehesun and gets very faitgued and sleeps for two days.  she does not have a rash

PAST MEDICAL HISTORY:
congenital flexible flat foot
Anxiety
Depression
Insomnia
pars defect with chronic back pain/spondylolysthesis
annular tear x 2-cervical

### SOCIAL HISTORY:

SOCIAL HISTORY: She is married. She is a nurse practitioner but is presently not working due to her health issues. She does not smoke or use alcohol.

FAMILY HISTORY: Positive for rheumatoid arthritis, lupus, psoriatic arthritis, pseudotumor cerebri, cancer,

### Problem List/Past Medical History
**Angioedema:**
**Chronic back pain:**
**Drug therapy observations:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**
**Undifferentiated connective tissue disease:**

### Procedure/Surgical History
spinal fusion with cage and graft (2011), Cholecystectomy (2004), Breast reconstruction, Cesarean section, foot surgery bilateral, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

### Medications
ALPRAZolam 0.5 mg oral tablet, See Instructions
belladonna/caffeine/ergotamine/pentobarbit al, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
ibuprofen, 800 mg, By mouth, as needed, PRN
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
morphine 100 mg/24 hours oral capsule, extended release, 200 mg, 2 cap, By mouth, Q12H
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime, 3 refills
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

### Allergies
Ambien (Sleep walking)
Lunesta (Sleep walking)
adhesive (Rash)
Darvocet A500

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000871247              DOS: 6/16/2016              Report Request ID:  76713384
Patient Name:    FLANAGAN, JAMIE SUE         DOB                        Print Date/Time:   11/9/2016 07:16 CST

PAGE 13/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 281 of 550     LIN00281

## *CoxHealth*

---

### Office Clinic Notes

---

diabetes, heart disease, hypertension, hypercholesterolemia.

### Review of Systems
review of systems: hair loss, dry eyes and dry mouth, lymphadenopathy, pulmonary or cardiac problems, GI problems, infections, fever, sweats or chills, sleep issues, mouth or nasal sores. All were negative as per return patient form dated 6/16/16 except for blladder infections and dry eyes and sleep issues and GI issues.

### Physical Exam
PE: general appropriate build

HEENT: pupils equal and round no conjunctival irritation no temporal artery tenderness

SKIN: clear without rashes or lesions

NECK: no lymphadenopathy or thyromegaly or parotid gland swelling

LUNGS: clear to a and p without rales or wheezing

COR: RRR without murmurs or gallops

MUSCULOSKELETAL:

### Assessment/Plan
1. Undifferentiated connective tissue disease
   will recheck lab including hla b27 and esr and crp and ana and ccp
2. Drug therapy
   may need to change plaquenil meanwhile will gie medrol dose pack again

Other
rtc in 1months

*Electronically signed by:Winkler MD, Anne 06/16/16 09:46*

### Social History
Alcohol
 Denies
Employment/School
 Highest education level: University
  degree(s). Status: Full time.
  Occupation: Nurse
  practitioner-Neurology Office.
Home/Environment
 Marital status Married. Lives with:
  Children, Spouse.
Nutrition/Health
 Type of diet: Follows healthy diet. Caffeine
  intake amount: Denies.
Sexual
 Sexually active: Yes.
Substance Abuse
 Denies
Tobacco
 Never smoker

### Family History
Alcohol abuse: FATHER and PGF.
Depression: MOTHER and AUNT.
Diabetes mellitus: FATHER.
Heart disease: FATHER, MGF, MGM, PGF
 and PGM.
Hypertension: MOTHER, BROTHER, MGF,
 MGM and PGF.
Liver cancer: MGF.
Stroke: MGF.
Tongue cancer: PGF.

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

| | | |
|---|---|---|
| Account Number: AMB000000871247 | DOS: 6/16/2016 | Report Request ID: 76713384 |
| Patient Name: FLANAGAN, JAMIE SUE | DOB: ▮▮▮▮ | Print Date/Time: 11/9/2016 07:16 CST |

PAGE 14/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH Document 33-1 Filed 05/15/18 Page 282 LIN00282

## *CoxHealth*

CoxHealth Rheumatology - Branson
121 Cahill Rd # 205
Branson, MO 65616-

(417) 348-8253

Patient Name:    FLANAGAN, JAMIE SUE                          Location:  CHC Rheum Br
Account Number: AMB000001108003
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB: ▓▓▓▓▓     Age: 36 years     Female       Admit Date: 9/1/2016          Discharge Date:  9/16/2016

---

### Office Clinic Notes

Result Date/Time:                              9/1/2016 07:36 CDT
Performed By:                                  Winkler MD,Anne (9/1/2016 07:37 CDT)
Electronically Signed By:                      Winkler MD,Anne (9/1/2016 11:08 CDT)

**History of Present Illness**

10/2/14 Jamie returns today for followup of her UCTD. she is on plaquenil. She also has significant DDD of cervical and lumbar spine. she has been out of her plaquenil for three weeks and she has had mild achiness in her shoulders and hands. she knows that the medication does help. she did have large number of seed tick bites.

4/2/15 Jamie returns today for followup of her UCTD she is on plaquenil and has stopped it inthe past with worsening symptoms off plaquenil. Shd also has DDD of cervical and lumbar spine which continues to be ongoing problems for her. Seh had flare in december which were treated with steroids and that helped. she continues to have fatigue more in the recent past. her shoulders and elbows were hurting more for a few weeks. she did not call or take steroids. however it has gotten better. sleep is ok but she is not rested.

9/3/15 Jamie returns today for followup of her mild synovitis. she is on plaquenil. she had one flare this summer which required mdrol dose pack and did help. she states that she feels more achy in general. she gets her pain medicine from Dr Hopewell. she is very depressed and anxious. she feels tired some days. she is not sure if it is related to sun exposure. it takes two days to recover from the spells of fatigue and feeling that she has the flu. she does not know if prednisone would help these spells. she has a tens unit but has not been using it. she is sleeping not too badly but she does awaken due to pain usually in her legs. she feels a grinding in her back. she has not seen Dr Mace for over a year. she is now taking 6 daily of dilaudid for breakthrough pain. she did have hives on sunday and used her epipen.

6/16/16 Jamie returns today for UCTD> she states that she was ok for some time but now is not doing as well for the last 3-4 months. she feels that she is swelling more in her hands and elbows and also having increased fatigue. she hurts all over as well but she does feel that her worse areas hands and elbows and shoulders and hips. she is not wearing any rings due to swelling in her fingers. she has had one dose pak (but not full one) about a few weeks ago. the steroids did help. she is not sleeping again. she has problems in the sun and gets very fatigued and sleeps for two days. she does not have a rash

9/1/16 Jamie returns today for UCTD. she states that she did feel better with the medrol dose pack and it lasted for about one - two months. she does feel that the pain medicines that she is on is helping much. she is limited though in what her insurance will cover. her worse areas are her back and then sometimes all over pain and then she has swelling in her fingers. this ocurs one or two times a month. she feels that she is not depressed. she is not sleeping well due to the pain. her right thigh pain is the worse at present.

PAST MEDICAL HISTORY:

**Problem List/Past Medical History**
**Angioedema:**
**Chronic back pain:**
**Drug therapy:**
**GERD (gastroesophageal reflux disease):**
**Anxiety and depression:**
**Undifferentiated connective tissue disease:**

**Procedure/Surgical History**
spinal fusion with cage and graft (2011), Cholecystectomy (2004), Breast reconstruction, Cesarean section, foot surgery bilateral, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

**Medications**
ALPRAZolam 0.5 mg oral tablet, See Instructions
Donnatal, 1 tab, By mouth, as needed, PRN
Ibuprofen, 800 mg, By mouth, as needed, PRN
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
morphine 100 mg/24 hours oral capsule, extended release, 200 mg, 2 cap, By mouth, Q12H
oxyCODONE 30 mg oral tablet, 30 mg, 1 tab, By mouth, Q6H, PRN
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime, 3 refills
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID

**CONFIDENTIAL PATIENT INFORMATION**
UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000001108003                    DOS: 9/1/2016          Report Request ID:  76713390
Patient Name:    FLANAGAN, JAMIE SUE                DOB ▓▓▓▓▓     Print Date/Time:   11/9/2016 07:17 CST

PAGE 15/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 283 of 550     LIN00283

## CoxHealth

### Office Clinic Notes

congenital flexible flat foot
Anxiety
Depression
Insomnia
pars defect with chronic back pain/spondylolysthesis
annular tear x 2-cervical

**SOCIAL HISTORY:**

SOCIAL HISTORY: She is married. She is a nurse practitioner but is presently not working due to her health issues. She does not smoke or use alcohol.

FAMILY HISTORY: Positive for rheumatoid arthritis, lupus, psoriatic arthritis, pseudotumor cerebri, cancer, diabetes, heart disease, hypertension, hypercholesterolemia.

#### Review of Systems
review of systems:  hair loss, dry eyes and  dry mouth,  lymphadenopathy, pulmonary or cardiac problems, GI problems, infections,  fever, sweats or chills, sleep issues, mouth or nasal sores.  All were negative as per return patient form dated  9/1/16   except for dry eyes and abscess on left leg and sleep issues

#### Physical Exam
PE:  general  thin wf

HEENT:  pupils equal and round  noconjunctival irritation  no temporal artery tenderness

SKIN: clear without rashes or lesions

NECK: no lymphadenopathy or thyromegaly or parotid gland swelling

LUNGS:  clear to a and p without rales or wheezing

COR: RRR without murmurs or gallops

 MUSCULOSKELETAL:  no synovitis in any joints

#### Assessment/Plan
1. Undifferentiated connective tissue disease
   will cotnineu plauqenil and use prn medrol for flares
2. Drug therapy
   q 6month lab and yearly eye exam

   #### Other
 sleep issues - will try amitryptilene - she has at home and she will call  us regarding her dose and we will tell her how to start it

*Electronically signed by:Winkler MD, Anne 09/01/16 11:08*

Zofran 4 mg oral tablet, 4 mg, 1 tab, By
 mouth, Q6H, PRN

#### Allergies
Ambien (Sleep walking)
Lunesta (Sleep walking)
adhesive (Rash)
Darvocet A500

#### Social History
 Alcohol
  Denies
 Employment/School
  Highest education level: University
   degree(s). Status: Full time.
   Occupation: Nurse
   practitioner-Neurology Office.
 Home/Environment
  Marital status Married. Lives with:
   Children, Spouse.
 Nutrition/Health
  Type of diet: Follows healthy diet. Caffeine
   intake amount: Denies.
 Sexual
  Sexually active: Yes.
 Substance Abuse
  Denies
 Tobacco
  Never smoker

#### Family History
 Alcohol abuse: FATHER and PGF.
 Depression: MOTHER and AUNT.
 Diabetes mellitus: FATHER.
 Heart disease: FATHER, MGF, MGM, PGF
  and PGM.
 Hypertension: MOTHER, BROTHER, MGF,
  MGM and PGF.
 Liver cancer 13-JUL-2016 12:15:47<$>:
  MGF.
 Stroke 13-JUL-2016 12:19:01<$>: MGF.
 Tongue cancer 13-JUL-2016 12:26:32<$>:
  PGF.

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000001108003         DOS: 9/1/2016         Report Request ID:  76713390
Patient Name:    FLANAGAN, JAMIE SUE         DOB:▮▮▮▮▮    Print Date/Time:  11/9/2016 07:17 CST

PAGE 16/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43
Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 284 of 550
LIN00284

## CoxHealth

### Office Clinic Notes

Result Date/Time:               12/7/2015 08:26 CST
Performed By:                 Mace MD, J Charles (12/7/2015 08:27 CST)
Electronically Signed By:     Mace MD, J Charles (12/7/2015 09:58 CST)

### Chief Complaint
increased low back pain
R>L leg pain

### Nurse Intake
### Nursing Intake

General Information
Onset of Symptoms: 6 months
ago 12/07/15
Information Given By: Patient
12/07/15
Physicians and Specialties: Dr
Beth Knox (pcp) Dr Ann Winkler
(rheumatologist) Dr Donald
Hopewell (pain management) Dr
Diane Cornelison (neurologist)
12/07/15

Pain Information
Pain Present: Yes actual or
suspected pain 12/07/15
Pain Intensity: 5 12/07/15

Pain Location: low back 12/07/15

Pain Quality: worse with sitting
12/07/15

### History of Present Illness
35 year old female returns in follow up of L5-S1 PLIF for LBP and R>L leg pains 4/1/2011. Slow to improve following surgery. Returns with c/o progressive LBP and Right more than left leg pains. LBP feels "like something is moving" that is worse with bending and flexing to the right. Right L5 type leg pains described as aching and burning pain.
Denies leg weakness. Bowel and bladder intact.
Treatments: ESI with Dr Cornelison- no help, Morphine 400mg daily, hydromorphone 8mg tabs- 6 per day, muscle relaxers from Dr Hopewell.

### Review of Systems
General Statement:    Denies significant change in weight, fever, chills & fatigue
Eye Statement:    Denies changes in vision.
ENT Statement:    Denies changes in hearing, sinus headaches or ENT symptoms.
Cardiovascular Statement:    Denies chest pain, palpitations, and edema
Respiratory Statement:    Denies cough, wheezing, and dyspnea
GI Statement:    Denies nausea, vomiting, food intolerance, abdominal pain, & change in bowel pattern
GU Statement:    Denies dysuria, urinary incontinence, breast lumps & vaginal discharge
Musculoskeletal Admits to:    Back pain
Skin Statement:    Denies rashes, lesions & pruritus
Neurologic Admits to:    Paresthesia,Other: numbness in right foot and leg
Psychiatric Statement:    Denies symptoms of anxiety, depression, & insomnia
Endocrine Statement:    Denies excessive thirst, excessive urination, and changes in skin or hair texture
Heme/Lymph Statement:    Denies easy bleeding and bruising
Allergy/Immunology Statement:    Denies seasonal allergies and persistent infections

### Problem List/Past Medical History
**Angioedema:**
**Chronic back pain:**
**Gastroesophageal reflux disease:**
**Mixed anxiety and depressive disorder:**

### Procedure/Surgical History
Breast reconstruction, Cesarean section, Cholecystectomy, foot surgery bilateral, spinal fusion with cage and graft, TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy.

### Medications
belladonna/caffeine/ergotamine/pentobarbital, 1 tab, By mouth, as needed, PRN
Dilaudid 4 mg oral tablet, 4 mg, 1 tab, By mouth, as needed, PRN
Donnatal, 1 tab, By mouth, as needed, PRN
ibuprofen, 800 mg, By mouth, as needed, PRN
Limu vegetabl/fruit juic, 4 oz, By mouth, Daily
MiraLax oral powder for reconstitution, 17 g, By mouth, at bedtime
MS Contin 15 mg/12 hr oral tablet, extended release, 15 mg, 1 tab, By mouth, BID
MS Contin 60 mg/12 hours oral tablet, extended release, 120 mg, 2 tab, By mouth, Q12H
Phenergan 25 mg oral tablet, 25 mg, 1 tab, By mouth, Q4-6H
Plaquenil Sulfate 200 mg oral tablet, 400 mg, 2 tab, By mouth, at bedtime
Protonix, 40 mg, By mouth, as needed, PRN
Robaxin-750 oral tablet, 750 mg, 1 tab, By mouth, Q8H, PRN
Soma, 350 mg, Q8H, PRN
Topamax 50 mg oral tablet, 50 mg, 1 tab, By mouth, BID
Tums E-X 750 mg oral tablet, chewable, 1500 mg, 2 tab, By mouth, Q1Hr, PRN
Wellbutrin SR 150 mg/12 hours oral tablet, extended release, 150 mg, 1 tab, By mouth, BID
Xanax, 0.25 mg, at bedtime, PRN
Zofran 4 mg oral tablet, 4 mg, 1 tab, By mouth, Q6H, PRN

### CONFIDENTIAL PATIENT INFORMATION

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619        DOS: 12/7/2015        Report Request ID: 76717755
Patient Name:    FLANAGAN, JAMIE SUE        DOB        Print Date/Time: 11/9/2016 08:27 CST

PAGE 17/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 285 of 550    LIN00285

## CoxHealth

### Office Clinic Notes

Sleep Statement:    Denies sleep problems

### Physical Exam

#### Vitals & Measurements
**HR:** 69  **RR:** 17  **BP:** 106 / 66  **HT:** 65  in  **WT:** 135  lb  **BMI:** 22.5
LBP, right more than left L5 pain

Except as noted above:

General:  Well developed, well nourished, in no distress
Lungs:  clear to auscultation
Heart:  regular rate and rhythm
Abdomen:  soft, non-tender, normal bowel sounds
Skin:  without rash or lesions
Extremities:  no edema, cyanosis or clubbing
Musculoskeletal:   no joint pain or swelling with fair range of motion, no pain with palpation of spine. No pain in F/E
MS: Oriented to person, place and time. Recent and remote memory are intact. Attention span and concentration are normal. Speech is fluent, without dysarthria or aphasia. Adequate historian with normal fund of knowledge. Moods are consistent with situation, affect is euthymic. Thought process is coherent, content is without delusions or hallucinations.
Motor: Strength is 5/5 throughout for age and stature. Tone and bulk are normal, without gross atrophy, fasciculations or adventitious movements.
SENS: Intact to light touch
DTR: 2/4 throughout upper and lower extremities.
COORD: intact
GAIT: Able to heel, toe and tandem walk without significant difficulty.

### Assessment/Plan
Chronic low back pain
Lumbar radiculopathy

  Other
History of L5-S1 PLIF in 2011

Chronic low back pain and associated bilateral (R>L) leg pain,  she has continued to have symptom even after 2011 surgery

Imaging with what appears to be good fusion L5-S1 but some progression of the degeneration at L4-5 with some left L4-5 foraminal stenosis.

No role for surgical intervention at this time,    she will try water exercises and exercise for core strengthening.

### Allergies
Ambien (Sleep walking)
Darvocet-N 50 (Rash)
Lunesta (Sleep walking)
adhesive (Rash)

### Social History
  Alcohol
    Denies
  Substance Abuse
    Denies
  Tobacco
    Never smoker

### Family History

### Health Maintenance
**Health Maintenance**
**Pending** (in the next year)
OverDue
Influenza Vaccine due 09/01/15 and every 1 yr
Due
Cervical Cancer Screening due 12/07/15 and every 5 yr
HIV AB due 12/07/15 One-time only
Pertussis Vaccine due 12/07/15 One-time only
Tetanus/TD Vaccine due 12/07/15 and every 10 yr
**Satisfied** (in the past 1 year)
There are no satisfied recommendations within the defined date range

### Lab Results

### POC Lab Results
No qualifying data available.

### Diagnostic Results

IMPRESSION LUMBAR CT SPINE:

1. PLIF L5-S1 without complicating feature and expected postoperative change.

2. Degenerative disk disease and spondylosis L4-5 with facet joint arthropathy and disk bulge/protrusion left subarticular and extraforaminal zone. There is contact with the exiting left L4 nerve root but no definite impingement. [1]

IMPRESSION: MR lumbar

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                 DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE             DOB               Print Date/Time:  11/9/2016 08:27 CST

## *CoxHealth*

> ### *Office Clinic Notes*

1. PLIF L5-S1 without complicating feature.

2. L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with annular fissure. There is contact with the exiting left L4 nerve root. [2]

**Other**

[1]CT Lumbar Spine wo Contrast Routine; Marcum , Laura L 10/15/2015 09:47
[2]MR Lumbar w wo Contrast; Taylor , Jennifer A 10/15/2015 08:56

*Electronically signed by:Mace MD, J Charles 12/07/15 09:58*

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619       DOS: 12/7/2015      Report Request ID:  76717755
Patient Name:  FLANAGAN, JAMIE SUE      DOB ▮▮▮▮    Print Date/Time:  11/9/2016 08:27 CST

PAGE 19/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 287 of 550    LIN00287

## *CoxHealth*

Springfield Neurological and Spine Institute
3801 S National Ave
Ste 700
Springfield, MO 65807-
(111) 111-1111

Patient Name:    FLANAGAN, JAMIE SUE                              Location:  SNSI; Exam 2
Account Number: AMB000000289619
MRN: 5606724; 2770357; 420680; 413496; 158074; 4827891; SNI0087223; AMB0101666
DOB: ███████    Age: 36 years    Female    Admit Date: 12/7/2015          Discharge Date:  12/22/2015

### *Allergies*

| Substance | Allergy Type | Allergy Category | Severity | Reaction Status | Reaction Symptom | Recorded On Behalf Of | Updated Date/Time | Updated By | Reviewed By | Reviewed Date/Time |
|---|---|---|---|---|---|---|---|---|---|---|
| Lunesta | Allergy | Drug | Moderate | Active | Sleep walking | McCroskey RN, Darla L | 5/10/2013 10:33 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| Darvocet-N 50 | Allergy | Drug | Moderate | Canceled | Rash | McCroskey RN, Darla L | 1/28/2016 10:13 CST | Moore CMA,Lisa E | Moore CMA,Lisa E | 1/28/2016 10:13 CST |
| Darvocet A500 | Allergy | Drug | | Active | | Godown , April | 6/11/2016 19:20 CDT | Godown , April | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| Ambien | Allergy | Drug | Moderate | Active | Sleep walking | McCroskey RN, Darla L | 5/10/2013 10:33 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |
| adhesive | Allergy | Drug | Moderate | Active | Rash | McCroskey RN, Darla L | 5/10/2013 10:34 CDT | McCroskey RN, Darla L | Patton LPN, Simone N | 9/1/2016 10:50 CDT |

**CONFIDENTIAL PATIENT INFORMATION**
UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE                  DOB: ███████    Print Date/Time:   11/9/2016 08:27 CST

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 288 of 550     LIN00288

## *CoxHealth*

### *Powerform*

Result Date/Time:                    12/7/2015 09:10 CST
Performed By:                        Hernandez MA,Lauren (12/7/2015 09:10 CST)
Electronically Signed By:            Hernandez MA,Lauren (12/7/2015 09:10 CST)

### Adult Ambulatory Care Intake and History Entered On: 12/7/2015 9:19
### Performed On: 12/7/2015 9:10 by Hernandez MA, Lauren

**General Info**
Chief Complaint Details : increased low back pain
Onset of Symptoms : 6 months ago
Information Given By : Patient
Physicians and Specialties : Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison (neurologist)

Hernandez MA, Lauren - 12/7/2015 9:10

**Vital Signs**
Pulse Rate : 69
Respiratory Rate : 17
BP Systolic : 106
BP Diastolic : 66
BP Location : Arm, left
MAP : 79
Pain Present : Yes actual or suspected pain
Pain Intensity : 5
Location : low back
Quality : worse with sitting
Weight (lb) (Clinical) : 135 lb(Converted to: 61 kg)
Height (inches) : 65 in(Converted to: 5 ft 5 in, 165.10 cm)
BMI (Clinical) : 22.5 kg/m2

Hernandez MA, Lauren - 12/7/2015 9:10

**Allergy**

(As Of: 12/7/2015 09:19:45 CST)

**Allergies (Active)**

| | |
|---|---|
| adhesive | Estimated Onset Date: Unspecified ; Reactions: Rash ; Created By: McCroskey RN, Darla L; Reaction Status: Active ; Category: Drug ; Substance: adhesive ; Type: Allergy ; Severity: Moderate ; Updated By: McCroskey RN, Darla L; Source: Patient ; Reviewed Date: 12/7/2015 9:14 |
| Ambien | Estimated Onset Date: Unspecified ; Reactions: Sleep walking ; Created By: McCroskey RN, Darla L; Reaction Status: Active ; Category: Drug ; Substance: Ambien ; Type: Allergy ; Severity: Moderate ; Updated By: McCroskey RN, Darla L; Source: Patient ; Reviewed Date: 12/7/2015 9:14 |
| Darvocet-N 50 | Estimated Onset Date: Unspecified ; Reactions: Rash ; Created By: McCroskey RN, Darla L; Reaction Status: Active ; Category: Drug ; Substance: Darvocet-N 50 ; Type: Allergy ; Severity: Moderate ; Updated By: McCroskey RN, Darla L; Source: Patient Survey ; Reviewed Date: 12/7/2015 9:14 |
| Lunesta | Estimated Onset Date: Unspecified ; Reactions: Sleep walking ; Created By: McCroskey RN, Darla L; Reaction Status: Active ; Category: Drug ; Substance: Lunesta ; Type: |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                      DOS: 12/7/2015          Report Request ID: 76717755
Patient Name: FLANAGAN, JAMIE SUE                    DOB ▮▮▮▮          Print Date/Time: 11/9/2016 08:27 CST

PAGE 21/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 289 of 550   LIN00289

## CoxHealth

### Powerform

Allergy ; Severity:  Moderate ; Updated By:  McCroskey RN,
Darla L; Source:  Patient ; Reviewed Date:  12/7/2015 9:14

**Medication History**
Medication List

(As Of: 12/7/2015 09:19:45 CST)

Home Meds

| | |
|---|---|
| morphine | : morphine ; Status:  Documented ; Ordered As Mnemonic: morphine 100 mg/24 hours oral capsule, extended release ; Simple Display Line:  200 mg, 2 cap, By mouth, Q12H, 0 Refill(s) ; Catalog Code:  morphine ; Order Dt/Tm:  12/7/2015 09:17:22 |
| Special Drug Order-MED | : Special Drug Order-MED ; Status:  Deleted ; Ordered As Mnemonic:  Limu vegetabl/fruit juic ; Simple Display Line:  4 oz, By mouth, Daily ; Catalog Code:  Special Drug Order-MED ; Order Dt/Tm:  5/10/2013 10:32:16 |
| Ibuprofen | : Ibuprofen ; Status:  Documented ; Ordered As Mnemonic: ibuprofen ; Simple Display Line:  800 mg, By mouth, as needed, stopped taking 4-29, PRN: as needed for pain ; Catalog Code: ibuprofen ; Order Dt/Tm:  5/10/2013 10:25:05 |
| calcium carbonate | : calcium carbonate ; Status:  Deleted ; Ordered As Mnemonic: Tums E-X 750 mg oral tablet, chewable ; Simple Display Line: 1,500 mg, 2 tab, By mouth, Q1Hr, 480 tab, PRN: for control of stomach acid ; Catalog Code:  calcium carbonate ; Order Dt/Tm:  5/10/2013 10:24:42 |
| pantoprazole | : pantoprazole ; Status:  Documented ; Ordered As Mnemonic: Protonix ; Simple Display Line:  40 mg, By mouth, as needed, PRN: as needed for acid reflux ; Catalog Code:  pantoprazole ; Order Dt/Tm:  5/10/2013 10:23:55 |
| alprazolam | : alprazolam ; Status:  Documented ; Ordered As Mnemonic: Xanax ; Simple Display Line:  0.25 mg, By mouth, at bedtime, PRN: as needed for sleep ; Catalog Code:  ALPRAZolam ; Order Dt/Tm:  5/10/2013 10:23:36 |
| topiramate | : topiramate ; Status:  Documented ; Ordered As Mnemonic: Topamax 50 mg oral tablet ; Simple Display Line:  50 mg, 1 tab, By mouth, BID ; Catalog Code:  topiramate ; Order Dt/Tm: 5/10/2013 10:22:53 |
| bupropion | : bupropion ; Status:  Documented ; Ordered As Mnemonic: Wellbutrin SR 150 mg/12 hours oral tablet, extended release ; Simple Display Line:  150 mg, 1 tab, By mouth, BID, 180 tab ; Catalog Code:  bupropion ; Order Dt/Tm:  5/10/2013 10:22:41 |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                    DOS: 12/7/2015            Report Request ID:  76717755
Patient Name:  FLANAGAN, JAMIE SUE                 DOB                        Print Date/Time:  11/9/2016 08:27 CST

## *CoxHealth*

### *Powerform*

hydroxychloroquine : hydroxychloroquine ; Status: Documented ; Ordered As Mnemonic: Plaquenil Sulfate 200 mg oral tablet ; Simple Display Line: 400 mg, 2 tab, By mouth, at bedtime, 180 tab ; Catalog Code: hydroxychloroquine ; Order Dt/Tm: 5/10/2013 10:22:20

ondansetron : ondansetron ; Status: Documented ; Ordered As Mnemonic: Zofran 4 mg oral tablet ; Simple Display Line: 4 mg, 1 tab, By mouth, Q6H, PRN: as needed for nausea/vomiting ; Catalog Code: ondansetron ; Order Dt/Tm: 5/10/2013 10:22:02

promethazine : promethazine ; Status: Deleted ; Ordered As Mnemonic: Phenergan 25 mg oral tablet ; Simple Display Line: 25 mg, 1 tab, By mouth, Q4-6H, as needed for nausea and vomiting ; Catalog Code: promethazine ; Order Dt/Tm: 5/10/2013 10:21:47

atropine/hyoscyamine/PB/scop olamine : atropine/hyoscyamine/PB/scopolamine ; Status: Documented ; Ordered As Mnemonic: Donnatal ; Simple Display Line: 1 tab, By mouth, as needed, PRN: as needed for irritable bowel symptoms ; Catalog Code: atropine/hyoscyamine/PB/scopolamine ; Order Dt/Tm: 5/10/2013 10:21:32

belladonna/caffeine/ergotamine /pentobarbital : belladonna/caffeine/ergotamine/pentobarbital ; Status: Documented ; Ordered As Mnemonic: belladonna/caffeine/ergotamine/pentobarbital ; Simple Display Line: 1 tab, By mouth, as needed, PRN: as needed for stomach cramps ; Catalog Code: belladonna/caffeine/ergotamine/pentobarb ; Order Dt/Tm: 5/10/2013 10:21:07

polyethylene glycol 3350 (Miralax) : polyethylene glycol 3350 (Miralax) ; Status: Documented ; Ordered As Mnemonic: MiraLax oral powder for reconstitution ; Simple Display Line: 17 g, By mouth, at bedtime, dissolve in water before taking, 255 g ; Catalog Code: polyethylene glycol 3350 (Miralax) ; Order Dt/Tm: 5/10/2013 10:20:30

methocarbamol : methocarbamol ; Status: Documented ; Ordered As Mnemonic: Robaxin-750 oral tablet ; Simple Display Line: 750 mg, 1 tab, By mouth, Q8H, PRN: as needed for pain ; Catalog Code: methocarbamol ; Order Dt/Tm: 5/10/2013 10:19:45

carisoprodol : carisoprodol ; Status: Documented ; Ordered As Mnemonic: Soma ; Simple Display Line: 350 mg, By mouth, Q8H, PRN: as needed for pain ; Catalog Code: carisoprodol ; Order Dt/Tm: 5/10/2013 10:19:23

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619              DOS: 12/7/2015          Report Request ID: 76717755
Patient Name: FLANAGAN, JAMIE SUE            DOB:                    Print Date/Time: 11/9/2016 08:27 CST

PAGE 23/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 291 of 550

LIN00291

## *CoxHealth*

> *Powerform*

| HYDROmorphone | : HYDROmorphone ; Status:  Documented ; Ordered As Mnemonic:   Dilaudid 4 mg oral tablet ; Simple Display Line:   4 mg, 1 tab, By mouth, as needed, PRN: as needed for pain ; Catalog Code:  HYDROmorphone ; Order Dt/Tm:  5/10/2013 10:18:59 |
| morphine | : morphine ; Status:  Deleted ; Ordered As Mnemonic:  MS Contin 15 mg/12 hr oral tablet, extended release ; Simple Display Line:   15 mg, 1 tab, By mouth, BID ; Catalog Code: morphine ; Order Dt/Tm:  5/10/2013 10:18:31 |
| morphine | : morphine ; Status:  Deleted ; Ordered As Mnemonic:  MS Contin 60 mg/12 hours oral tablet, extended release ; Simple Display Line:   120 mg, 2 tab, By mouth, Q12H ; Catalog Code: morphine ; Order Dt/Tm:  5/10/2013 10:18:13 |

**Social History**
Social History

(As Of: 12/7/2015 09:19:45 CST)

