# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMIE S. FLANAGAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No.: 17-CV-05060-MDH |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
| Defendant, | ) | |

## STATEMENT OF UNDISPUTED FACTS, APPLICABLE LAW AND ARGUMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff hereby avers the follow facts are undisputed:

1. Plaintiff was employed by Lester E. Cox Medical Center as a nurse practitioner for a period of 3 years and 8 months ending on August 25, 2013. Plaintiff's employment began on March 1, 2010. (Exhibit A. page LIN00982) [1]

2. Plaintiff was insured under a policy of insurance for long term disability through her employment. (Ex. A p. 114-203)

3. Plaintiff underwent a lumbar fusion on April 1, 2011, which her physician, Donald Hopewell, M.D. a neurologist, described as a "failed lumbar fusion." (Ex. A p. 923)

4. Initial post-operative films showed hardware was intact with no instability on

---

[1] Please note filed herewith is an Exhibit A which consists of a complete file from the Defendant utilized in its analysis of Plaintiff's application for benefits. Each page is denoted as "LIN00 followed by the page number. Hereinafter, it will simply be referenced as Ex. A and the page number. Please note many documents are duplicative however, counsel understands this is the record of Defendant and how it was numbered and submitted.

1

October 19, 2011. (Ex. A. p. 956) X-ray's reconfirmed this on December 16, 2011. (Id.) However, a CT Scan of the same date showed "Grade 2 subluxation L5 on SI with internal fixation and an L4-L5 disc bulge that may affect the exiting L4 nerve root.(Id.)

5. A report of Dr. Hopewell's dated January 24, 2013, indicated an MRI showed nerve root scarring and plans to do a cord stimulator trial, with nonsignificant cervical pathology. (Ex. A p. 961).

6. A September 12, 2012 MRI showed epidural soft tissue which appeared to compromise the thecal sac. By December 28, 2012 postsurgical changes showed spondylolisthesis with extensive evidence of fibrosis and extending into the nerve root. (Id.)

7. Plaintiff left work in August 2013 and applied for long term disability benefits through Defendant (Ex. A p. 1004) Defendant acknowledged Plaintiff's diagnosis of "spondylolisthesis along with failed fusion and nerve root scarring and failed spinal cord stimulator, in receiving the application for benefits. (Id.)

8. As part of her application Plaintiff furnished an employee statement dated November 10, 2013 which indicated she could not work. (Ex. A p. 915)

9. As part of Plaintiff's application Dr. Hopewell submitted a physician statement on November 17, 2013. (Exhibit A. page 923-925) Dr. Hopewell's primary diagnoses was post-laminectomy syndrome lumbar, spinal stenosis and chronic pain. (Id 923.) Objective findings were described as "normal physical exam. X-rays, CT myelogram MRI-Spondylolthisthasis due to failed fusion and nerve root scarring." (Id. at 923). Dr. Hopewell noted the spinal cord stimulator failed. (Id.) Dr. Hopewell noted restrictions in response to the question "What the patient should not do" and replied "Work due to

2

unlimited ability to rest/take breaks." Dr. Hopewell indicated Plaintiff's condition was at maximum improvement and she would never return to her prior level of function. Dr. Hopewell said sitting, standing, walking, etc. limits were "Unquantifiable." (Id. 924)

10. During the first 2 years of disability Plaintiff must only prove she cannot perform her "own occupation" to be eligible. (Ex. A p. 841) On December 4, 2013, Defendant determined Plaintiff did not meet this standard and denied her benefits. (Ex. A p. 841-847)

11. On April 12, 2014, Plaintiff was found permanently and totally disabled and eligible for Social Security disability benefits. (Ex. A p. 805) Social Security found Plaintiff disabled as of August 22, 2013 when she left employment.

12. Plaintiff underwent a functional capacity evaluation on April 22, 2014, which tested her abilities to perform work performed by Nancy Dickey Beisswenger, OTR/L. (Ex. A p. 786-804) This report concluded Plaintiff could sit for 20 minutes at a time, stand for 10 minutes and walk occasionally. (Id. 804) Plaintiff was found to be able to lift 7 pounds occasionally, with no frequent lifting. (Id.) Plaintiff was found to be able to do less than sedentary work. (Id.)

