# LTD CLAIM PROFILE



**Date:** 8/21/2017      **LFG**      **Claim #:** 1130226196

| | | |
|---|---|---|
| **Insurer:** The Lincoln National Life Insurance Company | **Posted:** 11/15/2013 | **Location:** HOME |
| **Policy:** 00001015732600000 - | **Status:** EXTENDED | **User ID:** LAW |
| Lester E. Cox Medical Center | **Business:** TRUE LTD | |

## Claimant Information

| | | |
|---|---|---|
| **Name:** JAMIE FLANAGAN | **Phone:** (417)459-5879 | **DOB:** ████ |
| **SSN:** ████ | **Sex:** F | **Hire:** 3/1/2010 |
| **Address:** 1625 MUSKY DME DRIVE | **Ins Eff:** 5/1/2013 | **Class:** 3 |
| CRANE MO 65633 USA | **Occ:** NURSE PRACTITIONER (mecDOTser.) alt75264010 s: | |
| | **Salary:** $7,503.60 | **Period:** Monthly |

## Claim Information

**Special Provisions:**          **Min Ben:** $675.32

**Ben:** 60% / 0%      **A/S:** 0%      **Age:** 33      **Elim Per:** 90 day

**DLW:** 8/25/2013      **DOD:** 8/26/2013      **S/A:** S    **W/R:** N      **Ben Amt:** $4,502.16

**Max Duration:** RBDSS      **Res ID:** NONE

**Diagnosis Pri:** 722.83 Postlaminectomy Syndrome Lumbar Region      **Limits:**

         **Sec:** 724.02 Spinal Stenosis Lumbar Region      **Prognosis:**

**Recovery Date:** 4/3/2047

## Benefit Information

| | | |
|---|---|---|
| **Date Ben Begin:** 11/24/2013 | **Months Paid:** 24 | **Actual Age:** 33 |
| **Modal:** $4,502.16 | **Reins:** $0.00 | **Reserve:** $0.00 |

## Policy Information

**M/N Limits:** Y      **Drug Limits:** Y      **Pension Sup:** N      **Own Occ:** 24 Mos

**SS Offset:** Primary & Family      **Prex:**

**COLA:** NONE

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| SS EMP | PROCESSED | 2/1/2014 | | $2,289.00 | $2,289.00 |
| SS DEPT | PROCESSED | 2/1/2014 | 7/1/2023 | $1,144.00 | $1,144.00 |
| Fam Care | PENDNG | 11/24/2013 | | $250.00 | |
| PIB | PENDNG | 11/24/2013 | | $0.00 | |
| FED TX | PROCESSED | 11/24/2013 | | $100.00 | |

## Dependent Information

| Type | DOB | Name |
|---|---|---|
| Spouse | ████ | Jason |
| Child | ████ | ████ |
| Child | ████ | ████ |

1

**LIN001**

# LTD CLAIM PROFILE

| **Alert Information** | | | | |
|---|---|---|---|---|
| **Status** | **Level** | **Description** | **Posted** | **Resolved** |
| T | W | INSURED LESS THAN SIX MONTHS | 11/19/2013 | 11/21/2013 |
| T | W | REHAB PROFILE | 11/18/2013 | 11/21/2013 |
| T | W | FAMILY CARE EXPENSE RIDER EXISTS | 11/18/2013 | 11/21/2013 |

## Action Plan

```
*********************ATTORNEY REPRESENTATION - 2/18/2013******************
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735
************************************************************************************
```

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension. tme

6/20/14 Releasing initial benefit. J2D

6/20/14-recd email w/salary info, ee makes $43.29 for 80 hrs biweekly, $43.29 x 2080 = $90,004.32 / 12 = $7,503.60. will release benefits.tme

6/20/14-to er for salary info. tme

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme
6/17/14-phone call to attorney
left mess, getting ready to release benefits, do we pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement. left direct number. tme
6/17/14 to er to verfiy if ee receiving pension. tme

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. Per peer review, ee had r & ls that would prevent her from performing her OO. PATH: reqst voc survery and review to determine if ee would have ability to work sed w/r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling. J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City. Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would

**LIN002**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 2 of 200

be unrestricted." Based on all medical information received for review , the claimant would have restrictions and limitations precluding full time work in her own light occupation. . Therefore, I am overturning own occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review . R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review . R2H

5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review . R2H

5-21-14 Schedued 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as we recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and will begin review . R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beissw enger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's work status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w /my contact info. R2H

5/13/14 Assigned 1st level appeal to R2H. c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
 SSS receipt of NOA dated 4/14/14 from EE
date of entitlement = 2/1/14
amount of the award =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro award = $3433.50
claimant has not enrolled in CORS,

3

**LIN003**

Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit..    BXM

4/28/14 recvd mail from Atty - EE has been awarded SSD. Set flup to SSA to review award details. SSD starts 02/2014 in amt of $2289.00. There will be no ovp on the claim. LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE with respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I will send him a copy of the file. LML

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She will appeal. LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13  Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes buprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters.    LML

11/20/13 Clld ER for initial interview -  This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

Initial Claims Summary

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 4 of 200

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FINDING: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FINANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML****************************************


11/19/13 Nurse Practicioner - Light Occ.   We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG

5

**LIN005**

# Chronological Activity List

| Claimant: | JAMIE FLANAGAN | | | Occupation: | NURSE PRACTITIONER (medical ser.) alternate titles: | | |
|---|---|---|---|---|---|---|---|
| SSN: | | DOB: | | Posted: | 11/15/2013 | Months Dis: | 47 |
| Claim #: | 1130226196 | DOD: | 8/26/2013 | Ben: | $4,502.16 | Months Pd: | 24 |
| Coverage: | LTD | Status: | EXTENDED | | | Assignee: | LAW |
| Policy Holder: | Lester E. Cox Medical Center | | | | | Deceased: | |
| Case Mgr. Status: | INV 9/19/2014 | | | | | | |

| Posted Date | Category | Seq | Item | | Status | User |
|---|---|---|---|---|---|---|

Action Plan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*ATTORNEY REPRESENTATION - 2/18/2013\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*LAW OFFICES OF RICK S VASQUEZ--CC attorney on rqsts to ee ATTN RICK VASQUEZ1736 EAST SUNSHINESUITE 103SPRINGFIELD MO 65804PHONE (417) 889-7735\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*7/14/14-phone callper call, Katrina states ok to send payments to Ms. Flanagan, but if need addtl info to cc them. tme 7/7/14 per email from er, ee not receiving her pension. tme 6/20/14 Releasing initial benefit. J2D6/20/14-recd email w/salary info, ee makes $43.29 for 80 hrs biw eekly, $43.29 x 2080 = $90,004.32 / 12 = $7,503.60. w ill release benefits.tme 6/20/14-to er for salary info. tm e6/18/14-phone callPer call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme6/17/14-phone call to attorneyleft mess, getting ready to release benefits, do w e pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement. left direct number. tme 6/17/14 to er to verfiy if ee receiving pension. tm e6/17/14-DIRECTIONEE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. Per peer review, ee had r & ls that w ould prevent her from performing her OO. PATH: reqst voc survery and review to determine if ee w ould have ability to w ork sed w/r & ls that are permanent. poss voc stimnt tme 6/17/14 Claim assigned to TME for further handling. J2D6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City. Appeal OT assigned to J2D. TCC 6/16/14 Appeal OVERTURNED: Peer Review R2H6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file w as sent for a review w ith an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted." Based on all medical information received for review, the claimant w ould have restrictions and limitations precluding full time w ork in her ow n light occupation. . Therefore, I am overturning ow n occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H6/16/14 DRO - DECISION REVIEW - REVIEWED CLA M AND AGREE WITH RECOMMENDATION TO OT 6-12-14 Scheduled Mgr review. R2H6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review. R2H5-22-14 Referred for file scan. Once completed, w ill place med review into VOC coordinator initials to send for Physiatry peer review. R2H5-21-14 Schedued 5/21/14 appeal direction. R2H5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review, as long as w e recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review. R2H5/14/14 Pending Reason: Medical Records R2H5-14-14 Pending Rationale: - 1st level of Appeal- Additional Information Appeal? Yes- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.Recvd 4/14/14 SSDI aw ard letter.Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.- Reason(s) for AppealRecvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.- Summary Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.- Pending Reason and Next StepsPending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H5/13/14 Assigned 1st level appeal to R2H. c1g5/13/14 Level of Appeal: 1st Level Appeal NEW4/28/14- SSDI AWARD SSS receipt of NOA

**LIN006**

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 6 of 200

dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXM4/28/14 recvd mail from Atty - EE has been awarded SSD. Set flup to SSA to review award details. SSD starts 02/2014 in amt of $2289.00. There will be no ovp on the claim. LML1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE with respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I will send him a copy of the file. LML12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She will appeal. LML12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML11/26/13 Medical review completed. KMF RN BSN11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML 11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML Initial Claims SummaryDATE: 11/19/13RATIONALE/DIRECTION: Pending REASON: Sending for a full med review for R/L's from a Light occ based on info in fileEXPECTED RETURN TO WORK DATE: N/ACOMMENTS: per APS no RTW to be expectedDIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbarSUBJECTIVE FINDING: low back pain spread into Lower extremitiesOBJECTIVE FNDNG: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarringMEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013TX: pain medications, lumbar braceDOCTOR: Dr. Donald Hopewell Neurology and PainMEMBER IS ELIGIBLE: YesCOMMENTS: Self Billed, 100% ER Paid NATL ACCTPOLICY INFORMATION: VerifiedCOMMENTS: Reviewed DOCS, ARDIS, Policy, Claim FromsPRE-X INVESTIGATION: Plan has pre-ex & invest is neededCOMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER INITIAL CALL. Will also confirm Pension info.CLAIM INFORMATION: VerifiedCOMMENTS: Reviewed DOCS, ARDIS, Policy, Claim FromsFINANCIAL OFFSETS: VerifiedCOMMENTS: No offsets currentlyNL: LML*****************************************11/19/13 Nurse Practicioner - Light Occ. We have all claims forms - claim is now INITIAL. EE wants $100 taken out for FIT. 11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG

| 2/21/2017 3:20:48 PM | Claim Tasks | 39 | Paper File | | Requested | SARCH6 |

Please prepare a full file copy. Include Claim number/numbers LTD 1130226196 and WOP 1140128972. As a

**LIN007**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 7 of 200

# Chronological Activity List

reminder, the file copy should include all documents within the administrative claim file including the policy and/or the certificate that was effective on the Date of Disability, all AWD or paper documents, activity lists, phone notes, etc. support staff can send the file copy letter out. - JDJACKS - Feb 21, 2017 03:22:29 pm

Copy has been prepared, it is in the CSS Folder/Claim File Scans Folder as:

J FLANAGAN 1130226196 - 1140128972  2-27-17

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.
 - SARCH6 - Feb 27, 2017 02:02:18 pm

**Remove blank pages 139, 141 - once done would appear ok to send copy out. Thank you*** - JDJACKS - Feb 28, 2017 10:29:01 am


Created and mailed CD (secure) with instructions to attorney. - SARCH6 - Mar 01, 2017 02:37:35 pm

| 3/1/2017 | Claim Tasks | 39 | Paper File | Completed | SARCH6 |
| --- | --- | --- | --- | --- | --- |

Please prepare a full file copy. Include Claim number/numbers LTD 1130226196 and WOP 1140128972. As a reminder, the file copy should include all documents within the administrative claim file Including the policy and/or the certificate that was effective on the Date of Disability, all AWD or paper documents, activity lists, phone notes, etc. support staff can send the file copy letter out. - JDJACKS - Feb 21, 2017 03:22:29 pm

Copy has been prepared, it is in the CSS Folder/Claim File Scans Folder as:

J FLANAGAN 1130226196 - 1140128972  2-27-17

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.
 - SARCH6 - Feb 27, 2017 02:02:18 pm

**Remove blank pages 139, 141 - once done would appear ok to send copy out. Thank you*** - JDJACKS - Feb 28, 2017 10:29:01 am


Created and mailed CD (secure) with instructions to attorney. - SARCH6 - Mar 01, 2017 02:37:35 pm

| 2/27/2017 | Documents/Mail | 102 | Atty Ltr with Copy of Claim File | Completed | SARCH6 |
| --- | --- | --- | --- | --- | --- |
| | Atty Ltr with Copy of Claim File | | | | |
| 2/22/2017 | Documents/Mail | 101 | Incoming Correspondence | Completed | JDJACKS |
| | 2017-02-22-08.27.33.535400O01 | | | | |
| 2/17/2017 2:19:58 PM | Documents/Mail | 100 | Incoming Correspondence | Received | JDJACKS |
| | 2017-02-17-10.45.55.650320O01 | | | | |
| 2/21/2017 | Documents/Mail | 100 | Incoming Correspondence | Completed | JDJACKS |
| | 2017-02-17-10.45.55.650320O01 | | | | |
| 2/7/2017 | Summary/Assessment/Pt6h | | Appeal Decision SAP - JDJACKS - Feb 07, 2017 10:04:10 am | Completed | JDJACKS |

Summary Notes
Appeal Decision SAP - JDJACKS - Feb 07, 2017 10:04:10 am
Assessment Notes
see path notes - JDJACKS - Feb 07, 2017 10:04:10 am
Path Notes
PATH UPHOLD

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

8/21/2017

**LIN008**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Initial Claim Decision Sept 28, 2015 - Dr. Meghana C. Karande, an independent physician who is Board Certified in Physical Medicine and Rehabilitation
"May stand/walk up to 2 hours each per 8 hour day with normal breaks. Sit up 6 out of 8. Lift, push, carry, pull up 20 pounds occasionally and 10 pounds frequently.

1st lvl appeal Decision April 26, 2016 - Dr. Joseph G Thomas, an independent physician who is Board Certified in Occupational Medicine
"Peer agreement with abilities form from Dr Hopewell of April 21, 2015 with the exception of lifting.
"Peer FCE lift up 8 pounds occasionally, frequent sitting with 20 minutes of continuous sitting. Occasionally standing/walking with 10 minutes of continuous standing or walking

Add Summary:

Appeal Decision SAP info was rcvd on appeal - Case sent to a NDC for review.

"On exam no documentation of any focal motor weakness, sensory loss, cognitive or memory deficits and no gait issues.
"History of "HTN", "GERD" and "depression" and "pain" but overall providers noted clmts has been well controlled on steady med regiment.
"Full ROM all extremities with intact sensation thru out and normal gait w/o using an assistive device.
"No clinical findings noted demonstrating any functional limitation that would support clmt would be unable to perform duties of any sedentary occupation as Nov 24, 2015.
"The records and other file documentation do not support the payment of addiotnal benefits.
"On appeal medical review clearly outlined R&L that would fall in line with sed work - thru the prior TSA would still be valid.

Final Determination - Reviewed with tjsva7, cxgeary, and AE. Proceed with uphold. See review tab and clinical review for details. - MASCHAA - Feb 06, 2017 02:37:44 pm

PATH letter sent, call made - appeal closed - see AWD and DOCSNET for all the details.
- JDJACKS - Feb 07, 2017 10:04:10 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/24/2016 9:20:45 AM | Appeal | 3 | Level 2 | New | JDJACKS |
| 2/7/2017 | Appeal | 3 | Level 2 | Closed | JDJACKS |
| 2/2/2017 3:02:50 PM | Documents/Mail | 99 | Appeal Any Occ Level 2 Uphold Atty | Work In Progress | JDJACKS |

Appeal Any Occ Level 2 Uphold Atty

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/7/2017 | Documents/Mail | 99 | Appeal Any Occ Level 2 Uphold Atty | Completed | JDJACKS |

Appeal Any Occ Level 2 Uphold Atty

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/7/2017 | Telephone (OUT) | 46 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

OUTGOING call the phone rang spoke with office staff whom stated atty was unable to take the call. Spoke with office staff went over out of the appeal with her and did confirm letter will be sent via the USPS - JDJACKS - Feb 07, 2017 10:06:32 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 3:21:20 PM | Summary/Assessment/Pt5h | | Appeal PENDING rationale 2nd lvl - JDJACKS - Oct 28, 2016 | Requested | JDJACKS |

Summary Notes
Appeal PENDING rationale 2nd lvl - JDJACKS - Oct 28, 2016 03:22:32 pm
Assessment Notes
see path notes - JDJACKS - Oct 28, 2016 03:22:32 pm
Path Notes
Date Appeal Received: Oct 21, 2016
45th Day: Dec 5, 2016
90th Day: Jan 19, 2017

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis,

8/21/2017

4

chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047
Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review, Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found. No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ TSA Nurse Consultant and Call center nurse
Type of Medical Review, Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o - The claimant could lift up to 7 pounds occasionally.    - She could perform frequent sitting with 20 minutes of continuous sitting.    - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.    - She could perform occasional bending and stooping    - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015 Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently finger, handle, reach above the shoulder - sit 20 min duration

MRI - Oct 2015 - Lumbar w/o contrast -

**LIN0010**

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016


FCE - April 2014 - Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre

Pending Reason
"Ack letter dated oct 28, 2016 gave to Nov 11, 2016
- JDJACKS - Oct 28, 2016 03:22:32 pm

***Spoke with attys office and will give them until Nov 28, 2016 to send in records*** - JDJACKS - Oct 28, 2016 03:49:07 pm

***rcvd medical records - call out to atty LM, will try again prior to doing anything else with the appeal case*** - JDJACKS - Nov 28, 2016 10:09:44 am

****INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he will need a few more weeks - stated/did ask he send in a letter asking for more time -- check case in a few to see if atty sends in letter** - JDJACKS - Nov 28, 2016 10:42:22 am

***UPDATED PATH rcvd letter from atty with records and asking for more time will give until Jan 7, 2017 to send in records*** - JDJACKS - Dec 07, 2016 10:18:16 am

****UPDATED PATH rcvd record will get case ready for AD then review *** - JDJACKS - Jan 13, 2017 07:20:37 am

***UPDATED PATH rcvd NDC review proceeding with decision SEE decision SAP once I am able to make decision*** - JDJACKS - Feb 02, 2017 03:00:32 pm

2/6/2017   Summary/Assessment/Pt5h      Appeal PENDING rationale 2nd lvl - JDJACKS - Oct 28, 2016      Completed      JDJACKS

Summary Notes
Appeal PENDNG rationale 2nd lvl - JDJACKS - Oct 28, 2016 03:22:32 pm
Assessment Notes
see path notes - JDJACKS - Oct 28, 2016 03:22:32 pm
Path Notes
Date Appeal Received: Oct 21, 2016
45th Day: Dec 5, 2016
90th Day: Jan 19, 2017

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - ---   the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013

**LIN0011**
Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 11 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047
Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review, Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found. No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ TSA Nurse Consultant and Call center nurse
Type of Medical Review, Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o - The claimant could lift up to 7 pounds occasionally. - She could perform frequent sitting with 20 minutes of continuous sitting. - She could perform occasional standing/walking with 10 minutes of continuous standing or walking. - She could perform occasional bending and stooping - She could perform frequent reaching and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
"April 2015 Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently finger, handle, reach above the shoulder - sit 20 min duration

MRI - Oct 2015 - Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 - Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed

**LIN0012**

Case 3:17-cv-05060-MDH Document 35-1 Filed 05/15/18 Page 12 of 200

Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre

Pending Reason
"Ack letter dated oct 28, 2016 gave to Nov 11, 2016
 - JDJACKS - Oct 28, 2016 03:22:32 pm

***Spoke with attys office and will give them until Nov 28, 2016 to send in records*** - JDJACKS - Oct 28, 2016 03:49:07 pm

***rcvd medical records - call out to atty LM, will try again prior to doing anything else with the appeal case*** - JDJACKS - Nov 28, 2016 10:09:44 am

****INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he will need a few more weeks - stated/did ask he send in a letter asking for more time -- check case in a few to see if atty sends in letter** - JDJACKS - Nov 28, 2016 10:42:22 am

***UPDATED PATH rcvd letter from atty with records and asking for more time will give until Jan 7, 2017 to send in records*** - JDJACKS - Dec 07, 2016 10:18:16 am

****UPDATED PATH rcvd record will get case ready for AD then review *** - JDJACKS - Jan 13, 2017 07:20:37 am

***UPDATED PATH rcvd NDC review  proceeding with decision SEE decision SAP once I am able to make decision*** - JDJACKS - Feb 02, 2017 03:00:32 pm

| 1/13/2017 10:48:35 AM | Referrals | 20413tOngoing Claim Review | | Initial | JDJACKS |

NDC review

Claimant Name:  Jamie Flanagan
Claim Number:  LTD 1130226196
Group ID:  LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence:  MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP:  90 days
Benefit Commencement Date:  Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date:  Nov 24, 2015
Max Duration Date:  April 2047
Occupation:  Nurse Practitioner -  Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial:  CE gainful found 1) Nurse Consultant and Call Center Nurse

Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours
w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position
changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs
frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat,
and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and
feeling w ould be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination:  AS - based on the below  review sent for TSA and gainful occ
found.  No medical or clinical evidence of a functionally impairing condition that w ould preclude or require
restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician w ho is Board Certified in Occupational Medicine
o  - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting w ith 20 minutes
of continuous sitting.      - She could perform occasional standing/w alking w ith 10 minutes of continuous standing
or w alking.      - She could perform occasional bending and stooping      - She could perform frequent reaching
and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopew ell - Neuro/pain - 417-659-6873
"May 26, 2016 - w as stable in terms of pain issues until the last few  months. Felt this w as more of a flare of
connective tissue process rather than chronic neuropathic pain associated w ith back issues. Clmt states issues
w ith hand sw elling and hand joint sw elling.
"Letter/note - Dec 2015 - "I have no recollection of any conversation w ith the patients insurance company
regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients w ith spine based pain issues. - "I don't think
there is anything that I can do to sw ay opinion to of her insurance carrier." Pain is doing reasonably w ell w ith
current regimen w /o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, w alk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Pow ell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  w orse areas are in the back and sometimes all over pain and sw elling in fingers. Clmt feels she is
not depressed and not sleeping w ell due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low  back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016
"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD w ith
radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD w ith radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery
syndrome

MRI - Oct 2015 -  Lumbar w /o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 -  Nancy Beissw enger OTR/L

**LIN0014**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 14 of 200

"Low er extremity strength w as 5/5 - could perform occasional sitting and occasional w alking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and w hen benefits w ill be reinstituted. Feels the prior peer review w as for less than sedentary w ork

Information Submitted w ith appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopew ell
"Crystal Pow ell PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve New bold Nov 2015


Questions

1.Please provide a review summary of the medical findings. Nov 24, 2015.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from Nov 24, 2015 and forw ard.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to w hich the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at w ith specific from and to dates.
3.Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent w ith the medical findings? Please explain. - JDJACKS - Jan 13, 2017 10:50:03 am
Clinical Response Template

Claimant name: Jamie Flanagan
Claim number: LTD ap #1130226196
Date of Review : 01/27/17

Documents review ed: APS by Dr. Hopew ell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain, multiple pain management/family practice/neurosurgery fu exam visit notes from 09/19/12 through November 2016, 09/19/12 fu ov noe Dr. Mace for chronic low back pain noted clmt w as s/p L5-S1 PLIF, rheumatology fu exam notes from December 2015 through 09/01/16, November 2016 Voc rehab consult, labs/multiple imaging studies/diagnostic reports w ith dates ranging from 2010 through 2016.

APS by Dr. Hopew ell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain w ith MD noted failed fusion in 2011 and failed spinal column stimulator (date not given by MD) w ith restrictions/limitations (R&L's) stating "pain increased throughout the day/w eek and unable to control pain w ith medications, w ork w ith unlimited ability to rest/take breaks, estimated RTW stated never, and abilities portion of APS w as bracketed and stated "unqualifiable".

Conclusion: Medical findings submitted in file did not support clmt had functional limitations/ impairment that w ould preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour w orkday and continuously for 20 min at a time, can stand or w alk up to total of 2 hours /8 hour w orkday allow ing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting w ith cow orkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forw ard ongoing.

Rationale w ith supportive medical findings: 36yr/M nurse practitioner (light occ) w ith DOD 08/26/13 due to severe low back/leg pain, post laminectomy syndrome, spinal stenosis, chronic low back pain/lumbar spondylosis, and autoimmune disease w ith noted BCD of 11/24/13 and benefit approved to COD dated 11/24/15. PMH included L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain.

09/19/12 fu ov note Dr. Mace for chronic low back pain noted clmt w as s/p L5-S1 PLIF for chronic low back/leg pain on 04/01/11 w ith continued low back pain and bilateral leg pain, burning sensation in toes/heels all have been w orsening, symptoms improved some w ith w earing lumbar brace. The clmt denied any leg w eakness, bow el/

bladder dysfunctions, and has neck pain that radiates to Lt shoulder. MD exam noted normal muscle strength/tone/ROM throughout, normal gait without mention of any assistive device used to ambulate, and intact sensation throughout. MD stated cervical MRI showed Lt C5-6 disc herniation (date of study not given in MD note), and stated lumbar CT scan showed confluent bone at L5-S1 cage/screws looked fine, and progressive endplate sclerosis. MD stated to try PT for neck pain with traction and will consider surgical intervention with ACDF or maybe spinal stimulator if no better. MD stated history of L%-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 S1 radicular symptoms that are quite problematic, to check myelogram and consider re-exploration-MD ordered cervical and lumbar CT myelogam, PT, and fu after testing.

12/28/12 MRI of lumbar spine showed postsurgical changes posterior interbody fusion at L5-S1 secondary to pars defects at L5 and grade 2 spondylolisthesis. There is extensive evidence of postoperative fibrosis in the posterior operative bed extending along the Rt and Lt lateral margins of the thecal sac and extending anteriorly on the Lt to involve the S1 nerve root. The central canal was noted to be patent and thoracic spine MRI was normal. Cervical MRI same date showed prior changes posterior lumbar interbody fusion at L5-S1 secondary to pars defect, stable anterolisthesis compared to remote studies, more extensive endplate sclerosis noted, and persistent lucency around the bone cage as well as some increased erosion of the posterior aspect of the L5 vertebral body could represent evidence of disc space instability. Anterior epidural soft tissue at the operative level suggesting an extensive postoperative fibrosis and MR scan with contrast is suggested as fu. Cervical/lumbar myelogram showed remote cervical changes posterior lumbar fusion L5-S1 with stable spondylolisthesis of L5-S1 unchanged from October 2011.

08/15/13 fy ov note Dr. Cornelison for evaluation for spinal column stimulator for severe low back/leg pain (postolateral legs and noted symptoms have been present since August 2010 with no injury as cause) and s/p lumbar fusion L5-S1 in April 2011. Currently followed by Dr. Hopewell for pain management and Dr.Cornelison for injection therapy and has MD exam findings pain/numbness bilateral posterior lateral legs, increasing pain with any position for prolonged period. MD exam stated palpation tenderness over lumbosacral spine, increased low back pain with spine extension/axial loading/lateral side bending of lumbar spine reproduces pain, deep tendon reflexes symmetrical and 2+ throughout, straight leg raising on Rt equivocal. MD stated most of clmt's pain is in both legs and clmt suffering from significant epidural fibrosis in old surgical area and is on high doses of narcotic pain medications. MD stated at this time recommends spinal column stimulator and noted clmt to proceed with dual lead spinal column stimulator trial per MD note.

09/19/13 fu Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome stated clmt feeling has weakness in legs but MD stated no true motor deficits, and stated this is a sensation and not a motor problem. Pain is reported to be worse with prolonged position but comfortable in chair, seeking insurance approval for spinal stimulator trial. MD noted neurological exam was normal and fu in 3 months with continuation of same regimen.

11/18/13 EMG/NCS showed abnormal study- conduction studies noted within normal limits but showed evidence of lumbosacral radiculopathy predominently affecting the Rt L5-S1 nerve root.

10/31/16 fu with Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome noted clmt requested spinal cord stimulator-MD stated clmt received no benefit from trial per MD note.

04/23/14 functional capacity evaluation was performed on 04/22/14 and validity criterion she passed indicated she gave maximum voluntary effort and results are as follows: upper/lower extremity ROM and strength were within normal limits 5/5 including pronation/supination and no cardiovascular compromise was noted. Hip abduction ROM within normal limits but with pain at end of range bilaterally Rt> Lt and strength 5-/5 bilateral hips abduction, and 4+/5 for Rt plantar flexion, cervical ROM within normal limits with pain posterior neck with flexion, and mild decrease sensation lateral calves but otherwise no focal deficits noted. MD concluded 7 b lifting restriction, sitting tolerance 20 min duration, occasional walking to very occasional, crawling/bending/working at heights not recommended, and work level was deemed to be less than sedentary functional level. The clmt is noted to have current pain medication regimen consisting of MS Contin 5 pills twice/day -?actual dose), Dilaudid 1-2 tabs up to 3-6 x day, Robaxin 1-2 tabs 3xday, Topamax 1 tab twice/day, and buprofen 800mg 3-4 x day in addition to PRN Xanax 0.5mg up to 4xday PRN, and Wellbutrin twice/day. The MD noted clmt takes Plaquenil 2 tabs at night for autoimmune disease. The clmt does not feel she can RTW as she was not able to work for prolonged times and would lie down between each patient and could not tolerate the positional changes or static position of prolonged sitting or standing.

06/09/14 peer physician review by Board Certified Physical Medicine/ Rehabilitation Medicine MD) concluded that although the clmt reported ongoing pain, exam were normal, and imaging showed minimal findings with some scarring of S1 nerve root but normal 5/5 muscle strength both upper/lower extremities, normal gait without use of assistive device, and concluded based on review of all records and noted discussion with treating MD that he

**LIN0016**

based R&L's on w hat clmt told him and w as unable to provide peer MD with further information on clmt's R&L's. Peer opined appropriated R&L's w ould include: the clmt could w alk/stand up to 2 hours /8 hour normal w orkday w ith normal breaks, may sit up to 6-8 hours/8 hour w orkday, w ould require position changes as needed or for 5 min every hour as needed, may lift/carry/push/pull up to 20lbs occasionally/10lbs frequently, reaching in all directions okay, occasional climb stairs/kneel/bend/stoop/squat/ and crouch, and never climb robes/ladders/ scaffolds/or craw l, and unrestricted ability to handle/finger/feel objects as needed-R&L's apply from 11/24/13 forw ard and w ould be likely be permanent. Peer stated treating providers including Dr. Hopew ell exams revealed no neurological deficits, and MD does not quantify her pain at each visit by using measurable scales and admitted on phone to peer his opinions/R&L's w ere based largely on reported symptoms by clmt rather than on clinical examination findings and/or diagnostic findings and R&L's of no w ork w ere not consistent w ith the documented medical findings.

10/22/14 fu ov note by Dr. Hopew ell for lumbar spondylosis, post laminectomy lumbar syndrome, and lumbar spondylolisthesis all occurring in setting of mixed connective tissue disease. MD stated over past few w eeks lumbar pain is radiating dow n legs, more lateral aspect of Rt leg to heel, and occasionally to Lt side, no new w eakness or sensory changes noted, and denied bow el or bladder dysfunction. The clmt stated she w as off Plaquenil for about 3 w eeks and has just restarted it and thinks may have contributed to pain flare, and noted she had been w alking more than usual because they w ere looking at properties. The clmt stated pain definitely w orse w ith prolonged standing more than if w alking, and noticed she has to sit dow n if up on feet for 15 min, and sitting most comfortable but pain w ill w orsen w ith prolonged sitting as w ell, no clear flare of joint symptoms, and next fu in 3 months. MD stated clmt reported recent rash w ith sw elling of fingers/lips that resolved w ithin 72 hours and stated w as referring clmt to rheumatology for evaluation of skin issues recently.

12/07/15 rheumatology fu note by Dr. Mace for progressive low back and leg pain Rt> Lt stated clmt having increased low back and Rt leg pain, w ith Rt L5 type leg pains described as aching/burning pain, denies leg w eakness or bladder issues. MD exam noted no joint pain or sw elling and has fair ROM throughout, no palpation tenderness of spine, normal 5/5 muscle strength/tone/bulk w ith intact sensation to light touch throughout, able to heel-toe -tandem w alk w ithout difficulty. MD stated imaging show ed w hat appears to be good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at this time, and noted clmt to try w ater exercises for core strengthening.

01/20/15 fu ov note by Dr. Hopew ell for post lumbar laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis stated clmt's last flare of pain w hen last seen w as significantly improved w ith short course of Dexamethasone, states clmt continues to do reasonably w ell w ith pain overall w ith slight increase pain w ith colder w eather. The clmt reports occasional dysesthetic pain in low er extremities particularly in feet and mostly at night but reports no new motor or sensory/bow el or bladder complaints and no problems from medications. MD stated neurological exam remains normal, and noted trial of amitriptyline for neuropathy sensation in feet at night in past caused some reported daytime hypersomnolence that w as tolerable so MD stated w ill try again to see if helps and fu in 3 months.

04/16/15 fu ov note Dr. Hopew ell stated clmt having another flare of low back and bilateral leg pain Rt> Lt and dysesthesia symptoms in feet more frequently due to prolonged car rides and personal stress including loss of her father recently, remains neurologically intact, and needs to stop amitriptyline due to excessive daytime somnolence and to perform sleep study as w ell w ith next fu in 3 months.

04/21/15 abilities form by Dr. Hopew ell stated clmt could lift/carry 0 w eight at any time, could sit frequently at 20 min intervals, could stand/w alk/drive/operate foot controls occasionally, frequently finger/handle/reach above shoulder level, and never climb/bend/kneel.

10/15/15 MR lumbar spine show ed prior PLIF L5-S1 w ithout complicating features, L4-5 facet joint arthropathy adn Lt extraforaminal zone disc protrusion w ith annular fissure, w ith contact w ith exiting Lt L4 nerve root. CT scan of lumbar spine show ed expected postop PLIF changes L5-S1, degenerative disc disease and spondylosis L4-5 w ith facet joint arthropathy and disc bulge/protrusion Lt subarticular and extraforaminal zone. It w as noted there is contact w ith the exiting Lt L4 nerve root but no definite impingement noted.

12/01/15 fu ov note by Dr. New bold for chronic low back pain, GERD, anxiety, depression here for fu stated clmt is actually doing w ell except for recurring episodes of urticarial (rash) and angioedema, marked sw elling of her kips and a couple of times also her throat, and stated rheumatologist gave he an epipen and noted she is not taking antihystamines presently, denies dysphagia, and stated her anxiety/depression is w ell controlled on oral medications for most part.

12/09/15 fu ov note by Dr. Hopew ell stated clmt here to discuss her denial of disability w hich seemed to center around her physical exams being normal and fluctuations in her pain levels that had paralleled other physical

LIN0017

problems or stress related issues. MD stated normal physical exam are common in patients with spine based pain issues and there is always fluctuation of any chronic medical problems based on other physical and emotional stressors is not unusual. MD stated overall her pain is doing reasonably well on current medication regimen without complications and next fu to be in 3 months again.

01/28/16 pain management fu for chronic low back pain and UCTD stated clmt needs refill of epipen which she uses PRN for angioedema and skin reactions and was referred to allergist in past but does not wish to see allergist at this time, likely due to insurance issues, stated not taking antihystamines as they have not helped in past, no recent flare ups of symptoms, and continues multiple pain meds for chronic low back/leg pain and muscle relaxants s/p L5-S1 PLIF with Dr. Mace in April 2011. MD stated clmt is NP but not currently working and on disability due to her multiple medical health problems, although MD notes indicated GERD/anxiety and depression were all well controlled at this time on oral medications. MD exam findings noted no abnormal findings, no focal motor/sensory deficits, and noted epipen prescription was refilled.

02/29/16 fu ov note Dr. Hopewell for chronic low back and bilateral leg pain stated clmt is reasonably stable overall, does have some daytime somnolence and is not physically active, pain continues to be occasional radiation down posterior Rt leg> Lt, and note narcotic pain medication change from Hydromorphone to oxycodone 30mg every 6 hours for breakthrough pain and will continue morphine unchanged. MD suggested sleep study due to hypersomnolence during day and fu in 3 months.

03/09/16 peer physician review Board Certified in Occupational Medicine concluded that he agreed with treating MD R&L's placed on 04/21/15 abilities form with the exception of lifting: peer felt clmt per FCE could lift up to 7lbs occasionally, frequent sitting with continuous sitting up to 20min at a time, standing/walking occasionally for 10 min continuously at a time, occasional bending, stooping, and frequent reaching and fingering working 8 hour days/40 hour workweek and apply from 11/25/15 and forward.

05/23/16 -05/26/16 telphone call to MD office from clmt having increase leg and hip pain for last 2-3 weeks and now having some neck pain into her shoulder issues and wanted to know if she needs burst of steroid to see if helps. MD finally reached clmt and to office for evaluation on 05/26/16. MD stated over last couple of months her pain has changed somewhat with worsening pain, particularly at night, feeling intensely fatigued, and has had to increase pain medication recently due to discomfort, has not had sleep study MD recommended due to insurance issues and continues to have problems sleeping and daytime hypersomnolence. MD exam stated clmt neurologically intact but has significant tenderness lower extremities and calf muscles bilaterally. MD stated felt that flare of pain seemed more soft tissue that neuropathic pain increase associated with back. MD recommended clmt fu with rheumatologist first to evaluate soft tissue inflammation or changes and if still having symptoms after that will try 5 day course of Dexamethasone but until then continue current medication regimen until sees rheumatology.

06/16/16 rheumatology fu note by Dr. Winkler fu for her UCTD (undifferentiated connective tissue disease) and stated clmt is on Plaquenil, has significant DDD of cervical and lumbar spine, has been out of Plaquenil for 3 weeks and has had increased aching in shoulders/hands and knows medications helps. MD stated clmt does have history of large number of tic bites, stated shoulders and elbows hurting more past few weeks off Plaquenil, also feels she is having more swelling in her hands/elbows and has been hurting all over and worse areas are hands/elbows/hips, shoulders, and cannot wear rings due to hand swelling. Currently taking Dilaudid 6 x day for breakthrough pain and did have hives on Sunday and had to use epipen-needs refill for epipen. No rash today but states not sleeping again and gets so fatigue. MD exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling, and MD noted to recheck inflammatory labs stating may need to changes Plaquenil and prescribed Medrol DosePak in meantime with next fu in one month.

09/01/16 fu ov Dr. Winkler for UCTD (Rheumatology) stated clmt reported feeling better with steroid course and lasted for 1-2 months, and pain medications helping, limited with insurance coverage in what is covered, back pain severe and sometimes hurting all over with swelling of hands/fingers, that occurs about twice/month, denies feeling depressed, and still not sleeping well due to pain radiating to Rt thigh. MD stated to continue Plaquenil and use Medrol for flares, and PRN trial again of amitriptyline at bedtime. MD noted no synovitis of any joint noted on MD physical exam and no documented focal motor/sensory/cognitive/neurological deficits identified in MD exam note provided.

10/05/16 to 10/31/16 fu ov notes by pain management Dr. Kokoszka/Dr Tonkin respectively for bilateral lower back pain radiating to Rt lower extremity in L5 dermatomal distribution to the level of the ankle. MD stated today's pain rating 4/10 scale, developes pain while sitting/standing/walking that cannot be ignored more than 30 min and requires position change/multiple pain medications and denies extremity weakness/bowel or bladder dysfunction, but had problems with ADL's due to pain with significant difficulty driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, and sexual functions. Current medications notes by MD

8/21/2017

13

LINQ0018

included Opana ER 20mg every 12 hours, Oxycodone 30mg every 6 hours and noted mild depression score, no evidence of anxiety, s/p > 10 ESI lumbar injections with temporary improvement, and no improvement with spinal stimulator trial. MD exam noted no deformities/edema/ cyanosis/atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. MD stated clmt does not have reproduction of axial back pain with passive oblique extension of lumbar spine or facet loading on either side and negative straight leg raising bilaterally. MD recommended interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage, and PT. Oxygen saturations 98% on room air, weight 150lbs and exam remained unchanged.

November 2016 Voc rehab consult noted essentially concluded that due to functional restrictions demonstrated on FCE the clmt can only lift total of 7 lbs occasionally sitting up to 20 min continuously before she has to change position/rest, and can only stand or walk for 10 min continuously before having to change position/sit to rest, from 11/25/15 forward and that the clmt has no real transferable skills to sedentary job, and would have great difficulties with any retraining, unable to do manual labor or unskilled jobs and overall functional status was stated to agree with FCE results which stated clmt performed at less than sedentary level.

Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing. There was no MD exam documentation of any focal motor weakness/sensory loss/cognitive or memory deficits, and no gait issues identified in MD exam notes provided in file. The clmt's HTN, GERD, depression and pain overall is stated by MD notes to be well controlled on steady medication regimen, has full ROM all extremities with intact sensation throughout, and normal gait without use of assistive device. FCE from April 2014 noted clmt unable to lift > 7lbs without significant increase in pain back, shoulders, and neck particularly with any overhead lifting. Overall muscle strength noted to be 5/5 in all 4 extremities with intact sensory exam throughout. The clmt admitted to having good pain control and wearing lumbar brace helps pain. There are no clinical findings noted in file demonstrating any functional limitation that would support clmt unable to perform duties of any sedentary occupation detailed above. There was pain diary from clmt's home records submitted at all that might support any impairing level of pain frequency/intensity/duration/amount of pain medication required on daily basis.

Specific clinical recommendations: None

Return to Work: MD Guidelines gives 0/1/14 days recovery for chronic low back pain with sedentary occupation.

Karen Mills RN
Clinical Nurse Consultant - KLMILLS - Jan 27, 2017 04:07:26 pm

| 2/2/2017 | Referrals | 20413tOngoing Claim Review | | Completed | JDJACKS |

NDC review

Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36
State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047

**LIN0019**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 19 of 200

**Posted Date**   **Category**        **Seq**  **Item**                                                                        **Status**        **User**

Occupation:   Nurse Practitioner -  Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar
spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial:  CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review , Name, & Specialty:
"June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours
with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position
changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs
frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat,
and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and
feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ
found. No medical or clinical evidence of a functionally impairing condition that would preclude or require
restrictions form performing in any sed lvl occ  TSA  Nurse Consultant and Call center nurse
Type of Medical Review , Name, & Specialty:

" Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o  - The claimant could lift up to 7 pounds occasionally.      - She could perform frequent sitting with 20 minutes
of continuous sitting.       - She could perform occasional standing/walking with 10 minutes of continuous standing
or walking.       - She could perform occasional bending and stooping       - She could perform frequent reaching
and fingering.
"TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
"May 26, 2016 - was stable in terms of pain issues until the last few months. Felt this was more of a flare of
connective tissue process rather than chronic neuropathic pain associated with back issues. Clmt states issues
with hand swelling and hand joint swelling.
"Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company
regarding any aspect of her care including disability."
"OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think
there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with
current regimen w/o complications.
"April 2015  Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently   finger, handle, reach above the shoulder - sit 20 min duration

Crystal Powell PA
"Jan 28, 2016 -  chronic back pain

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is
not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 20 of 200

LIN0020

# Chronological Activity List

"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 - Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016

FCE - April 2014 - Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL - via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopewell
"Crystal Powel PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve Newbold Nov 2015

 Questions

1. Please provide a review summary of the medical findings. Nov 24, 2015.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from Nov 24, 2015 and forward.
a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
3. Are the restrictions or limitations placed upon the claimant's physical activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - JDJACKS - Jan 13, 2017 10:50:03 am
Clinical Response Template

Claimant name: Jamie Flanagan
Claim number:   LTD ap #1130226196
Date of Review:  01/27/17

Documents reviewed: APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain, multiple pain management/family practice/neurosurgery fu exam visit notes from 09/19/12 through November 2016, 09/19/12 fu ov noe Dr. Mace for chronic low back pain noted clmt was s/p L5-S1 PLIF, rheumatology fu exam notes from December 2015 through 09/01/16, November 2016 Voc rehab consult, labs/multiple imaging studies/diagnostic reports with dates ranging from 2010 through 2016.

APS by Dr. Hopewell (Neurology/Pain Management) dated 11/17/13 gave diagnosis of low back/leg pain with MD noted failed fusion in 2011 and failed spinal column stimulator (date not given by MD) with restrictions/limitations (R&L's) stating "pain increased throughout the day/week and unable to control pain with medications, work with unlimited ability to rest/take breaks, estimated RTW stated never, and abilities portion of APS was bracketed and stated "unqualifiable".

Conclusion:  Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted

LIN0021

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 21 of 200

fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing.

Rationale with supportive medical findings: 36yr/M nurse practitioner (light occ) with DOD 08/26/13 due to severe low back/leg pain, post laminectomy syndrome, spinal stenosis, chronic low back pain/lumbar spondylosis, and autoimmune disease with noted BCD of 11/24/13 and benefit approved to COD dated 11/24/15. PMH included L5-S1 PLIF for chronic low back/leg pain on 04/01/11 with continued low back pain.

09/19/12 fu ov note Dr. Mace for chronic low back pain noted clmt was s/p L5-S1 PLIF for chronic low back/leg pain on 04/01/11 with continued low back pain and bilateral leg pain, burning sensation in toes/heels all have been worsening, symptoms improved some with wearing lumbar brace. The clmt denied any leg weakness, bowel/bladder dysfunctions, and has neck pain that radiates to Lt shoulder. MD exam noted normal muscle strength/tone/ROM throughout, normal gait without mention of any assistive device used to ambulate, and intact sensation throughout. MD stated cervical MRI showed Lt C5-6 disc herniation (date of study not given in MD note), and stated lumbar CT scan showed confluent bone at L5-S1 cage/screws looked fine, and progressive endplate sclerosis. MD stated to try PT for neck pain with traction and will consider surgical intervention with ACDF or maybe spinal stimulator if no better. MD stated history of L%-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 S1 radicular symptoms that are quite problematic, to check myelogram and consider re-exploration-MD ordered cervical and lumbar CT myelogam, PT, and fu after testing.

12/28/12 MRI of lumbar spine showed postsurgical changes posterior interbody fusion at L5-S1 secondary to pars defects at L5 and grade 2 spondylolisthesis. There is extensive evidence of postoperative fibrosis in the posterior operative bed extending along the Rt and Lt lateral margins of the thecal sac and extending anteriorly on the Lt to involve the S1 nerve root. The central canal was noted to be patent and thoracic spine MRI was normal. Cervical MRI same date showed prior changes posterior lumbar interbody fusion at L5-S1 secondary to pars defect, stable anterolisthesis compared to remote studies, more extensive endplate sclerosis noted, and persistent lucency around the bone cage as well as some increased erosion of the posterior aspect of the L5 vertebral body could represent evidence of disc space instability. Anterior epidural soft tissue at the operative level suggesting an extensive postoperative fibrosis and MR scan with contrast is suggested as fu. Cervical/lumbar myelogram showed remote cervical changes posterior lumbar fusion L5-S1 with stable spondylolisthesis of L5-S1 unchanged from October 2011.

08/15/13 fy ov note Dr. Cornelison for evaluation for spinal column stimulator for severe low back/leg pain (postolateral legs and noted symptoms have been present since August 2010 with no injury as cause) and s/p lumbar fusion L5-S1 in April 2011. Currently followed by Dr. Hopewell for pain management and Dr.Cornelison for injection therapy and has MD exam findings pain/numbness bilateral posterior lateral legs, increasing pain with any position for prolonged period. MD exam stated palpation tenderness over lumbosacral spine, increased low back pain with spine extension/axial loading/lateral side bending of lumbar spine reproduces pain, deep tendon reflexes symmetrical and 2+ throughout, straight leg raising on Rt equivocal. MD stated most of clmt's pain is in both legs and clmt suffering from significant epidural fibrosis in old surgical area and is on high doses of narcotic pain medications. MD stated at this time recommends spinal column stimulator and noted clmt to proceed with dual lead spinal column stimulator trial per MD note.

09/19/13 fu Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome stated clmt feeling has weakness in legs but MD stated no true motor deficits, and stated this is a sensation and not a motor problem. Pain is reported to be worse with prolonged position but comfortable in chair, seeking insurance approval for spinal stimulator trial. MD noted neurological exam was normal and fu in 3 months with continuation of same regimen.

11/18/13 EMG/NCS showed abnormal study- conduction studies noted within normal limits but showed evidence of lumbosacral radiculopathy predominently affecting the Rt L5-S1 nerve root.

10/31/16 fu with Dr. Hopewell (Neurology/Pain) for lumbar spondylosis and post laminectomy syndrome noted clmt requested spinal cord stimulator-MD stated clmt received no benefit from trial per MD note.

04/23/14 functional capacity evaluation was performed on 04/22/14 and validity criterion she passed indicated she gave maximum voluntary effort and results are as follows: upper/lower extremity ROM and strength were within normal limits 5/5 including pronation/supination and no cardiovascular compromise was noted. Hip abduction ROM within normal limits but with pain at end of range bilaterally Rt> Lt and strength 5-/5 bilateral hips abduction, and 4+/5 for Rt plantar flexion, cervical ROM within normal limits with pain posterior neck with flexion, and mild decrease sensation lateral calves but otherwise no focal deficits noted. MD concluded 7 b lifting restriction, sitting tolerance 20 min duration, occasional walking to very occasional, crawling/bending/working at heights not recommended, and

LIN0022

work level was deemed to be less than sedentary functional level. The clmt is noted to have current pain medication regimen consisting of MS Contin 5 pills twice/day -?actual dose), Dilaudid 1-2 tabs up to 3-6 x day, Robaxin 1-2 tabs 3xday, Topamax 1 tab twice/day, and buprofen 800mg 3-4 x day in addition to PRN Xanax 0.5mg up to 4xday PRN, and Wellbutrin twice/day. The MD noted clmt takes Plaquenil 2 tabs at night for autoimmune disease. The clmt does not feel she can RTW as she was not able to work for prolonged times and would lie down between each patient and could not tolerate the positional changes or static position of prolonged sitting or standing.

06/09/14 peer physician review by Board Certified Physical Medicine/ Rehabilitation Medicine MD) concluded that although the clmt reported ongoing pain, exam were normal, and imaging showed minimal findings with some scarring of S1 nerve root but normal 5/5 muscle strength both upper/lower extremities, normal gait without use of assistive device, and concluded based on review of all records and noted discussion with treating MD that he based R&L's on what clmt told him and was unable to provide peer MD with further information on clmt's R&L's. Peer opined appropriated R&L's would include: the clmt could walk/stand up to 2 hours /8 hour normal workday with normal breaks, may sit up to 6-8 hours/8 hour workday, would require position changes as needed or for 5 min every hour as needed, may lift/carry/push/pull up to 20lbs occasionally/10lbs frequently, reaching in all directions okay, occasional climb stairs/kneel/bend/stoop/squat/ and crouch, and never climb robes/ladders/ scaffolds/or crawl, and unrestricted ability to handle/finger/feel objects as needed-R&L's apply from 11/24/13 forward and would be likely be permanent. Peer stated treating providers including Dr. Hopewell exams revealed no neurological deficits, and MD does not quantify her pain at each visit by using measurable scales and admitted on phone to peer his opinions/R&L's were based largely on reported symptoms by clmt rather than on clinical examination findings and/or diagnostic findings and R&L's of no work were not consistent with the documented medical findings.

10/22/14 fu ov note by Dr. Hopewell for lumbar spondylosis, post laminectomy lumbar syndrome, and lumbar spondylolisthesis all occurring in setting of mixed connective tissue disease. MD stated over past few weeks lumbar pain is radiating down legs, more lateral aspect of Rt leg to heel, and occasionally to Lt side, no new weakness or sensory changes noted, and denied bowel or bladder dysfunction. The clmt stated she was off Plaquenil for about 3 weeks and has just restarted it and thinks may have contributed to pain flare, and noted she had been walking more than usual because they were looking at properties. The clmt stated pain definitely worse with prolonged standing more than if walking, and noticed she has to sit down if up on feet for 15 min, and sitting most comfortable but pain will worsen with prolonged sitting as well, no clear flare of joint symptoms, and next fu in 3 months. MD stated clmt reported recent rash with swelling of fingers/lips that resolved within 72 hours and stated was referring clmt to rheumatology for evaluation of skin issues recently.

12/07/15 rheumatology fu note by Dr. Mace for progressive low back and leg pain Rt> Lt stated clmt having increased low back and Rt leg pain, with Rt L5 type leg pains described as aching/burning pain, denies leg weakness or bladder issues. MD exam noted no joint pain or swelling and has fair ROM throughout, no palpation tenderness of spine, normal 5/5 muscle strength/tone/bulk with intact sensation to light touch throughout, able to heel-toe -tandem walk without difficulty. MD stated imaging showed what appears to be good fusion L5-S1 but some progression of degeneration at L4-5 and some Lt L4-5 foraminal stenosis but no role for surgical intervention at this time, and noted clmt to try water exercises for core strengthening.

01/20/15 fu ov note by Dr. Hopewell for post lumbar laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis stated clmt's last flare of pain when last seen was significantly improved with short course of Dexamethasone, states clmt continues to do reasonably well with pain overall with slight increase pain with colder weather. The clmt reports occasional dysesthetic pain in lower extremities particularly in feet and mostly at night but reports no new motor or sensory/bowel or bladder complaints and no problems from medications. MD stated neurological exam remains normal, and noted trial of amitriptyline for neuropathy sensation in feet at night in past caused some reported daytime hypersomnolence that was tolerable so MD stated will try again to see if helps and fu in 3 months.

04/16/15 fu ov note Dr. Hopewell stated clmt having another flare of low back and bilateral leg pain Rt> Lt and dysesthesia symptoms in feet more frequently due to prolonged car rides and personal stress including loss of her father recently, remains neurologically intact, and needs to stop amitriptyline due to excessive daytime somnolence and to perform sleep study as well with next fu in 3 months.

04/21/15 abilities form by Dr. Hopewell stated clmt could lift/carry 0 weight at any time, could sit frequently at 20 min intervals, could stand/walk/drive/operate foot controls occasionally, frequently finger/handle/reach above shoulder level, and never climb/bend/kneel.

10/15/15 MR lumbar spine showed prior PLIF L5-S1 without complicating features, L4-5 facet joint arthropathy adn Lt extraforaminal zone disc protrusion with annular fissure, with contact with exiting Lt L4 nerve root. CT scan of lumbar spine showed expected postop PLIF changes L5-S1, degenerative disc disease and spondylosis L4-5 with

**LIN0023**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 23 of 200

facet joint arthropathy and disc bulge/protrusion Lt subarticular and extraforaminal zone. It was noted there is contact with the exiting Lt L4 nerve root but no definite impingement noted.

12/01/15 fu ov note by Dr. Newbold for chronic low back pain, GERD, anxiety, depression here for fu stated clmt is actually doing well except for recurring episodes of urticarial (rash) and angioedema, marked swelling of her kips and a couple of times also her throat, and stated rheumatologist gave he an epipen and noted she is not taking antihystamines presently, denies dysphagia, and stated her anxiety/depression is well controlled on oral medications for most part.

12/09/15 fu ov note by Dr. Hopewell stated clmt here to discuss her denial of disability which seemed to center around her physical exams being normal and fluctuations in her pain levels that had paralleled other physical problems or stress related issues. MD stated normal physical exam are common in patients with spine based pain issues and there is always fluctuation of any chronic medical problems based on other physical and emotional stressors is not unusual. MD stated overall her pain is doing reasonably well on current medication regimen without complications and next fu to be in 3 months again.

01/28/16 pain management fu for chronic low back pain and UCTD stated clmt needs refill of epipen which she uses PRN for angioedema and skin reactions and was referred to allergist in past but does not wish to see allergist at this time, likely due to insurance issues, stated not taking antihystamines as they have not helped in past, no recent flare ups of symptoms, and continues multiple pain meds for chronic low back/leg pain and muscle relaxants s/p L5-S1 PLIF with Dr. Mace in April 2011. MD stated clmt is NP but not currently working and on disability due to her multiple medical health problems, although MD notes indicated GERD/anxiety and depression were all well controlled at this time on oral medications. MD exam findings noted no abnormal findings, no focal motor/sensory deficits, and noted epipen prescription was refilled.

02/29/16 fu ov note Dr. Hopewell for chronic low back and bilateral leg pain stated clmt is reasonably stable overall, does have some daytime somnolence and is not physically active, pain continues to be occasional radiation down posterior Rt leg> Lt, and note narcotic pain medication change from Hydromorphone to oxycodone 30mg every 6 hours for breakthrough pain and will continue morphine unchanged. MD suggested sleep study due to hypersomnolence during day and fu in 3 months.

03/09/16 peer physician review Board Certified in Occupational Medicine concluded that he agreed with treating MD R&L's placed on 04/21/15 abilities form with the exception of lifting: peer felt clmt per FCE could lift up to 7lbs occasionally, frequent sitting with continuous sitting up to 20min at a time, standing/walking occasionally for 10 min continuously at a time, occasional bending, stooping, and frequent reaching and fingering working 8 hour days/40 hour workweek and apply from 11/25/15 and forward.

05/23/16 -05/26/16 telphone call to MD office from clmt having increase leg and hip pain for last 2-3 weeks and now having some neck pain into her shoulder issues and wanted to know if she needs burst of steroid to see if helps. MD finally reached clmt and to office for evaluation on 05/26/16. MD stated over last couple of months her pain has changed somewhat with worsening pain, particularly at night, feeling intensely fatigued, and has had to increase pain medication recently due to discomfort, has not had sleep study MD recommended due to insurance issues and continues to have problems sleeping and daytime hypersomnolence. MD exam stated clmt neurologically intact but has significant tenderness lower extremities and calf muscles bilaterally. MD stated felt that flare of pain seemed more soft tissue that neuropathic pain increase associated with back. MD recommended clmt fu with rheumatologist first to evaluate soft tissue inflammation or changes and if still having symptoms after that will try 5 day course of Dexamethasone but until then continue current medication regimen until sees rheumatology.

06/16/16 rheumatology fu note by Dr. Winkler fu for her UCTD (undifferentiated connective tissue disease) and stated clmt is on Plaquenil, has significant DDD of cervical and lumbar spine, has been out of Plaquenil for 3 weeks and has had increased aching in shoulders/hands and knows medications helps. MD stated clmt does have history of large number of tic bites, stated shoulders and elbows hurting more past few weeks off Plaquenil, also feels she is having more swelling in her hands/elbows and has been hurting all over and worse areas are hands/elbows/hips, shoulders, and cannot wear rings due to hand swelling. Currently taking Dilaudid 6 x day for breakthrough pain and did have hives on Sunday and had to use epipen needs refill for epipen. No rash today but states not sleeping again and gets so fatigue. MD exam noted lungs clear, no cervical lymphadenopathy or parotid gland swelling, and MD noted to recheck inflammatory labs stating may need to changes Plaquenil and prescribed Medrol DosePak in meantime with next fu in one month.

09/01/16 fu ov Dr. Winkler for UCTD (Rheumatology) stated clmt reported feeling better with steroid course and lasted for 1-2 months, and pain medications helping, limited with insurance coverage in what is covered, back pain severe and sometimes hurting all over with swelling of hands/fingers, that occurs about twice/month, denies feeling

depressed, and still not sleeping well due to pain radiating to Rt thigh. MD stated to continue Plaquenil and use Medrol for flares, and PRN trial again of amitriptyline at bedtime. MD noted no synovitis of any joint noted on MD physical exam and no documented focal motor/sensory/cognitive/neurological deficits identified in MD exam note provided.

10/05/16 to 10/31/16 fu ov notes by pain management Dr. Kokoszka/Dr Tonkin respectively for bilateral lower back pain radiating to Rt lower extremity in L5 dermatomal distribution to the level of the ankle. MD stated today's pain rating 4/10 scale, developes pain while sitting/standing/walking that cannot be ignored more than 30 min and requires position change/multiple pain medications and denies extremity weakness/bowel or bladder dysfunction, but had problems with ADL's due to pain with significant difficulty driving a car, shopping for groceries, preparing meals, performing housework, climbing a flight of stairs, and sexual functions. Current medications notes by MD included Opana ER 20mg every 12 hours, Oxycodone 30mg every 6 hours and noted mild depression score, no evidence of anxiety, s/p > 10 ESI lumbar injections with temporary improvement, and no improvement with spinal stimulator trial. MD exam noted no deformities/edema/ cyanosis/atrophy both upper/lower extremities, normal 5/5 muscle strength both upper/lower extremities with intact sensation and normal symmetric reflexes bilaterally throughout. MD stated clmt does not have reproduction of axial back pain with passive oblique extension of lumbar spine or facet loading on either side and negative straight leg raising bilaterally. MD recommended interventional pain management, trigger point injections, back lumbar brace, chiropractic care, massage, and PT. Oxygen saturations 98% on room air, weight 150lbs and exam remained unchanged.

November 2016 Voc rehab consult noted essentially concluded that due to functional restrictions demonstrated on FCE the clmt can only lift total of 7 lbs occasionally sitting up to 20 min continuously before she has to change position/rest, and can only stand or walk for 10 min continuously before having to change position/sit to rest, from 11/25/15 forward and that the clmt has no real transferable skills to sedentary job, and would have great difficulties with any retraining, unable to do manual labor or unskilled jobs and overall functional status was stated to agree with FCE results which stated clmt performed at less than sedentary level.

Medical findings submitted in file did not support clmt had functional limitations/ impairment that would preclude ability to perform duties of any sedentary occupation, ability to lift/carry up to 10lbs occasionally, ability to sit up to total of 6 hours/8 hour workday and continuously for 20 min at a time, can stand or walk up to total of 2 hours /8 hour workday allowing for position changes as needed for comfort, unrestricted fingering/handling/reaching/gripping/keyboarding/typing/interacting with coworkers, problem solving as needed on full time basis beyond COD date 11/24/15 and forward ongoing. There was no MD exam documentation of any focal motor weakness/sensory loss/cognitive or memory deficits, and no gait issues identified in MD exam notes provided in file. The clmt's HTN, GERD, depression and pain overall is stated by MD notes to be well controlled on steady medication regimen, has full ROM all extremities with intact sensation throughout, and normal gait without use of assistive device. FCE from April 2014 noted clmt unable to lift > 7lbs without significant increase in pain back, shoulders, and neck particularly with any overhead lifting. Overall muscle strength noted to be 5/5 in all 4 extremities with intact sensory exam throughout. The clmt admitted to having good pain control and wearing lumbar brace helps pain. There are no clinical findings noted in file demonstrating any functional limitation that would support clmt unable to perform duties of any sedentary occupation detailed above. There was pain diary from clmt's home records submitted at all that might support any impairing level of pain frequency/intensity/duration/amount of pain medication required on daily basis.

Specific clinical recommendations: None

Return to Work: MD Guidelines gives 0/1/14 days recovery for chronic low back pain with sedentary occupation.

Karen Mills RN
Clinical Nurse Consultant - KLMILLS - Jan 27, 2017 04:07:26 pm

1/13/2017 Referrals               20413iManagement Review                               Completed        JDJACKS
Claimant Name: Jamie Flanagan
Claim Number: LTD 1130226196
Group ID: LESTERECOX

- Demographics - --- the clmt is a 36 year old nurse practitioner which is a light occ. With a DOD Aug 26, 2013. Benefits paid to Nov 24, 2015 (COD Date). Primary issues lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease. (See AWD/records)

Claim Demographics
Current Age: 36

**LIN0025**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 25 of 200

State of Residence: MO
Situs State: MO
Estimated Net Benefit: - After SS $1,069.16
Date of Disability: August 26, 2013
EP: 90 days
Benefit Commencement Date: Nov 24, 2013
Benefit Paid/Approved To Date: Nov 24, 2015 (COD Date)
Change in Definition (COD) Date: Nov 24, 2015
Max Duration Date: April 2047
Occupation: Nurse Practitioner - Light
Primary Diagnosis: lumbar post laminectomy syndrome, spinal stenosis, chronic pain, chronic low back pain, lumbar spondylosis, autoimmune disease.
2nd Appeal:
ERISA
STD claim status: nothing
LW claim status: closed - 1140128972
LTD claim status: under appeal review

Initial Claim Decision Sept 28, 2015
Reason/Date of denial: CE gainful found 1) Nurse Consultant and Call Center Nurse
Type of Medical Review, Name, & Specialty:
*June 2014 - PM&R peer Dr. Meghana Karande
orestrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

1ST Level Appeal Decision (if applicable) April 26, 2016
Reason/Date of 1st level appeal determination: AS - based on the below review sent for TSA and gainful occ found. No medical or clinical evidence of a functionally impairing condition that would preclude or require restrictions form performing in any sed lvl occ TSA Nurse Consultant and Call center nurse
Type of Medical Review, Name, & Specialty:

* Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine
o - The claimant could lift up to 7 pounds occasionally. - She could perform frequent sitting with 20 minutes of continuous sitting. - She could perform occasional standing/walking with 10 minutes of continuous standing or walking. - She could perform occasional bending and stooping - She could perform frequent reaching and fingering.
*TSA April 26, 2016 found gainful based on peer review

Current Providers - last 18 to 24 months

Dr. Hopewell - Neuro/pain - 417-659-6873
*May 26, 2016 - was stable in terms of pain issues until the last few months. Felt this was more of a flare of connective tissue process rather than chronic neuropathic pain associated with back issues. Clmt states issues with hand swelling and hand joint swelling.
*Letter/note - Dec 2015 - "I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability."
*OVN Dec 2015 - Normal physical exams are common in patients with spine based pain issues. - "I don't think there is anything that I can do to sway opinion to of her insurance carrier." Pain is doing reasonably well with current regimen w/o complications.
*April 2015 Never lift/carry anything, never climb, bend, kneel
oOccasionally stand, walk, drive, operate foot controls
oFrequently finger, handle, reach above the shoulder - sit 20 min duration

Crystal Powell PA
*Jan 28, 2016 - chronic back pain

**LIN0026**

Dr Anne Winkler  Rheumatology - 417-348-8253
"Sept 1, 2016 -  worse areas are in the back and sometimes all over pain and swelling in fingers. Clmt feels she is not depressed and not sleeping well due to the pain.  Assessment undifferentiated connective tissue disease -

Dr. J Charles Mace
"Dec 7, 2015 - assessment chronic low back pain, lumbar radiculoapthy

Dr Mellissa Kokoszka (Anethesiology), Dr. David Tonkin (pain) - 417-888-0167
"Oct 24, 2016 and Oct 31, 2016
"Oct 12, 2016 - pain burning, aching, pins and needles, sharp stabbing. - Assessment lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome
"Oct 5, 2016 - lumbosacral DDD with radiculopathy, Lumbar myofascial syndrome, lumbar failed back surgery syndrome

MRI - Oct 2015 -  Lumbar w/o contrast -

Phillip Eldred - Certified Rehabilitation Counselor - 417-844-8329 - Oct 2016


FCE - April 2014 -  Nancy Beisswenger OTR/L
"Lower extremity strength was 5/5 - could perform occasional sitting and occasional walking/standing - limited lifting/handling up to 7 pounds

Appeal being discussed
Reasons for disagreement as explained in appeal:
"ATTY FILED THE APPEAL -  via letter dated Oct 18, 2016 - asking for an appeal and when benefits will be reinstituted. Feels the prior peer review was for less than sedentary work

Information Submitted with appeal
"Voc eval from Phil Eldre, Pain Management notes Elite pain management Dr Mellissa Kokoszka, Dr. David Tonkin
"Dr. Donald Hopewell
"Crystal Powel PA, for Dr Thomas Jan 28, 2016
"Dr Anne Winkler June 2016 to Sept 2016
"Dr Charles Maces Dec 2015
"Dr. Steve Newbold Nov 2015


Appeal Direction Recommendation:
"NDC
 - Management Review  - JDJACKS - Jan 13, 2017 07:23:35 am
Discussed with tjsva7, cxgeary, and AE. Determination to proceed with  NDC review .  - Management Review - MASCHAA - Jan 13, 2017 10:04:46 am

| Date | Type | | Category | Status | User |
|---|---|---|---|---|---|
| 1/10/2017 9:00:37 AM | Documents/Mail | 98 | Medical Records | Received | JDJACKS |
| | 2017-01-09-17.15.12.566520O01 | | | | |
| | "Dr. Steve Newbold Nov 2015 - medical records*** - JDJACKS - Jan 13, 2017 07:20:13 am | | | | |
| 1/13/2017 | Documents/Mail | 98 | Medical Records | Completed | JDJACKS |
| | 2017-01-09-17.15.12.566520O01 | | | | |
| | "Dr. Steve Newbold Nov 2015 - medical records*** - JDJACKS - Jan 13, 2017 07:20:13 am | | | | |
| 12/7/2016 | Documents/Mail | 97 | Appeal Dis Atty Extension Letter | Completed | JDJACKS |
| | Appeal Dis Atty Extension Letter | | | | |
| 12/1/2016 8:09:12 AM | Documents/Mail | 96 | Medical Records | Received | JDJACKS |
| | 2016-12-01-09.08.39.081740O01 | | | | |
| | ***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:40 am | | | | |
| 12/7/2016 | Documents/Mail | 96 | Medical Records | Completed | JDJACKS |
| | 2016-12-01-09.08.39.081740O01 | | | | |
| | ***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:40 am | | | | |

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 27 of 200

LIN0027

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 12/1/2016 8:09:10 AM | Documents/Mail<br>2016-11-30-10.45.21.282700O01 | 94 | Fax | Received | JDJACKS |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:32 am

| 12/7/2016 | Documents/Mail<br>2016-11-30-10.45.21.282700O01 | 94 | Fax | Completed | JDJACKS |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:32 am

| 12/1/2016 8:09:11 AM | Documents/Mail<br>2016-12-01-09.08.27.334740O01 | 95 | Incoming Correspondence | Received | JDJACKS |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:49 am

| 12/7/2016 | Documents/Mail<br>2016-12-01-09.08.27.334740O01 | 95 | Incoming Correspondence | Completed | JDJACKS |

***rcvd letter from atty with records*** - JDJACKS - Dec 07, 2016 10:15:49 am

| 12/7/2016 | Telephone (OUT) | 45 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

OUTGOING call to the atty the phone rang a few times then office staff did answer gave then my name and their clients name - was placed on hold only after office staff stated they would see if was able to take the call.

Then atty did answer the line did ack his letter and info - stated will give him more time to send in records stated giving him 1 month/about 30 days - However if we get the record prior to deadline will start the review prior - went over status of the case and atty did agree
- JDJACKS - Dec 07, 2016 10:33:49 am

| 11/28/2016 | Documents/Mail<br>2016-11-28-07.39.40.705680O01 | 93 | Incoming Correspondence | Completed | JDJACKS |

***rcvd letter from the atty*** - JDJACKS - Nov 28, 2016 09:54:38 am

| 11/28/2016 | Documents/Mail<br>2016-11-25-16.10.25.284640O01 | 91 | Envelope | Completed | JDJACKS |
| 11/28/2016 | Documents/Mail<br>2016-11-28-07.39.14.811680O01 | 92 | Medical Records | Completed | JDJACKS |

***rcvd medical records*** - JDJACKS - Nov 28, 2016 10:09:03 am

| 11/28/2016 | Telephone (IN) | 44 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

**INCOMING call from the atty did ack his letter and did confirm they did just get a few bills and did confirm he will need a few more weeks - stated/did ask he send in a letter asking for more time*** - JDJACKS - Nov 28, 2016 10:41:40 am

| 11/28/2016 | Telephone (OUT) | 43 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

OUTGOING call to the atty office spoke with office staff and did ask for the atty told with a client left my name and number and asking for a call back to review the Nov 21, 2016 letter - JDJACKS - Nov 28, 2016 09:54:11 am

| 10/28/2016 | Documents/Mail<br>Appeal Dis Atty Ackappeal | 90 | Appeal Dis Atty Ackappeal | Completed | JDJACKS |
| 10/28/2016 | Documents/Mail<br>Record was canceled. Completed to remove from case diary. Date: 31-OCT-16<br>Appeal Dis Atty Ackappeal | 89 | Appeal Dis Atty Ackappeal | Completed | JDJACKS |
| 10/21/2016 9:47:02 AM | Claim Tasks<br>APPEAL REQUEST AND FULL REPORT RECVD? | 38 | Open Review | Requested | RDHASTI |

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am

10-28-16 Full report and appeal recvd in AWD. Addigned to JDJACKS. Rdhasti - RDHASTI - Oct 28, 2016 10:10:24 am

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 28 of 200

LIN0028

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Claim Tasks | 38 | Open Review | Completed | RDHASTI |

APPEAL REQUEST AND FULL REPORT RECVD?

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am

10-28-16 Full report and appeal recvd in AWD. Addigned to JDJACKS. Rdhasti - RDHASTI - Oct 28, 2016 10:10:24 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Telephone (IN) | 42 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

INCOMING call from the attys office did ack the appeal and info with the appeal - decide she would try to get records from Dr. Hopewell from 2016 - I went over status of the appeal case with her and she felt she would need 30 to 45 days _ I stated we would start with about 30. - JDJACKS - Oct 28, 2016 03:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/28/2016 | Telephone (OUT) | 41 | LAW OFFICES OF RICK VASQUEZ | Completed | JDJACKS |

***OUTGOING call to the attys office unable to speak with atty or legal staff left my name and number** - JDJACKS - Oct 28, 2016 02:57:50 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/20/2016 8:18:02 AM | Documents/Mail | 88 | Incoming Correspondence | Received | RDHASTI |

2016-10-19-10.15.20.078080O01
10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:46:58 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/21/2016 | Documents/Mail | 88 | Incoming Correspondence | Completed | RDHASTI |

2016-10-19-10.15.20.078080O01
10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:46:58 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/21/2016 | Telephone (OUT) | 40 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

10-21-16 Recvd incomplete vocational report from Phillip Eldred, MS, CRC. Called atty office to ask if it was from them. Was adv that the atty faxed and mailed an appeal letter with the voc report. I reviewed pages and adv missing the 1st 17 pages of report and the appeal request. I adv will wait for the mailed version to be recvd. Rdhasti - RDHASTI - Oct 21, 2016 09:47:25 am - RDHASTI - Oct 28, 2016 10:09:42 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/19/2016 12:10:51 PM | Claim Tasks | 37 | Paper File | Requested | ALTKA6 |

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

INCLUDE:
LTD 1130226196
WOP 1140128972

**NOTE - A previous file scan was completed on 2/19/2016 (see SEGDA4 letters to atty on 2/24/16 and 2/25/16). Attorney has advised that it is sufficient to provide all records in file that were added after that date. Rdhasti - RDHASTI - Aug 19, 2016 12:19:44 pm

Copy has been prepared, it is in the CSS folder as (U Drive: CSS_ Support_ Folder: Claim_ File_ Scans):

J FLANAGAN 1130226196  8-24-16

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney/claimant. - ALTKA6 - Aug 24, 2016 11:24:36 am

8-24-16 OK to send. Rdhasti - RDHASTI - Aug 24, 2016 01:27:54 pm

**LIN0029**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 29 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Created and mailed CD (secure) with instructions to claimant/ attorney. - ALTKA6 - Aug 25, 2016 08:45:34 am

| | | | | | |
|---|---|---|---|---|---|
| 8/25/2016 | Claim Tasks | 37 | Paper File | Completed | ALTKA6 |

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

INCLUDE:
LTD 1130226196
WOP 1140128972

**NOTE - A previous file scan was completed on 2/19/2016 (see SEGDA4 letters to atty on 2/24/16 and 2/25/16). Attorney has advised that it is sufficient to provide all records in file that were added after that date. Rdhasti - RDHASTI - Aug 19, 2016 12:19:44 pm

Copy has been prepared, it is in the CSS folder as (U Drive: CSS_ Support_ Folder: Claim_ File_ Scans):

J FLANAGAN 1130226196 8-24-16

Please review , advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney/claimant. - ALTKA6 - Aug 24, 2016 11:24:36 am

8-24-16 OK to send. Rdhasti - RDHASTI - Aug 24, 2016 01:27:54 pm

Created and mailed CD (secure) with instructions to claimant/ attorney. - ALTKA6 - Aug 25, 2016 08:45:34 am

| 8/24/2016 | Documents/Mail | 87 | Atty Ltr with Copy of Claim File | Completed | ALTKA6 |
|---|---|---|---|---|---|
| | Atty Ltr with Copy of Claim File | | | | |
| 8/22/2016 | Documents/Mail | 86 | Envelope | Completed | RDHASTI |
| | 2016-08-19-15.39.32.459560O01 | | | | |
| 8/18/2016 7:01:06 AM | Documents/Mail | 85 | Email | Received | RDHASTI |
| | 2016-08-17-10.03.18.987580O01 | | | | |

8-19-16 Recvd atty email adv 1) have not recvd file copy which was requested in 5/2016; 2) they do have a previous file copy that went to 2/24/2016, and it would be sufficient to provide everything from that date forward. I am submitting file copy request. Rdhasti - RDHASTI - Aug 19, 2016 12:20:03 pm

| 8/19/2016 | Documents/Mail | 85 | Email | Completed | RDHASTI |
|---|---|---|---|---|---|
| | 2016-08-17-10.03.18.987580O01 | | | | |

8-19-16 Recvd atty email adv 1) have not recvd file copy which was requested in 5/2016; 2) they do have a previous file copy that went to 2/24/2016, and it would be sufficient to provide everything from that date forward. I am submitting file copy request. Rdhasti - RDHASTI - Aug 19, 2016 12:20:03 pm

| 6/14/2016 | Documents/Mail | 84 | Incoming Correspondence | Completed | RDHASTI |
|---|---|---|---|---|---|
| | 2016-06-13-15.45.38.984860O01 | | | | |

Letter from attorney acknowledging receipt of CV info that was sent. - CXGEARY - Jun 14, 2016 03:41:39 pm

| 6/6/2016 1:17:58 PM | Documents/Mail | 83 | Free Form Letter | Work In Progress | RDHASTI |
|---|---|---|---|---|---|
| | Free Form Letter | | | | |
| 6/7/2016 | Documents/Mail | 83 | Free Form Letter | Completed | RDHASTI |
| | Free Form Letter | | | | |
| 6/1/2016 10:46:24 AM | Claim Tasks | 36 | Open Review | Requested | RDHASTI |
| | CVs RECVD? | | | | |

6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's. Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:41 am

| 6/6/2016 | Claim Tasks | 36 | Open Review | Completed | RDHASTI |
|---|---|---|---|---|---|
| | CVs RECVD? | | | | |

6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's.

LIN0030

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | | | Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:41 am | | |
| 5/24/2016 8:57:10 AM | Documents/Mail | 82 | Incoming Correspondence | Received | RDHASTI |
| | 2016-05-23-13.33.29.808740O01 | | | | |
| | 6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's. | | | | |
| | Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:13 am | | | | |
| 6/1/2016 | Documents/Mail | 82 | Incoming Correspondence | Completed | RDHASTI |
| | 2016-05-23-13.33.29.808740O01 | | | | |
| | 6-1-16 Recvd 5/18/16 atty letter req file copy and CV of all experts used in determination. I am requesting CV's. | | | | |
| | Once recvd, will submit for file copy. Rdhasti - RDHASTI - Jun 01, 2016 10:46:13 am | | | | |
| 3/15/2016 1:28:38 PM | Referrals | 20413!TSA | | Initial | RDHASTI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please perform updated TSA for sedentary with the following r/l's as decribed by peer reviewer:
- The claimant could lift up to 7 pounds occasionally.
- She could perform frequent sitting with 20 minutes of continuous sitting.
- She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- She could perform occasional bending and stooping
- She could perform frequent reaching and fingering.
- These limitations are for an 8 hour work day and 40 hour work week.
- CXGEARY - Mar 15, 2016 01:31:35 pm


Vocational Response-

VRC discussed results with CE.

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. There were two occupations identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.

Brandy Thomas, MA, CRC
- BRSTH6 - Mar 21, 2016 03:54:47 pm

| 4/26/2016 | Referrals | 20413!TSA | | Completed | RDHASTI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan

**LIN0031**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 31 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review ? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:

Please perform updated TSA for sedentary with the following r/'s as decribed by peer reviewer:
- The claimant could lift up to 7 pounds occasionally.
- She could perform frequent sitting with 20 minutes of continuous sitting.
- She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- She could perform occasional bending and stooping
- She could perform frequent reaching and fingering.
- These limitations are for an 8 hour work day and 40 hour work week.
- CXGEARY - Mar 15, 2016 01:31:35 pm


Vocational Response-

VRC discussed results with CE.

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. There were two occupations identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.

Brandy Thomas, MA, CRC
 - BRSTH6 - Mar 21, 2016 03:54:47 pm

| 4/26/2016 | Referrals | 20413 | Consultant Review | Completed | RDHASTI |
|---|---|---|---|---|---|

4-26-16 Requesting 2 week extension beyond 90th day to 5/17/2016.

Request for addendum was sent to support in March, but it was never forwarded to peer reviewer. It is being forwarded now. - Consultant Review - RDHASTI - Apr 26, 2016 08:48:54 am

| 4/26/2016 | Summary/Assessment/P:4h | | - 1st LEVEL APPEAL DECISION RATIONALE - RDHASTI - Apr | Completed | RDHASTI |
|---|---|---|---|---|---|

Summary Notes
- 1st LEVEL APPEAL DECISION RATIONALE - RDHASTI - Apr 26, 2016 11:35:27 am
Assessment Notes
- See Path tab - RDHASTI - Apr 26, 2016 11:35:27 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Received? Yes
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical

**LIN0032**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 32 of 200

information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

During the course of our review, we consulted with Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine. His review stated in part: "The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.
· Per the FCE, the claimant could lift up to 7 pounds occasionally.
· She could perform frequent sitting with 20 minutes of continuous sitting.
· She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
· She could perform occasional bending and stooping.
· She could perform frequent reaching and fingering."

Based on supported restrictions, the file was sent for a TSA which was able to identify two gainful occupations.

The medical information received from Dr. Hopewell confirms that the claimant would have decreased capacity for sitting, standing, lifting, bending, and stooping. However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward. Therefore, the decision to terminate benefits is upheld. Rdhasti
PATH
-Next Steps
ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) closed flups. Rdhasti
 - RDHASTI - Apr 26, 2016 11:35:27 am

| 2/10/2016 11:08:36 AM | Summary/Assessment/P:3h | | - 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 | Requested | RDHASTI |

Summary Notes
- 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 11:08:58 am
Assessment Notes
- See Path tab - RDHASTI - Feb 10, 2016 11:08:58 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 1/25/16 atty appeal letter.
Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Records received that were not available at the claim level: Recvd 10/15/15 lumbar spine MRI and CT results. Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.

ASSESSMENT
- Reason(s) for Appeal
Recvd 1/25/16 atty appeal letter adv 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work; 4) req copy of documentation related to claim including copy of transcript and notes of the conversation between Dr. Karande (peer reviewer) and Dr. Hopewell; 5) letter adv including MRI and CT results, OV note, and letter; I did not receive a letter.
- Pending Reason
Pending for medical records.
PATH
-Next Steps

**LIN0033**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 33 of 200

ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) set 30, 45, 90 day flups. Rdhasti - RDHASTI - Feb 10, 2016 11:08:58 am

2-10-16 ATTY appeal request letter requested a copy of transcripts and notes from 6/2014 peer reviewer and Dr. Hopewell. I contacted support to check if these were available. Per the vendor, "Unfortunately with this review being conducted almost two years ago, Dr. Karande would have destroyed any notes she might have had. There is only brief mention of the AP teleconference in the report (copy attached, though I'm sure you already had this), so that is all we have available. Sorry I couldn't dig up more on this!" Rdhasti - RDHASTI - Feb 10, 2016 11:35:52 am

2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:41 pm

2-19-16 Scheduled appeal directin. Rdhasti - RDHASTI - Feb 19, 2016 04:12:50 pm

2-24-16 Referred for Occ Med peer review. Rdhasti - RDHASTI - Feb 24, 2016 10:47:20 am

Peer review returned. Submitted to Voc for updated TSA with the r/'s as outlined by peer reviewer. - CXGEARY - Mar 15, 2016 01:32:30 pm

Called clmt. Advised we are approaching the 45th day and file is still under review. Med report is back, but now we are having a vocational review done. Advised we will need to take our 45 day extension and gave explanation of what that entails. Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:48:05 pm

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was. Called atty's office to advise of 45 day extension and apologize for reaching out to clmt. Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:34 pm

3-23-16 TSA recvd identifying 2 gainful occupations. Rdhasti

3-23-16 On review, appears the peer reviewer did not attempt to contact the treating provider to discuss the medical disagreement on the claimant's ligting ability. i sent back to support to have peer reviewer attempt to contat Dr. Hopewell. Rdhasti - RDHASTI - Mar 23, 2016 11:44:38 am

4-26-16 Recvd notice from support that Dr. Hopewell will not speak to peer reviewer. Rdhasti - RDHASTI - Apr 26, 2016 11:30:04 am

4/26/2016   Summary/Assessment/P3h      - 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016      Completed      RDHASTI

Summary Notes
- 1st LEVEL APPEAL RATIONALE - RDHASTI - Feb 10, 2016 11:08:58 am
Assessment Notes
- See Path tab - RDHASTI - Feb 10, 2016 11:08:58 am
Path Notes
SUMMARY
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 1/25/16 atty appeal letter.
Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
- Summary
Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Records received that were not available at the claim level: Recvd 10/15/15 lumbar spine MRI and CT results. Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.

ASSESSMENT

**LIN0034**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 34 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

- Reason(s) for Appeal
Recvd 1/25/16 atty appeal letter adv 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work; 4) req copy of documentation related to claim including copy of transcript and notes of the conversation between Dr. Karande (peer reviewer) and Dr. Hopewell; 5) letter adv including MRI and CT results, OV note, and letter; I did not receive a letter.
- Pending Reason
Pending for medical records.
PATH
-Next Steps
ACTION: 1) mailed letter to atty, not ER since over 2 years; 2) called atty; 3) set 30, 45, 90 day flups. Rdhasti
- RDHASTI - Feb 10, 2016 11:08:58 am

2-10-16 ATTY appeal request letter requested a copy of transcripts and notes from 6/2014 peer reviewer and Dr. Hopewell. I contacted support to check if these were available. Per the vendor, "Unfortunately with this review being conducted almost two years ago, Dr. Karande would have destroyed any notes she might have had. There is only brief mention of the AP teleconference in the report (copy attached, though I'm sure you already had this), so that is all we have available. Sorry I couldn't dig up more on this!" Rdhasti - RDHASTI - Feb 10, 2016 11:35:52 am

2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:41 pm

2-19-16 Scheduled appeal directin. Rdhasti - RDHASTI - Feb 19, 2016 04:12:50 pm

2-24-16 Referred for Occ Med peer review. Rdhasti - RDHASTI - Feb 24, 2016 10:47:20 am

Peer review returned. Submitted to Voc for updated TSA with the r/l's as outlined by peer reviewer. - CXGEARY - Mar 15, 2016 01:32:30 pm

Called clmt. Advised we are approaching the 45th day and file is still under review. Med report is back, but now we are having a vocational review done. Advised we will need to take our 45 day extension and gave explanation of what that entails. Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:48:05 pm

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was. Called atty's office to advise of 45 day extension and apologize for reaching out to clmt. Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:34 pm

3-23-16 TSA recvd identifying 2 gainful occupations. Rdhasti

3-23-16 On review, appears the peer reviewer did not attempt to contact the treating provider to discuss the medical disagreement on the claimant's ligting ability. i sent back to support to have peer reviewer attempt to contat Dr. Hopewell. Rdhasti - RDHASTI - Mar 23, 2016 11:44:38 am

4-26-16 Recvd notice from support that Dr. Hopewell will not speak to peer reviewer. Rdhasti - RDHASTI - Apr 26, 2016 11:30:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/4/2016 8:41:21 AM | Appeal | 2 | Level 1 | New | RDHASTI |
| 4/26/2016 | Appeal | 2 | Level 1 | Closed | RDHASTI |
| 4/26/2016 | Documents/Mail | 81 | Appeal Any Occ Level 1 Uphold Atty | Completed | RDHASTI |
| | Appeal Any Occ Level 1 Uphold Atty | | | | |
| 2/10/2016 12:30:55 PM | Claim Tasks | 35 | Appeal 90 Day Extension | Requested | RDHASTI |

90th day is 5/3/2016 - RDHASTI - Feb 10, 2016 12:31:16 pm

4-26-16 Requested extension to 5/17/2016. Rdhasti - RDHASTI - Apr 26, 2016 08:49:22 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/26/2016 | Claim Tasks | 35 | Appeal 90 Day Extension | Completed | RDHASTI |

90th day is 5/3/2016 - RDHASTI - Feb 10, 2016 12:31:16 pm

4-26-16 Requested extension to 5/17/2016. Rdhasti - RDHASTI - Apr 26, 2016 08:49:22 am

**LIN0035**

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 35 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/26/2016 | Telephone (OUT) | 39 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

4-26-16 Called atty office to adv uphold decision. Spoke to Katrina and adv. Rdhasti - RDHASTI - Apr 26, 2016 11:31:49 am

| 2/10/2016 11:08:02 AM | Claim Tasks | 31 | Open Review | Requested | RDHASTI |

ANY ADDTL NFO RECVD? - If not, begin review - RDHASTI - Feb 10, 2016 11:08:25 am

2-10-16 Recvd call from Katrina in ATTY office confirming w e did not receive Dr. Hopw erll letter advising that Dr. Hopew ell had no recollection of speaking to the peer review er. I confirmed letter not recvd w ith appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review . Rdhasti - RDHASTI - Feb 10, 2016 11:40:49 am

Peer review recd. Sent for updated TSA w iht new r/ls. - CXGEARY - Mar 15, 2016 01:33:25 pm

| 3/23/2016 | Claim Tasks | 31 | Open Review | Completed | RDHASTI |

ANY ADDTL NFO RECVD? - If not, begin review - RDHASTI - Feb 10, 2016 11:08:25 am

2-10-16 Recvd call from Katrina in ATTY office confirming w e did not receive Dr. Hopw erll letter advising that Dr. Hopew ell had no recollection of speaking to the peer review er. I confirmed letter not recvd w ith appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review. Rdhasti - RDHASTI - Feb 10, 2016 11:40:49 am

Peer review recd. Sent for updated TSA w iht new r/ls. - CXGEARY - Mar 15, 2016 01:33:25 pm

| 2/23/2016 1:46:22 PM | Referrals | | 20413!Ongoing Claim Review | Initial | RDHASTI |

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

1st Appeal
Peer review w ith an Occupational Medicine Physician
Diagnosis: POSTLAMNECTOMY SYNDROME LUMBAR REGION, SPINAL STENOSIS LUMBAR REGION

Peer to peer call to be made if there is a medical disagreement on functionality:

Dr. Donald Hopew ell / Neurology
Phone: 417-659-6873

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) w ho stopped w orking 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It w as previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time w e are review ing w hether or not the medical findings w ithin the file support the restrictions and/ or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these w ould translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forw ard.

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to w hich the limitations and/or restrictions apply.

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 36 of 200     LIN0036

b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3. Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

 - SARCH6 - Mar 02, 2016 02:45:55 pm
Date:  2/19/2016
Claimant Name:  Jamie Flanagan
Claim Number:  1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP:  90
Benefits Commencement Date:  11/24/2013
Benefits Paid To:  11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD:  Nurse Practitioner
DOT Classification:  Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?  Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
*Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service:  12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical

LIN0037

# Chronological Activity List

information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - BKGALL - Feb 23, 2016 01:46:54 pm
Clinical Consultation Response:

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 01:46:54 pm
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:46:54 pm
INCLUDE LTD 1130226196

Specialty Requested:Occupational Medicine peer with Dr-to-Dr call made to treating providers if there is a need for clarification, of if there is a medical disagreement on functionality.

**NOTE** If the treating provider is contacted, provide a transcript of the conversation with your review.**

Claimant's Physician Name and Specialty: Dr. Donald Hopewell (neurology)
Claimant's Physician Phone Number: (417) 659-6873

Has this file had a prior external review? Yes
UDC, Dr. Meghana Karande, Physical Medicine and Rehabilitation

Claim Summary

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1.Please provide a review summary of the medical findings.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

LIN0038

a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3.Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - RDHASTI - Feb 24, 2016 10:47:03 am
Case submitted to RRS conf #14252 for a peer review with an Occupational Medicine Physician, see notes tab for additional information. - SARCH6 - Mar 02, 2016 02:45:56 pm
The final report from RRS was received and sent to LFGAppeals for attachment to AWD. - SARCH6 - Mar 10, 2016 02:26:00 pm
QA RESPONSE: Physician Peer Review
Claimant: Jamie Flanagan
Claim Number: 1130226196

Vendor: RRS
Audit Date: 3/11/16
Peer Reviewer: Joseph G. Thomas, MD
Peer Reviewer Board Certifications: Occupational Medicine
Teleconference was not attempted but/ was not completed with Dr. Hopewell due to no significant medical disagreement.

Received and reviewed peer report. The peer reviewer notes the claimant's pertinent clinical history and responds to questions posed. The peer reviewer concluded that the medical records support restrictions and limitations as follows from 11/25/2015 and forward:

The claimant could lift up to 7 pounds occasionally.
She could perform frequent sitting with 20 minutes of continuous sitting.
She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
She could perform occasional bending and stooping
She could perform frequent reaching and fingering.
These limitations are for an 8 hour work day and 40 hour work week.

Clinical rationale is provided. See report for details.

Referring DOCSNET case to: RDHASTI

Report is located in AWD: The report was sent to imaging per SARCH6.

Please call with any questions.

Virginia Rush, RN, BS
Nurse Disability Consultant - VXRUSH - Mar 11, 2016 09:30:01 am

| 3/15/2016 | Referrals | 20413:Ongoing Claim Review | | Completed | RDHASTI |

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

1st Appeal
Peer review with an Occupational Medicine Physician
Diagnosis: POSTLAMINECTOMY SYNDROME LUMBAR REGION, SPINAL STENOSIS LUMBAR REGION

Peer to peer call to be made if there is a medical disagreement on functionality:

Dr. Donald Hopewell / Neurology
Phone: 417-659-6873

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post

LIN0039

laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1. Please provide a review summary of the medical findings.

2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

b. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3. Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

 - SARCH6 - Mar 02, 2016 02:45:55 pm
Date:  2/19/2016
Claimant Name:  Jamie Flanagan
Claim Number:  1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP:  90
Benefits Commencement Date:  11/24/2013
Benefits Paid To:  11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD:  Nurse Practitioner
DOT Classification:  Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?  Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

**LIN0040**

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service: 12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - BKGALL - Feb 23, 2016 01:46:54 pm
Clinical Consultation Response:

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 01:46:54 pm
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:46:54 pm
INCLUDE LTD 1130226196

Specialty Requested:Occupational Medicine peer with Dr-to-Dr call made to treating providers if there is a need for clarification, of if there is a medical disagreement on functionality.

**NOTE** If the treating provider is contacted, provide a transcript of the conversation with your review.**

Claimant's Physician Name and Specialty: Dr. Donald Hopewell (neurology)
Claimant's Physician Phone Number: (417) 659-6873

Has this file had a prior external review? Yes
UDC, Dr. Meghana Karande, Physical Medicine and Rehabilitation

LIN0041

Claim Summary

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. It was previously determined that Ms. Flanagan met the policy definition of disability to 11/24/2015.

At this time we are reviewing whether or not the medical findings within the file support the restrictions and/ or limitations of the treating provider(s).

Please respond to the specific questions below and provide the medical findings supporting your rationale.

*If there are any medical disagreements, please contact the treating physician(s) listed above to discuss restrictions and limitations.

Questions

1.Please provide a review summary of the medical findings.

2.Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
b.Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

3.Are the restrictions or limitations placed upon the claimant's physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain. - RDHAST1 - Feb 24, 2016 10:47:03 am
Case submitted to RRS conf #14252 for a peer review with an Occupational Medicine Physician, see notes tab for additional information. - SARCH6 - Mar 02, 2016 02:45:56 pm
The final report from RRS was received and sent to LFGAppeals for attachment to AWD. - SARCH6 - Mar 10, 2016 02:26:00 pm
QA RESPONSE: Physician Peer Review
Claimant:  Jamie Flanagan
Claim Number:  1130226196

Vendor: RRS
Audit Date: 3/11/16
Peer Reviewer:  Joseph G. Thomas, MD
Peer Reviewer Board Certifications:  Occupational Medicine
Teleconference was not attempted but/ was not completed with Dr. Hopewell due to no significant medical disagreement.

Received and reviewed peer report. The peer reviewer notes the claimant's pertinent clinical history and responds to questions posed.  The peer reviewer concluded that the medical records support restrictions and limitations as follows from 11/25/2015 and forward:

The claimant could lift up to 7 pounds occasionally.
She could perform frequent sitting with 20 minutes of continuous sitting.
She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
She could perform occasional bending and stooping
She could perform frequent reaching and fingering.
These limitations are for an 8 hour work day and 40 hour work week.

Clinical rationale is provided.  See report for details.

Referring DOCSNET case to: RDHAST1

LIN0042
Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 42 of 200

Report is located in AWD: The report was sent to imaging per SARCH6.

Please call with any questions.

Virginia Rush, RN, BS
Nurse Disability Consultant - VXRUSH - Mar 11, 2016 09:30:01 am

| | | | | | |
|---|---|---|---|---|---|
| 3/15/2016 | Documents/Mail | 80 | Appeal Dis Atty Extension Letter | Completed | CXGEARY |

Appeal Dis Atty Extension Letter

| | | | | | |
|---|---|---|---|---|---|
| 2/10/2016 12:30:18 PM | Claim Tasks | 34 | Appeal - 45 Day Reminder | Requested | RDHASTI |

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:38 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/15/2016 | Claim Tasks | 34 | Appeal - 45 Day Reminder | Completed | RDHASTI |

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:38 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/15/2016 | Telephone (OUT) | 38 | LAW OFFICES OF RICK VASQUEZ | Completed | CXGEARY |

Did not realize during prior phone call to clmt they she was represented and she didn't notify me she was. Called atty's office to advise of 45 day extension and apologize for reaching out to clmt. Spoke with para legal and explained. - CXGEARY - Mar 15, 2016 02:53:18 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/15/2016 | Telephone (OUT) | 37 | JAMIE FLANAGAN | Completed | CXGEARY |

Called clmt. Advised we are approaching the 45th day and file is still under review. Med report is back, but now we are having a vocational review done. Advised we will need to take our 45 day extension and gave explanation of what that entails. Sending 45 day letter. - CXGEARY - Mar 15, 2016 02:47:39 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2016 7:20:22 AM | Documents/Mail | 79 | Medical Records | Received | RDHASTI |

2016-03-10-15.25.09.204920O01
Peer review - CXGEARY - Mar 14, 2016 03:48:27 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/14/2016 | Documents/Mail | 79 | Medical Records | Completed | RDHASTI |

2016-03-10-15.25.09.204920O01
Peer review - CXGEARY - Mar 14, 2016 03:48:27 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2016 7:20:21 AM | Documents/Mail | 78 | Email | Received | RDHASTI |

2016-03-10-15.25.09.169920O01
Med review with peer review. - CXGEARY - Mar 14, 2016 03:48:02 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/14/2016 | Documents/Mail | 78 | Email | Completed | RDHASTI |

2016-03-10-15.25.09.169920O01
Med review with peer review. - CXGEARY - Mar 14, 2016 03:48:02 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/7/2016 8:33:51 AM | Documents/Mail | 77 | Incoming Correspondence | Received | RDHASTI |

2016-03-04-11.53.55.318900O01
3-10-16 Recvd 2/29/16 atty letter adv 1) Dr. Hopewell's letter that I adv was not recvd, was included with the atty's 2/3/16 appeal request letter, and also faxed on 2/10/16; 2) aty adv he still has not recvd the requested file copy. Rdhasti - RDHASTI - Mar 10, 2016 12:36:33 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/10/2016 | Documents/Mail | 77 | Incoming Correspondence | Completed | RDHASTI |

2016-03-04-11.53.55.318900O01
3-10-16 Recvd 2/29/16 atty letter adv 1) Dr. Hopewell's letter that I adv was not recvd, was included with the atty's 2/3/16 appeal request letter, and also faxed on 2/10/16; 2) aty adv he still has not recvd the requested file copy. Rdhasti - RDHASTI - Mar 10, 2016 12:36:33 pm

| | | | | | |
|---|---|---|---|---|---|
| 3/10/2016 | Telephone (OUT) | 36 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

3-10-16 Called atty office to ask if file copy recvd, and to adv Dr. Hopewell's letter was recvd. Spoke to Katrina who adv file copy recvd. I adv file out for peer and I would call once decision was ready. Rdhasti - RDHASTI - Mar 10, 2016 12:41:26 pm

| | | | | | |
|---|---|---|---|---|---|
| 2/25/2016 | Documents/Mail | 76 | Atty Ltr with Copy of Claim File | Completed | SEGDA4 |

Atty Ltr with Copy of Claim File

| | | | | | |
|---|---|---|---|---|---|
| 2/10/2016 11:27:28 AM | Claim Tasks | 32 | Paper File | Requested | SEGDA4 |

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

Include LTD 1130226196 - RDHASTI - Feb 10, 2016 11:27:58 am

File copy goes to an attorney. - RDHASTI - Feb 10, 2016 11:33:07 am

LIN0043

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Copy has been prepared, it is in the CSS folder as:

J FLANAGAN 1130226196 2-19-16

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.

- SARCH6 - Feb 19, 2016 09:18:49 am

2-19-16 OK to send. Rdhasti - RDHASTI - Feb 19, 2016 03:52:15 pm

Created letter, combined letter with PDF and created CD, printed and enclosed instructions, and mailed CD. - SEGDA4 - Feb 25, 2016 10:22:20 am

| 2/25/2016 | Claim Tasks | 32 | Paper File | Completed | SEGDA4 |
|---|---|---|---|---|---|

Please prepare a full file copy. As a reminder, the file copy should include all documents within the administrative claim file to include the contract, all AWD/Paper documents, activity lists, phone notes, etc.

Include LTD 1130226196 - RDHASTI - Feb 10, 2016 11:27:58 am

File copy goes to an attorney. - RDHASTI - Feb 10, 2016 11:33:07 am

Copy has been prepared, it is in the CSS folder as:

J FLANAGAN 1130226196 2-19-16

Please review, advise if any pages need to be removed and flip the task back to my initials. I will burn the copy to a disk and mail to the attorney.

- SARCH6 - Feb 19, 2016 09:18:49 am

2-19-16 OK to send. Rdhasti - RDHASTI - Feb 19, 2016 03:52:15 pm

Created letter, combined letter with PDF and created CD, printed and enclosed instructions, and mailed CD. - SEGDA4 - Feb 25, 2016 10:22:20 am

| 2/24/2016 | Documents/Mail | 75 | Atty Ltr with Copy of Claim File | Completed | SEGDA4 |
|---|---|---|---|---|---|
| | Atty Ltr with Copy of Claim File | | | | |
| 2/19/2016 4:12:53 PM | Referrals | | 20413:Ongoing Claim Review | Initial | MA-MGR |

Date: 2/19/2016
Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: 11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease

8/21/2017

LIN0044

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 44 of 200

New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?  Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
"Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service:  12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14
is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company
regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post
laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the
diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar
spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical
information in the file, along with the previous peer review results would not provide restrictions from any
sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review. - RDHASTI - Feb 19, 2016 04:13:11 pm
Clinical Consultation Response:

Claimant;  Jamie Flanagan
Claim #:  1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post
laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the
diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar
spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical
information in the file, along with the previous peer review results would not provide restrictions from any
sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and
impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 06:24:30 am

LIN0045

# Chronological Activity List

Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:45:28 pm

| 2/23/2016 | Referrals | 20413:Ongoing Claim Review | | Completed | MA-MGR |

Date: 2/19/2016
Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Claim Demographics
Age:35
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: 11/24/2015
Monthly Net Benefit: $1,069.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Medium
Primary Diagnoses: Chronic low back pain
Secondary/CoMorbid Diagnosis: lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease
New diagnoses identified upon appeal (if any): None
Physician Disagreement: Yes
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? Free ERISA
If LTD Appeal - Life Waiver Claim status: Closed
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
*Denial during/at Any Occ
Change of Definition date: 11/24/2015
Occupations provided by TSA being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty:Dr. Donald Hopewell (neurology) (417) 659-6873
Last Date of Service: 12/9/2015
Restrictions and Limitations/Duration: 4/21/15: Never lift/carry any weight; sit for only 20 minute duration

INITIAL CLAIM DECISION
Reason for original claim determination: NTDAO
Review type at claim decision: Review of 6/9/14 PM&R peer

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) Dr. Hopewell prohibits all work on 11/17/13; 2) FCE on 4/24/14 is for less than sedentary work; 3) Dr. Hopewell opinion on 4/21/15 is for less than sedentary work

New Information Submitted with appeal: Recvd 10/15/15 lumbar spine MRI and CT results.
Recvd 12/9/15 Dr. Donald Hopewell (neuro) OV note.
Recvd 12/9/15 Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability.

Jamie Flanagan is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation: Neurology or Physiatry peer review . - RDHASTI - Feb 19, 2016 04:13:11 pm
Clinical Consultation Response:

LIN0046
Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 46 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Claimant; Jamie Flanagan
Claim #: 1130226196

Impression/Rationale:

Claimant is a 35 year old female Nurse Practitioner (light) who stopped working 8/25/2013 due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The most recent medical information includes the diagnoses of chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. At the claim level, the claims examiner determined that the medical information in the file, along with the previous peer review results would not provide restrictions from any sedentary occupation. Benefits were paid to 11/24/2015 change of definition, and the claim was closed.

Recommendation:

Consideration of Occ Med peer review to address the severity of impairment for the noted condition/s, R&L's and impact on occupational functioning.

BGall APRN-NP
Medical Appeals Manager - BKGALL - Feb 23, 2016 06:24:30 am
Appeal direction completed. Consensus is Occ Med peer. BKGALL, CADALY, RDHASTI - BKGALL - Feb 23, 2016 01:45:28 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/16/2016 5:18:18 PM | Documents/Mail | 74 | Medical Records | Received | RDHASTI |

2016-02-10-12.45.27.156260O01
2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/19/2016 | Documents/Mail | 74 | Medical Records | Completed | RDHASTI |

2016-02-10-12.45.27.156260O01
2-19-16 Recvd Dr. Hopewell letter adv he had no recollection of any conversation with insurance company regarding any aspect of the claimant's care, including disability. Rdhasti - RDHASTI - Feb 19, 2016 03:48:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/11/2016 8:14:35 AM | Documents/Mail | 73 | Incoming Correspondence | Received | RDHASTI |

2016-02-10-12.45.11.793200O01
2-16-16 Recvd 12/9/15 Dr. Donald Hopewell (neuro) letter adv he has no recollection of any conversation with the clmnt's insurance company regarding any aspect of clmnt's care including disability. Rdhasti - RDHASTI - Feb 16, 2016 09:56:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/16/2016 | Documents/Mail | 73 | Incoming Correspondence | Completed | RDHASTI |

2016-02-10-12.45.11.793200O01
2-16-16 Recvd 12/9/15 Dr. Donald Hopewell (neuro) letter adv he has no recollection of any conversation with the clmnt's insurance company regarding any aspect of clmnt's care including disability. Rdhasti - RDHASTI - Feb 16, 2016 09:56:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/10/2016 | Documents/Mail | 72 | Appeal Dis Atty Ackappeal | Completed | RDHASTI |

Appeal Dis Atty Ackappeal

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/10/2016 | Claim Tasks | 33 | Open Review | Completed | RDHASTI |

45th day is 3/19/2016 - RDHASTI - Feb 10, 2016 12:30:15 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/9/2016 8:04:12 PM | Claim Tasks | 30 | Appeal - 4 day notice | Requested | RDHASTI |
| 2/10/2016 | Claim Tasks | 30 | Appeal - 4 day notice | Completed | RDHASTI |
| 2/10/2016 | Telephone (IN) | 35 | LAW OFFICES OF RICK VASQUEZ | Completed | RDHASTI |

2-10-16 Recvd call from Katrina in ATTY office confirming we did not receive Dr. Hopwerll letter advising that Dr. Hopewell had no recollection of speaking to the peer reviewer. I confirmed letter not recvd with appeal request. I provided appeals fax number. Katrina adv once letter recvd, OK to begin review. Rdhasti - RDHASTI - Feb 10, 2016 11:40:33 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/4/2016 8:41:44 AM | Claim Tasks | 29 | Appeal - Review Any OCC | Requested | MXMACHI |
| 2/5/2016 | Claim Tasks | 29 | Appeal - Review Any OCC | Completed | MXMACHI |
| 10/6/2015 | Documents/Mail | 71 | Decision Letter | Completed | MXMACHI |

2015-10-01-17.26.54.189580O01

**LIN0047**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 47 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 10/6/2015 | Documents/Mail<br>2015-10-01-17.26.54.157580O01 | 70 | Email | Completed | MXMACHI |
| 9/28/2015 3:11:21 PM | Documents/Mail | 69 | Denial Any Occupation | Work In Progress | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 02-OCT-15
Denial Any Occupation

emaield manually - MXMACHI - Oct 01, 2015 04:25:57 pm

| 10/1/2015 | Documents/Mail | 69 | Denial Any Occupation | Completed | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 02-OCT-15
Denial Any Occupation

emaield manually - MXMACHI - Oct 01, 2015 04:25:57 pm

| 10/1/2015 | Claim Tasks | 28 | Unable to process correspondence | Completed | MXMACHI |

No e-mail address found for manifest seqence number 69. Please populate the e-mail address.
emailed manually - MXMACHI - Oct 01, 2015 04:25:14 pm

| 10/1/2015 | Telephone (OUT) | 34 | JAMIE FLANAGAN | Completed | MXMACHI |

10/1/15
EE emailed in about last payment, called and adv of denial and that appeal process is in letter.
- MXMACHI - Oct 01, 2015 11:22:12 am

| 9/28/2015 3:43:29 PM | Referrals | | 20413!Management Review | Initial | MXMACHI |

9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- Management Review - MXMACHI - Sep 28, 2015 03:43:44 pm

Agree with determination to deny benefits beyond the COD. Based on the information contained in Ms. Flanagan's file she would have a sed capacity. TSA completed and gainful found. - Management Review - JLDOWSE - Sep 28, 2015 04:23:19 pm

| 9/29/2015 | Referrals | | 20413!Management Review | Completed | MXMACHI |

9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states

LIN0048

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 48 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- Management Review - MXMACHI - Sep 28, 2015 03:43:44 pm

Agree with determination to deny benefits beyond the COD. Based on the information contained in Ms. Flanagan's file she would have a sed capacity. TSA completed and gainful found. - Management Review - JLDOWSE - Sep 28, 2015 04:23:19 pm

| 6/8/2015 2:32:39 PM | Summary/Assessment/P2h | | open sap - MXMACHI - Jun 08, 2015 02:33:08 pm | Requested | MXMACHI |

Summary Notes
open sap - MXMACHI - Jun 08, 2015 02:33:08 pm
Assessment Notes
see path - MXMACHI - Jun 08, 2015 02:33:08 pm
Path Notes

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*ATTORNEY REPRESENTATION - 2/18/2013\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735

5/20/15
Response from Beth knox fnp stating no recs received

5/18/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time.

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension

4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)

4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>

4/6/15

8/21/2017

44

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 49 of 200

LIN0049

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
 - B1SMITH - Apr 06, 2015 05:16:14 pm

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm

3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months.

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm

EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  - TMELDER - Nov 24, 2014 06:49:00 am

Per peer review , ee had r & ls that would prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am

fu w/ee, if appears unable to rtoo,  check voc, poss stlmnt. - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review will refer to STL/PTD or deny claim. - AS0DE7 - Mar 02, 2015 04:10:11 pm

LIN0050

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension. tme

6/20/14 Releasing initial benefit. J2D

6/20/14-recd email w/salary info, ee makes $43.29 for 80 hrs biweekly, $43.29 x 2080 = $90,004.32 / 12 = $7,503.60. will release benefits.tme

6/20/14-to er for salary info. tm e

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme

6/17/14-phone call to attorney
left mess, getting ready to release benefits, do w e pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement. left direct number. tme
6/17/14 to er to verfiy if ee receiving pension. tm e

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. Per peer review , ee had r & ls that would prevent her from performing her OO. PATH: reqst voc survery and review to determine if ee would have ability to work sed w/r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling. J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City. Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) w ho stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review , the claimant would have restrictions and limitations precluding full time work in her own light occupation. . Therefore, I am overturning own occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review . R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review . R2H

5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for

Physiatry peer review . R2H

5-21-14 Schedued 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI aw ard letter.
Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w /my contact info. R2H

5/13/14  Assigned 1st level appeal to R2H.  c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
  SSS receipt of NOA dated 4/14/14 from EE
date of entitlement =   2/1/14
amount of the aw ard =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro aw ard = $3433.50
claimant has not enrolled in CORS,
Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit..     BXM

4/28/14 recvd mail from Atty - EE has been aw arded SSD.  Set flup to SSA to review aw ard details.  SSD starts 02/2014 in amt of $2289.00. There w ill be no ovp on the claim. LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE w ith respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I w ill send him a copy of the file.  LML

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She w ill appeal. LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree w ith determination to deny benefits. Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord

LIN0052

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 52 of 200

stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13 Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

Initial Claims Summary

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FNDNG: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

**LIN0053**

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FINANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML***************************************


11/19/13 Nurse Practicioner - Light Occ.   We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG
 - MXMACHI - Jun 08, 2015 02:33:08 pm
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:22:05 am
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
 - MXMACHI - Aug 27, 2015 03:29:34 pm
9/28/15
DENIAL RATIONALE:  Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours

**LIN0054**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 54 of 200

each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
 - MXMACHI - Sep 28, 2015 03:43:23 pm

| 9/29/2015 | Summary/Assessment/Pt2h | open sap - MXMACHI - Jun 08, 2015 02:33:08 pm | Completed | MXMACHI |

Summary Notes
open sap - MXMACHI - Jun 08, 2015 02:33:08 pm
Assessment Notes
see path - MXMACHI - Jun 08, 2015 02:33:08 pm
Path Notes


***********************ATTORNEY REPRESENTATION - 2/18/2013*******************
LAW OFFICES OF RICK S VASQUEZ-- CC attorney on rqsts to ee
ATTN RICK VASQUEZ
1736 EAST SUNSHINE
SUITE 103
SPRINGFIELD MO 65804
PHONE (417) 889-7735


5/20/15
Response from Beth knox fnp stating no recs received

5/18/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time.

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension


4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)

4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>


4/6/15

**LIN0055**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
 - B1SMITH - Apr 06, 2015 05:16:14 pm

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm

3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing , if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months.

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm

EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. - TMELDER - Nov 24, 2014 06:49:00 am

Per peer review , ee had r & ls that would prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am

fu w/ee, if appears unable to rtoo, check voc, poss stlmnt. - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review will refer to STL/PTD or deny claim. - AS0DE7 - Mar 02, 2015 04:10:11 pm

8/21/2017

LIN0056

7/14/14-phone call
per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tme

7/7/14 per email from er, ee not receiving her pension. tme

6/20/14 Releasing initial benefit. J2D

6/20/14-recd email w/salary info, ee makes $43.29 for 80 hrs biw eekly, $43.29 x 2080 = $90,004.32 / 12 = $7,503.60. w ill release benefits.tme

6/20/14-to er for salary info. tm e

6/18/14-phone call
Per call from attorneys ofc, ee is not receiving retirment, ssdi only, please make the payment to the attorneys ofc. tme
6/17/14-phone call to attorney
left mess, getting ready to release benefits, do w e pay him or Ms. Flanagan, does he know if she has been receiving any of her employer retirement. left direct number. tme
6/17/14 to er to verfiy if ee receiving pension. tm e

6/17/14-DIRECTION
EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. Per peer review , ee had r & ls that w ould prevent her from performing her OO. PATH: reqst voc survery and review to determine if ee w ould have ability to w ork sed w /r & ls that are permanent. poss voc stlmnt tme

6/17/14 Claim assigned to TME for further handling. J2D

6/17/14 CSL TRIAGE: Group is national account sold out of Kansas City. Appeal OT assigned to J2D. TCC

6/16/14 Appeal OVERTURNED: Peer Review R2H

6-16-14 1st level OVERTURN RATIONALE: Jamie Flanagan is a 34 year old female Nurse Practitioner (light) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity, and the file w as sent for a review with an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted." Based on all medical information received for review , the claimant w ould have restrictions and limitations precluding full time w ork in her ow n light occupation. . Therefore, I am overturning ow n occupation, and referring file to LTD for further management. ACTION ITEMS: 1) mailing letter to atty and ER, 2) called atty, 3) setting FLUPS. R2H

6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H

6/16/14 DRO - DECISION REVIEW - REVIEWED CLAIM AND AGREE WITH RECOMMENDATION TO OT

6-12-14 Scheduled Mgr review . R2H

6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H

5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review . R2H

5-22-14 Referred for file scan. Once completed, w ill place med review into VOC coordinator initials to send for

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 57 of 200

LIN0057

Physiatry peer review . R2H

5-21-14 Scheduled 5/21/14 appeal direction. R2H

5-16-14 Recvd OA: Nurse Practitioner (light). Will schedule appeal direction. R2H

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review , as long as w e recvd the med recs w /appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and w ill begin review . R2H

5/14/14 Pending Reason: Medical Records R2H

5-14-14 Pending Rationale:
- 1st level of Appeal
- Additional Information Appeal? Yes
- Summary of Initial Appeal Correspondence: Recvd 5/6/14 atty appeal letter.
Recvd 4/14/14 SSDI aw ard letter.
Recvd 4/22/14 FCE w ith Nancy (Dickey) Beissw enger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.
- Reason(s) for Appeal
Recvd 5/4/14 atty appeal letter adv 1) clmnt's w ork status based on her conditions is less than sedentary.
- Summary
Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) w ho stopped w orking 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim w as denied, and no benefits w ere paid. At 1st level appeal, additional information w as received, including a 4/22/2013 FCE indicating less than sedentary capacity.
- Pending Reason and Next Steps
Pending for medical records. ACTION: 1) Mailed letter to atty and ER; 2) called atty; 3) set 30, 45, 90 day flups; 4) referred for occ analysis. R2H

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w /my contact info. R2H

5/13/14 Assigned 1st level appeal to R2H. c1g

5/13/14 Level of Appeal: 1st Level Appeal NEW

4/28/14- SSDI AWARD
 SSS receipt of NOA dated 4/14/14 from EE
date of entitlement = 2/1/14
amount of the aw ard =2289.00
EST DEP AWARD = $ 1144.00
vendor/atty fees to credit=$1144.50
past due benefit/ retro aw ard = $3433.50
claimant has not enrolled in CORS,
Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit..     BXM

4/28/14 recvd mail from Atty - EE has been aw arded SSD. Set flup to SSA to review aw ard details. SSD starts 02/2014 in amt of $2289.00. There w ill be no ovp on the claim. LML

1/9/14 Recvd letter from Atty Rick Vasquez dated 1/2/14 - he is counsel for EE w ith respect to LTD claim. He is enclosing an auth and is requesting copies of all documents and records and any info relevant to claim. I w ill send him a copy of the file.  LML

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She w ill appeal. LML

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

12/4/13 Agree w ith determination to deny benefits. Clmt is a 3 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord

**LIN0058**

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 58 of 200

stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D

12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation in the file. Denial written today and sent for final review. LML

11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML

11/26/13 Medical review completed. KMF RN BSN

11/21/13 sent med referral and pend letters. LML

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

11/19/13 Will finish Eff Date investigation prior to sending Pend letters. Need to determine if a pre-ex investigation is required. Will be sending for a full med review based on info in file, therefore will send a PEND letter once I determine pre-ex. LML

11/19/13 ER initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

Initial Claims Summary

DATE: 11/19/13

RATIONALE/DIRECTION: Pending
REASON: Sending for a full med review for R/L's from a Light occ based on info in file

EXPECTED RETURN TO WORK DATE: N/A
COMMENTS: per APS no RTW to be expected

DIAGNOSIS: Failed fusion, post-laminectomy syndrome, spinal stenosis of lumbar
SUBJECTIVE FINDING: low back pain spread into Lower extremities

OBJECTIVE FINDING: normal exam findings, X-rays, CT Myelogram & MRI - spondylolisthasis with failed fusion and nerve root scarring
MEDICAL HISTORY: fusion 4/1/2011, SCS trial 10/2013

TX: pain medications, lumbar brace

DOCTOR: Dr. Donald Hopewell Neurology and Pain

MEMBER IS ELIGIBLE: Yes
COMMENTS: Self Billed, 100% ER Paid NATL ACCT

POLICY INFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

PRE-X INVESTIGATION: Plan has pre-ex & invest is needed
COMMENTS: Pol Eff 5/1/12. ER advises Eff with us 5/1/13 - need to confirm this on ER NITIAL CALL. Will also confirm Pension info.

CLAIM NFORMATION: Verified
COMMENTS: Reviewed DOCS, ARDIS, Policy, Claim Froms

FNANCIAL OFFSETS: Verified
COMMENTS: No offsets currently

INL: LML****************************************

11/19/13 Nurse Practicioner - Light Occ.   We have all claims forms - claim is now NITIAL. EE wants $100 taken out for FIT.

11/18/13 NATL ACCT - over $4000 Benefit. Assigned to LML. LML

11/18/13: CSL TRIAGE: Incomplete claim. Group is NA sold out of KC, assigning claim and mail to J2D team. CSL/APG
 - MXMACHI - Jun 08, 2015 02:33:08 pm
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
 - MXMACHI - Jul 02, 2015 09:22:05 am
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been  having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
 - MXMACHI - Aug 27, 2015 03:29:34 pm
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours

each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:23 pm

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/28/2015 3:11:21 PM | Documents/Mail<br>Denial Any Occupation | 68 | Denial Any Occupation | | Work In Progress | MXMACHI |
| 9/29/2015 | Documents/Mail<br>Denial Any Occupation | 68 | Denial Any Occupation | | Completed | MXMACHI |
| 9/28/2015 3:11:21 PM | Documents/Mail<br>Denial Any Occupation | 67 | Denial Any Occupation | | Work In Progress | MXMACHI |
| 9/29/2015 | Documents/Mail<br>Denial Any Occupation | 67 | Denial Any Occupation | | Completed | MXMACHI |
| 6/17/2014 11:35:56 AM | Claim Tasks<br>DOCSQL Investigation Type: Claim Update<br>Source: 6 mo<br>6 mo to term | 15 | Update Claim Information | | Requested | MXMACHI |
| 9/29/2015 | Claim Tasks<br>DOCSQL Investigation Type: Claim Update<br>Source: 6 mo<br>6 mo to term | 15 | Update Claim Information | | Completed | MXMACHI |
| 6/17/2014 11:36:59 AM | Claim Tasks<br>DOCSQL Investigation Type: Employer Contact | 17 | Call Employer | | Requested | MXMACHI |

Source: pension

7/7/14 per email from er, ee not receiving her pension. tme

verify pension

6/18/14-Per Attorneys ofc ee has not applied for pensions.

to er to verify if ee taking penson - TMELDER - Jan 07, 2015 09:45:03 am
emailed er - MXMACHI - Apr 28, 2015 08:28:59 am
looking it it as of 4/28/15 - MXMACHI - Apr 30, 2015 11:16:42 am
emailed again - MXMACHI - May 05, 2015 08:38:38 am

if no response call crystal Morehouse, at 417-269-6544 - MXMACHI - May 05, 2015 01:29:27 pm
5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
- MXMACHI - May 11, 2015 11:54:34 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time. - MXMACHI - May 18, 2015 10:28:56 am

| | | | | | | |
|---|---|---|---|---|---|---|
| 9/29/2015 | Claim Tasks<br>DOCSQL Investigation Type: Employer Contact | 17 | Call Employer | | Completed | MXMACHI |

Source: pension

7/7/14 per email from er, ee not receiving her pension. tme

**LIN0061**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

verify pension

6/18/14-Per Attorneys ofc ee has not applied for pensions.

to er to verify if ee taking penson - TMELDER - Jan 07, 2015 09:45:03 am
emailed er - MXMACHI - Apr 28, 2015 08:28:59 am
looking it it as of 4/28/15 - MXMACHI - Apr 30, 2015 11:16:42 am
emailed again - MXMACHI - May 05, 2015 08:38:38 am

if no response call crystal Morehouse, at 417-269-6544 - MXMACHI - May 05, 2015 01:29:27 pm
5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
 - MXMACHI - May 11, 2015 11:54:34 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any
withdrawal at this time. - MXMACHI - May 18, 2015 10:28:56 am

| 6/20/2014 12:27:12 PM | Claim Tasks | 18 | Call Claimant | Requested | MXMACHI |

DOCSQL Investigation Type: Claimant Contact

Source: ee

fu w/ee 3 mon
Any occ investigation in process. - MXMACHI - Mar 09, 2015 01:21:56 pm

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however
she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day.
She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to
be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she
could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can
wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn
then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to
get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms
absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at
903-822-3342 if needed
 - B1SMITH - Apr 06, 2015 05:16:14 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from
B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to
send rest of forms separate. I adv of my email and direct fax#>
 - MXMACHI - Apr 13, 2015 12:32:13 pm
ee emailed in ao forms on 4/17/15 - MXMACHI - Apr 17, 2015 04:02:29 pm

recs ordered - MXMACHI - May 18, 2015 04:10:39 pm
Sent for tsa - MXMACHI - Sep 17, 2015 02:28:56 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:22 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt
had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file
was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and
Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion
and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours
each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She
would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs
occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs,
kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be
never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to
work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states
Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR

LIN0062

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 62 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:58 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/29/2015 | Claim Tasks | 18 | Call Claimant | Completed | MXMACHI |

DOCSQL Investigation Type: Claimant Contact

Source: ee

fu w/ee 3 mon
Any occ investigation in process. - MXMACHI - Mar 09, 2015 01:21:56 pm

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
- B1SMITH - Apr 06, 2015 05:16:14 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:13 pm
ee emailed in ao forms on 4/17/15 - MXMACHI - Apr 17, 2015 04:02:29 pm


recs ordered - MXMACHI - May 18, 2015 04:10:39 pm
Sent for tsa - MXMACHI - Sep 17, 2015 02:28:56 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:22 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:43:58 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/27/2015 8:07:43 PM | Claim Tasks | 24 | Begin AO Investigation | Requested | MXMACHI |

Mailed Begin AO ltr, will f/u with EE in 30 days. COD 11/24/15. - AS0DE7 - Mar 02, 2015 04:06:01 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>

LIN0063

- MXMACHI - Apr 13, 2015 12:31:53 pm
ee emailed in forms 4/17/15 - MXMACHI - Apr 17, 2015 04:04:20 pm
4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)
- MXMACHI - Apr 21, 2015 09:32:28 am

recs ordered - MXMACHI - Jun 03, 2015 07:48:50 am

send to consult - MXMACHI - Aug 27, 2015 03:28:50 pm
in clinical review - MXMACHI - Aug 31, 2015 07:52:45 am
sent for tsa - MXMACHI - Sep 17, 2015 02:28:35 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:01 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerlinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:44:08 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/29/2015 | Claim Tasks | 24 | Begin AO Investigation | Completed | MXMACHI |

Mailed Begin AO ltr, will f/u with EE in 30 days. COD 11/24/15. - AS0DE7 - Mar 02, 2015 04:06:01 pm
4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:31:53 pm
ee emailed in forms 4/17/15 - MXMACHI - Apr 17, 2015 04:04:20 pm
4/21/15
ANY OCC forms received under awd 215-4-17. On ISS EE states she will never RTW says she has bilateral arm pain, spasms, severe fatigue and forgetfulness. Has nausea from meds. Severe back pain, back spasms, severe radiating bilateral back pain, bilateral leg weakness. TMP lists several drs, ordered recs from ones she is seeing currently (dr Hopewell, Knox, winkler,)
- MXMACHI - Apr 21, 2015 09:32:28 am

recs ordered - MXMACHI - Jun 03, 2015 07:48:50 am

send to consult - MXMACHI - Aug 27, 2015 03:28:50 pm
in clinical review - MXMACHI - Aug 31, 2015 07:52:45 am
sent for tsa - MXMACHI - Sep 17, 2015 02:28:35 pm
discuss with jldowse as only 2 jobs found on tsa - MXMACHI - Sep 25, 2015 07:46:01 am
9/28/15
DENIAL RATIONALE: Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt

LIN0064

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.During appeal the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Review also noted that R&LS on APS of inability to work without unlimited ability to rest and take breaks, were based off of what EE told him. Peerfinical review states Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. Sent letter to jldowse for review
- MXMACHI - Sep 28, 2015 03:44:08 pm

| 9/10/2015 1:01:24 PM | Documents/Mail | 66 | Denial Any Occupation | Work In Progress | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 29-SEP-15
Denial Any Occupation

| 9/28/2015 | Documents/Mail | 66 | Denial Any Occupation | Completed | MXMACHI |

Record was canceled. Completed to remove from case diary. Date: 29-SEP-15
Denial Any Occupation

| 9/17/2015 2:27:35 PM | Referrals | 20413!TSA | | Initial | MXMACHI |

Vocational Referral Template-TSA-TSR
Please indicate n/a when a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review ? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under awd 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Reviewer
Provide CE input and synopsis about nature of referral. Provide your specific questions:
Please perform TSA for sedentary
- MXMACHI - Sep 17, 2015 02:27:50 pm

E-mailed CE requested clarification regarding what medical information should be reviewed for TSA.
S. Nidositko, MS, CRC - STFNI3 - Sep 23, 2015 01:35:52 pm

Rec'd clarification from CE that VRC is to review Peer Review dated 6-9-14.
S. Nidositko

This VRC was requested to perform a TSA on this claimant to determine if there were transferable occupations based upon the individual's work history, skills, education, & restrictions & limitations. Occupations were identified that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.
Stacey Nidositko, MS, CRC
- STFNI3 - Sep 23, 2015 02:30:38 pm

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 65 of 200

LIN0065

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 9/25/2015 | Referrals | 20413 | TSA | Completed | MXMACHI |

Vocational Referral Template-TSA-TSR
Please indicate n/a w hen a section does not apply
Demographics
Claimant Name: Jamie Flannagan
Current Age: 35
Diagnosis: post laminectomy syndrome - lumbar spinal stenosis.
COD: 11/24/15
Benefit Amount: 4502.16
Gainful Amount: 5252.52
Medical Information
Most Current APS/Abilities Form/Health Care Provider Note/Medical Review (Identify the most current functional
capacity and R&Ls from the AP. Include type, date and location of document, e.g. APS in AWD dated 5/1/15):
Previous Medical Review ? (yes, date and location):
Own Occupation
Job Title from ER: nurse practioner
Previous OA completed? (if yes date and location): 2013/11/15 ltd
Job Description on file? (if yes date and location): 2013/11/15 ltd
Job Analysis on file? (if yes date and location): na
Work History and Educational Information:
EBF received under aw d 215-4-1n AWD dated 10/31/14):
Specific Question(s) for Review er
Provide CE input and synopsis about nature of referral.  Provide your specific questions:
Please perform TSA for sedentary
 - MXMACHI - Sep 17, 2015 02:27:50 pm

E-mailed CE requested clarification regarding w hat medical information should be review ed for TSA.
S. Nidositko, MS, CRC - STFNI3 - Sep 23, 2015 01:35:52 pm

Rec'd clarification from CE that VRC is to review  Peer Review  dated 6-9-14.
S. Nidositko

This VRC w as requested to perform a TSA on this claimant to determine if there w ere transferable occupations
based upon the individual's w ork history, skills, education, & restrictions & limitations. Occupations w ere identified
that meet all of the noted criteria. A complete TSA report has been uploaded into AWD.
Stacey Nidositko, MS, CRC
 - STFNI3 - Sep 23, 2015 02:30:38 pm

| 8/28/2015 1:15:14 PM | Referrals | 20413 | Change of Definition | Initial | MXMACHI |

Clincial Consultation - Review  Referral Template
Demographics
Claimant Name:  Jamie Flannagan
Occupation:  Nurse
Diagnosis:  Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35
Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopew ell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note

**LIN0066**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 66 of 200

4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):


    Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." Based on all medical information received for review , the claim"
- MXMACHI - Aug 28, 2015 08:08:39 am - TMHARTS - Aug 28, 2015 01:15:25 pm
Claimant Name:  Flannagan, Jamie
Claim Number:  1130226196

Documents Reviewed:  Reviewed neurology MD progress notes through 07/15/15 with diagnostic test results long with the previous peer review report from 06/09/14.

Conclusion: Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach.  See that report for details. This reviewer phone call to claimant also indicated claimant is able to perform own ADL's.

**LIN0067**

Rationale with supportive medical finding: See recent full medical review for specific history and information. This is a 35 year old female nurse (Med occ) with DOD of 08/26/13 with diagnosis of post laminectomy syndrome. Appears SSDI has been awarded and COD is 11/24/15.

Per the claimant's submitted ISS form, claimant reports she can drive up to 20 minutes, needs help in housework, and spouse needs to help her shave legs.

Submitted AF dated 04/21/5 from Neurology Pain Management MD DR Hopewell indicates claimant can sit frequently in 20 minute duration, can frequently finger, handle and reach above shoulder level. Cannot lift any weight. Can occasionally stand, walk, drive and operate foot controls. Never climb, bend or kneel.

Neurology MD notes dated 01/20/15 indicates claimant in for post laminectomy syndrome. Last flare was significantly improved with Dexamethasone. Doing reasonably well with taking pain medications. Has no new motor, sensory, or bowel or bladder complaints and denies medication side effects.

Neurologist follow up note dated 07/15/15 indicates claimant in for chronic LBP due to lumbar spondylosis, post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component.
  Claimant reports her pain has been marginally controlled. Has issues with dysphoria and cries a lot. Also reports having a hard time getting up in the morning. MD states exam remains normal.
  Assessment is claimant is clearly depressed that is likely related to her pain. To see the rheumatologist for her autoimmune disease. To follow up in 3 months.

Per the previous UDC peer review from 06/09/14, the peer reviewer indicated the records supported functional impairments that would preclude lifting > 20 lbs, can sit 6-8 hours per day with position changes, can stand and walk up to hours per day, and may climb stairs, kneel, stoop and may reach. See that report for details. Can frequently handle and finger.

Please see this reviewer phone note with DR Hopewell's office nurse.

Specific clinical recommendations for next steps and time frames for follow up: Referring to upper management for oversight review.

Return to work. No plans at this time.

Ted Hartsock, RN, BSN
Nurse Disability Consultant - TMHARTS - Sep 03, 2015 09:53:36 am
9/17/2015
Manager Oversight Review

Jamie Flanagan
1130226196

No peer review necessary at this time, due to no material difference in the medical information reviewed by the peer reviewer and currently submitted information.

Sending back to mxmachi for further handling.

Karen Greni, RN
Manager Clinical Operations - KXGRENI - Sep 17, 2015 10:50:50 am

| 9/17/2015 | Referrals | 20413:Change of Definition | | Completed | MXMACHI |

Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35

**LIN0068**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 68 of 200

Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):


  Clmt is a 35 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file was sent for a review with an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be

LIN0069

unrestricted." Based on all medical information received for review, the claim"
 - MXMACHI - Aug 28, 2015 08:08:39 am - TMHARTS - Aug 28, 2015 01:15:25 pm
Claimant Name: Flannagan, Jamie
Claim Number: 1130226196

Documents Reviewed: Reviewed neurology MD progress notes through 07/15/15 with diagnostic test results long with the previous peer review report from 06/09/14.

Conclusion: Based on review of the more recent neurology MD follow notes through 07/15/15 as well as phone call to DR Hopewell's office along with the previous UDC peer review report, does not appear to be evidence of physical exam changes or worsening symptoms that would change the previous UDC peer determination that claimant can lift up to 20 lbs, short periods of standing and walking, frequent fingering, handling, can occasionally kneel, stoop and reach. See that report for details. This reviewer phone call to claimant also indicated claimant is able to perform own ADL's.

Rationale with supportive medical finding: See recent full medical review for specific history and information. This is a 35 year old female nurse (Med occ) with DOD of 08/26/13 with diagnosis of post laminectomy syndrome. Appears SSDI has been awarded and COD is 11/24/15.

Per the claimant's submitted ISS form, claimant reports she can drive up to 20 minutes, needs help in housework, and spouse needs to help her shave legs.

Submitted AF dated 04/21/5 from Neurology Pain Management MD DR Hopewell indicates claimant can sit frequently in 20 minute duration, can frequently finger, handle and reach above shoulder level. Cannot lift any weight. Can occasionally stand, walk, drive and operate foot controls. Never climb, bend or kneel.

Neurology MD notes dated 01/20/15 indicates claimant in for post laminectomy syndrome. Last flare was significantly improved with Dexamethasone. Doing reasonably well with taking pain medications. Has no new motor, sensory, or bowel or bladder complaints and denies medication side effects.

Neurologist follow up note dated 07/15/15 indicates claimant in for chronic LBP due to lumbar spondylosis, post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component.
  Claimant reports her pain has been marginally controlled. Has issues with dysphoria and cries a lot. Also reports having a hard time getting up in the morning. MD states exam remains normal.
  Assessment is claimant is clearly depressed that is likely related to her pain. To see the rheumatologist for her autoimmune disease. To follow up in 3 months.

Per the previous UDC peer review from 06/09/14, the peer reviewer indicated the records supported functional impairments that would preclude lifting > 20 lbs, can sit 6-8 hours per day with position changes, can stand and walk up to hours per day, and may climb stairs, kneel, stoop and may reach. See that report for details. Can frequently handle and finger.

Please see this reviewer phone note with DR Hopewell's office nurse.

Specific clinical recommendations for next steps and time frames for follow up: Referring to upper management for oversight review.

Return to work. No plans at this time.

Ted Hartsock, RN, BSN
Nurse Disability Consultant - TMHARTS - Sep 03, 2015 09:53:36 am
9/17/2015
Manager Oversight Review

Jamie Flanagan
1130226196

No peer review necessary at this time, due to no material difference in the medical information reviewed by the peer reviewer and currently submitted information.

Sending back to mxmachi for further handling.

LIN0070

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 70 of 200

Karen Greni, RN
Manager Clinical Operations - KXGRENI - Sep 17, 2015 10:50:50 am

9/3/2015    Telephone (OUT)    33    JAMIE FLANAGAN    Completed    TMHARTS

Talked with claimant to get verification if she can perform own ADL's. Jamie stated she is able to do most own ADL's, can bath, shower and dress self, can do some cooking. Indicated she cannot sit long periods unless she changes positions often. Does not drive. Also gets sleep taking her pain meds and has poor sleep. Also said she has a appointment with her rheumatologist today. Thanked her for her time. Ted Hartsock, RN. - TMHARTS - Sep 03, 2015 09:50:28 am

9/2/2015    Telephone (OUT)    32    JAMIE FLANAGAN    Completed    TMHARTS

Dr Hopewell's office. Talked with RN Cherry to clarify if the claimant can lift any amount of weight <5 lbs or less). RN indicated her or MD would know what weight claimant can lift. Ted Hartsock, RN. - TMHARTS - Sep 02, 2015 02:00:52 pm

8/28/2015    Referrals    20413:Change of Definition    Completed    TMHARTS

Clincial Consultation - Review Referral Template
Demographics
Claimant Name: Jamie Flannagan
Occupation: Nurse
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DLW:8/25/13
DOD:08/26/2013
COD: 11/24/2015
Current Age: 35
Current Height:64
Current Weight:112
Dominant Side:right
Attorney Contact?na
MDA Recommendations for Recovery:
Pertinent CA Score:4
Date of last claimant Phone Call: 07/23/2015
Date of Last Clinical Review :06/09/2014
Current Providers
Name/Specialty/Last Visit Date
Hopewell neuro7/15/15
RTW Plan (explain if there is a plan and nature of the plan):
Never per iss
Most Current APS/Abilities Form/Dr's Note
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/15. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.

Surgery
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

Recent Medical Records Information (Date/Findings)
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving

LIN0071
Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 71 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain follow ing a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems w ith dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to w ork very w ell. having problems w ith heat intolerance. EE tearful during interview and exam. It is clear having significant depression w hich is increasing her pain issue.

Assessment / Recommendation /Specific Questions (Provide CE assessment of medical status and any additional claim insight /recommendations or updates for NDC):

Clmt is a 35 y/o female LPN dx w ith post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13.

per appeal "a 4/22/2013 FCE indicating less than sedentary capacity, and the file w as sent for a review w ith an independent physician review er Board Certified in Physical Medicine and Rehabilitation. The review stated in part: "on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations w ould include: The claimant may stand/w alk up to tw o hours each out of eight hours w ith normal breaks. The claimant may sit up to 6 out of 8 hours w ith normal breaks. She w ould require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach w ould not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and craw l w ould be never. Handling, fingering, and feeling w ould be unrestricted." Based on all medical information received for review , the claim"
- MXMACHI - Aug 28, 2015 08:08:39 am

| 8/26/2015 9:55:03 AM | Documents/Mail | 64 | Medical Records | Received | MXMACHI |

2015-08-25-12.21.27.516480:O:01

8/27/15

Med recs received from DR. Hopew ell under aw d 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain w hich significantly improved w ith short course of dexamethasone. Doing reasonably w ell w ith her pain overall although having more problems w ith cold w eather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the low er extremities particularly in the feet that occurs w hen she tries to sleep. Area of pain otherw ise is lumbar location and is w orse w ith prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP w hich cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it w as improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain follow ing a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems w ith dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to w ork very w ell. having problems w ith heat intolerance. EE tearful during interview and exam. It is clear having significant depression w hich is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:09 pm

| 8/27/2015 | Documents/Mail | 64 | Medical Records | Completed | MXMACHI |

2015-08-25-12.21.27.516480:O:01

8/27/15

Med recs received from DR. Hopew ell under aw d 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain w hich significantly improved w ith short course of dexamethasone. Doing reasonably w ell w ith her pain overall although having more problems w ith cold w eather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the low er extremities particularly in the feet that occurs w hen she tries to sleep. Area of pain otherw ise is lumbar location and is w orse w ith prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 72 of 200

LIN0072

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:09 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/26/2015 9:55:03 AM | Documents/Mail<br>2015-08-25-12.21.27.478480:O:01 | 65 | Email | Received | MXMACHI |
| 8/27/2015 | Documents/Mail<br>2015-08-25-12.21.27.478480:O:01 | 65 | Email | Completed | MXMACHI |
| 7/24/2015 10:35:56 AM | Medical<br>mednotice already sent | 7 | | Initial | MXMACHI |

please use spec au under awd 2015-7-22 - MXMACHI - Jul 24, 2015 10:36:55 am

I had to mail the request because the pdf file for the auth was too large and would not load up into GP Bridge.

- SH6MI5 - Jul 29, 2015 02:59:03 pm


TT Angie at DO, Waiting on payment, Processed by Healthport Id. No -174400652 - CHVNA7 - Aug 13, 2015 04:11:22 pm
invoice reiceved - MXMACHI - Aug 19, 2015 12:15:29 pm
8/27/15
Med recs received from DR. Hopewell under awd 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain which significantly improved with short course of dexamethasone. Doing reasonably well with her pain overall although having more problems with cold weather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep. Area of pain otherwise is lumbar location and is worse with prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months. DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP which cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it was improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain following a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems with dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to work very well. having problems with heat intolerance. EE tearful during interview and exam. It is clear having significant depression which is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:01 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 8/27/2015 | Medical<br>mednotice already sent | 7 | | Closed | MXMACHI |

please use spec au under awd 2015-7-22 - MXMACHI - Jul 24, 2015 10:36:55 am

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 73 of 200

LIN0073

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

I had to mail the request because the pdf file for the auth w as too large and w ould not load up into GP Bridge.

- SH6MI5 - Jul 29, 2015 02:59:03 pm

TT Angie at DO, Waiting on payment, Processed by Healthport Id. No -174400652 - CHVNA7 - Aug 13, 2015 04:11:22 pm
invoice reiceved - MXMACHI - Aug 19, 2015 12:15:29 pm
8/27/15
Med recs received from DR. Hopew ell under aw d 2015-8-25. DOS 1/20/15 Returns for follow up post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis. Last time she had flare of back pain w hich significantly improved w ith short course of dexamethasone. Doing reasonably w ell w ith her pain overall although having more problems w ith cold w eather. Biggest problem currently is sleeping at night due to pain. Talks about sysethetic pain in the low er extremities particularly in the feet that occurs w hen she tries to sleep. Area of pain otherw ise is lumbar location and is w orse w ith prolonged position or extended period of time on her feet. Has no new motor/sensory complaints. Neurologic exam remains normal. Has chronic LBP due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. DR feels that symptoms at night are neuropathic and discussed medications. Will try amitriptyline at night. return for follow up in 3 months.  DOS 4/16/15 Was tired all the time on amitriptyline. Had recent flare of LBP w hich cases dysestheias more prominently in the feet than in legs and this is all flared because of prolonged car rides and personal stress including recent loss of father .EE does need to stop amitriptyline but she felt it w as improving dysethtic quality of pain. Will continue narcotic regiment unchanged and return in 3 months. DOS 6/3/15 has a flare of pain follow ing a fall. Nothing to suggest new process but simply an aggravation of previous one. Will try desamethasone and lidoerm. Return in 3 months. DOS 7/15/15 feels pain is marginally controlled and is having problems sleeping because if she stays in one position too long her pain tends to flare. Has been having increasing problems w ith dysphoria and has been crying a great deal. Having problems moving around first thing in the morning, more due to being immensely fatigued in her legs and they just don't seem to w ork very w ell. having problems w ith heat intolerance. EE tearful during interview and exam. It is clear having significant depression w hich is increasing her pain issue.
- MXMACHI - Aug 27, 2015 03:29:01 pm

| 8/14/2015 10:21:46 AM | Documents/Mail | 62 | Pre-Payment Invoice | Received | ADYOUNG |

2015-08-13-14.17.52.839300:O:01
paid w / cc, Your HealthPort transaction ID for this payment is CC3324872. The credit card confirmation number for this transaction is 4400975683995000001338. - ADYOUNG - Aug 20, 2015 02:11:20 pm

| 8/20/2015 | Documents/Mail | 62 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-08-13-14.17.52.839300:O:01
paid w / cc, Your HealthPort transaction ID for this payment is CC3324872. The credit card confirmation number for this transaction is 4400975683995000001338. - ADYOUNG - Aug 20, 2015 02:11:20 pm

| 8/14/2015 | Documents/Mail | 63 | Email | Completed | MXMACHI |

From: Machian, Mike
Sent: Friday, August 14, 2015 3:08 PM
To: 'Jamie Flanagan'
Subject: RE: Release

We have not received them yet, but I expect to have them soon.

From: Jamie Flanagan [mailto:jamieandjason0306@gmail.com]
Sent: Friday, August 14, 2015 10:18 AM
To: Machian, Mike
Subject: Release

Mr . Machian,
Have you gotten my records from Dr. Hopew ell yet?
Thanks,
Jamie
- MXMACHI - Aug 14, 2015 03:08:33 pm

LIN0074

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 74 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/29/2015 | Documents/Mail<br>Med Rec Request | 61 | Med Rec Request | Completed | SH6MI5 |
| 7/23/2015 7:40:20 AM | Documents/Mail<br>2015-07-22-13.07.54.919360:O:01 | 60 | Email | Received | MXMACHI |
| 7/24/2015 | Documents/Mail<br>2015-07-22-13.07.54.919360:O:01 | 60 | Email | Completed | MXMACHI |
| 7/23/2015 7:40:20 AM | Documents/Mail<br>2015-07-22-13.07.54.961360:O:01 | 59 | Claim Form - Authorization | Received | MXMACHI |
| 7/24/2015 | Documents/Mail<br>2015-07-22-13.07.54.961360:O:01 | 59 | Claim Form - Authorization | Completed | MXMACHI |
| 5/26/2015 8:07:32 AM | Medical | 6 | | Initial | MXMACHI |

RESENT NEW REQUEST WITH DIFFERENT ADDRESS.
MEDNOTICE ALREADY SENT - MXMACHI - May 26, 2015 08:08:13 am

No answer at DO. Set f/up for 6/19. - MEZBR8 - Jun 18, 2015 04:50:06 pm

Cld provider, tt Lisa, per notes in clmt's file the MRR was sent via fax & they don't accept faxed reqs. Please remail.
***NOTE PLEASE PUT ATTN MEDICAL RECORDS ON THE MAILING*** - PAACO8 - Jun 19, 2015 03:07:24 pm

Cld provider, there are conflicting notes in their sys. 1. Shows a ltr sent bk stateing needing orginial ink signature from clmt. No date on when ltr was sent. 2. Shows that an inv needs to be sent for release of records. Angie entered these notes & is out of the ofc. for the wk. Once this status is clarified provider will c/b. - PAACO8 - Jun 22, 2015 10:47:04 am
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:41 am
45th day follow up - MXMACHI - Jul 16, 2015 07:08:03 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:25 am
spec auth received, sending new request cancelling this one - MXMACHI - Jul 24, 2015 10:37:14 am

| | | | | | |
|---|---|---|---|---|---|
| 7/24/2015 | Medical | 6 | | Closed | MXMACHI |

RESENT NEW REQUEST WITH DIFFERENT ADDRESS.
MEDNOTICE ALREADY SENT - MXMACHI - May 26, 2015 08:08:13 am

No answer at DO. Set f/up for 6/19. - MEZBR8 - Jun 18, 2015 04:50:06 pm

Cld provider, tt Lisa, per notes in clmt's file the MRR was sent via fax & they don't accept faxed reqs. Please remail.
***NOTE PLEASE PUT ATTN MEDICAL RECORDS ON THE MAILING*** - PAACO8 - Jun 19, 2015 03:07:24 pm

Cld provider, there are conflicting notes in their sys. 1. Shows a ltr sent bk stateing needing orginial ink signature from clmt. No date on when ltr was sent. 2. Shows that an inv needs to be sent for release of records. Angie entered these notes & is out of the ofc. for the wk. Once this status is clarified provider will c/b. - PAACO8 - Jun 22, 2015 10:47:04 am
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:41 am
45th day follow up - MXMACHI - Jul 16, 2015 07:08:03 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:25 am
spec auth received, sending new request cancelling this one - MXMACHI - Jul 24, 2015 10:37:14 am

| | | | | | |
|---|---|---|---|---|---|
| 7/16/2015 8:38:44 PM | Investigation | 4 | Determine Disability | Requested | MXMACHI |
| 7/24/2015 | Investigation | 4 | Determine Disability | Received | MXMACHI |
| 7/2/2015 8:47:22 PM | Investigation | 3 | Determine Disability | Requested | MXMACHI |

45th day on spec au is 8/18

LIN0075

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 75 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

call on spec au for dr hopewell - MXMACHI - Jul 16, 2015 07:08:27 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:31 am

| 7/24/2015 | Investigation | 3 | Determine Disability | Received | MXMACHI |

45th day on spec au is 8/18

call on spec au for dr hopewell - MXMACHI - Jul 16, 2015 07:08:27 am
7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:31 am

| 7/22/2015 | Telephone (OUT) | 31 | JAMIE FLANAGAN | Completed | MXMACHI |

7/22/15
EE called concerned she got 2nd request letter for au a couple days after first request. I adv that she has 30 days and to just send au. I adv can email.
- MXMACHI - Jul 22, 2015 11:23:05 am

| 7/16/2015 | Documents/Mail | 58 | 2nd Request Letter | Completed | MXMACHI |

2nd Request LetterAttachments:flanagan spec au.pdf

| 7/2/2015 | Documents/Mail | 57 | Special Authorization | Completed | MXMACHI |

Special AuthorizationAttachments:flanagan spec au.pdf

| 7/1/2015 1:55:25 PM | Documents/Mail | 56 | Email | Received | MXMACHI |

2015-07-01-10.27.21.814040:O:01

| 7/2/2015 | Documents/Mail | 56 | Email | Completed | MXMACHI |

2015-07-01-10.27.21.814040:O:01

| 7/1/2015 1:55:25 PM | Documents/Mail | 55 | Medical Records | Received | MXMACHI |

2015-07-01-10.27.21.853040:O:01
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:56 am

| 7/2/2015 | Documents/Mail | 55 | Medical Records | Completed | MXMACHI |

2015-07-01-10.27.21.853040:O:01
7/2/15
responses received from Dr HOPEWELL asks for special auth. Accidently marked request as received.
- MXMACHI - Jul 02, 2015 09:21:56 am

| 6/22/2015 5:15:33 PM | Documents/Mail | 54 | Pre-Payment Invoice | Received | ADYOUNG |

2015-06-22-12.58.15.455040:O:01
Received Healthport prepayment invoice #0171205265 for $28.14, paid with cc, Your HealthPort transaction ID for this payment is CC3225689. The credit card confirmation number for this transaction is 4353538903765000001353. - ADYOUNG - Jun 26, 2015 04:28:59 pm

| 6/26/2015 | Documents/Mail | 54 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-06-22-12.58.15.455040:O:01
Received Healthport prepayment invoice #0171205265 for $28.14, paid with cc, Your HealthPort transaction ID for this payment is CC3225689. The credit card confirmation number for this transaction is 4353538903765000001353. - ADYOUNG - Jun 26, 2015 04:28:59 pm

| 6/16/2015 | Telephone (OUT) | 30 | JAMIE FLANAGAN | Completed | MXMACHI |

6/16/15
EE called about status of any occ. I adv waiting on recs from dr Hopewell and request was Remailed may 28. She adv she would give them a call
- MXMACHI - Jun 16, 2015 10:07:15 am

| 11/24/2014 6:48:19 AM | Summary/Assessment/P:1h | | EE is a 33 y/o LPN, (light occ) ldw 8/25/13, dod 8/26/14 bcd 1 | Requested | MXMACHI |

Summary Notes

**LIN0076**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  - TMELDER - Nov 24, 2014 06:49:00 am
records show EE had flare in her symtpoms that required a change in treatment. EE still TDOO - MXMACHI - Mar 11, 2015 09:38:20 am
Assessment Notes
Per peer review , ee had r & ls that w ould prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am
Path Notes
fu w /ee, if appears unable to rtoo,  check voc, poss stlmnt. - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs  - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw  OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review w ill refer to STL/PTD or deny claim.  - AS0DE7 - Mar 02, 2015 04:10:11 pm
4/24/15
Abilities completed by dr Hopew ell received under aw d 2014-4-21. Form is signed 4/21/14. Says EE can't lift any w eight, can sit for 20 minute duration (although this is w ritten under 'frequently'), can stand, w alk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:36 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any w ithdraw al at this time.  - MXMACHI - May 18, 2015 10:29:19 am

| 6/8/2015 | Summary/Assessment/Path | | EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 1 | Completed | MXMACHI |

Summary Notes
EE is a 33 y/o LPN, (light occ)  ldw 8/25/13, dod 8/26/14 bcd 11/24/13, cod 11/24/15. DX: lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain.  - TMELDER - Nov 24, 2014 06:49:00 am
records show EE had flare in her symtpoms that required a change in treatment. EE still TDOO - MXMACHI - Mar 11, 2015 09:38:20 am
Assessment Notes
Per peer review , ee had r & ls that w ould prevent her from performing her OO. - TMELDER - Nov 24, 2014 06:49:00 am
Path Notes
fu w /ee, if appears unable to rtoo,  check voc, poss stlmnt.  - TMELDER - Nov 24, 2014 06:49:00 am

rqsting auth to rqst recs  - TMELDER - Jan 07, 2015 09:44:23 am

if ee unable to rtw  OO, poss stlmnt - TMELDER - Jan 26, 2015 11:11:55 am

Will start AO process. Depending on med rec and CT review w ill refer to STL/PTD or deny claim.  - AS0DE7 - Mar 02, 2015 04:10:11 pm
4/24/15
Abilities completed by dr Hopew ell received under aw d 2014-4-21. Form is signed 4/21/14. Says EE can't lift any w eight, can sit for 20 minute duration (although this is w ritten under 'frequently'), can stand, w alk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
 - MXMACHI - Apr 24, 2015 09:18:36 am
Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any w ithdraw al at this time.  - MXMACHI - May 18, 2015 10:29:19 am

| 5/28/2015 | Documents/Mail | 53 | Med Rec Request | Completed | MEGHA4 |

Med Rec RequestAttachments:J Flanagan AUTH.pdf

| 4/21/2015 9:21:37 AM | Medical | 3 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:45 am

processed on the 28th, w ill try to get it pushed through so w e can get it a little faster.  - JUXNA0 - May 12, 2015 10:56:23 am

called do and they gave me med rec dept number at 417-556-2175 & they informed me that they didnt recieve it please remail to;  100 mercy w ay, joplin mo, 64804. attention med rec.  - JUXNA0 - May 20, 2015 11:37:24 am

**LIN0077**

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 77 of 200

# Chronological Activity List

Per procedure, close out old request and create new referral with new address as stated in youir notes. Thanks! - DAJIMER - May 22, 2015 04:36:12 pm

| 5/27/2015 | Medical | 3 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:45 am

processed on the 28th, will try to get it pushed through so we can get it a little faster. - JUXNA0 - May 12, 2015 10:56:23 am

called do and they gave me med rec dept number at 417-556-2175 & they informed me that they didnt recieve it please remail to; 100 mercy way, joplin mo, 64804. attention med rec. - JUXNA0 - May 20, 2015 11:37:24 am

Per procedure, close out old request and create new referral with new address as stated in youir notes. Thanks! - DAJIMER - May 22, 2015 04:36:12 pm

| 5/20/2015 1:19:16 PM | Documents/Mail | 52 | Medical Records | Received | MXMACHI |
| | 2015-05-19-18.00.20.954420:O:01 | | | | |
| 5/22/2015 | Documents/Mail | 52 | Medical Records | Completed | MXMACHI |
| | 2015-05-19-18.00.20.954420:O:01 | | | | |
| 4/21/2015 9:29:31 AM | Medical | 5 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:09 am

unable to contain an connection. - JUXNA0 - May 12, 2015 10:24:10 am
DOB ▮▮▮▮ MXMACHI - May 14, 2015 10:56:08 am

COX MEDICAL CENTER BRANSON ROI (IN-HOUSE HPORT): 417-348-8600
Brittney adv. reqst recvd & in-house Hport processed reqst on 4/23, refrd to Hport in ATL.
Pierre w/ Hport adv. 1 page copied on 4/23 w/ $26.49 charge. (NV: 167859776). He adv. no records found for DOS. Asked him to fax letter RE: no records ATTN: MXMACHI. He faxed letter today & adv. we need to pay invoice for search fee. Set f/up for 5/20 for CE to review & contact ADYOUNG RE: invoice paymt.

** CE - ADYOUNG adv. in invoice notes from 5/15 that she would email Hport to cancel this invoice. Please put reqst in closed status. - MEZBR8 - May 19, 2015 05:05:16 pm
5/20/15
Response from Beth knox fnp stating no recs received with invoice $26.49. it appears phone call earlier on request for recs from cox medical center was refernecing that request and not the request from the cox medical center. will have another call made to check status
- MXMACHI - May 20, 2015 10:25:17 am

HPORT "NO RECDS FOR DOS" LTR N - MOVE TO CLOSED
This rejection ltr RE: this reqst was recvd on 5/19 as I requested from Hport on 5/19. Set f/up for 5/26 for CE to put reqst in closed status. - MEZBR8 - May 22, 2015 11:03:14 am

| 5/22/2015 | Medical | 5 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:26:09 am

unable to contain an connection. - JUXNA0 - May 12, 2015 10:24:10 am
DOB ▮▮▮▮ - MXMACHI - May 14, 2015 10:56:08 am

COX MEDICAL CENTER BRANSON ROI (IN-HOUSE HPORT): 417-348-8600
Brittney adv. reqst recvd & in-house Hport processed reqst on 4/23, refrd to Hport in ATL.
Pierre w/ Hport adv. 1 page copied on 4/23 w/ $26.49 charge. (NV: 167859776). He adv. no records found for DOS. Asked him to fax letter RE: no records ATTN: MXMACHI. He faxed letter today & adv. we need to pay invoice for search fee. Set f/up for 5/20 for CE to review & contact ADYOUNG RE: invoice paymt.

** CE - ADYOUNG adv. in invoice notes from 5/15 that she would email Hport to cancel this invoice. Please put reqst

**LIN0078**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 78 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

in closed status. - MEZBR8 - May 19, 2015 05:05:16 pm
5/20/15
Response from Beth knox fnp stating no recs received with invoice $26.49. it appears phone call earlier on request for recs from cox medical center was refernecing that request and not the request from the cox medical center. will have another call made to check status
- MXMACHI - May 20, 2015 10:25:17 am

HPORT "NO RECDS FOR DOS" LTR N - MOVE TO CLOSED
This rejection ltr RE: this reqst was recvd on 5/19 as I requested from Hport on 5/19. Set f/up for 5/26 for CE to put reqst in closed status. - MEZBR8 - May 22, 2015 11:03:14 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/21/2015 9:24:41 AM | Medical | 4 | | Initial | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:27:23 am

records are still in process - JUXNA0 - May 12, 2015 11:21:58 am

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:04 am
5/20/15
Response from Beth knox fnp stating no recs received
- MXMACHI - May 20, 2015 10:24:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/20/2015 | Medical | 4 | | Closed | MXMACHI |

mednotice sent - MXMACHI - Apr 23, 2015 07:27:23 am

records are still in process - JUXNA0 - May 12, 2015 11:21:58 am

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:04 am
5/20/15
Response from Beth knox fnp stating no recs received
- MXMACHI - May 20, 2015 10:24:04 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/18/2015 | Telephone (OUT) | 29 | LESTER E COX MEDICAL CENTER | Completed | MXMACHI |

Per heather lasky/ER called crystal morehouse at 417-269-6544 about pension and per crystal she Hasn't taken any withdrawal at this time. - MXMACHI - May 18, 2015 10:29:12 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/12/2015 12:49:46 PM | Documents/Mail | 51 | Pre-Payment Invoice | Received | ADYOUNG |

2015-05-11-18.08.03.309340:O:01

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:21 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/15/2015 | Documents/Mail | 51 | Pre-Payment Invoice | Completed | ADYOUNG |

2015-05-11-18.08.03.309340:O:01

received healthport prepayment invoice #0167859776 for $26.49 attached was a note on the bottom of our request stating " NO OV FOR DATE RANGE FOR CLINIC." emailing hp to cancel out this invoice - ADYOUNG - May 15, 2015 10:50:21 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/11/2015 | Telephone (OUT) | 28 | LESTER E COX MEDICAL CENTER | Completed | MXMACHI |

5/11/15
Per heather lasky/ER called crystal morehouse at 417-269-6544 and left vm about pension
- MXMACHI - May 11, 2015 11:54:23 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/5/2015 | Documents/Mail | 50 | Email | Completed | MXMACHI |

From: Lasky,Heather [mailto:Heather.Lasky@coxhealth.com]
Sent: Tuesday, May 05, 2015 8:45 AM
To: Machian, Mike

LIN0079

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 79 of 200

Subject: RE: Jamie Flanagan 1130226196

I don't do anything with the Pension here at Cox Health, and I think I overheard that Crystal is out of the office today. You may try to call her tomorrow at 417-269-6544. Thanks!

Heather Lasky
, Human Resources
Phone: (417) 269-6537 | Fax: (417) 269-6518
Heather.Lasky@coxhealth.com

coxhealth.com

From: Machian, Mike [mailto:Mike.Machian@lfg.com]
Sent: Tuesday, May 05, 2015 8:38 AM
To: Lasky,Heather; Morehouse,Crystal
Subject: RE: Jamie Flanagan 1130226196

Were you able to find anything out on this?

Thank you.

From: Lasky,Heather [mailto:Heather.Lasky@coxhealth.com]
Sent: Tuesday, April 28, 2015 8:31 AM
To: Machian, Mike; Morehouse,Crystal
Subject: RE: Jamie Flanagan 1130226196

Crystal,

Would you be able to help Mike out with his question below? Thanks!

Heather Lasky
, Human Resources
Phone: (417) 269-6537 | Fax: (417) 269-6518
Heather.Lasky@coxhealth.com

coxhealth.com

From: Machian, Mike [mailto:Mike.Machian@lfg.com]
Sent: Tuesday, April 28, 2015 8:29 AM
To: HR - Benefits
Subject: FW: Jamie Flanagan 1130226196

To whom it may concern, I am with the long term disability carrier for Ms. Flanagan and I was inquiring if she had taken out her retirement/pension yet?

Thank you

From: Burlison,Courtney [mailto:Courtney.Burlison@coxhealth.com]
Sent: Tuesday, April 28, 2015 8:27 AM
To: Machian, Mike
Subject: Automatic reply: Jamie Flanagan 1130226196

8/21/2017

**LIN0080**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 80 of 200

Thank you for your email!

My last day with CoxHealth will be next Friday, November 14th. For questions, please contact the following for assistance:

FMLA - Alicia.Hathaway@coxhealth.com
Benefits - HR-Benefits@coxhealth.com
Employee Store - 1906@coxhealth.com

Thanks and have a great day!

Courtney


Courtney Burlison
Benefits Coordinator, Human Resources
Phone: (417) 269-6656 | Fax: (417) 269-6518
Courtney.Burlison@coxhealth.com

coxhealth.com


CoxHealth - ranked one of Missouri's Best Hospitals by U.S. News & World Report
COXHEALTH CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information protected by law. ?Any unauthorized review, use, disclosure or distribution is prohibited. ?If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message.
Notice of Confidentiality: **This E-mail and any of its attachments may contain
Lincoln National Corporation proprietary information, which is privileged, confidential,
or subject to copyright belonging to the Lincoln National Corporation family of
companies. This E-mail is intended solely for the use of the individual or entity to
which it is addressed. If you are not the intended recipient of this E-mail, you are
hereby notified that any dissemination, distribution, copying, or action taken in
relation to the contents of and attachments to this E-mail is strictly prohibited
and may be unlawful. If you have received this E-mail in error, please notify the
sender immediately and permanently delete the original and any copy of this E-mail
and any printout. Thank You.**
Notice of Confidentiality: **This E-mail and any of its attachments may contain
Lincoln National Corporation proprietary information, which is privileged, confidential,
or subject to copyright belonging to the Lincoln National Corporation family of
companies. This E-mail is intended solely for the use of the individual or entity to
which it is addressed. If you are not the intended recipient of this E-mail, you are
hereby notified that any dissemination, distribution, copying, or action taken in
relation to the contents of and attachments to this E-mail is strictly prohibited
and may be unlawful. If you have received this E-mail in error, please notify the
sender immediately and permanently delete the original and any copy of this E-mail
and any printout. Thank You.**
- MXMACHI - May 05, 2015 01:28:01 pm

| 4/22/2015 11:02:50 AM | Documents/Mail | 45 | Medical Records | | Received | MXMACHI |

2015-04-21-17.15.37.100040:O:01
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
- MXMACHI - Apr 24, 2015 09:18:27 am

| 4/24/2015 | Documents/Mail | 45 | Medical Records | | Completed | MXMACHI |

2015-04-21-17.15.37.100040:O:01
4/24/15
Abilities completed by dr Hopewell received under awd 2014-4-21. Form is signed 4/21/14. Says EE can't lift any

**Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 81 of 200**

**LIN0081**

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

weight, can sit for 20 minute duration (although this is written under 'frequently'), can stand, walk, drive and operate foot controls occasionally. Can finger, handle and reach above shoulder frequently.
- MXMACHI - Apr 24, 2015 09:18:27 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/23/2015 | Documents/Mail | 49 | Med Rec Request Follow Up | Completed | MXMACHI |
| | Med Rec Request Follow Up | | | | |
| 4/22/2015 | Documents/Mail | 47 | Med Rec Request | Completed | DAJMER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/22/2015 | Documents/Mail | 48 | Med Rec Request | Completed | DAJMER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/22/2015 | Documents/Mail | 46 | Med Rec Request | Completed | DAJMER |
| | Med Rec RequestAttachments:J FLANAGAN.pdf | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 43 | Incoming Correspondence | Received | MXMACHI |
| | 2015-04-20-08.59.53.620080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 43 | Incoming Correspondence | Completed | MXMACHI |
| | 2015-04-20-08.59.53.620080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 41 | Voc Rehab Forms | Received | MXMACHI |
| | 2015-04-20-09.00.12.268080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 41 | Voc Rehab Forms | Completed | MXMACHI |
| | 2015-04-20-09.00.12.268080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 39 | Medical Records | Received | MXMACHI |
| | 2015-04-20-09.00.05.746080:O:01 2ND PAGE OF TMP - MXMACHI - Apr 21, 2015 09:31:44 am | | | | |
| 4/21/2015 | Documents/Mail | 39 | Medical Records | Completed | MXMACHI |
| | 2015-04-20-09.00.05.746080:O:01 2ND PAGE OF TMP - MXMACHI - Apr 21, 2015 09:31:44 am | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 44 | Email | Received | MXMACHI |
| | 2015-04-17-13.33.43.248960:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 44 | Email | Completed | MXMACHI |
| | 2015-04-17-13.33.43.248960:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 42 | Claim Form - Authorization | Received | MXMACHI |
| | 2015-04-20-08.59.27.796080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 42 | Claim Form - Authorization | Completed | MXMACHI |
| | 2015-04-20-08.59.27.796080:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 40 | Email | Received | MXMACHI |
| | 2015-04-17-13.33.43.210960:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 40 | Email | Completed | MXMACHI |
| | 2015-04-17-13.33.43.210960:O:01 | | | | |
| 4/20/2015 8:00:44 AM | Documents/Mail | 38 | Incoming Correspondence | Received | MXMACHI |
| | 2015-04-20-08.59.43.507080:O:01 | | | | |
| 4/21/2015 | Documents/Mail | 38 | Incoming Correspondence | Completed | MXMACHI |
| | 2015-04-20-08.59.43.507080:O:01 | | | | |
| 4/21/2015 | Claim Tasks | 27 | Audit | Completed | ANBEYER |
| | LTD OPEN AUDIT - ANBEYER - Apr 21, 2015 03:20:46 pm | | | | |
| 3/2/2015 8:44:32 PM | Investigation | 1 | Any Occ | Requested | MXMACHI |
| | 4/13/1 | | | | |

EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:24 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/20/2015 | Investigation | 1 | Any Occ | Received | MXMACHI |
| | 4/13/1 | | | | |

LIN0082
Case 3:17-cv-05060-MDH Document 35-1 Filed 05/15/18 Page 82 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:24 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 4/1/2015 8:33:45 PM | Investigation | 2 | Any Occ | Requested | MXMACHI |
| 4/13/2015 | Investigation | 2 | Any Occ | Received | MXMACHI |
| 4/13/2015 | Telephone (OUT) | 27 | JAMIE FLANAGAN | Completed | MXMACHI |

4/13/1
EE called to adv her father passed away last Tuesday and she is back in town today. I adv did get message from B1SMITH last week. I adv ok to wait for dr visit on 4/16/15 to fill out abilities. I adv if dr wont fill it out same day, ok to send rest of forms separate. I adv of my email and direct fax#>
- MXMACHI - Apr 13, 2015 12:32:03 pm

| 4/6/2015 | Telephone (OUT) | 26 | JAMIE FLANAGAN | Completed | B1SMITH |

Returned a call to Ms. Flanagan. She said she does understand the importance of the AO Investigation however she had to drop everything and go down to East Texas because her Dad is on his death bed and could die any day. She said she hopes it happens sooner than later because it's a bad deal. She wanted to know if the forms had to be turned all together or if she could wait until her doctor's appointment on 4/16/2014 to turn it in so that way she could get the abilities form completed. I said is there any way you could turn in the rest of the forms and we can wait on the abilities form. She said well I would have to have someone mail me my completed forms so I could turn then in. I said that I would put a note into Mike letting him know that you are communicating and with him and trying to get it all done. I said I would have Mike reach out to you in a week and he could further assess when the forms absolutely needed to be in in. She says she does know they are critical. She said that he could reach out to her at 903-822-3342 if needed
- B1SMITH - Apr 06, 2015 05:14:36 pm

| 4/6/2015 | Telephone (OUT) | 25 | JAMIE FLANAGAN | Completed | B1SMITH |

I returned a call from voicemail to Ms. Flanagan. I reached her voicemail, (as she predicted I might b/c her service is spotty) I left a message saying I would call the provided house # for her. And to feel free to call me back at my direct line. - B1SMITH - Apr 06, 2015 04:43:17 pm

| 4/1/2015 | Documents/Mail | 37 | Any Occ Follow Up | Completed | MXMACHI |

Any Occ Follow UpAttachments:TMPEducational BackgroundISSAuth Medical

| 4/1/2015 | Documents/Mail | 36 | Any Occ Follow Up | Completed | MXMACHI |

Any Occ Follow UpAttachments:TMPEducational BackgroundISSAuth Medical

| 7/12/2014 7:00:02 AM | Referrals | | 20413:Correspondence Questions | Initial | MXMACHI |

DOCSQL Investigation Type: Attorney/Client Privilege
7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tmecall to see if future claims and corres can go to ee or attorney

| 3/16/2015 | Referrals | | 20413:Correspondence Questions | Completed | MXMACHI |

DOCSQL Investigation Type: Attorney/Client Privilege
7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tmecall to see if future claims and corres can go to ee or attorney

| 3/13/2015 9:10:59 AM | Claim Tasks | 26 | Call Claimant | Requested | MXMACHI |

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
- MXMACHI - Mar 13, 2015 09:11:23 am
3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
- MXMACHI - Mar 16, 2015 11:35:51 am

| 3/16/2015 | Claim Tasks | 26 | Call Claimant | Completed | MXMACHI |

3/11/15

LIN0083

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 83 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
- MXMACHI - Mar 13, 2015 09:11:23 am
3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
- MXMACHI - Mar 16, 2015 11:35:51 am

| | | | | | |
|---|---|---|---|---|---|
| 3/16/2015 | Telephone (IN) | 24 | JAMIE FLANAGAN | Completed | MXMACHI |

3/16/15
EE called back and after discussion with her it was determined that the address on the benefit screen had old city/state/zip on it while address on rest of claim was correct. Corrected docsnet to show correct city state zip of Crane, MO 65633
- MXMACHI - Mar 16, 2015 11:49:52 am

| | | | | | |
|---|---|---|---|---|---|
| 3/16/2015 | Telephone (OUT) | 23 | JAMIE FLANAGAN | Completed | MXMACHI |

3/16/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back (EE left vm yesterday). Left vm
- MXMACHI - Mar 16, 2015 11:36:04 am

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2015 7:30:55 AM | Documents/Mail | 35 | Return Mail | Received | MXMACHI |

2015-03-10-10.53.27.590760:O:01

| | | | | | |
|---|---|---|---|---|---|
| 3/13/2015 | Documents/Mail | 35 | Return Mail | Completed | MXMACHI |

2015-03-10-10.53.27.590760:O:01

| | | | | | |
|---|---|---|---|---|---|
| 3/11/2015 9:09:24 AM | Claim Tasks | 25 | Missing Info | Requested | MXMACHI |

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
- MXMACHI - Mar 13, 2015 09:10:56 am

| | | | | | |
|---|---|---|---|---|---|
| 3/13/2015 | Claim Tasks | 25 | Missing Info | Completed | MXMACHI |

3/11/15
Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:47 am
3/13/15
Called ee again (had received ok from lawyer previously) to ask about address as 2nd eob came back.
- MXMACHI - Mar 13, 2015 09:10:56 am

| | | | | | |
|---|---|---|---|---|---|
| 11/14/2014 10:42:35 AM | Medical | 2 | | Initial | MXMACHI |

please fax. thank you - TMELDER - Nov 14, 2014 10:42:58 am

send med ntc 1 - TMELDER - Nov 24, 2014 06:49:43 am

left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:46 am

per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:27 am

left vm to verify if they recd our rqst for med recs - TMELDER - Dec 16, 2014 11:43:11 am

Per Michelle w/drs ofc, she did receive the rqst and sent it to copy service - TMELDER - Dec 16, 2014 11:52:29 am

LIN0084

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 84 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

no recs need current auth- will send rqst for auth, cc attorney - TMELDER - Dec 23, 2014 07:43:50 am

fu rqst for auth to ee and attorney - TMELDER - Jan 08, 2015 07:22:51 am

current auth rcd in awd 1/20- please resend rqst w/new auth. thank you - TMELDER - Jan 22, 2015 07:01:53 am
resent request with new auth today - ADYOUNG - Jan 29, 2015 03:29:13 pm

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 thank you - TMELDER - Feb 09, 2015 08:24:58 am

refaxed request today to FAX# 417-885-0874. - ADYOUNG - Feb 17, 2015 10:04:53 am

rcd prepayment 2/17 - TMELDER - Feb 23, 2015 07:45:55 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 4254832762220176196194.
 - ADYOUNG - Mar 04, 2015 09:34:56 am - TMELDER - Mar 09, 2015 08:46:27 am
received, sent to be scanned - MXMACHI - Mar 09, 2015 01:22:43 pm
3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
 - MXMACHI - Mar 12, 2015 11:51:24 am

| 3/12/2015 | Medical | 2 | | Closed | MXMACHI |

please fax. thank you - TMELDER - Nov 14, 2014 10:42:58 am

send med ntc 1 - TMELDER - Nov 24, 2014 06:49:43 am

left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:46 am

per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:27 am

left vm to verify if they recd our rqst for med recs - TMELDER - Dec 16, 2014 11:43:11 am

Per Michelle w/drs ofc, she did receive the rqst and sent it to copy service - TMELDER - Dec 16, 2014 11:52:29 am

no recs need current auth- will send rqst for auth, cc attorney - TMELDER - Dec 23, 2014 07:43:50 am

fu rqst for auth to ee and attorney - TMELDER - Jan 08, 2015 07:22:51 am

current auth rcd in awd 1/20- please resend rqst w/new auth. thank you - TMELDER - Jan 22, 2015 07:01:53 am
resent request with new auth today - ADYOUNG - Jan 29, 2015 03:29:13 pm

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 thank you - TMELDER - Feb 09, 2015 08:24:58 am

refaxed request today to FAX# 417-885-0874. - ADYOUNG - Feb 17, 2015 10:04:53 am

rcd prepayment 2/17 - TMELDER - Feb 23, 2015 07:45:55 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635.

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 85 of 200

LIN0085

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

The credit card confirmation number for this transaction is 42548327627220176196194.
- ADYOUNG - Mar 04, 2015 09:34:56 am - TMELDER - Mar 09, 2015 08:46:27 am
received, sent to be scanned - MXMACHI - Mar 09, 2015 01:22:43 pm
3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
- MXMACHI - Mar 12, 2015 11:51:24 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/10/2015 7:56:08 AM | Documents/Mail | 34 | Medical Records | Received | MXMACHI |

2015-03-10-08.46.41.958740:O:01

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
- MXMACHI - Mar 11, 2015 09:35:00 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 | Documents/Mail | 34 | Medical Records | Completed | MXMACHI |

2015-03-10-08.46.41.958740:O:01

3/11/15
Med recs received from Dr. Hopwell under awd 2015-3-09. DOS 10/22/14 follow up for lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of a mixed connective tissue disease. Had flare of lbp with radiation down the legs over the last couple of weeks. There has been no new weakness, sensory change or bowel/bladder symptoms. Just restarted plaquenil after being off for 3 weeks. Pain is definitely worse with prolonged standing, if she is up for more than 15 minutes she has to sit to be comfortable. Any prolonged position will make her pain worse including prolonged sitting. Had a rash and some swelling of her digits and some lip swelling that came and went over 72 hour period during same time frame. Neurologic exam remains normal. ASSESSMENT: she had recent flare of symptoms which were probably caused by being off plaquenil and being up on her feet more than normal. Will place her on dexamethasone cycle taper. Return in 3 months
- MXMACHI - Mar 11, 2015 09:35:00 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/10/2015 7:56:08 AM | Documents/Mail | 32 | Email | Received | MXMACHI |
| | 2015-03-09-11.26.23.118620:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 32 | Email | Completed | MXMACHI |
| | 2015-03-09-11.26.23.118620:O:01 | | | | |
| 3/10/2015 7:56:08 AM | Documents/Mail | 33 | Email | Received | MXMACHI |
| | 2015-03-09-11.26.23.158620:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 33 | Email | Completed | MXMACHI |
| | 2015-03-09-11.26.23.158620:O:01 | | | | |
| 3/10/2015 7:56:08 AM | Documents/Mail | 31 | Claim Form - Authorization | Received | MXMACHI |
| | 2015-03-10-08.46.33.596740:O:01 | | | | |
| 3/11/2015 | Documents/Mail | 31 | Claim Form - Authorization | Completed | MXMACHI |
| | 2015-03-10-08.46.33.596740:O:01 | | | | |

LIN0086

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 86 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/11/2015 | Telephone (OUT) 3/11/15 | 22 | JAMIE FLANAGAN | Completed | MXMACHI |

Received 2nd eob back as wrong address. Address was changed in may by different CE, then a new CE received eob back last month, unable to tell if address was verified or not.called attny who gave previous address and said it was ok to contact EE for correct address. Called EE and left vm
- MXMACHI - Mar 11, 2015 09:09:21 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/9/2015 | Documents/Mail Rep Change Letter | 30 | Rep Change Letter | Completed | MXMACHI |
| 3/9/2015 | Documents/Mail Rep Change Letter | 29 | Rep Change Letter | Completed | MXMACHI |
| 3/5/2015 11:10:10 AM | Documents/Mail 2015-03-05-09.01.47.507520:O:01 | 28 | Email | Received | MXMACHI |
| 3/9/2015 | Documents/Mail 2015-03-05-09.01.47.507520:O:01 | 28 | Email | Completed | MXMACHI |
| 2/17/2015 3:31:20 PM | Documents/Mail 2015-02-17-13.14.43.935000:O:01 | 26 | Pre-Payment Invoice | Received | ADYOUNG |

Received healthport prepayment invoice # 0163276489 for $27.02 only 2 pages e-mailing healthport to see if actual records. - ADYOUNG - Feb 23, 2015 10:16:43 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 42548327622201761961 94.
- ADYOUNG - Mar 04, 2015 09:34:56 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/4/2015 | Documents/Mail 2015-02-17-13.14.43.935000:O:01 | 26 | Pre-Payment Invoice | Completed | ADYOUNG |

Received healthport prepayment invoice # 0163276489 for $27.02 only 2 pages e-mailing healthport to see if actual records. - ADYOUNG - Feb 23, 2015 10:16:43 am

Per healthport this invoice is for records pd by cc - Your HealthPort transaction ID for this payment is CC3014635. The credit card confirmation number for this transaction is 42548327622201761961 94.
- ADYOUNG - Mar 04, 2015 09:34:56 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/2/2015 | Documents/Mail | 27 | Begin Any Occ Investigation | Completed | AS0DE7 |

Begin Any Occ InvestigationAttachments:TMPAbilitiesEducational BackgroundISSAuth Medical

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/17/2014 11:36:30 AM | Claim Tasks | 16 | Own Occ - See Contract Language | Requested | AS0DE7 |

DOCSQL Investigation Type: Any Occ Investigation
Source: AO
begin ao inv

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 3/2/2015 | Claim Tasks | 16 | Own Occ - See Contract Language | Completed | AS0DE7 |

DOCSQL Investigation Type: Any Occ Investigation
Source: AO
begin ao inv

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/11/2015 12:19:06 PM | Documents/Mail 2015-02-11-13.03.24.887060:O:01 | 25 | Return Mail | Received | AS0DE7 |

Group Explanation of Benefits that was mailed to EE marked as returned to sender - AS0DE7 - Feb 12, 2015 02:48:34 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/12/2015 | Documents/Mail 2015-02-11-13.03.24.887060:O:01 | 25 | Return Mail | Completed | AS0DE7 |

Group Explanation of Benefits that was mailed to EE marked as returned to sender - AS0DE7 - Feb 12, 2015 02:48:34 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/12/2015 | Claim Tasks | 23 | Paper File | Completed | AS0DE7 |

Mail was returned on 2/12/2015, manually remailed after calling EE and verifying that the adderss on fie is correct. - AS0DE7 - Feb 12, 2015 03:36:27 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 2/9/2015 | Telephone (OUT) | 21 | DR DONALD HOPEWELL | Completed | TMELDER |

per call to records, 417-888-5637, they do not have ther request, please refax directly to her at 417-885-0874 -

LINO0087

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 87 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | TMELDER - Feb 09, 2015 08:24:33 am | | | | |
| 2/3/2015 | Documents/Mail | 24 | Rep Change Letter | Completed | AS0DE7 |
| | Rep Change Letter | | | | |
| 1/21/2015 11:04:11 AM | Documents/Mail | 23 | Claim Form - Authorization | Received | TMELDER |
| | 2015-01-20-16.56.52.036740:O:01 | | | | |
| 1/22/2015 | Documents/Mail | 23 | Claim Form - Authorization | Completed | TMELDER |
| | 2015-01-20-16.56.52.036740:O:01 | | | | |
| 1/9/2015 8:30:28 AM | Claim Tasks | 21 | Update Claim Direction | Requested | TMELDER |

This claim has been identified by the U.S. Postal Service as having had a change of address. Please update the contact address in Entity Manager, then refresh Entity screen. This will update the claim screen and benefit information. You do not need to resend any letters or reissue any checks. Please call the claimant to advise we have updated the address on record.
New Address:
1625 MUSKY DIME DR
CRANE MO 65633 8050
- KXTHOMA - Jan 09, 2015 08:30:44 am

PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:04:02 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/12/2015 | Claim Tasks | 21 | Update Claim Direction | Completed | TMELDER |

This claim has been identified by the U.S. Postal Service as having had a change of address. Please update the contact address in Entity Manager, then refresh Entity screen. This will update the claim screen and benefit information. You do not need to resend any letters or reissue any checks. Please call the claimant to advise we have updated the address on record.
New Address:
1625 MUSKY DIME DR
CRANE MO 65633 8050
- KXTHOMA - Jan 09, 2015 08:30:44 am

PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:04:02 am

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 1/12/2015 | Claim Tasks | 22 | Validate Payee Info | Completed | TMELDER |
| 1/12/2015 | Telephone (OUT) | 20 | JAMIE FLANAGAN | Completed | TMELDER |
| | PER EE, new address is 1625 Musky Dime Drive, Crane, MO 65633 - TMELDER - Jan 12, 2015 10:03:43 am | | | | |
| 1/8/2015 | Documents/Mail | 22 | Request Sign Authorization | Completed | TMELDER |
| | Request Sign AuthorizationAttachments:Authorization.pdf | | | | |
| 1/8/2015 | Documents/Mail | 21 | Request Sign Authorization | Completed | TMELDER |
| | Request Sign AuthorizationAttachments:Authorization.pdf | | | | |
| 12/31/2014 | Telephone (IN) | 19 | JAMIE FLANAGAN | Completed | WE2NE8 |
| | Advised what the AUTH form was for | | | | |
| 12/23/2014 | Documents/Mail | 19 | Request Sign Authorization | Completed | TMELDER |
| | Attachments:Authorization.pdfRequest Sign Authorization | | | | |
| 12/23/2014 | Documents/Mail | 20 | Request Sign Authorization | Completed | TMELDER |
| | Attachments:Authorization.pdfRequest Sign Authorization | | | | |
| 12/22/2014 2:47:28 PM | Documents/Mail | 17 | Email | Received | TMELDER |
| | 2014-12-22-10.22.55.225560:O:01 | | | | |
| 12/23/2014 | Documents/Mail | 17 | Email | Completed | TMELDER |
| | 2014-12-22-10.22.55.225560:O:01 | | | | |
| 12/22/2014 2:47:28 PM | Documents/Mail | 18 | Medical Records | Received | TMELDER |
| | 2014-12-22-10.22.55.272560:O:01 | | | | |
| | no recs need current auth - TMELDER - Dec 23, 2014 07:42:30 am | | | | |
| 12/23/2014 | Documents/Mail | 18 | Medical Records | Completed | TMELDER |
| | 2014-12-22-10.22.55.272560:O:01 | | | | |

LIN0088

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 88 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | no recs need current auth - TMELDER - Dec 23, 2014 07:42:30 am | | | | |
| 12/16/2014 | Telephone (IN) | 18 | DR DONALD HOPEWELL | Completed | TMELDER |
| | Per Michelle w /drs ofc, she did receive the rqst and sent it to copy service - TMELDER - Dec 16, 2014 11:52:17 am | | | | |
| 12/16/2014 | Telephone (OUT) | 17 | DR DONALD HOPEWELL | Completed | TMELDER |
| | left vm to verify if they recd our rqst for med recs - TMELDER - Dec 16, 2014 11:43:01 am | | | | |
| 12/15/2014 4:19:27 PM | Telephone (IN) | 16 | JAMIE FLANAGAN | Requested | TMELDER |
| | Phone: 417-659-6876 Fax: 417-659-6873 dr. donald hopewell contact information. please extend the timeframe to get the records back since we had the wrong telephone/fax #'s for the doctor. | | | | |
| 12/16/2014 | Telephone (IN) | 16 | JAMIE FLANAGAN | Completed | TMELDER |
| | Phone: 417-659-6876 Fax: 417-659-6873 dr. donald hopewell contact information. please extend the timeframe to get the records back since we had the wrong telephone/fax #'s for the doctor. | | | | |
| 12/15/2014 | Telephone (OUT) | 15 | DR DONALD HOPEWELL | Completed | TMELDER |
| | per call to drs ofc, need to contact springfield ofc at 417-841-0160 - TMELDER - Dec 15, 2014 11:26:14 am | | | | |
| 12/11/2014 | Telephone (OUT) | 14 | DR DONALD HOPEWELL | Completed | TMELDER |
| | left vm to verify if they have recd our rqst for med recs - TMELDER - Dec 11, 2014 08:15:36 am | | | | |
| 11/24/2014 | Documents/Mail | 16 | Med Rec Request Follow Up | Completed | TMELDER |
| | Med Rec Request Follow Up | | | | |
| 11/22/2014 | Documents/Mail | 15 | Med Rec Request | Completed | ADYOUNG |
| | Med Rec RequestAttachments:flanagan.pdf | | | | |
| 10/22/2014 7:43:42 AM | Medical | 1 | | Initial | TMELDER |
| | please fax. thank you - TMELDER - Oct 22, 2014 07:44:04 am | | | | |
| | Med request was in "11OLDLTD" in error. Date of task 10/23/14 - moving to bs initials and current date. - TCCAMPB - Nov 14, 2014 10:15:14 am | | | | |
| | cancell and re-request recs - TMELDER - Nov 14, 2014 10:42:13 am | | | | |
| 11/14/2014 | Medical | 1 | | Closed | TMELDER |
| | please fax. thank you - TMELDER - Oct 22, 2014 07:44:04 am | | | | |
| | Med request was in "11OLDLTD" in error. Date of task 10/23/14 - moving to bs initials and current date. - TCCAMPB - Nov 14, 2014 10:15:14 am | | | | |
| | cancell and re-request recs - TMELDER - Nov 14, 2014 10:42:13 am | | | | |
| 9/18/2014 2:14:28 PM | Claim Tasks | 20 | Obtain Missing Info | Requested | TMELDER |
| | rqst med recs from dr hopewell after 10/22 office visit - TMELDER - Sep 18, 2014 02:15:08 pm | | | | |
| 10/22/2014 | Claim Tasks | 20 | Obtain Missing Info | Completed | TMELDER |
| | rqst med recs from dr hopewell after 10/22 office visit - TMELDER - Sep 18, 2014 02:15:08 pm | | | | |
| 7/12/2014 7:00:02 AM | Claim Tasks | 19 | Send for Legal Review | Requested | TMELDER |
| | DOCSQL Investigation Type: Attorney/Client Privilege 7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tmecall to see if future claims and corres can go to ee or attorney | | | | |
| 9/18/2014 | Claim Tasks | 19 | Send for Legal Review | Completed | TMELDER |
| | DOCSQL Investigation Type: Attorney/Client Privilege 7/14/14-per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them. tmecall to see if future claims and corres can go to ee or attorney | | | | |
| 9/18/2014 | Telephone (OUT) | 13 | JAMIE FLANAGAN | Completed | TMELDER |
| | Per call to ee, there has been no real improvement, saw Dr Hopewell in July and will have another aptmnt 10/22. she is just doing home exercises and is on pain meds. I advised I will rqst med recs after next visit to get the most updated. - TMELDER - Sep 18, 2014 02:14:14 pm | | | | |

8/21/2017

84

**LIN0089**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 89 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/14/2014 12:29:27 PM | Telephone (OUT) | 7 | Vicki | Requested | RDHASTI |

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H

| 7/19/2014 | Telephone (OUT) | 7 | Vicki | Completed | RDHASTI |

5-14-14 Called atty for initial call, atty unavailable, spoke to Vicki and left msg w/my contact info. R2H

| 7/14/2014 | Telephone (OUT) | 12 | Rick Vasquez ofc | Completed | TMELDER |

per call, Katrina states ok to send payments to Ms. Flanagan, but if need adtl info to cc them.

| 6/20/2014 12:38:49 PM | Referrals | | 20413!UNKNOWN | Initial | JLDOWSE |
| 6/23/2014 | Referrals | | 20413!UNKNOWN | Completed | JLDOWSE |
| 6/18/2014 | Telephone (IN) | 11 | Katrina | Completed | TMELDER |

Per call from attorneys ofc, ee is not receiving retirement, ssdi only, please make the payment to the attorneys ofc.

| 4/28/2014 3:49:54 PM | Referrals | | 20413!UNKNOWN | Initial | SSA |

6/17/14 Claim on SS Overturn Report - OPEN status forwarded award to award box. LAJ.5/13/14 - recd duplicate award ltr. no action required at this time. claim under appeal. reset flup 120 days to ck ltd claim status. if approved, send award info to ssa inbox. eac 4/28/14- SSDI AWARD SSS receipt of NOA dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXMSS Award info recvd in AWD 4/25/14
18-JUL-14 - converted from DOCSQL -Begin_Date: 01-FEB-14
[2503919: Entered By BXM on 06/23/2014 12:59:14 PM]
6/23/14- clmt has been awarded ssdi. bxm

| 6/17/2014 | Referrals | | 20413!UNKNOWN | Completed | SSA |

6/17/14 Claim on SS Overturn Report - OPEN status forwarded award to award box. LAJ.5/13/14 - recd duplicate award ltr. no action required at this time. claim under appeal. reset flup 120 days to ck ltd claim status. if approved, send award info to ssa inbox. eac 4/28/14- SSDI AWARD SSS receipt of NOA dated 4/14/14 from EEdate of entitlement = 2/1/14amount of the award =2289.00EST DEP AWARD = $ 1144.00vendor/atty fees to credit=$1144.50past due benefit/ retro award = $3433.50claimant has not enrolled in CORS, Benefit Specialist to calc the overpayment, notify the claimant of the ovp, and the change in LTD benefit.. BXMSS Award info recvd in AWD 4/25/14
18-JUL-14 - converted from DOCSQL -Begin_Date: 01-FEB-14
[2503919: Entered By BXM on 06/23/2014 12:59:14 PM]
6/23/14- clmt has been awarded ssdi. bxm

| 6/16/2014 1:05:02 PM | Claim Tasks | 6 | Open Review | Requested | TMELDER |

DOCSQL Investigation Type: Other
Source: Overturn decision
Claim assigned to TME for further hanlding. J2D

| 6/17/2014 | Claim Tasks | 6 | Open Review | Completed | TMELDER |

DOCSQL Investigation Type: Other
Source: Overturn decision
Claim assigned to TME for further hanlding. J2D

| 6/16/2014 1:04:09 PM | Claim Tasks | 5 | Open Review | Requested | SSA |

DOCSQL Investigation Type: Other
Source: Overturn decision
Per action plan, notifying SS dept to adv overturn decision

| 6/17/2014 | Claim Tasks | 5 | Open Review | Completed | SSA |

DOCSQL Investigation Type: Other
Source: Overturn decision
Per action plan, notifying SS dept to adv overturn decision

| 6/17/2014 | Telephone (OUT) | 10 | Rick Vasquez ofc | Completed | TMELDER |

left mess, getting ready to release benefits, do we pay him or her, does he know if she has been receiving any of

LIN0090
Case 3:17-cv-05060-MDH Document 35-1 Filed 05/15/18 Page 90 of 200

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | her employer retirement | | | | |
| 5/13/2014 | Appeal | 1 | Level 1 | New | RDHASTI |
| | Appeal Reason: 3f  Denial of claim. | | | | |
| | Appealed by: JAMIE FLANAGAN | | | | |
| | Source State: MO | | | | |
| 6/16/2014 | Appeal | 1 | Level 1 | Closed | RDHASTI |
| | Appeal Reason: 3f  Denial of claim. | | | | |
| | Appealed by: JAMIE FLANAGAN | | | | |
| | Source State: MO | | | | |
| 5/14/2014 12:02:54 PM | Claim Tasks | 8 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: 90 days = 8/10/14<br>Appeal recvd 5/12/14, 90 days = 8/10/14 | | | | |
| 6/16/2014 | Claim Tasks | 8 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: 90 days = 8/10/14<br>Appeal recvd 5/12/14, 90 days = 8/10/14 | | | | |
| 5/14/2014 12:02:26 PM | Claim Tasks | 7 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: 45 days = 6/26/14<br>Appeal recvd 5/12/14, 45 days = 6/26/14 | | | | |
| 6/16/2014 | Claim Tasks | 7 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: 45 days = 6/26/14<br>Appeal recvd 5/12/14, 45 days = 6/26/14 | | | | |
| 6/16/2014 | Telephone (OUT) | 9 | Vickie | Completed | RDHASTI |
| | 6-16-14 Called atty to adv overturn decision, atty unavailable, spoke to Vickie and adv. R2H | | | | |
| 6/10/2014 10:03:32 AM | Claim Tasks | 14 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: Next steps due 6/16/14<br>6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H | | | | |
| 6/12/2014 | Claim Tasks | 14 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: Next steps due 6/16/14<br>6-10-14 Recvd peer in AWD today. Will review for next steps due 6/16/14. R2H | | | | |
| 6/10/2014 | Documents/Mail | 14 | EMAIL | Completed | RDHASTI |
| 6/10/2014 | Documents/Mail | 13 | MEDICAL RECORDS | Completed | RDHASTI |
| 5/23/2014 9:35:14 AM | Claim Tasks | 13 | Open Review | Requested | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: Peer recvd?<br>5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review.<br>R2H | | | | |
| 6/10/2014 | Claim Tasks | 13 | Open Review | Completed | RDHASTI |
| | DOCSQL Investigation Type: Other<br>Source: Peer recvd?<br>5-23-14 File scan completed, placing med review into VOC coordinator initials to send for Physiatry peer review.<br>R2H | | | | |
| 5/22/2014 12:03:11 PM | Referrals | | 20156'UNKNOWN | Initial | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]

LIN0091

Case 3:17-cv-05060-MDH　　　Document 35-1　　　Filed 05/15/18　　　Page 91 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1. Please state your findings upon review of the medical information.

2. Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates
to which the limitations and/or restrictions apply.

3. Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

LIN0092

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined? SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.


[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
             CLINICAL RESPONSE/CONSULTATION RESPONSE


Claimant Name: Jamie Flanagan
Claim Number: 1130226196

LIN0093

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 93 of 200

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.


Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.


Recommendations: None


Kathy Freygang RN BSN
Nurse Disability Consultant

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW


DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ⬛⬛⬛ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64        Weight: 112
Dominant Side: Right

8/21/2017

89

Previous Med Review? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability

CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13

MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate

MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:

·       According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| 6/9/2014 | Referrals | 20156'UNKNOWN | | Completed | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

LIN0095
Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 95 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1. Please state your findings upon review of the medical information.

2. Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates
to which the limitations and/or restrictions apply.

3. Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

8/21/2017                                                                                                    91

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?   SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
· Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.


[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
              CLINICAL RESPONSE/CONSULTATION RESPONSE


Claimant Name: Jamie Flanagan
Claim Number: 1130226196

LIN0097

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW

DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ███████- 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review ? NA

8/21/2017

**LIN0098**

Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability

CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13

MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate

MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:

·      According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the
impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if
any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of
impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician
reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

5/22/2014 12:04:07 PM   Claim Tasks            12    Open Review                                    Requested         RDHASTI
DOCSQL Investigation Type: Other
Source: File scan
5/23/14 Scan completed & ok to send out - less than 500 pages.....s4h for k1zAll AWD, please scan

LIN0099

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 5/23/2014 | Claim Tasks | 12 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: File scan
5/23/14 Scan completed & ok to send out - less than 500 pages.....s4h for k1zAll AWD, please scan

| 5/22/2014 12:03:58 PM | Claim Tasks | 11 | Open Review | Requested | RDHASTI |

DOCSQL Investigation Type: Other
Source: Scan recvd?
5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review . R2H

| 5/23/2014 | Claim Tasks | 11 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: Scan recvd?
5-22-14 Referred for file scan. Once completed, will place med review into VOC coordinator initials to send for Physiatry peer review . R2H

| 5/19/2014 12:06:07 PM | Referrals | | 20116IUNKNOWN | Initial | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review ? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.

8/21/2017

95

**LIN00100**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 100 of 200

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

a. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

3. Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and
consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction. Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?   SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
· Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

LIN00101

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 101 of 200

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.

[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
           CLINICAL RESPONSE/CONSULTATION RESPONSE

Claimant Name: Jamie Flanagan
Claim Number: 1130226196

Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and prolonged standing, walking with brief change of position should be permitted as necessary from current and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks. He states pain increases through the day/week, unable to control with pain meds. Did not complete hr. capacity, wrote unquantifiable.

Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace. Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but no evidence of compression of neurological structures or progressively worsening weakness in extremities. Physical findings report relatively good range of motion with hardware intact and no instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that cannot be objectively quantified although reasonable to assume that some degree of discomfort in the back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive functioning was appropriate but safety issue to be considered if involvement with plan of patient care. Based on the medical evidence, claimant is not totally impaired from returning to work in a light occupation from current and beyond. It may be beneficial for the claimant to briefly change positions with posture/position as needed for comfort.

Recommendations: None

Kathy Freygang RN BSN
Nurse Disability Consultant

8/21/2017

LIN00102

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW


DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ▬▬▬▬ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability


CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13


MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate


MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:


·        According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the

LIN00103

impairment(s), describe their impact to the claimant's functional status
and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if
any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of
impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician
reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| 5/21/2014 | Referrals | 20116IUNKNOWN | | Completed | RDHASTI |

[2487077: Entered By AYR on 06/09/2014 11:04:55 AM]
6/09/14 AYR The final report from UDC was received and sent to LFGAppeals for attachment to AWD

[2471847: Entered By AYR on 05/27/2014 11:54:15 AM]
05/27/14 AYR case submitted to UDC for a peer review with a Physiatrist (PM&R physician), see external tab for
notes

[2468627: Entered By R2H on 05/22/2014 12:03:20 PM]
Specialty Requested: Physiatry

Claimant's Physician Name and Specialty: Nancy Dickey, OTR/L

Claimant's Physician Phone Number: (417) 881-1282

Has this file had a prior external review? No

Claim Summary

Jamie Flanagan is a 34 year old female Nurse Practitioner (light) who stopped working 8/26/2013 due to lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. It was previously determined that Ms. Flanagan did not
meet the policy
definition of disability.

At this time we are reviewing whether or not the evidence within the file supports findings of warranted
restrictions and/or
limitations that would preclude her ability to perform in her own light occupation from 11/24/2013 forward. Nancy
Dickey,
OTR/L indicated that Ms. Flanagan's work capacity was less than sedentary.

A Light Occupation consists of:
· Lifting no more than 20 lbs on a occasional basis & up to 10 lbs on a frequent basis.
· Typically requires standing & walking for 6 hrs out of an 8 hour day
· May require continuous sitting and entail the consistent use of either hand or foot controls.
· Walking/carrying at 2.5 MPG no grade or slower speed with 10 lbs.

Please respond to the specific questions below and provide the rationale for your opinion.

Questions

1.Please state your findings upon review of the medical information.

2.Provide a description of those claimant impairments, if any, that are supported by the medical records, and
outline how
these impairments would translate into functional limitations and/or medically appropriate restrictions.
a.For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates

**LIN00104**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 104 of 200

to which the limitations and/or restrictions apply.

3.Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and

consistent with the medical findings? Please explain.

[2467381: Entered By C1G on 05/21/2014 02:39:58 PM]
File presented for Appeal Direction.  Participants included, Cindy Daly, Bryan Gall NP, C1G and R2H.
Referring for Physiatry peer review.

[2463475: Entered By R2H on 05/19/2014 12:06:20 PM]

Date: 5/16/2014
Claimant Name: Jamie Flanagan
Claim Number: 1130226196
Documents in AWD: Yes

Claim Demographics
Age: 34
State Claimant Resides: MO
Date of Disability: 8/26/2013
EP: 90
Benefits Commencement Date: 11/24/2013
Benefits Paid To: None
Monthly Net Benefit: $4,402.16
Max Duration Date: 4/3/2047
Occupation at DOD: Nurse Practitioner
DOT Classification: Light
Primary Diagnoses: Lumbar post-laminectomy syndrome
Secondary/Co Morbid Diagnosis: Chronic pain, RLE radiculopathy, spondylolisthesis
New diagnoses identified upon appeal (if any): No
1st Appeal
ERISA
How was ERISA/NON-ERISA determined?    SIC code, group application
If LTD Appeal - Life Waiver Claim status: N/A
If Waiver Appeal - LTD Claim status: N/A

Claim milestone and relevant dates
·Denial during Own Occ
Change of Definition Date: 11/24/2015
Occupation level being disputed? No

Current Providers last 18 to 24 months (If more than one then copy paste template)
AP Name/Specialty: Nancy Dickey, OTR/L (417) 881-1282
Last Date of Service: 4/22/2014
Restrictions and Limitations/Duration: Less than sedentary capacity

INITIAL CLAIM DECISION
Reason for original claim determination: NTDOO
Review type at claim decision: NCM

Appeal being discussed
Reasons for disagreement as explained in appeal: 1) clmnt's work status based on her conditions is less than sedentary.

Information Submitted with appeal: Recvd 4/14/14 SSDI award letter.
Recvd 4/22/14 FCE with Nancy (Dickey) Beisswenger, OTR/L.
Recvd 4/23/14 Ms. Dickey letter adv FCE demonstrated less than sedentary capacity.

Jamie Flanagan is a 34 year old female Nurse Practitioner (need O/A) who stopped working 8/26/2013 due to

**LIN00105**

lumbar post-
laminectomy syndrome, spinal stenosis, and chronic pain. APS indicated claimant had a failed lumbar fusion on 4/1/2011, and a
spinal cord stimulator placement failed. At claim level, a NCM review did not support R&Ls from a light occupation, claim was
denied, and no benefits were paid. At 1st level appeal, additional information was received, including a 4/22/2013 FCE indicating
less than sedentary capacity.

Recommending Physiatry peer review.


[2269461: Entered By KMF on 11/26/2013 01:03:38 PM]
          CLINICAL RESPONSE/CONSULTATION RESPONSE


Claimant Name: Jamie Flanagan
Claim Number: 1130226196


Documents Reviewed:
Charles Mace, M.D. (Neurosurgeon): office visit, imaging report, myelogram, 04/01/11 - 01/09/13.
Donald Hopewell, M.D. (Neurology): office visit, 08/02/12 -10/31/13.
Wayne Wallender, D.O. (Pain Medicine): office visit, 08/15/13.

Conclusion:
The medical findings do not support a functional impairment of frequent lifting up to 20 lbs., and
prolonged standing, walking with brief change of position should be permitted as necessary from current
and beyond.

Rationale:
Claimant is a 33 year old female nurse practitioner, light occupation that last worked 08/25/13 due to
lumbar spondylosis with post laminectomy syndrome. She is status post L5-S1 posterior lumbar
interbody fusion on 04/01/11 and failed spinal cord stimulator 08/13.

Per Dr. Hopewell dated 11/17/13 lists R&L's as cannot work without unlimited ability to rest/take breaks.
He states pain increases through the day/week, unable to control with pain meds. Did not complete hr.
capacity, wrote unquantifiable.


Claimant is status post posterior and anterior fusion L5-S1 on 04/11 with continued lower lumbar pain
with numbness/tingling bilateral lower extremities. Various conservative treatments were prescribed but
said to be of limited efficacy. Reported symptoms had improved when she started wearing lumbar brace.
Most recent imaging showed evidence of postoperative fibrosis involving the nerve roots of L5- S1 but
no evidence of compression of neurological structures or progressively worsening weakness in
extremities. Physical findings report relatively good range of motion with hardware intact and no
instability noted. Neurological and motor exam was normal. There is no substantiation that the claimant is
unable to stand, ambulate, and use upper/lower extremities in a functional manner. Pain is subjective that
cannot be objectively quantified although reasonable to assume that some degree of discomfort in the
back is present. Based on the cognitive side effects of the pain medications she is receiving, cognitive
functioning was appropriate but safety issue to be considered if involvement with plan of patient care.
Based on the medical evidence, claimant is not totally impaired from returning to work in a light
occupation from current and beyond. It may be beneficial for the claimant to briefly change positions
with posture/position as needed for comfort.


Recommendations: None


Kathy Freygang RN BSN
Nurse Disability Consultant

LIN00106

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 106 of 200

[2264505: Entered By LML on 11/21/2013 12:51:29 PM]
MEDICAL REVIEW

DEMOGRAPHICS:

Date: November 21, 2013
Claimant: JAMIE FLANAGAN
Claim Number: 1130226196
Occupation: Nurse Practitioner - light
Diagnosis: Postlaminectomy Syndrome Lumbar Region
DOD: 8/26/2013
DOB: ⬛⬛⬛⬛⬛ - 33 YOF
Benefit Start Date:11/24/2013
State Claimant Resides:MO

Current Height: 64        Weight: 112
Dominant Side: Right
Previous Med Review? NA
Attorney Contact? No
MDA recommendations for recovery: unknown - Can't get into MDA Online
Pertinent CA Score: N/A

CLAIM MILESTONE AND RELEVANT DATES: (Select One And Delete The Rest):
Initial Liability

CURRENT PROVIDERS:
NameSpecialtyLast visit
Dr. Donald Hopewell, Neurology and Pain  10/31/13
Dr. Wayne Wallender anesthesia and pain management 10/17/13

MAIN DUTIES OF OCCUPATION:

Treat patients - LIGHT - ER does not accomodate

MOST CURRENT APS/ABILITIES FORM/DR'S NOTE:
Date:Which Provider completed:
11/17/13 - Dr. Hopewell

Per Provider what are claimant's current Limitations?

pain increases through the day/week. Unable to control with medications
Per Provider what are claimant's current Restrictions?
Cannot work without unlimited ability to rest/take breaks

SURGERY:
Name of Procedure:Date Performed:
4/1/11 lumbar fusion - FAILED
10/2011 spinal cord stimulator trial - FAILED

RECENT MEDICAL RECORDS:
SEE RECORDS

SPECIFIC QUESTION(S) FOR REVIEWER:

·      According to the clinical evidence in file, does the claimant have any impairment(s)? If so, list the
impairment(s), describe their impact to the claimant's functional status

8/21/2017                                                                                                     102

LIN00107

and note the expected duration of the impairment.
·Comment on any physical and/or cognitive side effects the claimant is experiencing from the medication usage, if any, as noted in the records.
·Is there any evidence of functional impairment noted in the medical records? If so, please state the etiology of impairment.
·Are the restrictions and limitations placed upon the claimant's work activities by his/her attending physician reasonable and consistent with the medical findings? Please explain.
·Can we expect any clinical improvement in her condition?

| | | | | | |
|---|---|---|---|---|---|
| 5/14/2014 12:42:07 PM | Claim Tasks | 10 | Open Review | Requested | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-14-14 Referred for OA for Nurse Practitioner

| | | | | | |
|---|---|---|---|---|---|
| 5/19/2014 | Claim Tasks | 10 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-14-14 Referred for OA for Nurse Practitioner

| | | | | |
|---|---|---|---|---|
| 5/14/2014 11:55:21 AM | Referrals | 20079:Occ Analysis | Initial | RDHASTI |

[2462216: Entered By BRS on 05/16/2014 02:29:17 PM]
5/16/14 VOCATIONAL RESPONSE
Based on the available information, it would appear that Jamie Flanagan's occupation is that of DOT#075.264-010, Nurse
Practitioner. This occupation is light physical requirement under the standards determined by the US Department of Labor.
BRS for JLM.

[2458351: Entered By R2H on 05/14/2014 11:56:43 AM]
Please do an occupational analysis for a Nurse Practitioner. Job description located under AWD transaction dated 11/15/13.

[2261489: Entered By LML on 11/19/2013 02:46:35 PM]
Nurse PractitionerNurse Practitioner 075.264-010Diagnose and treat chronic health conditions. May prescribe medication. Perform patient examinations. May order and
interpret diagnostic testsMust be Registered Nurses with specialized graduate coursew orkLight

| | | | | |
|---|---|---|---|---|
| 5/16/2014 | Referrals | 20079:Occ Analysis | Completed | RDHASTI |

[2462216: Entered By BRS on 05/16/2014 02:29:17 PM]
5/16/14 VOCATIONAL RESPONSE
Based on the available information, it would appear that Jamie Flanagan's occupation is that of DOT#075.264-010, Nurse
Practitioner. This occupation is light physical requirement under the standards determined by the US Department of Labor.
BRS for JLM.

[2458351: Entered By R2H on 05/14/2014 11:56:43 AM]
Please do an occupational analysis for a Nurse Practitioner. Job description located under AWD transaction dated 11/15/13.

[2261489: Entered By LML on 11/19/2013 02:46:35 PM]
Nurse PractitionerNurse Practitioner 075.264-010Diagnose and treat chronic health conditions. May prescribe

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 108 of 200   LIN00108

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | | | medication. Perform patient examinations. May order and interpret diagnostic testsMust be Registered Nurses with specialized graduate coursew orkLight | | |
| 5/14/2014 12:30:03 PM | Claim Tasks | 9 | Open Review | Requested | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review, as long as we recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and will begin review. R2H5-14-14 Mailed ACK letters, 30 days = 6/13/14. R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/16/2014 | Claim Tasks | 9 | Open Review | Completed | RDHASTI |

DOCSQL Investigation Type: Other
Source: Begin review
5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review, as long as we recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and will begin review. R2H5-14-14 Mailed ACK letters, 30 days = 6/13/14. R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/15/2014 | Telephone (OUT) | 8 | Katrina | Completed | RDHASTI |

5-15-14 Recvd call from Katrina in atty office verifying no addtl recs being sent for review, as long as we recvd the med recs w/appeal letter. Req c/b to verify recs recvd. I c/b, Katrina unavailable, spoke to Vicki, left msg adv recs recvd and will begin review. R2H

| | | | | | |
|---|---|---|---|---|---|
| 5/13/2014 | Documents/Mail | 12 | SOCIAL SECURITY FORMS | Completed | SSA |
| 4/28/2014 | Documents/Mail | 11 | SOCIAL SECURITY FORMS | Completed | LMLOBDO |
| 4/28/2014 | Claim Tasks | 1 | Open Review | Completed | SSA |

DOCSQL Investigation Type: Other
Source: SSA
SS Award info recvd in AWD 4/25/14

| | | | | | |
|---|---|---|---|---|---|
| 1/7/2014 7:32:44 AM | Documents/Mail | 10 | INCOMING CORRESPONDENCE | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 10 | INCOMING CORRESPONDENCE | Completed | LMLOBDO |
| 1/7/2014 7:32:43 AM | Documents/Mail | 8 | CLAIM FORM - AUTHORIZATION | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 8 | CLAIM FORM - AUTHORIZATION | Completed | LMLOBDO |
| 1/7/2014 7:32:43 AM | Documents/Mail | 7 | DECISION LETTER | Received | LMLOBDO |
| 1/9/2014 | Documents/Mail | 7 | DECISION LETTER | Completed | LMLOBDO |
| 1/7/2014 | Documents/Mail | 9 | ENVELOPE | Completed | LMLOBDO |
| 12/6/2013 | Telephone (OUT) | 6 | Judy | Completed | LMLOBDO |

12/6/13 Recvd vm from ER - clld ER back. ADvised of denial. No questions. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2013 1:37:20 PM | Claim Tasks | 4 | Open Review | Requested | LMLOBDO |

DOCSQL Investigation Type: Other
Source: DENIAL REVIEW
12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Claim Tasks | 4 | Open Review | Completed | LMLOBDO |

DOCSQL Investigation Type: Other
Source: DENIAL REVIEW
12/4/13 Agree with determination to deny benefits. Clmt is a 3 y/o female LPN dx with post laminectomy syndrome - lumbar spinal stenosis. Clmt had L5-S1 posterior lumbar interbody fusion on 4/1/2011 and failed spinal cord stimulator 8/13. Medical records indicate relatively good ROM with hardware intact and no instability noted. Neurological and motor exam was normal. Agree with denial at this time. J2D12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 109 of 200

LIN00109

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML

**11/19/2013 3:16:59 PM**    Claim Tasks    3    Open Review      Requested    LMLOBDO

DOCSQL Investigation Type: Other
Source: PENDNG
12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML 11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

**12/5/2013**    Claim Tasks    3    Open Review      Completed    LMLOBDO

DOCSQL Investigation Type: Other
Source: PENDNG
12/4/13 DENIAL RATIONALE: EE is 33 YOF LPN - LIGHT with a DLW 8/25/13 and DOD 8/26/13 for dx of Post Laminectomy syndrome - lumbar and spinal stenosis. Medical record were reviewed by KMF and R/L's are not supported based on medical documentation inthe file. Denial written today and sent for final review. LML11/26/13 R/L not supported based on med review. Will need to write DENIAL Rationale, denial letter, send for full manager review prior to calling EE and ER to advise of denial. FLUP set for next week to write letter. LML11/21/13 sent med referral and pend letters. LML11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review. also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML 11/19/13 ER Initial call confirm coverage eff date, was it 5/1/12 Pol Eff Date or was it 5/1/13? What time missed since 3/1/10 DOH? Was she working the required 72 hours every 2 weeks? did she have prior LTD claims with the prior

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 110 of 200

**LIN00110**

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

carrier? Need to do EE initial. What is plan for RTW? What is current treatment plans? what is current Other income? Did you apply for SSD yet? Will ask normal LTD NATL ACCT BS about Eff Date and Census first, couldn't find in NATL ACCT folder. LML

| | | | | | |
|---|---|---|---|---|---|
| 11/19/2013 2:43:01 PM | Claim Tasks | 2 | Open Review | Requested | LMLOBDO |

DOCSQL Investigation Type: Other
Source: RETIREMENT
Defined Contribution Plan - eligible at age 59 1/2. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Claim Tasks | 2 | Open Review | Completed | LMLOBDO |

DOCSQL Investigation Type: Other
Source: RETIREMENT
Defined Contribution Plan - eligible at age 59 1/2. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (OUT) | 5 | JAMIE FLANAGAN | Completed | LMLOBDO |

12/5/13 clld EE to advise of denial - being mailed today. Discussed denial. She will appeal. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (OUT) | 4 | JAMIE FLANAGAN | Completed | LMLOBDO |

12/5/13 clld ER - Judy Hampton - to advise of denial. LVM for call back. LML

| | | | | | |
|---|---|---|---|---|---|
| 12/4/2013 10:12:39 AM | Telephone (IN) | 3 | JAMIE FLANAGAN | Requested | LMLOBDO |

DOCSQL SubCategory: EOB (post claim)
EE called to check status of the claim
adv claim still in review
Will send a f/u to bs to call EE

| | | | | | |
|---|---|---|---|---|---|
| 12/5/2013 | Telephone (IN) | 3 | JAMIE FLANAGAN | Completed | LMLOBDO |

DOCSQL SubCategory: EOB (post claim)
EE called to check status of the claim
adv claim still in review
Will send a f/u to bs to call EE

| | | | | | |
|---|---|---|---|---|---|
| 11/21/2013 12:51:17 PM | Referrals | | 18588:UNKNOWN | Initial | LMLOBDO |
| 11/26/2013 | Referrals | | 18588:UNKNOWN | Completed | LMLOBDO |
| 11/20/2013 | Telephone (OUT) | 2 | JAMIE FLANAGAN | Completed | LMLOBDO |

11/20/13 clld EE for initial interview - confirmed address - on alot of meds and does a home PT program. leg goes numb and gets really pain full. has to lay down for 30-45 minutes. gets shooting pains down legs unexpectedly. no discussion regarding possibly attempting a fusion again - Dr. Mays did not want to do it - feels fusion is solid enough and that another fusion wouldn't help any. alot of scar tissue from previosu surgery- no discussion regarding possibly removing scar tissue - has scar tissue around 4 nerve roots. can only sleep 2-3 hours due to being woken up with shooting pains down legs, etc. Meds make unable to be alert - tried new meds last week - felt depressed and anxious (Methadone). No discussion regarding trying to work part-time - ER Will not accomodate. Issue with working part-time is doesn't know when episodes are going to hit - if at work even part-time and leg goes numb or gets shooting pains and needs to lie down then interrupts her day.. Has had epidurals and nerve root injections. They last a week or two and thats it. Prior to SCS tried a transforaminal injection - this was really painful and didn't help. current meds include: MS Contin 165 mg 2 x a day, Soma 350 MG 3 x a day PRN, Robaxin 1500 MG 3 x a day PRN, Hydropmorphone (Dilaudid) 8 mg every 4 hours PRN - takes every 4 hours at night, during the day takes every 4 on a bad day, on a really good day can go 8 hours. That script is a total of 540 every 3 months (6 a day), also takes Ibuprofen 800 MG every 8 hours, Hydroxychloroquine 200 mg 2 x a day, Wellbutrin 150 MG 2 x a day, Topiramate 100 MG 2 x a day, also takes phenergen and Zofran PRN for nausea. Also takes Xanax for anxiety. Got DD info over phone. Advised of pend for med review . also advised if approved first check will be released on or about 12/17. need to write up med review and send pend letters. LML

| | | | | | |
|---|---|---|---|---|---|
| 11/20/2013 | Telephone (OUT) | 1 | Judy | Completed | LMLOBDO |

11/20/13 Clld ER for initial interview - This facility transitioned on 5/1/13 after being bought by Cox Medical. This is why Eff 5/1/13. EE did work full-time until 8/26/13 DOD. Policy has a 30/5 pre-ex clause - no pre-ex investigation is required. LML

| | | | | | |
|---|---|---|---|---|---|
| 11/19/2013 | Referrals | | 18565tOcc Analysis | Completed | LMLOBDO |
| 11/19/2013 | Documents/Mail | 6 | Acknowledgement letter | Completed | AUT |
| 11/18/2013 2:03:29 PM | Documents/Mail | 5 | CLAIM FORM - EMPLOYEE SECTION | Received | LMLOBDO |

8/21/2017

106

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 11/19/2013 | Documents/Mail | 5 | CLAIM FORM - EMPLOYEE SECTION | Completed | LMLOBDO |
| 11/18/2013 2:01:43 PM | Documents/Mail | 4 | CLAIM FORM - AUTHORIZATION | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 4 | CLAIM FORM - AUTHORIZATION | Completed | LMLOBDO |
| 11/18/2013 1:58:24 PM | Documents/Mail | 3 | MEDICAL RECORDS | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 3 | MEDICAL RECORDS | Completed | LMLOBDO |
| 11/18/2013 1:58:12 PM | Documents/Mail | 2 | CLAIM FORM - EE, ER, APS | Received | JLDOWSE |
| 11/19/2013 | Documents/Mail | 2 | CLAIM FORM - EE, ER, APS | Completed | JLDOWSE |
| 11/18/2013 1:57:23 PM | Documents/Mail | 1 | CLAIM FORM - AUTHORIZATION | Received | LMLOBDO |
| 11/19/2013 | Documents/Mail | 1 | CLAIM FORM - AUTHORIZATION | Completed | LMLOBDO |
| 11/19/2013 2:42:30 PM | Other Income | 1 | Retirement | UNKNOWN | LMLOBDO |
| | | | Defined Contribution - eligible at Age 59 1/2. Flup set for this date. LML | | |
| 11/19/2013 2:50:04 PM | Dependents | 3 | ▬▬▬▬▬ | Child | LMLOBDO |
| 11/19/2013 2:49:50 PM | Dependents | 2 | ▬▬▬▬▬ | Child | LMLOBDO |
| 11/19/2013 2:49:39 PM | Dependents | 1 | Jason | Spouse | LMLOBDO |
| 8/16/2017 12:39:10 PM | Status | | | REOPENED | CXGEARY |
| 2/7/2017 10:07:08 AM | Status | | Not TD Any Occ | CLOSED | JDJACKS |
| 10/24/2016 9:20:37 AM | Status | | | REOPENED | DO4RO2 |
| 4/26/2016 11:36:34 AM | Status | | Not TD Any Occ | CLOSED | RDHASTI |
| 2/4/2016 8:41:14 AM | Status | | | REOPENED | DO4RO2 |
| 9/29/2015 9:00:37 PM | Status | | Not TD Any Occ | CLOSED | BRMCLSDIRY |
| 4/28/2014 4:22:39 PM | Status | | Not TD Own Occ | CLOSED | LMLOBDO |
| 4/28/2014 4:18:47 PM | Status | | | REOPENED | LMLOBDO |
| 5/13/2014 1:48:59 PM | Status | | | CONTESTED | LMLOBDO |
| 5/13/2014 1:48:58 PM | Status | | | REOPENED | LMLOBDO |
| 12/5/2013 2:01:25 PM | Status | | Not TD Own Occ | CLOSED | LMLOBDO |
| 9/29/2015 9:00:37 PM | Payments | | DEPOSIT 9/24/2015 - 11/24/2015 | CURRENT | MXMACHI |
| 6/20/2014 8:36:57 PM | Payments | | CHECK 11/24/2013 - 6/24/2014 | INITIAL | TMELDER |

**LIN00112**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 112 of 200

AMENDMENT NO. 3

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010157326

ISSUED TO: Lester E. Cox Medical Center

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated July 1, 2013.

The effective date of this amendment is July 1, 2013; but only with respect to disabilities incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

_____
Officer of the Company

Accepted by the Group Policyholder this _____ day of _____ 20_____

By _____ Title _____

GL1100 AMEND.

LIN00113

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

In Consideration of the Application for this Policy made by

### Lester E. Cox Medical Center
(herein called the Policyholder)

and the payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the person or persons entitled to them.

Policy No.     000010157326          Policy Effective Date:     May 1, 2012

Monthly Premium:  .46% of Total Covered Payroll per Month

The above rate is guaranteed until January 1, 2016, unless any of the Policy's terms are changed.

Policy Anniversaries will be annual beginning on:  January 1, 2016

The first premium is due on this Policy's Effective Date, and subsequent premiums are due on June 1, 2012, and on the same day of each month thereafter.

This Policy is delivered in the state of Missouri and subject to the laws of that jurisdiction.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska this 4th day of June, 2013.


SECRETARY                                              PRESIDENT


## GROUP LONG-TERM DISABILITY INSURANCE POLICY

# TABLE OF CONTENTS

Schedule of Benefits.................................................................3

Definitions .........................................................................4

General Provisions ...............................................................11

Claims Procedures ...............................................................13

Eligibility .........................................................................16

Effective Dates....................................................................16

Individual Termination ........................................................18

Policy Termination..............................................................19

Conversion Privilege ...........................................................20

Premiums and Premium Rates ...............................................21

Total Disability Monthly Benefit ...........................................22

Progressive Income Benefit....................................................23

Partial Disability Monthly Benefit...........................................25

Other Income Benefits..........................................................27

Recurrent Disability.............................................................30

Exclusions .........................................................................31

Specified Injuries or Sicknesses Limitation................................32

Voluntary Vocational Rehabilitation Benefit Provision...................34

Reasonable Accommodation Benefit .........................................35

Prior Insurance Credit Upon Transfer of Insurance Carriers.............36

Family Income Benefit ..........................................................37

Family Care Expense Benefit ..................................................38

Notice ..............................................................................40

LIN00115

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 115 of 200

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 1    Executives and Physicians

MINIMUM HOURS PER PAY PERIOD: 72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):    The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

3

-SB 10 (MO)
07/01/13

LIN00116

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 116 of 200

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 2    All Full-Time Weekend Option Participants

MINIMUM HOURS PER PAY PERIOD: 48

### LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):    The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    One year of continuous Active Work  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

3-2

-SB 10 (MO)
07/01/13

**LIN00117**

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS: Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 3 All Other Full-Time Employees excluding Regular Part-time Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD: 72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE: 60%

MAXIMUM MONTHLY BENEFIT: $10,000

MINIMUM MONTHLY BENEFIT: $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD: 90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions): The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD: One year of continuous Active Work (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS: Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

-SB 10 (MO)

3-3

07/01/13

**LIN00118**

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means:  Class 4    Regular Part-time Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD  40

### LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):    The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

3-4

-SB 10 (MO)
07/01/13

**LIN00119**

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS: Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 5     Grandfathered Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson     (Closed Class)

MINIMUM HOURS PER PAY PERIOD 72

## LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:     66 2/3%

MAXIMUM MONTHLY BENEFIT:     $12,000

MINIMUM MONTHLY BENEFIT:     $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):     The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:     None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:     Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

-SB 10 (MO)
07/01/13

LIN00120

Lester E. Cox Medical Center
000010157326

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS: Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

ELIGIBLE CLASS means: Class 6    All Regular Part-Time Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson (Closed Class)

MINIMUM HOURS PER PAY PERIOD 40
MINIMUM HOURS PER WEEK: 20

### LONG-TERM DISABILITY BENEFITS

BENEFIT PERCENTAGE:    66 2/3%

MAXIMUM MONTHLY BENEFIT:    $12,000

MINIMUM MONTHLY BENEFIT:    $100 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD: 90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

**MAXIMUM BENEFIT PERIOD:** (For Sickness, Injury, or Pre-Existing Conditions):   The Insured Employee's Social Security Normal Retirement Age, or the Maximum Benefit Period shown below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

WAITING PERIOD:    None  (For date insurance begins, refer to "Effective Dates" section)

CONTRIBUTIONS:    Insured employees are not required to contribute to the cost of the Long-Term Disability coverage.

GL3001-LTD 10 MO

-SB 10 (MO)
07/01/13

LIN00121

## DEFINITIONS

**As used throughout this Policy, the following terms shall have the meanings indicated below. Other parts of this Policy contain definitions specific to those provisions.**

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
1. the Employer's usual place of business; or
2. any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1. a Saturday, Sunday or holiday that is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is **not** due to the Employee's own health condition.

For Classes 1 and 5
**ANNUAL SALARY** means the Insured Employee's Contracted **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**Contracted BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means:
the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:
1.
    bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

Classes 2 and 3
Bonus Eligible Employees, **ANNUAL SALARY** means the Insured Employee's **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:

1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter. The Insured Employee must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the

GL3001-LTD 10 MO

-3 10 MO

4

07/01/13

**LIN00122**

## DEFINITIONS
### (continued)

Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

Classes 2 and 3
**FOR PRODUCTION-BASED EMPLOYEES BASIC MONTHLY EARNINGS or PREDISABILITY INCOME** means $1/13^{th}$ of the Insured Employee's production earnings from the Employer for the 13 months prior to the Determination Date. The "Determination Date" is the last day worked prior to the date of Disability. The Employee's production earnings are averaged over the 13 month period just prior to the Determination Date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the amount of the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records

For Classes 4 and 6
**ANNUAL SALARY** means the Insured Employee's Contracted **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**Contracted BASIC MONTHLY EARNINGS or PREDISABILITY INCOME** means:
the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

GL3001-LTD 10 MO

5

-3 10 MO
07/01/13

**LIN00123**

## DEFINITIONS
### (continued)

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY** or **DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan due to disability as defined in that plan; and
2. does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in this Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1. The Elimination Period:
   a. begins on the first day of Disability; and
   b. is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
   During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2. Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** or **FULL-TIME EMPLOYEE** means a person:
1. whose employment with the Employer is the person's main occupation;
2. whose employment is for regular wage or salary;
3. who is regularly scheduled to work at such occupation at least the Minimum Hours Per Week shown in the Schedule of Benefits;
4. who is a member of an Eligible Class which is eligible for coverage under this Policy;
5. who is not a temporary or seasonal employee; and
6. who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

GL3001-LTD 10 MO

-3 10 MO

07/01/13

LJN00124

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 124 of 200

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
1. is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
2. is taken in accord with the Employer's leave policy and the law which applies; and
3. does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period, as defined by the Employer. The 12 weeks:
1. may consist of consecutive or intermittent work days; or
2. may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME,** as it applies to the Partial Disability Monthly Benefit, means the average number of hours the Insured Employee was regularly scheduled to work, at his or her Own Occupation, during the month just prior to:
1. the date the Elimination Period begins; or
2. the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**INJURY** means an accidental bodily Injury that:
1. requires treatment by a Physician; and
2. directly, and independently of all other causes, results in a Disability that begins while the Insured Employee is insured under this Policy.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
1. beginning at 12:01 a.m. Standard Time, at the Policyholder's place of business on the first day of any calendar month; and
2. ending at 12:00 midnight on the last day of the same calendar month.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

GL3001-LTD 10 MO

7

-3 10 MO
07/01/13

LIN00125

Main Duties include those job tasks:
1.    as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2.    as performed in the general labor market and national economy.

Main Duties are **not** limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1.    by a Physician whose license and any specialty are consistent with the disabling condition; and
2.    according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
1.    is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
2.    is taken in accord with the Employer's leave policy and the federal USERRA law; and
3.    does not exceed the period required by that law.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally Disabled or Partially Disabled.

**OWN OCCUPATION or REGULAR OCCUPATION** means the occupation, trade or profession:
1.    in which the Insured Employee was employed with the Employer prior to Disability; and
2.    which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
1.    whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2.    whether a suitable opening is currently available with the Employer or in the local labor market.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

LIN00126

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 126 of 200

## DEFINITIONS
## (continued)

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
   a. is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
   b. is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:
1. the Insured Employee's hours or production is reduced;
2. one or more Main Duties of the job are reassigned; or
3. the Insured Employee is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:
1. must be at least 20% of Predisability Income; and
2. may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:
1. a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2. any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. Relatives include:
1. the Insured Employee's spouse, siblings, parents, children and grandparents; and
2. his or her spouse's relatives of like degree.

**POLICY** means this group insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, company, trust or other organization as shown on the Face Page of this Policy.

**PREDISABILITY INCOME**—See Basic Monthly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:
1. personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2. receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

Such care will be deemed medically necessary until the attending Physician certifies in writing that the Insured Employee has reached his or her maximum point of recovery and that further treatment would be useless.

**REGULAR OCCUPATION**—See Own Occupation or Regular Occupation definition.

GL3001-LTD 10 MO

-3 10 MO

9

07/01/13

**LIN00127**

# DEFINITIONS
## (continued)

**RETIREMENT BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1.  is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2.  does not represent contributions made by an Insured Employee (Payments representing Employee contributions are deemed to be received over the Insured Employee's expected remaining life, regardless of when they are actually received.); and
3.  is payable upon:
    a.  early or normal retirement; or
    b.  disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
1.  provides Retirement Benefits to Employees; and
2.  is not funded wholly by Employee contributions.

The term shall **not** include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
1.  which is part of any federal, state, county, municipal or association retirement system; and
2.  for which the Insured Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
1.  is established and maintained by the Employer for the benefit of Employees; and
2.  continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.
It does **not** include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under this Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.  During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.  After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under this Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

LIN00128

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 128 of 200

## GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
1. this Policy and any amendments to it;
2. the Policyholder's application (a copy of which is attached);
3. any Participating Employers' applications or Participation Agreements; and
4. any individual applications of the Insured Employees.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties. No statement made by an Insured Employee will be used to contest the coverage provided by this Policy, unless:
1. it is contained in a written statement signed by that Insured Employee; and
2. a copy of the statement has been furnished to that Insured Employee.

**AUTHORITY TO MAKE OR AMEND CONTRACT.** Only a Company Officer located in the Company's Group Insurance Service Office has the authority to:
1. determine the insurability of a group or any individual within a group;
2. make a contract in the Company's name;
3. amend or waive any provision of this Policy; or
4. extend the time for payment of any premium.

No change in this Policy will be valid, unless it is made in writing and signed by such a Company Officer.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of this Policy after it has been in force for two years from its date of issue; and as to any Insured Employee, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
1. this Policy's eligibility requirements, exclusions and limitations; and
2. other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
1. an Insured Employee incurs a claim during the first two years of coverage; and
2. the Company discovers that the Insured Employee made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**NON-PARTICIPATION.** This is a non-participating Policy. It will not share in the divisible surplus of the Company.

**INFORMATION TO BE FURNISHED.** The Employer is required to furnish the Company any information needed to administer this Policy, including:
1. information about Employees:
   a. who become eligible for insurance;
   b. whose amounts of coverage change; or
   c. whose eligibility or coverage ends;
2. occupational information and other facts that may be needed to manage a claim; and
3. any other information that the Company may reasonably require.

The Company may inspect any of the Employer's records that relate to this Policy, at any reasonable time.

Clerical error by the Employer:
1. will not void or terminate insurance that otherwise would be in effect;
2. will not result in insurance coverage that otherwise would not be in effect; and
3. will not continue insurance that otherwise would be terminated.

Once an error is discovered, a fair adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the 12-month period that precedes the date the Company receives proof that such an adjustment should be made.

GL3001-LTD 10 MO

-7 04 MO

11

07/01/13

**LIN00129**

**MISSTATEMENTS OF FACTS.**  If relevant facts about any person were misstated:
1.  a fair adjustment of the premium will be made; and
2.  the true facts will decide if and in what amount insurance is valid under this Policy.

If an Insured Employee's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**ACTS OF THE POLICYHOLDER.**  In administering this Policy, the Policyholder must:
1.  treat Employees the same in like situations; and
2.  allow the Company, without inquiry, to rely on its acts.

**POLICYHOLDER'S AGENCY.**  For all purposes of this Policy, the Policyholder acts on its own behalf or as the Employee's agent.  Under no circumstances will the Policyholder be deemed the Company's agent.

**CERTIFICATES.**  The Employer will be furnished with individual Certificates for delivery to each Insured Employee.  These Certificates summarize the benefits provided by this Policy.  If there is a conflict between this Policy and the Certificate, this Policy will control.

**CONFORMITY WITH STATE STATUTES.**  If, on its effective date, any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

**CURRENCY.**  In administering this Policy:
1.  all Predisability Income will be expressed in U.S. dollars; and
2.  all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.**  This Policy does not:
1.  replace or provide; or
2.  relieve the Policyholder of providing;

benefits required by:
1.  Workers' Compensation laws; or
2.  any state disability insurance plan laws.

**ASSIGNMENT.**  The rights and benefits under this Policy may not be assigned.

LIN00130

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 130 of 200

# CLAIMS PROCEDURES

**NOTICE OF CLAIM.** Written notice of claim must be given within 20 days after the loss occurs, or by the end of the Elimination Period, if later. The notice must be sent to the Company's Group Insurance Service Office. It should include:
1. the Insured Employee's name and address; and
2. the number of this Policy.

If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.** When notice of claim is received, the Company will send claim forms to the Insured Employee. If the Company does not send the forms within 15 days, the Insured Employee shall be deemed to have complied with the requirements of this Policy as to proof of loss upon submitting, within the time fixed in this Policy for filing proof of loss, written proof covering the occurrence, character, and extent of the loss for which claim is made. The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM.** The Company must be given written proof of claim within 90 days after the end of the Elimination Period. When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1. as soon as reasonably possible; and
2. in no event later than one year after it was required.

These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense. It must show the date the Disability began, its cause and degree. Documentation must include:
1. completed statements by the Insured Employee and the Employer;
2. a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3. proof of any other income received;
4. proof of any benefits available from other income sources, which may affect Policy benefits;
5. a signed authorization for the Company to obtain more information; and
6. any other items the Company may reasonably require in support of the claim.

Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company. This must be supplied within 45 days after the Company requests it. If it is not, benefits may be denied or suspended.

**EXAMINATION.** The Company may have the Insured Employee examined:
1. by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2. as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1. failed to cooperate with an examiner;
2. failed to take an exam scheduled by the Company; or
3. postponed such an exam more than twice.

In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.** Benefits payable under this Policy will be paid immediately after the Company receives complete proof of claim and confirms liability. After that:
1. Any benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a pro rata basis. The daily rate will equal 1/30 of the Monthly Benefit.
2. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3001-LTD 10 MO

-8 10 MO

13

07/01/13

**LJN00131**

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1.   Any Survivor Benefit will be payable in accord with that section.
2.   Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1.   the Insured Employee's estate; or
2.   a minor or any other person who is not legally competent to give a valid receipt;
then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1.   the reason for the denial, under the terms of this Policy and any internal guidelines;
2.   how the Insured Employee may request a review of the Company's decision; and
3.   whether more information is needed to support the claim.

This notice will be sent:
1.   within 15 days after the Company resolves the claim;
2.   within 30 days after the Company receives acceptable proof of claim; and
3.   within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1.   by the 15th day after receiving the first proof of claim; and
2.   every 30 days after that, until the claim is resolved.

The notice will explain:
1.   what additional information is needed to determine liability; and
2.   when a decision can be expected.
If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1.   a written request; and
2.   any written comments or other items to support the claim.
The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1.   any further appeal procedures available under this Policy;
2.   the right to access relevant claim information; and
3.   the right to request a state insurance department review, or to bring legal action.
This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

GL3001-LTD 10 MO

-8 10 MO

07/01/13

LIN00132

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 132 of 200

## CLAIMS PROCEDURES
### (continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1.  an extension of up to 45 more days will be permitted; and
2.  the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1.  the special circumstances which require the delay;
2.  whether more information is needed to review the claim; and
3.  when a decision can be expected.

**Exception:** The Company may need more information from the Insured Employee to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1.  an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2.  the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1.  reduce future benefits and suspend payment of the Minimum Monthly Benefit under this Policy, until full reimbursement is made;
2.  reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3.  recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1.  the Company's error in processing a claim;
2.  the Insured Employee's receipt of Other Income Benefits;
3.  fraud, misrepresentation or omission of relevant facts; or
4.  any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

GL3001-LTD 10 MO

15

-8 10 MO
07/01/13

**LIN00133**

# ELIGIBILITY

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under this Policy, if any class ceases to be covered by this Policy.

**ELIGIBILITY DATE.** An Employee becomes eligible for coverage provided by this Policy on the later of:
1. this Policy's date of issue; or
2. the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Benefits. Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within six months after his or her employment ends; or
2. an Employee returns from an approved Family or Medical Leave within:
   a. the 12-week leave period required by federal law; or
   b. any longer period required by a similar state law; or
3. an Employee returns from a Military Leave within the period required by federal USERRA law.

# EFFECTIVE DATES

**EFFECTIVE DATE.** An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1. (a) for Classes 1, 4, 5 and 6, the date the Employee becomes eligible for the coverage; or
   (b) for Classes 2 and 3, the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2. the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3. the date the Employee makes written application for coverage and signs;
   a. a payroll deduction order, if the Employees pay any part of the Policy premium; or
   b. an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4. the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2. the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3. the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

**EVIDENCE OF INSURABILITY.** Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
1. an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2. an Employee makes written application to enroll for coverage after he or she has requested:
   a. to cancel insurance;
   b. to stop payroll deductions for the insurance; or
   c. to stop premium payments from the Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4. optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

GL3001-LTD 10 MO

16

-9 04

07/01/13

LJN00134

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
1. on the first day of the Insurance Month coinciding with or next following the date of the change;
2. except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:
1. return from an approved Family or Medical Leave within:
   a. the 12-week period required by federal law; or
   b. any longer period required by a similar state law;
2. return from a Military Leave within the period required by federal USERRA law;
3. return from any other approved leave of absence within six months after the leave begins;
4. return within six months following a lay off; or
5. return within six months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:
1. the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2. a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.
A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

GL3001-LTD 10 MO

17

-9 04
07/01/13

**LJN00135**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 135 of 200

## INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.** An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:
1.  the date this Policy or the Employer's participation terminates; (but without prejudice to any claim incurred prior to termination);
2.  the date the Insured Employee's Class is no longer eligible for insurance;
3.  the date such Insured Employee ceases to be a member of an Eligible Class;
4.  the last day of the Insurance Month in which the Insured Employee requests termination;
5.  the last day of the last Insurance Month for which premium payment is made on the Insured Employee's behalf;
6.  the end of the period for which the last required premium has been paid;
7.  with respect to a particular insurance benefit, the date the portion of this Policy providing that benefit terminates;
8.  the date the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below; or
9.  the date the Insured Employee enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Employee sends proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Employee's eligibility for insurance, but coverage may be continued as follows.

1.  **Disability.** If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment, coverage may be continued during:
    a.  the Elimination Period; provided the Company receives the required premium from the Employer; and
    b.  the period for which benefits are payable, without payment of premium.
    Premium payments will be waived from the satisfaction of the Elimination Period until the end of the period for which benefits are payable. If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed, as they become due.

2.  **Family or Medical Leave.** If an Insured Employee goes on an approved Family or Medical Leave, and is not entitled to the more favorable continuation available during Disability, coverage may be continued, until the earliest of:
    a.  the end of the leave period approved by the Employer;
    b.  the end of the 12-week leave period required by federal law, or any more favorable period required by a similar state law;
    c.  the date the Insured Employee notifies the Employer that he or she will not return; or
    d.  the date the Insured Employee begins employment with another employer.
    The required premium payments must be received from the Employer, throughout the period of continued coverage.

3.  **Military Leave.** If an Insured Employee goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

4.  **Lay-off or Other Leave.** When an Insured Employee ceases work due to a temporary lay-off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay-off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

GL3001-LTD 10 MO

-10 04

18

07/01/13

**LIN00136**

## INDIVIDUAL TERMINATION
### (Continued)

**Conditions.** In administering the above continuation(s), the Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may not be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

## POLICY TERMINATION

**POLICY TERMINATION BY THE COMPANY.** To terminate this Policy, the Company must give the Group Policyholder at least 31 days advance written notice of its intent to do so. The Company may terminate this Policy on the due date of any premium if:
1. the number of Insured Employees totals less than 10;
2. part of the premium is paid by the Insured Employee and less than 75% of those eligible for coverage are insured;
3. all of the premium is paid by the Policyholder and less than 100% of those eligible for coverage are insured;
4. the Policyholder, without good cause, fails to:
   a. promptly furnish any information which the Company may reasonably require;
   b. perform its duties pertaining to this Policy in good faith;
5. the Employer ceases to be covered under the state Workers' Compensation program or any other program of like intent.
6. the Company terminates all other policies where permitted by their terms, which provide long-term disability benefits in the same state in which this Policy was issued; or
7. state law otherwise requires this Policy to be terminated.

**POLICY TERMINATION BY THE POLICYHOLDER.** The Policyholder may terminate this Policy at any time by giving the Company advance written notice. This Policy will then terminate on:
1. the date the Company receives the notice; or
2. some later date on which the Policyholder and the Company have agreed.

However, termination will not become effective during any period for which premium has been paid to the Company. The Policyholder remains liable for the payment of premiums to the date of termination.

**AUTOMATIC POLICY TERMINATION.** If any premium is not paid before the end of the Grace Period; then this Policy will terminate at the end of the Grace Period, without any action on the Company's part. The Policyholder remains liable for the payment of premiums to the date of termination.

**POLICY TERMINATION DURING DISABILITY.** Termination of this Policy or an Employer's participation during a Disability shall have no effect on benefits payable to the Insured Employee for that period of Disability.

GL3001-LTD 10 MO

-10 04

07/01/13

LIN00137

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 137 of 200

## CONVERSION PRIVILEGE

ELIGIBILITY. This Policy provides a conversion privilege, when an Insured Employee's insurance under this Policy ends because he or she:
1. resigns from employment with the Employer;
2. is terminated from employment with the Employer, with or without cause;
3. goes on a lay-off or leave of absence; or
4. remains on a lay-off or leave of absence beyond the continuation period provided in the Individual Termination section of this Policy.

The Insured Employee may obtain converted long term disability insurance, without medical evidence of insurability. To be eligible for a converted policy, the Insured Employee must have been insured under the Employer's group plan for at least 12 months in a row, just before his or her insurance under this Policy terminated. The 12 months can be a combination of coverages under this Policy, and under any prior group long term disability plan which this Policy replaces.

APPLICATION. Application to convert must be made within 31 days after insurance under this Policy terminates. The converted benefits and amount of insurance may differ from those under this Policy.

CONDITIONS AND LIMITATIONS. This conversion privilege is not available to any Insured Employee whose insurance terminates because:
1. this Policy is terminated by the Employer or the Company;
2. this Policy is amended to exclude the class to which the Insured Employee belongs:
3. the Insured Employee no longer belongs to a class eligible for coverage under this Policy;
4. the Insured Employee retires or dies;
5. the Insured Employee fails to pay the required premium; or
6. the Insured Employee is Disabled under the terms of this Policy.

Also, this conversion privilege is not available to an Insured Employee who becomes insured for long term disability benefits under any other group plan; unless the other coverage takes effect more than 31 days after his or her insurance under this Policy terminates.

If an Insured Employee converts his or her Policy coverage, and later resumes active employment in an eligible class; then the Insured Employee's conversion coverage will terminate on the day before he or she is re-enrolled under this Policy. In no event will benefits be paid under both this Policy and the conversion coverage for the same period of Disability.

Conversion Privilege

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 138 of 200    LJN00138

## PREMIUMS AND PREMIUM RATES

**PAYMENT OF PREMIUM.** No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, the Employer must pay each subsequent premium on or before its due date at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

**PREMIUM RATES.** The initial premium rates for this Policy are shown on the Face Page of this Policy. Premium rates are subject to change.

**PREMIUM RATE CHANGE.** The Company may change any premium rate on any of the following dates:
1. the date this Policy's terms are changed;
2. the date the Company's liability is changed due to a change in federal, state, or local law;
3. the date the Company's liability is changed because the Policyholder (or any covered division, subsidiary or affiliated company):
   a. relocates, dissolves or merges, or is added to or removed from this Policy; or
   b. ceases to be covered by the state Workers' Compensation program or any other program of like intent; or
   c. ceases to provide or reduces Sick Leave or Salary Continuance Plan benefits;
4. the date any coverage for one or more classes ceases to be provided under this Policy;
5. the date the number of Insured Employees changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later;
6. on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

**MONTHLY PREMIUM AMOUNT.** The amount of monthly premium due on each due date will be the Total Covered Payroll multiplied by the premium rate. Changes will not be pro-rated daily. Instead, premium will be adjusted as follows.
1. When an Insured Employee's insurance (or increased amount of insurance) takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
2. When all or part of an Insured Employee's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
3. When premiums are paid other than monthly, increases or decreases will result in an adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend insurance coverage beyond a date it would have otherwise terminated.

Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the amount of the return will be limited to the prior 12-month period.

**GRACE PERIOD.** A Grace Period of 60 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the Grace Period. The Policyholder will be liable to the Company for the payment of all premiums due for the period this Policy remains in effect, however.

**WAIVER OF PREMIUM.** Premium will be administered as follows during any period for which benefits are payable.
1. Premium payments are waived for an Insured Employee who is Disabled:
   a. from the first premium due date following the satisfaction of the Elimination Period;
   b. until the end of any period for which benefits are payable.
2. If coverage is to be continued following a period during which premiums were waived, premium payments must be resumed as they become due.

GL3001-LTD 10 MO

21

<span style="text-align:right;">-11 04<br>07/01/13</span>

**LIN00139**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 139 of 200

# TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT.** The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
1. is Totally Disabled;
2. becomes Disabled while insured for this benefit;
3. is under the Regular Care of a Physician; and
4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Totally Disabled or dies;
2. the date the Maximum Benefit Period ends; or
3. the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

**AMOUNT.** The amount of the Total Disability Monthly Benefit equals:
1. the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2. Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit.

The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

**LIN00140**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 140 of 200

# PROGRESSIVE INCOME BENEFIT

**EFFECTIVE DATE.** An Insured Employee will become insured for the Progressive Income Benefit on:
1. the effective date of his or her coverage for Long Term Disability Benefits under this Policy; or
2. the effective date of this provision, if it is added later by amending this Policy.

**Exception:** The effective date will be delayed for an Insured Employee who is unable to perform one or more Activities of Daily Living or suffers from a Cognitive Impairment on that date. In that event, the Insured Employee will become insured for this benefit on the first day he or she:
1. is able to safely and completely perform all of the Activities of Daily Living without another person's active, hands-on help; or
2. no longer suffers from a Cognitive Impairment.

**BENEFIT.** After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she:
1. is receiving Total Disability or Partial Disability Monthly Benefits under this Policy; and
2. submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment (as defined below).
Proof must be submitted at the Insured Employee's own expense.

**AMOUNT.** The amount of the Progressive Income Benefit:
1. will equal 10% of the Insured Employee's Basic Monthly Earnings; but
2. will not exceed the Maximum Monthly Benefit for Long Term Disability Benefits, or $5,000 per month (whichever is less).
The Maximum Monthly Benefit for Long Term Disability Benefits is shown in the Schedule of Insurance. The Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment.

**DURATION.** This Progressive Income Benefit will cease on the earliest of:
1. the date the Insured Employee no longer suffers from the Loss of Activities of Daily Living or Cognitive Impairment (as defined below);
2. the date the Insured Employee is no longer entitled to Total Disability or Partial Disability Monthly Benefits under this Policy;
3. the date the Maximum Benefit Period ends; or
4. the date the Insured Employee dies.
If this Policy includes a Family Income Benefit, the amount paid to the Eligible Surviving Spouse or Children will not increase due to the Insured Employee's receipt of this Progressive Income Benefit.

## DEFINITIONS

**"Loss of Activities of Daily Living"** means that, due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** - washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** - putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** - getting to, from, on and off toilet; and performing related personal hygiene.
4. **Transferring** - moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** - voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** - once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

GL3001-LTD 10 MO

23

-12D 01 ADL Benefit (MO)
07/01/13

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 141 of 200

LIN00141

## PROGRESSIVE INCOME BENEFIT
### (continued)

**"Cognitive Impairment"** means that due to an Injury or Sickness, the Insured Employee:
1. has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2. requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

**"Mental Sickness"** as used in this provision, means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from stroke; trauma; viral infection; Alzheimer's disease; or other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Pre-Existing Condition,"** as used in this provision, means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to his or her effective date for this benefit. Treatment includes a Physician's consultation, care and services; diagnostic measures; and the prescription, refill or taking of prescribed drugs or medicines.

### EXCLUSIONS AND LIMITATIONS

**Prior Disability.** This benefit will not be payable during a period of Disability which begins before the Insured Employee's effective date of coverage under this benefit.

**Pre-Existing Conditions.** This benefit will not be payable for a Loss of Activities of Daily Living or Cognitive Impairment:
1. which is caused or contributed to by, or results from a Pre-Existing Condition (as defined above); and
2. which begins in the first 12 months after the Insured Employee's effective date under this benefit; unless the Insured Employee received no Treatment of the condition for 6 consecutive months after his or her effective date under this benefit.

**Mental Sickness and Substance Abuse.** This benefit will not be payable during a period of Disability which is caused or contributed to by or results from a Mental Sickness, alcoholism, or voluntary use of a Controlled Substance; unless prescribed by a Physician. Controlled Substances are those defined as such in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and any amendments to it.

**Other Provisions.** This benefit will be subject to all of the Definitions, Exclusions, Proof of Claim, Waiver of Premium and other provisions of this Policy.

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 142 of 200

LIN00142

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT.** The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period, if he or she:
1. is Disabled;
2. becomes Disabled while insured for this benefit;
3. is engaged in Partial Disability Employment;
4. is earning at least 20% of Predisability Income when Partial Disability Employment begins;
5. is under the Regular Care of a Physician, if required; and
6. at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits. The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination of these.

The Partial Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Partially Disabled or dies;
2. the date the Maximum Benefit Period ends;
3. the date the Insured Employee earns more than:
   a. 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   b. 85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;
4. the date the Insured Employee is able, but chooses not to work full-time:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Partial Disability.

At the Company's option, Partial Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 143 of 200

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT. The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

    A.    LOST INCOME: The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

    B.    TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
        1.    The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
        2.    Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

For Classes 1, 2, 3, 4, 5, 6

GL3001-LTD 10 MO

-13.4

07/01/13

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 144 of 200

LIN00144

# OTHER INCOME BENEFITS

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under this Policy.

**Workers' Compensation.** Any benefits for which the Insured Employee is eligible under a law that compensates for job related Injury or Sickness. This includes:
1. any Workers' Compensation or occupational disease law;
2. the Jones Act;
3. the Longshoreman's and Harbor Worker's Act;
4. the Maritime Doctrine of Maintenance, Wages or Cure; or
5. any plan provided in place of one of the above plans.

It includes any benefits for partial or total disability, whether temporary or permanent. It also includes any benefits for vocational rehabilitation.

**Other Compulsory Benefits.** Any disability income benefits the Insured Employee is eligible to receive under any other compulsory benefit act or law. This includes (but is not limited to):
1. state temporary disability income benefit laws;
2. state no fault auto insurance laws; or
3. any other compulsory benefit act or law.

**Other Insurance Plans.** Any disability income benefits for which the Insured Employee is eligible under:
1. any other group insurance plan (except credit or mortgage insurance); or
2. any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which the Insured Employee is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, **"Government Retirement Plans"** include disability and retirement benefits under:
1. the federal Social Security Act, Jones Act or Railroad Retirement Act;
2. the Canada Pension Plan or Quebec Pension Plan;
3. any similar plan or act of any country, state, province or other political unit; or
4. any plan provided in place of one of the above plans.

LIN00145

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 145 of 200

"**Earnings**", as used in this provision, means pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:

1.  salaried or hourly Employee's gross earnings (shown on Form W-2); including:
    a.  wages, tips, commissions, bonuses and overtime pay; and
    b.  any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
2.  proprietor's net profit (figured from Form 1040, Schedule C);
3.  professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
4.  partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
5.  Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Exceptions**. The following will **not** be considered Other Income Benefits, and will not be offset in determining the Monthly Benefit:

1.  a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
2.  reimbursement for hospital, medical or surgical expense;
3.  reimbursement for attorney fees and other reasonable costs of claiming Other Income Benefits;
4.  group credit or mortgage disability insurance benefits;
5.  early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
6.  any amounts under the Employer's Retirement Plan that:
    a.  represent the Insured Employee's contributions; or
    b.  are received upon termination of employment without being disabled or retired;
7.  benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
8.  vacation pay, holiday pay, or severance pay; or
9.  disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 146 of 200

LIN00146

**RULES FOR OTHER INCOME BENEFIT OFFSETS.** If the Insured Employee may be entitled to Other Income Benefits that affect Policy benefits, the following rules will apply.

**Claiming Other Income Benefits.** An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it. For example, if benefits may be payable under the federal Social Security Act, the Insured Employee:
1. must apply for such benefits on a timely basis;
2. must file a request for reconsideration, if benefits are denied; and
3. must request a hearing before an Administrative Law Judge, if denied again (unless the Company waives this in writing).

An Employer whose Insured Employee may be entitled to Workers' Compensation or similar benefits is also required to cooperate in filing that claim. If the Insured Employee fails to pursue Other Income Benefits on a timely basis, the Company has the option to:
1. deny or suspend Monthly Benefits; or
2. reduce Monthly Benefits by an estimated amount.

**Estimating Offsets.** While a claim for Social Security or other Government Retirement Plan benefits is pending, the Insured Employee must elect one of the following options in writing. (If no written election is made, Monthly Benefits will be reduced in accord with Option 1.)

1. **Reduced Monthly Benefits.** The Insured Employee may receive Monthly Benefits reduced by estimated Social Security or other Government Retirement Plan benefits. The Company will adjust Policy benefits and will refund any underpayment, in a lump sum, upon receiving proof of:
   a. the amount actually awarded; or
   b. the claim denial and completion of any appeal the Company requires.

2. **Unreduced Monthly Benefits.** The Insured Employee may receive unreduced Monthly Benefits while the claim is pending. He or she must agree in writing to promptly refund any overpayment that results, in a lump sum, upon receiving Social Security or other Government Retirement Plan benefits. If he or she does not promptly refund an overpayment:
   a. the Company will reduce or eliminate future payments; and
   b. the Minimum Monthly Benefit will not apply, until the amount is repaid.

**Lump Sum Payments.** Other Income Benefits that are paid in a lump sum will be pro rated as follows.
1. The lump sum will be pro rated on a monthly basis, over the time period for which it is given.
2. If no time period is stated, the Company will continue its estimated monthly offset for that benefit, until full amount is offset.
3. If no estimated monthly offset was being made for that benefit, the lump sum will be pro rated on a monthly basis over a reasonable time period. It will not exceed 60 months or the Maximum Benefit Period (whichever occurs first).

**Cost-of-Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 147 of 200

LIN00147

## RECURRENT DISABILITY

**"Recurrent Disability"** means a Disability caused by an Injury or Sickness that is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1. **New Disability.** A Recurrent Disability will be treated as a new Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
   a. on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; and
   b. for six consecutive months or more following the date the prior Disability benefits ended.

   A new Elimination Period must be completed before further Monthly Benefits become payable. A new Maximum Benefit Period will apply.

2. **Prior Disability.** A Recurrent Disability will be treated as part of the prior Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
   a. on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; but
   b. for less than six consecutive months following the date the prior Disability benefits ended.

   The completion of a new Elimination Period is not required before further Monthly Benefits become payable. The same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well.

   In addition, a Recurrent Disability will be treated as a prior Disability if all of the subsequent events occur in less than six consecutive months following the date the prior Disability benefits end under this Policy:
   a. a job opening is not available for the Insured Employee to return to work with the Employer;
   b. the Insured Employee's coverage under this Policy terminates;
   c. the former Employee returns to his or her Own Occupation with a new employer on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits;
   d. benefits are not payable under any other group long-term disability plan; and
   e. a Recurrent Disability begins.

   Benefits for the former Employee will be reinstated for the Recurrent Disability and the completion of a new Elimination Period will not be required before further Monthly Benefits become payable. The same Maximum Benefit Period, Exclusions, and Limitations will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well. Benefits reinstated under this provision are subject to this Policy's terms and conditions that were in effect at the time the prior Disability began.

To qualify for a Monthly Benefit, the Insured Employee or former Employee must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of this Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Employee or former Employee who becomes eligible for coverage under any other group long-term disability plan.

GL3001-LTD 10 MO

30

-15 04
07/01/13

**LIN00148**

## EXCLUSIONS

**GENERAL EXCLUSIONS.** This Policy will not cover any period of Total or Partial Disability:
1. due to war, declared or undeclared, or any act of war;
2. due to intentionally self-inflicted injuries;
3. due to active participation in a riot;
4. due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5. during which the Insured Employee is incarcerated for the commission of a felony;
6. during which the Insured Employee is not under the Regular Care of a Physician; or
7. after the Insured Employee has resided outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer.

**PRE-EXISTING CONDITION EXCLUSION.** This Policy will not cover any Total or Partial Disability:
1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
2. which begins in the first 5 days after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 30 days prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician. It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

GL3001-LTD 10 MO

31

-16 10 MO 5-day Pre-Ex.
07/01/13

**LIN00149**

## SPECIFIED INJURIES OR SICKNESSES LIMITATION

LIMITATION. If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1. will be payable subject to the terms of this Policy; but
2. will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

CONDITIONS
1. If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2. In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

"**Hospital,**" as used in this provision, means:
1. a general hospital which:
   a. is licensed, approved or certified by the state where it is located; or
   b. is recognized by the Joint Commission on the Accreditation of Healthcare Organizations; and
   c. is operated to treat resident inpatients; has a registered nurse always on duty or call; and has a lab, x-ray facility and place where surgery is performed.
2. a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1. a Mental Hospital when treatment is for a Mental Sickness; and
2. a Treatment Center when treatment is for Substance Abuse.

"**Mental Hospital**" means a health care facility (or its psychiatric unit) which:
1. is licensed, certified or approved as a mental hospital by the state where it is located;
2. is equipped to treat resident inpatients' mental diseases or disorders; and
3. has a resident psychiatrist on duty or on call at all times.

"**Mental Sickness**" means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1. schizophrenia or schizoaffective disorder;
2. bipolar affective disorder, manic depression, or other psychosis; and
3. obsessive-compulsive, depressive, panic or anxiety disorders.
These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does not include irreversible dementia resulting from:
1. stroke, trauma, viral infection, Alzheimer's disease; or
2. other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

GL3001-LTD 10 MO

-17 04 MO Specified Limit.

07/01/13

32

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 150 of 200

LIN00150

"**Substance Abuse**" means alcoholism, drug abuse, or chemical dependency of any type.

"**Treatment Center**" means a health care facility (or its medical or psychiatric unit) which:
1. is licensed, certified or approved by the state where it is located;
2. has a program for inpatient treatment of substance abuse; and
3. provides such treatment based upon a written plan approved and supervised by a Physician.

LIN00151

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 151 of 200

## VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

BENEFIT. If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit. This Benefit consists of services which may include:
1. vocational evaluation, counseling, training or job placement;
2. job modification or special equipment; and
3. other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

ELIGIBILITY. An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1. has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2. has the physical and mental abilities needed to complete a Program; and
3. is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

AMOUNT. The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

CONDITIONS. Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation. When a Program is approved by the Company, this Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

LIMITATION. This Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

DEFINITIONS

**"Good Cause"**, as used in this provision, means the Insured Employee's:
1. documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2. involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3. participating in good faith in some other vocational rehabilitation program, which:
   a. conflicts with taking part in or completing a Program developed by the Company; and
   b. is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1. which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2. which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

GL3001-LTD 10 MO

-17.3 98 Voluntary Rehab.
07/01/13

34

LJN00152

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 152 of 200

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:
1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:
1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:
a. whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
b. who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
c. who is reasonably expected to return to work with the help of the proposed accommodation.
The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:
1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.
The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:
1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3001-LTD 10 MO

-17.3

07/01/13

**LIN00153**

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, this Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS. Subject to premium payments, this Policy will provide coverage to an Employee:
1. who was insured by the prior carrier's policy at the time of transfer; and
2. who was not Actively-At-Work due to Injury or Sickness on this Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force. The Company will pay:
1. the benefit that the prior carrier would have paid; minus
2. any amount for which the prior carrier is liable.

DISABILITY DUE TO A PRE-EXISTING CONDITION. Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
1. was insured by the prior carrier's policy at the time of transfer; and
2. was Actively-At-Work and insured under this Policy on this Policy's Effective Date.

The benefits will be determined as follows:
1. The Company will apply this Policy's Pre-Existing Condition Exclusion. If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to this Policy's benefit schedule.
2. If the Insured Employee cannot satisfy this Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
   a. this Policy without applying the Pre-Existing Condition Exclusion; or
   b. the prior carrier's policy;
   whichever is less.
3. If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of this Policy or that of the prior carrier, no benefit will be paid.

Prior Insurance Credit

GL3001-LTD 10 MO

-18 99

07/01/13

LIN00154

## FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1. after Disability had continued for 180 or more consecutive days; and
2. while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death. Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1. surviving spouse; or, if none
2. surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1. the surviving children, in equal shares; or
2. a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3001-LTD 10 MO

-19 94

07/01/13

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 155 of 200

LIN00155

## FAMILY CARE EXPENSE BENEFIT

**BENEFIT.** The Company will reimburse an Insured Employee's Family Care Expenses as described below, while he or she is:
1.  receiving a Partial Disability Monthly Benefit under this Policy; or
2.  receiving a Total Disability Benefit under this Policy, and:
    a.  is Terminally Ill;
    b.  has suffered a Cognitive Impairment; or
    c.  has suffered a Loss of Activities of Daily Living.

The Family Care Expense Benefit is paid in addition to all other Policy benefits and will not be offset by Other Income Benefits.

**PROOF.** The Insured Employee must submit to the Company satisfactory proof that a Family Care Expense has been incurred for a Dependent and paid by the Insured Employee. Proof must be submitted on a monthly basis. Satisfactory proof is a signed receipt from the Dependent care provider showing:
1.  Dependent name;
2.  Dependent age;
3.  if Dependent age exceeds the maximum shown in definition of "Dependent" below, reason for care;
4.  dates of care;
5.  total charges for care;
6.  total payments for care; and
7.  provider name, address, telephone number, and Federal Employer Identification Number/Taxpayer Identification Number.

**AMOUNT.** The Family Care Expense Benefit will equal actual Family Care Expenses paid by the Insured Employee that are not reimbursable from other sources, up to $250 per month for each eligible Dependent.

**DURATION.** The Family Care Expense Benefit will cease on the earliest of:
1.  the date the Insured Employee's Total or Partial Disability Benefits under this Policy cease;
2.  the date an Insured Employee's Dependents no longer meet the definition of Dependent in this provision; or
3.  the date the Company has made 12 monthly Family Care Expense Benefit payments.

**DEFINITIONS.**

**"Child"** includes the Insured Employee's naturally born child, legally adopted child, stepchild, foster child, or child for whom the Insured Employee is the legal guardian.

**"Cognitive Impairment"** means that the Insured Employee or Dependent:
1.  has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2.  requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician, based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

GL3001-LTD 10 MO

-41-FC

07/01/13

38

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 156 of 200

LIN00156

# FAMILY CARE EXPENSE BENEFIT
## (Continued)

**"Dependent"** means the Insured Employee's:
1. legal spouse, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition;
2. Child less than age 16;
3. unmarried Child age 16 years or older, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition; or
4. parent or parent-in-law, who is:
    a. living with the Insured Employee; and
    b. Incapable of Independent Living due to a mental or physical condition.

**"Family Care Expense"** means an expense for the care of a Dependent, charged by a licensed care provider who:
1. is not a member of the Insured Employee's immediate family; and
2. is not living in the Insured Employee's home.

**"Incapable of Independent Living"** means the Dependent:
1. is Terminally Ill;
2. suffers a Cognitive Impairment; or
3. suffers a Loss of Activities of Daily Living.

**"Loss of Activities of Daily Living"** means that the Insured Employee or Dependent has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** – washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** – putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** – getting to, from, on and off toilet and performing related personal hygiene.
4. **Transferring** – moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** – voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** – once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

**"Terminally Ill"** means the Insured Employee or Dependent has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

GL3001-LTD 10 MO

39

**LIN00157**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 157 of 200

## NOTICE CONCERNING COVERAGE LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Missouri who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state, to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And as noted below this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, MO 65109

Missouri Division of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. Included is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

MO NOTICE A 06

40

07/01/13

**LIN00158**

Generally, persons will be protected by the Life and Health Insurance Guaranty Association if they live in this state, and hold a life or health insurance contract, or an annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when:

1.  The person is eligible for protection under the laws of another state;
2.  The person purchased the insurance from a company that was not authorized to do business in this state;
3.  The policy is issued by an organization which is not a member insurer of the association; or
4.  The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

MO NOTICE A 06

07/01/13

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 159 of 200

LIN00159

# The Lincoln National Life Insurance Company

A Stock Company    Home Office Location:  Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

CERTIFIES THAT Group Policy No.        000010157326        has been issued to

Lester E. Cox Medical Center
(The Group Policyholder)

The Issue Date of the Policy is May 1, 2012.

Certificate of Insurance for Class 3
{INSURED}

**{Schedule of Insurance}**
          **{Coverage}**
     {BENEFIT_1}
     {BENEFIT_2}
     {BENEFIT_3}

You are entitled to the benefits described in this Certificate only if you are eligible, become and remain insured under the provisions of the Policy.  This Certificate replaces any other certificates for the benefits described inside.  As a Certificate of Insurance, it is not a contract of insurance; it only summarizes the provisions of the Policy and is subject to the Policy's terms.  If the provisions of this Certificate and the Policy do not agree, the provisions of the Policy will apply.

*Dennis R Glass*
President

## CERTIFICATE OF GROUP LONG TERM DISABILITY INSURANCE

LIN00160
Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 160 of 200

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 161 of 200
LIN00161

## SCHEDULE OF BENEFITS

PARTICIPATING EMPLOYERS:  Cox Monnett

ELIGIBLE CLASS means:  Class 3      All  Other  Full-Time  Employees  excluding  Regular  Part-time  Grandfathered Physicians

MINIMUM HOURS PER PAY PERIOD:  72

## LONG-TERM DISABILITY BENEFITS

WAITING PERIOD:      One year of continuous Active Work (For date insurance begins, refer to "Effective Dates" section)

BENEFIT PERCENTAGE:    60%

MAXIMUM MONTHLY BENEFIT:    $10,000

MINIMUM MONTHLY BENEFIT:    $50 or 15% of the Insured Employee's Monthly Benefit, whichever is greater

Long-Term Disability Benefits for PRE-EXISTING CONDITIONS will be subject to the Pre-Existing Condition Exclusion on the Exclusion page.

ELIMINATION PERIOD:  90 calendar days of Disability caused by the same or a related Sickness or Injury, which must be accumulated within a 180 calendar day period.

MAXIMUM  BENEFIT  PERIOD:  (For  Sickness,  Injury  or  Pre-Existing  Condition):    The  Insured Employee's  Social  Security  Normal  Retirement  Age,  or  the  Maximum  Benefit  Period  shown  below (whichever is later).

| Age at Disability | Maximum Benefit Period |
|---|---|
| Less than Age 60 | To Age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and Over | 12 months |

OWN OCCUPATION PERIOD means a period beginning at the end of the Elimination Period and ending 24 months later for Insured Employees.

GL3002-CERT 10 MO

-SB 10 (MO)
05/01/12

LLN00162

LIN00163

# TABLE OF CONTENTS

Definitions ........................................................................................... 3

General Provisions ................................................................................ 9

Claims Procedures............................................................................... 10

Eligibility ........................................................................................... 13

Effective Dates.................................................................................... 13

Individual Termination ........................................................................ 15

Conversion Privilege............................................................................ 17

Total Disability Monthly Benefit ........................................................... 18

Partial Disability Monthly Benefit.......................................................... 19

Other Income Benefits ......................................................................... 21

Recurrent Disability............................................................................. 24

Progressive Income Benefit................................................................... 25

Exclusions .......................................................................................... 27

Specified Injuries or Sicknesses Limitation ............................................ 28

Voluntary Vocational Rehabilitation Benefit Provision.............................. 30

Reasonable Accommodation Benefit ...................................................... 31

Prior Insurance Credit Upon Transfer of Insurance Carriers ..................... 32

Family Income Benefit.......................................................................... 33

Family Care Expense Benefit................................................................. 34

Notice................................................................................................. 36

GL3002-CERT 10 MO

2

-1
05/01/12

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 164 of 200

LIN00164

## DEFINITIONS

As used throughout the Policy, the following terms shall have the meanings indicated below. Other parts of the Policy contain definitions specific to those provisions.

**ACTIVE WORK** or **ACTIVELY AT WORK** means an Employee's full-time performance of all Main Duties of his or her Own Occupation, for the regularly scheduled number of hours, at:
1. the Employer's usual place of business; or
2. any other business location where the Employer requires the Employee to travel.

Unless disabled on the prior workday or on the day of absence, an Employee will be considered Actively at Work on the following days:
1. a Saturday, Sunday or holiday that is not a scheduled workday;
2. a paid vacation day or other scheduled or unscheduled non-workday; or
3. a non-medical leave of absence of 12 weeks or less, whether taken with the Employer's prior approval or on an emergency basis.

This includes a Military Leave or an approved Family or Medical Leave that is **not** due to the Employee's own health condition.

Bonus Eligible Employees, **ANNUAL SALARY** means the Insured Employee's **BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** multiplied by 12.

**BASIC MONTHLY EARNINGS** or **PREDISABILITY INCOME** means the Insured Employee's average monthly base salary or hourly pay from the Employer before taxes on the Determination Date. The "Determination Date" is the last day worked just prior to the date the Disability begins.

It also includes:

1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Employer just prior to that date, if shorter. The Insured Employee must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits or any other extra compensation. It does not include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records.

**FOR PRODUCTION-BASED EMPLOYEES BASIC MONTHLY EARNINGS or PREDISABILITY INCOME** means $1/13^{th}$ of the Insured Employee's production earnings from the Employer for the 13 months prior to the Determination Date. The "Determination Date" is the last day worked prior to the date of Disability. The Employee's production earnings are averaged over the 13 month period just prior to the Determination Date or over the actual period of employment with the Employer just prior to that date, if shorter.

It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Employer. It will not exceed the amount shown in the Employer's financial records, the amount for which premium has been paid, or the Maximum Covered Monthly Earnings permitted by this Policy; whichever is less. (Maximum Covered Monthly Earnings equals the Maximum Monthly Benefit divided by the Benefit Percentage shown in the Schedule of Benefits.) Exception: For purposes of determining the amount of the Partial Disability Monthly Benefit, Basic Monthly Earnings will not exceed the amount shown in the Employer's financial records

GL3002-CERT 10 MO

-2 10 MO
05/01/12

**LIN00165**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 165 of 200

## DEFINITIONS
### (continued)

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation. Its Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY** or **DATE** means the period of time that begins at 12:01 a.m. and ends at 12:00 midnight, standard time, at the Policyholder's place of business. When used with regard to effective dates, it means 12:01 a.m. When used with regard to termination dates, it means 12:00 midnight.

**DISABILITY** or **DISABLED** means Total Disability or Partial Disability.

**DISABILITY BENEFIT,** when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan due to disability as defined in that plan; and
2. does not reduce the benefits that would have been paid as Retirement Benefits at the normal retirement age under the plan if the disability had not occurred.

If the payment of the benefit does cause such a reduction, the benefit will be deemed a Retirement Benefit as defined in the Policy.

**ELIMINATION PERIOD** means the number of days of Disability during which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits. It applies as follows.
1. The Elimination Period:
   a. begins on the first day of Disability; and
   b. is satisfied when the required number of days is accumulated within a period which does not exceed two times the Elimination Period.
   During a period of Disability, the Insured Employee may return to full-time work, at his or her own or any other occupation, for an accumulated number of days not to exceed the Elimination Period.
2. Only days of Disability caused by the same or a related Sickness or Injury will count towards the Elimination Period. Days on which the Insured Employee returns to full-time work will not count towards the Elimination Period.

**EMPLOYEE** or **FULL-TIME EMPLOYEE** means a person:
1. whose employment with the Employer is the person's main occupation;
2. whose employment is for regular wage or salary;
3. who is regularly scheduled to work at such occupation at least the Minimum Hours Per Week shown in the Schedule of Benefits;
4. who is a member of an Eligible Class which is eligible for coverage under the Policy;
5. who is not a temporary or seasonal employee; and
6. who is a citizen of the United States or legally works in the United States.

**EMPLOYER** means the Policyholder. It includes any division, subsidiary or affiliated company named in the Application or Participation Agreement.

**EVIDENCE OF INSURABILITY** means a statement of proof of an Employee's medical history. The Company uses this to determine his or her acceptance for insurance or an increased amount of insurance. Such proof will be provided at the Employee's own expense.

GL3002-CERT 10 MO

-2 10 MO

4

05/01/12

LIN00166

## DEFINITIONS
### (continued)

**FAMILY OR MEDICAL LEAVE** means an approved leave of absence that:
1. is subject to the federal FMLA law (the Family and Medical Leave Act of 1993 and any amendments to it) or a similar state law;
2. is taken in accord with the Employer's leave policy and the law which applies; and
3. does not exceed the period approved by the Employer and required by that law.

Under the federal FMLA law, such leaves are permitted for up to 12 weeks in a 12-month period, as defined by the Employer. The 12 weeks:
1. may consist of consecutive or intermittent work days; or
2. may be granted on a part-time equivalency basis.

If an Employee is entitled to a leave under both the federal FMLA law and a similar state law, he or she may elect the more favorable leave (but not both). If an Employee is on an FMLA leave due to his or her own health condition on the date Policy coverage takes effect, he or she is not considered Actively at Work.

**FULL-TIME**, as it applies to the Partial Disability Monthly Benefit, means the average number of hours the Insured Employee was regularly scheduled to work, at his or her Own Occupation, during the month just prior to:
1. the date the Elimination Period begins; or
2. the date an approved leave of absence begins, if the Elimination Period begins while the Insured Employee is continuing coverage during a leave of absence.

**INJURY** means an accidental bodily Injury that:
1. requires treatment by a Physician; and
2. directly, and independently of all other causes, results in a Disability that begins while the Insured Employee is insured under the Policy.

**INSURANCE MONTH** or **POLICY MONTH** means that period of time:
1. beginning at 12:01 a.m. Standard Time, at the Policyholder's place of business on the first day of any calendar month; and
2. ending at 12:00 midnight on the last day of the same calendar month.

**INSURED EMPLOYEE** means an Employee for whom Policy coverage is in effect.

**MAIN DUTIES** or **MATERIAL AND SUBSTANTIAL DUTIES** means those job tasks that:
1. are normally required to perform the Insured Employee's Own Occupation; and
2. could not reasonably be modified or omitted.

To determine whether a job task could reasonably be modified or omitted, the Company will apply the Americans with Disabilities Act's standards concerning reasonable accommodation. It will apply the Act's standards, whether or not:
1. the Employer is subject to the Act; or
2. the Insured Employee has requested such a job accommodation.

An Employer's failure to modify or omit other job tasks does **not** render the Insured Employee unable to perform the Main Duties of the job.

GL3002-CERT 10 MO

-2 10 MO

05/01/12

LIN00167

Main Duties include those job tasks:
1.   as described in the U.S. Department of Labor Dictionary of Occupational Titles; and
2.   as performed in the general labor market and national economy.

Main Duties are not limited to those specific job tasks as performed for a certain firm or at a certain work site.

**MEDICALLY APPROPRIATE TREATMENT** means diagnostic services, consultation, care or services that are consistent with the symptoms or diagnosis causing the Insured Employee's Disability. Such treatment must be rendered:
1.   by a Physician whose license and any specialty are consistent with the disabling condition; and
2.   according to generally accepted, professionally recognized standards of medical practice.

**MILITARY LEAVE** means a leave of absence that:
1.   is subject to the federal USERRA law (the Uniformed Services Employment and Reemployment Rights Act of 1994 and any amendments to it);
2.   is taken in accord with the Employer's leave policy and the federal USERRA law; and
3.   does not exceed the period required by that law.

**MONTHLY BENEFIT** means the amount payable monthly by the Company to the Insured Employee who is Totally Disabled or Partially Disabled.

**OWN OCCUPATION** or **REGULAR OCCUPATION** means the occupation, trade or profession:
1.   in which the Insured Employee was employed with the Employer prior to Disability; and
2.   which was his or her main source of earned income prior to Disability.

It means a collective description of related jobs, as defined by the U.S. Department of Labor Dictionary of Occupational Titles. It includes any work in the same occupation for pay or profit, regardless of:
1.   whether such work is with the Employer, with some other firm, or on a self-employed basis; or
2.   whether a suitable opening is currently available with the Employer or in the local labor market.

**OWN OCCUPATION PERIOD** means a period as shown in the Schedule of Benefits.

GL3002-CERT 10 MO

-2 10 MO

05/01/12

6

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 168 of 200

LIN00168

**PARTIAL DISABILITY** or **PARTIALLY DISABLED** will be defined as follows.

1.  During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
    a.  is unable to perform one or more of the Main Duties of his or her Own Occupation; or is unable to perform such duties full-time; and
    b.  is engaged in Partial Disability Employment.
2.  After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee:
    a.  is unable to perform one or more of the Main Duties of any occupation which his or her training, education or experience will reasonably allow; or is unable to perform such duties full-time; and
    b.  is engaged in Partial Disability Employment.

**PARTIAL DISABILITY EMPLOYMENT** means the Insured Employee is working at his or her Own Occupation or any other occupation; however, because of a Partial Disability:

1.  the Insured Employee's hours or production is reduced;
2.  one or more Main Duties of the job are reassigned; or
3.  the Insured Employee is working in a lower-paid occupation.

During Partial Disability Employment, his or her current earnings:

1.  must be at least 20% of Predisability Income; and
2.  may not exceed the percentage specified in the Partial Disability Benefit section.

**PHYSICIAN** means:

1.  a legally qualified medical doctor who is licensed to practice medicine, to prescribe and administer drugs, or to perform surgery; or
2.  any other duly licensed medical practitioner who is deemed by state law to be the same as a legally qualified medical doctor.

The medical doctor or other medical practitioner must be acting within the scope of his or her license. He or she must be qualified to provide Medically Appropriate Treatment for the Insured Employee's disabling condition.

Physician does **not** include the Insured Employee or a relative of the Insured Employee receiving treatment. Relatives include:

1.  the Insured Employee's spouse, siblings, parents, children and grandparents; and
2.  his or her spouse's relatives of like degree.

**POLICY** means the group insurance Policy issued by the Company to the Policyholder.

**POLICYHOLDER** means the person, company, trust or other organization as shown on the Face Page of the Policy.

**PREDISABILITY INCOME**—See Basic Monthly Earnings definition.

**REGULAR CARE OF A PHYSICIAN** or **REGULAR ATTENDANCE OF A PHYSICIAN** means the Insured Employee:

1.  personally visits a Physician, as often as medically required according to standard medical practice to effectively manage and treat his or her disabling condition; and
2.  receives Medically Appropriate Treatment, by a Physician whose license and any specialty are consistent with the disabling condition.

Such care will be deemed medically necessary until the attending Physician certifies in writing that the Insured Employee has reached his or her maximum point of recovery and that further treatment would be useless.

**REGULAR OCCUPATION**—See Own Occupation or Regular Occupation definition.

GL3002-CERT 10 MO

-2 10 MO

LIN00169

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 169 of 200

## DEFINITIONS
### (continued)

**RETIREMENT BENEFIT**, when used with the term Retirement Plan, means a benefit that:
1. is payable under a Retirement Plan either in a lump sum or in the form of periodic payments;
2. does not represent contributions made by an Insured Employee (Payments representing Employee contributions are deemed to be received over the Insured Employee's expected remaining life, regardless of when they are actually received.); and
3. is payable upon:
   a. early or normal retirement; or
   b. disability (if the payment does reduce the benefit which would have been paid at the normal retirement age under the plan, if disability had not occurred).

**RETIREMENT PLAN** means a defined benefit or defined contribution plan that:
1. provides Retirement Benefits to Employees; and
2. is not funded wholly by Employee contributions.

The term shall not include any 401(k), profit-sharing or thrift plan; informal salary continuance plan; individual retirement account (IRA); tax sheltered annuity (TSA); stock ownership plan; or a non-qualified plan of deferred compensation.

An Employer's Retirement Plan is deemed to include any Retirement Plan:
1. which is part of any federal, state, county, municipal or association retirement system; and
2. for which the Insured Employee is eligible as a result of employment with the Employer.

**SICK LEAVE** or **SALARY CONTINUANCE PLAN** means a plan that:
1. is established and maintained by the Employer for the benefit of Employees; and
2. continues payment of all or part of an Insured Employee's Predisability Income for a specified period after he or she becomes Disabled.
It does not include compensation the Employer pays an Insured Employee for work actually performed during a Disability.

**SICKNESS** means illness, pregnancy or disease.

**TOTAL COVERED PAYROLL** means the total amount of Basic Monthly Earnings for all Employees insured under the Policy.

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows.
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.

**WAITING PERIOD** means the period of time an Employee must be employed in an eligible class with the Employer, before he or she becomes eligible to enroll for coverage under the Policy. The period of service must be continuous, except as explained in the Eligibility provision captioned Prior Service Credit Towards Waiting Period.

GL3002-CERT 10 MO

-2 10 MO
05/01/12

8

**LIN00170**

# GENERAL PROVISIONS

**ENTIRE CONTRACT.** The entire contract between the parties shall consist of:
1. the Policy and any amendments to it;
2. the Policyholder's application (a copy of which is attached to the Policy);
3. any Participating Employers' applications or Participation Agreements; and
4. any individual applications of the Insured Employees.

In the absence of fraud, all statements made by the Policyholder and by Insured Employees are representations and not warranties. No statement made by an Insured Employee will be used to contest the coverage provided by the Policy, unless:
1. it is contained in a written statement signed by that Insured Employee; and
2. a copy of the statement has been furnished to that Insured Employee.

**INCONTESTABILITY.** Except for the non-payment of premiums or fraud, the Company may not contest the validity of the Policy after it has been in force for two years from its date of issue; and as to any Insured Employee, after his or her coverage has been in force for two years during his or her lifetime. This clause does not preclude, at any time, the assertion of defenses based upon:
1. the Policy's eligibility requirements, exclusions and limitations; and
2. other Policy provisions unrelated to the validity of coverage.

**RESCISSION.** The Company has the right to rescind any insurance for which Evidence of Insurability was required, if:
1. an Insured Employee incurs a claim during the first two years of coverage; and
2. the Company discovers that the Insured Employee made a Material Misrepresentation on his or her application.

A **"Material Misrepresentation"** is an incomplete or untrue statement that caused the Company to issue coverage that it would have disapproved, had it known the truth. **"To rescind"** means to cancel insurance back to its effective date. In that event, the Company will refund all premium paid for the rescinded insurance, less any benefits paid for the Insured Employee's claims. The Company reserves the right to recover any claims paid in excess of such premiums.

**MISSTATEMENTS OF FACTS.** If relevant facts about any person were misstated:
1. a fair adjustment of the premium will be made; and
2. the true facts will decide if and in what amount insurance is valid under the Policy.

If an Insured Employee's age has been misstated, any benefits shall be in the amount the paid premium would have purchased at the correct age.

**POLICYHOLDER'S AGENCY.** For all purposes of the Policy, the Policyholder acts on its own behalf or as the Employee's agent. Under no circumstances will the Policyholder be deemed the Company's agent.

**CURRENCY.** In administering the Policy:
1. all Predisability Income will be expressed in U.S. dollars; and
2. all premium and benefit amounts must be paid in U.S. dollars.

**WORKERS' COMPENSATION OR STATE DISABILITY INSURANCE.** The Policy does not:
1. replace or provide; or
2. relieve the Policyholder of providing;

benefits required by:
1. Workers' Compensation laws; or
2. any state disability insurance plan laws.

**ASSIGNMENT.** The rights and benefits under this Certificate may not be assigned.

GL3002-CERT 10 MO

9

-5 04 MO
05/01/12

LIN00171

# CLAIMS PROCEDURES

**NOTICE OF CLAIM.**  Written notice of claim must be given within 20 days after the loss occurs, or by the end of the Elimination Period, if later.  The notice must be sent to the Company's Group Insurance Service Office.  It should include:
1.   the Insured Employee's name and address; and
2.   the number of the Policy.
If this is not possible, written notice must be given as soon as it is reasonably possible.

**CLAIM FORMS.**  When notice of claim is received, the Company will send claim forms to the Insured Employee.  If the Company does not send the forms within 15 days, the Insured Employee shall be deemed to have complied with the requirements of the Policy as to proof of loss upon submitting, within the time fixed in the  Policy for filing proof of loss, written proof covering the occurrence, character, and extent of the loss for which claim is made.  The Company will periodically send the Insured Employee additional claim forms.

**PROOF OF CLAIM.**  The Company must be given written proof of claim within 90 days after the end of the Elimination Period.  When it is not reasonably possible to give written proof in the time required, the claim will not be reduced or denied solely for this reason, if the proof is filed:
1.   as soon as reasonably possible; and
2.   in no event later than one year after it was required.
These time limits will not apply while an Insured Employee lacks legal capacity.

Proof of claim must be provided at the Insured Employee's own expense.  It must show the date the Disability began, its cause and degree.  Documentation must include:
1.   completed statements by the Insured Employee and the Employer;
2.   a completed statement by the attending Physician, which must describe any restrictions on the Insured Employee's performance of the duties of his or her Regular Occupation;
3.   proof of any other income received;
4.   proof of any benefits available from other income sources, which may affect Policy benefits;
5.   a signed authorization for the Company to obtain more information; and
6.   any other items the Company may reasonably require in support of the claim.
Proof of continued Disability, Regular Care of a Physician, and any Other Income Benefits affecting the claim must be given to the Company.  This must be supplied within 45 days after the Company requests it.  If it is not, benefits may be denied or suspended.

**EXAMINATION.**  The Company may have the Insured Employee examined:
1.   by a Physician, specialist or vocational rehabilitation expert of the Company's choice;
2.   as often as reasonably required while a claim or appeal is pending.

Any such exam will be at the Company's expense.

The Company may determine that (in its opinion) the Insured Employee has:
1.   failed to cooperate with an examiner;
2.   failed to take an exam scheduled by the Company; or
3.   postponed such an exam more than twice.
In that event, benefits may be denied or suspended, until the required exam is completed.

**TIME OF PAYMENT OF CLAIMS.**  Benefits payable under the Policy will be paid immediately after the Company receives complete proof of claim and confirms liability.  After that:
1.   Any benefits will be paid monthly, during any period for which the Company is liable.  If benefits are due for less than a month, they will be paid on a pro rata basis.  The daily rate will equal 1/30 of the Monthly Benefit.
2.   Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability.

GL3002-CERT 10 MO

-6 10 MO
05/01/12

LIN00172

**TO WHOM PAYABLE.** All benefits are payable to the Insured Employee, while living. After his or her death, benefits will be payable as follows.
1. Any Survivor Benefit will be payable in accord with that section.
2. Any other benefits will be payable to the Insured Employee's estate.

If a benefit becomes payable to:
1. the Insured Employee's estate; or
2. a minor or any other person who is not legally competent to give a valid receipt;

then up to $2,000 may be paid to any relative of the Insured Employee that the Company finds entitled to payment. If payment is made in good faith to such a relative, the Company will not have to pay that benefit again.

**NOTICE OF CLAIM DECISION.** The Company will send the Insured Employee a written notice of its claim decision. If the Company denies any part of the claim, the written notice will explain:
1. the reason for the denial, under the terms of the Policy and any internal guidelines;
2. how the Insured Employee may request a review of the Company's decision; and
3. whether more information is needed to support the claim.

This notice will be sent:
1. within 15 days after the Company resolves the claim;
2. within 30 days after the Company receives acceptable proof of claim; and
3. within 45 days after the Company receives the first proof of claim, if reasonably possible.

**Delay Notice.** The Company may need more than 15 days to process the claim, due to matters beyond its control. If so, an extension will be permitted. In that event, the Company will send the Insured Employee a written delay notice:
1. by the 15th day after receiving the first proof of claim; and
2. every 30 days after that, until the claim is resolved.

The notice will explain:
1. what additional information is needed to determine liability; and
2. when a decision can be expected.

If the Insured Employee does not receive a written decision by the 105th day after the Company receives the first proof of claim, there is a right to an immediate review, as if the claim was denied.

**Exception:** The Company may need more information from the Insured Employee to process a claim. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** Within 180 days after receiving a denial notice, the Insured Employee may request a claim review by sending the Company:
1. a written request; and
2. any written comments or other items to support the claim.

The Insured Employee may review certain non-privileged information relating to the request for review.

The Company will review the claim and send the Insured Employee a written notice of its decision. The notice will state the reasons for the Company's decision, under the terms of the Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim, the notice will also describe:
1. any further appeal procedures available under the Policy;
2. the right to access relevant claim information; and
3. the right to request a state insurance department review, or to bring legal action.

This notice will be sent within 45 days after the Company receives the request for review, or within 90 days if a special case requires more time.

LJN00173

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 173 of 200

## CLAIMS PROCEDURES
### (continued)

**Delay Notice.** If the Company needs more than 45 days to process an appeal, in a special case:
1. an extension of up to 45 more days will be permitted; and
2. the Company will send the Insured Employee a written delay notice, by the 30th day after receiving the request for review.

The notice will explain:
1. the special circumstances which require the delay;
2. whether more information is needed to review the claim; and
3. when a decision can be expected.

**Exception:** The Company may need more information from the Insured Employee to process an appeal. If so, it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under the Policy, the plan participant or beneficiary must first seek two administrative reviews of the adverse claim decision, in accord with this section. After the required reviews:
1. an ERISA plan participant or beneficiary may bring legal action under Section 502(a) of ERISA; and
2. the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any short-term disability or long-term disability claim, full reimbursement to the Company is required within 60 days. If reimbursement is not made, the Company has the right to:
1. reduce future benefits and suspend payment of the Minimum Monthly Benefit under the Policy, until full reimbursement is made;
2. reduce benefits payable to the Insured Employee or his or her beneficiary under any group insurance policy issued by the Company, until full reimbursement is made; or
3. recover such overpayments from the Insured Employee or his or her estate.

Such reimbursement is required whether the overpayment is due to:
1. the Company's error in processing a claim;
2. the Insured Employee's receipt of Other Income Benefits;
3. fraud, misrepresentation or omission of relevant facts; or
4. any other reason.

**LEGAL ACTIONS.** No legal action to recover any benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required.

GL3002-CERT 10 MO

-6 10 MO
05/01/12

LIN00174

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 174 of 200

## ELIGIBILITY

**ELIGIBLE CLASSES.** The classes of Employees eligible for insurance are shown in the Schedule of Benefits. The Company has the right to review and terminate any or all classes eligible under the Policy, if any class ceases to be covered by the Policy.

**ELIGIBILITY DATE.** An Employee becomes eligible for coverage provided by the Policy on the later of:
1. the Policy's date of issue; or
2. the date the Waiting Period is completed.

**Prior Service Credit Towards Waiting Period.** The Waiting Period is shown in the Schedule of Benefits. Prior service in an Eligible Class will apply toward the Waiting Period, when:
1. a former Employee is rehired within six months after his or her employment ends; or
2. an Employee returns from an approved Family or Medical Leave within:
   a. the 12-week leave period required by federal law; or
   b. any longer period required by a similar state law; or
3. an Employee returns from a Military Leave within the period required by federal USERRA law.

## EFFECTIVE DATES

**EFFECTIVE DATE.** An Employee's initial amount of coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date the Employee becomes eligible for the coverage;
2. the date the Employee resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
3. the date the Employee makes written application for coverage and signs;
   a. a payroll deduction order, if the Employees pay any part of the Policy premium; or
   b. an order to pay premiums from the Employee's Flexible Benefits Plan account, if premiums are paid through such an account; or
4. the date the Company approves the Employee's Evidence of Insurability, if required.

Any increased or additional coverage becomes effective at 12:01 a.m. on the latest of:
1. the first day of the Insurance Month coinciding with or next following the date on which the Insured Employee becomes eligible for the increase, if Actively at Work on that day;
2. the date the Insured Employee resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or
3. the date any required Evidence of Insurability is approved by the Company.

Any decrease will take effect on the day of the change, whether or not the Insured Employee is Actively at Work.

**EVIDENCE OF INSURABILITY.** Evidence of Insurability satisfactory to the Company must be submitted (at the Employee's expense) when:
1. an Employee makes written application for coverage (or an increased amount of coverage) more than 31 days after becoming eligible for the coverage;
2. an Employee makes written application to enroll for coverage after he or she has requested:
   a. to cancel insurance;
   b. to stop payroll deductions for the insurance; or
   c. to stop premium payments from the Flexible Benefits Plan account;
3. coverage is elected after the Employee has caused insurance to lapse, by failing to pay the required premium when due; or
4. optional, supplemental or voluntary coverage is elected in excess of any Guaranteed Issue Amounts shown in the Schedule of Benefits.

GL3002-CERT 10 MO

-7 04

05/01/12

LIN00175

## EFFECTIVE DATES
### (continued)

**EFFECTIVE DATE FOR CHANGE IN ELIGIBLE CLASS.** An Insured Employee may become a member of a different Eligible Class. Coverage under the different Eligible Class will be effective:
1. on the first day of the Insurance Month coinciding with or next following the date of the change;
2. except as stated in the Effective Date provision for increases or decreases.

**REINSTATEMENT RIGHTS.** If an Insured Employee's coverage terminates due to one of the following breaks in service, he or she will be entitled to reinstate the coverage upon resuming Active Work with the Employer within the required timeframe. **"Reinstatement"** or **"to reinstate"** means to re-enroll for Policy coverage, without satisfying a new Waiting Period or providing Evidence of Insurability. Reinstatement is available upon:
1. return from an approved Family or Medical Leave within:
   a. the 12-week period required by federal law; or
   b. any longer period required by a similar state law;
2. return from a Military Leave within the period required by federal USERRA law;
3. return from any other approved leave of absence within six months after the leave begins;
4. return within six months following a lay off; or
5. return within six months following termination of employment for any other reason.

To reinstate coverage, the Employee must apply for coverage or be re-enrolled within 31 days after resuming Active Work in an Eligible Class. The reinstated amount of insurance may not exceed the amount that terminated. Reinstatement will take effect on the date the Insured Employee returns to Active Work.

If the above conditions are met, then:
1. the months of leave will count towards any unmet Pre-Existing Condition Exclusion period; and
2. a new Pre-Existing Condition Exclusion will not apply to the reinstated amount of insurance.
A new Pre-Existing Condition Exclusion will apply to any increased amount of insurance.

GL3002-CERT 10 MO

14

-7 04
05/01/12

**LIN00176**

# INDIVIDUAL TERMINATION

**INDIVIDUAL TERMINATION OF COVERAGE.** An Insured Employee's coverage will terminate at 12:00 midnight on the earliest of:

1. the date the Policy or the Employer's participation terminates; but without prejudice to any claim incurred prior to termination;
2. the date the Insured Employee's Class is no longer eligible for insurance;
3. the date such Insured Employee ceases to be a member of an Eligible Class;
4. the last day of the Insurance Month in which the Insured Employee requests termination;
5. the last day of the Insurance Month for which premium payment is made on the Insured Employee's behalf;
6. the end of the period for which the last required premium has been paid;
7. with respect to a particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
8. the date which the Insured Employee's employment with the Employer terminates; unless coverage is continued as provided below; or
9. the date the Insured Employee enters the armed services of any state or country on active duty, except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Employee sends proof of military service, the Company will refund any unearned premium.)

**CONTINUATION RIGHTS.** Ceasing Active Work results in termination of the Insured Employee's eligibility for insurance, but coverage may be continued as follows.

1. **Disability.** If an Insured Employee is absent due to Total Disability, or is engaged in Partial Disability Employment, coverage may be continued during:
   a. the Elimination Period; provided the Company receives the required premium from the Employer; and
   b. the period for which benefits are payable, without payment of premium.
   Premium payments will be waived from the satisfaction of the Elimination Period until the end of the period for which benefits are payable. If coverage is to be continued following a period for which premiums were waived, premium payments must be resumed, as they become due.

2. **Family or Medical Leave.** If an Insured Employee goes on an approved Family or Medical Leave, and is **not** entitled to the more favorable continuation available during Disability, coverage may be continued, until the earliest of:
   a. the end of the leave period approved by the Employer;
   b. the end of the 12-week leave period required by federal law, or any more favorable period required by a similar state law;
   c. the date the Insured Employee notifies the Employer that he or she will not return; or
   d. the date the Insured Employee begins employment with another employer.
   The required premium payments must be received from the Employer, throughout the period of continued coverage.

3. **Military Leave.** If an Insured Employee goes on a Military Leave, coverage may be continued for the same period allowed for an approved Family or Medical Leave. The required premium payments must be received from the Employer, throughout the period of continued coverage.

4. **Lay-off or Other Leave.** When an Insured Employee ceases work due to a temporary lay-off, or due to an approved leave of absence (other than an approved Family or Medical Leave or a Military Leave); coverage may be continued for three Insurance Months after the lay-off or leave begins. The required premium payments must be received from the Employer, throughout the period of continued coverage.

GL3002-CERT 10 MO

-8 04

05/01/12

LIN00177

**Conditions.** In administering the above continuation, the Employer must not act so as to discriminate unfairly among Employees in similar situations. Insurance may **not** be continued when an Insured Employee ceases Active Work due to a labor dispute, strike, work slowdown or lockout.

**INDIVIDUAL TERMINATION DURING DISABILITY.** Termination of an Insured Employee's coverage during a Disability will have no effect on benefits payable for that period of Disability.

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 178 of 200

LIN00178

# CONVERSION PRIVILEGE

ELIGIBILITY. The Policy provides a conversion privilege, when an Insured Employee's insurance under the Policy ends because he or she:
1. resigns from employment with the Employer;
2. is terminated from employment with the Employer, with or without cause;
3. goes on a lay-off or leave of absence; or
4. remains on a lay-off or leave of absence beyond the continuation period provided in the Individual Termination section of the Policy.

The Insured Employee may obtain converted long term disability insurance, without medical evidence of insurability. To be eligible for a converted policy, the Insured Employee must have been insured under the Employer's group plan for at least 12 months in a row, just before his or her insurance under the Policy terminated. The 12 months can be a combination of coverages under the Policy, and under any prior group long term disability plan which the Policy replaces.

APPLICATION. Application to convert must be made within 31 days after insurance under the Policy terminates. The converted benefits and amount of insurance may differ from those under the Policy.

CONDITIONS AND LIMITATIONS. This conversion privilege is not available to any Insured Employee whose insurance terminates because:
1. the Policy is terminated by the Employer or the Company;
2. the Policy is amended to exclude the class to which the Insured Employee belongs:
3. the Insured Employee no longer belongs to a class eligible for coverage under the Policy;
4. the Insured Employee retires or dies;
5. the Insured Employee fails to pay the required premium; or
6. the Insured Employee is Disabled under the terms of the Policy.

Also, this conversion privilege is not available to an Insured Employee who becomes insured for long term disability benefits under any other group plan; unless the other coverage takes effect more than 31 days after his or her insurance under the Policy terminates.

If an Insured Employee converts his or her Policy coverage, and later resumes active employment in an eligible class; then the Insured Employee's conversion coverage will terminate on the day before he or she is re-enrolled under the Policy. In no event will benefits be under both the Policy and the conversion coverage for the same period of Disability.

Conversion Privilege

GL3002-CERT 10 MO

-8.1

05/01/12

LIN00179

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 179 of 200

# TOTAL DISABILITY MONTHLY BENEFIT

**BENEFIT**. The Company will pay a Total Disability Monthly Benefit to an Insured Employee, after the completion of the Elimination Period, if he or she:
1. is Totally Disabled;
2. becomes Disabled while insured for this benefit;
3. is under the Regular Care of a Physician; and
4. at his or her own expense, submits proof of continued Total Disability and Physician's care to the Company upon request.

The Total Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Totally Disabled or dies;
2. the date the Maximum Benefit Period ends; or
3. the date the Insured Employee is able, but chooses not to engage in Partial Disability Employment:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Total Disability.

At the Company's option, Total Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

**AMOUNT**. The amount of the Total Disability Monthly Benefit equals:
1. the Insured Employee's Basic Monthly Earnings multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
2. Other Income Benefits.

The amount of the Total Disability Monthly Benefit will not be less than the Minimum Monthly Benefit.

The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

GL3002-CERT 10 MO

Any Occ, Standard Integ.
-9 10 MO
05/01/12

LIN00180

## PARTIAL DISABILITY MONTHLY BENEFIT

**BENEFIT.** The Company will pay a Partial Disability Monthly Benefit to an Insured Employee, after completion of the Elimination Period, if he or she:
1. is Disabled;
2. becomes Disabled while insured for this benefit;
3. is engaged in Partial Disability Employment;
4. is earning at least 20% of Predisability Income when Partial Disability Employment begins;
5. is under the Regular Care of a Physician, if required; and
6. at his or her own expense, submits proof of continued Partial Disability, Physician's care and reduced earnings to the Company upon request.

The Insured Employee does not have to be Totally Disabled prior to receiving Partial Disability Monthly Benefits. The Elimination Period may be satisfied by days of Total Disability, Partial Disability or any combination of these.

The Partial Disability Monthly Benefit will cease on the earliest of:
1. the date the Insured Employee ceases to be Partially Disabled or dies;
2. the date the Maximum Benefit Period ends;
3. the date the Insured Employee earns more than:
   a. 99% of Predisability Income, until Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability; or
   b. 85% of Predisability Income, after Partial Disability Monthly Benefits have been paid for 24 months for the same period of Disability;
4. the date the Insured Employee is able, but chooses not to work full-time:
   a. in his or her Own Occupation, during the Own Occupation Period; or
   b. in any occupation, after the Own Occupation Period.

Proportional benefits will be paid for a partial month of Partial Disability.

At the Company's option, Partial Disability Monthly Benefit payments may also be denied or suspended on any of the following dates:
1. the date the Insured Employee (without good cause):
   a. fails to take a required medical exam;
   b. fails to cooperate with the examiner; or
   c. postpones a required exam more than twice;
2. the 45th day after the Company mails a request for additional proof, if not given; or
3. the 45th day after the Company mails a request for proof of the Insured Employee's application for any Other Income Benefits to which he or she may be entitled, if not given.

GL3002-CERT 10 MO

-10 05 MO Any Occ Def. Res
05/01/12

**LIN00181**

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 181 of 200

## PARTIAL DISABILITY MONTHLY BENEFIT
### (Continued)

BENEFIT AMOUNT. The Partial Disability Monthly Benefit will replace the Insured Employee's Lost Income; provided it does not exceed the Total Disability Monthly Benefit, which would otherwise be payable during Total Disability without the Partial Disability Employment.

Thus, the amount of the Partial Disability Monthly Benefit will equal the lesser of A or B below.

    A.   LOST INCOME: The Insured Employee's Predisability Income, minus all Other Income Benefits (including earnings from Partial Disability Employment).

    B.   TOTAL DISABILITY MONTHLY BENEFIT otherwise payable:
        1.   The Insured Employee's Predisability Income multiplied by the Benefit Percentage (limited to the Maximum Monthly Benefit); minus
        2.   Other Income Benefits, except for earnings from Partial Disability Employment.

The Partial Disability Monthly Benefit will never be less than the Minimum Monthly Benefit. The Benefit Percentage, Maximum Monthly Benefit, Minimum Monthly Benefit, and Maximum Benefit Period are shown in the Schedule of Benefits.

Progressive Calculation

GL3002-CERT 10 MO

-10.4
05/01/12

**LIN00182**

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 182 of 200

# OTHER INCOME BENEFITS

**OTHER INCOME BENEFITS** means benefits, awards, settlements or Earnings from the following sources. These amounts will be offset, in determining the amount of the Insured Employee's Monthly Benefit. Except for Retirement Benefits and Earnings, these amounts must result from the same Disability for which a Monthly Benefit is payable under the Policy.

**Workers' Compensation.** Any benefits for which the Insured Employee is eligible under a law that compensates for job related Injury or Sickness. This includes:
1. any Workers' Compensation or occupational disease law;
2. the Jones Act;
3. the Longshoreman's and Harbor Worker's Act;
4. the Maritime Doctrine of Maintenance, Wages or Cure; or
5. any plan provided in place of one of the above plans.

It includes any benefits for partial or total disability, whether temporary or permanent. It also includes any benefits for vocational rehabilitation.

**Other Compulsory Benefits.** Any disability income benefits the Insured Employee is eligible to receive under any other compulsory benefit act or law. This includes (but is not limited to):
1. state temporary disability income benefit laws;
2. state no fault auto insurance laws; or
3. any other compulsory benefit act or law.

**Other Insurance Plans.** Any disability income benefits for which the Insured Employee is eligible under:
1. any other group insurance plan (except credit or mortgage insurance); or
2. any no fault auto plan.

**Employee Benefit Plans.** Any disability income benefits for which the Insured Employee is eligible under the Employer's Sick Leave or Salary Continuance Plan. This does **not** include vacation pay, severance pay or pay for work actually performed during a Disability.

**Employer's Retirement Plan.** Any Disability Benefits or Retirement Benefits the Insured Employee receives under the Employer's Retirement Plan.

**Social Security and other Government Retirement Plans.** The following Social Security or other Government Retirement Plan benefits will be offset:
1. **disability benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's Disability;
2. **unreduced retirement benefits** for which the Insured Employee is eligible; and for which any spouse or child is eligible, because of the Insured Employee's eligibility for unreduced retirement benefits; or
3. **reduced retirement benefits** actually received by the Insured Employee; and by any spouse or child, because of the Insured Employee's receipt of reduced retirement benefits.

As used above, "**Government Retirement Plans**" include disability and retirement benefits under:
1. the federal Social Security Act, Jones Act or Railroad Retirement Act;
2. the Canada Pension Plan or Quebec Pension Plan;
3. any similar plan or act of any country, state, province or other political unit; or
4. any plan provided in place of one of the above plans.

GL3002-CERT 10 MO

-11-INT 10 MO Prim & Fam SS Integ.
05/01/12

LIN00183

Case 3:17-cv-05060-MDH   Document 35-1   Filed 05/15/18   Page 183 of 200

## OTHER INCOME BENEFITS
### (continued)

"**Earnings**", as used in this provision, means pay the Insured Employee earns or receives from any occupation or form of employment, as reported for federal income tax purposes. Earnings include (but are not limited to) a:

1. salaried or hourly Employee's gross earnings (shown on Form W-2); including:
   a. wages, tips, commissions, bonuses and overtime pay; and
   b. any pre-tax contributions to a Section 125 Plan, flexible spending account, or qualified deferred compensation plan;
2. proprietor's net profit (figured from Form 1040, Schedule C);
3. professional corporation shareholder's net profit (figured from Form 1040, Schedule C);
4. partner's net earnings from self-employment (shown on Schedule K-1) and any W-2 earnings; and
5. Subchapter S Corporation shareholder's net earnings from trade or business activities (shown on Schedule K-1).

**Exceptions.** The following will **not** be considered Other Income Benefits, and will not be offset in determining the Monthly Benefit:

1. a cost-of-living increase in any Other Income Benefit (except Earnings); if it takes effect after the first offset for that benefit during a period of Disability;
2. reimbursement for hospital, medical or surgical expense;
3. reimbursement for attorney fees and other reasonable costs of claiming Other Income Benefits;
4. group credit or mortgage disability insurance benefits;
5. early retirement benefits that are not elected or received under the federal Social Security Act or other Government Retirement Plan;
6. any amounts under the Employer's Retirement Plan that:
   a. represent the Insured Employee's contributions; or
   b. are received upon termination of employment without being disabled or retired;
7. benefits from a 401(k), profit-sharing or thrift plan; an individual retirement account (IRA); a tax sheltered annuity (TSA); a stock ownership plan; or a non-qualified plan of deferred compensation;
8. vacation pay, holiday pay, or severance pay; or
9. disability income benefits under any individual policy, association group plan, franchise plan, or auto liability insurance policy (except no fault auto insurance).

GL3002-CERT 10 MO

-11-INT 10 MO Prim & Fam SS Integ.

22

05/01/12

**LIN00184**

**RULES FOR OTHER INCOME BENEFIT OFFSETS**. If the Insured Employee may be entitled to Other Income Benefits that affect Policy benefits, the following rules will apply.

**Claiming Other Income Benefits.** An Insured Employee who may be entitled to some Other Income Benefit is required to actively pursue it. For example, if benefits may be payable under the federal Social Security Act, the Insured Employee:
1.    must apply for such benefits on a timely basis;
2.    must file a request for reconsideration, if benefits are denied; and
3.    must request a hearing before an Administrative Law Judge, if denied again (unless the Company waives this in writing).

An Employer whose Insured Employee may be entitled to Workers' Compensation or similar benefits is also required to cooperate in filing that claim. If the Insured Employee fails to pursue Other Income Benefits on a timely basis, the Company has the option to:
1.    deny or suspend Monthly Benefits; or
2.    reduce Monthly Benefits by an estimated amount.

**Estimating Offsets.** While a claim for Social Security or other Government Retirement Plan benefits is pending, the Insured Employee must elect one of the following options in writing. (If no written election is made, Monthly Benefits will be reduced in accord with Option 1.)

1.    **Reduced Monthly Benefits.** The Insured Employee may receive Monthly Benefits reduced by estimated Social Security or other Government Retirement Plan benefits. The Company will adjust Policy benefits and will refund any underpayment, in a lump sum, upon receiving proof of:
      a.    the amount actually awarded; or
      b.    the claim denial and completion of any appeal the Company requires.

2.    **Unreduced Monthly Benefits.** The Insured Employee may receive unreduced Monthly Benefits while the claim is pending. He or she must agree in writing to promptly refund any overpayment that results, in a lump sum, upon receiving Social Security or other Government Retirement Plan benefits. If he or she does not promptly refund an overpayment:
      a.    the Company will reduce or eliminate future payments; and
      b.    the Minimum Monthly Benefit will not apply, until the amount is repaid.

**Lump Sum Payments.** Other Income Benefits that are paid in a lump sum will be pro rated as follows.
1.    The lump sum will be pro rated on a monthly basis, over the time period for which it is given.
2.    If no time period is stated, the Company will continue its estimated monthly offset for that benefit, until full amount is offset.
3.    If no estimated monthly offset was being made for that benefit, the lump sum will be pro rated on a monthly basis over a reasonable time period. It will not exceed 60 months or the Maximum Benefit Period (whichever occurs first).

**Cost-of-Living Freeze.** After the first deduction for each of the Other Income Benefits (except Earnings), its amount will be frozen. The Monthly Benefit will not be further reduced due to any cost-of-living increases payable under these Other Income Benefits.

Case 3:17-cv-05060-MDH      Document 35-1      Filed 05/15/18      Page 185 of 200

LIN00185

# RECURRENT DISABILITY

**"Recurrent Disability"** means a Disability caused by an Injury or Sickness that is the same as, or related to, the cause of a prior Disability for which Monthly Benefits were payable. A Recurrent Disability will be treated as follows.

1.  **New Disability.** A Recurrent Disability will be treated as a new Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
    a.  on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; and
    b.  for six consecutive months or more following the date the prior Disability benefits ended.

    A new Elimination Period must be completed before further Monthly Benefits become payable. A new Maximum Benefit Period will apply.

2.  **Prior Disability.** A Recurrent Disability will be treated as part of the prior Disability, if the Recurrent Disability begins after the Insured Employee returns to his or her Own Occupation with the Employer:
    a.  on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits; but
    b.  for less than six consecutive months following the date the prior Disability benefits ended.

    The completion of a new Elimination Period is not required before further Monthly Benefits become payable. The same Maximum Benefit Period will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well.

    In addition, a Recurrent Disability will be treated as a prior Disability if all of the subsequent events occur in less than six consecutive months following the date the prior Disability benefits end under the Policy:
    a.  a job opening is not available for the Insured Employee to return to work with the Employer;
    b.  the Insured Employee's coverage under the Policy terminates;
    c.  the former Employee returns to his or her Own Occupation with a new employer on a full-time basis working at least the Minimum Number of Hours Per Week as shown in the Schedule of Benefits;
    d.  benefits are not payable under any other group long-term disability plan; and
    e.  a Recurrent Disability begins.

    Benefits for the former Employee will be reinstated for the Recurrent Disability and the completion of a new Elimination Period will not be required before further Monthly Benefits become payable. The same Maximum Benefit Period, Exclusions, and Limitations will apply to the Recurrent Disability as to the prior Disability. The Predisability Income used in determining the prior Disability benefit will apply as well. Benefits reinstated under this provision are subject to the Policy's terms and conditions that were in effect at the time the prior Disability began.

To qualify for a Monthly Benefit, the Insured Employee, or former Employee, must earn less than the percentage of Predisability Income specified in the Partial Disability Monthly Benefit section. Monthly Benefit payments will be subject to all other terms of the Policy that applied to the prior Disability.

This Recurrent Disability provision will cease to apply to an Insured Employee, or former Employee, who becomes eligible for coverage under any other group long-term disability plan.

GL3002-CERT 10 MO

-12 04
05/01/12

LIN00186

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 186 of 200

**PROGRESSIVE INCOME BENEFIT**

**EFFECTIVE DATE.** An Insured Employee will become insured for the Progressive Income Benefit on:
1. the effective date of his or her coverage for Long Term Disability Benefits under the Policy; or
2. the effective date of this provision, if it is added later by amending the Policy.

**Exception:** The effective date will be delayed for an Insured Employee who is unable to perform one or more Activities of Daily Living or suffers from a Cognitive Impairment on that date. In that event, the Insured Employee will become insured for this benefit on the first day he or she:
1. is able to safely and completely perform all of the Activities of Daily Living without another person's active, hands-on help; or
2. no longer suffers from a Cognitive Impairment.

**BENEFIT.** After completion of the Elimination Period shown in the Schedule of Insurance, the Company will pay an additional monthly benefit to an Insured Employee; if he or she:
1. is receiving Total Disability or Partial Disability Monthly Benefits under the Policy; and
2. submits proof of suffering the Loss of Activities of Daily Living or a Cognitive Impairment (as defined below).

Proof must be submitted at the Insured Employee's own expense.

**AMOUNT.** The amount of the Progressive Income Benefit:
1. will equal 10% of the Insured Employee's Basic Monthly Earnings; but
2. will not exceed the Maximum Monthly Benefit for Long Term Disability Benefits, or $5,000 per month (whichever is less).

The Maximum Monthly Benefit for Long Term Disability Benefits is shown in the Schedule of Insurance. The Progressive Income Benefit will not be reduced by any Other Income Benefits, or by earnings from any form of employment.

**DURATION.** This Progressive Income Benefit will cease on the earliest of:
1. the date the Insured Employee no longer suffers from the Loss of Activities of Daily Living or Cognitive Impairment (as defined below);
2. the date the Insured Employee is no longer entitled to Total Disability or Partial Disability Monthly Benefits under the Policy;
3. the date the Maximum Benefit Period ends; or
4. the date the Insured Employee dies.

If the Policy includes a Family Income Benefit, the amount paid to the Eligible Surviving Spouse or Children will not increase due to the Insured Employee's receipt of this Progressive Income Benefit.

**DEFINITIONS**

**"Loss of Activities of Daily Living"** means that, due to an Injury or Sickness, the Insured Employee has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** - washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** - putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** - getting to, from, on and off toilet; and performing related personal hygiene.
4. **Transferring** - moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** - voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** - once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

GL3002-CERT 10 MO

25

-12D 01 ADL Benefit (MO)

05/01/12

**LIN00187**

**"Cognitive Impairment"** means that due to an Injury or Sickness, the Insured Employee:

1.  has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2.  requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

**"Mental Sickness"** as used in this provision, means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:

1.  schizophrenia or schizoaffective disorder;
2.  bipolar affective disorder, manic depression, or other psychosis; and
3.  obsessive-compulsive, depressive, panic or anxiety disorders.

These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from stroke; trauma; viral infection; Alzheimer's disease; or other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

**"Pre-Existing Condition,"** as used in this provision, means a Sickness or Injury for which the Insured Employee received treatment within 3 months prior to his or her effective date for this benefit. Treatment includes a Physician's consultation, care and services; diagnostic measures; and the prescription, refill or taking of prescribed drugs or medicines.

## EXCLUSIONS AND LIMITATIONS

**Prior Disability.** This benefit will not be payable during a period of Disability which begins before the Insured Employee's effective date of coverage under this benefit.

**Pre-Existing Conditions.** This benefit will not be payable for a Loss of Activities of Daily Living or Cognitive Impairment:

1.  which is caused or contributed to by, or results from a Pre-Existing Condition (as defined above); and
2.  which begins in the first 12 months after the Insured Employee's effective date under this benefit; unless the Insured Employee received no Treatment of the condition for 6 consecutive months after his or her effective date under this benefit.

**Mental Sickness and Substance Abuse.** This benefit will not be payable during a period of Disability which is caused or contributed to by or results from a Mental Sickness, alcoholism, or voluntary use of a Controlled Substance; unless prescribed by a Physician. Controlled Substances are those defined as such in Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, and any amendments to it.

**Other Provisions.** This benefit will be subject to all of the Definitions, Exclusions, Proof of Claim, Waiver of Premium and other provisions of the Policy.

GL3002-CERT 10 MO

-12D 01 ADL Benefit (MO)

05/01/12

LIN00188

## EXCLUSIONS

**GENERAL EXCLUSIONS.** The Policy will not cover any period of Total or Partial Disability:
1. due to war, declared or undeclared, or any act of war;
2. due to intentionally self-inflicted injuries;
3. due to active participation in a riot;
4. due to the Insured Employee's committing of or the attempting to commit a felony or any type of assault or battery;
5. during which the Insured Employee is incarcerated for the commission of a felony;
6. during which the Insured Employee is not under the Regular Care of a Physician; or
7. after the Insured Employee has resided outside the United States or Canada for more than 12 consecutive benefit months for purposes other than employment with the Employer.

**PRE-EXISTING CONDITION EXCLUSION.** The Policy will not cover any Total or Partial Disability:
1. which is caused or contributed to by, or results from a Pre-Existing Condition; and
2. which begins in the first 5 days after the Insured Employee's Effective Date.

"Pre-Existing Condition" means a Sickness or Injury for which the Insured Employee received treatment within 30 days prior to the Insured Employee's Effective Date.

"Treatment" means consultation, care or services provided by a Physician. It includes diagnostic measures and the prescription, refill of prescription, or taking of any prescribed drugs or medicines.

GL3002-CERT 10 MO

-13 10 MO 5-Day Pre-Ex.
05/01/12

LIN00189

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 189 of 200

# SPECIFIED INJURIES OR SICKNESSES LIMITATION

LIMITATION. If an Insured Employee is Disabled primarily due to one or more of the Specified Injuries or Sicknesses defined below; then Partial or Total Disability Monthly Benefits:
1.    will be payable subject to the terms of the Policy; but
2.    will be limited to 24 months for any one period of Disability; unless the Insured Employee is confined to a Hospital.

"Specified Injuries or Sicknesses" include any Mental Sickness, or Substance Abuse, as defined below.

CONDITIONS
1.    If the Insured Employee is confined in a Hospital at the end of the 24th month for which Policy benefits are paid for the Specified Injury or Sickness; then benefits will be payable until he or she is discharged from that facility.
2.    In no event will the Monthly Benefit be paid beyond the Maximum Benefit Period shown in the Schedule of Insurance, however.

DEFINITIONS

**"Hospital,"** as used in this provision, means:
1.    a general hospital which:
   a.    is licensed, approved or certified by the state where it is located; or
   b.    is recognized by the Joint Commission on the Accreditation of Healthcare Organizations; and
   c.    is operated to treat resident inpatients; has a registered nurse always on duty or call; and has a lab, x-ray facility and place where surgery is performed.
2.    a skilled nursing care facility or unit, which provides convalescent or nursing care; and which is recognized as a skilled nursing care facility under Medicare.
The term Hospital also includes:
1.    a Mental Hospital when treatment is for a Mental Sickness; and
2.    a Treatment Center when treatment is for Substance Abuse.

**"Mental Hospital"** means a health care facility (or its psychiatric unit) which:
1.    is licensed, certified or approved as a mental hospital by the state where it is located;
2.    is equipped to treat resident inpatients' mental diseases or disorders; and
3.    has a resident psychiatrist on duty or on call at all times.

**"Mental Sickness"** means any emotional, behavioral, psychological, personality, adjustment, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome; regardless of its cause. It includes, but is not limited to:
1.    schizophrenia or schizoaffective disorder;
2.    bipolar affective disorder, manic depression, or other psychosis; and
3.    obsessive-compulsive, depressive, panic or anxiety disorders.
These conditions are usually treated by a psychiatrist, a clinical psychologist or other qualified mental health care provider. Treatment usually involves psychotherapy, psychotropic drugs or similar methods of treatment.

Mental Sickness does **not** include irreversible dementia resulting from:
1.    stroke, trauma, viral infection, Alzheimer's disease; or
2.    other conditions which are not usually treated by a mental health care provider using psychotherapy, psychotropic drugs, or similar methods of treatment.

GL3002-CERT 10 MO

-14 04 MO Specified Limit.
05/01/12

28

LIN00190

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 190 of 200

"**Substance Abuse**" means alcoholism, drug abuse, or chemical dependency of any type.

"**Treatment Center**" means a health care facility (or its medical or psychiatric unit) which:
1.  is licensed, certified or approved by the state where it is located;
2.  has a program for inpatient treatment of substance abuse; and
3.  provides such treatment based upon a written plan approved and supervised by a Physician.

# VOLUNTARY VOCATIONAL REHABILITATION BENEFIT PROVISION

**BENEFIT.** If an Insured Employee is Disabled and is receiving Policy benefits; then he or she may be eligible for a Vocational Rehabilitation Benefit. This Benefit consists of services which may include:
1. vocational evaluation, counseling, training or job placement;
2. job modification or special equipment; and
3. other services which the Company deems reasonably necessary to help the Insured Employee return to work.

The Company will determine the Insured Employee's eligibility and the amount of any Benefit payable.

**ELIGIBILITY.** An Insured Employee may be eligible for this Benefit, if the Company finds that he or she:
1. has a Disability that prevents the performance of his or her regular occupation; and, after the Own Occupation Period, also lacks the skills, training or experience needed to perform any other gainful occupation;
2. has the physical and mental abilities needed to complete a Program; and
3. is reasonably expected to return to work after completing the Program; in view of his or her degree of motivation and the labor force demand for workers in the proposed occupation.

The Company must also find that the cost of the proposed services is less than its expected claim liability.

**AMOUNT.** The amount of any Vocational Rehabilitation Benefit will not exceed the Company's expected claims liability. This benefit will not be payable for services covered under the Insured Employee's health care plan or any other vocational rehabilitation program. Payment may be made to the provider of the services, at the Company's option.

**CONDITIONS.** Either the Company, the Insured Employee, or his or her Physician may first propose vocational rehabilitation. When a Program is approved by the Company, the Policy's definition of "Disability" will be waived during the rehabilitation period; but it will be reapplied after the Program ends. The Company will determine the amount and duration of any Long Term Disability benefits payable after the Program ends.

**LIMITATION.** The Policy will not cover any period of Disability for an Insured Employee who has received a Vocational Rehabilitation Benefit and has failed to complete the Program, without Good Cause.

## DEFINITIONS

**"Good Cause"**, as used in this provision, means the Insured Employee's:
1. documented physical or mental impairments, which render the Insured Employee unable to take part in or complete a Program;
2. involvement in a medical program, which prevents or interferes with the Insured Employee's taking part in or completing a Program; or
3. participating in good faith in some other vocational rehabilitation program, which:
   a. conflicts with taking part in or completing a Program developed by the Company; and
   b. is reasonably expected to return the Insured Employee to work.

**"Program"** means a written vocational rehabilitation program:
1. which the Company develops with input from the Insured Employee; his or her Physician; and any current or prospective employer, when appropriate; and
2. which describes the Program's goals; each party's responsibilities; and the times, dates and costs of the rehabilitation services.

GL3002-CERT 10 MO

-14.3 98 Voluntary Rehab.
05/01/12

LIN00192

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 192 of 200

## REASONABLE ACCOMMODATION BENEFIT

If an Insured Employee of the Employer is Disabled, and is receiving Policy benefits; then the Employer may be eligible for a Reasonable Accommodation Benefit. This Benefit reimburses the Employer for 50% of the expense incurred for reasonable accommodation services for the Insured Employee; but will not exceed:
1. a maximum benefit of $5,000 for any one Insured Employee; or
2. the Company's expected liability for the Insured Employee's Long Term Disability claim (whichever is less).

Such services may include:
1. providing the Insured Employee a more accessible parking space or entrance;
2. removing barriers or hazards to the Insured Employee from the worksite;
3. special seating, furniture or equipment for the Insured Employee's work station;
4. providing special training materials or translation services during the Insured Employee's training; and
5. other services the Company deems reasonably necessary to help the Insured Employee return to work with the Employer.

ELIGIBILITY FOR BENEFIT. The Company will determine the Employer's eligibility to receive the Benefit. To qualify for the Benefit, the Employer must have an Insured Employee:
1. whose Disability prevents the performance of his or her regular occupation at the Employer's worksite;
2. who has the physical and mental abilities needed to perform his or her own or another occupation at the Employer's worksite; but only with the help of the proposed accommodation; and
3. who is reasonably expected to return to work with the help of the proposed accommodation.
The Company must also find that the requested Reasonable Accommodation Benefit is less than the expected liability for the Insured Employee's Long Term Disability claim.

WRITTEN PROPOSAL. The reasonable accommodation services must be provided in accord with a written proposal, which is developed with input from:
1. the Employer;
2. the Insured Employee; and
3. his or her Physician, when appropriate.
The proposal must state the purpose of the proposed accommodation; and the times, dates and costs of the services.

CONDITIONS. Either the Company, the Employer, the Insured Employee, or his or her Physician may first propose an accommodation.

The proposal must be approved by the Company in writing.

The Company will then reimburse the Employer, upon receipt of proof that the Employer:
1. has provided the services for the Insured Employee; and
2. has paid the provider for the services.

GL3002-CERT 10 MO

-14.3

05/01/12

LIN00193

## PRIOR INSURANCE CREDIT UPON TRANSFER OF INSURANCE CARRIERS

To prevent loss of coverage for an Employee because of a transfer of insurance carriers, the Policy will provide Prior Insurance Credit for employees insured under the prior carrier's policy on its termination date as follows.

**FAILURE TO BE ACTIVELY-AT-WORK DUE TO INJURY OR SICKNESS.** Subject to premium payments, the Policy will provide coverage to an Employee:
1. who was insured by the prior carrier's policy at the time of transfer; and
2. who was not Actively-At-Work due to Injury or Sickness on the Policy's Effective Date.

The coverage will be that provided by the prior carrier's policy, had it remained in force. The Company will pay:
1. the benefit that the prior carrier would have paid; minus
2. any amount for which the prior carrier is liable.

**DISABILITY DUE TO A PRE-EXISTING CONDITION.** Benefits may be payable for a Total Disability due to a Pre-Existing Condition for an Employee who:
1. was insured by the prior carrier's policy at the time of transfer; and
2. was Actively-At-Work and insured under the Policy on the Policy's Effective Date.

The benefits will be determined as follows:
1. The Company will apply the Policy's Pre-Existing Condition Exclusion. If the Insured Employee qualifies for benefits, such Insured Employee will be paid according to the Policy's benefit schedule.
2. If the Insured Employee cannot satisfy the Policy's Pre-Existing Condition Exclusion, but can satisfy the prior carrier's pre-existing condition exclusion giving consideration towards continuous time insured under both policies; then he or she will be paid in accord with the benefit schedule and all other terms, conditions and limitations of:
   a. the Policy without applying the Pre-Existing Condition Exclusion; or
   b. the prior carrier's policy;
   whichever is less.
3. If the Insured Employee cannot satisfy the Pre-Existing Condition Exclusion of the Policy or that of the prior carrier, no benefit will be paid.

GL3002-CERT 10 MO

-15 99

05/01/12

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 194 of 200

LIN00194

# FAMILY INCOME BENEFIT

The Company will pay a lump sum benefit to the Eligible Survivor when proof is received that an Insured Employee died:
1.   after Disability had continued for 180 or more consecutive days; and
2.   while receiving a Monthly Benefit.

The benefit will be equal to three times the Insured Employee's Last Monthly Benefit.

"Last Monthly Benefit" means the gross Monthly Benefit payable to the Insured Employee immediately prior to death. Any reductions for Other Income Benefits, or for earnings the Insured Employee received for Partial Disability Employment, will not apply.

"Eligible Survivor" means the Insured Employee's:
1.   surviving spouse; or, if none
2.   surviving children who are under age 25 on the Insured Employee's date of death.

If payment becomes due to the Insured Employee's children; then payment will be made to:
1.   the surviving children, in equal shares; or
2.   a person named by the Company to receive payments on the children's behalf.

This payment will be valid and effective against all claims by others representing, or claiming to represent, the children.

Three Month Survivor Benefit

GL3002-CERT 10 MO

-16 94

05/01/12

LIN00195

Case 3:17-cv-05060-MDH     Document 35-1     Filed 05/15/18     Page 195 of 200

# FAMILY CARE EXPENSE BENEFIT

**BENEFIT.** The Company will reimburse an Insured Employee's Family Care Expenses as described below, while he or she is:
1.  receiving a Partial Disability Monthly Benefit under the Policy; or
2.  receiving a Total Disability Benefit under the Policy, and:
    a.  is Terminally Ill;
    b.  has suffered a Cognitive Impairment; or
    c.  has suffered a Loss of Activities of Daily Living.

The Family Care Expense Benefit is paid in addition to all other Policy benefits and will not be offset by Other Income Benefits.

**PROOF.** The Insured Employee must submit to the Company satisfactory proof that a Family Care Expense has been incurred for a Dependent and paid by the Insured Employee. Proof must be submitted on a monthly basis. Satisfactory proof is a signed receipt from the Dependent care provider showing:
1.  Dependent name;
2.  Dependent age;
3.  if Dependent age exceeds the maximum shown in definition of "Dependent" below, reason for care;
4.  dates of care;
5.  total charges for care;
6.  total payments for care; and
7.  provider name, address, telephone number, and Federal Employer Identification Number/Taxpayer Identification Number.

**AMOUNT.** The Family Care Expense Benefit will equal actual Family Care Expenses paid by the Insured Employee that are not reimbursable from other sources, up to $250 per month for each eligible Dependent.

**DURATION.** The Family Care Expense Benefit will cease on the earliest of:
1.  the date the Insured Employee's Total or Partial Disability Benefits under the Policy cease;
2.  the date an Insured Employee's Dependents no longer meet the definition of Dependent in this provision; or
3.  the date the Company has made 12 monthly Family Care Expense Benefit payments.

## DEFINITIONS.

"**Child**" includes the Insured Employee's naturally born child, legally adopted child, stepchild, foster child, or child for whom the Insured Employee is the legal guardian.

"**Cognitive Impairment**" means that the Insured Employee or Dependent:
1.  has suffered a permanent deterioration or loss of cognitive or intellectual capacity; and
2.  requires another person's active, hands-on help or verbal cues to prevent harm to self or others, due to that impairment.

The impairment must be diagnosed by a Physician, based upon clinical evidence and reliable standardized tests of short or long-term memory; orientation as to person, place and time; and deductive or abstract reasoning. It may result from moderate to severe head trauma, stroke, Alzheimer's disease or other form of irreversible dementia.

LIN00196

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 196 of 200

**"Dependent"** means the Insured Employee's:
1. legal spouse, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition;
2. Child less than age 16;
3. unmarried Child age 16 years or older, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition; or
4. parent or parent-in-law, who is:
   a. living with the Insured Employee; and
   b. Incapable of Independent Living due to a mental or physical condition.

**"Family Care Expense"** means an expense for the care of a Dependent, charged by a licensed care provider who:
1. is not a member of the Insured Employee's immediate family; and
2. is not living in the Insured Employee's home.

**"Incapable of Independent Living"** means the Dependent:
1. is Terminally Ill;
2. suffers a Cognitive Impairment; or
3. suffers a Loss of Activities of Daily Living.

**"Loss of Activities of Daily Living"** means that the Insured Employee or Dependent has lost the ability to safely and completely perform **two or more** of the following six Activities of Daily Living without another person's active, hands-on help with all or most of the activity.

The six Activities of Daily Living are:
1. **Bathing** – washing self in a tub, in a shower or by sponge bath; with or without equipment.
2. **Dressing** – putting on, taking off, fastening or unfastening garments, any medically necessary braces, or any artificial limbs normally worn.
3. **Toileting** – getting to, from, on and off toilet and performing related personal hygiene.
4. **Transferring** – moving in and out of bed, chair or any wheelchair; with or without equipment such as canes, walkers, crutches, grab bars, other support devices, or mechanical or motorized devices.
5. **Continence** – voluntarily maintaining control of bladder and bowel function; or performing related personal hygiene, including care of any catheter or colostomy bag, if not continent.
6. **Eating** – once food is prepared and made available, getting nourishment into one's body by any means. This includes eating from a table, tray or container (such as a bowl or cup); or using special equipment (such as a feeding tube or intravenous tube).

**"Terminally Ill"** means the Insured Employee or Dependent has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

**LIN00197**

## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
## HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Missouri who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state, to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And as noted below this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, MO 65109

Missouri Division of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. Included is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

MO NOTICE A 06

36

05/01/12

LIN00198

Case 3:17-cv-05060-MDH    Document 35-1    Filed 05/15/18    Page 198 of 200

Generally, persons will be protected by the Life and Health Insurance Guaranty Association if they live in this state, and hold a life or health insurance contract, or an annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when:

1. The person is eligible for protection under the laws of another state;
2. The person purchased the insurance from a company that was not authorized to do business in this state;
3. The policy is issued by an organization which is not a member insurer of the association; or
4. The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

MO NOTICE A 06

05/01/12

LIN00199

<u>SUMMARY PLAN DESCRIPTION</u>

The following information together with your group insurance certificate issued to you by The Lincoln National Life Insurance Company of Fort Wayne, Indiana, is the Summary Plan Description required by the Employee Retirement Income Security Act of 1974 to be distributed to participants in the Plan. This Summary Plan Description is only intended to provide an outline of the Plan's benefits. The Plan Document will govern if there is any discrepancy between the information contained in this Description and the Plan.

The name of the Plan is: Group Long Term Disability Insurance for Employees of Lester E. Cox Medical Center.

The name, address and ZIP code of the Sponsor of the Plan is: Lester E. Cox Medical Center, 3801 S National Ave, Springfield, MO, 65807.

Employer Identification Number (EIN): 44-0577118                IRS Plan Number: 507

The name, business address, ZIP code and business telephone number of the Plan Administrator is: Lester E. Cox Medical Center, 3801 S National Ave, Springfield, MO, 65807, (417) 269-6843.

The Plan Administrator is responsible for the administration of the Plan and is the designated agent for the service of legal process for the Plan. Functions performed by the Plan Administrator include: the receipt and deposit of contributions, maintenance of records of Plan participants, authorization and payment of Plan administrative expenses, selection of the insurance consultant, selection of the insurance carrier and assisting The Lincoln National Life Insurance Company. The Lincoln National Life Insurance Company has the sole discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions, on the Plan Administrator's behalf (this does not apply to employers sitused in California or to California residents).

Type of Administration. The Plan is administered directly by the Plan Administrator with benefits provided in accordance with provisions of the group insurance policy issued by The Lincoln National Life Insurance Company whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska.

Type of Plan. The benefits provided under the Plan are: Group Long Term Disability Insurance benefits.

Type of Funding Arrangement: The Lincoln National Life Insurance Company.

All employees are given a Certificate of Group Insurance which contains a detailed description of the Benefits, Pre-Existing Condition Limitation, Exclusions and Prior Carrier Credit provisions. The Certificate also contains the Schedule of Benefits which includes information on the Benefit Percentage, Maximum and Minimum Monthly Benefits, Elimination Period, Maximum Benefit Period, Own Occupation Period and Waiting Period. If your Booklet, Certificate or Schedule of Benefits has been misplaced, you may obtain a copy from the Plan Administrator at no charge.

Eligibility. Full-time employees working at least 72 hours per pay period.

Employees become eligible on the first of the month coinciding with or next following completion of 1 year of active full-time employment.

Contributions. Insured employees are not required to contribute to the cost of the coverage.

The Plan's fiscal year ends on: December 31st of each year.

The name and section of relevant Collective Bargaining Agreements: None

The name, title and address of each Plan Trustee: None

GL-SPD-2                                                                                                2002(LTD)
05/01/12

LIN00200