Tobacco:

Never smoker   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

Alcohol:

Denies   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

Substance Abuse:

Denies   (Last Updated: 11/16/2015 09:23:20 CST by Finnegan MA, Shellsea)

**Procedure History**

Procedure History

(As Of: 12/7/2015 09:19:45 CST)

Anesthesia Minutes:  0 ; Procedure Name:  Cesarean section ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm:  12/7/2015 09:16:15 CST

Anesthesia Minutes:  0 ; Procedure Name:  Breast reconstruction ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm: 12/7/2015 09:16:15 CST

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

| | |
|---|---|
| Account Number: AMB000000289619 | DOS: 12/7/2015     Report Request ID:  76717755 |
| Patient Name:   FLANAGAN, JAMIE SUE | DOB:          Print Date/Time:  11/9/2016 08:27 CST |

PAGE 24/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 292 of 550

LIN00292

## CoxHealth

### Powerform

Anesthesia Minutes:  0 ; Procedure Name:  spinal fusion with cage and graft ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm: 12/7/2015 09:16:15 CST

Anesthesia Minutes:  0 ; Procedure Name:  TAH BSO - Total abdominal hysterectomy and bilateral salpingo-oophorectomy ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm:  12/7/2015 09:16:15 CST

Anesthesia Minutes:  0 ; Procedure Name:  foot surgery bilateral ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm: 12/7/2015 09:16:15 CST

Anesthesia Minutes:  0 ; Procedure Name:  Cholecystectomy ; Procedure Minutes:  0 ; Last Reviewed Dt/Tm:  12/7/2015 09:16:15 CST

**Family History**
Family History

(As Of: 12/7/2015 09:19:46 CST)

**ROS**
ROS General Statement :  Denies significant change in weight, fever, chills & fatigue
ROS Eye Statement :  Denies changes in vision.
ROS ENT Statement :  Denies changes in hearing, sinus headaches or ENT symptoms.
ROS Cardiovascular Statement :  Denies chest pain, palpitations, and edema
ROS Respiratory Statement :  Denies cough, wheezing, and dyspnea
ROS GI Statement :  Denies nausea, vomiting, food intolerance, abdominal pain, & change in bowel pattern
ROS Genitourinary Statement :  Denies dysuria, urinary incontinence, breast lumps & vaginal discharge
ROS Musculoskeletal Admits To :  Back pain
ROS Skin Statement :  Denies rashes, lesions & pruritus
ROS Neurologic Admits To :  Paresthesia, Other: numbness in right foot and leg
ROS Psychiatric Statement :  Denies symptoms of anxiety, depression, & insomnia
ROS Endocrine Statement :  Denies excessive thirst, excessive urination, and changes in skin or hair texture
ROS Heme/Lymph Statement :  Denies easy bleeding and bruising
ROS Allergy/Immunology Statement :  Denies seasonal allergies and persistent infections
Sleep Statement :  Denies sleep problems

Hernandez MA, Lauren - 12/7/2015 9:10

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619              DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE          DOB:              Print Date/Time:  11/9/2016 08:27 CST

***CoxHealth***

*Visit Summary*

Electronically Signed By:

**Visit Summary**
Visit Summary | Springfield Neurological and Spine Institute

# JAMIE FLANAGAN

Race: White | Ethnicity: Not Hispanic or Latino | Gender: Female | DOB: ███████ | Language: eng
Patient IDs: 5209675

# Table of Contents

- Encounter
- Visit
- Reason for Visit
- Vital Signs
- Problem List
- Allergies, Adverse Reactions, Alerts
- Medications
- Results
- Medications Administered During Your Visit
- Immunizations
- Encounter Procedures
- Social History
- Assessment and Plan
- Instructions

Back to TopEncounter

12/7/15
Springfield Neurological and Spine Institute 3801 S National Ave Ste 700 Springfield, MO 65807- USA
Discharge Diagnosis: Chronic low back pain

Discharge Diagnosis: Lumbar radiculopathy

Attending Physician: Mace MD, J Charles
Referring Physician: Winkler MD, Anne

Back to TopVisit

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE               DOB: ███████ Print Date/Time:  11/9/2016 08:27 CST

PAGE 26/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 294 of 550
LIN00294

## *CoxHealth*

### *Visit Summary*

| Visit Date | Reason for Visit | Provider |
|---|---|---|
| 12/7/15 | Follow Up | Mace MD, J Charles |

Back to TopReason for Visit

Follow Up

Back to TopVital Signs

12/7/15

| | | |
|---|---|---|
| Pulse Rate | 69 | |
| Respiratory Rate | 17 | |
| Blood Pressure | 106/66 | |
| Height (inches) (Clinical) | 65 in | |
| Weight (lb) (Clinical) | 135 lb | |
| Weight (kg) (Clinical) | 61.36 kg | |
| BMI (Clinical) | 22.5 kg/m2 | |

Back to TopProblem List

Angioedema | Anxiety and depression | Chronic back pain | GERD (gastroesophageal reflux disease)

Back to TopAllergies. Adverse Reactions, Alerts

adhesive (Rash) | Ambien (Sleep walking) | Darvocet-N 50 (Rash) | Lunesta (Sleep walking)

Back to Top
Medications

alprazolam (Xanax)
0.25 mg, By mouth, at bedtime, As Needed, as needed for sleep, Refills: 0
atropine/hyoscyamine/PB/scopolamine (Donnatal)

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619    DOS: 12/7/2015    Report Request ID: 76717755
Patient Name:    FLANAGAN, JAMIE SUE    DOB ███    Print Date/Time: 11/9/2016 08:27 CST

## *CoxHealth*

### *Visit Summary*

1 tab, By mouth, as needed, As Needed, as needed for irritable bowel symptoms, Refills: 0

belladonna/caffeine/ergotamine/pentobarbital
1 tab, By mouth, as needed, As Needed, as needed for stomach cramps, Refills: 0

bupropion (Wellbutrin SR 150 mg/12 hours oral tablet, extended release)
1 tab, By mouth, twice daily, Refills: 0

carisoprodol (Soma)
350 mg, By mouth, every 8 hours, As Needed, as needed for pain, Refills: 0

HYDROmorphone (Dilaudid 4 mg oral tablet)
1 tab, By mouth, as needed, As Needed, as needed for pain, Refills: 0

hydroxychloroquine (Plaquenil Sulfate 200 mg oral tablet)
2 tab, By mouth, at bedtime, Refills: 0

ibuprofen
800 mg, By mouth, as needed, stopped taking 4-29, As Needed, as needed for pain, Refills: 0

methocarbamol (Robaxin-750 oral tablet)
1 tab, By mouth, every 8 hours, As Needed, as needed for pain, Refills: 0

morphine (morphine 100 mg/24 hours oral capsule, extended release)
2 cap, By mouth, every 12 hours, Refills: 0

ondansetron (Zofran 4 mg oral tablet)
1 tab, By mouth, every 6 hours, As Needed, as needed for nausea/vomiting, Refills: 0

pantoprazole (Protonix)
40 mg, By mouth, as needed, As Needed, as needed for acid reflux, Refills: 0

polyethylene glycol 3350 (Miralax) (MiraLax oral powder for reconstitution)
17 g, By mouth, at bedtime, dissolve in water before taking, Refills: 0

topiramate (Topamax 50 mg oral tablet)
1 tab, By mouth, twice daily, Refills: 0
Back to TopResults


No data available for this section

Back to TopMedications Administered During Your Visit


**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE          DOB                   Print Date/Time:  11/9/2016 08:27 CST

**CoxHealth**

*Visit Summary*

No data available for this section

Back to TopImmunizations

No data available for this section

Back to TopEncounter Procedures

No data available for this section

Back to TopSocial History

| Social History Type | Response |
|---|---|
| Smoking Status | Never smoker |

Back to TopAssessment and Plan
Extracted from:
Title: Office Visit - Comprehensive     Author: Mace MD, J Charles          Date: 12/7/15
Assessment/Plan
Chronic low back pain
Lumbar radiculopathy
Other
History of L5-S1 PLIF in 2011

Chronic low back pain and associated bilateral (R>L) leg pain, she has continued to have symptom even after 2011 surgery

Imaging with what appears to be good fusion L5-S1 but some progression of the degeneration at L4-5 with some left L4-5 foraminal stenosis.

No role for surgical intervention at this time, she will try water exercises and exercise for core strengthening.

Future Appointments

Appointment Date: 05/09/2016 09:15:00 am
Scheduled Provider: Newbold MD, Steve
Location: Fam Med Monett
Appointment Type: Established Patient

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE          DOB          Print Date/Time:  11/9/2016 08:27 CST

## *CoxHealth*

*Visit Summary*

Future Scheduled Tests

**Referral:**

- Referral Allergy/Immunology 11/16/15 3:00 AM

Referrals to Other Providers

Referred by: Newbold MD, Steve

Back to TopInstructions

No data available for this section

We invite you to access your health record at www.CoxHealth.com/Express. Create your account and use your Patient ID at the top of this document as your access code to Connect to Your Chart. If you wish to connect to a patient under the age of 18. please ask the front desk for assistance.

Document Created
December 9, 2015

Encounter Date
From December 7, 2015

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015              Report Request ID:   76717755
Patient Name:    FLANAGAN, JAMIE SUE               DOB:        Print Date/Time:   11/9/2016 08:27 CST

## *CoxHealth*

### *Clinical Diagnosis*

**Diagnosis: Chronic low back pain**
**Last Reviewed Date:** 12/7/2015        **Responsible Provider:** Mace MD,J Charles
**Status:** Active

**Diagnosis: Lumbar radiculopathy**
**Last Reviewed Date:** 12/7/2015        **Responsible Provider:** Mace MD,J Charles
**Status:** Active

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619        DOS: 12/7/2015      Report Request ID: 76717755
Patient Name:    FLANAGAN, JAMIE SUE        DOB ▮▮▮▮▮ Print Date/Time: 11/9/2016 08:27 CST

PAGE 31/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 299 of 550 LIN00299

## *CoxHealth*

> ### *Medications*

> ### *Documented medications*

Order: **morphine (morphine 100 mg/24 hours oral capsule,extended release)**
Order Date/Time: 12/7/2015 09:17 CST
Order Status: Documented
Ordering Physician:                                          Consulting Physician:
Entered By: Hernandez MA,Lauren on 12/7/2015 09:17 CST
Order Details: 200 mg, 2 cap, By mouth, Q12H, 0, 0, Substitution Permitted
Order Comment:
Action Type: Document              Action Date/Time: 12/7/2015 09:17 CST    Action Personnel: Hernandez MA,Lauren
Responsible Provider:                                          Communication Type:
Order Details: 200 mg, 2 cap, By mouth, Q12H, 0, 0, Substitution Permitted
Review Information:
Doctor Cosign: Not Required

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619              DOS: 12/7/2015              Report Request ID:   76717755
Patient Name:    FLANAGAN, JAMIE SUE          DOB                        Print Date/Time:   11/9/2016 08:27 CST

PAGE 32/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43
Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 300 of 550
LIN00300

## *CoxHealth*

### All Specialty Flowsheet

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
|---|---|---|---|---|
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | - | in | |
| Weight (kg) (Clinical) | - | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | - | lb | |
| MAP | 79 | - | | |
| Respiratory Rate | 17 | - | | |
| BP Location | Arm, left | - | | |
| Pain Quality | worse with sitting | - | | |
| Pain Location | low back | - | | |
| Pain Intensity | 5 | - | | [5] |
| Pulse Rate | 69 | - | | |
| BP Systolic | 106 | - | | |
| BP Diastolic | 66 | - | | |
| Chief Complaint Details | increased low back pain | - | | |
| Physicians and Specialties | See Below T1 | - | | |
| Information Given By | Patient | - | | |
| BMI (Clinical) | 22.5 | - | kg/m2 | |

Textual Results

T1:    12/7/2015 09:10 CST (Physicians and Specialties)
       Dr Beth Knox (pcp) Dr Ann Winkler (rheumatologist) Dr Donald Hopewell (pain management) Dr Diane Cornelison
       (neurologist)

### Measurement

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
|---|---|---|---|---|
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | - | in | |
| Weight (kg) (Clinical) | - | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | - | lb | |
| BMI (Clinical) | 22.5 | - | kg/m2 | |
| Pulse Rate | 69 | - | | |
| BP Systolic | 106 | - | | |
| BP Diastolic | 66 | - | | |
| MAP | 79 | - | | |
| Respiratory Rate | 17 | - | | |
| BP Location | Arm, left | - | | |
| Pain Intensity | 5 | - | | [5] |
| Pain Location | low back | - | | |
| Pain Quality | worse with sitting | - | | |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619          DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:   FLANAGAN, JAMIE SUE          DOB          Print Date/Time:  11/9/2016 08:27 CST

## *CoxHealth*

### *Measurements*

#### *Measurements*

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   SYSTEM

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Height | 65.00 | in | |
| Weight | 61.36 | kg | |

#### *Measurements(Clinical)*

| Recorded Date | 12/7/2015 | 12/7/2015 | | |
|---|---|---|---|---|
| Recorded Time | 09:10 CST | 09:10 CST | | |
| Recorded By | Hernandez MA,Lauren | SYSTEM | | |
| Procedure | | | Units | Reference Range |
| Height (inches) (Clinical) | 65 | – | in | |
| Weight (kg) (Clinical) | – | 61.36 | kg | |
| Weight (lb) (Clinical) | 135 | – | lb | |
| BMI (Clinical) | 22.5 | – | kg/m2 | |

### *Pain*

#### *Pain/Aldrete/Sedation Score*

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   Hernandez MA,Lauren

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Pain Intensity | 5 | | [5] |
| Pain Location | low back | | |
| Pain Quality | worse with sitting | | |

### *Vital Signs*

#### *Vital Sign Documentation*

Recorded Date   12/7/2015
Recorded Time   09:10 CST
Recorded By   Hernandez MA,Lauren

| Procedure | | Units | Reference Range |
|---|---|---|---|
| Pulse Rate | 69 | | |
| BP Systolic | 106 | | |
| BP Diastolic | 66 | | |
| MAP | 79 | | |
| Respiratory Rate | 17 | | |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR
Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:   76717755
Patient Name:   FLANAGAN, JAMIE SUE                 DOB ▮▮▮▮▮▮    Print Date/Time:   11/9/2016 08:27 CST

PAGE 34/35 * RCVD AT 11/30/2016 9:31:14 AM [Central Standard Time] * SVR:NE1PWFAX101/0 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):08-43

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 302 of 550   LIN00302

## *CoxHealth*

| *Vital Signs* |
|---|

| *Vital Sign Documentation* |
|---|

Recorded Date          12/7/2015
Recorded Time          09:10 CST
Recorded By    Hernandez MA,Lauren

| Procedure | Units | Reference Range |
|---|---|---|
| BP Location          Arm, left | | |

**CONFIDENTIAL PATIENT INFORMATION**

UNAUTHORIZED USE IS STRICTLY PROHIBITED CONTACT (417)269-6068 IMMEDIATELY IF THIS MATERIAL IS RECEIVED IN ERROR

Account Number: AMB000000289619                    DOS: 12/7/2015          Report Request ID:  76717755
Patient Name:    FLANAGAN, JAMIE SUE              DOB: ▮▮▮▮        Print Date/Time:  11/9/2016 08:27 CST



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E
Springfield, MO 65807-5233

Phone: (417)888-0167
Fax: (417)888-0189

| | | |
|---|---|---|
| **Service Date:** 10/05/2016 | | |
| **Service Location:** Elite Pain Management LLC MO | **Place Of Service:** OFFICE | |
| **Rendering Provider:** KOKOSZKA, MELISSA J  MD | **PCP/Ref. Physician:** Powell, Crystal | |

| | | |
|---|---|---|
| **Patient:** Flanagan, Jamie | **Age & DOB:** 36 year ▮▮▮▮ | **Gender:** female |
| **Address:** 1625 Musky Dime Dr  CRANE  MO - 65633 | | **Home Phone:** (417)459-5879 |

### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING** 99204 - New Patient Office Visit, 45min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

## VISIT INFORMATION

### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** yes - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.
- **Provider #1:** Dr. Hopewell
- **Medication, Dose, Frequency #1:** morphine ER 100mg 2 tabs twice a day. (200mg BID)
- **Remaining Supply #1:** #2
- **Last Refill Date #1:** 8/30/16
- **Provider #2:** Dr. Hopewell
- **Medication, Dose, Frequency #2:** oxycodone 30mg 1 tab 4 times daily PRN
- **Remaining Supply #2:** #5
- **Last Refill Date #2:** 8/30/16

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit: 4:** (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
  - **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes
**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

    **Extremity Weakness:** no

    **Urinary Incontinence:** no

    **Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

    driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

**PAST MEDICAL HISTORY:**
    Anemia
    GERD
    Migraines
    Depression
    Anxiety Disorder
    **Other Medical Conditions:** rheumatological disease of unknown type.

**PAST SURGICAL HISTORY:**
    Cholecystectomy
    EGD x4
    Colonoscopy x3
    Cesarean Section
    Hysterectomy
    Lumbar Spine Surgery fusion 2011
    Dental Surgery
    **Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.

**FAMILY HISTORY:**
    Coronary Artery Disease: father, grandparent(s).
    Hypertension: mother, grandparent(s).
    Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
    CVA: grandparent(s).
    Depression: mother, father, grandparent(s), brother(s).
    Anxiety Disorder: mother, grandparent(s), brother(s).
    History of Substance Abuse: father, grandparent(s), brother(s).
    Rheumatoid Arthritis: grandparent(s)
    **Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency

**SOCIAL HISTORY:**
    **Marital Status:** married
    **Occupation:** disabled
    **Highest Level of Education:** college
    **Number of Living Children:** 2
    **History of Criminal History:** denies
    **Other Occupants in the Home:** spouse, child/children.
    **Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.

History of Tobacco Use: no patient states she has never used tobacco on a regular basis.

History of Alcohol Use: **Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others?** no yes, in the past
**Type of Alcohol:** wine, liquor.
**They have been drinking for:** 5 years,
**Drinks per Month:** 16
**Have they quit:** yes
**They quit:** 5-10 years ago.

History of Illegal Drug Use: denies

Controlled Substance History (As per patient):

**Current Dependence on Controlled Substances:** yes
**Current Addiction to Controlled Substances:** no
**Past Addiction to Controlled Substances:** no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk

## MEDICATIONS:

Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14 Rx Date : 10/12/2016
Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28 Rx Date : 10/12/2016
Hydroxychloroquine 200mg Rx Date : 10/05/2016
Methocarbamol 750mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016
Morphine 100mg Rx Date : 10/05/2016
Oxycodone 30mg Rx Date : 10/05/2016
Soma 350mg Rx Date : 10/05/2016
Alprazolam 0.5mg Rx Date : 10/05/2016

## CURRENT MEDICATIONS:

Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14 Rx Date : 10/12/2016
Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28 Rx Date : 10/12/2016

## REVIEW OF SYSTEMS:

**General:** trouble sleeping.
**Skin:** lesions/hives.
**Head:** headache, tingling.
**Ears:** denies decreased hearing, ringing in ears, earache, drainage, and pain.
**Nose:** hay fever.
**Oropharynx:** denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
**Breasts:** denies lumps/masses, pain, and discharge.
**Respiratory:** denies cough, wheezing, coughing up blood, and shortness of breath
**Cardiovascular:** denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
**Gastrointestinal:** heartburn, constipation.
**Urinary:** denies urgency, burning or pain, blood in urine, and incontinence.
**Vascular:** denies calf pain and cramping while walking.
**Musculoskeletal:** muscle or joint pain, swelling of joints, stiffness, axial spine pain.
**Neurologic:** numbness, tingling.
**Hematologic:** ease of bruising.
**Endocrine:** cold intolerance.
**Psychiatric:** nervousness/anxiety, memory loss. Depression.

## RISK ASSESSMENTS:

(The following questions were answered by the patient in order to assess whether or not they are at risk for opioid abuse, opioid addiction, depression, anxiety, and alcohol abuse respectively)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

Flanagan, Jamie   DOB███████   MR#:6027   DOS:10/05/2016                     Page 4 of 11

## OPIOID RISK TOOL:

**The following questions are regarding your family's history of substance abuse, please select the proper answers based on your gender:**

> **Have any member(s) abused alcohol?** Yes, I have a family member with a history of alcohol abuse and I am female. (1)

> **Have any member(s) abused illegal drugs?** Yes, I have a family member with a history of illegal drug abuse and I am female.(2)

> **Did any member(s) abuse prescription drugs?** no (0)

**The following questions are regarding your personal history of substance abuse, please select the proper answers based on your gender:**

> **Have you ever abused alcohol?** no (0)

> **Have you ever abused illegal drugs?** no (0)

> **Have you ever abused prescription drugs?** no (0)

**Are you between 16 and 40 years old?** yes(1)

**Do you have a history of preadolescent sexual abuse?** no(0)

**The following questions are about psychological disease, please answer again according to your gender:**

> **Have you ever been diagnosed with Attention Deficit Disorder (ADD) or Obsessive Compulsive Disorder (OCD)?** no(0)

> **Have you ever been diagnosed with Depression?** Yes, I have been diagnosed with depression and I am female.(1)

**Total Score (out of 26):** 5

**Degree of Risk:** moderate (4-7) Moderate

## DAST-10:

Have you ever used drugs other than those required for medical reasons? no (0)
Have you abused more than one drug at a time? not applicable (0)
Are you unable to stop using drugs when you want to? not applicable (0)
Have you ever had blackouts or flashbacks as the result of drug use? not applicable (0)
Do you ever feel bad or guilty as a result of your drug use? not applicable (0)
Does your spouse (or parents) ever complain about your involvement with drugs? not applicable (0)
Have you ever neglected your family due to your drug use? not applicable (0)
Have you engaged in illegal activity because of your drug use? not applicable (0)
Have you experienced withdrawal symptoms (felt sick) when you stopped taking drugs? not applicable (0)
Have you had medical problems as a result of your drug use (e.g. memory loss, hepatitis, convulsions, bleeding)? not applicable (0)
Total Score (out of 10): 0
Degree of Risk: no problems reported (0)

## PHQ-9:

**Over the last 2 weeks, how often have you been bothered by any of the following problems?**

**Little interest or pleasure in doing things:** not at all (0)

**Feeling down, depressed, or hopeless:** not at all (0)

**Trouble falling or staying asleep, or sleeping too much:** nearly every day (3)

**Feeling tired or having little energy:** more than half the days (2)

**Poor appetite or overeating:** not at all (0)

**Feeling bad about yourself - or that you are a failure or have let yourself or your family down:** not at all (0)

**Trouble concentrating on things, such as reading the newspaper or watching television:** not at all(0)

**Moving or speaking so slowly that other people have noticed, or the opposite - being so fidgety or restless that you have been moving around a lot more than usual:** not at all (0)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 307 of 550    LIN00307

**Thought that you would be better off dead or of hurting yourself in some way:** not at all (0)

**If you checked off any problems above, how difficult have these problems made it for you to do your work, take care of things at home, or get along with other people?** somewhat difficult

**Total Score (Out of 27):** 5

**Interpretation:** mild depression (5-9)


## GAD-7:

**Over the last 2 weeks, how often have you been feeling nervous, anxious, or on the edge?** not at all (0)

**How often have you not been able to stop or control worrying?** several days (1)

**How often do you feel you are worrying too much about different things?** not at all (0)

**How often do you have trouble relaxing?** several days (1)

**How often do you become so restless that it is hard to sit still?** not at all (0)

**How often do you feel easily annoyed or irritable?** several days (1)

**How often do you feel as if something awful might happen?** not at all (0)

**Total Score:** 3

**Score of first 2 questions (GAD-2):** 1

Interpretation: no indication of probable anxiety disorder (0-7)


## CAGE:

**The following questions refer to your alcohol consumption:**

**Have you ever felt you should Cut down on your drinking?** not applicable (0)

**Have people Annoyed you by criticizing your drinking?** not applicable (0)

**Have you ever felt bad or Guilty about your drinking?** not applicable (0)

**Have you ever had a drink first thing in the morning to steady your nerves or to get rid of a hangover (Eye opener)?** not applicable (0)

**Score:** 0 - A total score of 2 or greater is considered clinically significant.


## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

**EMG:** Yes, **Year:** 2010,
Will attempt to obtain results.

**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.


## PREVIOUS TREATMENT(S):
### PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:
#### SHORT ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

#### LONG ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|

Flanagan, Jamie  DOB [REDACTED]  MR#:6027  DOS:10/05/2016  Page 6 of 11

| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

## MUSCLE RELAXANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

## NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

## ANTICONVULSANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

## BENZODIAZEPINES:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

## BEST PAIN MANAGEMENT REGIMEN:

As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

## PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

## PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

## HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

<u>CHIROPRACTIC MANIPULATION:</u> no

<u>INTERVENTIONAL PROCEDURES:</u> yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
    ●Improvement: yes.
**ESI x** greater than 10 (lumbar)
    ●Improvement: temporary
**Spinal Cord Stimulation** trial
    ●Improvement: no

<u>GOALS:</u>

- Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.
- **Patient Goal 1:** "to have less pain."
- **Patient Goal 2:** "be able to do a little bit more at the house."
- **Patient Goal 3:** "be able to sleep a little bit better."

<u>TOXICOLOGY AND BOARD OF PHARMACY REVIEW:</u>

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Hannah Thomas MA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, patient is status post hysterectomy and/or oophorectomy

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**

<u>VITALS:</u>

**Temperature:** 98.5 degrees Fahrenheit
**Pulse:** 70 beats per minute
**Blood Pressure:** 116/84 mmHg
**Respiratory Rate:** 16 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 97%%

<u>GENERAL PHYSICAL EXAMINATION:</u>

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.

<u>LUMBOSACRAL EXAM:</u>

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**VISUAL INSPECTION OF THE PATIENT'S GAIT:**
   WNL

**VISUAL INSPECTION OF PATIENT'S POSTURE:**
   Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.

**TENDERNESS TO PALPATION:**
   **Lumbar paraspinal muscle(s):** positive bilaterally
   **SI joint area(s):** negative bilaterally

**RANGE OF MOTION OF THE TRUNK:**
   **Flexion:** decreased
   **Extension:** decreased
   **Flexion to the left:** decreased
   **Flexion to the right:** decreased
   **Lateral rotation to the left:** decreased
   **Lateral rotation to the right:** decreased

**SENSATION:**
   **Proprioception:** The patient has normal proprioception in their bilateral lower extremities
   Sensation in the right lower extremity: normal
   Sensation in the left lower extremity: normal

**MUSCLE STRENGTH:**
   **Left lower extremity with hip flexion:** 5/5
   **Right lower extremity with hip flexion:** 5/5
   **Left lower extremity with hip extension:** 5/5
   **Right lower extremity with hip extension:** 5/5
   **Left lower extremity with knee flexion:** 5/5
   **Right lower extremity with knee flexion:** 5/5
   **Left lower extremity with knee extension:** 5/5
   **Right lower extremity with knee extension:** 5/5
   **Left lower extremity with plantar flexion:** 5/5
   **Right lower extremity with plantar flexion:** 5/5
   **Left lower extremity with dorsiflexion:** 5/5
   **Right lower extremity with dorsiflexion:** 5/5

**REFLEXES:**
   **Right patellar DTR:** 2/5
   **Right Medial Hamstring DTR:** 2/5
   **Right Achilles DTR:** 2/5
   **Left patellar DTR:** 2/5
   **Left Medial Hamstring DTR:** 2/5
   **Left Achilles DTR:** 2/5

**EVALUATION FOR LUMBAR SPONDYLOSIS:**
   **Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

**EVALUATION FOR LUMBOSACRAL RADICULOPATHY:**
   **Straight Leg Raise Test:** negative bilaterally

**EVALUATION FOR PIRIFORMIS SYNDROME:**
   **Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

LIN0311

## EVALUATION FOR SACROILIITIS:

**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

## RISK FACTORS:

The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** yes - The patient was counseled regarding the risks of combining benzodiazepines and opioids. The patient was informed that the benzodiazepine must be TAPERED and discontinued. The patient was informed that his/her prescribing physician must taper and discontinue the benzodiazepine and start the patient on a different, non-benzodiazepine medication for their underlying condition.
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below.**

## ASSESSMENT AND PLAN:

### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

## LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches):** 34
**Sizing:** L (33-35in torso)
**8in Extension Piece:** No
**Length of Need:** 99

## MEDICAL MANAGEMENT RECOMMENDATIONS:

LIN00312

## BENEFITS VERSUS RISK:

In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM? Unsure, will await urine drug toxicology screening and confirmation results prior to prescribing any medications

## GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- Patient has failed or has had adverse reactions to the following medications: gabapentin (Neurontin) somnolence
- Patient was given specific instructions regarding the following: xanax: discontinue immediately (takes prn occasionally) soma: currently taking 4x/day, will decrease to 3x/day x 3 days, then 2x/day x 3days, decrease 1x/day then discontinue
- Currently on 640MEM and will need to wean off high dose opioid add meloxicam and trial lyrica samples at follow up pending toxicology results

## DISCLAIMERS AND PATIENT AGREEMENT:

- By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.
- By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.
- Patient was educated regarding treatment goals regarding medical management of pain.
- Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, **overdose, and DEATH**, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician
- I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.
Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.
- **I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**
**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**
- **Patient was educated regarding the patient treatment agreement. The patient was given a copy of this agreement.**
- **Patient was educated regarding lab testing (including HIV,hepatitis, etc.). The patient was given a copy of this consent.**
- **Patient was educated regarding the clinic's Privacy Policy. The patient was given a copy of the policy.**
- **Patient was educated regarding Patient Rights and Responsibilities. The patient was**

given a copy of this document.
• **Patient was educated regarding proper use of the pain management medicines prescribed.**
• **Patient was educated regarding the proper disposal of unused pain management medications that have been prescribed.**
• **The patient has been thoroughly been told that as per Elite Pain Management policy, only current prescriptions (prescribed for use during the current/present month may be taken. The use of previous "old" prescriptions will not be tolerated, will be considered inconsistent if present on the urine drug confirmation test, and may result in discharge from the clinic.**
• **Full toxicology screen as deemed necessary. Yes**
• **The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**
• **Notes: Referred to APT. Rheumatologist will prescribe medication for one week and patient will bring in bottles at follow up.**



**Melissa Kokoszka M.D.**

**This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.**

Paients Signature

PATIENT IMAGE(S):   Signature SIGNATURE 10/05/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E
Springfield, MO 65807-5233

**Phone:** (417)888-0167
**Fax:** (417)888-0189

| | | |
|---|---|---|
| **Service Date:** 10/12/2016 | | |
| **Service Location:** Elite Pain Management LLC MO | **Place Of Service:** OFFICE | |
| **Rendering Provider:** TONKIN, DAVID M  MD | **PCP/Ref. Physician:** Powell, Crystal | |

| | | |
|---|---|---|
| **Patient:** Flanagan, Jamie | **Age & DOB:** 36 year | **Gender:** female |
| **Address:** 1625 Musky Dime Dr  CRANE  MO - 65633 | | **Home Phone:** (417)459-5879 |

#### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99214 - Established Patient Office Visit, 25min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

### VISIT INFORMATION

#### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** yes - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.
- **Provider #1:** Dr. Hopewell
- **Medication, Dose, Frequency #1:** morphine ER 100mg 2 tabs twice a day. (200mg BID)
- **Remaining Supply #1:** #18 on 10/12/16
- **Last Refill Date #1:** 10/10/16
- **Provider #2:** Dr. Hopewell
- **Medication, Dose, Frequency #2:** oxycodone 30mg 1 tab 4 times daily PRN
- **Remaining Supply #2:** #18 on 10/12/16
- **Last Refill Date #2:** 10/10/16

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
    - **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes
**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

**Extremity Weakness:** no

**Urinary Incontinence:** no

**Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

Reviewed history of present illness and no changes as of 10/12/2016

**PAST MEDICAL HISTORY:**
Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of 10/12/2016**

**PAST SURGICAL HISTORY:**
Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of 10/12/2016**

**FAMILY HISTORY:**
Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of 10/12/2016**

**SOCIAL HISTORY:**
**Marital Status:** married
**Occupation:** disabled

**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
**Other Occupants in the Home:** spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of** 10/12/2016

**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

**History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others?** no yes, in the past
**Type of Alcohol:** wine, liquor.
**They have been drinking for:** 5 years,
**Drinks per Month:** 16
**Have they quit:** yes
**They quit:** 5-10 years ago.