13. On May 6, 2014 Plaintiff, through counsel, appealed to Defendant the denial of December 13, 2013, submitting only Ms. Beiswenger's report and the Social Security Decision. (Ex. A. p. 785)

14. Defendant submitted the file to Meghana C. Karande, M.D. who found Plaintiff could stand or walk 2 hours in an 8-hour day, sit up to 6 hours, and requires a 5 minute position change every hour. (Ex. A p. 749)

15. On June 16, Defendant issued a favorable decision with no explanation. (Ex. A p. 738-739)

3

16. On November 24, 2014 Defendant notified Plaintiff it needed proof of continued disability and began requesting medical records and forms. (Ex. A p. 729)

17. On March 2, 2015 Defendant began investigating whether Plaintiff could meet the standard for disability after 2 years which means the "main duties of any gainful occupation." (Ex.A p. 662) (Please note this "investigation began more than 8 months prior to Plaintiff reaching the 2 year period). Moreover, on April 1, 2015 defendant wrote Plaintiff stating they must have a treating medical professional form for the 6 months prior to November 24, 2015. (Id.) Defendant asked for the form back prior to April 16, 2015, despite the fact that by its own terms it could not be completed until May 24, 2015. (Ex. A p. 662-663).

18. On April 21, 2015, Dr. Hopewell completed the very form requested and indicated Plaintiff could never lift nor carry any weight, could sit a third of an 8-hour work day, but only for a 20 minute duration, and stand and walk occasionally. (Ex. A p. 637) (Please note Defendant paginated this document only upside down) By this point Dr. Hopewell was diagnosing Plaintiff with the same conditions but also a mixed connective tissue autoimmune disease. (Ex. A p. 575-579)

19. The Defendant procured a vocational report from Stacey Nidositko, MS, CRC, a Vocational Rehabilitation Counselor dated September 23, 2015. (Ex. A p. 568) The report from Ms. Nidositko indicates she reviewed a form completed by Plaintiff and the only medical evidence or opinion reviewed that she noted was Dr. Karande's report of June 9, 2014, which indicated Plaintiff could perform sedentary work. (Id.) There is no evidence Ms. Nidositko reviewed any treating reports nor opinions from Dr. Hopewell nor the functional capacity evaluation. (Id.) Premised upon solely Dr. Karande's opinion Ms. Nidositko opined Plaintiff could perform sedentary skilled work. (Id.)

4

20. Six days after Ms. Nidositko's report Defendant issued a September 29, 2015, letter denying Plaintiff's receipt of benefits after November 24, 2015. (Ex. A p. 560-563) The denial makes no mention of Ms. Nidositko's report but incorporates the findings verbatim. (Ex. A p. 562) The denial states it considered all of the medical and opinions that Defendant did not provide Ms. Nidositko. (Id. at 561) Ultimately, the denial utilized Dr. Karande's opinion of June 9, 2014 (Id.) The defendant claims in its denial Dr. Karande contacted Dr. Hopewell who told him that Dr. Hopewell's restrictions and limitations given on his form were "…based off what the claimant had told him." (Id.)

21. Dr. Karande completed her report on June 9, 2014 some 10 months prior to Dr. Hopewell's providing specific restrictions on April 21, 2015. (Id.)  Thus, to the extent the conversation between Dr. Karande and Dr. Hopewell transpired it would have had to have concerned the opinion of Dr. Hopewell from November 17, 2013, wherein he opined her limitations were "unquantifiable" and that she could not work. On December 9, 2015, Dr. Hopewell stated he had no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability. (Ex. A p. 536) Plaintiff's counsel requested defendant provide all pertinent documents including a transcript of Dr. Karande's conversation with Dr. Hopewell and Dr. Karande's notes from the conversation. (Ex. A p. 541)  On February, 10, 2016. Defendant replied while providing a copy of the claim file but stating "However, we are not including a transcript or notes from the conversation between Dr. Meghana Karande and Dr. Hopewell. Due to Dr. Karande's review taking place in June 2014, those notes are no longer available." (Ex. A. p. 534)

22. On December 9, 2015, Plaintiff met with Dr. Hopewell who noted ongoing problems with Plaintiff's long term disability.  (Ex. A p. 553) Plaintiff expressed to Dr.