**History of Illegal Drug Use:** denies

**Controlled Substance History (As per patient):**

> **Current Dependence on Controlled Substances:** yes
> **Current Addiction to Controlled Substances:** no
> **Past Addiction to Controlled Substances:** no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
**Reviewed allergies and no changes as of** 10/12/2016
**Reviewed medications and no changes as of** 10/12/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Methocarbamol 750mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016
Morphine 100mg Rx Date : 10/05/2016
Oxycodone 30mg Rx Date : 10/05/2016
Soma 350mg Rx Date : 10/05/2016
Alprazolam 0.5mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

**General:** trouble sleeping.
**Skin:** lesions/hives.
**Head:** headache, tingling.
**Ears:** denies decreased hearing, ringing in ears, earache, drainage, and pain.
**Nose:** hay fever.
**Oropharynx:** denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
**Breasts:** denies lumps/masses, pain, and discharge.
**Respiratory:** denies cough, wheezing, coughing up blood, and shortness of breath
**Cardiovascular:** denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
**Gastrointestinal:** heartburn, constipation.
**Urinary:** denies urgency, burning or pain, blood in urine, and incontinence.
**Vascular:** denies calf pain and cramping while walking.
**Musculoskeletal:** muscle or joint pain, swelling of joints, stiffness, axial spine pain.
**Neurologic:** numbness, tingling.
**Hematologic:** ease of bruising.
**Endocrine:** cold intolerance.
**Psychiatric:** nervousness/anxiety, memory loss. Depression.
**Reviewed all systems and no changes as of.** 10/12/2016

**RADIOLOGIC & DIAGNOSTIC STUDIES:** Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

**EMG:** Yes, **Year:** 2010,
Will attempt to obtain results.

**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.

**PREVIOUS TREATMENT(S):**

**PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:**

**SHORT ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

**LONG ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

**MUSCLE RELAXANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

**NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

**ANTICONVULSANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

**BENZODIAZEPINES:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

## BEST PAIN MANAGEMENT REGIMEN:

As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

## PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

## PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

## HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

## CHIROPRACTIC MANIPULATION: no

## INTERVENTIONAL PROCEDURES: yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
  ●**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
  ●**Improvement:** temporary
**Spinal Cord Stimulation** trial
  ●**Improvement:** no

## GOALS:

● Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

## FOLLOW-UP INFORMATION:

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Kokoszka
**Percentage of pain relief from current pain management regimen:** 60%
**Percentage improvement in activities of daily living:** 60%
**Physical Functioning:** better
**Family Relationships:** same
**Social Relationships:** same
**Mood:** same
**Sleep Patterns:** same
**Overall Functioning:** same

**Any New Complaints:** yes (describe) popping in low back
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no
**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** no
**Are you progressing towards previously documented goals?** yes
**Are you experiencing adverse side effects from currently prescribed pain medications?** no

## CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

## TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None
**Previous Inconsistent Urine Toxicology Results:**

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Brooke Jones, RMA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, pregnancy test was not performed today, the patient has been notified

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**
**Pill Count(s):**

    **Medication # 1:** MScontin 100mg #18

    • **Inconsistency:** no

    **Medication # 2:** Oxycodone 30mg #18

    • **Inconsistency:** no

## VITALS:

**Temperature:** 99.6 degrees Fahrenheit
**Pulse:** 66 beats per minute
**Blood Pressure:** 138/88 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 98%%

## GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and

accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
10/12/2016

## LUMBOSACRAL EXAM:
### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

### MUSCLE STRENGTH:
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

### REFLEXES:
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

## EVALUATION FOR LUMBAR SPONDYLOSIS:

**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

## EVALUATION FOR LUMBOSACRAL RADICULOPATHY:

**Straight Leg Raise Test:** negative bilaterally

## EVALUATION FOR PIRIFORMIS SYNDROME:

**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

## EVALUATION FOR SACROILIITIS:

**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

## RISK FACTORS:

The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** yes - The patient was counseled regarding the risks of combining benzodiazepines and opioids. The patient was informed that the benzodiazepine must be TAPERED and discontinued. The patient was informed that his/her prescribing physician must taper and discontinue the benzodiazepine and start the patient on a different, non-benzodiazepine medication for their underlying condition.
- *Obstructive Sleep Apnea/Supplemental Oxygen: no*
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below.** Reviewed risk factors and no changes as of 10/12/2016

## ASSESSMENT AND PLAN:

### Lumbosacral Degenerative Disc Disease with Radiculopathy:

- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### Lumbar Myofascial Syndrome:

- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

### Lumbar Failed Back Surgery Syndrome:

- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice

- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

## LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches): 34**
**Sizing:** L (33-35in torso)
**8in Extension Piece:** No
**Length of Need:** 99

## MEDICAL MANAGEMENT RECOMMENDATIONS:

### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence
- **Patient was given specific instructions regarding the following:** Soma: did not follow recommendations; for 3 days decrease to 2/day then for 3 days decrease to 1 per day, then discontinue
- Currently on 640MEM and will need to wean off high dose opioid add meloxicam and trial lyrica samples at follow up pending toxicology results

### PRESCRIPTIONS:

Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14, starting 10/12/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28, starting 10/12/2016 , No Refill Ordered

### DISCLAIMERS AND PATIENT AGREEMENT:

- By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.
- By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.
- Patient was educated regarding treatment goals regarding medical management of pain.
- Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, **overdose, and DEATH,** and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician
- I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.
Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.
- **I have also has been educated, acknowledge, and thoroughly understand that all**

medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.
The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
• Full toxicology screen as deemed necessary. Yes
• The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.
• Notes: Will prescribe medication for one week starting 10/17/16 and patient will bring in bottles at follow up.

David Tonkin M.D.

*This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.Patricia Reed, N.P.*

Patient's Signature

PATIENT IMAGE(S):    Signature SIGNATURE 10/12/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E                                            **Phone:** (417)888-0167
Springfield, MO 65807-5233                                       **Fax:** (417)888-0189

**Service Date:**        10/24/2016
**Service Location:**    Elite Pain Management LLC MO            **Place Of Service:**   OFFICE
**Rendering Provider:**KOKOSZKA, MELISSA J  MD                  **PCP/Ref. Physician:** Powell, Crystal

**Patient:**    Flanagan, Jamie            **Age & DOB:** 36 year ▮▮▮▮▮   **Gender:**      female
**Address:**    1625 Musky Dime Dr  CRANE  MO - 65633                         **Home Phone:**  (417)459-5879

## CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99213 - Established Patient Office Visit, 15min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

## VISIT INFORMATION

## HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** no - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes

**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

> **Extremity Weakness:** no
>
> **Urinary Incontinence:** no
>
> **Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

> driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

**Reviewed history of present illness and no changes as of 10/24/2016**

## PAST MEDICAL HISTORY:

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of 10/24/2016**

## PAST SURGICAL HISTORY:

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of 10/24/2016**

## FAMILY HISTORY:

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of 10/24/2016**

## SOCIAL HISTORY:

**Marital Status:** married
**Occupation:** disabled
**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
**Other Occupants in the Home:** spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of 10/24/2016**
**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others? no yes, in the past
Type of Alcohol: wine, liquor.
They have been drinking for: 5 years,
Drinks per Month: 16
Have they quit: yes
They quit: 5-10 years ago.

History of Illegal Drug Use: denies

Controlled Substance History (As per patient):

Current Dependence on Controlled Substances: yes
Current Addiction to Controlled Substances: no
Past Addiction to Controlled Substances: no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
Reviewed allergies and no changes as of 10/24/2016
Reviewed medications and no changes as of 10/24/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Methocarbamol 750mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

General: trouble sleeping.
Skin: lesions/hives.
Head: headache, tingling.
Ears: denies decreased hearing, ringing in ears, earache, drainage, and pain.
Nose: hay fever.
Oropharynx: denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
Breasts: denies lumps/masses, pain, and discharge.
Respiratory: denies cough, wheezing, coughing up blood, and shortness of breath
Cardiovascular: denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
Gastrointestinal: heartburn, constipation.
Urinary: denies urgency, burning or pain, blood in urine, and incontinence.
Vascular: denies calf pain and cramping while walking.
Musculoskeletal: muscle or joint pain, swelling of joints, stiffness, axial spine pain.
Neurologic: numbness, tingling.
Hematologic: ease of bruising.
Endocrine: cold intolerance.
Psychiatric: nervousness/anxiety, memory loss. Depression.
Reviewed all systems and no changes as of. 10/24/2016

## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

MRI: Yes, I have personally reviewed these studies Year: 2015, Results: please see attached report,

CT: Yes, Year: 2013,
Will attempt to obtain results.

X-RAY: Yes, Year: 2016,
Will attempt to obtain results.

**EMG:** Yes,  **Year:** 2010,
Will attempt to obtain results.


**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.


## PREVIOUS TREATMENT(S):

### PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:

#### SHORT ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

#### LONG ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

#### MUSCLE RELAXANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

#### NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

#### ANTICONVULSANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

#### BENZODIAZEPINES:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

#### BEST PAIN MANAGEMENT REGIMEN:

As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...  11/2/2016

PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

CHIROPRACTIC MANIPULATION: no

INTERVENTIONAL PROCEDURES: yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
  ●**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
  ●**Improvement:** temporary
**Spinal Cord Stimulation** trial
  ●**Improvement:** no

GOALS:

● **Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.**
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

FOLLOW-UP INFORMATION:

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Tonkin
**Percentage of pain relief from current pain management regimen:** 20%
**Percentage improvement in activities of daily living:** I have declined in what I can do since last visit
**Physical Functioning:** worse
**Family Relationships:** same
**Social Relationships:** same
**Mood:** same
**Sleep Patterns:** worse
**Overall Functioning:** worse
**Any New Complaints:** yes (describe)nausea over last 5 days with decreased appetite
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no
**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** pain medicine is inadequate at making the pain tolerable
**Are you progressing towards previously documented goals?** yes I believe our goals were to reduce the amount of narcotics I take no my pain is not at a level I can function on a daily basis. Would like to try the sublingual tabs I sampled at last visit

Are you experiencing adverse side effects from currently prescribed pain medications? no
**Side effects experienced:** nausea sleep disturbances

## CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

## TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None - soma levels are decreasing
**Previous Inconsistent Urine Toxicology Results:**

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Brooke Jones, RMA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, pregnancy test was not performed today, the patient has been notified

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**
**Pill Count(s):**

**Medication # 1:** Oxymorphone 20mg #1

• **Inconsistency:** no

**Medication # 2:** Oxycodone 30mg #4

• **Inconsistency:** no

## VITALS:

**Temperature:** 98.1 degrees Fahrenheit
**Pulse:** 80 beats per minute
**Blood Pressure:** 107/68 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 98%%

## GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...  11/2/2016

**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
10/24/2016

## LUMBOSACRAL EXAM:

### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

### MUSCLE STRENGTH:
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

### REFLEXES:
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

### EVALUATION FOR LUMBAR SPONDYLOSIS:
**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 331 of 550   LIN00331

**EVALUATION FOR LUMBOSACRAL RADICULOPATHY:**
**Straight Leg Raise Test:** negative bilaterally

**EVALUATION FOR PIRIFORMIS SYNDROME:**
**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

**EVALUATION FOR SACROILIITIS:**
**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

**RISK FACTORS:**
The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** no
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below. Reviewed risk factors and no changes as of 10/24/2016**

**ASSESSMENT AND PLAN:**
**Lumbosacral Degenerative Disc Disease with Radiculopathy:**
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

**Lumbar Myofascial Syndrome:**
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

**Lumbar Failed Back Surgery Syndrome:**
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

**ANCILLARY SERVICES:**
I certify that I am the treating physician and I certify that the medical necessity information below is true, accurate and

complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

### LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches): 34**
**Sizing: L (33-35in torso)**
**8in Extension Piece: No**
**Length of Need: 99**
Date: 10/24/2016 The patient presented today for education regarding proper usage, fitting, and dispensing of his/her DDS500 lumbar brace, after such, all questions were answered to the patient's satisfaction, and the brace was dispensed. The patient was thoroughly notified that he/she may have an additional charge (co-pay) required by his/her insurance company.

### MEDICAL MANAGEMENT RECOMMENDATIONS:

#### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

#### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence
- **Patient was given specific instructions regarding the following:** Soma: did not follow recommendations; for 3 days decrease to 2/day then for 3 days decrease to 1 per day, then discontinue
- Currently on 640MEM and will need to wean off high dose opioid

#### CRITERIA FOR LONG ACTING OPIOID:

**The patient needs around the clock pain relief:** yes
**The patient is opioid tolerant:** yes, <u>Patients are considered opioid tolerant when taking at least:</u> 60mg oral morphine/day
**Are there risk factors to prescribing long term opioids to this patient:** yes -
**Will the patient be prescribed long acting opioids:** yes

#### PRESCRIPTIONS:

Ondansetron 8mg tablet , 1 Q8h , #21, starting 10/24/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h , #28, starting 10/24/2016 , No Refill Ordered
Opana Er 20mg , 1 Q12h , #14, starting 10/24/2016 , No Refill Ordered

#### DISCLAIMERS AND PATIENT AGREEMENT:

- **By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.**
- **By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.**
- **Patient was educated regarding treatment goals regarding medical management of pain.**
- **Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, overdose, and DEATH, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision**

of the prescribing physician
• I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.
Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.
**• I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**
**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**
**• Full toxicology screen as deemed necessary. Yes**
**• The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**
**Concerns: Patient was thoroughly educated that inconsistent urine toxicology test will not be tolerated, and continued failure to comply with Elite Pain Management rules will result in discharge from the clinic.**
**• Notes: Patient experiencing with decrease in medication and therefore will be given a zofran prescription as well. She accidently took an old morphine tablet over on 10/21/2016 and therefore will have a follow up in one week. She has been given a sample of lyrica 75mg (1 box) and instructed to take 1 capsule bid.**



Melissa Kokoszka M.D.

This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.



Patient's Signature

PATIENT IMAGE(S):   Signature SIGNATURE 10/24/2016



https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E
Springfield, MO 65807-5233

Phone: (417)888-0167
Fax: (417)888-0189

| | |
|---|---|
| **Service Date:** 10/31/2016 | |
| **Service Location:** Elite Pain Management LLC MO | **Place Of Service:** OFFICE |
| **Rendering Provider:** TONKIN, DAVID M  MD | **PCP/Ref. Physician:** Powell, Crystal |

| | | | |
|---|---|---|---|
| **Patient:** Flanagan, Jamie | **Age & DOB:** 36 year ████ | **Gender:** | female |
| **Address:** 1625 Musky Dime Dr  CRANE  MO - 65633 | | **Home Phone:** | (417)459-5879 |

### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99213 - Established Patient Office Visit, 15min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

### VISIT INFORMATION
### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** no - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes

**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

> **Extremity Weakness:** no
>
> **Urinary Incontinence:** no
>
> **Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

> driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

**Reviewed history of present illness and no changes as of** 11/02/2016

## PAST MEDICAL HISTORY:

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of** 11/02/2016

## PAST SURGICAL HISTORY:

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of** 11/02/2016

## FAMILY HISTORY:

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of** 11/02/2016

## SOCIAL HISTORY:

**Marital Status:** married
**Occupation:** disabled
**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
*Other Occupants in the Home:* spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of** 11/02/2016
**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

**History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others?** no yes, in the past
**Type of Alcohol:** wine, liquor.
**They have been drinking for:** 5 years,
**Drinks per Month:** 16
**Have they quit:** yes
**They quit:** 5-10 years ago.

**History of Illegal Drug Use:** denies

**Controlled Substance History (As per patient):**

**Current Dependence on Controlled Substances:** yes
**Current Addiction to Controlled Substances:** no
**Past Addiction to Controlled Substances:** no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
Lyrica Adverse Effects: rash/hives.
**Reviewed allergies and no changes as of** 11/02/2016
**Reviewed medications and no changes as of** 11/02/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

**General:** trouble sleeping.
**Skin:** lesions/hives Improving since stopping Lyrica
**Head:** headache, tingling.
**Ears:** denies decreased hearing, ringing in ears, earache, drainage, and pain.
**Nose:** hay fever.
**Oropharynx:** denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
**Breasts:** denies lumps/masses, pain, and discharge.
**Respiratory:** denies cough, wheezing, coughing up blood, and shortness of breath
**Cardiovascular:** denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
**Gastrointestinal:** heartburn, constipation.
**Urinary:** denies urgency, burning or pain, blood in urine, and incontinence.
**Vascular:** denies calf pain and cramping while walking.
**Musculoskeletal:** muscle or joint pain, swelling of joints, stiffness, axial spine pain.
**Neurologic:** numbness, tingling.
**Hematologic:** ease of bruising.
**Endocrine:** cold intolerance.
**Psychiatric:** nervousness/anxiety, memory loss. Depression.
**Reviewed all systems and no changes as of.** 11/02/2016

## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**EMG:** Yes,  **Year:** 2010,
Will attempt to obtain results.


**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.


PREVIOUS TREATMENT(S):
PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:

**SHORT ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

**LONG ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

**MUSCLE RELAXANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

**NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

**ANTICONVULSANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

**BENZODIAZEPINES:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

BEST PAIN MANAGEMENT REGIMEN:
**As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:**

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |
| **DRUG:** | **DOSE AND FREQUENCY:** |
| MSContin: | 100 mg 2 tabs twice a day. |
| **DRUG:** | **DOSE AND FREQUENCY:** |
| Soma (carisoprodol) | 350mg 4 times a day. |

PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** *yes, patient had a surgical consultation following the above mentioned surgery(s).*
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

CHIROPRACTIC MANIPULATION: no

INTERVENTIONAL PROCEDURES: yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
   ●**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
   ●**Improvement:** temporary
**Spinal Cord Stimulation** trial
   ●**Improvement:** no

GOALS:

● **Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.**
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

FOLLOW-UP INFORMATION:

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Kokoszka
**Percentage of pain relief from current pain management regimen:** 20% 30%
**Percentage improvement in activities of daily living:** Im not functioning well at all right now. My functioning has declined significantly since starting this clinic and in last week to two weeks
**Physical Functioning:** worse I am having horrible restless legs and even arms etc. That starts 3 hours after taking Exalgo. When I take exalgo again it is better for the 2 -3 hours then we are back to the restless crawling weak feeling that gets worse and worse until the next dose. I have been struggling sitting through even short periods of church etc.
**Family Relationships:** worse I can't do anything with my family at this time because the few times we have tried I have had to leave in the middle of what we are doing
**Social Relationships:** worse because of the above I've stopped attending church and doing much of anything outside of home
**Mood:** worse -
**Sleep Patterns:** worse can't fall asleep because of restlessness and if I do it wakes me up a couple hours later 10x more intense
**Overall Functioning:** worse
**Any New Complaints:** yes (describe) restlessness, crawling legs
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no

**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** pain medicine is inadequate at making the pain tolerable yes, please see side effects below
**Are you progressing towards previously documented goals?** no
**Are you experiencing adverse side effects from currently prescribed pain medications?** yes (describe) see above plus a rash started after 3rd dose of Lyrica that was stopped by the office on Friday.
**Side effects experienced:** itching sleep disturbances nausea other I've lost 6 pound in last week

## CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

## TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None
**Previous Inconsistent Urine Toxicology Results:**

Urine sample collected today for toxicology screening and confirmation: yes

Urine sample collection witnessed by: Brooke Jones, RMA

Temperature of urine sample within normal limits: yes

Urine pregnancy point of care testing performed today: no, pregnancy test was not performed today, the patient has been notified

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**
**Pill Count(s):**

**Medication # 1:** Oxymorphone 20mg #1

- **Inconsistency:** no

**Medication # 2:** Oxycodone 30mg #2

- **Inconsistency:** no

## VITALS:

**Temperature:** 98 degrees Fahrenheit
**Pulse:** 89 beats per minute
**Blood Pressure:** 119/84 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 99%%

## GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.

**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
11/02/2016

### LUMBOSACRAL EXAM:

#### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

#### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

#### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

#### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

#### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

#### MUSCLE STRENGTH:
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

#### REFLEXES:
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

#### EVALUATION FOR LUMBAR SPONDYLOSIS:

**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

### EVALUATION FOR LUMBOSACRAL RADICULOPATHY:
**Straight Leg Raise Test:** negative bilaterally

### EVALUATION FOR PIRIFORMIS SYNDROME:
**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

### EVALUATION FOR SACROILIITIS:
**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

### RISK FACTORS:
The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** no
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below.** Reviewed risk factors and no changes as of 11/02/2016

### ASSESSMENT AND PLAN:

#### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

#### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

#### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

## ANCILLARY SERVICES:

I certify that I am the treating physician and I certify that the medical necessity information below is true, accurate and complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

### LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches): 34**
**Sizing: L (33-35in torso)**
**8in Extension Piece: No**
**Length of Need: 99**
Date: 10/24/2016 The patient presented today for education regarding proper usage, fitting, and dispensing of his/her DDS500 lumbar brace, after such, all questions were answered to the patient's satisfaction, and the brace was dispensed. The patient was thoroughly notified that he/she may have an additional charge (co-pay) required by his/her insurance company.

## MEDICAL MANAGEMENT RECOMMENDATIONS:

### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence, Lyrica: Alergic reaction
- Currently on 640MEM and will need to wean off high dose opioid

### CRITERIA FOR LONG ACTING OPIOID:

**The patient needs around the clock pain relief:** yes
**The patient is opioid tolerant:** yes, **Patients are considered opioid tolerant when taking at least:** 60mg oral morphine/day
**Are there risk factors to prescribing long term opioids to this patient:** yes -
**Will the patient be prescribed long acting opioids:** yes

### PRESCRIPTIONS:

Robaxin-750 750mg tablet , 1 Q6-8h , #120, starting 10/31/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h , #120, starting 10/31/2016 , No Refill Ordered
Opana Er 20mg , 1 Q12h , #60, starting 10/31/2016 , No Refill Ordered
Ropinirole 0.25mg tablet , 1-2 QHS Week 1: 1 tablet at HS, week 2-4: 2 tabs at HS , #60, starting 10/31/2016 , No Refill Ordered

### DISCLAIMERS AND PATIENT AGREEMENT:

- **By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.**
- **By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.**

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 343 of 550   LIN00343

- Patient was educated regarding treatment goals regarding medical management of pain.
- Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, **overdose, and DEATH**, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician
- I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.

Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.

- **I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**

**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**

- **Full toxicology screen as deemed necessary. Yes**
- **The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**
- **Notes: Patient is experiencing restless leg type pain. Will start Requip at HS. RX scanned into EMR.**

**David Tonkin M.D.**

**This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.**

**Michael Smith O'Brien, M.D. Patricia Reed, N.P.**

Patient's Signature

Flanagan, Jamie    DOB: ████████    MR#:6027    DOS:10/31/2016

PATIENT IMAGE(S):    Signature SIGNATURE 10/31/2016



LIN00346

**NOV 2 5 2016**



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

November 21, 2016

The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

*Re:   Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Lincoln National:

I am in receipt of your October 28, 2016 letter with respect to Mrs. Flanagan. I take exception to some of what you set forth in your letter. Quite frankly, I am of the opinion your company intentionally left facts contrary to denying Mrs. Flanagan out of the April 26, 2016 denial. I am not going to spell out what facts and/or conduct I perceive as being intentional acts as this matter is pending before your company and not a neutral adjudicator, but I intend to raise these issues in federal court upon the conclusion of the internal appeal. Additionally, I would note the following:

1.   You are employed by the opposing party in this case and it would appear to me that when you make statements like "it would be your best interest to submit additional medical records...."; it is important that we have all available medical records so that we have a clear picture of Mrs. Flanagan's current condition" and "...as we want to provide your client with every opportunity to submit a complete appeal" you are well aware the current file proves Mrs. Flanagan was disabled when she was denied on April 26, 2016.

    a.   An appeal is ultimately proven or not proven by facts which existed on the date of the determination, not evidence produced subsequently.

    b.   Your company is seeking Mrs. Flanagan's post decision medical solely for the purpose of finding a new basis to deny her claim knowing it deliberately did not disclose facts in its last determination.

Page 2
Lincoln National Life Ins. Co.
Re: J. Flanagan

       c.  I am not really certain as to what you are getting at suggesting it would be in "your best interest" but as an attorney I am confident I would have a better idea of what is in my best interest as opposed to a claims examiner for the opposing party.

2.  I am enclosing herewith Mrs. Flanagan's medical records from November 14, 2015, forward from Elite Pain Management. I have made additional medical records requests and have received nothing as of this date.

3.  Your implication that Mrs. Flanagan has submitted less than a complete appeal is incorrect. Mrs. Flanagan has undertaken every step required to file an appeal under both the plan and ERISA and her claim has been handled and/adjudicated by your company excluding portions of the record from its decision.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan



LINC00349

NOV 2 5 2016



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

November 21, 2016

The Lincoln National Life Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066

*Re:   Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Lincoln National:

I am in receipt of your October 28, 2016 letter with respect to Mrs. Flanagan. I take exception to some of what you set forth in your letter. Quite frankly, I am of the opinion your company intentionally left facts contrary to denying Mrs. Flanagan out of the April 26, 2016 denial. I am not going to spell out what facts and/or conduct I perceive as being intentional acts as this matter is pending before your company and not a neutral adjudicator, but I intend to raise these issues in federal court upon the conclusion of the internal appeal. Additionally, I would note the following:

1. You are employed by the opposing party in this case and it would appear to me that when you make statements like "it would be your best interest to submit additional medical records...."; it is important that we have all available medical records so that we have a clear picture of Mrs. Flanagan's current condition" and "...as we want to provide your client with every opportunity to submit a complete appeal" you are well aware the current file proves Mrs. Flanagan was disabled when she was denied on April 26, 2016.

   a. An appeal is ultimately proven or not proven by facts which existed on the date of the determination, not evidence produced subsequently.
   b. Your company is seeking Mrs. Flanagan's post decision medical solely for the purpose of finding a new basis to deny her claim knowing it deliberately did not disclose facts in its last determination.

Page 2
Lincoln National Life Ins. Co.
Re: J. Flanagan

    c. I am not really certain as to what you are getting at suggesting it would be in "your best interest" but as an attorney I am confident I would have a better idea of what is in my best interest as opposed to a claims examiner for the opposing party.

2. I am enclosing herewith Mrs. Flanagan's medical records from November 14, 2015, forward from Elite Pain Management. I have made additional medical records requests and have received nothing as of this date.

3. Your implication that Mrs. Flanagan has submitted less than a complete appeal is incorrect. Mrs. Flanagan has undertaken every step required to file an appeal under both the plan and ERISA and her claim has been handled and/adjudicated by your company excluding portions of the record from its decision.

        Most Sincerely,

        Rick S. Vasquez
        Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LIN00351



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E
Springfield, MO 65807-5233

**Phone:** (417)888-0167
**Fax:** (417)888-0189

**Service Date:**         10/05/2016
**Service Location:**   Elite Pain Management LLC MO                **Place Of Service:**   OFFICE
**Rendering Provider:** KOKOSZKA, MELISSA J  MD                    **PCP/Ref. Physician:** Powell, Crystal

**Patient:**   Flanagan, Jamie            **Age & DOB:** 36 year ████    **Gender:**      female
**Address:**  1625 Musky Dime Dr  CRANE  MO - 65633                **Home Phone:** (417)459-5879

### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING** 99204 - New Patient Office Visit, 45min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

## VISIT INFORMATION

### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** yes - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.
- **Provider #1:** Dr. Hopewell
- **Medication, Dose, Frequency #1:** morphine ER 100mg 2 tabs twice a day. (200mg BID)
- **Remaining Supply #1:** #2
- **Last Refill Date #1:** 8/30/16
- **Provider #2:** Dr. Hopewell
- **Medication, Dose, Frequency #2:** oxycodone 30mg 1 tab 4 times daily PRN
- **Remaining Supply #2:** #5
- **Last Refill Date #2:** 8/30/16

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes
**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

**Extremity Weakness:** no

**Urinary Incontinence:** no

**Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.


**PAST MEDICAL HISTORY:**

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.


**PAST SURGICAL HISTORY:**

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.


**FAMILY HISTORY:**

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency


**SOCIAL HISTORY:**

**Marital Status:** married
**Occupation:** disabled
**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
**Other Occupants in the Home:** spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.

History of Tobacco Use: no patient states she has never used tobacco on a regular basis.

History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others? no yes, in the past
Type of Alcohol: wine, liquor.
They have been drinking for: 5 years,
Drinks per Month: 16
Have they quit: yes
They quit: 5-10 years ago.

History of Illegal Drug Use: denies

Controlled Substance History (As per patient):

      Current Dependence on Controlled Substances: yes
      Current Addiction to Controlled Substances: no
      Past Addiction to Controlled Substances: no


## ALLERGIES:

    Darvocet Adverse Effects: rash/hives.
    ambien Adverse Effects: sleep walk
    Reglan Adverse Effects: Tardive Dyskinesia
    lunesta Adverse Effects: sleep walk


## MEDICATIONS:

    Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14 Rx Date : 10/12/2016
    Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28 Rx Date : 10/12/2016
    Hydroxychloroquine 200mg Rx Date : 10/05/2016
    Methocarbamol 750mg Rx Date : 10/05/2016
    Bupropion Hcl 150mg Rx Date : 10/05/2016
    Ibuprofen 800mg Rx Date : 10/05/2016
    Topiramate 100mg Rx Date : 10/05/2016
    Morphine 100mg Rx Date : 10/05/2016
    Oxycodone 30mg Rx Date : 10/05/2016
    Soma 350mg Rx Date : 10/05/2016
    Alprazolam 0.5mg Rx Date : 10/05/2016


## CURRENT MEDICATIONS:

    Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14 Rx Date : 10/12/2016
    Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28 Rx Date : 10/12/2016

## REVIEW OF SYSTEMS:

    General: trouble sleeping.
    Skin: lesions/hives.
    Head: headache, tingling.
    Ears: denies decreased hearing, ringing in ears, earache, drainage, and pain.
    Nose: hay fever.
    Oropharynx: denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
    Breasts: denies lumps/masses, pain, and discharge.
    Respiratory: denies cough, wheezing, coughing up blood, and shortness of breath
    Cardiovascular: denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
    Gastrointestinal: heartburn, constipation.
    Urinary: denies urgency, burning or pain, blood in urine, and incontinence.
    Vascular: denies calf pain and cramping while walking.
    Musculoskeletal: muscle or joint pain, swelling of joints, stiffness, axial spine pain.
    Neurologic: numbness, tingling.
    Hematologic: ease of bruising.
    Endocrine: cold intolerance.
    Psychiatric: nervousness/anxiety, memory loss. Depression.