5

Hopewell the problems center around the fact that her physical examination was normal and that her pain levels fluctuate. ( Id.) Dr. Hopewell indicated this was normal for all patients with chronic medical problems and that normal physical exams are common in patients with spine based pain issues. (Id.) Dr. Hopewell stated I do not believe there is anything I can do to sway the opinion of her insurance carrier. (Id.) Dr. Hopewell also noted overall her pain is doing well on her current regimen without complications.

23. On January 25, 2016, Plaintiff appealed the September 28, 2015 denial of ongoing benefits. (Ex. A p. 548)

24. On March 9, 2016, Defendant obtained a "Peer File Review" from an occupational medicine doctor Joseph G. Thomas, M.D. (Ex. A p. 526) Dr. Thomas reviewed the report of Dr. Hopewell, the functional capacity evaluation and the report of Dr. Karande and stated "I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of lifting. Per the FCE, the claimant could lift up to 7 pounds occasionally." (Ex. A p. 524) Dr. Thomas indicates claimant can perform frequent sitting up to 20 minutes at a time and occasional standing and walking up to 10 minutes at a time. (Id.) Dr. Thomas noted the validity of the FCE and that the limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. (Ex A p. 525) Dr. Thomas states "The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/14. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. (Ex. A p. 526) Dr. Thomas goes on to note "from 11/25/2015, the claimant would have decreased capacity for

6

prolonged sitting, prolonged standing, lifting, bending, stooping and balancing…..I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of the lifting noted above." (Id.)

25. Defendant then procured a second vocational report dated March 21, 2016, from Brandy Thomas, M.A., CRC. (Ex. A p 520-521) This vocational evaluator reviewed only the prior report of Stacey Nidositko, MS, CRC and Dr. Thomas' report of March 9, 2016. (Id.) It is important to note Dr. Thomas' agreement with most of Dr. Hopewell's report and his affirmation of the FCE and contrast that these documents were not provided to Brandy Thomas. (Id.) Brandy Thomas mirrors Stacey Nidositko's analysis as to claimant's ability to perform sedentary skilled work. (Id.)

26. On April 26, 2016, Defendant issues a denial of Plaintiff's appeal reciting portions of Dr. Hopewell's report and Dr. Thomas' report which support its denial, but wholly leaving out other portions of the report (Ex. A p. 515-519) In making its assessment Defendant relies on Brandy Thomas' vocational report to identify that Plaintiff can perform sedentary work. (Ex. A p. 517) However, Defendant correctly notes that sedentary work is defined as involving lifting up to 10 pounds of force occasionally, wholly ignoring that its own reviewing medical expert Dr. Thomas, and the valid FCE on which he relied limited Plaintiff to 7 pounds or less than sedentary work. (Id.)

27. On May 18, 2016, Plaintiff's counsel requested a copy of the curriculum vitae of both Dr. Joseph Thomas and Brandy Thomas. (Ex. A p. 514) On June 6, 2016, Defendant provided a copy of both to counsel, but neither was made a part of the record herein. (Ex. A p. 512) Counsel files herewith Exhibit B which is purported to be the

7

curriculum vitae of Brandy Thomas. (Exhibit B)

28. Exhibit B the purported curriculum vitae of Brandy Thomas, indicates that she has a bachelors and master's degree, but does not state from where nor when. Moreover, the document indicates her only work since February 2014 has been for the Defendant. (Exhibit B)

29. On November 29, 2016, Plaintiff through counsel filed a final appeal to Defendant of the denial of benefits. (Ex. A. p 350-351)

30. Included with the appeal of November 29, 2016 was a vocational rehabilitation evaluation undertaken by Phil Eldred, M.S. C.R.C. dated October 5, 2016. (Ex. A p. 441-505). Defendant's entire file and all medical opinions were provided to Mr. Eldred. (Ex. A p. 441-442) Mr. Eldred opined that the report of Nancy Beisswenger, the FCE, gave restrictions at less than sedentary work. (Id. at 455) The report of Dr. Karande was noted to be at the sedentary work level. (Id. at 457) Conversely, Mr. Eldred concluded the report of Dr. Hopewell was for less than sedentary work. (Id. at 458) Finally, Mr. Eldred found the report of the final peer review upon which Defendant relied in denying benefits Dr. Thomas, gave restrictions at less than sedentary work, which Mr. Eldred stated "… Means she is unemployable and unable to work in any occupation." (Id. at 459) Mr. Eldred concluded Plaintiff is unemployable at the sedentary or any work level. (Id. at p. 462-464)