## RISK ASSESSMENTS:
(The following questions were answered by the patient in order to assess whether or not they are at risk for opioid abuse, opioid addiction, depression, anxiety, and alcohol abuse respectively)

Flanagan, Jamie  DOB ████████  MR#:6027  DOS:10/05/2016                    Page 4 of 11

### OPIOID RISK TOOL:

**The following questions are regarding your family's history of substance abuse, please select the proper answers based on your gender:**

**Have any member(s) abused alcohol?** Yes, I have a family member with a history of alcohol abuse and I am female. (1)

**Have any member(s) abused illegal drugs?** Yes, I have a family member with a history of illegal drug abuse and I am female.(2)

**Did any member(s) abuse prescription drugs?** no (0)

**The following questions are regarding your personal history of substance abuse, please select the proper answers based on your gender:**

**Have you ever abused alcohol?** no (0)

**Have you ever abused illegal drugs?** no (0)

**Have you ever abused prescription drugs?** no (0)

**Are you between 16 and 40 years old?** yes(1)

**Do you have a history of preadolescent sexual abuse?** no(0)

**The following questions are about psychological disease, please answer again according to your gender:**

**Have you ever been diagnosed with Attention Deficit Disorder (ADD) or Obsessive Compulsive Disorder (OCD)?** no(0)

**Have you ever been diagnosed with Depression?** Yes, I have been diagnosed with depression and I am female.(1)

**Total Score (out of 26):** 5

**Degree of Risk:** moderate (4-7) Moderate

### DAST-10:

**Have you ever used drugs other than those required for medical reasons?** no (0)
**Have you abused more than one drug at a time?** not applicable (0)
**Are you unable to stop using drugs when you want to?** not applicable (0)
**Have you ever had blackouts or flashbacks as the result of drug use?** not applicable (0)
**Do you ever feel bad or guilty as a result of your drug use?** not applicable (0)
**Does your spouse (or parents) ever complain about your involvement with drugs?** not applicable (0)
**Have you ever neglected your family due to your drug use?** not applicable (0)
**Have you engaged in illegal activity because of your drug use?** not applicable (0)
**Have you experienced withdrawal symptoms (felt sick) when you stopped taking drugs?** not applicable (0)
**Have you had medical problems as a result of your drug use (e.g. memory loss, hepatitis, convulsions, bleeding)?** not applicable (0)
**Total Score (out of 10):** 0
**Degree of Risk:** no problems reported (0)

### PHQ-9:

**Over the last 2 weeks, how often have you been bothered by any of the following problems?**

**Little interest or pleasure in doing things:** not at all (0)

**Feeling down, depressed, or hopeless:** not at all (0)

**Trouble falling or staying asleep, or sleeping too much:** nearly every day (3)

**Feeling tired or having little energy:** more than half the days (2)

**Poor appetite or overeating:** not at all (0)

**Feeling bad about yourself - or that you are a failure or have let yourself or your family down:** not at all (0)

**Trouble concentrating on things, such as reading the newspaper or watching television:** not at all(0)

**Moving or speaking so slowly that other people have noticed, or the opposite - being so fidgety or restless that you have been moving around a lot more than usual:** not at all (0)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**Thought that you would be better off dead or of hurting yourself in some way:** not at all (0)

**If you checked off any problems above, how difficult have these problems made it for you to do your work, take care of things at home, or get along with other people?** somewhat difficult

**Total Score (Out of 27):** 5

**Interpretation:** mild depression (5-9)

## GAD-7:

**Over the last 2 weeks, how often have you been feeling nervous, anxious, or on the edge?** not at all (0)

**How often have you not been able to stop or control worrying?** several days (1)

**How often do you feel you are worrying too much about different things?** not at all (0)

**How often do you have trouble relaxing?** several days (1)

**How often do you become so restless that it is hard to sit still?** not at all (0)

**How often do you feel easily annoyed or irritable?** several days (1)

**How often do you feel as if something awful might happen?** not at all (0)

**Total Score:** 3

**Score of first 2 questions (GAD-2):** 1

**Interpretation:** no indication of probable anxiety disorder (0-7)

## CAGE:

**The following questions refer to your alcohol consumption:**

**Have you ever felt you should Cut down on your drinking?** not applicable (0)

**Have people Annoyed you by criticizing your drinking?** not applicable (0)

**Have you ever felt bad or Guilty about your drinking?** not applicable (0)

**Have you ever had a drink first thing in the morning to steady your nerves or to get rid of a hangover (Eye opener)?** not applicable (0)

**Score:** 0 - A total score of 2 or greater is considered clinically significant.

## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

**EMG:** Yes, **Year:** 2010,
Will attempt to obtain results.

**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.

## PREVIOUS TREATMENT(S):
### PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:
#### SHORT ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

#### LONG ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|

| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

## MUSCLE RELAXANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

## NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

## ANTICONVULSANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

## BENZODIAZEPINES:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium): | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

## BEST PAIN MANAGEMENT REGIMEN:

As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

## PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

## PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

## HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

<u>CHIROPRACTIC MANIPULATION:</u> no

<u>INTERVENTIONAL PROCEDURES:</u> yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
&bull;**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
&bull;**Improvement:** temporary
**Spinal Cord Stimulation** trial
&bull;**Improvement:** no

<u>GOALS:</u>

&bull; **Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.**
&bull; **Patient Goal 1:** "to have less pain."
&bull; **Patient Goal 2:** "be able to do a little bit more at the house."
&bull; **Patient Goal 3:** "be able to sleep a little bit better."

<u>TOXICOLOGY AND BOARD OF PHARMACY REVIEW:</u>

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Hannah Thomas MA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, patient is status post hysterectomy and/or oophorectomy

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**

<u>VITALS:</u>

**Temperature:** 98.5 degrees Fahrenheit
**Pulse:** 70 beats per minute
**Blood Pressure:** 116/84 mmHg
**Respiratory Rate:** 16 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 97%%

<u>GENERAL PHYSICAL EXAMINATION:</u>

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.

<u>LUMBOSACRAL EXAM:</u>

**VISUAL INSPECTION OF THE PATIENT'S GAIT:**
WNL

**VISUAL INSPECTION OF PATIENT'S POSTURE:**
Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.

**TENDERNESS TO PALPATION:**
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

**RANGE OF MOTION OF THE TRUNK:**
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

**SENSATION:**
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

**MUSCLE STRENGTH:**
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

**REFLEXES:**
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

**EVALUATION FOR LUMBAR SPONDYLOSIS:**
**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

**EVALUATION FOR LUMBOSACRAL RADICULOPATHY:**
**Straight Leg Raise Test:** negative bilaterally

**EVALUATION FOR PIRIFORMIS SYNDROME:**
**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

### EVALUATION FOR SACROILIITIS:

**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

### RISK FACTORS:

The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** yes - The patient was counseled regarding the risks of combining benzodiazepines and opioids. The patient was informed that the benzodiazepine must be TAPERED and discontinued. The patient was informed that his/her prescribing physician must taper and discontinue the benzodiazepine and start the patient on a different, non-benzodiazepine medication for their underlying condition.
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below.**

### ASSESSMENT AND PLAN:

#### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

#### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

#### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches):** 34
**Sizing:** L (33-35in torso)
**8in Extension Piece:** No
**Length of Need:** 99

### MEDICAL MANAGEMENT RECOMMENDATIONS:

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

Flanagan, Jamie   DOB: ███████   MR#:6027   DOS:10/05/2016                    Page 10 of 11

## BENEFITS VERSUS RISK:

In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM? Unsure, will await urine drug toxicology screening and confirmation results prior to prescribing any medications

## GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- Patient has failed or has had adverse reactions to the following medications: gabapentin (Neurontin) somnolence
- Patient was given specific instructions regarding the following: xanax: discontinue immediately (takes prn occasionally) soma: currently taking 4x/day, will decrease to 3x/day x 3 days, then 2x/day x 3days, decrease 1x/day then discontinue
- Currently on 640MEM and will need to wean off high dose opioid add meloxicam and trial lyrica samples at follow up pending toxicology results

## DISCLAIMERS AND PATIENT AGREEMENT:

- By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.
- By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.
- Patient was educated regarding treatment goals regarding medical management of pain.
- Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, **overdose, and DEATH**, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician
- I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.
Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.
- **I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**
**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**
- **Patient was educated regarding the patient treatment agreement. The patient was given a copy of this agreement.**
- **Patient was educated regarding lab testing (including HIV,hepatitis, etc.). The patient was given a copy of this consent.**
- **Patient was educated regarding the clinic's Privacy Policy. The patient was given a copy of the policy.**
- **Patient was educated regarding Patient Rights and Responsibilities. The patient was**

given a copy of this document.
- **Patient was educated regarding proper use of the pain management medicines prescribed.**
- **Patient was educated regarding the proper disposal of unused pain management medications that have been prescribed.**
- **The patient has been thoroughly been told that as per Elite Pain Management policy, only current prescriptions (prescribed for use during the current/present month may be taken. The use of previous "old" prescriptions will not be tolerated, will be considered inconsistent if present on the urine drug confirmation test, and may result in discharge from the clinic.**
- **Full toxicology screen as deemed necessary. Yes**
- **The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**
- **Notes: Referred to APT. Rheumatologist will prescribe medication for one week and patient will bring in bottles at follow up.**

**Melissa Kokoszka M.D.**

**This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.**



Patient's Signature

PATIENT IMAGE(S):   Signature SIGNATURE 10/05/2016

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E                                                              Phone: (417)888-0167
Springfield, MO 65807-5233                                                          Fax: (417)888-0189

---

**Service Date:** 10/12/2016
**Service Location:** Elite Pain Management LLC MO                    **Place Of Service:** OFFICE
**Rendering Provider:** TONKIN, DAVID M MD                           **PCP/Ref. Physician:** Powell, Crystal

---

**Patient:** Flanagan, Jamie                **Age & DOB:** 36 year ████   **Gender:** female
**Address:** 1625 Musky Dime Dr  CRANE  MO - 65633                    **Home Phone:** (417)459-5879

---

#### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99214 - Established Patient Office Visit, 25min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

#### VISIT INFORMATION
#### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** yes - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.
- **Provider #1:** Dr. Hopewell
- **Medication, Dose, Frequency #1:** morphine ER 100mg 2 tabs twice a day. (200mg BID)
- **Remaining Supply #1:** #18 on 10/12/16
- **Last Refill Date #1:** 10/10/16
- **Provider #2:** Dr. Hopewell
- **Medication, Dose, Frequency #2:** oxycodone 30mg 1 tab 4 times daily PRN
- **Remaining Supply #2:** #18 on 10/12/16
- **Last Refill Date #2:** 10/10/16

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

Flanagan, Jamie   DOB: ███████   MR#:6027   DOS:10/12/2016                    Page 2 of 10

• **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

• **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes
**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

**Extremity Weakness:** no

**Urinary Incontinence:** no

**Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

Reviewed history of present illness and no changes as of 10/12/2016

**PAST MEDICAL HISTORY:**

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of 10/12/2016**

**PAST SURGICAL HISTORY:**

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of 10/12/2016**

**FAMILY HISTORY:**

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of 10/12/2016**

**SOCIAL HISTORY:**

**Marital Status:** married
**Occupation:** disabled

**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
**Other Occupants in the Home:** spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of** 10/12/2016

**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

**History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others?** no yes, in the past
**Type of Alcohol:** wine, liquor.
**They have been drinking for:** 5 years,
**Drinks per Month:** 16
**Have they quit:** yes
**They quit:** 5-10 years ago.

**History of Illegal Drug Use:** denies

**Controlled Substance History (As per patient):**

> **Current Dependence on Controlled Substances:** yes
> **Current Addiction to Controlled Substances:** no
> **Past Addiction to Controlled Substances:** no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
**Reviewed allergies and no changes as of** 10/12/2016
**Reviewed medications and no changes as of** 10/12/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Methocarbamol 750mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016
Morphine 100mg Rx Date : 10/05/2016
Oxycodone 30mg Rx Date : 10/05/2016
Soma 350mg Rx Date : 10/05/2016
Alprazolam 0.5mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

**General:** trouble sleeping.
**Skin:** lesions/hives.
**Head:** headache, tingling.
**Ears:** denies decreased hearing, ringing in ears, earache, drainage, and pain.
**Nose:** hay fever.
**Oropharynx:** denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
**Breasts:** denies lumps/masses, pain, and discharge.
**Respiratory:** denies cough, wheezing, coughing up blood, and shortness of breath
**Cardiovascular:** denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
**Gastrointestinal:** heartburn, constipation.
**Urinary:** denies urgency, burning or pain, blood in urine, and incontinence.
**Vascular:** denies calf pain and cramping while walking.
**Musculoskeletal:** muscle or joint pain, swelling of joints, stiffness, axial spine pain.
**Neurologic:** numbness, tingling.
**Hematologic:** ease of bruising.
**Endocrine:** cold intolerance.
**Psychiatric:** nervousness/anxiety, memory loss. Depression.
**Reviewed all systems and no changes as of.** 10/12/2016

**RADIOLOGIC & DIAGNOSTIC STUDIES:** Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

**EMG:** Yes, **Year:** 2010,
Will attempt to obtain results.

**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.

**PREVIOUS TREATMENT(S):**
**PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:**

**SHORT ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

**LONG ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

**MUSCLE RELAXANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

**NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

**ANTICONVULSANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

**BENZODIAZEPINES:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

## BEST PAIN MANAGEMENT REGIMEN:

As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

## PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

## PHYSICAL THERAPY: yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

## HOME EXERCISE PROGRAM: yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

## CHIROPRACTIC MANIPULATION: no

## INTERVENTIONAL PROCEDURES: yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
  ●**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
  ●**Improvement:** temporary
**Spinal Cord Stimulation** trial
  ●**Improvement:** no

## GOALS:

● **Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.**
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

## FOLLOW-UP INFORMATION:

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Kokoszka
**Percentage of pain relief from current pain management regimen:** 60%
**Percentage improvement in activities of daily living:** 60%
**Physical Functioning:** better
**Family Relationships:** same
**Social Relationships:** same
**Mood:** same
**Sleep Patterns:** same
**Overall Functioning:** same

**Any New Complaints:** yes (describe) popping in low back
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no
**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** no
**Are you progressing towards previously documented goals?** yes
**Are you experiencing adverse side effects from currently prescribed pain medications?** no

### CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

### TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None
**Previous Inconsistent Urine Toxicology Results:**

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Brooke Jones, RMA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, pregnancy test was not performed today, the patient has been notified

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**
**Pill Count(s):**

**Medication # 1:** MScontin 100mg #18

● **Inconsistency:** no

**Medication # 2:** Oxycodone 30mg #18

● **Inconsistency:** no

### VITALS:

**Temperature:** 99.6 degrees Fahrenheit
**Pulse:** 66 beats per minute
**Blood Pressure:** 138/88 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 98%%

### GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
10/12/2016

## LUMBOSACRAL EXAM:

### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

### MUSCLE STRENGTH:
**Left lower extremity with hip flexion: 5/5**
**Right lower extremity with hip flexion: 5/5**
**Left lower extremity with hip extension: 5/5**
**Right lower extremity with hip extension: 5/5**
**Left lower extremity with knee flexion: 5/5**
**Right lower extremity with knee flexion: 5/5**
**Left lower extremity with knee extension: 5/5**
**Right lower extremity with knee extension: 5/5**
**Left lower extremity with plantar flexion: 5/5**
**Right lower extremity with plantar flexion: 5/5**
**Left lower extremity with dorsiflexion: 5/5**
**Right lower extremity with dorsiflexion: 5/5**

### REFLEXES:
**Right patellar DTR: 2/5**
**Right Medial Hamstring DTR: 2/5**
**Right Achilles DTR: 2/5**
**Left patellar DTR: 2/5**
**Left Medial Hamstring DTR: 2/5**
**Left Achilles DTR: 2/5**

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

## EVALUATION FOR LUMBAR SPONDYLOSIS:

**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

## EVALUATION FOR LUMBOSACRAL RADICULOPATHY:

**Straight Leg Raise Test:** negative bilaterally

## EVALUATION FOR PIRIFORMIS SYNDROME:

**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

## EVALUATION FOR SACROILIITIS:

**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

## RISK FACTORS:
The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** yes - The patient was counseled regarding the risks of combining benzodiazepines and opioids. The patient was informed that the benzodiazepine must be TAPERED and discontinued. The patient was informed that his/her prescribing physician must taper and discontinue the benzodiazepine and start the patient on a different, non-benzodiazepine medication for their underlying condition.
- *Obstructive Sleep Apnea/Supplemental Oxygen:* no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below.**
Reviewed risk factors and no changes as of 10/12/2016

## ASSESSMENT AND PLAN:

### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches):** 34
**Sizing:** L (33-35in torso)
**8in Extension Piece:** No
**Length of Need:** 99

### MEDICAL MANAGEMENT RECOMMENDATIONS:

#### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

#### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence
- **Patient was given specific instructions regarding the following:** Soma: did not follow recommendations; for 3 days decrease to 2/day then for 3 days decrease to 1 per day, then discontinue
- Currently on 640MEM and will need to wean off high dose opioid add meloxicam and trial lyrica samples at follow up pending toxicology results

#### PRESCRIPTIONS:

Opana Er 20mg , 1 Q12h Do not fill till 10/17/16 , #14, starting 10/12/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h do not fill till 10/17/16 , #28, starting 10/12/2016 , No Refill Ordered

#### DISCLAIMERS AND PATIENT AGREEMENT:

- **By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.**
- **By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.**
- **Patient was educated regarding treatment goals regarding medical management of pain.**
- **Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, overdose, and DEATH, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician**
- **I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.**
**Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.**
- **I have also has been educated, acknowledge, and thoroughly understand that all**

medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.
The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
• Full toxicology screen as deemed necessary. Yes
• The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.
• Notes: Will prescribe medication for one week starting 10/17/16 and patient will bring in bottles at follow up.

David Tonkin M.D.

This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.Patricia Reed, N.P.

Patient's Signature

PATIENT IMAGE(S):   Signature SIGNATURE 10/12/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E                                          **Phone:** (417)888-0167
Springfield, MO 65807-5233                                      **Fax:** (417)888-0189

---

**Service Date:**        10/24/2016
**Service Location:**    Elite Pain Management LLC MO          **Place Of Service:**   OFFICE
**Rendering Provider:**KOKOSZKA, MELISSA J  MD                 **PCP/Ref. Physician:** Powell, Crystal

---

**Patient:**   Flanagan, Jamie          **Age & DOB:** 36 year ██████   **Gender:**      female
**Address:**   1625 Musky Dime Dr  CRANE  MO - 65633          **Home Phone:**  (417)459-5879

---

### CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99213 - Established Patient Office Visit, 15min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

### VISIT INFORMATION
### HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** no - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit: 4:** (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain with Walking/Activity at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Resting at time of first visit: 5:** (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

> **Extremity Weakness:** no
>
> **Urinary Incontinence:** no
>
> **Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

> driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

**Reviewed history of present illness and no changes as of** 10/24/2016

## PAST MEDICAL HISTORY:

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of** 10/24/2016

## PAST SURGICAL HISTORY:

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of** 10/24/2016

## FAMILY HISTORY:

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of** 10/24/2016

## SOCIAL HISTORY:

**Marital Status:** married
**Occupation:** disabled
**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
**Other Occupants in the Home:** spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of** 10/24/2016

**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others? no yes, in the past
Type of Alcohol: wine, liquor.
They have been drinking for: 5 years,
Drinks per Month: 16
Have they quit: yes
They quit: 5-10 years ago.

History of Illegal Drug Use: denies

Controlled Substance History (As per patient):

Current Dependence on Controlled Substances: yes
Current Addiction to Controlled Substances: no
Past Addiction to Controlled Substances: no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
Reviewed allergies and no changes as of 10/24/2016
Reviewed medications and no changes as of 10/24/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Methocarbamol 750mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

General: trouble sleeping.
Skin: lesions/hives.
Head: headache, tingling.
Ears: denies decreased hearing, ringing in ears, earache, drainage, and pain.
Nose: hay fever.
Oropharynx: denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
Breasts: denies lumps/masses, pain, and discharge.
Respiratory: denies cough, wheezing, coughing up blood, and shortness of breath
Cardiovascular: denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
Gastrointestinal: heartburn, constipation.
Urinary: denies urgency, burning or pain, blood in urine, and incontinence.
Vascular: denies calf pain and cramping while walking.
Musculoskeletal: muscle or joint pain, swelling of joints, stiffness, axial spine pain.
Neurologic: numbness, tingling.
Hematologic: ease of bruising.
Endocrine: cold intolerance.
Psychiatric: nervousness/anxiety, memory loss. Depression.
Reviewed all systems and no changes as of. 10/24/2016

## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

MRI: Yes, I have personally reviewed these studies Year: 2015, Results: please see attached report,

CT: Yes, Year: 2013,
Will attempt to obtain results.

X-RAY: Yes, Year: 2016,
Will attempt to obtain results.

**EMG:** Yes,  **Year:** 2010,
Will attempt to obtain results.


**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.


## PREVIOUS TREATMENT(S):

### PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:

#### SHORT ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

#### LONG ACTING OPIOIDS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

#### MUSCLE RELAXANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

#### NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

#### ANTICONVULSANTS:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

#### BENZODIAZEPINES:

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

### BEST PAIN MANAGEMENT REGIMEN:

**As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:**

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| MSContin: | 100 mg 2 tabs twice a day. |

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Soma (carisoprodol) | 350mg 4 times a day. |

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:**

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
**Surgical Consultation:** yes, patient had a surgical consultation following the above mentioned surgery(s).
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

**PHYSICAL THERAPY:** yes

**Improvement:** yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

**HOME EXERCISE PROGRAM:** yes

**Improvement:** yes.
**Patient is currently in a home exercise program.**

**CHIROPRACTIC MANIPULATION:** no

**INTERVENTIONAL PROCEDURES:** yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
  ●**Improvement:** yes.
**ESI x** greater than 10 (lumbar)
  ●**Improvement:** temporary
**Spinal Cord Stimulation** trial
  ●**Improvement:** no

**GOALS:**

● **Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.**
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

**FOLLOW-UP INFORMATION:**

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Tonkin
**Percentage of pain relief from current pain management regimen:** 20%
**Percentage improvement in activities of daily living:** I have declined in what I can do since last visit
**Physical Functioning:** worse
**Family Relationships:** same
**Social Relationships:** same
**Mood:** same
**Sleep Patterns:** worse
**Overall Functioning:** worse
**Any New Complaints:** yes (describe)nausea over last 5 days with decreased appetite
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no
**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** pain medicine is inadequate at making the pain tolerable
**Are you progressing towards previously documented goals?** yes I believe our goals were to reduce the amount of narcotics I take no my pain is not at a level I can function on a daily basis. Would like to try the sublingual tabs I sampled at last visit

Are you experiencing adverse side effects from currently prescribed pain medications? no
Side effects experienced: nausea sleep disturbances

## CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

## TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None - soma levels are decreasing
**Previous Inconsistent Urine Toxicology Results:**

**Urine sample collected today for toxicology screening and confirmation:** yes

**Urine sample collection witnessed by:** Brooke Jones, RMA

**Temperature of urine sample within normal limits:** yes

**Urine pregnancy point of care testing performed today:** no, pregnancy test was not performed today, the patient has been notified

**Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.**
**Pill Count(s):**

**Medication # 1:** Oxymorphone 20mg #1

• **Inconsistency:** no

**Medication # 2:** Oxycodone 30mg #4

• **Inconsistency:** no

## VITALS:

**Temperature:** 98.1 degrees Fahrenheit
**Pulse:** 80 beats per minute
**Blood Pressure:** 107/68 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** Sa02 (on room air) = 98%%

## GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.
**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.

**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
10/24/2016

## LUMBOSACRAL EXAM:

### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

### MUSCLE STRENGTH:
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

### REFLEXES:
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

### EVALUATION FOR LUMBAR SPONDYLOSIS:
**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 379 of 550   LINC0379

## EVALUATION FOR LUMBOSACRAL RADICULOPATHY:
**Straight Leg Raise Test:** negative bilaterally

## EVALUATION FOR PIRIFORMIS SYNDROME:
**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

## EVALUATION FOR SACROILIITIS:
**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

## RISK FACTORS:
The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** no
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below. Reviewed risk factors and no changes as of 10/24/2016**

## ASSESSMENT AND PLAN:
### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

## ANCILLARY SERVICES:
I certify that I am the treating physician and I certify that the medical necessity information below is true, accurate and

complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

## LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches): 34**
**Sizing: L (33-35in torso)**
**8in Extension Piece: No**
**Length of Need: 99**
Date: 10/24/2016 The patient presented today for education regarding proper usage, fitting, and dispensing of his/her DDS500 lumbar brace, after such, all questions were answered to the patient's satisfaction, and the brace was dispensed. The patient was thoroughly notified that he/she may have an additional charge (co-pay) required by his/her insurance company.

## MEDICAL MANAGEMENT RECOMMENDATIONS:

### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence
- **Patient was given specific instructions regarding the following:** Soma: did not follow recommendations; for 3 days decrease to 2/day then for 3 days decrease to 1 per day, then discontinue
- Currently on 640MEM and will need to wean off high dose opioid

### CRITERIA FOR LONG ACTING OPIOID:

**The patient needs around the clock pain relief:** yes
**The patient is opioid tolerant:** yes, <u>Patients are considered opioid tolerant when taking at least:</u> 60mg oral morphine/day
**Are there risk factors to prescribing long term opioids to this patient:** yes -
**Will the patient be prescribed long acting opioids:** yes

### PRESCRIPTIONS:

Ondansetron 8mg tablet , 1 Q8h , #21, starting 10/24/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h , #28, starting 10/24/2016 , No Refill Ordered
Opana Er 20mg , 1 Q12h , #14, starting 10/24/2016 , No Refill Ordered

### DISCLAIMERS AND PATIENT AGREEMENT:

- **By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.**
- **By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.**
- **Patient was educated regarding treatment goals regarding medical management of pain.**
- **Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, overdose, and DEATH, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision**

LIN00381

Flanagan, Jamie   DOB: ███████   MR#:6027   DOS:10/24/2016                    Page 10 of 10

of the prescribing physician

● I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.

Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.

● **I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**

**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**

● **Full toxicology screen as deemed necessary. Yes**

● **The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**

**Concerns: Patient was thoroughly educated that inconsistent urine toxicology test will not be tolerated, and continued failure to comply with Elite Pain Management rules will result in discharge from the clinic.**

● **Notes: Patient experiencing with decrease in medication and therefore will be given a zofran prescription as well. She accidently took an old morphine tablet over on 10/21/2016 and therefore will have a follow up in one week. She has been given a sample of lyrica 75mg (1 box) and instructed to take 1 capsule bid.**



Melissa Kokoszka M.D.

This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.



Patient's Signature

PATIENT IMAGE(S):   Signature SIGNATURE 10/24/2016



https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016



**ELITE PAIN MANAGEMENT LLC**

222 E Primrose Suite E
Springfield, MO 65807-5233

Phone: (417)888-0167
Fax: (417)888-0189

| | | | |
|---|---|---|---|
| **Service Date:** | 10/31/2016 | | |
| **Service Location:** | Elite Pain Management LLC MO | **Place Of Service:** | OFFICE |
| **Rendering Provider:** | TONKIN, DAVID M  MD | **PCP/Ref. Physician:** | Powell, Crystal |

| | | | | |
|---|---|---|---|---|
| **Patient:** | Flanagan, Jamie | **Age & DOB:** 36 year ████ | **Gender:** | female |
| **Address:** | 1625 Musky Dime Dr  CRANE  MO - 65633 | | **Home Phone:** | (417)459-5879 |

## CHIEF COMPLAINT(S):

- Bilateral (right > left) lower back pain radiating to the right lower extremity in the L5 dermatomal distribution(s) to the level of the ankle.

**BILLING Established Patient Office Visits** 99213 - Established Patient Office Visit, 15min **Toxicology Billing** G0483 - High Complexity Confirmation Testing G0479 - Urine Drug Screen

## VISIT INFORMATION

## HISTORY OF PRESENT ILLNESS:

The patient is a 36 year old female who presents today for evaluation of the above chief complaint(s). The medical record reflects the history of present illness obtained by myself in discussion with the patient.

**Is the patient currently receiving pain medications (specifically opioids) at any other pain management clinic or from another provider:** no - It was thoroughly explained to the patient that controlled substances, as per our opioid agreement and as per standard practice recommendations, should only be prescribed by one practitioner and if the patient is or continues to obtain prescriptions for controlled substances from more than one provider, he/she will be discharged from Elite Pain Management and the other prescriber will be notified.

**Is the patient currently being treated by an interventional pain physician or receiving injections from another health care provider:** no

**Overall Average General Assessment of Pain at time of first visit:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
- **Pain while Sitting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Standing at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain with Walking/Activity at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
- **Pain while Resting at time of first visit:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)

**Quality of Pain:** burning, aching, pins and needles, sharp, stabbing.
**Duration of Pain (greater than 3-6 months is chronic):** yes (chronic) - 6 years
**Inciting Event:** no specific inciting event, just progressive worsening of symptoms over time
**Litigation Pending:** no
**Currently on Disability:** yes

Flanagan, Jamie   DOB ████   MR#:6027   DOS:10/31/2016                    Page 2 of 11

**Aggravating Factors:** walking, working out, exercise, exertion, activity, lifting, anxiety, stress, arm movement, driving, working at a computer, cold weather.
**Alleviating Factors:** pain medication, water therapy. Positioning/repositioning, heat, certain ointments. Tens unit. Roll behind back while sitting.
**Associated Signs and Symptoms:** no

**Extremity Weakness:** no

**Urinary Incontinence:** no

**Fecal Incontinence:** no

**The patient states that due to their pain they have problems with the following Activities of Daily Living:**

driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, sexual functions.

**Reviewed history of present illness and no changes as of** 11/02/2016

**PAST MEDICAL HISTORY:**

Anemia
GERD
Migraines
Depression
Anxiety Disorder
**Other Medical Conditions:** rheumatological disease of unknown type.
**Reviewed medical history and no changes as of** 11/02/2016

**PAST SURGICAL HISTORY:**

Cholecystectomy
EGD x4
Colonoscopy x3
Cesarean Section
Hysterectomy
Lumbar Spine Surgery fusion 2011
Dental Surgery
**Other Surgical History:** 4 foot surgery. Breast reconstruction x 4. Exploratory laparoscopy stomach.
**Reviewed surgical history and no changes as of** 11/02/2016

**FAMILY HISTORY:**

Coronary Artery Disease: father, grandparent(s).
Hypertension: mother, grandparent(s).
Elevated Cholesterol/Dyslipedemia: father, grandparent(s), mother.
CVA: grandparent(s).
Depression: mother, father, grandparent(s), brother(s).
Anxiety Disorder: mother, grandparent(s), brother(s).
History of Substance Abuse: father, grandparent(s), brother(s).
Rheumatoid Arthritis: grandparent(s)
**Other Medical Conditions:** Grandparent(s) lupus. Brother(s) neural tube defect. Grandparent(s) kidney insufficiency
**Reviewed family history and no changes as of** 11/02/2016

**SOCIAL HISTORY:**

**Marital Status:** married
**Occupation:** disabled
**Highest Level of Education:** college
**Number of Living Children:** 2
**History of Criminal History:** denies
*Other Occupants in the Home:* spouse, child/children.
**Are prescriptions kept in a safe:** Yes, patient instructed to always keep prescriptions stored in a safe.
**Reviewed social history, tobacco use, alcohol use, illegal drug use, and controlled substance use and no changes as of** 11/02/2016
**History of Tobacco Use:** no patient states she has never used tobacco on a regular basis.

**History of Alcohol Use: Have you ever been diagnosed as an alcoholic or believed to be an alcoholic by yourself or others?** no yes, in the past
**Type of Alcohol:** wine, liquor.
**They have been drinking for:** 5 years,
**Drinks per Month:** 16
**Have they quit:** yes
**They quit:** 5-10 years ago.