31. At Defendant's request additional medical were obtained and submitted (Ex. A p. 352-393, and 269-345) to bring the record current. Defendant noted the following new medical evidence (including but not limited to) in its February 6, 2017 denial:

a. On October 22, 2014 Dr. Hopewell diagnosed Plaintiff with lumbar spondy-

8

losis, post laminectomy lumbar syndrome and lumbar spondylolisthesis all occurring in the setting of mixed connective tissue disease. (Ex. A p 225)

b. On December 7, 2015, Dr. Mace, a neurosurgeon, noted a good fusion but some progression of degeneration at L4-5 and left foraminal stenosis but no need for surgery. (Id)

c. On June 16, 2016, Anne Winkler, M.D., a rheumatologist, noted undifferentiated connective tissue disease (UCTD). On September 1, 2016 Dr. Winkler noted some success from a steroid injection which lasted 1-2 months, but that at times "she {sic) was hurting all over with swelling of hand/finger that reportedly would occur about twice per month….and was not sleeping well due to pain radiating to right thigh." (Ex. A p. 226)

d. Pain management records from Dr. Kokoszka and Dr. Tonkin indicated problems with performance of driving, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs and sexual functions. (Id.) The exam noted no deformities, edema, cyanosis, atrophy of upper or lower extremities and normal reflexes. (Id.)

32. On February 6, 2017, Defendant denied Plaintiff's claim for benefits for the final time. (Ex.A p. 223-227) In denying Plaintiff Defendant recited Plaintiff's treatment records but relies on Dr. Karande's opinion as the premise of the initial denial finding Plaintiff could perform sedentary work. (Id. at 224) Defendant noted that at the first level of Appeal Dr. Thomas found Plaintiff was capable of sedentary work. (Id.) However, at the second level, the February 6, 2017, denial Defendant merely recites that it consulted with an unnamed health care consultant and that it did not support that

9

Plaintiff was disabled beyond November 24, 2015. (Id. at 226) Defendant stated "We found no clinical findings noted in the file demonstrating any functional limitation that would support your client was unable to perform duties of any sedentary occupation. (Id. at 226).

33. Plaintiff filed the lawsuit herein.

## APPLICABLE LAW

This case involves a dispute over benefits pursuant to a group employment long term disability policy issued by Defendant to Plaintiff's former employer. Plaintiff has brought this claim seeking benefits due under the policy. Plaintiff bears the burden of demonstrating entitlement to long term disability benefits. *Sahulka vs. Lucent Technologies, Inc.*, 206 F3d 763, 769 (8th Cir. 2000) Plaintiff must prove she is totally disabled which is defined under the policy herein as "Unable to perform each of the main duties of any occupation which her training, education or experience will reasonably allow. (Ex. A p. 170)

An ERISA benefits case is a limited proceeding. As the court is well aware, an ERISA benefits case is not an evidentiary proceeding but rather a review proceeding, such that the District court acts as an appellate court, much like in Social Security disability proceedings. Where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," id., the district court reviews a plan administrator's denial of ERISA benefits for an abuse of discretion. See *Tussey v. ABB, Inc.*, 746 F.3d 327, 333 (8th Cir.), cert. denied, 135 S. Ct. 477 (2014). Such is the case herein as the Defendant reserved sole discretionary authority to determine eligibility and to administer claims on the plan

10

Administrators' behalf. (Ex. A p. 200) Where the plan grants the administrator or fiduciary "discretionary authority" to determine eligibility for benefits, however, the standard of review is relaxed, and abuse of discretion becomes the appropriate benchmark. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Under the abuse of discretion standard, we will uphold a claim fiduciary's decision so long as it is reasonable and supported by substantial evidence. *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014) (citing *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-1000 (8th Cir. 2005) (en banc)). "A decision is reasonable if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision." *Ingram vs.terminalR.R. Ass'n of St. Louis Pension Plan for NonSchedule Emps.*, 812 F.3d 628, 634 (8th Cir. 2016). 812 F.3d at 634.