**History of Illegal Drug Use:** denies

**Controlled Substance History (As per patient):**

**Current Dependence on Controlled Substances:** yes
**Current Addiction to Controlled Substances:** no
**Past Addiction to Controlled Substances:** no

## ALLERGIES:

Darvocet Adverse Effects: rash/hives.
ambien Adverse Effects: sleep walk
Reglan Adverse Effects: Tardive Dyskinesia
lunesta Adverse Effects: sleep walk
Lyrica Adverse Effects: rash/hives.
**Reviewed allergies and no changes as of** 11/02/2016
**Reviewed medications and no changes as of** 11/02/2016

## CURRENT MEDICATIONS:

Hydroxychloroquine 200mg Rx Date : 10/05/2016
Bupropion Hcl 150mg Rx Date : 10/05/2016
Ibuprofen 800mg Rx Date : 10/05/2016
Topiramate 100mg Rx Date : 10/05/2016

## REVIEW OF SYSTEMS:

**General:** trouble sleeping.
**Skin:** lesions/hives Improving since stopping Lyrica
**Head:** headache, tingling.
**Ears:** denies decreased hearing, ringing in ears, earache, drainage, and pain.
**Nose:** hay fever.
**Oropharynx:** denies bleeding gums, sore tongue, dry mouth, sore throat, or hoarseness.
**Breasts:** denies lumps/masses, pain, and discharge.
**Respiratory:** denies cough, wheezing, coughing up blood, and shortness of breath
**Cardiovascular:** denies chest pain/discomfort/tightness, shortness of breath with activity, or swelling in his/her extremities.
**Gastrointestinal:** heartburn, constipation.
**Urinary:** denies urgency, burning or pain, blood in urine, and incontinence.
**Vascular:** denies calf pain and cramping while walking.
**Musculoskeletal:** muscle or joint pain, swelling of joints, stiffness, axial spine pain.
**Neurologic:** numbness, tingling.
**Hematologic:** ease of bruising.
**Endocrine:** cold intolerance.
**Psychiatric:** nervousness/anxiety, memory loss. Depression.
**Reviewed all systems and no changes as of.** 11/02/2016

## RADIOLOGIC & DIAGNOSTIC STUDIES: Yes,
Will attempt to obtain records.

**MRI:** Yes, I have personally reviewed these studies **Year:** 2015, **Results:** please see attached report,

**CT:** Yes, **Year:** 2013,
Will attempt to obtain results.

**X-RAY:** Yes, **Year:** 2016,
Will attempt to obtain results.

https://epmmd.practicesuite.com/PracticeSuite/emrReportBeginAction.do?myActionIs=Pri...   11/2/2016

**EMG:** Yes,  **Year:** 2010,
Will attempt to obtain results.


**OTHER:** Yes, gastric emptying study. **Year:** 2013,
Will attempt to obtain results.


PREVIOUS TREATMENT(S):

PREVIOUS HISTORY OF PAIN MEDICINES USED AND ADVERSE EFFECTS:

**SHORT ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Norco (hydrocodone and acetaminophen): | Adverse Effects: none. |
| Oxycodone: | Adverse Effects: none. |
| Percocet (oxycodone and acetaminophen): | Adverse Effects: none. |

**LONG ACTING OPIOIDS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| MSContin: | Adverse Effects: none. |
| Methadone: | Adverse Effects: change in mentation. |
| Avinza: | Adverse Effects: none. |

**MUSCLE RELAXANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Robaxin (Methocarbimol): | Adverse Effects: none. |
| Soma: | Adverse Effects: none. |

**NON-STEROIDAL ANTI-INFLAMMATORIES (NSAIDS):**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Naproxyn (IR): | Adverse Effects: none. |
| Alleve | Adverse Effects: none. |
| Celebrex (Celecoxib): | Adverse Effects: none. |
| Voltaren IR: | Adverse Effects: none. |
| Toradol (Ketorolac): | Adverse Effects: none. |

**ANTICONVULSANTS:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Neurontin (Gabapentin): | Adverse Effects: over-sedation |
| Lyrica (Pregabalin): | Adverse Effects: higher doses left feeling lightheaded. |
| Cymbalta (Duloxetine): | Adverse Effects: none. |

**BENZODIAZEPINES:**

| DRUG: | ADVERSE EFFECT(S): |
|---|---|
| Diazepam (Valium) | Adverse Effects: none. |
| Alprazolam (Xanax) | Adverse Effects: none. |

BEST PAIN MANAGEMENT REGIMEN:

**As per the patient, the medical management regimen that has been successful at treating their pain in the past is as follows:**

| DRUG: | DOSE AND FREQUENCY: |
|---|---|
| Oxycodone: | 30mg 4 times daily |
| **DRUG:** | **DOSE AND FREQUENCY:** |
| MSContin: | 100 mg 2 tabs twice a day. |
| **DRUG:** | **DOSE AND FREQUENCY:** |
| Soma (carisoprodol) | 350mg 4 times a day. |

PAST HISTORY OF SURGERY TO AREA INVOLVED IN THE PATIENT'S PAIN:

**Surgery:** lumbar spine surgery with fusion
**Improvement:** temporary
*Surgical Consultation: yes, patient had a surgical consultation following the above mentioned surgery(s).*
**Recommendations:** surgery was not recommended
**Does the patient currently refuse surgery?** no

PHYSICAL THERAPY: yes

Improvement: yes for water therapy, no for everything else.
**Latest or Most Recent Physical Therapy:** 3 year(s) ago
**Length of treatment:** 3 week(s)

HOME EXERCISE PROGRAM: yes

Improvement: yes.
Patient is currently in a home exercise program.

CHIROPRACTIC MANIPULATION: no

INTERVENTIONAL PROCEDURES: yes

**Does the patient currently refuse interventional pain procedures?** noTPI x 8 -10
●Improvement: yes.
ESI x greater than 10 (lumbar)
●Improvement: temporary
Spinal Cord Stimulation trial
●Improvement: no

GOALS:

● Improve physical functioning and mental well-being as well as well achieve a state in which the pain is tolerable to the patient.
● **Patient Goal 1:** "to have less pain."
● **Patient Goal 2:** "be able to do a little bit more at the house."
● **Patient Goal 3:** "be able to sleep a little bit better."

FOLLOW-UP INFORMATION:

During their visit today, the patient reports the following changes in their pain symptoms, compared to those shown above, as recorded during their initial visit.
**Last visit with Provider:** Dr. Kokoszka
**Percentage of pain relief from current pain management regimen:** 20% 30%
**Percentage improvement in activities of daily living:** Im not functioning well at all right now. My functioning has declined significantly since starting this clinic and in last week to two weeks
**Physical Functioning:** worse I am having horrible restless legs and even arms etc. That starts 3 hours after taking Exalgo. When I take exalgo again it is better for the 2 -3 hours then we are back to the restless crawling weak feeling that gets worse and worse until the next dose. I have been struggling sitting through even short periods of church etc.
**Family Relationships:** worse I can't do anything with my family at this time because the few times we have tried I have had to leave in the middle of what we are doing
**Social Relationships:** worse because of the above I've stopped attending church and doing much of anything outside of home
**Mood:** worse -
**Sleep Patterns:** worse can't fall asleep because of restlessness and if I do it wakes me up a couple hours later 10x more intense
**Overall Functioning:** worse
**Any New Complaints:** yes (describe) restlessness, crawling legs
**New Imaging, Studies, or Consults:** no
**Has your PCP made any changes to your medication list since your last visit?** no
**Have you recently been prescribed narcotics from any other provider?** no
**Have you been in the hospital or seen in the ER since your last visit?** no

**When was your last dose of medication taken?** this morning
**Do you have any concerns regarding your current treatment?** pain medicine is inadequate at making the pain tolerable yes, please see side effects below
**Are you progressing towards previously documented goals?** no
**Are you experiencing adverse side effects from currently prescribed pain medications?** yes (describe) see above plus a rash started after 3rd dose of Lyrica that was stopped by the office on Friday.
**Side effects experienced:** itching sleep disturbances nausea other I've lost 6 pound in last week

## CURRENT PAIN SCALE:

**Overall Average General Assessment of Pain:** 4: (can be ignored if really involved in work, still distracting - mild painkillers relieve pain for 3-4 hours)
**Pain while Sitting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Standing:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain with Walking/Activity:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Pain while Resting:** 5: (cannot be ignored more than 30 minutes - mild painkillers reduce pain for 3-4 hours)
**Quality of Pain:** aching, dull, burning.

## TOXICOLOGY AND BOARD OF PHARMACY REVIEW:

**Board of Pharmacy Prescription Monitoring Report was reviewed:** No, unfortunately the state of Missouri currently does not have a Board of Pharmacy Controlled Substance tracking program.
**Concerns:** N/A
**Previous urine screening and confirmation results were reviewed:** yes
**Concerns:** None
**Previous Inconsistent Urine Toxicology Results:**

Urine sample collected today for toxicology screening and confirmation: yes

Urine sample collection witnessed by: Brooke Jones, RMA

Temperature of urine sample within normal limits: yes

Urine pregnancy point of care testing performed today: no, pregnancy test was not performed today, the patient has been notified

Urine sample toxicology screening and confirmation will be performed due to the fact that the patient is on a chronic opioid or buprenorphine containing medication. This testing is necessary secondary to the extremely dangerous nature of the medications that the patient is currently prescribed. Taking a prescribed, controlled medication puts the patient and society at significant risk. This testing is used to assure compliance with the prescribed medication(s), to help prevent misuse and abuse of this/these medication(s), to help discover any activities that suggest diversion of the prescribed medication(s), to discover use of any medications that may have may cause adverse events when used with the prescribed medication(s), and to discover any illicit drug use.
**Pill Count(s):**

> **Medication # 1:** Oxymorphone 20mg #1
>
> - **Inconsistency:** no
>
> **Medication # 2:** Oxycodone 30mg #2
>
> - **Inconsistency:** no

## VITALS:

**Temperature:** 98 degrees Fahrenheit
**Pulse:** 89 beats per minute
**Blood Pressure:** 119/84 mmHg
**Respiratory Rate:** 15 breaths per minute
**Weight:** 150 pounds
**Height:** 5 feet 5 inches
**Pulse Oximetry:** SaO2 (on room air) = 99%%

## GENERAL PHYSICAL EXAMINATION:

**General:** well developed, well nourished, and in no apparent distress, large scar noted over lumbar spine
**Head:** normocephalic, atraumatic, nares free of pill fragments, pupils are equal and reactive to light and accommodation
**Neck:** supple, no masses, no lymphadenopathy.

**Chest:** well-developed.
**Heart:** normal rate and rhythm, no murmurs, rubs, or gallops appreciated.
**Lungs:** clear to auscultation bilaterally, no wheezing, rhonchi, or rales appreciated.
**Abdomen:** soft, non-tender, positive bowel sounds in all four quadrants.
**Extremities:** no edema, no cyanosis, no atrophy.
**Deformities:** no deformities of the bilateral upper and lower extremities.
**Signs of IV Drug Abuse:** none
**Neurologic:** CN II-XII grossly intact; alert and oriented to person, time, and place.
**General and pain specific physical exams performed, no changes since previous office visit.**
11/02/2016

### LUMBOSACRAL EXAM:

#### VISUAL INSPECTION OF THE PATIENT'S GAIT:
**WNL**

#### VISUAL INSPECTION OF PATIENT'S POSTURE:
**Visual inspection of the patient's posture reveals no kyphosis, lordosis, scoliosis, or asymmetry of the pelvis.**

#### TENDERNESS TO PALPATION:
**Lumbar paraspinal muscle(s):** positive bilaterally
**SI joint area(s):** negative bilaterally

#### RANGE OF MOTION OF THE TRUNK:
**Flexion:** decreased
**Extension:** decreased
**Flexion to the left:** decreased
**Flexion to the right:** decreased
**Lateral rotation to the left:** decreased
**Lateral rotation to the right:** decreased

#### SENSATION:
**Proprioception:** The patient has normal proprioception in their bilateral lower extremities
Sensation in the right lower extremity: normal
Sensation in the left lower extremity: normal

#### MUSCLE STRENGTH:
**Left lower extremity with hip flexion:** 5/5
**Right lower extremity with hip flexion:** 5/5
**Left lower extremity with hip extension:** 5/5
**Right lower extremity with hip extension:** 5/5
**Left lower extremity with knee flexion:** 5/5
**Right lower extremity with knee flexion:** 5/5
**Left lower extremity with knee extension:** 5/5
**Right lower extremity with knee extension:** 5/5
**Left lower extremity with plantar flexion:** 5/5
**Right lower extremity with plantar flexion:** 5/5
**Left lower extremity with dorsiflexion:** 5/5
**Right lower extremity with dorsiflexion:** 5/5

#### REFLEXES:
**Right patellar DTR:** 2/5
**Right Medial Hamstring DTR:** 2/5
**Right Achilles DTR:** 2/5
**Left patellar DTR:** 2/5
**Left Medial Hamstring DTR:** 2/5
**Left Achilles DTR:** 2/5

#### EVALUATION FOR LUMBAR SPONDYLOSIS:

**Does the patient have reproduction of their axial back pain with passive oblique extension of their lumbar spine (facet loading)?** no, the patient does no have reproduction of their lower back pain with passive oblique extension to the left or to the right

### EVALUATION FOR LUMBOSACRAL RADICULOPATHY:
**Straight Leg Raise Test:** negative bilaterally

### EVALUATION FOR PIRIFORMIS SYNDROME:
**Reproduction of symptoms with flexion, adduction, and internal rotation of the hips:** negative bilaterally

### EVALUATION FOR SACROILIITIS:
**Reproduction of symptoms with Faber/Patricks and Gaenslen maneuvers and sacroiliac joint compression tests:** negative bilaterally

### RISK FACTORS:
The following information pertains to possible adverse events that may occur when combining the following medications or medical conditions with pain management medications that the patient may be prescribed.

- **Carisoprodol (Soma):** yes - The patient was counseled regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.
- **Benzodiazepines:** no
- **Obstructive Sleep Apnea/Supplemental Oxygen:** no
- **Alcohol:** no
- **Obesity or Morbid Obesity:** no

- **The risks have been thoroughly explained to the patient and the patient currently accepts these risks and agrees to follow the medical advice as described in the assessment and plan below. Reviewed risk factors and no changes as of 11/02/2016**

### ASSESSMENT AND PLAN:

#### Lumbosacral Degenerative Disc Disease with Radiculopathy:
- Recommended Interventional Procedures: Epidural Steroid Injection (Intralaminar vs Transforaminal) (If due to disc pathology)
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Surgeon does not recommend surgery.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

#### Lumbar Myofascial Syndrome:
- Recommended Interventional Procedures: Trigger Point Injections
- Chiropractic Treatment: Yes, DC of patient's choice, to include massage
- Physical Therapy: Yes, PT center of patient's choice, to include massage
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A
- Mechanical Massage: YesD3

#### Lumbar Failed Back Surgery Syndrome:
- Recommended Interventional Procedures: Spinal cord stimulator, Intrathecal pump
- Chiropractic Treatment: Yes, DC of patient's choice
- Physical Therapy: Yes, PT center of patient's choice
- Surgical Consult: Not at this time.
- Imaging, Studies, or Labs to be ordered: N/A
- Cognitive Behavioral Health Therapy: N/A

## ANCILLARY SERVICES:

I certify that I am the treating physician and I certify that the medical necessity information below is true, accurate and complete, to the best of my knowledge, and I understand that any falsification, omission, or concealment of material fact in that section may subject me to civil or criminal liability.

### LUMBAR BRACE:

A DDS 500 will be ordered to otherwise support weak spinal muscles
**Torso measurement (at the navel in inches): 34**
**Sizing:** L (33-35in torso)
**8in Extension Piece:** No
**Length of Need:** 99
Date: 10/24/2016 The patient presented today for education regarding proper usage, fitting, and dispensing of his/her DDS500 lumbar brace, after such, all questions were answered to the patient's satisfaction, and the brace was dispensed. The patient was thoroughly notified that he/she may have an additional charge (co-pay) required by his/her insurance company.

## MEDICAL MANAGEMENT RECOMMENDATIONS:

### BENEFITS VERSUS RISK:

**In your professional opinion, is the patient benefiting, or will the patient benefit from continuing the current or proposed pain management regimen, and do the benefits of such proposed treatment outweigh the risks of side effects, inappropriate use (not following the physician's prescription, in regards to dose and frequency of use), the combining of such medications with other sedating medications or substances, or existing comorbidities which may lead to respiratory depression, overdose, or death or the risk of diversion of such prescribed medication by EPM?** no - not with current pain management, but adjustments will be made

### GENERAL RECOMMENDATIONS:

- Will adjust medications as needed to strive toward the patient's goals, and to make the pain tolerable.
- **Patient has failed or has had adverse reactions to the following medications:** gabapentin (Neurontin) somnolence, Lyrica: Alergic reaction
- Currently on 640MEM and will need to wean off high dose opioid

### CRITERIA FOR LONG ACTING OPIOID:

**The patient needs around the clock pain relief:** yes
**The patient is opioid tolerant:** yes, <u>Patients are considered opioid tolerant when taking at least:</u> 60mg oral morphine/day
**Are there risk factors to prescribing long term opioids to this patient:** yes -
**Will the patient be prescribed long acting opioids:** yes

### PRESCRIPTIONS:

Robaxin-750 750mg tablet , 1 Q6-8h , #120, starting 10/31/2016 , No Refill Ordered
Oxycodone 30mg tablet , 1 Q6h , #120, starting 10/31/2016 , No Refill Ordered
Opana Er 20mg , 1 Q12h , #60, starting 10/31/2016 , No Refill Ordered
Ropinirole 0.25mg tablet , 1-2 QHS Week 1: 1 tablet at HS, week 2-4: 2 tabs at HS , #60, starting 10/31/2016 , No Refill Ordered

### DISCLAIMERS AND PATIENT AGREEMENT:

- **By signing below I acknowledge that all the information provided to the staff and providers at Elite Pain Management was correct and true to the best of my knowledge, and understand any false information provided hinders the doctor's ability to provide adequate care, and more-so, puts me, the patient at a greater risk for complications.**
- **By signing below, I acknowledge that each diagnosis (pain condition) has been thoroughly explained to me by the doctor and/or midlevel provider, that the proposed and optional plan(s) and treatment(s) have been thoroughly explained to me, and that all my questions have been addressed to my satisfaction. I also acknowledge and accept the risks discussed, as well as confirm that the above mentioned information has been explained to me in a language that I can understand, and I wish to proceed with the prescribed treatment plan.**

- Patient was educated regarding treatment goals regarding medical management of pain.
- Patient was educated regarding the risks of combining opioids and benzodiazepines, which may include, but is not limited to, respiratory depression, respiratory failure, **overdose, and DEATH**, and the need to taper and discontinue the use of benzodiazepines under the direction/supervision of the prescribing physician
- I understand that there are serious risks to taking pain medications, even if taken as prescribed, including, but not limited to respiratory depression, physical dependence, ADDICTION, OVERDOSE, and even DEATH.

Patient was instructed to not drive, operate heavy equipment, or make important decisions after taking their medication.

- **I have also has been educated, acknowledge, and thoroughly understand that all medications may have side effects which may include, but not limited to the following listed side effects: nausea, vomiting, hypogonadism, decreased sex hormone levels, adrenal insufficiency, serotonin syndrome, constipation, neuroendocrine effects, adverse effects on the immune system, sedation, psychological slowing, delirium, hallucinations, and muscle rigidity, myoclonus and sleep disturbances.**

**The patient was educated regarding the risks of Soma (addictive nature and synergistic effect of over sedation and respiratory depression when used in conjunction with other medications commonly used to treat pain. The patient was informed that Soma must be discontinued and was informed there are other, safer alternatives, if needed.**

- **Full toxicology screen as deemed necessary. Yes**
- **The patient was educated regarding the following treatment(s): exercise/stretching programs, medicines being used to treat their pain, physical therapy, bracing, injections, ESI, spinal cord stimulation, intrathecal pain pump.**
- **Notes: Patient is experiencing restless leg type pain. Will start Requip at HS. RX scanned into EMR.**

**David Tonkin M.D.**

**This documentation was created by an artificial transcription software. Effort has been taken to assure accuracy of the transcription. Any obvious errors or omissions should be clarified with the author of the document.**

**Michael Smith O'Brien, M.D. Patricia Reed, N.P.**

Patient's Signature

Flanagan, Jamie   DOB: ███████   MR#:6027   DOS:10/31/2016          Page 11 of 11

PATIENT IMAGE(S):   Signature SIGNATURE 10/31/2016

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 393 of 550   LIN00393



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
Toll free (800) 423-2765
www.Lincoln4benefits.com

October 28, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on October 21, 2016

In an effort to provide Mrs. Flanagan's claim with a full and fair review, it would be your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your client's appeal.  For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated April 26, 2016.

It is important that we have all available medical records so that we have a clear picture of Mrs. Flanagan's current condition.

Please submit any and all additional medical evidence that you believe would support your client's appeal.  Please have the medical records submitted to our office no later than 11/28/2016.

If we do not receive the additional information by 11/28/2016, we will review the appeal and render a decision based upon the information currently available in Mrs. Flanagan's file.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of the appeal.  For your convenience, all documents may be sent via facsimile to 402-361-1460.

Please note that we are not making a final determination on Mrs. Flanagan's disability claim at this time as we want to provide your client with every opportunity to submit a complete appeal.

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #1601495

Please contact me directly at the number below with any questions you may have or email us at  LFGAppeals@lfg.com.

Sincerely,

Joseph Jackson
800-423-2765 *7735
Sr Claims Examiner, Claims Professional
The Lincoln National Life Insurance Company

# <u>Vocational Consulting Services, LLC</u>

3433 South Campbell, Suite H
Springfield, Missouri 65807

Phillip Eldred, M.S., C.R.C. (417) 844-8329
Certified Rehabilitation Counselor phillipeldred@att.net

Law Offices of Rick S. Vasquez Re: Jamie S. Flanagan
Rick Vasquez, Attorney at Law S.S. #: █████████
1736 East Sunshine, Suite 103 Date: October 5 2016
Springfield, Missouri 65804

## VOCATIONAL REHABILITATION EVALUATION

### INTRODUCTION

Thank you for referring the above individual for a vocational rehabilitation evaluation relating to her claim for Long Term Disability. Ms. Jamie Flanagan came to the evaluation alone. I had the opportunity to read and review the following medical records and reports:

1. Lincoln National Life Ins Company's Chronological Activity List, 54 pages;
2. Amendment 3 to policy, 1 Page;
3. Lincoln National Life Ins. LTD Policy, 89 pages;
4. Lincoln National Life Ins denial letter, 12/04/13, 7 pages;
5. Lincoln National Life Ins denial of benefits letter 09/28/15,9 pages;
6. Lincoln National Life Ins appeal-with MRI/CT, & doctor notes, 01125/16, 10 pages;
7. Lincoln National Life Ins appeal acknowledgement, 02/10/16, 2 pages;
8. Lincoln National Life Ins denial of benefits-appeal letter, 04/26/16, 6 pages;
9. Donald K. Hopewell, M.D., medical records, 08/02/11-07/15/2015, 18 pages;
10. Donald K. Hopewell, M.D, Lincoln's Abilities Form, 04/21/15, 1 page;
11. Joseph Thomas, M.D. (Reliable Review Services) Peer File Review 03/09/16, 6 pages;
12. Long Term Disability Employer's Statement, Judy Hampton-Cox HR Supervisor, 11/15/13, 8 pages;
13. Lincoln National Life Ins. Long-Term Disability Application, 11/10/13, 8 pages;
14. Social Security Disability Notice of Award, 04/14/14, 7 pages;
15. Nancy (Dickey) Beisswenger, OTR/L, Functional Capacity Evaluation, 04/23/14, 19 pages;
16. Lincoln National Life Ins Approval letter, 06/16/14, 2 pages;
17. Meghana C. Karande, M.D., (University Disability Consortium) Medical File Review, 06/09/14, 15 pages;
18. Jamie Flanagan, Education Background Form & Treating Doctors' Info, 03/27/14, 5 pages;

1

19. Charles Mace, M.D., Springfield Neurological & Spine, medical records; 09/19/12, 4 pages;
20. Glady Jacob, M.D., EMG report, 10/22/10, 3 pages;
21. Wayne Wallender, D.O., Ozarks Pain Specialists, medical records, 08/15/13, 4 pages;
22. Imaging reports, 10/08/10-01/09/13, 23 pages.

Ms. Jamie Flanagan was seen September 19, 2016 at 3433 S. Campbell, Suite H, Springfield, Missouri for an interview and the administration of vocational assessments and tests which were as follows:

- Back Function Questionnaire
- Functional Capacity Checklist
- Purdue Pegboard Test

**MEDICAL HISTORY**

Ms. Jamie Flanagan is a thirty-six-year-old female who reported the following medical history:

- Depression since she was nineteen or twenty years of age.
- Three surgeries on her right foot and she still has some numbness on the ball of her foot.
- Left foot surgery with no residual problems.
- Gall Bladder surgery with no residuals.
- Hysterectomy with no residual problems.
- Exploratory laparotomy with no residual problems.
- Reconstructive breast surgery with no residual problems.
- Two c-sections with no residual problems.

**SUMMARY OF PRE-EXISTING MEDICAL RECORDS**

October 8, 2010: CoxHealth Branson Clinic, Diane L. Cornelison, D.O.: "Procedure: MRI cervical wo contrast."

October 22, 2010: Cox Pain and Neurology Branson, Jacob Glady, M.D.: "Impression: Lower back with pain radiating down the right lower extremity. Procedure: Nerve conduction study."

August 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. No improvement with 2nd epi. LBP variable with activity, leg pain consistent down posterior leg right into right heel..."

November 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. LBP variable with activity, leg pain more consistent, variable location. Postero lat leg may cross to medical knee. Burning lat forefoot..."

2

December 16, 2011: CoxHealth Branson Clinics, John h. Bartow, M.D.: "Procedure: CT spine lumbar wo contrast."

February 1, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. Pain is a posterior or postaro lateral on right leg. Clearly in my mind is lumbar post lami syndrome with fixed ? root injury…"

May 1, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. Pain with a posterior or posterolateral on right leg…"

May 9, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. 4 weeks of intermittent aching elbow toward wrist, right shoulder pain and neck pain…"

July 10, 2012: CoxHealth Branson Clinics, Beth A. Knox, FNP: "Procedure: MRI spine cervical without contrast."

July 31, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome and joint and neck pain…"

September 12, 2012: CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure: CT spine lumbar without contrast."

September 19, 2012: Springfield Neurological & Spine Institute, Charles Mace, M.D.: "Impression: Thoracic/lumbosacral neuritis/radiculitis, lumbago, spondylolisthesis, lumbar spine stenosis and lumbar radiculopathy. C5-6 left soft disc herniation with radicular pain into left upper arm and Spurlings sign. History of L5-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 and S1 radicular symptoms that are quite problematic. Plan: PT and traction and if no better, then consider ACDF. May be spinal stimulator candidate long term. CT myelo cervical, lumbar."

October 29, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain…"

November 2, 2012: CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure: CT spine lumbar with contrast myelogram."

December 28, 2012: CoxHealth Branson Clinics, Diane L. Cornelison, D.O.: "Procedure: MRI spine lumbar with and without contrast and MRI spine thoracic without contrast."

January 24, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain. Repeat MRI shows root scarring…"

April 25, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain…"

3

July 23, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain. Pain in lumbar and down legs…"

August 15, 2013: Ozarks Pain Specialists, Wayne H. Wallendar, D.O.: "Impression: Chronic pain syndrome and spondylolisthesis. Plan: Jamie is suffering from significant epidural fibrosis and is on high dose narcotics. Despite her current conservative treatments for this, she is in significant pain. At this time I recommend SCS."

## PRE-EXISTING OBSTACLES TO EMPLOYMENT

After reviewing Ms. Jamie Flanagan's medical history and records of past medical treatment, it is my opinion Ms. Flanagan did not have any impairment, which was vocationally disabling such as to constitute a hindrance or obstacle to employment before August of 2010.

## PRESENT PROBLEM

August of 2010: In the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

## SUMMARY OF MEDICAL RECORDS

The Lincoln National Life Insurance Company – "Amendment No. 3 – To be attached to and made part of Group Policy No.: 000010157326. Issued to: Lester E. Cox Medical Center: TOTAL DISABILITY or TOTAL DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonable allow."

4

November 10, 2013: Group Long-Term Disability Claim Application completed by Employee.

November 15, 2013: Long-Term Disability Claim Employer's Statement.

September 19, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome lumbar, weakness in legs. Plan: Insurance denied stimulator – patient will appeal."

October 31, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome. Plan: Patient requested cord stimulator trial – no benefit from trial."

December 4, 2013: Letter to Jamie Flanagan from Lincoln Financial Group:
Group Policy Number: 00001015732600000
Group Claim Number: 1130226196
Total Disability or Totally Disabled will be denied as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

5

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "CONCLUSIONS:

1. Please state your findings upon review the medical information."

Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

2. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings an diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitati8ons would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

6

a. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

June 16, 2014: Letter to Rick S. Vasquez from Reid Hastings, Disability Appeals Specialist, The Lincoln National Life Insurance Company: "This contract allows for coordination of benefits, and we were notified that your client is receiving Social Security Disability Income benefits. The amount you client is receiving will be offset from her disability benefits. Your client's Benefit Specialist will issue her benefit payments. We are happy to make a favorable determination concerning your client's Long Term Disability claim."

October 22, 2014: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of mixed connective tissue disease. Low back pain with radiation down the legs and right lateral foot with occasional similar symptoms on the left side..."

January 20, 2015: Donald Hopewell, M.D.: "Diagnosis: This is a patient with chronic low back pain due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. The symptom she's having at night I think her neuropathic and we discussed options in terms of medications..."

7

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.

Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:

The patient has the following functional/limitations or restrictions:

Lift/Carry:

0 – 10 lbs – Never

11 – 20 lbs – Never

21 – 35 lbs – Never

36 – 50 lbs – Never

51 – 100 lbs – Never

The patient may:

Sit – Frequently, 20 minute duration

Stand – Occasionally

Walk – Occasionally

Climb – Never

Bend – Never

Kneel – Never

Drive – Occasionally

Finger – Frequently, both hands

Handle – Frequently, both hands

Operate foot controls – Occasionally, both feet

Reach above the shoulder – Frequently, both hands

Are there environmental factors that the patient should avoid? No."

July 15, 2015: Donald Hopewell, M.D.: "Diagnosis: Chronic low back pain do to lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component. Patient was tearful during the interview and physical examination and as we discussed more in detail I think is it clear that she is having significant depressive symptomology. I'm not sure if this is because of poor pain control or whether or not this is related to other light stressors as well as her chronic pain issues and limited functional capacity. Regardless I think her mood is significantly increasing her pain issue."

August 3, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar spondylolisthesis, lumbar post laminectomy syndrome, and inflammatory arthropathy secondary to autoimmune disease. The patient requested early followup because she fell about a month ago now landing on her right buttock. She's had increased pain that is typical of her pain in the past it is lumbar and she gets dysesthetic pains down into the right lower extremity predominantly. She's also found a small area of mass in the right low lumbar region that has been tender and she did not appreciate lately. This is a patient is a flare of her pain issues following a fall. There is nothing to suggest new process but simply an aggravation of her long-standing issues."

8

September 28, 2015: Letter to Jamie Flanagan from Lincoln Financial Group:
Policyholder: Lester E Cox Medical Center
Policy Number: 00001015732600000
Claim Number: 1130226196
We have completed our review of you Long Term Disability claim and benefits beyond
11/24/2015 have been denied. The Policy issued to Lester E Cox Medical Center contains,
but is not limited to the following:
Total Disability or Totally Disabled will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an
   Injury or Sickness the Insured Employee is unable to perform each of the Main Duties
   of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the
   Insured Employee is unable to perform each of the Main Duties of any occupation
   which his or her training, education or experience will reasonably allow."

January 25, 2016: Letter from Rick S. Vasquez to The Lincoln National Life Insurance
Company: "This correspondence comes as an appeal of the denial of September 28, 2015 on
behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our
appeal:
1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter."

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.)
to Lincoln Financial Group:
"Questions and Reviewer's Response:
1. Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful.
The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet
arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left
L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near
normal range of motion and strength. She was limited to 7 pounds of lifting/handling.
Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The
claimant was prohibited from any lifting. She could perform occasional standing/walking
and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and
rheumatology issues were affecting the claimant's back pain.
2. Based on the medical findings, please provide a description of the claimant's
impairments, and how these would translate into functional limitations or medically
appropriate restrictions from 11/25/2015 and forward.
   ➤ Per the FCE, the claimant could lift up to 7 pounds occasionally.
   ➤ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➤ She could perform occasional standing/walking with 10 minutes of continuous
     standing or walking.
   ➤ She could perform occasional bending and stooping.