However, in reliance on the Supreme Court's decision in *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008), the court must properly weigh the Defendant's conflict of interest as a factor in its analysis. *Glenn* requires a reviewing court to account for conflicts of interest in determining whether an administrator has abused its discretion. The mere presence of a potential conflict of interest is not sufficient to warrant a less deferential standard. See e.g., 815 F.3d *Whitley v. Standard Ins. Co.* 1134, 1140 (8th Cir. 2016); *Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009) (observing that "the conflict does not change the standard of review applied by the district court"). Nevertheless, a conflict of interest must be "weighed as a factor," *Glenn*, 554 U.S. at 115 (citation and quotation omitted), the weight afforded to it will depend on the facts presented to the court. Factors identified in the past as

11

tending to demonstrate a consequential conflict of interest include evidence that the insurer's claims review process was tainted by bias; that the medical professionals who reviewed the claim for benefits were employed by the insurer, or that their compensation was tied to their findings; and that the insurer acted as little more than a rubberstamp for favorable medical opinions. See *Whitley*, 815 F.3d at 1140; *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012).

## ARGUMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Abuse of discretion

**expert opinions-**

There is no factual dispute that Plaintiff suffers from a significant medical condition, i.e., failed lumbar fusion diagnosed and defined in the record in various manners. There are 4 medical opinions of disability in this record, one from a functional capacity evaluation (FCE), and 3 from physicians, Dr. Hopewell, Dr. Karande and Dr. Thomas. The FCE indicates Plaintiff could sit for 20 minutes at a time, stand for 10 minutes and walk occasionally. (Id. 804) Plaintiff was found to be able to lift 7 pounds occasionally, with no frequent lifting. (Id.) Plaintiff was found to be able to do less than sedentary work. (Id.) This report is less than sedentary work as defined by Defendant who defined "sedentary work" as:

> "involves exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." (Ex. A p. 517)

12

Sitting for 20 minutes at a time does not enable one to perform frequent sitting, but more specifically and clearly 7 pounds occasionally is less than 10 pounds and therefor inherently less than sedentary work.

The second opinion herein is two separate opinions from Dr. Hopewell, Plaintiff's treating neurologist, and the only physician who gives an opinion who has ever seen Plaintiff. On November 17, 2013 Dr. Hopewell noted restrictions in response to the question "What the patient should not do" and replied "Work due to unlimited ability to rest/take breaks." Dr. Hopewell indicated Plaintiff's condition was at maximum improvement and she would never return to her prior level of function  Dr. Hopewell said sitting, standing, walking, etc. limits were "Unquantifiable." (Id. 924) Obviously, not working is inherently less than sedentary work, but otherwise the opinion lacks any quantification.  Later, Dr. Hopewell gave an opinion on April 21, 2015, which indicated Plaintiff could never lift nor carry any weight, could sit one-third of an 8-hour work day, but only for a 20 minute duration, and stand and walk occasionally. (Ex. A p. 637)  Again, less than 10 pounds is less than the definition for sedentary work, i.e. there is no work less than sedentary.

Defendant had the file reviewed by Dr. Karande who found Plaintiff  could stand or walk 2 hours in an 8-hour day, sit up to 6 hours, and requires a 5 minute position change every hour.  (Ex. A p. 749). Dr. Karande's opinion is for sedentary work. In fact the defendant in its September 28, 2015, denial of benefits claims Dr. Karande contacted Dr. Hopewell who told him that Dr. Hopewell's restrictions and limitations given on his form were "…based off what the claimant had told him." (Exhibit A p. 560-563) Significantly, Dr. Karande completed his report on June 9, 2014 some 10 months prior to