9

> She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

> The claimant could lift up to 7 pounds occasionally.
> She could perform frequent sitting with 20 minutes of continuous sitting.
> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> She could perform occasional bending and stooping.
> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

3. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using Amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez:
"Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

10

| DOT# | Occupation | Monthly Wage | Physical Demand |
|------|-----------|--------------|-----------------|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

## FUTURE TREATMENT POSSIBILITIES

Ms. Jamie Flanagan stated that she is seen by her primary care provider as needed; her Rheumatologist once every six months; and she is in the process of finding a pain management physician. Ms. Flanagan stated that she takes the following medication: Morphine and Oxycodone for back pain; Soma as a muscle spasm reducer; Robaxin as a muscle relaxer; Ibuprofen for pain; Topamax for headaches; Wellbutrin for depression; Plaquenil for auto immune system; Alprazolam for anxiety as needed; Lidoderm patch for pain; Bentyl and Donnatol for stomach; Zofran for nausea; a medicine for hives; a sleep medicine, and a medication for constipation.

## OBSERVATIONS

Ms. Jamie Flanagan came to the evaluation casually dressed. She got up and stood behind a chair from time to time due to her pain.

## FUNCTIONAL LIMITATIONS

The Back Function Questionnaire and the Functional Capacity Checklist (FCC) measured Jamie's perception of her physical limitations. An individual's self-perception of functional disability has been shown to be a factor affecting return to work. The self-assessment can be compared to more objective medical assessments of the individual's functional limitations.

The **Back Function Questionnaire** is a self-reporting survey of fifteen activities that asks the individual to rate the degree of pain she experiences when performing the activity. The activities and responses are shown below.

When asked how long the following activities could be done without pain or before the pain becomes worse, the results were as follows:

1. Sitting:      Less than one hour
2. Standing:      Less than thirty minutes
3. Walking:      Less than ten minutes

When asked if the following activities increase pain, the results were as follows:

4. Squatting:      Moderate
5. Stair climbing:      Severe
6. Getting into or up from a chair:      Mild
7. Lifting moderately heavy objects (10-50 lb.):      Severe
8. Turning/twisting from one side to the other:      Mild
9. Everyday housework/chores:      Moderate

11

10. Better or worse with sleep:     Better
11. Overhead activities:     Moderate
12. Reaching:     Mild
13. Deskwork:     Severe
14. Sexual activity:     Moderate

When asked to rate the ability to return to work, the result was as follows:

15. Not Able to Work

**Reported Limitations**

Jamie reported that she can't continuously stand or walk for longer than approximately fifteen minutes; she can't continuously sit for longer than approximately twenty minutes; she must change positions frequently; she has physical problems that affect: lifting, carrying, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

Jamie stated that she is right hand dominate. She reported that she has muscle spasms in her right upper extremity.

Jamie reported that she has a moderate to severe impairment in regard to the following with her left lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), strength, and feeling.

Jamie reported that she has a severe impairment in regard to the following with her right lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), and feeling.

**COMPLAINTS OF PAIN**

Expert's testifying in the <u>Report of the Commission on the</u> <u>Evaluation of Pain</u> from the Department of Health and Human Services in June of 1986 testified: "that pain can really best be defined as a description of an individual's experience encompassing physical, mental, social and behavioral processes, and all dimensions involved in the pain experience need to be evaluated to make a useful determination of whether or not an individual is incapacitated by the pain. Pain behavior, including verbal reports of pain, thus becomes the means to make as objective an assessment as possible of an essentially subjective area."

Jamie reported that she does have a lot of pain. She doesn't feel that her pain is due to some undiagnosed problem. She doesn't feel that any of her pain is due to mental stress or emotional problems. She doesn't feel that her pain problem is curable. She feels that her pain problem is hopeless. She feels helpless with her pain. She stated that pain medication, Lidoderm patches, a TEN's unit, and water therapy have helped with her pain. She believes that she is being given enough pain medication by her doctor. She stated that her pain has not

12

LIN00407

changed over the last twelve months. She doesn't think her pain is going to change in the next twelve months. She is able to take care of herself as far as day to day needs are concerned. She would accept chronic pain treatment. She doesn't feel that any type of rehabilitation would help with her pain problem. She would accept rehabilitation with the goal of returning to work either part-time or full-time "if I could". Jamie uses narcotic pain medication—Oxycodone and Morphine. She stated that she needs to lie down during the day for two to three times for thirty minutes each time.

Jamie described her pain as an aching pain in both of her shoulders and both of her elbows; a throbbing pain in her right shoulder blade; an aching and throbbing pain in her low back; an aching pain down her right leg from her hip to her foot with numbness; a numbness down her left leg from her hip to her foot; and a burning pain in the bottom of her feet.

On a scale of 0 to 10 with ten being extreme pain, Jamie rated her pain at its worst as a 9, pain during the interview as a 5, and pain at its best as a 4.

**PHYSICAL DEMANDS**

The U.S. Department of Labor describes 20 **Physical Demands** found in occupations defined in the Dictionary of Occupational Titles. Each Physical Demand has a specific vocational definition. The Physical Demands are: *Strength (sedentary, light, medium, heavy, very heavy), Climbing, Balancing, Stooping (bending), Kneeling, Crouching, Crawling, Reaching, Handling, Fingering, Feeling, Talking, Hearing, Tasting/Smelling, Near Acuity, Far Acuity, Depth Perception, Accommodation, Color Vision, and Field of Vision.* Each occupational description in the DOT includes the Physical Demands required in that occupation and the frequency the typical worker performs that function (Never; Occasional, up to 1/3 of the work day; Frequent, from 1/3 to 2/3s of the work day; Constant, over 2/3s of the work day). Strength characteristics refer to an individual's physical abilities of walking, standing, lifting, carrying, pushing, pulling, reaching, etc. Using the categories of "sedentary," "light," "medium," "heavy" and "very heavy," makes determination of physical strength characteristics. Definitions for Sedentary, Light, Medium, Heavy and Very Heavy Work Levels are as follows:

**Sedentary Work -** "Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

**Light Work -** "Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly (Constantly: activity or condition exists more than 2/3 of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or

13

standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials may be negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

**Medium Work** - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

**Very Heavy Work** – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

## SPECIAL CONSIDERATIONS

"The individual who must alternate sitting, standing and/or walking is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing and walking contemplated for most light work. There are some jobs in the national economy - typically professional and managerial ones - in which a person can sit or stand with a degree of choice. However most jobs have ongoing work processes which demand that a worker be in a certain place or posture at least for a certain length of time to accomplish a certain task. Unskilled type jobs are particularly structured so that a person cannot ordinarily sit or stand at will." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

"Reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore may eliminate a large number of occupations a person otherwise could do. Fingering involves picking, pinching or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semi-skilled jobs at all levels of exertion. As a general rule limitations of fine manual dexterity have greater significance - in terms of relative number of jobs in which the function is required - as the person's exertional capacity decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

14

**Medical Restrictions—Ms. Jamie Flanagan's restrictions are as follows from the following doctors:**

**Social Security Administration:**

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

**Social Security Administration found her to be disabled.**

**Nancy (Dickey) Beisswenger:**

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

> **Nancy (Dickey) Beisswenger gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.**

**Dr. Meghana Karande:**

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "
CONCLUSIONS:
3. "Please state your findings upon review the medical information."
Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

15

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

4. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings and diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

b. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

16

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

**Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.**

**Dr. Donald Hopewell:**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.

Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:

The patient has the following functional/limitations or restrictions:

Lift/Carry:

0 – 10 lbs – Never

11 – 20 lbs – Never

21 – 35 lbs – Never

36 – 50 lbs – Never

51 – 100 lbs – Never

The patient may:

Sit – Frequently, 20 minute duration

Stand – Occasionally

Walk – Occasionally

Climb – Never

Bend – Never

Kneel – Never

17

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid? No."

**Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
   3. Please provide a review summary of the medical findings.
   The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
   The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
   4. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
   ➤ Per the FCE, the claimant could lift up to 7 pounds occasionally.
   ➤ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➤ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➤ She could perform occasional bending and stooping.
   ➤ She could perform frequent reaching and fingering.
A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
These limitations would be effective from 11/25/2015 and forward.
B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
   ➤ The claimant could lift up to 7 pounds occasionally.
   ➤ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➤ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➤ She could perform occasional bending and stooping.

18

LIN00413

> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE**

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

## VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
| --- | --- | --- |
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

## WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the <u>Dictionary of Occupational Titles</u>, (DOT):

|  |  | Strength |
| --- | --- | --- |
| Nurse Practioner (9 years) | 075.264-010 | (L) |

20

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| | DOT# | Occupation | Monthly Wage | Physical Demand |
| --- | --- | --- | --- | --- |
| 1. | 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. | 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

## TRANSFERABLE SKILLS

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

Social Security Administration found her to be disabled.

Nancy (Dickey) Beisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation,* a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment…"

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

LIN00419

# SEEKER DATA

Flanagan, Jamie S.
1625 Musky Dime Drive
Crane, MO 65693

| | | | |
|---|---|---|---|
| **Phone 1:** | (417) 459-5879 | **SSN:** | ▮ |
| **Phone 2:** | | **eMail:** | |
| | | | |
| **Reg/Case:** | | **Job Ready:** | |
| **Source:** | | **Record Opened:** | 10/04/2016 |
| **Funding:** | | **Record Updated:** | 10/04/2016 |
| **Program:** | | **Record Closed:** | |
| | | | |
| **Counselor:** | Phillip Eldred | **Phone:** | |
| **Placement Specialist:** | | **Phone:** | |
| | | | |
| **Job Goal:** | | | |
| | | | |
| **Desired Salary:** | | **Bilingual:** | No |
| **Hours:** | 0 | **Language:** | |
| | | | |
| **Shift:** | Day | **Transportation:** | None |
| **Overtime:** | Never | **License:** | |
| **Weekends:** | Never | | |
| **Relocate:** | No | | |
| | | | |
| **Skr1:** | | | |
| **Skr2:** | | | |
| **Skr3:** | | | |

Rehabilitation Consulting Services Inc.
10/04/2016

Page 1

# WORK HISTORY

Name: Flanagan, Jamie S.

SSN: ███████

Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|----------|-----------------|-----|-----|-----|-----|---------|----------|-----|----------|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

**075.264-010 Nurse Practitioner**
**O*NET Code:** 29-1171.00 Nurse Practitioners

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner

DLU: 1989

**O*NET Title:** Nurse Practitioners
**O*NET Code:** 29-1171.00

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses. Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy. Prescribe medications based on efficacy, safety, and cost as legally authorized. Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender. Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays). Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks. Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines. Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults. Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing. Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies. Diagnose or treat chronic health care problems such as high blood pressure and diabetes. Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability. Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary. Schedule follow-up visits to monitor patients or evaluate health or illness care. Perform routine or annual physical examinations. Supervise or coordinate patient care or support staff activities. Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services. Provide patients or caregivers with assistance in locating health care resources. Maintain departmental policies and procedures in areas such as safety and infection control. Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds. Advocate for accessible health care that minimizes environmental health risks. Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOT's under this O*NET Code.

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

Please note: O*NET Codes are under development and subject to change.

# OCCUPATIONAL REQUIREMENTS

**Name:** Flanagan, Jamie S.

**SSN:** ▮▮▮▮▮▮

**Reg/Case:**

| Title: | | **DOT Code:** | 075.264-010 |
|---|---|---|---|
| **Industry:** | Medical Services | | |

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 13-14
Language  Grades 13-14

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | **Environmental Conditions:** | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| **Work Situations:** | Directing, controlling, or planning activities of others. | **Data:** | 2 Analyzing |
|---|---|---|---|
| | Making judgments and decisions. | **People:** | 6 Speaking-Signaling |
| | Dealing with people. | **Things:** | 4 Manipulating |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

# OCCUPATIONAL DESCRIPTION

**Name:** Flanagan, Jamie S.

**SSN:** ▆▆▆▆

**Reg/Case:**

**075.167-010 Nurse, Supervisor**
**O\*NET Code:** 29-1141.00 Registered Nurses

Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

---

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

# OCCUPATIONAL REQUIREMENTS

**Name:** Flanagan, Jamie S.

**SSN:** ███████
**Reg/Case:**

| **Title:** | | **DOT Code:** | 075.167-010 |
|---|---|---|---|
| **Industry:** | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | **Environmental Conditions:** | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

**Work Situations:** Performing a variety of duties.
Directing, controlling, or planning activities of others.
Dealing with people.
Attaining precise set limits, tolerances, and standards.
Performing effectively under stress.

**Data:** 1 Coordinating
**People:** 6 Speaking-Signaling
**Things:** 7 Handling

| **Aptitudes:** | **DOT** | **OAP** |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

**075.364-010 Nurse, General Duty**
**O\*NET Code: 29-1141.00 Registered Nurses**

Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

---

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

Rehabilitation Consulting Services Inc.
10/04/2016

Page 8

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ███████
Reg/Case:

| Title: | | DOT Code: | 075.364-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength: Medium** — Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Dealing with people. | Data: | 3 Compiling |
|---|---|---|---|
| | Attaining precise set limits, tolerances, and standards. | People: | 6 Speaking-Signaling |
| | Making judgments and decisions. | Things: | 4 Manipulating |
| | Performing effectively under stress. | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

# WORK HISTORY

Name: a

SSN:
Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

# OCCUPATIONAL DESCRIPTION

Name: a

SSN:

Reg/Case:

**075.127-014  Nurse, Consultant**
**O*NET Code:** 29-1141.00  Registered Nurses

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services:  Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications.  Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs.  Provides assistance in developing guides and manuals for specific aspects of nursing services.  Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups.  Advises in services available through community resources.  Consults with nursing groups concerning professional and educational problems.  Prepares or furnishes data for articles and lectures.  Participates in surveys and research studies.
DLU:  1977

**O*NET Title:** Registered Nurses
**O*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.  Administer medications to patients and monitor patients for reactions or side effects.  Record patients' medical information and vital signs.  Monitor, record, and report symptoms or changes in patients' conditions.  Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.  Modify patient treatment plans as indicated by patients' responses and conditions.  Monitor all aspects of patient care, including diet and physical activity.  Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.  Prepare patients for and assist with examinations or treatments.  Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.  Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.  Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.  Refer students or patients to specialized health resources or community agencies furnishing assistance.  Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.  Administer local, inhalation, intravenous, or other anesthetics.  Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.  Hand items to surgeons during operations.  Observe nurses and visit patients to ensure proper nursing care.  Conduct specified laboratory tests.  Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.  Engage in research activities related to nursing.  Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.  Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.  Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.  Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.  Provide or arrange for training or instruction of auxiliary personnel or students.  Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

# OCCUPATIONAL REQUIREMENTS

Name: a                                                   SSN:
                                                          Reg/Case:

| Title: | DOT Code: | 075.127-014 |
|---|---|---|
| Industry: Medical Services | | |

**Specific Vocational Preparation:**  Level 7 (2 to 4 years)

**General Educational Development:**  Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Sedentary          Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | Data: | 1 Coordinating |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | People: | 2 Instructing |
| | Dealing with people. | Things: | 7 Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 431 of 550   LIN00431

# Curriculum Vitae

**Phillip Aaron Eldred**
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

**Professional Career:**

## Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

## Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

1

LIN00432

4. Arranges for or administers pyschological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

## Position: Elementary Counselor

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

## Organizations and Memberships:

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

## Education & Certifications:

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
       Missouri Life Certificate - Teacher, Grades 7-12
       Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling**: August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
       Missouri Life Certificate - Counselor, Grades 7-12
       Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

**Rehabilitation Education:**

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling 1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

LIN00434

> Outcome Based Training – 2002
> Transition Symposium – 2002
> Ticket to Work – 2002
> Choices Training – 2003
> Ethics in Rehabilitation – 2003
> Order of Selection Training – 2003
> ADHD Training – 2004
> Self-Employment Training – 2004
> Power Up – 2005
> Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken: The Americans With Disabilities Act of 1990 and Workers
Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken: Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken: Advanced Workers' Compensation In Missouri - 1992
Missouri Return To Work Issues In Workers' Compensation - 1999
Introduction To Workers' Compensation In Missouri - 2000
Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken: Americans With Disabilities Act Conference - 1992
Successfully Employing People With Disabilities - 1993
Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken: Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken: Fundamentals of Supported Employment - 1994
Transition Symposium – 2002
Spring Training Institute – 2003
Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken: Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken: Power to Shine: Job Retention Strategies for the New Employee – 1999

4

American Schools Association – Chicago
Classes Taken:      Family First – 2010
                   Clinicains in Court – 2010
                   Ethics in Couseling and Psychotherapy – 2010
                   How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:      More Effective Interviewing – 2015
                   Rehabiliation Update – 2015
                   Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:        Planning For Uncertainty – 2015

5

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 437 of 550



Hasler
10/19/2016
**US POSTAGE**
$02.41⁰

FIRST-CLASS MAIL

ZIP 65804
011D12810600

Hasler
10/19/2016
**US POSTAGE**
$06.25⁰

ZIP 65804
011D12810600

7016 0340 0000 1727 9470

**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

OCT 2 1 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

 **Law Offices of Rick S. Vasquez**

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

**OCT 2 1 2016**

*Rick S. Vasquez*
*Fredrick E. Vasquez*

October 18, 2016

Fax: 402-361-1460

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

> **Re:** *Claimant: Jamie Flanagan*
> *Policyholder: Lester E. Cox Medical Center*
> *Policy# 00001015732600000*
> *Claim# 1130226196*

Dear Lincoln National:

This letter comes as an appeal of Mrs. Flanagan's April 26, 2016, denial of long term disability benefits. I am enclosing herewith a copy of a vocation evaluation from Phil Eldred, M.S. C.R.C. Please note Mr. Eldred sets forth the medical and other evidence he reviewed on pages 1 and 2 of his report. Please review this document and appeal and advise when Mrs. Flanagan's benefits will be reinstituted. I would note the opinion of the last reviewing physician, Dr. Joseph Thomas, is for less than sedentary work and in fact in the report of Dr. Thomas, he largely deferred to my client's treating physician. However, this deference and the totality of Dr. Thomas' opinion was conspicuously left out of the determination of April 26th denying my client.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan



LIN00439

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

OCT 2 1 2016

*Rick S. Vasquez*
*Fredrick E. Vasquez*

October 18, 2016

Fax: 402-361-1460

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Re:     *Claimant: Jamie Flanagan*
        *Policyholder: Lester E. Cox Medical Center*
        *Policy# 00001015732600000*
        *Claim# 1130226196*

Dear Lincoln National:

This letter comes as an appeal of Mrs. Flanagan's April 26, 2016, denial of long term disability benefits. I am enclosing herewith a copy of a vocation evaluation from Phil Eldred, M.S. C.R.C. Please note Mr. Eldred sets forth the medical and other evidence he reviewed on pages 1 and 2 of his report. Please review this document and appeal and advise when Mrs. Flanagan's benefits will be reinstituted. I would note the opinion of the last reviewing physician, Dr. Joseph Thomas, is for less than sedentary work and in fact in the report of Dr. Thomas, he largely deferred to my client's treating physician. However, this deference and the totality of Dr. Thomas' opinion was conspicuously left out of the determination of April 26th denying my client.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

# Vocational Consulting Services, LLC

3433 South Campbell, Suite H
Springfield, Missouri 65807

Phillip Eldred, M.S., C.R.C.
Certified Rehabilitation Counselor

(417) 844-8329
phillipeldred@att.net

Law Offices of Rick S. Vasquez
Rick Vasquez, Attorney at Law
1736 East Sunshine, Suite 103
Springfield, Missouri 65804

Re: Jamie S. Flanagan
S.S. #▮▮▮▮▮▮▮
Date: October 5 2016

## VOCATIONAL REHABILITATION EVALUATION

### INTRODUCTION

Thank you for referring the above individual for a vocational rehabilitation evaluation relating to her claim for Long Term Disability. Ms. Jamie Flanagan came to the evaluation alone. I had the opportunity to read and review the following medical records and reports:

1. Lincoln National Life Ins Company's Chronological Activity List, 54 pages;
2. Amendment 3 to policy, 1 Page;
3. Lincoln National Life Ins. LTD Policy, 89 pages;
4. Lincoln National Life Ins denial letter, 12/04/13, 7 pages;
5. Lincoln National Life Ins denial of benefits letter 09/28/15,9 pages;
6. Lincoln National Life Ins appeal-with MRI/CT, & doctor notes, 01125/16, 10 pages;
7. Lincoln National Life Ins appeal acknowledgement, 02/10/16, 2 pages;
8. Lincoln National Life Ins denial of benefits-appeal letter, 04/26/16, 6 pages;
9. Donald K. Hopewell, M.D., medical records, 08/02/11-07/15/2015, 18 pages;
10. Donald K. Hopewell, M.D, Lincoln's Abilities Form, 04/21/15, 1 page;
11. Joseph Thomas, M.D. (Reliable Review Services) Peer File Review 03/09/16, 6 pages;
12. Long Term Disability Employer's Statement, Judy Hampton-Cox HR Supervisor, 11/15/13, 8 pages;
13. Lincoln National Life Ins. Long-Term Disability Application, 11/10/13, 8 pages;
14. Social Security Disability Notice of Award, 04/14/14, 7 pages;
15. Nancy (Dickey) Beisswenger, OTR/L, Functional Capacity Evaluation, 04/23/14, 19 pages;
16. Lincoln National Life Ins Approval letter, 06/16/14, 2 pages;
17. Meghana C. Karande, M.D., (University Disability Consortium) Medical File Review, 06/09/14, 15 pages;
18. Jamie Flanagan, Education Background Form & Treating Doctors' Info, 03/27/14, 5 pages;

1

19. Charles Mace, M.D., Springfield Neurological & Spine, medical records; 09/19/12, 4 pages;
20. Glady Jacob, M.D., EMG report, 10/22/10, 3 pages;
21. Wayne Wallender, D.O., Ozarks Pain Specialists, medical records, 08/15/13, 4 pages;
22. Imaging reports, 10/08/10-01/09/13, 23 pages.

Ms. Jamie Flanagan was seen September 19, 2016 at 3433 S. Campbell, Suite H, Springfield, Missouri for an interview and the administration of vocational assessments and tests which were as follows:

- Back Function Questionnaire
- Functional Capacity Checklist
- Purdue Pegboard Test

## MEDICAL HISTORY

Ms. Jamie Flanagan is a thirty-six-year-old female who reported the following medical history:

- Depression since she was nineteen or twenty years of age.
- Three surgeries on her right foot and she still has some numbness on the ball of her foot.
- Left foot surgery with no residual problems.
- Gall Bladder surgery with no residuals.
- Hysterectomy with no residual problems.
- Exploratory laparotomy with no residual problems.
- Reconstructive breast surgery with no residual problems.
- Two c-sections with no residual problems.

## SUMMARY OF PRE-EXISTING MEDICAL RECORDS

October 8, 2010: CoxHealth Branson Clinic, Diane L. Cornelison, D.O.: "Procedure: MRI cervical wo contrast."

October 22, 2010: Cox Pain and Neurology Branson, Jacob Glady, M.D.: "Impression: Lower back with pain radiating down the right lower extremity. Procedure: Nerve conduction study."

August 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. No improvement with 2nd epi. LBP variable with activity, leg pain consistent down posterior leg right into right heel…"

November 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. LBP variable with activity, leg pain more consistent, variable location. Postero lat leg may cross to medical knee. Burning lat forefoot…"

2

December 16, 2011: CoxHealth Branson Clinics, John h. Bartow, M.D.: "Procedure: CT spine lumbar wo contrast."

February 1, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. Pain is a posterior or postaro lateral on right leg. Clearly in my mind is lumbar post lami syndrome with fixed ? root injury..."

May 1, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. Pain with a posterior or posterolateral on right leg..."

May 9, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome. 4 weeks of intermittent aching elbow toward wrist, right shoulder pain and neck pain..."

July 10, 2012: CoxHealth Branson Clinics, Beth A. Knox, FNP: "Procedure: MRI spine cervical without contrast."

July 31, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis and lumbar post-lami syndrome and joint and neck pain..."

September 12, 2012: CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure: CT spine lumbar without contrast."

September 19, 2012: Springfield Neurological & Spine Institute, Charles Mace, M.D.: "Impression: Thoracic/lumbosacral neuritis/radiculitis, lumbago, spondylolisthesis, lumbar spine stenosis and lumbar radiculopathy. C5-6 left soft disc herniation with radicular pain into left upper arm and Spurlings sign. History of L5-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 and S1 radicular symptoms that are quite problematic. Plan: PT and traction and if no better, then consider ACDF. May be spinal stimulator candidate long term. CT myelo cervical, lumbar."

October 29, 2012: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain..."

November 2, 2012: CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure: CT spine lumbar with contrast myelogram."

December 28, 2012: CoxHealth Branson Clinics, Diane L. Cornelison, D.O.: "Procedure: MRI spine lumbar with and without contrast and MRI spine thoracic without contrast."

January 24, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain. Repeat MRI shows root scarring..."

April 25, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain..."

3

July 23, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain. Pain in lumbar and down legs…"

August 15, 2013: Ozarks Pain Specialists, Wayne H. Wallendar, D.O.: "Impression: Chronic pain syndrome and spondylolisthesis. Plan: Jamie is suffering from significant epidural fibrosis and is on high dose narcotics. Despite her current conservative treatments for this, she is in significant pain. At this time I recommend SCS."

## PRE-EXISTING OBSTACLES TO EMPLOYMENT

After reviewing Ms. Jamie Flanagan's medical history and records of past medical treatment, it is my opinion Ms. Flanagan did not have any impairment, which was vocationally disabling such as to constitute a hindrance or obstacle to employment before August of 2010.

## PRESENT PROBLEM

August of 2010: In the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

## SUMMARY OF MEDICAL RECORDS

The Lincoln National Life Insurance Company – "Amendment No. 3 – To be attached to and made part of Group Policy No.: 000010157326. Issued to: Lester E. Cox Medical Center: TOTAL DISABILITY or TOTAL DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonable allow."

4

November 10, 2013: Group Long-Term Disability Claim Application completed by Employee.

November 15, 2013: Long-Term Disability Claim Employer's Statement.

September 19, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome lumbar, weakness in legs. Plan: Insurance denied stimulator – patient will appeal."

October 31, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome. Plan: Patient requested cord stimulator trial – no benefit from trial."

December 4, 2013: Letter to Jamie Flanagan from Lincoln Financial Group:
Group Policy Number: 00001015732600000
Group Claim Number: 1130226196
Total Disability or Totally Disabled will be denied as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

5

LINC00445

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "CONCLUSIONS:

1. Please state your findings upon review the medical information."

Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

2. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings an diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitati8ons would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

6

    a. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain." Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

June 16, 2014: Letter to Rick S. Vasquez from Reid Hastings, Disability Appeals Specialist, The Lincoln National Life Insurance Company: "This contract allows for coordination of benefits, and we were notified that your client is receiving Social Security Disability Income benefits. The amount you client is receiving will be offset from her disability benefits. Your client's Benefit Specialist will issue her benefit payments. We are happy to make a favorable determination concerning your client's Long Term Disability claim."

October 22, 2014: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of mixed connective tissue disease. Low back pain with radiation down the legs and right lateral foot with occasional similar symptoms on the left side…"

January 20, 2015: Donald Hopewell, M.D.: "Diagnosis: This is a patient with chronic low back pain due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. The symptom she's having at night I think her neuropathic and we discussed options in terms of medications…"

7

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.

Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:

The patient has the following functional/limitations or restrictions:

Lift/Carry:

0 – 10 lbs – Never

11 – 20 lbs – Never

21 – 35 lbs – Never

36 – 50 lbs – Never

51 – 100 lbs – Never

The patient may:

Sit – Frequently, 20 minute duration

Stand – Occasionally

Walk – Occasionally

Climb – Never

Bend – Never

Kneel – Never

Drive – Occasionally

Finger – Frequently, both hands

Handle – Frequently, both hands

Operate foot controls – Occasionally, both feet

Reach above the shoulder – Frequently, both hands

Are there environmental factors that the patient should avoid? No."

July 15, 2015: Donald Hopewell, M.D.: "Diagnosis: Chronic low back pain do to lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component. Patient was tearful during the interview and physical examination and as we discussed more in detail I think is it clear that she is having significant depressive symptomology. I'm not sure if this is because of poor pain control or whether or not this is related to other light stressors as well as her chronic pain issues and limited functional capacity. Regardless I think her mood is significantly increasing her pain issue."

August 3, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar spondylolisthesis, lumbar post laminectomy syndrome, and inflammatory arthropathy secondary to autoimmune disease. The patient requested early followup because she fell about a month ago now landing on her right buttock. She's had increased pain that is typical of her pain in the past it is lumbar and she gets dysesthetic pains down into the right lower extremity predominantly. She's also found a small area of mass in the right low lumbar region that has been tender and she did not appreciate lately. This is a patient is a flare of her pain issues following a fall. There is nothing to suggest new process but simply an aggravation of her long-standing issues."

8

September 28, 2015:  Letter to Jamie Flanagan from Lincoln Financial Group:
Policyholder:  Lester E Cox Medical Center
Policy Number:  00001015732600000
Claim Number:  1130226196
We have completed our review of you Long Term Disability claim and benefits beyond 11/24/2015 have been denied.  The Policy issued to Lester E Cox Medical Center contains, but is not limited to the following:
Total Disability or Totally Disabled will be defined as follows:
1.  During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.  After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

January 25, 2016:  Letter from Rick S. Vasquez to The Lincoln National Life Insurance Company:  "This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan.  I am enclosing the following in conjunction with our appeal:
1.  MRI & CT of the Lumbar Spine Report;
2.  Dr. Donald Hopewell's office note; and
3.  Dr. Donald Hopewell's letter."

March 9, 2016:  Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
1.  Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength.  She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015.  The claimant was prohibited from any lifting.  She could perform occasional standing/walking and frequent sitting, reaching and fingering.  Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
2.  Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
➢  Per the FCE, the claimant could lift up to 7 pounds occasionally.
➢  She could perform frequent sitting with 20 minutes of continuous sitting.
➢  She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
➢  She could perform occasional bending and stooping.

9

> She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

> The claimant could lift up to 7 pounds occasionally.
> She could perform frequent sitting with 20 minutes of continuous sitting.
> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> She could perform occasional bending and stooping.
> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

3. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using Amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez:
"Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

10

| DOT# | Occupation | Monthly Wage | Physical Demand |
|------|-----------|--------------|-----------------|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

**FUTURE TREATMENT POSSIBILITIES**

Ms. Jamie Flanagan stated that she is seen by her primary care provider as needed; her Rheumatologist once every six months; and she is in the process of finding a pain management physician. Ms. Flanagan stated that she takes the following medication: Morphine and Oxycodone for back pain; Soma as a muscle spasm reducer; Robaxin as a muscle relaxer; Ibuprofen for pain; Topamax for headaches; Wellbutrin for depression; Plaquenil for auto immune system; Alprazolam for anxiety as needed; Lidoderm patch for pain; Bentyl and Donnatol for stomach; Zofran for nausea; a medicine for hives; a sleep medicine, and a medication for constipation.

**OBSERVATIONS**

Ms. Jamie Flanagan came to the evaluation casually dressed. She got up and stood behind a chair from time to time due to her pain.

**FUNCTIONAL LIMITATIONS**

The Back Function Questionnaire and the Functional Capacity Checklist (FCC) measured Jamie's perception of her physical limitations. An individual's self-perception of functional disability has been shown to be a factor affecting return to work. The self-assessment can be compared to more objective medical assessments of the individual's functional limitations.

The **Back Function Questionnaire** is a self-reporting survey of fifteen activities that asks the individual to rate the degree of pain she experiences when performing the activity. The activities and responses are shown below.