13

Dr. Hopewell's providing specific restrictions on April 21, 2015. (Id.) Thus, we know if this conversation transpired it only encompassed that was Plainitff's limitations were "unquantifiable" and that she could not work. Those are not restrictions, thus, it is difficult to comprehend as to what Dr. Karande is referencing Dr. Hopewell attributed to the claimant's relating to him. On December 9, 2015, Dr. Hopewell stated he had no recollection of any conversation with the patient's insurance company regarding any aspect of her care including disability. (Ex. A p. 536) Plaintiff's counsel requested defendant provide all pertinent documents including a transcript of Dr. Karande's conversation with Dr.Hopewell and Dr. Karande's notes from the conversation. (Ex. A p. 541) On February 10, 2016. Defendant replied while providing a copy of the claim file "However, we are not including a transcript or notes from the conversation between Dr. Meghana Karande and Dr. Hopewell. Due to Dr. Karande's review taking place in June 2014, those notes are no longer available." (Ex. A. p. 534) Thus, the notion that Dr. Karande had a conversation in which Dr. Hopewell discredited his own opinion is 1) logically limited to prior to his specific restrictions issued in April 2015 premised upon time; and 2) premised on non-evidenced triple hearsay from Plaintiff to Dr. Hopewell to Dr.Karande to the Defendant.

Defendant had the file evaluated by Joseph G. Thomas, M.D. on March 9, 2016 an occupational medicine doctor (Ex. A p. 526) Dr. Thomas reviewed the report of Dr. Hopewell, the functional capacity evaluation and the report of Dr. Karande and stated "I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of lifting. Per the FCE, the claimant could lift up to 7 pounds occasionally." (Ex. A p. 524) Dr. Thomas indicates claimant can perform frequent sitting

14

up to 20 minutes at a time and occasional standing and walking up to 10 minutes at a time. (Id.) Dr. Thomas noted the validity of the FCE and that the limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. (Ex A p. 525) Dr. Thomas states "The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/14. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. (Ex. A p. 526) Dr. Thomas goes on to note "from 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing…..I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of the lifting noted above. (Id.) This is Defendant's expert providing an opinion for less than sedentary work and giving 1) credence to the FCE and 2) agreement with Dr. Hopewell with one exception which still in total limits Plaintiff to 7 pounds and less than sedentary work.

It is noteworthy Social Security applies the same standard as the policy at issue herein for disability for those under 50. Social Security found Plaintiff disabled. We must acknowledge a Social Security decision is not binding on the Defendant.

Thus, in terms of the medical expert evidence as to an "abuse of discretion" counsel urges that the treating neurologist compels a finding of disability; the FCE which objectively measured Plaintiff's ability to work compels a finding of disability and these opinions were bolstered by Defendant's expert Dr. Thomas who deferred to the FCE and incorporated most of Dr. Hopewell's opinion just not a 7-pound limit which does not change the finding of disability by Dr. Thomas. The sole opinion, Dr. Karande, upon

15

which Defendant can be found not to have abused its discretion is a doctor who never saw Plaintiff and based his opinion in part on a conversation with Dr. Hopewell of which there is no evidence and which redacted limitations to Plaintiff's direction some 10 months before the specific opinion was elicited. Dr. Karande's opinion is impossible and beyond any acceptable form of evidence.

Defendant asserts in its final denial that its' second level denial including a review by an unnamed health care consultant. (Ex. A p. 223-227) If insurance companies are allowed to premise decisions on undisclosed experts there is nothing to protect a Plaintiff from an abuse of discretion.

**Objective medical evidence-**

Defendant asserted a number of times in its decision there was a lack of objective medical evidence to substantiate Plaintiff's claim. This notion will undoubtedly be asserted in Defendant's defense. The fact is this argument was never made or raised until the Defendant relied on a phantom phone call from Dr. Karande to Dr. Hopewell to discredit Dr. Hopewell. More importantly it is not consistent with the evidence. There is nothing more objective than MRI's and surgical procedures. Plaintiff's lumbar fusion has been diagnosed as a failed lumbar procedure. (Ex. A p. 923) A September 12, 2012 MRI showed epidural soft tissue which appeared to compromise the thecal sac. (Ex. A p. 961) By December 28, 2012 postsurgical changes showed spondylolisthesis with extensive evidence of fibrosis and extending into the nerve root. (Id.) Once a patient has undergone a procedure, it has failed and she has positive MRI results, the objectivity has been established and it is simply a matter of pain control. The condition is not going to improve. What we unequivocally know from this record is Dr. Hopewell states

16

Plaintiff's condition was at maximum improvement and she would never return to her prior level of function.(Ex. A p.. 924) Dr. Karande found the same conditions limited Plaintiff to at most sedentary work and would not improve. (Ex. A p. 741-748) Dr. Thomas identified Plaintiff's conditions were chronic pain syndrome and disabling. Ex. A p. 525) Nothing evidences more an abuse of discretion than the finding Defendant's own expert, Dr. Thomas, who states Plaintiff can only lift 7-pounds, i.e., perform less than sedentary work, is not persuasive.