When asked how long the following activities could be done without pain or before the pain becomes worse, the results were as follows:

1. Sitting:                                    Less than one hour
2. Standing:                                   Less than thirty minutes
3. Walking:                                    Less than ten minutes

When asked if the following activities increase pain, the results were as follows:

4. Squatting:                                  Moderate
5. Stair climbing:                             Severe
6. Getting into or up from a chair:            Mild
7. Lifting moderately heavy objects (10-50 lb.):  Severe
8. Turning/twisting from one side to the other:   Mild
9. Everyday housework/chores:                  Moderate

11

10. Better or worse with sleep:        Better
11. Overhead activities:               Moderate
12. Reaching:                          Mild
13. Deskwork:                          Severe
14. Sexual activity:                   Moderate

When asked to rate the ability to return to work, the result was as follows:

15. Not Able to Work

**Reported Limitations**

Jamie reported that she can't continuously stand or walk for longer than approximately fifteen minutes; she can't continuously sit for longer than approximately twenty minutes; she must change positions frequently; she has physical problems that affect: lifting, carrying, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

Jamie stated that she is right hand dominate. She reported that she has muscle spasms in her right upper extremity.

Jamie reported that she has a moderate to severe impairment in regard to the following with her left lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), strength, and feeling.

Jamie reported that she has a severe impairment in regard to the following with her right lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), and feeling.

**COMPLAINTS OF PAIN**

Expert's testifying in the Report of the Commission on the Evaluation of Pain from the Department of Health and Human Services in June of 1986 testified: "that pain can really best be defined as a description of an individual's experience encompassing physical, mental, social and behavioral processes, and all dimensions involved in the pain experience need to be evaluated to make a useful determination of whether or not an individual is incapacitated by the pain. Pain behavior, including verbal reports of pain, thus becomes the means to make as objective an assessment as possible of an essentially subjective area."

Jamie reported that she does have a lot of pain. She doesn't feel that her pain is due to some undiagnosed problem. She doesn't feel that any of her pain is due to mental stress or emotional problems. She doesn't feel that her pain problem is curable. She feels that her pain problem is hopeless. She feels helpless with her pain. She stated that pain medication, Lidoderm patches, a TEN's unit, and water therapy have helped with her pain. She believes that she is being given enough pain medication by her doctor. She stated that her pain has not

12

changed over the last twelve months. She doesn't think her pain is going to change in the next twelve months. She is able to take care of herself as far as day to day needs are concerned. She would accept chronic pain treatment. She doesn't feel that any type of rehabilitation would help with her pain problem. She would accept rehabilitation with the goal of returning to work either part-time or full-time "if I could". Jamie uses narcotic pain medication—Oxycodone and Morphine. She stated that she needs to lie down during the day for two to three times for thirty minutes each time.

Jamie described her pain as an aching pain in both of her shoulders and both of her elbows; a throbbing pain in her right shoulder blade; an aching and throbbing pain in her low back; an aching pain down her right leg from her hip to her foot with numbness; a numbness down her left leg from her hip to her foot; and a burning pain in the bottom of her feet.

On a scale of 0 to 10 with ten being extreme pain, Jamie rated her pain at its worst as a 9, pain during the interview as a 5, and pain at its best as a 4.

## PHYSICAL DEMANDS

The U.S. Department of Labor describes 20 **Physical Demands** found in occupations defined in the Dictionary of Occupational Titles. Each Physical Demand has a specific vocational definition. The Physical Demands are: *Strength (sedentary, light, medium, heavy, very heavy), Climbing, Balancing, Stooping (bending), Kneeling, Crouching, Crawling, Reaching, Handling, Fingering, Feeling, Talking, Hearing, Tasting/Smelling, Near Acuity, Far Acuity, Depth Perception, Accommodation, Color Vision, and Field of Vision.* Each occupational description in the DOT includes the Physical Demands required in that occupation and the frequency the typical worker performs that function (Never; Occasional, up to 1/3 of the work day; Frequent, from 1/3 to 2/3s of the work day; Constant, over 2/3s of the work day). Strength characteristics refer to an individual's physical abilities of walking, standing, lifting, carrying, pushing, pulling, reaching, etc. Using the categories of "sedentary," "light," "medium," "heavy" and "very heavy," makes determination of physical strength characteristics. Definitions for Sedentary, Light, Medium, Heavy and Very Heavy Work Levels are as follows:

**Sedentary Work -** "Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

**Light Work -** "Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly (Constantly: activity or condition exists more than 2/3 of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or

13

LIN00453

standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials may be negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

**Medium Work** - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

**Very Heavy Work** – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

## SPECIAL CONSIDERATIONS

"The individual who must alternate sitting, standing and/or walking is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing and walking contemplated for most light work. There are some jobs in the national economy - typically professional and managerial ones - in which a person can sit or stand with a degree of choice. However most jobs have ongoing work processes which demand that a worker be in a certain place or posture at least for a certain length of time to accomplish a certain task. Unskilled type jobs are particularly structured so that a person cannot ordinarily sit or stand at will." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

"Reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore may eliminate a large number of occupations a person otherwise could do. Fingering involves picking, pinching or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semi-skilled jobs at all levels of exertion. As a general rule limitations of fine manual dexterity have greater significance - in terms of relative number of jobs in which the function is required - as the person's exertional capacity decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

14

LIN00454

**Medical Restrictions—Ms. Jamie Flanagan's restrictions are as follows from the following doctors:**

**Social Security Administration:**

April 14, 2014:  Social Security Administration Notice of Award:  "You are entitled to monthly disability benefits beginning February 2014.  We found that you became disabled under our rules on August 22, 2013."

**Social Security Administration found her to be disabled.**

**Nancy (Dickey) Beisswenger:**

April 23, 2014:  Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L:  Functional Capacity Evaluation.
Diagnosis:  Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching:  Not restricted
Squatting:  Very occasional to not recommended
Bending:  Not recommended
Sitting:  Occasional, 20 minute duration
Standing:  Occasional to very occasional, 10 minute duration
Walking:  Occasional
Stair climbing:  Very occasional
Balance:  Protective heights
Crawling:  Very occasional to not recommended
Occasional material handing:  7 lb., Tested only to (stated) permanent restrictions
Frequent material handing:  Not tested.  Frequent lifting is not recommended
Work speed:  Functional approach to tasks
Work level:  Less than Sedentary."

> **Nancy (Dickey) Beisswenger gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.**

**Dr. Meghana Karande:**

June 9, 2014:  University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.:  "
CONCLUSIONS:
3. "Please state your findings upon review the medical information."
Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants.  She had a L5/S1 posterior lumbar fusion on April 1, 2011.

15

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

4. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings and diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

b. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

16

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

**Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.**

**Dr. Donald Hopewell:**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.

Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:

The patient has the following functional/limitations or restrictions:

Lift/Carry:

0 – 10 lbs – Never

11 – 20 lbs – Never

21 – 35 lbs – Never

36 – 50 lbs – Never

51 – 100 lbs – Never

The patient may:

Sit – Frequently, 20 minute duration

Stand – Occasionally

Walk – Occasionally

Climb – Never

Bend – Never

Kneel – Never

17

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid?  No."

**Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016:  Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
3.  Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength.  She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015.  The claimant was prohibited from any lifting.  She could perform occasional standing/walking and frequent sitting, reaching and fingering.  Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
4.  Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
   ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.
   ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➢ She could perform occasional bending and stooping.
   ➢ She could perform frequent reaching and fingering.
A.  For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
These limitations would be effective from 11/25/2015 and forward.
B.  Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
   ➢ The claimant could lift up to 7 pounds occasionally.
   ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➢ She could perform occasional bending and stooping.

18

> ➤ She could perform frequent reaching and fingering.
> ➤ These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE**

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

## VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
|---|---|---|
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

## WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the Dictionary of Occupational Titles, (DOT):

|  |  | Strength |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |

20

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| | | |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| | DOT# Occupation | | Monthly Wage | Physical Demand |
|---|---|---|---|---|
| 1. | 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. | 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**TRANSFERABLE SKILLS**

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

Social Security Administration found her to be disabled.

Nancy (Dickey) Beisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation,* a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment…"

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

LIN00464

# SEEKER DATA

Flanagan, Jamie S.
1625 Musky Dime Drive
Crane, MO 65693

| | | | |
|---|---|---|---|
| Phone 1: | (417) 459-5879 | SSN: | █████ |
| Phone 2: | | eMail: | |
| | | | |
| Reg/Case: | | Job Ready: | |
| Source: | | Record Opened: | 10/04/2016 |
| Funding: | | Record Updated: | 10/04/2016 |
| Program: | | Record Closed: | |
| | | | |
| Counselor: | Phillip Eldred | Phone: | |
| Placement Specialist: | | Phone: | |
| | | | |
| Job Goal: | | | |
| | | | |
| Desired Salary: | | Bilingual: | No |
| Hours: | 0 | Language: | |
| | | | |
| Shift: | Day | Transportation: | None |
| Overtime: | Never | License: | |
| Weekends: | Never | | |
| Relocate: | No | | |
| | | | |
| Skr1: | | | |
| Skr2: | | | |
| Skr3: | | | |

# WORK HISTORY

Name: Flanagan, Jamie S.                      SSN:
                                              Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮

Reg/Case:

**075.264-010  Nurse Practitioner**
**O\*NET Code:** 29-1171.00  Nurse Practitioners

   Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles:  Primary Care Nurse Practitioner

DLU:  1989

**O\*NET Title:** Nurse Practitioners
**O\*NET Code:** 29-1171.00

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses.   Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy.   Prescribe medications based on efficacy, safety, and cost as legally authorized.   Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender.   Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays).   Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks.   Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines.   Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults.   Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing.   Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies.   Diagnose or treat chronic health care problems such as high blood pressure and diabetes.   Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability.   Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary.   Schedule follow-up visits to monitor patients or evaluate health or illness care.   Perform routine or annual physical examinations.   Supervise or coordinate patient care or support staff activities.   Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services.   Provide patients or caregivers with assistance in locating health care resources.   Maintain departmental policies and procedures in areas such as safety and infection control.   Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds.   Advocate for accessible health care that minimizes environmental health risks.   Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOT's under this O\*NET Code.

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.　　　　　　　　　　　　　　　　　SSN: ▮▮▮▮▮▮

Reg/Case:

Please note: O*NET Codes are under development and subject to change.

Case 3:17-cv-05060-MDH　　Document 33-1　　Filed 05/15/18　　Page 468 of 550　LIN00468

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: █████████

Reg/Case:

| Title: | | DOT Code: | 075.264-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 13-14
Language Grades 13-14

**Strength: Light**

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, controlling, or planning activities of others. | Data: | 2 Analyzing |
|---|---|---|---|
| | Making judgments and decisions. | People: | 6 Speaking-Signaling |
| | Dealing with people. | Things: | 4 Manipulating |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

# OCCUPATIONAL DESCRIPTION

**Name:** Flanagan, Jamie S.

**SSN:** ███████

**Reg/Case:**

**075.167-010  Nurse, Supervisor**
**O\*NET Code:**  29-1141.00  Registered Nurses

Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

# OCCUPATIONAL REQUIREMENTS

**Name:** Flanagan, Jamie S.

**SSN:** ▮
**Reg/Case:**

| | |
|---|---|
| **Title:** | |
| **Industry:** Medical Services | **DOT Code:** 075.167-010 |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength:** Light — Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

**Environmental Conditions:** (shown in right columns above)

**Work Situations:** Performing a variety of duties. Directing, controlling, or planning activities of others. Dealing with people. Attaining precise set limits, tolerances, and standards. Performing effectively under stress.

**Data:** 1 Coordinating
**People:** 6 Speaking-Signaling
**Things:** 7 Handling

**Aptitudes:**

| | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: █████████
Reg/Case:

**075.364-010 Nurse, General Duty**
**O\*NET Code: 29-1141.00 Registered Nurses**

Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

---

**O\*NET Title: Registered Nurses**
**O\*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

---

Rehabilitation Consulting Services Inc.
10/04/2016

Page 8

# OCCUPATIONAL REQUIREMENTS

**Name:** Flanagan, Jamie S.

**SSN** ▮▮▮▮

**Reg/Case:**

| **Title:** | | **DOT Code:** | 075.364-010 |
|---|---|---|---|
| **Industry:** | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength:** Medium — Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

**Physical Demands:**

| | |
|---|---|
| Climbing | Never |
| Balancing | Never |
| Stooping | Occasionally |
| Kneeling | Never |
| Crouching | Never |
| Crawling | Never |
| Reaching | Frequently |
| Handling | Frequently |
| Fingering | Frequently |
| Feeling | Frequently |
| Talking | Frequently |
| Hearing | Frequently |
| Tasting/Smelling | Never |
| Near Acuity | Frequently |
| Far Acuity | Never |
| Depth Perception | Never |
| Accommodation | Occasionally |
| Color Vision | Frequently |
| Field of Vision | Never |

**Environmental Conditions:**

| | |
|---|---|
| Noise Intensity Level | Moderate |
| Exposure to Weather | Never |
| Extreme Cold | Never |
| Extreme Heat | Never |
| Wet and/or Humid | Never |
| Vibration | Never |
| Atmospheric Conditions | Never |
| Proximity to Moving Mechanical Parts | Never |
| Exposure to Electrical Shock | Never |
| Working in High Exposed Places | Never |
| Exposure to Radiation | Never |
| Working with Explosives | Never |
| Exposure to Toxic or Caustic Chemicals | Never |
| Other Environmental Conditions | Never |

**Work Situations:** Dealing with people.
Attaining precise set limits, tolerances, and standards.
Making judgments and decisions.
Performing effectively under stress.

**Data:** 3 Compiling
**People:** 6 Speaking-Signaling
**Things:** 4 Manipulating

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

# WORK HISTORY

Name: a

SSN:
Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|----------|------------------|-----|-----|-----|-----|---------|----------|-----|----------|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 474 of 550    LIN00474

# OCCUPATIONAL DESCRIPTION

Name: a

SSN:

Reg/Case:

**075.127-014 Nurse, Consultant**
**O\*NET Code:** 29-1141.00 Registered Nurses

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services: Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications. Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs. Provides assistance in developing guides and manuals for specific aspects of nursing services. Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups. Advises in services available through community resources. Consults with nursing groups concerning professional and educational problems. Prepares or furnishes data for articles and lectures. Participates in surveys and research studies.
DLU: 1977

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

# OCCUPATIONAL REQUIREMENTS

Name: a

SSN:
Reg/Case:

| Title: | | DOT Code: | 075.127-014 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:**
Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Sedentary        Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | Data: | 1 Coordinating |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | People: | 2 Instructing |
| | Dealing with people. | Things: | 7 Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 476 of 550  LINC00476

# Curriculum Vitae

**Phillip Aaron Eldred**
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

**Professional Career:**

## Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

## Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

1

4. Arranges for or administers pyschological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

## Position: Elementary Counselor

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

## Organizations and Memberships:

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

## Education & Certifications:

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
        Missouri Life Certificate - Teacher, Grades 7-12
        Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling:** August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
        Missouri Life Certificate - Counselor, Grades 7-12
        Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

**Rehabilitation Education:**

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling 1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

Outcome Based Training – 2002
Transition Symposium – 2002
Ticket to Work – 2002
Choices Training – 2003
Ethics in Rehabilitation – 2003
Order of Selection Training – 2003
ADHD Training – 2004
Self-Employment Training – 2004
Power Up – 2005
Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken:  The Americans With Disabilities Act of 1990 and Workers
                Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken:  Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken:  Advanced Workers' Compensation In Missouri - 1992
                Missouri Return To Work Issues In Workers' Compensation - 1999
                Introduction To Workers' Compensation In Missouri - 2000
                Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken:  Americans With Disabilities Act Conference - 1992
                Successfully Employing People With Disabilities - 1993
                Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken:   Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken:   Fundamentals of Supported Employment - 1994
                Transition Symposium – 2002
                Spring Training Institute – 2003
                Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken:  Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken:  Power to Shine: Job Retention Strategies for the New Employee – 1999

4

American Schools Association – Chicago
Classes Taken:      Family First – 2010
                     Clinicains in Court – 2010
                     Ethics in Couseling and Psychotherapy – 2010
                     How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:      More Effective Interviewing – 2015
                     Rehabiliation Update – 2015
                     Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:      Planning For Uncertainty – 2015

5

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid?  No."

**Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016:  Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
  3.  Please provide a review summary of the medical findings.
  The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
  The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength.  She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015.  The claimant was prohibited from any lifting.  She could perform occasional standing/walking and frequent sitting, reaching and fingering.  Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
  4.  Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
    ➤  Per the FCE, the claimant could lift up to 7 pounds occasionally.
    ➤  She could perform frequent sitting with 20 minutes of continuous sitting.
    ➤  She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
    ➤  She could perform occasional bending and stooping.
    ➤  She could perform frequent reaching and fingering.
A.  For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
These limitations would be effective from 11/25/2015 and forward.
B.  Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
    ➤  The claimant could lift up to 7 pounds occasionally.
    ➤  She could perform frequent sitting with 20 minutes of continuous sitting.
    ➤  She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
    ➤  She could perform occasional bending and stooping.

18

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 482 of 550  LINC00482

> ➢ She could perform frequent reaching and fingering.
> ➢ These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE**

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 483 LINC0483

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

## VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
|---|---|---|
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

## WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the <u>Dictionary of Occupational Titles</u>, (DOT):

|  | Strength |
|---|---|
| Nurse Practioner (9 years) | 075.264-010   (L) |

20

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| | DOT# | Occupation | Monthly Wage | Physical Demand |
|---|---|---|---|---|
| 1. | 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. | 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**TRANSFERABLE SKILLS**

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

PAGE 4/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

LINC0485

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

> Social Security Administration found her to be disabled.

> Nancy (Dickey) Beisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

> Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

> Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

> Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation,* a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment..."

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 48 of 55   LIN00488

# SEEKER DATA

**Flanagan, Jamie S.**
**1625 Musky Dime Drive**
**Crane, MO 65693**

| | | | |
|---|---|---|---|
| **Phone 1:** | (417) 459-5879 | **SSN:** | |
| **Phone 2:** | | **eMail:** | |
| | | | |
| **Reg/Case:** | | **Job Ready:** | |
| **Source:** | | **Record Opened:** | 10/04/2016 |
| **Funding:** | | **Record Updated:** | 10/04/2016 |
| **Program:** | | **Record Closed:** | |
| | | | |
| **Counselor:** | Phillip Eldred | **Phone:** | |
| **Placement Specialist:** | | **Phone:** | |
| | | | |
| **Job Goal:** | | | |
| | | | |
| **Desired Salary:** | | **Bilingual:** | No |
| **Hours:** | 0 | **Language:** | |
| | | | |
| **Shift:** | Day | **Transportation:** | None |
| **Overtime:** | Never | **License:** | |
| **Weekends:** | Never | | |
| **Relocate:** | No | | |
| | | | |
| **Skr1:** | | | |
| **Skr2:** | | | |
| **Skr3:** | | | |

Rehabilitation Consulting Services Inc.                                                                          Page 1
10/04/2016

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 489 of 550     LIN00489

# WORK HISTORY

Name: Flanagan, Jamie S.                                    SSN: █████
                                                           Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

Rehabilitation Consulting Services Inc.                                    Page 2
10/04/2016

# OCCUPATIONAL DESCRIPTION

**Name:** Flanagan, Jamie S.

**SSN:** █████████
**Reg/Case:**

**075.264-010 Nurse Practitioner**
**O*NET Code:** 29-1171.00  Nurse Practitioners

   Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner

DLU: 1989

**O*NET Title:** Nurse Practitioners
**O*NET Code:** 29-1171.00

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses.  Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy.  Prescribe medications based on efficacy, safety, and cost as legally authorized.  Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender.  Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays).  Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks.  Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines.  Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults.  Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing.  Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies.  Diagnose or treat chronic health care problems such as high blood pressure and diabetes.  Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability.  Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary.  Schedule follow-up visits to monitor patients or evaluate health or illness care.  Perform routine or annual physical examinations.  Supervise or coordinate patient care or support staff activities.  Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services.  Provide patients or caregivers with assistance in locating health care resources.  Maintain departmental policies and procedures in areas such as safety and infection control.  Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds.  Advocate for accessible health care that minimizes environmental health risks.  Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOT's under this O*NET Code.

Rehabilitation Consulting Services Inc.                                                                Page 3
10/04/2016

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮▮

Reg/Case:

Please note: O*NET Codes are under development and subject to change.

Rehabilitation Consulting Services Inc.

Page  4

10/04/2016

# OCCUPATIONAL REQUIREMENTS

**Name:** Flanagan, Jamie S.

**SSN:** ███████

**Reg/Case:**

| | |
|---|---|
| **Title:** | |
| **Industry:** | Medical Services |

**DOT Code:** 075.264-010

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 13-14
Language Grades 13-14

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | |
|---|---|
| Climbing | Never |
| Balancing | Never |
| Stooping | Occasionally |
| Kneeling | Never |
| Crouching | Never |
| Crawling | Never |
| Reaching | Frequently |
| Handling | Frequently |
| Fingering | Frequently |
| Feeling | Frequently |
| Talking | Frequently |
| Hearing | Frequently |
| Tasting/Smelling | Never |
| Near Acuity | Frequently |
| Far Acuity | Never |
| Depth Perception | Never |
| Accommodation | Occasionally |
| Color Vision | Frequently |
| Field of Vision | Never |

**Environmental Conditions:**

| | |
|---|---|
| Noise Intensity Level | Moderate |
| Exposure to Weather | Never |
| Extreme Cold | Never |
| Extreme Heat | Never |
| Wet and/or Humid | Never |
| Vibration | Never |
| Atmospheric Conditions | Never |
| Proximity to Moving Mechanical Parts | Never |
| Exposure to Electrical Shock | Never |
| Working in High Exposed Places | Never |
| Exposure to Radiation | Never |
| Working with Explosives | Never |
| Exposure to Toxic or Caustic Chemicals | Never |
| Other Environmental Conditions | Never |

**Work Situations:** Directing, controlling, or planning activities of others.
Making judgments and decisions.
Dealing with people.

**Data:** 2 Analyzing
**People:** 6 Speaking-Signaling
**Things:** 4 Manipulating

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

Rehabilitation Consulting Services Inc.                                            Page 5
10/04/2016

PAGE 12/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 493 of 550   LIN00493

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

**075.167-010  Nurse, Supervisor**
**O\*NET Code:** 29-1141.00 Registered Nurses

Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

Rehabilitation Consulting Services Inc.                                                    Page 6
10/04/2016

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

| | | | |
|---|---|---|---|
| **Title:** | | **DOT Code:** | 075.167-010 |
| **Industry:** | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Light

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

| Work Situations: | | | |
|---|---|---|---|
| Performing a variety of duties. | | **Data:** | 1 Coordinating |
| Directing, controlling, or planning activities of others. | | **People:** | 6 Speaking-Signaling |
| Dealing with people. | | **Things:** | 7 Handling |
| Attaining precise set limits, tolerances, and standards. | | | |
| Performing effectively under stress. | | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

Rehabilitation Consulting Services Inc.                                                                 Page  7
10/04/2016

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: █████████

Reg/Case:

---

**075.364-010 Nurse, General Duty**
**O*NET Code: 29-1141.00 Registered Nurses**

   Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

---

**O*NET Title:** Registered Nurses
**O*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.   Administer medications to patients and monitor patients for reactions or side effects.   Record patients' medical information and vital signs.   Monitor, record, and report symptoms or changes in patients' conditions.   Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.   Modify patient treatment plans as indicated by patients' responses and conditions.   Monitor all aspects of patient care, including diet and physical activity.   Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.   Prepare patients for and assist with examinations or treatments.   Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.   Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.   Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.   Refer students or patients to specialized health resources or community agencies furnishing assistance.   Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.   Administer local, inhalation, intravenous, or other anesthetics.   Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.   Hand items to surgeons during operations.   Observe nurses and visit patients to ensure proper nursing care.   Conduct specified laboratory tests.   Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.   Engage in research activities related to nursing.   Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.   Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.   Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.   Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.   Provide or arrange for training or instruction of auxiliary personnel or students.   Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

---

Rehabilitation Consulting Services Inc.                                                                  Page  8
10/04/2016

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

| Title: | | DOT Code: | 075.364-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Medium          Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

**Physical Demands:**

| | | **Environmental Conditions:** | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| **Work Situations:** | Dealing with people. | **Data:** | 3 Compiling |
|---|---|---|---|
| | Attaining precise set limits, tolerances, and standards. | **People:** | 6 Speaking-Signaling |
| | Making judgments and decisions. | **Things:** | 4 Manipulating |
| | Performing effectively under stress. | | |

| **Aptitudes:** | **DOT** | **OAP** |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3  (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

PAGE 16/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 497 LIN00497

# WORK HISTORY

**Name:** a

**SSN:**
**Case:**

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

Rehabilitation Consulting Services Inc.
10/04/2016

Page *10*

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 498 of 550 LIN00498

# OCCUPATIONAL DESCRIPTION

Name: a                                   SSN:

Reg/Case:

**075.127-014 Nurse, Consultant**
**O\*NET Code:** 29-1141.00 Registered Nurses

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services: Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications. Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs. Provides assistance in developing guides and manuals for specific aspects of nursing services. Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups. Advises in services available through community resources. Consults with nursing groups concerning professional and educational problems. Prepares or furnishes data for articles and lectures. Participates in surveys and research studies.
DLU: 1977

**O\*NET Title:** Registered Nurses
**O\*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

**Please note: O\*NET Codes are under development and subject to change.**

PAGE 18/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

# OCCUPATIONAL REQUIREMENTS

**Name:** a

**SSN:**
**Reg/Case:**

| | |
|---|---|
| **Title:** | **DOT Code:**   075.127-014 |
| **Industry:**   Medical Services | |

**Specific Vocational Preparation:**   Level 7 (2 to 4 years)

**General Educational Development:**   Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength:** Sedentary                    Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

**Physical Demands:**

| | | **Environmental Conditions:** | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| **Work Situations:** | Performing a variety of duties. | **Data:** | 1 Coordinating |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | **People:** | 2 Instructing |
| | Dealing with people. | **Things:** | 7 Handling |

| **Aptitudes:** | **DOT** | **OAP** |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3  (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

Rehabilitation Consulting Services Inc.                                                      Page 12
10/04/2016

# Curriculum Vitae

## Phillip Aaron Eldred
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

**Professional Career:**

### Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

### Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

1

LING0501

4. Arranges for or administers psychological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

## Position: Elementary Counselor

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

## Organizations and Memberships:

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

## Education & Certifications:

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
      Missouri Life Certificate - Teacher, Grades 7-12
      Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling:** August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
      Missouri Life Certificate - Counselor, Grades 7-12
      Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

LIN00502

### Rehabilitation Education:

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling  1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

PAGE 22/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06
Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 503 of 550
LIN00503

Outcome Based Training – 2002
Transition Symposium – 2002
Ticket to Work – 2002
Choices Training – 2003
Ethics in Rehabilitation – 2003
Order of Selection Training – 2003
ADHD Training – 2004
Self-Employment Training – 2004
Power Up – 2005
Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken:  The Americans With Disabilities Act of 1990 and Workers
                    Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken:  Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken:  Advanced Workers' Compensation In Missouri - 1992
                      Missouri Return To Work Issues In Workers' Compensation - 1999
                      Introduction To Workers' Compensation In Missouri - 2000
                      Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken:  Americans With Disabilities Act Conference - 1992
                      Successfully Employing People With Disabilities - 1993
                      Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken:   Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken:   Fundamentals of Supported Employment - 1994
                       Transition Symposium – 2002
                       Spring Training Institute – 2003
                       Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken:  Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken:  Power to Shine: Job Retention Strategies for the New Employee – 1999

4

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 504 of 550

American Schools Association – Chicago
Classes Taken:          Family First – 2010
                        Clinicains in Court – 2010
                        Ethics in Couseling and Psychotherapy – 2010
                        How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:          More Effective Interviewing – 2015
                        Rehabiliation Update – 2015
                        Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:            Planning For Uncertainty – 2015

5



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

August 24, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term Disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

                Secure password: Social Security number (no spaces/dashes)

If you should have any questions, please contact our office at the number listed above.

Sincerely,

Abbie Kauffman
Assisting on behalf of Reid Hastings
800-423-2765 *2543
Coordinator, Admin Svcs Gen Admin
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Law Offices of
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

AUG 1 9 2016

SPRINGFIELD
MO 658
17 AUG '16
PM 2 L

Hasler
08/17/2016
US POSTAGE $00.46⁵
FIRST-CLASS MAIL
ZIP 65804
011D12810600

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

68114-406699

**AUG 1 9 2016**  Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

August 17, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

*Re:    Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Reid Hastings:

On May 8, 2016, I sent a letter to your company requesting a copy of my client's entire file and the curriculum vitae of experts utilized in denying Mrs. Flanagan's benefits. On June 6, 2016 I received the curriculum vitae for Joseph G. Thomas, M.D. and what is purported to be a curriculum vitae for Brandy Thomas, MA, CRC. In the June 6, 2016, with the curriculum vitae's letter you wrote "…a file copy is being created and will be sent to you once complete." To date I have received no file copy. Oddly, however, I have received a file copy c.d. with a person named Gibson on the c.d. I assume this is Gibson's records, but I cannot access the file because you utilize a password system of a Social Security number and Mrs. Flanagan's Social Security number does not open Gibson's file. I will assume the Gibson c.d. is for another case.

Our deadline to appeal the decision is October 23, 2016. To date you have not provided a copy of the entire file. I have the file from a prior request dated February 24, 2016, which consists of 612 pages. It would be very sufficient to simply provide us everything from the date of that c.d. forward. If I do not receive anything further evidencing the records from and after the date of that c.d. I am going to assume there are no further records after February 24, 2016 relevant to Mrs. Flanagan's claim and proceed to develop evidence. If later in a court action there are records from and after our appeal in February 2016 and the disc you sent on February 24, 2016, I will argue to the court your company intentionally refused to provide any further documentation used to deny Mrs. Flanagan's benefits.

Page 2
Re: Jamie Flanagan

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan



**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

JUN 1 3 2016

Hasler
06/09/2016
US POSTAGE          $00.46⁵

FIRST-CLASS MAIL

ZIP 65804
011D12810600

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

6811434066 C011

JUN 1 3 2016



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

June 9, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

*Re:*　*Claimant: Jamie Flanagan*
　　*Policyholder: Lester E. Cox Medical Center*
　　*Policy# 00001015732600000*
　　*Claim# 1130226196*

Dear Reid Hastings:

Thank you for your letter of June 6, 2016 with the curriculum vitae of every expert utilized in the determination as to Mrs. Flanagan's denial. This letter will confirm I received curriculum vitae of Joseph Thomas, M.D. I also received a document from Brandy Thomas, M.A., C.R.C.

Most Sincerely,

Rick S. Vasquez/
Attorney at Law

RSV: ceh
CC: Jamie Flanagan



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

June 6, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQYEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:     Policyholder:  LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant:  Jamie Flanagan

Dear Mr. Vasquez:

We are writing in reference to your request for a complete copy of your client's entire file, to include copies of the curriculum vitae of every expert utilized in our determination.

The curriculum vitae are enclosed and a file copy is being created and will be sent to you once complete.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Reid Hastings
800-423-2765 *2543
Senior Claims Examiner, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

Law Offices of
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

MAY 2 3 2016

Hasler
05/18/2016
US POSTAGE $00.46⁵
FIRST-CLASS MAIL
ZIP 65804
011D12810600

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

68103-233737



**MAY 2 3 2016**

# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

May 18, 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

*Re:   Jamie Flanagan*
*       Policy# 00001015732600000*
*       Claim# 1130226196*

Dear Sir/Madam:

I am in receipt of your denial letter of April 26, 2016. Please provide a copy of every document upon which your company relied in denying Mrs. Flanagan's claim ie forming the April 26, 2016 denial. Likewise, please provide a copy of the curriculum vitae of every expert utilized in the determination. If you cannot provide the requested documentation within 30 days please advise so in writing.