**vocational evidence-**

The Defendant utilized a vocational report from Stacey Nidositko, MS, CRC, a Vocational Rehabilitation Counselor dated September 23, 2015. (Ex. A p. 568) The report from Ms. Nidositko indicates she reviewed a form completed by Plaintiff and the only medical evidence or opinion reviewed that she noted was Dr. Karande's report of June 9, 2014, which indicated Plaintiff could perform sedentary work. (Id.) There is no evidence Ms. Nidositko reviewed any treating reports or opinions from Dr. Hopewell nor the functional capacity evaluation. Premised solely upon Dr. Karande's opinion Ms. Nidositko opined Plaintiff could perform sedentary skilled work. (Id.) There is no logical reason Defendant would not provide its' vocational expert all of the medical or, at the very least all opinions evidencing limitations, to enable her to have an unbiased opinion. Ms. Nidositko based her opinion on a small portion of the evidence only favoring Defendant in finding Plaintiff could perform sedentary work.

Defendant further utilized a vocational report dated March 21, 2016, from Brandy Thomas, M.A., CRC. (Ex. A p 520-521) This vocational evaluator reviewed only the prior report of Stacey Nidositko, MS, CRC and Dr. Thomas' report of March 9,

17

2016. (Id.) It is important to note Dr. Thomas' agreement with most of Dr. Hopewell's report and his affirmation of the FCE and contrast that these documents were not provided to Brandy Thomas. (Id.) Brandy Thomas mirrors Stacey Nidositko's analysis as to claimant's ability to perform sedentary skilled work. (Id.) 27. The curriculum vitae of Brandy Thomas (Exhibit B) shows no specific qualifications as a vocational expert and evidences the only work Ms. Thomas has performed since 2014 is for Defendant.

A comprehensive vocational evaluation was undertaken by Phil Eldred, M.S. C.R.C. dated October 5, 2016. (Ex. A p. 441- 505). Defendant's entire file and all medical opinions were provided to Mr. Eldred. (Ex. A p. 441-442) Mr. Eldred opined that the report of Nancy Beisswenger, the FCE, gave restrictions at less than sedentary work. (Id. at 455) The report of Dr. Karande was noted to be at the sedentary work level. (Id. at 457) Conversely, Mr. Eldred concluded the report of Dr. Hopewell was for less than sedentary work. (Id. at 458) Finally, Mr. Eldred found the report of the final peer review upon which Defendant relied in denying benefits, Dr. Thomas, gave restrictions at less than sedentary work, which Mr. Eldred stated "…Means she is unemployable and unable to work in any occupation." (Id. at 459) Mr. Eldred concluded Plaintiff is unemployable at the sedentary or any work level. (Id. at p. 462-464) Defendant gives no reason as to why Mr. Eldred's report is not persuasive it simply denies Plaintiff's benefits.

Vocationally, what evidences herein an abuse of discretion is that there is one comprehensive vocational report that considers all medical evidence and opinions, Phil Eldred, which concludes based on that medical evidence that Plaintiff cannot work and it is disregarded. Conversely, Defendant relies on vocational reports which consist of

18

providing the vocational expert only what they believe substantiates their denial of benefits and one of the experts has no disclosed credentials to provide an opinion and only performs work for Defendant.

## Conflict of Interest

The law recognizes there is an inherent concern for a conflict of interest where the defendant is essentially its own court and then reviewed on simply "an abuse of discretion" standard. *Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008). This is looked at in terms of whether 1) there is evidence the denial is tainted by bias; 2) medical professionals were employed by the insurance company; 3) whether those making the denial have some form of compensation tied to the denial; and 4) whether the Defendant acted merely as rubber stamp for favorable medical opinions. See *Whitley v. Standard Ins. Co.*1134, 1140 (8th Cir. 2016); 815 F.3d; *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012). Plaintiff readily concedes there is no evidence of the third criteria herein.