Thank you for your time and attention to this matter.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LINC00514



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

April 26, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
       Policy Number: 00001015732600000
       Claim Number: 1130226196
       Claimant: Jamie Flanagan

Dear Mr. Vazquez:

We have completed our review of your client's Long Term Disability appeal.  Based on the information provided, we have determined that we are unable to approve benefits beyond 11/23/2015. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy.  This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.  During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.  After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

This policy has a 24 month Own Occupation Period which ended on 11/23/2015. In order to be considered Totally Disabled beyond this date, the medical evidence must support that your client would be Totally Disabled as defined above.  As such, in considering your client's eligibility for Long Term Disability benefits beyond 11/23/2015, we evaluated whether your client is Totally Disabled as defined above.

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**Summary of Initial Claim Filing**

As you know your client's claim was originally approved from 11/24/2013 to 11/24/2015 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 11/24/2015, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation. For complete details please refer to our letter dated 9/28/2015.

**Summary of Appeal**

On 2/3/2016, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your appeal.

Your client's entire file was reviewed upon appeal. Disability must be supported from 11/24/2015 forward, which will be the focus of our determination.

Dr. Donald Hopwell saw your client on 1/20/2015 for a follow-up of post laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis. Your client continued to do reasonably well with her pain, although your client was having more problems with the cold weather. Your client reported problems sleeping at night due to pain. Dr. Hopewell opined that your client was having neuropathic pain and your client was prescribed amitriptyline. Your client was to follow up in 3 months.

Your client was seen by Dr. Hopewell on 4/16/2015 for follow-up of pain related to lumbar spondylolisthesis, lumbar post laminectomy syndrome, and lumbar spondylosis, all of which were noted to be exacerbated by your client's autoimmune disease. Your client reported significant problems with hypersomnelence on amitriptyline. However, the medication was improving a dyesthetic pain. Dr. Hopewell indicated that your client would need a formal sleep study if your client's hypersomnolence continued. Your client's neurologic exam was normal.

On 4/21/2015, Dr. Hopewell completed an Abilities Form, on which he indicated that your client was unable to lift any weight. Your client was able to frequently sit for 20 minutes at a time and frequently finger, handle, and reach above the shoulder. Your client was able to occasionally stand, walk, drive, and operate foot controls. Your client was never able to climb, bend, or kneel.

Dr. Hopewell saw your client on 6/3/2015 for follow-up of pain. Your client reported a flare of pain issues as a result of a fall approximately 1 month prior. There was nothing to suggest a new process, but simply an aggravation of her long-standing issues.

Your client was seen by Dr. Hopewell on 7/15/2015 for a follow-up of chronic low back pain. Your client reported that overall her pain was marginally better, but she had increasing problems with dysphoria and was still having problems sleeping. Dr. Hopewell opined that your client's mood was significantly increasing your client's pain issue.

On 12/9/2015, a Dr. Hopewell progress note indicated that your client's overall pain was doing reasonably well on your client's current regimen without complications. Your client was to return for a routine follow-up in 3 months.

During the course of our review, we consulted with Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine. His review stated in part:

> "The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.
> - Per the FCE, the claimant could lift up to 7 pounds occasionally.
> - She could perform frequent sitting with 20 minutes of continuous sitting.
> - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> - She could perform occasional bending and stooping.
> - She could perform frequent reaching and fingering."

## Appeal Decision

We understand that your client has been diagnosed with chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. However, our review of the medical documentation, which included consultation with and/or review of a written report from an independent physician who is Board Certified in Occupational Medicine does not support restrictions and limitations that would render your client unable to perform each of the main duties of any gainful occupation that your client has the training, education, and experience to perform beyond 11/23/2015.

The medical information received from Dr. Hopewell confirms that your client would have decreased capacity for sitting, standing, lifting, bending, and stooping. However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity.  The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following occupations:

| DOT# | Occupation | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary |

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

We are aware that your client is qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our group policy and review process is independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and information received by the SSA. The claim decision made under your client's Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim.

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of the pertinent documents related to the claim.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

REF #1252698

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Reid Hastings
800-423-2765 *2543
Senior Claims Examiner, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

**Claimant:** Jamie Flanagan
**SS#:** ███████
**Claim #:** 1130226196
**Referral from:** Cheryl Geary
**Date:** 3-21-16
**Policyholder:** Lester E. Cox Medical Center

This VRC was requested to complete a TSA to determine Ms. Flanagan's transferable work skills & evaluate whether occupations exist at or above the wage requirements noted & at the level of functionality indicated.

**This VRC reviewed the following documentation for this report:**
JD, DOT, Educational Background Form, dated 03/27/2015, TSA completed by Stacey Nidositko, MS, CRC, dated 9/23/15, & Peer Review from Dr. Joseph G. Thomas dated 3/9/16.

The following information obtained from the file was utilized in determining what occupations Ms. Flanagan is qualified & able to perform.

**Work Experience:**

| DOT Code | Occupation Title | SVP | Yrs | Str |
|----------|-----------------|-----|-----|-----|
| 075.264-010 | Nurse Practitioner | 8 | 03/2010-08/2013 | L |

**Education & Training:**
Claimant is a 35 year old female who has earned a Master's of Science in Nursing. She has worked as a Nurse Practitioner since 2004. She worked as a Registered Nurse from 2000-2003. She notes that she took 2 courses towards her Doctorate in Nursing Practices in 2010. She notes that she has an e-mail address. JD from the policyholder notes that the employee has indirect supervisory responsibilities over clinical staff. JD also notes that the employee must have knowledge of Microsoft Office software products, primarily Excel & Work, knowledge of database software & EMR Word Processing Software.

**Diagnosis/L&R's:**
The claimant is diagnosed with post laminectomy syndrome – lumbar spinal stenosis & has the following restrictions/limitations based upon the Peer Review/Medical Review from Peer Review from Dr. Joseph G. Thomas dated 3/9/16. Dr. Joseph G. Thomas opines that as of 11/25/15, the claimant has restrictions of:

-The claimant could lift up to 7 pounds occasionally.
-She could perform frequent sitting with 20 minutes of continuous sitting.

-She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
-She could perform occasional bending and stooping.
-She could perform frequent reaching and fingering.
-These limitations are for an 8 hour work day and 40 hour work week.

**Wage Requirement:** $5,252.52/month ($30.30/hr.)

**Skills & Abilities:** Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.

**Occupations the customer can perform in the labor market of Crane, MO (Springfield, MO Metropolitan area) include but are not limited to the following:**

| DOT Code | Occupation | SVP | Str | Wage | Source |
|----------|-----------|-----|-----|------|--------|
| 075.127-014 | Nurse, Consultant | 7 | S | $5,347.00/mo. | ERI 2016 |
| *075.374-916 | Call Center Nurse | 7 | S | $5,481.00/mo. | ERI 2016 |

*eDOT code

**Summary:**
A Transferable Skills Analysis was completed using the above noted information. Occupations were identified based upon the medical information from Peer Review from Dr. Joseph G. Thomas dated 3/9/16., that meet Ms. Flanagan's skills, educational/work history, & wage requirement. The limitations outlined by Dr. Joseph G. Thomas, give Ms. Flanagan reasonable functional capacity to perform the occupations identified.

Brandy Thomas, MA, CRC
Vocational Rehabilitation Counselor

LIN00521



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

March 15, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

On 2/10/2016, we acknowledged your client's appeal and advised that we were in the process of reviewing the appeal and you would be notified of the results within 45 days.

We are approaching our initial deadline for deciding Mrs. Flanagan's appeal under the Employee Retirement Income Security Act (ERISA), and have not yet reached a determination.  The appeal decision is currently pending due to a Vocational Review.  An extension of time to process your client's appeal is required.  Due to these special circumstances, we are exercising our right to take a 45-day extension of time to decide the appeal.

We are currently reviewing Mrs. Flanagan's appeal.  You can expect to receive a decision from us by 5/3/2016.

Please contact me directly at 402-361-7640 with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Cheryl Geary
Assisting on behalf of Reid Hastings
Consultant, Claims
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



Date:               March 09, 2016

To:                 Samantha Chappelear
                    Lincoln Financial Group

Re:                 RRS Case #30216001448

Employee:           Jamie Flanagan
Claim #:            1130226196
Review Type:        Peer File Review
Disability Type:    LTD
Disability Definition:    Unspecified

## Advisory Report

### Clinical History

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year female who worked in a light level occupation as a Nurse Practitioner. The referral stated the claimant stopped work on 08/25/2013 due to her lumbar conditions. The claimant has diagnoses of post laminectomy syndrome, spinal stenosis and chronic pain. The referral stated the claimant met the policy definition of disability to 11/24/2015.

A Functional Capacity Evaluation was performed on 04/24/2014 by Nancy Beisswenger OTR/L. The claimant's lumbar spine and extremities had near full range of motion. The claimant's lower extremity strength was 5/5. The claimant could perform occasional sitting and occasional walking/standing. She was limited to lifting/handling up to 7 pounds.

Dr. Karande, Physical Medicine & Rehabilitation, did a medical record review on 06/09/2014. He felt the FCE should be evaluated with caution as isometric testing was not performed as the therapist discretion secondary to multiple diagnoses and lifting restrictions. Dr. Karande concluded that the claimant would be capable of light duty work with occasional lifting up to 20 pounds.

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 523 of 550     LIN00523



From the Abilities Form dated 04/21/2015 by Dr. Donald Hopewell, Neurology and Pain Management, the claimant could not perform any lifting. She could perform occasional standing/walking and frequent sitting, reaching, fingering and handling.

From the medical note dated 07/15/2015, Dr. Donald Hopewell felt depression and rheumatology issues were affecting the claimant's back pain. Amitriptyline had improved the claimant's pain but caused hyper somnolence. Dr. Donald Hopewell noted neurological examination remained normal.

The most recent lumbar spine MRI and lumbar spine CT scan, both dated 10/15/2015 showed L5/S1 fusion. There was facet arthropathy at the level of L4/L5. There was disk protrusion with an annular tear that contacts the L4 nerve root.

On 12/09/2015, Dr. Donald Hopewell noted the claimant returned for follow up at her request to discuss problems with her disability and some of the issues regarding denial of her claim. Dr. Donald Hopewell noted that overall the claimant's pain as doing reasonably well on her current regiment without complications. She was to return for follow up in three months.

## Questions and Reviewer's Response

### 1. Please provide a review summary of the medical findings.

The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5/S1, facet arthropathy at the level of L4/L5, and disk protrusion with annular tear impacting the left L4 nerve root.

The claimant had a Functional Capacity Evaluation on 04/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 04/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.

### 2. Based on the medical findings, please provide a description of the claimant`s impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell on 04/21/2015 with the exception of lifting.

> ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.

> ➢ She could perform frequent sitting with 20 minutes of continuous sitting.



> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.

> She could perform occasional bending and stooping.

> She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

> The claimant could lift up to 7 pounds occasionally.

> She could perform frequent sitting with 20 minutes of continuous sitting.

> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.

> She could perform occasional bending and stooping

> She could perform frequent reaching and fingering.

> These limitations are for an 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

3. Are the restrictions or limitations placed upon the claimant`s physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings?  Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting.  The claimant had a Functional Capacity Evaluation on 04/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome.  The claimant requires opiate medication for pain control.  She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.



**Reliable Review Services**

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

### Assessment/Rationale

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 04/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 04/21/2015 with the exception of lifting as noted above.

*The opinion above is based on the information available for review and held to a reasonable degree of clinical accuracy. I attest that I have no relationship or association with the claimant who is the subject of this independent review. I also attest that I have no substantial personal or financial relationship with the treating provider(s) and/or treatment facility (ies).*

*I hereby submit this attestation that I have complied, to the highest degree possible, with the provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the standards decreed thereunder.*

Joseph G. Thomas, MD
Board Certified
Occupational Medicine
FL: ME87102

### Documents Received For Review

| Document Date | Document Type | Document Source |
|---|---|---|
| 03/02/2016 | Referral Form | Client |
| Undated | Claim Summary and Review Questions | Client |

Claimant Name: Jamie Flanagan                                                 RRS ID:30216001448



| 11/15/2013 – 02/10/2016 | Chronological Activity List | Client |
|---|---|---|
| 01/25/2016 | Correspondence | Law Offices of Rick Vasquez |
| 10/15/2015 | MR Lumbar with and without Contrast | Michael Workman, MD |
| 10/15/2015 | CT Lumbar Spine without Contrast | Michael Workman, MD |
| 10/22/2014,  01/20/2015, 04/16/2015, 06/03/2015, 07/15/2015, 12/09/2015 | Progress Note | Donald Hopewell, MD |
| 07/18/2015 | Authorization for Use and Disclosure of Protected Health Information | Claimant |
| 03/18/2015 | Authorization for Release of Information – Disability | Claimant |
| 04/21/2015 | Abilities Form | Donald Hopewell, MD |
| 03/27/2014 | Treating Medical Professionals | Claimant |
| 03/27/2015 | Insured's Supplementary Statement | Claimant |
| 06/09/2014 | Medical File Review | Meghana Karande, MD |
| Undated | Occupational Description and Requirements | Client |
| 04/23/2014 | Correspondence Re: Office Visit | Nancy Beisswenger, OTR/L |
| 04/22/2014 | Functional Capacity Evaluation | Nancy Beisswenger, OTR/L |
| 11/10/2013 | Employee's Statement | Claimant |
| 11/17/2013 | LTD Physician's Statement | Donald Hopewell, MD |
| 09/19/2012 | Office Visit | Charles Mace, MD |
| 01/09/2013 | X-ray Lumbar Spine 6 views min | Skaggs Community Health Center |
| 12/28/2012 | MR Lumbar Spine with and without Contrast | Skaggs Community Health Center |
| 12/28/2012 | MR  Thoracic Spine without Contrast | Skaggs Community Health Center |
| 11/02/2012 | CT Lumbar Spine with Contrast Myelo | Skaggs Community Health Center |
| 11/02/2012 | CT Cervical Spine with Contrast Myelo | Skaggs Community Health Center |
| 04/01/2011, 11/02/2012 | X-ray Lumbar Spine 2 or 3 views | Skaggs Community Health Center |
| 11/02/2012 | X-ray Cervical Spine 2 or 3 views | Skaggs Community Health Center |
| 11/02/2012 | X-ray Myelogram Complete | Skaggs Community Health Center |
| 12/16/2011, 09/12/2012 | CT Lumbar Spine without Contrast | Skaggs Community Health Center |
| 07/10/2012 | MR Cervical Spine without Contrast | Skaggs Community Health Center |
| 10/19/2011, 12/16/2011 | X-ray Lumbar Spine 4 views min | Skaggs Community Health Center |
| 10/08/2010 | Cervical Spine Complete | Skaggs Community Health Center |
| 10/08/2010 | MRI Cervical without Contrast | Skaggs Community Health Center |

Claimant Name: Jamie Flanagan

RRS ID:30216001448

LIN00527



| | | |
|---|---|---|
| 08/02/2011, 11/02/2011, 02/01/2012, 05/01/2012, 05/09/2012, 07/31/2012, 10/29/2012, 01/24/2013, 04/25/2013, 07/23/2013, 09/19/2013, 10/31/2013 | Follow-Up Worksheet | Donald Hopewell, MD |
| 08/15/2013 | Office Visit | Wayne Wallender, DO |
| 10/22/2010 | Office Visit | Glady Jacob, MD |
| 11/10/2013 | Authorization for Release of Information | Claimant |
| 11/15/2013 | Employer's Statement | Employer |
| 11/15/2013 | Job Analysis | Employer |
| 06/23/2009 | Job Description | Employer |

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 528 of 550   LIN00528



**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

MAR 0 4 2016

Hasler
02/29/2016
US POSTAGE   $00.48⁵

FIRST-CLASS MAIL

ZIP 65804
011D12810600

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
Po Box 2337
Omaha, NE 68103

68103233737

 Law Offices of Rick S. Vasquez    MAR 0 4 2016

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

February 29, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
Po Box 2337
Omaha, NE 68103

*Re:     Jamie Flanagan*
*Group Policy# 000010157326000000*
*Group Claim# 1130226196*

Dear Sir/Madam:

I am in receipt of your February 10, 2016 letter. The letter from Dr. Hopewell was included with my letter of February 3, 2016 and faxed on February 10, 2016 when your company alleged it did not receive the same. I would note your letter indicates my client's file is being sent separately. It is now 2 weeks later and I have not received a file.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

February 25, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:  Policyholder: LESTER E COX MEDICAL CENTER
     Policy Number: 00001015732600000
     Claim Number: 1130226196
     Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

Secure password: Social Security number (no spaces/dashes)

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.

Sincerely,

Sarah Day
Assisting on behalf of Reid Hastings
Coordinator, Administrative Services
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

February 24, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
       Policy Number: 00001015732600000
       Claim Number: 1130226196
       Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

Secure password: Social Security number (no spaces/dashes)

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.

Sincerely,

Sarah Day
Assisting on behalf of Reid Hastings
Coordinator, Administrative Services
The Lincoln National Life Insurance Company

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

February 10, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear Mr. Vasquez:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on 2/3/2016.

It appears that the most recent medical records (office treatment notes and/or test results) in your client's file are from Dr. Donald Hopewell dated 12/9/2015.

Your appeal letter indicated that additional records submitted with your appeal included the following:
- MRI & CT of the Lumbar Spine Report
- Dr. Donald Hopewell's office note
- Dr. Donald Hopewell's letter

The MRI, CT, and office note were all received. However, Dr. Hopewell's letter was not received with your appeal request.

In an effort to provide Mrs. Flanagan's claim with a full and fair review, it would be your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your client's appeal.  For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated 9/28/2015.

It is important that we have all available medical records so that we have a clear picture of Mrs. Flanagan's current condition.

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

REF #1113291

Please submit any and all additional medical evidence that you believe would support your client's appeal. Please have the medical records submitted to our office no later than 3/11/2016.

If we do not receive the additional information by 3/11/2016, we will review the appeal and render a decision based upon the information currently available in Mrs. Flanagan's file.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of the appeal. For your convenience, all documents may be sent via facsimile to 402-361-1460.

Please note that we are not making a final determination on Mrs. Flanagan's disability claim at this time as we want to provide your client with every opportunity to submit a complete appeal.

In addition, complete copy of your client's claim file is being sent to you separately. However, we are not including a transcript or notes from the conversation between Dr. Meghana Karande and Dr. Hopewell. Due to Dr. Karande's review taking place in June 2014, those notes are no longer available.

Please contact me directly at (402) 361-2543 with any questions you may have or email us at LFGAppeals@lfg.com.


Sincerely,


Reid Hastings
Senior Claims Examiner, Claims
Appeals Department – Claims Shared Services
The Lincoln National Life Insurance Company

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, MO 65804
Telephone: (417) 889-7735
Facsimile: (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

## FACSIMILE COVER SHEET

DATE:        2/10/16

TO:    Reed-Lincoln National Insurance Co.

FAX NO.:    402-361-1460

SENDER:    Catrina-Vasquez Law Office
RE.:

NUMBER OF PAGES (Including this cover sheet):    <u>2</u>

CONFIRMATION HARD COPY TO FOLLOW VIA MAIL:

                                        Yes _ No _X_
SPECIAL INSTRUCTIONS/COMMENTS:

*IF YOU DID NOT RECEIVE ALL OF THE PAGES IN GOOD CONDITION,
PLEASE ADVISE US AT YOUR EARLIEST CONVENIENCE. THANK YOU.*

PAGE 1/2 * RCVD AT 2/10/2016 11:41:46 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

Case 3:17-cv-05060-MDH     Document 33-1     Filed 05/15/18     Page 535 of 550    LIN00535



**MERCY CLINIC NEUROLOGY JOPLIN**
100 Mercy Way Suite 520
Joplin MO 64804-4524
Dept: 417-556-6876
Dept Fax: 417-556-6874

12/9/2015

RE:Jamie Flanagan
DOB: ▮▮▮▮▮▮▮

To Whom It May Concern:

I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability.

If you have any further questions, please feel free to contact me.

Sincerely,

Donald K Hopewell, MD



# Fax Transmission

### 8801 Indian Hills Dr., Omaha, NE  68114

**From:**   Name:
            Fax Number:     1460
            Voice Phone:

**To:**     Name:
            Company:
            Fax Number:     18778433950
            Voice Phone:

**Fax Notes :** _____

Date and time of transmission: Wednesday, February 10, 2016 11:41:46 AM

Number of pages including this cover sheet: 03

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

This facsimile transmission is intended only for the addressee named above.  It contains information that is privileged, confidential or otherwise protected from use and disclosure.  If you are not the intended recipient you are hereby notified that any review, disclosure, copying or dissemination of this transmission, or the taking of any action in reliance on its contents, or other use is strictly prohibited.  If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for its return to us.  Thank you for your cooperation.

 **Law Offices of Rick S. Vasquez**

1736 East Sunshine, Suite 103
Springfield, MO 65804
Telephone: (417) 889-7735
Facsimile: (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

## FACSIMILE COVER SHEET

**DATE:**    2/10/16

**TO:**   Reed-Lincoln National Insurance Co.

**FAX NO.:**   402-361-1460

**SENDER:**   Catrina-Vasquez Law Office
**RE.:**

**NUMBER OF PAGES** (Including this cover sheet):    2

**CONFIRMATION HARD COPY TO FOLLOW VIA MAIL:**

                                        Yes _  No _X_
**SPECIAL INSTRUCTIONS/COMMENTS:**

*IF YOU DID NOT RECEIVE ALL OF THE PAGES IN GOOD CONDITION,*
*PLEASE ADVISE US AT YOUR EARLIEST CONVENIENCE.  THANK YOU.*

PAGE 1/2 * RCVD AT 2/10/2016 11:41:46 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

Case 3:17-cv-05060-MDH   Document 33-1   Filed 05/15/18   Page 538 of 550   LIN00538

 **Mercy** ✝

**MERCY CLINIC NEUROLOGY JOPLIN**
100 Mercy Way Suite 520
Joplin MO 64804-4524
Dept: 417-556-6876
Dept Fax: 417-556-6874

12/9/2015

RE: Jamie Flanagan
DOB: ███████

To Whom It May Concern:

I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability.

If you have any further questions, please feel free to contact me.

Sincerely,

Donald K Hopewell, MD

PAGE 2/2 * RCVD AT 2/10/2016 11:41:46 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

Case 3:17-cv-05060-MDH    Document 33-1    Filed 05/15/18    Page 539 of 550   LINC0539

FEB 0 2 2016

7014 2120 0001 9379 9506

Springfield, Missouri 65804

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Hasler
01/27/2016
US POSTAGE
$06.25
ZIP 65804
011D12810600

Hasler
01/27/2016
US POSTAGE
$00.70
ZIP 65804
011D12810600

FIRST-CLASS MA



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

FEB 0 2 2016

January 25, 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

*Re:* *Jamie Flanagan*
*Group Policy# 00001015732600000*
*Group Claim# 1130226196*

Dear Sir/Madam:

This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:

1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter.

I note on page 2 of your denial referencing a series of documents used in denying Mrs. Flanagan. I would note as follows:

1. Dr. Hopewell's November 17, 2013 opinion prohibits all work;

2. The April 24, 2014 Functional Capacity Evaluation of Nancy Dickey-Beisswenger, OTR/L is also for less than sedentary work;

3. The April 21, 2015 opinion of Dr. Hopewell is also for less than sedentary work.

Please provide a copy of all pertinent documentation related to this claim including a copy of the transcript of the conversation between Dr. Karande's and Dr. Hopewell and a copy of Dr. Karande's notes from said conversation.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan
Enclosure

MR Lumbar w wo Contrast                    FLANAGAN, JAMIE SUE - 5606724

* Final Report *

| | |
|---|---|
| Result type: | MR Lumbar w wo Contrast |
| Result date: | 15 October 2015 8:56 |
| Result status: | Auth (Verified) |
| Result title: | MR Lumbar w wo Contrast |
| Performed by: | Workman MD, Michael on 15 October 2015 11:33 |
| Electronically Signed By: | Workman MD, Michael on 20 October 2015 8:38 |
| Encounter info: | 880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015 |

# * Final Report *

**Reason For Exam**

**MR Lumbar w wo Contrast**
MR Lumbar with and without Contrast  10/15/2015 at 8:56 AM:

History:  35-year-old female, back surgery in 2011 with complaints of back pain that radiates in the lower extremities, right greater than left.,

Contrast: Multihance 12 cc.

Findings: L5 anterolisthesis measures 6 mm. Vertebral body height is preserved. Disc height is normal from T12-L4. No disc herniation or bulge is demonstrated. Widely patent vertebral canal and neural foramen.
Small left extraforaminal zone bulge/protrusion at L3-L4 without impingement or contact with the exiting nerve root.

L4-L5: Mild disc height loss with mild T2 dark disc. Small left extraforaminal zone protrusion with contrast enhancement is demonstrated. There is contact with the exiting left L4 nerve root. Vertebral canal and right neural foramen are widely patent.

L5-S1: Status post posterior lumbar interbody fusion with magnetic susceptibility artifact from hardware placement. Widely patent vertebral canal, lateral recess and neural foramen. Contrast enhancement is present along the access tract of interbody cage device.

IMPRESSION:

1.  PLIF L5-S1 without complicating feature.

2.  L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with annular fissure. There is contact with the exiting left L4 nerve root.

Radiologist: Dr Michael Workman , 10/15/2015 11:33 AM / Edited by:  Debra 198003591 NTS_Thomas , 10/15/2015 11:41 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist                Workman MD, Michael

| | |
|---|---|
| Printed by: | Finnegan MA, Shellsea |
| Printed on: | 11/16/2015 9:26 |



## CT Lumbar Spine wo Contrast

FLANAGAN, JAMIE SUE  - 5606724

\* Final Report \*

Result type:        CT Lumbar Spine wo Contrast
Result date:        15 October 2015 9:47
Result status:      Auth (Verified)
Result title:       CT Lumbar Spine wo Contrast Routine
Performed by:       Workman MD, Michael on 15 October 2015 11:37
Electronically Signed By: Workman MD, Michael on 20 October 2015 8:38
Encounter info:     880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015

## * Final Report *

### Reason For Exam

### CT Lumbar Spine wo Contrast
CT Lumbar Spine wo Contrast  10/15/2015 9:47 AM

History:  35 years Female status post fusion with back and leg pain.

Findings:  L5 anterolisthesis measures 6 mm. Status post posterior lumbar interbody fusion L5-S1 with intact pedicle screws and posterior fixation rods.  There is no evidence for hardware failure or loosening. Bone graft is confluent interbody and dorsolaterally. Widely decompressed thecal sac and neural foramen. No osseous stenosis. Contrast is present within the renal collecting system consistent with recent gadolinium contrast.

L4-5: Mild facet joint arthropathy bilaterally with small disk bulge/protrusion that is more focal in the left extraforaminal zone. No vertebral canal or right neuroforaminal stenosis.  However there is contact of disc protrusion with exiting left L4 nerve root.

Disk height is normal T12-L4. No stenosis.

IMPRESSION LUMBAR SPINE:

1. PLIF L5-S1 without complicating feature and expected postoperative change.

2. Degenerative disk disease and spondylosis L4-5 with facet joint arthropathy and disk bulge/protrusion left subarticular and extraforaminal zone. There is contact with the exiting left L4 nerve root but no definite impingement.

Radiologist: Dr Michael Workman , 10/15/2015 11:37 AM / Edited by:  Linda 198003275 NTS_Heigl , 10/15/2015 11:44 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

### Signature Line
Radiologist   PhysiWorkman MD, Michael
Signed            10/20/15 08:38:02
(Electronic Signature)

Printed by:    Finnegan MA, Shellsea
Printed on:    11/16/2015 9:26

CT Lumbar Spine wo Contrast          FLANAGAN, JAMIE SUE - 5606724

* Final Report *

Transcriptionist     LMH
Technologist         LLM

**REPORT**
This document has an image

**Completed Action List:**
* Order by Mace MD, J Charles on 15 September 2015 9:41
* Perform by Marcum , Laura L on 15 October 2015 9:47
* VERIFY by Workman MD, Michael on 20 October 2015 8:38 Requested on 15 October 2015 11:44
* Endorse by Mace MD, J Charles on 30 October 2015 10:06

Flanagan, Jamie S (MR # E140238803) DOB: ▮▮▮▮▮▮▮▮    Encounter Date: 12/09/2015

## Progress Notes

Jamie S Flanagan (MR# E140238803)

**Progress Notes Info**

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Hopewell, Donald K, MD | Signed | Hopewell, Donald K, MD | 12/9/2015 12:28 PM |

**Progress Notes**

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

FEB 0 2 2016

7014 2120 0001 9379 9506

Springfield, Missouri 65804

Hasler
01/27/2016
US POSTAGE $06.25⁰
ZIP 65804
011D12810600

Hasler
01/27/2016
US POSTAGE $00.70⁵
FIRST-CLASS MA
ZIP 65804
011D12810600

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

 **Law Offices of Rick S. Vasquez**

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

FEB 0 2 2016

January 25, 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

*Re:* *Jamie Flanagan*
    *Group Policy# 00001015732600000*
    *Group Claim# 1130226196*

Dear Sir/Madam:

This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:

1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter.

I note on page 2 of your denial referencing a series of documents used in denying Mrs. Flanagan. I would note as follows:

1. Dr. Hopewell's November 17, 2013 opinion prohibits all work;

2. The April 24, 2014 Functional Capacity Evaluation of Nancy Dickey-Beisswenger, OTR/L is also for less than sedentary work;

3. The April 21, 2015 opinion of Dr. Hopewell is also for less than sedentary work.

Please provide a copy of all pertinent documentation related to this claim including a copy of the transcript of the conversation between Dr. Karande's and Dr. Hopewell and a copy of Dr. Karande's notes from said conversation.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan
Enclosure

## MR Lumbar w wo Contrast

### FLANAGAN, JAMIE SUE - 5606724

* Final Report *

| | |
|---|---|
| Result type: | MR Lumbar w wo Contrast |
| Result date: | 15 October 2015 8:56 |
| Result status: | Auth (Verified) |
| Result title: | MR Lumbar w wo Contrast |
| Performed by: | Workman MD, Michael on 15 October 2015 11:33 |
| Electronically Signed By: | Workman MD, Michael on 20 October 2015 8:38 |
| Encounter info: | 880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015 |

## * Final Report *

**Reason For Exam**

**MR Lumbar w wo Contrast**
MR Lumbar with and without Contrast  10/15/2015 at 8:56 AM:

History:  35-year-old female, back surgery in 2011 with complaints of back pain that radiates in the lower extremities, right greater than left.,

Contrast: Multihance 12 cc.

Findings: L5 anterolisthesis measures 6 mm. Vertebral body height is preserved. Disc height is normal from T12-L4. No disc herniation or bulge is demonstrated. Widely patent vertebral canal and neural foramen.
Small left extraforaminal zone bulge/protrusion at L3-L4 without impingement or contact with the exiting nerve root.

L4-L5: Mild disc height loss with mild T2 dark disc. Small left extraforaminal zone protrusion with contrast enhancement is demonstrated. There is contact with the exiting left L4 nerve root. Vertebral canal and right neural foramen are widely patent.

L5-S1: Status post posterior lumbar interbody fusion with magnetic susceptibility artifact from hardware placement. Widely patent vertebral canal, lateral recess and neural foramen. Contrast enhancement is present along the access tract of interbody cage device.

IMPRESSION:

1.  PLIF L5-S1 without complicating feature.

2.  L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with annular fissure. There is contact with the exiting left L4 nerve root.

Radiologist: Dr Michael Workman , 10/15/2015 11:33 AM / Edited by:  Debra 198003591 NTS_Thomas , 10/15/2015 11:41 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist                 Workman MD, Michael

| | |
|---|---|
| Printed by: | Finnegan MA, Shellsea |
| Printed on: | 11/16/2015 9:26 |

Page 1 of 2
(Continued)



LIN00550