The evidence of tainted bias could not be more clear. Defendant utilizes an opinion from a Dr. Karande which is predicated on a phone call of which there is no proof wherein Dr. Hopewell retracts his own limitations which say nothing more than Plaintiff cannot work and her limitations are unquantifiable. Dr. Hopewell is alleged to have said this was provided to him by the Plaintiff. However, we know that on April 21, 2015, Dr. Hopewell provided specific restrictions for less than sedentary work. We also know that these limitations were never provided to either of the vocational experts employed by the Defendant. Defendant utilized a vocational expert, Stacey Nidositko,

19

who was only provided the restrictions from Dr. Karande. Likewise, the second vocational expert utilized by Defendant, Brandy Thomas, identifies only working for Defendant from and after 2014 and was only provided the opinion of Ms. Nidositko and Dr. Thomas. Dr. Thomas' report indicates Plaintiff can only lift 7-pounds which is less than sedentary work and disabling. The only way Ms. Thomas can conclude the Plaintiff can perform sedentary work is to adapt the finding of Ms. Nidositko which is premised on nothing other than Dr. Karande's report. Nothing could demonstrate bias more than utilizing experts and limiting what they see to only draw one conclusion. There is a medical opinion from Defendant's medical expert, Dr. Joseph Thomas which indicates and finds credible that plaintiff can only lift 7-pounds which is less than sedentary and precludes all work. This opinion is distinctly taken out of context by Defendant by leaving out Dr. Hopewell's opinion and the FCE from Ms. Thomas, the vocational expert, and otherwise would disprove the denial.

Defendant asserts in its final denial that its' second level denial including a review by an unnamed health care consultant. (Ex. A p. 223-227) Who is this expert? Are they a doctor, are they employed by Defendant? This is akin to saying we decide your case, we had a health care consultant look at it and they agreed you are not disabled. If this is not inconsistent with the law, nothing much more could be prohibited.

The record reflects at Exhibit B that Defendant utilized a vocational expert who was either employed by Defendant or provided no services identified for anyone other than Defendant since 2014. This indicates both bias and a professional opinion which was utilized to deny Plaintiff's benefits by an "in-house" expert.

For the same reasons argued herein Defendant's denials are mere rubber stamps

20

of decisions, but there is more in this regard. Every denial from Defendant ignores the April 21, 2015, opinion of Dr. Hopewell, ignores the FCE and ignores that Dr. Thomas' report restricts Plaintiff to less than sedentary work as defined by Defendant. Defendant adheres to a report from Dr. Karande which is premised on a triple hearsay, phantom phone conversation. Experts were provided selective evidence and detailed specific opinions like that of Phil Eldred, Plaintiff's vocational expert, the FCE or the treating physician Dr. Hopewell were simply cast aside. Defendant tailored the evidence to deny benefits and this denial cannot stand. Defendant's denial must be overturned.

**Law Offices of Rick S. Vasquez**

Rick S. Vasquez #41317
1736 E. Sunshine St., Suite 103
Springfield, Missouri 65804
Phone: (417) 889-7735
Fax: (417) 889-7096
**Attorney for Plaintiff**

21

# TABLE OF AUTHORITIES

**Cases**

*Carrow v. Standard Ins. Co.,* 664 F.3d 1254, 1259 (8th Cir. 2012)...........................19

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)...........................11

*Hackett v. Standard Ins. Co.*, 559 F.3d 825, 830 (8th Cir. 2009)...........................11

*Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014)..........11

*Ingram vs.terminalR.R. Ass'n of St. Louis Pension Plan for NonSchedule Emps.*, 812
   F.3d 628, 634 (8th Cir. 2016...........................................................................11

*King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-1000 (8th Cir. 2005)
   (en banc))......................................................................................................11

*Metropolitan Life Insurance Co. v. Glenn*, 554 U.S. 105 (2008)...........................11,19

*Sahulka vs. Lucent Technologies, Inc.,* 206 F3d 763, 769 (8th Cir. 2000) .................10

*Tussey v. ABB, Inc.,* 746 F.3d 327, 333 (8th Cir.), cert. denied,135 S. Ct. 477 (2014)....10

*Whitley v. Standard Ins. Co.*1134, 1140 (8th Cir. 2016)...............................11,12.19