

EXHIBIT

A

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "CONCLUSIONS:

1. Please state your findings upon review the medical information."

Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

2. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings an diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitati8ons would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

6

LIN00401

a.  "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

June 16, 2014: Letter to Rick S. Vasquez from Reid Hastings, Disability Appeals Specialist, The Lincoln National Life Insurance Company: "This contract allows for coordination of benefits, and we were notified that your client is receiving Social Security Disability Income benefits. The amount you client is receiving will be offset from her disability benefits. Your client's Benefit Specialist will issue her benefit payments. We are happy to make a favorable determination concerning your client's Long Term Disability claim."

October 22, 2014: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of mixed connective tissue disease. Low back pain with radiation down the legs and right lateral foot with occasional similar symptoms on the left side..."

January 20, 2015: Donald Hopewell, M.D.: "Diagnosis: This is a patient with chronic low back pain due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. The symptom she's having at night I think her neuropathic and we discussed options in terms of medications..."

7

**LIN00402**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.
Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:
The patient has the following functional/limitations or restrictions:
Lift/Carry:
0 – 10 lbs – Never
11 – 20 lbs – Never
21 – 35 lbs – Never
36 – 50 lbs – Never
51 – 100 lbs – Never
The patient may:
Sit – Frequently, 20 minute duration
Stand – Occasionally
Walk – Occasionally
Climb – Never
Bend – Never
Kneel – Never
Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid? No."

July 15, 2015: Donald Hopewell, M.D.: "Diagnosis: Chronic low back pain do to lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component. Patient was tearful during the interview and physical examination and as we discussed more in detail I think is it clear that she is having significant depressive symptomology. I'm not sure if this is because of poor pain control or whether or not this is related to other light stressors as well as her chronic pain issues and limited functional capacity. Regardless I think her mood is significantly increasing her pain issue."

August 3, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar spondylolisthesis, lumbar post laminectomy syndrome, and inflammatory arthropathy secondary to autoimmune disease. The patient requested early followup because she fell about a month ago now landing on her right buttock. She's had increased pain that is typical of her pain in the past it is lumbar and she gets dysesthetic pains down into the right lower extremity predominantly. She's also found a small area of mass in the right low lumbar region that has been tender and she did not appreciate lately. This is a patient is a flare of her pain issues following a fall. There is nothing to suggest new process but simply an aggravation of her long-standing issues."

8

**LIN00403**

September 28, 2015: Letter to Jamie Flanagan from Lincoln Financial Group:
Policyholder: Lester E Cox Medical Center
Policy Number: 00001015732600000
Claim Number: 1130226196
We have completed our review of you Long Term Disability claim and benefits beyond 11/24/2015 have been denied. The Policy issued to Lester E Cox Medical Center contains, but is not limited to the following:
Total Disability or Totally Disabled will be defined as follows:

1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

January 25, 2016: Letter from Rick S. Vasquez to The Lincoln National Life Insurance Company: "This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:

1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter."

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:

1. Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
   - Per the FCE, the claimant could lift up to 7 pounds occasionally.
   - She could perform frequent sitting with 20 minutes of continuous sitting.
   - She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   - She could perform occasional bending and stooping.

9

LIN00404

> She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

> The claimant could lift up to 7 pounds occasionally.
> She could perform frequent sitting with 20 minutes of continuous sitting.
> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> She could perform occasional bending and stooping.
> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

3. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using Amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated. From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

10

LIN00405

| DOT# | Occupation | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

## FUTURE TREATMENT POSSIBILITIES

Ms. Jamie Flanagan stated that she is seen by her primary care provider as needed; her Rheumatologist once every six months; and she is in the process of finding a pain management physician. Ms. Flanagan stated that she takes the following medication: Morphine and Oxycodone for back pain; Soma as a muscle spasm reducer; Robaxin as a muscle relaxer; Ibuprofen for pain; Topamax for headaches; Wellbutrin for depression; Plaquenil for auto immune system; Alprazolam for anxiety as needed; Lidoderm patch for pain; Bentyl and Donnatol for stomach; Zofran for nausea; a medicine for hives; a sleep medicine, and a medication for constipation.

## OBSERVATIONS

Ms. Jamie Flanagan came to the evaluation casually dressed. She got up and stood behind a chair from time to time due to her pain.

## FUNCTIONAL LIMITATIONS

The Back Function Questionnaire and the Functional Capacity Checklist (FCC) measured Jamie's perception of her physical limitations. An individual's self-perception of functional disability has been shown to be a factor affecting return to work. The self-assessment can be compared to more objective medical assessments of the individual's functional limitations.

The **Back Function Questionnaire** is a self-reporting survey of fifteen activities that asks the individual to rate the degree of pain she experiences when performing the activity. The activities and responses are shown below.

When asked how long the following activities could be done without pain or before the pain becomes worse, the results were as follows:

1. Sitting: Less than one hour
2. Standing: Less than thirty minutes
3. Walking: Less than ten minutes

When asked if the following activities increase pain, the results were as follows:

4. Squatting: Moderate
5. Stair climbing: Severe
6. Getting into or up from a chair: Mild
7. Lifting moderately heavy objects (10-50 lb.): Severe
8. Turning/twisting from one side to the other: Mild
9. Everyday housework/chores: Moderate

11

LIN00406

| | |
|---|---|
| 10. Better or worse with sleep: | Better |
| 11. Overhead activities: | Moderate |
| 12. Reaching: | Mild |
| 13. Deskwork: | Severe |
| 14. Sexual activity: | Moderate |

When asked to rate the ability to return to work, the result was as follows:

15. Not Able to Work

**Reported Limitations**

Jamie reported that she can't continuously stand or walk for longer than approximately fifteen minutes; she can't continuously sit for longer than approximately twenty minutes; she must change positions frequently; she has physical problems that affect: lifting, carrying, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

Jamie stated that she is right hand dominate. She reported that she has muscle spasms in her right upper extremity.

Jamie reported that she has a moderate to severe impairment in regard to the following with her left lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), strength, and feeling.

Jamie reported that she has a severe impairment in regard to the following with her right lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), and feeling.

## COMPLAINTS OF PAIN

Expert's testifying in the Report of the Commission on the Evaluation of Pain from the Department of Health and Human Services in June of 1986 testified: "that pain can really best be defined as a description of an individual's experience encompassing physical, mental, social and behavioral processes, and all dimensions involved in the pain experience need to be evaluated to make a useful determination of whether or not an individual is incapacitated by the pain. Pain behavior, including verbal reports of pain, thus becomes the means to make as objective an assessment as possible of an essentially subjective area."

Jamie reported that she does have a lot of pain. She doesn't feel that her pain is due to some undiagnosed problem. She doesn't feel that any of her pain is due to mental stress or emotional problems. She doesn't feel that her pain problem is curable. She feels that her pain problem is hopeless. She feels helpless with her pain. She stated that pain medication, Lidoderm patches, a TEN's unit, and water therapy have helped with her pain. She believes that she is being given enough pain medication by her doctor. She stated that her pain has not

12

LIN00407

changed over the last twelve months. She doesn't think her pain is going to change in the next twelve months. She is able to take care of herself as far as day to day needs are concerned. She would accept chronic pain treatment. She doesn't feel that any type of rehabilitation would help with her pain problem. She would accept rehabilitation with the goal of returning to work either part-time or full-time "if I could". Jamie uses narcotic pain medication—Oxycodone and Morphine. She stated that she needs to lie down during the day for two to three times for thirty minutes each time.

Jamie described her pain as an aching pain in both of her shoulders and both of her elbows; a throbbing pain in her right shoulder blade; an aching and throbbing pain in her low back; an aching pain down her right leg from her hip to her foot with numbness; a numbness down her left leg from her hip to her foot; and a burning pain in the bottom of her feet.

On a scale of 0 to 10 with ten being extreme pain, Jamie rated her pain at its worst as a 9, pain during the interview as a 5, and pain at its best as a 4.

## PHYSICAL DEMANDS

The U.S. Department of Labor describes 20 **Physical Demands** found in occupations defined in the Dictionary of Occupational Titles. Each Physical Demand has a specific vocational definition. The Physical Demands are: *Strength (sedentary, light, medium, heavy, very heavy), Climbing, Balancing, Stooping (bending), Kneeling, Crouching, Crawling, Reaching, Handling, Fingering, Feeling, Talking, Hearing, Tasting/Smelling, Near Acuity, Far Acuity, Depth Perception, Accommodation, Color Vision, and Field of Vision.* Each occupational description in the DOT includes the Physical Demands required in that occupation and the frequency the typical worker performs that function (Never; Occasional, up to 1/3 of the work day; Frequent, from 1/3 to 2/3s of the work day; Constant, over 2/3s of the work day). Strength characteristics refer to an individual's physical abilities of walking, standing, lifting, carrying, pushing, pulling, reaching, etc. Using the categories of "sedentary," "light," "medium," "heavy" and "very heavy," makes determination of physical strength characteristics. Definitions for Sedentary, Light, Medium, Heavy and Very Heavy Work Levels are as follows:

**Sedentary Work** - "Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

**Light Work** - "Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly (Constantly: activity or condition exists more than 2/3 of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or

13

**LIN00408**

standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials may be negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

**Medium Work** - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

**Very Heavy Work** – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

### SPECIAL CONSIDERATIONS

"The individual who must alternate sitting, standing and/or walking is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing and walking contemplated for most light work. There are some jobs in the national economy - typically professional and managerial ones - in which a person can sit or stand with a degree of choice. However most jobs have ongoing work processes which demand that a worker be in a certain place or posture at least for a certain length of time to accomplish a certain task. Unskilled type jobs are particularly structured so that a person cannot ordinarily sit or stand at will." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

"Reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore may eliminate a large number of occupations a person otherwise could do. Fingering involves picking, pinching or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semi-skilled jobs at all levels of exertion. As a general rule limitations of fine manual dexterity have greater significance - in terms of relative number of jobs in which the function is required - as the person's exertional capacity decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

14

**LIN00409**

**Medical Restrictions—Ms. Jamie Flanagan's restrictions are as follows from the following doctors:**

**Social Security Administration:**

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

**Social Security Administration found her to be disabled.**

**Nancy (Dickey) Beisswenger:**

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

**Nancy (Dickey) Beisswenger gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.**

**Dr. Meghana Karande:**

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "
CONCLUSIONS:
3. "Please state your findings upon review the medical information."
Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

15

**LIN00410**

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

4. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings and diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

b. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

16

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.
OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner
Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner."

**Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.**

**Dr. Donald Hopewell:**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.
Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:
The patient has the following functional/limitations or restrictions:
Lift/Carry:
0 – 10 lbs – Never
11 – 20 lbs – Never
21 – 35 lbs – Never
36 – 50 lbs – Never
51 – 100 lbs – Never
The patient may:
Sit – Frequently, 20 minute duration
Stand – Occasionally
Walk – Occasionally
Climb – Never
Bend – Never
Kneel – Never

17

LIN00412

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid? No."

**Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
3. Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
4. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
   ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.
   ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➢ She could perform occasional bending and stooping.
   ➢ She could perform frequent reaching and fingering.
A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
These limitations would be effective from 11/25/2015 and forward.
B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
   ➢ The claimant could lift up to 7 pounds occasionally.
   ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
   ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
   ➢ She could perform occasional bending and stooping.

18

LIN00413

> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated. From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

### EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

LIN00414

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

## VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
|---|---|---|
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

## WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the Dictionary of Occupational Titles, (DOT):

|  | Strength |
|---|---|
| Nurse Practioner (9 years) | 075.264-010  (L) |

20

LIN00415

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| | | |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| | DOT# Occupation | | Monthly Wage | Physical Demand |
|---|---|---|---|---|
| 1. | 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. | 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

## TRANSFERABLE SKILLS

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

**LIN00416**

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

Social Security Administration found her to be disabled.

Nancy (Dickey) Beisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

LIN00417

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation*, a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment…"

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

**LIN00418**

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

LIN00419

# SEEKER DATA

Flanngan, Jamie S.
1625 Musky Dime Drive
Crane, MO 65693

| | | | |
|---|---|---|---|
| Phone 1: | (417) 459-5879 | SSN: | |
| Phone 2: | | eMail: | |
| | | | |
| Reg/Case: | | Job Ready: | |
| Source: | | Record Opened: | 10/04/2016 |
| Funding: | | Record Updated: | 10/04/2016 |
| Program: | | Record Closed: | |
| | | | |
| Counselor: | Phillip Eldred | Phone: | |
| Placement Specialist: | | Phone: | |
| | | | |
| Job Goal: | | | |
| | | | |
| Desired Salary: | | Bilingual: | No |
| Hours: | 0 | Language: | |
| | | | |
| Shift: | Day | Transportation: | None |
| Overtime: | Never | License: | |
| Weekends: | Never | | |
| Relocate: | No | | |
| | | | |
| Skr1: | | | |
| Skr2: | | | |
| Skr3: | | | |

LIN00420

# WORK HISTORY

Name: Flanagan, Jamie S.                                   SSN: ██████████
                                                          Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

LIN00421
Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 21 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ████████
Reg/Case:

**075.264-010 Nurse Practitioner**
O*NET Code: 29-1171.00 Nurse Practitioners

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner

DLU: 1989

---

O*NET Title: Nurse Practitioners
O*NET Code: 29-1171.00

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses. Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy. Prescribe medications based on efficacy, safety, and cost as legally authorized. Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender. Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays). Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks. Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines. Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults. Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing. Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies. Diagnose or treat chronic health care problems such as high blood pressure and diabetes. Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability. Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary. Schedule follow-up visits to monitor patients or evaluate health or illness care. Perform routine or annual physical examinations. Supervise or coordinate patient care or support staff activities. Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services. Provide patients or caregivers with assistance in locating health care resources. Maintain departmental policies and procedures in areas such as safety and infection control. Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds. Advocate for accessible health care that minimizes environmental health risks. Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOTs under this O*NET Code.

---

**LIN00422**

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: █████████
Reg/Case:

Please note: O*NET Codes are under development and subject to change.

LIN00423

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 23 of 200

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮

Reg/Case:

| Title: | | DOT Code: | 075.264-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

| | |
|---|---|
| Specific Vocational Preparation: | Level 8 (4 to 10 years) |
| General Educational Development: | Reasoning Grades 13-14 |
| | Mathematics Grades 13-14 |
| | Language Grades 13-14 |

**Strength: Light** — Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, controlling, or planning activities of others. | Data: | 2 Analyzing |
|---|---|---|---|
| | Making judgments and decisions. | People: | 6 Speaking-Signaling |
| | Dealing with people. | Things: | 4 Manipulating |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

LIN00424

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 24 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN:

Reg/Case:

**075.167-010  Nurse, Supervisor**
**O*NET Code:  29-1141.00  Registered Nurses**

Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

**O*NET Title:** Registered Nurses
**O*NET Code:** 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.  Administer medications to patients and monitor patients for reactions or side effects.  Record patients' medical information and vital signs.  Monitor, record, and report symptoms or changes in patients' conditions.  Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.  Modify patient treatment plans as indicated by patients' responses and conditions.  Monitor all aspects of patient care, including diet and physical activity.  Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.  Prepare patients for and assist with examinations or treatments.  Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.  Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.  Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.  Refer students or patients to specialized health resources or community agencies furnishing assistance.  Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.  Administer local, inhalation, intravenous, or other anesthetics.  Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.  Hand items to surgeons during operations.  Observe nurses and visit patients to ensure proper nursing care.  Conduct specified laboratory tests.  Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.  Engage in research activities related to nursing.  Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.  Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.  Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.  Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.  Provide or arrange for training or instruction of auxiliary personnel or students.  Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

LIN00425

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ▓▓▓▓▓▓

Reg/Case:

| Title: | | DOT Code: | 075.167-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength: Light**

Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | | |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | Data: | 1 Coordinating |
| | Dealing with people. | People: | 6 Speaking-Signaling |
| | Attaining precise set limits, tolerances, and standards. | Things: | 7 Handling |
| | Performing effectively under stress. | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

LIN00426

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮

Reg/Case:

**075.364-010  Nurse, General Duty**
**O*NET Code: 29-1141.00  Registered Nurses**

Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

**O*NET Title: Registered Nurses**
**O*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 27 of 200

LIN00427

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮

Reg/Case:

| Title: | | DOT Code: | 075.364-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength: Medium** — Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Dealing with people. | Data: | 3 Compiling |
|---|---|---|---|
| | Attaining precise set limits, tolerances, and standards. | People: | 6 Speaking-Signaling |
| | Making judgments and decisions. | Things: | 4 Manipulating |
| | Performing effectively under stress. | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

LIN00428

# WORK HISTORY

Name: a

SSN:
Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

**LIN00429**

# OCCUPATIONAL DESCRIPTION

Name: a

SSN:
Reg/Case:

**075.127-014  Nurse, Consultant**
**O\*NET Code:  29-1141.00  Registered Nurses**

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services:  Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications.  Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs.  Provides assistance in developing guides and manuals for specific aspects of nursing services.  Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups.  Advises in services available through community resources.  Consults with nursing groups concerning professional and educational problems.  Prepares or furnishes data for articles and lectures.  Participates in surveys and research studies.
DLU:  1977

**O\*NET Title: Registered Nurses**
**O\*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.  Administer medications to patients and monitor patients for reactions or side effects.  Record patients' medical information and vital signs.  Monitor, record, and report symptoms or changes in patients' conditions.  Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.  Modify patient treatment plans as indicated by patients' responses and conditions.  Monitor all aspects of patient care, including diet and physical activity.  Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.  Prepare patients for and assist with examinations or treatments.  Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.  Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.  Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.  Refer students or patients to specialized health resources or community agencies furnishing assistance.  Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.  Administer local, inhalation, intravenous, or other anesthetics.  Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.  Hand items to surgeons during operations.  Observe nurses and visit patients to ensure proper nursing care.  Conduct specified laboratory tests.  Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.  Engage in research activities related to nursing.  Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.  Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.  Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.  Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.  Provide or arrange for training or instruction of auxiliary personnel or students.  Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

Please note: O\*NET Codes are under development and subject to change.

LIN00430

# OCCUPATIONAL REQUIREMENTS

Name: a

SSN:
Reg/Case:

Title:
Industry:   Medical Services

DOT Code:   075.127-014

Specific Vocational Preparation:   Level 7 (2 to 4 years)

General Educational Development:
Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

Strength:  Sedentary

Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | | |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | Data: | 1 Coordinating |
| | | People: | 2 Instructing |
| | Dealing with people. | Things: | 7 Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3  (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

LIN00431

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 31 of 200

# Curriculum Vitae

**Phillip Aaron Eldred**
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

**Professional Career:**

### Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

### Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

**LIN00432**

4. Arranges for or administers pyschological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

## Position: Elementary Counselor

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

## Organizations and Memberships:

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

## Education & Certifications:

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
        Missouri Life Certificate - Teacher, Grades 7-12
        Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling:** August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
        Missouri Life Certificate - Counselor, Grades 7-12
        Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

**LIN00433**

## Rehabilitation Education:

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling 1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

LIN00434

Outcome Based Training – 2002
Transition Symposium – 2002
Ticket to Work – 2002
Choices Training – 2003
Ethics in Rehabilitation – 2003
Order of Selection Training – 2003
ADHD Training – 2004
Self-Employment Training – 2004
Power Up – 2005
Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken:  The Americans With Disabilities Act of 1990 and Workers
              Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken:  Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken:  Advanced Workers' Compensation In Missouri - 1992
                Missouri Return To Work Issues In Workers' Compensation - 1999
                Introduction To Workers' Compensation In Missouri - 2000
                Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken:  Americans With Disabilities Act Conference - 1992
                Successfully Employing People With Disabilities - 1993
                Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken:   Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken:  Fundamentals of Supported Employment - 1994
                Transition Symposium – 2002
                Spring Training Institute – 2003
                Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken:  Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken:  Power to Shine: Job Retention Strategies for the New Employee – 1999

4

LIN00435

American Schools Association – Chicago
Classes Taken:     Family First – 2010
                   Clinicains in Court – 2010
                   Ethics in Couseling and Psychotherapy – 2010
                   How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:     More Effective Interviewing – 2015
                   Rehabiliation Update – 2015
                   Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:       Planning For Uncertainty – 2015

5

**LIN00436**



Hasler
10/19/2016
US POSTAGE
FIRST-CLASS MAIL
$02.41º
ZIP 65804
011D12810600

Hasler
10/19/2016
US POSTAGE
$06.25º
ZIP 65804
011D12810600

7016 0340 0000 1727 9470

**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

OCT 2 1 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

OCT 2 1 2016

*Rick S. Vasquez*
*Fredrick E. Vasquez*

October 18, 2016

Fax: 402-361-1460

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Re: *Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Lincoln National:

This letter comes as an appeal of Mrs. Flanagan's April 26, 2016, denial of long term disability benefits. I am enclosing herewith a copy of a vocation evaluation from Phil Eldred, M.S. C.R.C. Please note Mr. Eldred sets forth the medical and other evidence he reviewed on pages 1 and 2 of his report. Please review this document and appeal and advise when Mrs. Flanagan's benefits will be reinstituted. I would note the opinion of the last reviewing physician, Dr. Joseph Thomas, is for less than sedentary work and in fact in the report of Dr. Thomas, he largely deferred to my client's treating physician. However, this deference and the totality of Dr. Thomas' opinion was conspicuously left out of the determination of April 26th denying my client.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

**LIN00438**



LIN00439

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

**OCT 2 1 2016**

*Rick S. Vasquez*
*Fredrick E. Vasquez*

October 18, 2016

Fax: 402-361-1460

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Re:    *Claimant: Jamie Flanagan*
        *Policyholder: Lester E. Cox Medical Center*
        *Policy# 00001015732600000*
        *Claim# 1130226196*

Dear Lincoln National:

This letter comes as an appeal of Mrs. Flanagan's April 26, 2016, denial of long term disability benefits. I am enclosing herewith a copy of a vocation evaluation from Phil Eldred, M.S. C.R.C. Please note Mr. Eldred sets forth the medical and other evidence he reviewed on pages 1 and 2 of his report. Please review this document and appeal and advise when Mrs. Flanagan's benefits will be reinstituted. I would note the opinion of the last reviewing physician, Dr. Joseph Thomas, is for less than sedentary work and in fact in the report of Dr. Thomas, he largely deferred to my client's treating physician. However, this deference and the totality of Dr. Thomas' opinion was conspicuously left out of the determination of April 26th denying my client.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LIN00440

# Vocational Consulting Services, LLC

3433 South Campbell, Suite H
Springfield, Missouri 65807
(417) 844-8329
phillipeldred@att.net

Phillip Eldred, M.S., C.R.C.
Certified Rehabilitation Counselor

Law Offices of Rick S. Vasquez
Rick Vasquez, Attorney at Law
1736 East Sunshine, Suite 103
Springfield, Missouri 65804

Re: Jamie S. Flanagan
S.S. #: ███████
Date: October 5 2016

## VOCATIONAL REHABILITATION EVALUATION

### INTRODUCTION

Thank you for referring the above individual for a vocational rehabilitation evaluation relating to her claim for Long Term Disability. Ms. Jamie Flanagan came to the evaluation alone. I had the opportunity to read and review the following medical records and reports:

1. Lincoln National Life Ins Company's Chronological Activity List, 54 pages;
2. Amendment 3 to policy, 1 Page;
3. Lincoln National Life Ins. LTD Policy, 89 pages;
4. Lincoln National Life Ins denial letter, 12/04/13, 7 pages;
5. Lincoln National Life Ins denial of benefits letter 09/28/15, 9 pages;
6. Lincoln National Life Ins appeal-with MRI/CT, & doctor notes, 01125/16, 10 pages;
7. Lincoln National Life Ins appeal acknowledgement, 02/10/16, 2 pages;
8. Lincoln National Life Ins denial of benefits-appeal letter, 04/26/16, 6 pages;
9. Donald K. Hopewell, M.D., medical records, 08/02/11-07/15/2015, 18 pages;
10. Donald K. Hopewell, M.D, Lincoln's Abilities Form, 04/21/15, 1 page;
11. Joseph Thomas, M.D. (Reliable Review Services) Peer File Review 03/09/16, 6 pages;
12. Long Term Disability Employer's Statement, Judy Hampton-Cox HR Supervisor, 11/15/13, 8 pages;
13. Lincoln National Life Ins. Long-Term Disability Application, 11/10/13, 8 pages;
14. Social Security Disability Notice of Award, 04/14/14, 7 pages;
15. Nancy (Dickey) Beisswenger, OTR/L, Functional Capacity Evaluation, 04/23/14, 19 pages;
16. Lincoln National Life Ins Approval letter, 06/16/14, 2 pages;
17. Meghana C. Karande, M.D., (University Disability Consortium) Medical File Review, 06/09/14, 15 pages;
18. Jamie Flanagan, Education Background Form & Treating Doctors' Info, 03/27/14, 5 pages;

1

LIN00441

19. Charles Mace, M.D., Springfield Neurological & Spine, medical records; 09/19/12, 4 pages;
20. Glady Jacob, M.D., EMG report, 10/22/10, 3 pages;
21. Wayne Wallender, D.O., Ozarks Pain Specialists, medical records, 08/15/13, 4 pages;
22. Imaging reports, 10/08/10-01/09/13, 23 pages.

Ms. Jamie Flanagan was seen September 19, 2016 at 3433 S. Campbell, Suite H, Springfield, Missouri for an interview and the administration of vocational assessments and tests which were as follows:

- Back Function Questionnaire
- Functional Capacity Checklist
- Purdue Pegboard Test

## MEDICAL HISTORY

Ms. Jamie Flanagan is a thirty-six-year-old female who reported the following medical history:

- Depression since she was nineteen or twenty years of age.
- Three surgeries on her right foot and she still has some numbness on the ball of her foot.
- Left foot surgery with no residual problems.
- Gall Bladder surgery with no residuals.
- Hysterectomy with no residual problems.
- Exploratory laparotomy with no residual problems.
- Reconstructive breast surgery with no residual problems.
- Two c-sections with no residual problems.

## SUMMARY OF PRE-EXISTING MEDICAL RECORDS

October 8, 2010: CoxHealth Branson Clinic, Diane L. Cornelison, D.O.: "Procedure: MRI cervical wo contrast."

October 22, 2010: Cox Pain and Neurology Branson, Jacob Glady, M.D.: "Impression: Lower back with pain radiating down the right lower extremity. Procedure: Nerve conduction study."

August 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. No improvement with 2nd epi. LBP variable with activity, leg pain consistent down posterior leg right into right heel…"

November 2, 2011: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis. LBP variable with activity, leg pain more consistent, variable location. Postero lat leg may cross to medical knee. Burning lat forefoot…"

2

LIN00442

December 16, 2011:  CoxHealth Branson Clinics, John h. Bartow, M.D.: "Procedure:  CT spine lumbar wo contrast."

February 1, 2012:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis and lumbar post-lami syndrome.  Pain is a posterior or postaro lateral on right leg.  Clearly in my mind is lumbar post lami syndrome with fixed ? root injury…"

May 1, 2012:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis and lumbar post-lami syndrome.  Pain with a posterior or posterolateral on right leg…"

May 9, 2012:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis and lumbar post-lami syndrome.  4 weeks of intermittent aching elbow toward wrist, right shoulder pain and neck pain…"

July 10, 2012:  CoxHealth Branson Clinics, Beth A. Knox, FNP: "Procedure:  MRI spine cervical without contrast."

July 31, 2012:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis and lumbar post-lami syndrome and joint and neck pain…"

September 12, 2012:  CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure:  CT spine lumbar without contrast."

September 19, 2012:  Springfield Neurological & Spine Institute, Charles Mace, M.D.: "Impression:  Thoracic/lumbosacral neuritis/radiculitis, lumbago, spondylolisthesis, lumbar spine stenosis and lumbar radiculopathy.  C5-6 left soft disc herniation with radicular pain into left upper arm and Spurlings sign.  History of L5-S1 PLIF 18 months ago with progressive mechanical back pain and some L5 and S1 radicular symptoms that are quite problematic.  Plan:  PT and traction and if no better, then consider ACDF.  May be spinal stimulator candidate long term.  CT myelo cervical, lumbar."

October 29, 2012:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain…"

November 2, 2012:  CoxHealth Branson Clinics, Anthony L. Wheeler, M.D.: "Procedure:  CT spine lumbar with contrast myelogram."

December 28, 2012:  CoxHealth Branson Clinics, Diane L. Cornelison, D.O.: "Procedure:  MRI spine lumbar with and without contrast and MRI spine thoracic without contrast."

January 24, 2013:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain.  Repeat MRI shows root scarring…"

April 25, 2013:  Donald Hopewell, M.D.: "Diagnosis:  Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain…"

3

July 23, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post-lami syndrome and cervical pain. Pain in lumbar and down legs..."

August 15, 2013: Ozarks Pain Specialists, Wayne H. Wallendar, D.O.: "Impression: Chronic pain syndrome and spondylolisthesis. Plan: Jamie is suffering from significant epidural fibrosis and is on high dose narcotics. Despite her current conservative treatments for this, she is in significant pain. At this time I recommend SCS."

## PRE-EXISTING OBSTACLES TO EMPLOYMENT

After reviewing Ms. Jamie Flanagan's medical history and records of past medical treatment, it is my opinion Ms. Flanagan did not have any impairment, which was vocationally disabling such as to constitute a hindrance or obstacle to employment before August of 2010.

## PRESENT PROBLEM

August of 2010: In the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

## SUMMARY OF MEDICAL RECORDS

The Lincoln National Life Insurance Company – "Amendment No. 3 – To be attached to and made part of Group Policy No.: 000010157326. Issued to: Lester E. Cox Medical Center: TOTAL DISABILITY or TOTAL DISABLED will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonable allow."

4

LIN00444

November 10, 2013: Group Long-Term Disability Claim Application completed by Employee.

November 15, 2013: Long-Term Disability Claim Employer's Statement.

September 19, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome lumbar, weakness in legs. Plan: Insurance denied stimulator – patient will appeal."

October 31, 2013: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis with post-lami syndrome. Plan: Patient requested cord stimulator trial – no benefit from trial."

December 4, 2013: Letter to Jamie Flanagan from Lincoln Financial Group:
Group Policy Number: 00001015732600000
Group Claim Number: 1130226196
Total Disability or Totally Disabled will be denied as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

**LIN00445**

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "CONCLUSIONS:

1. Please state your findings upon review the medical information."

Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

2. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings an diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitati8ons would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

6

LIN00446

a. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain." Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.

OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.

Alternate Titles: Primary Care Nurse Practitioner."

June 16, 2014: Letter to Rick S. Vasquez from Reid Hastings, Disability Appeals Specialist, The Lincoln National Life Insurance Company: "This contract allows for coordination of benefits, and we were notified that your client is receiving Social Security Disability Income benefits. The amount you client is receiving will be offset from her disability benefits. Your client's Benefit Specialist will issue her benefit payments. We are happy to make a favorable determination concerning your client's Long Term Disability claim."

October 22, 2014: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar post laminectomy syndrome and lumbar spondylolisthesis. All of these are occurring in the setting of mixed connective tissue disease. Low back pain with radiation down the legs and right lateral foot with occasional similar symptoms on the left side..."

January 20, 2015: Donald Hopewell, M.D.: "Diagnosis: This is a patient with chronic low back pain due to post laminectomy syndrome, lumbar spondylosis and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. The symptom she's having at night I think her neuropathic and we discussed options in terms of medications..."

7

**LIN00447**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.
Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:
The patient has the following functional/limitations or restrictions:
Lift/Carry:
0 – 10 lbs – Never
11 – 20 lbs – Never
21 – 35 lbs – Never
36 – 50 lbs – Never
51 – 100 lbs – Never
The patient may:
Sit – Frequently, 20 minute duration
Stand – Occasionally
Walk – Occasionally
Climb – Never
Bend – Never
Kneel – Never
Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid? No."

July 15, 2015: Donald Hopewell, M.D.: "Diagnosis: Chronic low back pain do to lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component. Patient was tearful during the interview and physical examination and as we discussed more in detail I think is it clear that she is having significant depressive symptomology. I'm not sure if this is because of poor pain control or whether or not this is related to other light stressors as well as her chronic pain issues and limited functional capacity. Regardless I think her mood is significantly increasing her pain issue."

August 3, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylosis, lumbar spondylolisthesis, lumbar post laminectomy syndrome, and inflammatory arthropathy secondary to autoimmune disease. The patient requested early followup because she fell about a month ago now landing on her right buttock. She's had increased pain that is typical of her pain in the past it is lumbar and she gets dysesthetic pains down into the right lower extremity predominantly. She's also found a small area of mass in the right low lumbar region that has been tender and she did not appreciate lately. This is a patient is a flare of her pain issues following a fall. There is nothing to suggest new process but simply an aggravation of her long-standing issues."

8

LIN00448

September 28, 2015: Letter to Jamie Flanagan from Lincoln Financial Group:
Policyholder: Lester E Cox Medical Center
Policy Number: 00001015732600000
Claim Number: 1130226196
We have completed our review of you Long Term Disability claim and benefits beyond 11/24/2015 have been denied. The Policy issued to Lester E Cox Medical Center contains, but is not limited to the following:
Total Disability or Totally Disabled will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

January 25, 2016: Letter from Rick S. Vasquez to The Lincoln National Life Insurance Company: "This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:
1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter."

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:
"Questions and Reviewer's Response:
1. Please provide a review summary of the medical findings.
The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.
The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.
2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.
  ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.
  ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
  ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
  ➢ She could perform occasional bending and stooping.

9

> She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.
These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.
> The claimant could lift up to 7 pounds occasionally.
> She could perform frequent sitting with 20 minutes of continuous sitting.
> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
> She could perform occasional bending and stooping.
> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

3. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using Amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

10

LIN00450

| DOT# | Occupation | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

### FUTURE TREATMENT POSSIBILITIES

Ms. Jamie Flanagan stated that she is seen by her primary care provider as needed; her Rheumatologist once every six months; and she is in the process of finding a pain management physician. Ms. Flanagan stated that she takes the following medication: Morphine and Oxycodone for back pain; Soma as a muscle spasm reducer; Robaxin as a muscle relaxer; Ibuprofen for pain; Topamax for headaches; Wellbutrin for depression; Plaquenil for auto immune system; Alprazolam for anxiety as needed; Lidoderm patch for pain; Bentyl and Donnatol for stomach; Zofran for nausea; a medicine for hives; a sleep medicine, and a medication for constipation.

### OBSERVATIONS

Ms. Jamie Flanagan came to the evaluation casually dressed. She got up and stood behind a chair from time to time due to her pain.

### FUNCTIONAL LIMITATIONS

The Back Function Questionnaire and the Functional Capacity Checklist (FCC) measured Jamie's perception of her physical limitations. An individual's self-perception of functional disability has been shown to be a factor affecting return to work. The self-assessment can be compared to more objective medical assessments of the individual's functional limitations.

The **Back Function Questionnaire** is a self-reporting survey of fifteen activities that asks the individual to rate the degree of pain she experiences when performing the activity. The activities and responses are shown below.

When asked how long the following activities could be done without pain or before the pain becomes worse, the results were as follows:

| | | |
|---|---|---|
| 1. | Sitting: | Less than one hour |
| 2. | Standing: | Less than thirty minutes |
| 3. | Walking: | Less than ten minutes |

When asked if the following activities increase pain, the results were as follows:

| | | |
|---|---|---|
| 4. | Squatting: | Moderate |
| 5. | Stair climbing: | Severe |
| 6. | Getting into or up from a chair: | Mild |
| 7. | Lifting moderately heavy objects (10-50 lb.): | Severe |
| 8. | Turning/twisting from one side to the other: | Mild |
| 9. | Everyday housework/chores: | Moderate |

11

**LIN00451**

| | |
|---|---|
| 10. Better or worse with sleep: | Better |
| 11. Overhead activities: | Moderate |
| 12. Reaching: | Mild |
| 13. Deskwork: | Severe |
| 14. Sexual activity: | Moderate |

When asked to rate the ability to return to work, the result was as follows:

15. Not Able to Work

**Reported Limitations**

Jamie reported that she can't continuously stand or walk for longer than approximately fifteen minutes; she can't continuously sit for longer than approximately twenty minutes; she must change positions frequently; she has physical problems that affect: lifting, carrying, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

Jamie stated that she is right hand dominate. She reported that she has muscle spasms in her right upper extremity.

Jamie reported that she has a moderate to severe impairment in regard to the following with her left lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), strength, and feeling.

Jamie reported that she has a severe impairment in regard to the following with her right lower extremity: walking long distances, walking on uneven surfaces, walking on inclines, running (can't), climbing a flight of stairs, climbing a ladder (doesn't), and feeling.

## COMPLAINTS OF PAIN

Expert's testifying in the Report of the Commission on the Evaluation of Pain from the Department of Health and Human Services in June of 1986 testified: "that pain can really best be defined as a description of an individual's experience encompassing physical, mental, social and behavioral processes, and all dimensions involved in the pain experience need to be evaluated to make a useful determination of whether or not an individual is incapacitated by the pain. Pain behavior, including verbal reports of pain, thus becomes the means to make as objective an assessment as possible of an essentially subjective area."

Jamie reported that she does have a lot of pain. She doesn't feel that her pain is due to some undiagnosed problem. She doesn't feel that any of her pain is due to mental stress or emotional problems. She doesn't feel that her pain problem is curable. She feels that her pain problem is hopeless. She feels helpless with her pain. She stated that pain medication, Lidoderm patches, a TEN's unit, and water therapy have helped with her pain. She believes that she is being given enough pain medication by her doctor. She stated that her pain has not

12

LIN00452

changed over the last twelve months. She doesn't think her pain is going to change in the next twelve months. She is able to take care of herself as far as day to day needs are concerned. She would accept chronic pain treatment. She doesn't feel that any type of rehabilitation would help with her pain problem. She would accept rehabilitation with the goal of returning to work either part-time or full-time "if I could". Jamie uses narcotic pain medication—Oxycodone and Morphine. She stated that she needs to lie down during the day for two to three times for thirty minutes each time.

Jamie described her pain as an aching pain in both of her shoulders and both of her elbows; a throbbing pain in her right shoulder blade; an aching and throbbing pain in her low back; an aching pain down her right leg from her hip to her foot with numbness; a numbness down her left leg from her hip to her foot; and a burning pain in the bottom of her feet.

On a scale of 0 to 10 with ten being extreme pain, Jamie rated her pain at its worst as a 9, pain during the interview as a 5, and pain at its best as a 4.

## PHYSICAL DEMANDS

The U.S. Department of Labor describes 20 **Physical Demands** found in occupations defined in the Dictionary of Occupational Titles. Each Physical Demand has a specific vocational definition. The Physical Demands are: *Strength (sedentary, light, medium, heavy, very heavy), Climbing, Balancing, Stooping (bending), Kneeling, Crouching, Crawling, Reaching, Handling, Fingering, Feeling, Talking, Hearing, Tasting/Smelling, Near Acuity, Far Acuity, Depth Perception, Accommodation, Color Vision, and Field of Vision.* Each occupational description in the DOT includes the Physical Demands required in that occupation and the frequency the typical worker performs that function (Never; Occasional, up to 1/3 of the work day; Frequent, from 1/3 to 2/3s of the work day; Constant, over 2/3s of the work day). Strength characteristics refer to an individual's physical abilities of walking, standing, lifting, carrying, pushing, pulling, reaching, etc. Using the categories of "sedentary," "light," "medium," "heavy" and "very heavy," makes determination of physical strength characteristics. Definitions for Sedentary, Light, Medium, Heavy and Very Heavy Work Levels are as follows:

**Sedentary Work** - "Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."

**Light Work** - "Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly (Constantly: activity or condition exists more than 2/3 of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or

13

**LIN00453**

standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials may be negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible."

**Medium Work** - Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Light Work.

**Heavy Work** – Exerting 50 to 100 pounds of force occasionally, and/or 25 to 50 pounds of force frequently, and/or 10 to 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Medium Work.

**Very Heavy Work** – Exerting in excess of 100 pounds of force occasionally, and/or in excess of 50 pounds of force frequently, and/or in excess of 20 pounds of force constantly to move objects. Physical Demand requirements are in excess of those for Heavy Work.

## SPECIAL CONSIDERATIONS

"The individual who must alternate sitting, standing and/or walking is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing and walking contemplated for most light work. There are some jobs in the national economy - typically professional and managerial ones - in which a person can sit or stand with a degree of choice. However most jobs have ongoing work processes which demand that a worker be in a certain place or posture at least for a certain length of time to accomplish a certain task. Unskilled type jobs are particularly structured so that a person cannot ordinarily sit or stand at will." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

"Reaching, handling, fingering and feeling require progressively finer usage of the upper extremities to perform work related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning, or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore may eliminate a large number of occupations a person otherwise could do. Fingering involves picking, pinching or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semi-skilled jobs at all levels of exertion. As a general rule limitations of fine manual dexterity have greater significance - in terms of relative number of jobs in which the function is required - as the person's exertional capacity decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy and very heavy ranges of work." (Vocational Expert Handbook, U.S. Department of Health and Human Services)

14

LIN00454

**Medical Restrictions—Ms. Jamie Flanagan's restrictions are as follows from the following doctors:**

**Social Security Administration:**

April 14, 2014: Social Security Administration Notice of Award: "You are entitled to monthly disability benefits beginning February 2014. We found that you became disabled under our rules on August 22, 2013."

**Social Security Administration found her to be disabled.**

**Nancy (Dickey) Beisswenger:**

April 23, 2014: Work Evaluations and Ergonomic Assessments, Nancy (Dickey) Beisswenger, OTR/L: Functional Capacity Evaluation.
Diagnosis: Lumbar post-laminectomy syndrome/chronic pain.
The client demonstrates the abilities to perform the following:
Reaching: Not restricted
Squatting: Very occasional to not recommended
Bending: Not recommended
Sitting: Occasional, 20 minute duration
Standing: Occasional to very occasional, 10 minute duration
Walking: Occasional
Stair climbing: Very occasional
Balance: Protective heights
Crawling: Very occasional to not recommended
Occasional material handing: 7 lb., Tested only to (stated) permanent restrictions
Frequent material handing: Not tested. Frequent lifting is not recommended
Work speed: Functional approach to tasks
Work level: Less than Sedentary."

**Nancy (Dickey) Beisswenger gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.**

**Dr. Meghana Karande:**

June 9, 2014: University of Disability Consortium Medical File Review, Meghana C. Karande, M.D.: "
CONCLUSIONS:
3. "Please state your findings upon review the medical information."
Ms. Flanagan has been evaluated and treated by Dr. Hopewell for chronic low back pain radiating into her legs; the records date to October 2010. Her medications include long and short acting opioids and muscle relaxants. She had a L5/S1 posterior lumbar fusion on April 1, 2011.

15

**LIN00455**

An x-ray in December 2011 revealed stable fusion. She was evaluated by Neurosurgery in September 2012. Her gait was documented as normal. She had normal range of motion in the neck and normal strength and tone. There was no evidence of instability. Spurling's test was positive on the left. She had no range of motion limitations in her upper and lower extremities. Muscle strength and tone were normal in both upper and lower extremities. Coordination was normal, reflexes were 2+ and symmetric, and sensation was intact to touch and pin.

MRI the lumbar spine on December 20, 2012 documented post-surgical changes of the posterior lumbar interbody fusion at L5/S1. There was a pars defect at L5 and grade 2 spondylolisthesis. There was extensive evidence of postoperative fibrosis in the posterior operative bed. This involved S1 nerve root.

Serial exams by Dr. Hopewell document that she had normal neurologic examinations despite reports of ongoing pain. He did not quantify her pain. In a peer to peer discussion with him, he stated the functional limitations he has documented were per patient report. He was unable to comment further on restrictions and limitations.

A Functional Capacity evaluation was performed on April 23, 2014 is incomplete as "isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions." Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution.

   4. "Provided description of those claimant impairments, if any, that are supported by the medical records, and outline how these impairments would translate into functional limitation and or medically, appropriate restrictions."

Based on examination findings and diagnostics, the Neurology and Neurosurgery records document chronic lumbar pain in the setting of lumbar discogenic and degenerative disease at L5-S1. She is status post lumbar fusion and post-procedure has radiologic evidence of fibrosis and scarring of the S1 nerve root. She has minimal cervical spine radiographic findings and these findings do not correlate with her clinical examinations. Additionally radiology has documented, upon review of her cervical MRI, "The following findings are so common in people without cervical pain; while we report their presence they must interpreted with causation and in the context of the clinical situation."

Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs. occasionally and 10 lbs. frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

      b. "For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply."

The limitations and restrictions would apply from the date requested for review, 11/24/2013 and onwards. These would likely be permanent.

3. "Are the restrictions or limitations placed upon the claimant's work activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain."

16

LIN00456

Dr. Hopewell her Neurologist documented her neurologic examinations were all normal. He does not quantify her pain at each visit by using measurable pain scales. His opinions are based largely on reported symptoms rather than on clinical examination findings and/or diagnostic findings and are not consistent with the documented medical findings.
OCCUPATIONAL DESCRIPTION: 075.264-010 Nurse Practitioner
Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinic problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field or specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner."

**Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.**

**Dr. Donald Hopewell:**

April 16, 2015: Donald Hopewell, M.D.: "Diagnosis: Lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. She has low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently.
Lincoln Financial Group Abilities Form completed by Dr. Donald Hopewell:
The patient has the following functional/limitations or restrictions:
Lift/Carry:
0 – 10 lbs – Never
11 – 20 lbs – Never
21 – 35 lbs – Never
36 – 50 lbs – Never
51 – 100 lbs – Never
The patient may:
Sit – Frequently, 20 minute duration
Stand – Occasionally
Walk – Occasionally
Climb – Never
Bend – Never
Kneel – Never

17

LIN00457

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid? No."

**Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016: Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:

"Questions and Reviewer's Response:

3. Please provide a review summary of the medical findings.

The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.

The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.

4. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

  ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.
  ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
  ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
  ➢ She could perform occasional bending and stooping.
  ➢ She could perform frequent reaching and fingering.

A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

  ➢ The claimant could lift up to 7 pounds occasionally.
  ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
  ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
  ➢ She could perform occasional bending and stooping.

18

> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated. From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

### EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

**LIN00459**

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

## VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
|---|---|---|
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

## WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the Dictionary of Occupational Titles, (DOT):

|  |  | Strength |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |

LIN00460

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| | | |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| DOT# Occupation | | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

## TRANSFERABLE SKILLS

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

**LIN00461**

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

Social Security Administration found her to be disabled.

Nancy (Dickey) Bcisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

**LIN00462**

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation,* a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment…"

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

**LIN00463**

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

LIN00464

# SEEKER DATA

Flanngan, Jamie S.
1625 Musky Dime Drive
Crane, MO 65693

| | | | |
|---|---|---|---|
| **Phone 1:** | (417) 459-5879 | **SSN:** | |
| **Phone 2:** | | **eMail:** | |
| **Reg/Case:** | | **Job Ready:** | |
| **Source:** | | **Record Opened:** | 10/04/2016 |
| **Funding:** | | **Record Updated:** | 10/04/2016 |
| **Program:** | | **Record Closed:** | |
| **Counselor:** | Phillip Eldred | **Phone:** | |
| **Placement Specialist:** | | **Phone:** | |
| **Job Goal:** | | | |
| **Desired Salary:** | | **Bilingual:** | No |
| **Hours:** | 0 | **Language:** | |
| **Shift:** | Day | **Transportation:** | None |
| **Overtime:** | Never | **License:** | |
| **Weekends:** | Never | | |
| **Relocate:** | No | | |
| **Skr1:** | | | |
| **Skr2:** | | | |
| **Skr3:** | | | |

LIN00465

# WORK HISTORY

Name: Flanagan, Jamie S.                                              SSN: ▮▮▮▮▮▮▮
                                                                     Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

LIN00466
Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 66 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ████████
Reg/Case:

**075.264-010 Nurse Practitioner**
O*NET Code: 29-1171.00 Nurse Practitioners

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles: Primary Care Nurse Practitioner

DLU: 1989

---

O*NET Title: Nurse Practitioners
O*NET Code: 29-1171.00

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses. Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy. Prescribe medications based on efficacy, safety, and cost as legally authorized. Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender. Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays). Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks. Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines. Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults. Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing. Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies. Diagnose or treat chronic health care problems such as high blood pressure and diabetes. Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability. Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary. Schedule follow-up visits to monitor patients or evaluate health or illness care. Perform routine or annual physical examinations. Supervise or coordinate patient care or support staff activities. Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services. Provide patients or caregivers with assistance in locating health care resources. Maintain departmental policies and procedures in areas such as safety and infection control. Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds. Advocate for accessible health care that minimizes environmental health risks. Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOT's under this O*NET Code.

---

**LIN00467**
Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 67 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ████████

Reg/Case:

Please note: O*NET Codes are under development and subject to change.

LIN00468

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.  SSN: ▮▮▮▮▮
Reg/Case:

| | | |
|---|---|---|
| Title: | | DOT Code:  075.264-010 |
| Industry: | Medical Services | |

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 13-14
Language  Grades 13-14

**Strength: Light**  Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, controlling, or planning activities of others. | Data: | 2 Analyzing |
|---|---|---|---|
| | Making judgments and decisions. | People: | 6 Speaking-Signaling |
| | Dealing with people. | Things: | 4 Manipulating |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

LIN00469

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ███████

Reg/Case:

075.167-010 Nurse, Supervisor
O*NET Code: 29-1141.00 Registered Nurses

Directs, through head nurses, activities of nursing staff. Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

O*NET Title: Registered Nurses
O*NET Code: 29-1141.00

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

LIN00470

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ████████

Reg/Case:

| Title: | | DOT Code: | 075.167-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength: Light**
Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

**Work Situations:** Performing a variety of duties.
Directing, controlling, or planning activities of others.
Dealing with people.
Attaining precise set limits, tolerances, and standards.
Performing effectively under stress.

**Data:** 1 Coordinating
**People:** 6 Speaking-Signaling
**Things:** 7 Handling

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

LIN00471

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 71 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮
Reg/Case:

**075.364-010 Nurse, General Duty**
**O*NET Code: 29-1141.00 Registered Nurses**

Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

**O*NET Title: Registered Nurses**
**O*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 72 of 200

LJN00472

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.  
SSN: ████████  
Reg/Case:

| Title: | | DOT Code: | 075.364-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14  
Mathematics Grades 9-12  
Language Grades 13-14

**Strength: Medium** — Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Dealing with people. | | Data: | 3 Compiling |
|---|---|---|---|---|
| | Attaining precise set limits, tolerances, and standards. | | People: | 6 Speaking-Signaling |
| | Making judgments and decisions. | | Things: | 4 Manipulating |
| | Performing effectively under stress. | | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

LIN00473

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 73 of 200

# WORK HISTORY

Name: a

SSN:
Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|----------|-----------------|-----|-----|-----|-----|---------|----------|-----|----------|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

LIN00474

# OCCUPATIONAL DESCRIPTION

Name: a

SSN:

Reg/Case:

**075.127-014  Nurse, Consultant**
**O\*NET Code:  29-1141.00  Registered Nurses**

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services:  Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications.  Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs.  Provides assistance in developing guides and manuals for specific aspects of nursing services.  Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups.  Advises in services available through community resources.  Consults with nursing groups concerning professional and educational problems.  Prepares or furnishes data for articles and lectures.  Participates in surveys and research studies.
DLU:  1977

**O\*NET Title: Registered Nurses**
**O\*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.   Administer medications to patients and monitor patients for reactions or side effects.   Record patients' medical information and vital signs.   Monitor, record, and report symptoms or changes in patients' conditions.   Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.   Modify patient treatment plans as indicated by patients' responses and conditions.   Monitor all aspects of patient care, including diet and physical activity.   Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.   Prepare patients for and assist with examinations or treatments.   Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.   Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.   Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.   Refer students or patients to specialized health resources or community agencies furnishing assistance.   Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.   Administer local, inhalation, intravenous, or other anesthetics.   Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.   Hand items to surgeons during operations.   Observe nurses and visit patients to ensure proper nursing care.   Conduct specified laboratory tests.   Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.   Engage in research activities related to nursing.   Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.   Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.   Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.   Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.   Provide or arrange for training or instruction of auxiliary personnel or students.   Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

Please note: O\*NET Codes are under development and subject to change.

**LIN00475**
Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 75 of 200

# OCCUPATIONAL REQUIREMENTS

Name: a

SSN:
Reg/Case:

| Title: | | DOT Code: | 075.127-014 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:**
Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength:** Sedentary — Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | Data: | 1 Coordinating |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | People: | 2 Instructing |
| | Dealing with people. | Things: | 7 Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 76 of 200

LIN00476

# Curriculum Vitae

**Phillip Aaron Eldred**
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

**Professional Career:**

### Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

### Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

LIN00477

4. Arranges for or administers psychological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

## Position: Elementary Counselor

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

## Organizations and Memberships:

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

## Education & Certifications:

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
> Missouri Life Certificate - Teacher, Grades 7-12
> Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling:** August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
> Missouri Life Certificate - Counselor, Grades 7-12
> Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

**LIN00478**

## Rehabilitation Education:

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling 1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

**LIN00479**

Outcome Based Training – 2002
Transition Symposium – 2002
Ticket to Work – 2002
Choices Training – 2003
Ethics in Rehabilitation – 2003
Order of Selection Training – 2003
ADHD Training – 2004
Self-Employment Training – 2004
Power Up – 2005
Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken:  The Americans With Disabilities Act of 1990 and Workers
Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken:  Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken:  Advanced Workers' Compensation In Missouri - 1992
Missouri Return To Work Issues In Workers' Compensation - 1999
Introduction To Workers' Compensation In Missouri - 2000
Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken:  Americans With Disabilities Act Conference - 1992
Successfully Employing People With Disabilities - 1993
Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken:   Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken:   Fundamentals of Supported Employment - 1994
Transition Symposium – 2002
Spring Training Institute – 2003
Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken:  Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken:  Power to Shine: Job Retention Strategies for the New Employee – 1999

4

LIN00480

American Schools Association – Chicago
Classes Taken:     Family First – 2010
     Clinicains in Court – 2010
     Ethics in Couseling and Psychotherapy – 2010
     How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:     More Effective Interviewing – 2015
     Rehabiliation Update – 2015
     Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:     Planning For Uncertainty – 2015

5

LIN00481

Drive – Occasionally
Finger – Frequently, both hands
Handle – Frequently, both hands
Operate foot controls – Occasionally, both feet
Reach above the shoulder – Frequently, both hands
Are there environmental factors that the patient should avoid?  No."

> **Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Dr. Joseph Thomas:**

March 9, 2016:  Advisory Report from Reliable Review Services (Joseph G. Thomas, M.D.) to Lincoln Financial Group:

"Questions and Reviewer's Response:

3.  Please provide a review summary of the medical findings.

The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5-S1, facet arthropathy at the level of L4-L5, and disk protrusion with annular tear impacting the left L4 nerve root.

The claimant had a Functional Capacity Evaluation on 4/24/2014 that showed near normal range of motion and strength.  She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 4/21/2015.  The claimant was prohibited from any lifting.  She could perform occasional standing/walking and frequent sitting, reaching and fingering.  Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.

4.  Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

- ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.
- ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
- ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- ➢ She could perform occasional bending and stooping.
- ➢ She could perform frequent reaching and fingering.

A.  For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.

These limitations would be effective from 11/25/2015 and forward.

B.  Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.

- ➢ The claimant could lift up to 7 pounds occasionally.
- ➢ She could perform frequent sitting with 20 minutes of continuous sitting.
- ➢ She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- ➢ She could perform occasional bending and stooping.

18

**LIN00482**

Case 3:17-cv-05060-MDH          Document 35-3          Filed 05/15/18          Page 82 of 200

> She could perform frequent reaching and fingering.
> These limitations are for 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

5. Are the restrictions or limitations placed upon the claimant's physical/functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 4/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

Assessment/Rationale:

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year old female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated. From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/2015 with the exception of lifting as noted above."

**Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.**

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

## EDUCATION—LICENSES/CERTIFCATIONS—MILITARY SERVICE

Jamie attended Carl Junction High School in Carl Junction, Missouri, and graduated in 1998. She stated that she was a straight "A" student. She attended Missouri Southern State University from 1998 to 2002 and graduated with a Bachelor of Science in Nursing. She stated that she was in the honors program and had a grade point average of 3.9. She attended the University of Missouri at Kansas City in Kansas City, Missouri from 2002 until 2004.

19

LIN00483

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 83 of 200

She graduated with a Masters Degree in Nursing. She had a grade point average of 3.9. She is a Nurse Practioner. She has had no other training.

Ms. Flanagan possesses a Missouri driver's license. Ms. Flanagan has no military experience.

### VOCATIONAL TESTING

As part of the evaluation, Jamie was administered the Purdue Pegboard Test. The **Purdue Pegboard** is a test of dexterity used in the selection of employees for industrial jobs, such as assembly, packing, and operation of certain machines and other manual jobs. Two types of activity are measured, one involving gross movement of hands, fingers and arms, and the other involving primarily what may be called assembly or fingertip dexterity. Five separate scores are generally utilized in this application. Jamie's scores on the Purdue Pegboard and equivalent percentiles when compared to Industrial Applicants are as follows:

| PURDUE | SCORE | PERCENTILE |
|---|---|---|
| Right Hand | 13 | 1 |
| Left Hand | 15 | 30 |
| Both Hands | 13 | 35 |
| Right, Left and Both | 41 | 9 |
| Assembly | 29 | 19 |

Research has identified three factors that distinguish industrially injured workers who are able to return to work from non-workers. As a group, those who returned to work were younger than those remaining unemployed. The second difference was scores on the Purdue Pegboard dexterity test. Those who were successful returning to work had higher scores on all subtests of the Purdue. The final difference was diagnosis and physical restrictions. Those requiring sedentary work have few vocational alternatives.

Jamie is right hand dominant and is most similar to those who were not successful returning to work because she has low scores on the Purdue Pegboard and has physical restrictions at less than the sedentary work level.

### WORK HISTORY

At the time of her injury Ms. Jamie Flanagan was employed by Skaggs (Cox) Pain Clinic in Branson, Missouri. She stated that she enjoyed working at this job and considered her pay adequate for what she did. She earned approximately $85,000 to $89,000 per year. She worked at this job for three years and five months from March 2010 until August 28, 2013. Her job is described by the following code in the Dictionary of Occupational Titles, (DOT):

|  |  | Strength |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |

20

PAGE 3/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

LIN00484

Jamie has worked other jobs in the past that are described by the following codes in the Dictionary of Occupational Titles, (DOT):

| | | |
|---|---|---|
| Nurse Practioner (9 years) | 075.264-010 | (L) |
| Nurse, Supervisor (10 months) | 075.167-010 | (L) |
| Nurse, General Duty (1 yr 4 mon) | 074.364-010 | (M) |

Ms. Jamie Flanagan's past work history was analyzed by the OASYS Occupational Access System to identify the required worker traits. These include: Specific Vocational Preparation, General Education Development, Strength, Physical Demands, Work Environments, Worker Situations, Interests, Aptitudes, and Worker Functions. Her past jobs are described on pages 2 through 10 of the OASYS section of this report along with the worker trait factors.

Ms. Jamie Flanagan has not worked in competitive employment since August 28, 2013 and is receiving Social Security Disability.

April 26, 2016: Letter from Lincoln Financial Group to Law offices of Rick Vasquez: "Using the Dictionary of Occupational Titles as a reference, we found that you client would be capable of performing the following occupations:

| DOT# Occupation | | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary" |

The job of Nurse, Consultant is found on pages 10-12 of the OASYS attachment. This is a sedentary job that she is not physically able to perform according to Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas.

The job of "call center nurse" with a DOT # of "075.374-916" is not found in the Dictionary of Occupational Titles. According to the DOT, this job is not found with this DOT number.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

## TRANSFERABLE SKILLS

Individuals who have performed semi-skilled or skilled work may have work skills, which can be transferred to other semi-skilled or skilled occupations at a lighter exertional level in keeping with their physical limitations. "The transferability of a person's skills is most probable and meaningful among jobs which: 1) The same or lesser degree of skill is required (SVP), 2) The same or similar tools and machines are used (MTEWA), 3) The same or similar raw materials, products, processes or services are involved (MPSMS)." CFR, Part 404.1568 (d).

21

LIN00485

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 85 of 200

Ms. Jamie Flanagan does not have any transferable work skills due to the fact that she has functional limitations at less then the sedentary work level.

## VOCATIONAL SUMMARY & POTENTIAL

Jamie's potential for future employment is based on her physical capacity to perform work tasks, along with her age, education, work experience, and vocational skills and aptitudes. These variables relate to her ability to perform work for which she has transferable work skills, has training potential, or has the ability to perform unskilled jobs.

**Physical Demands**: Jamie continues to be restricted to a certain extent in the following physical demands: standing, walking, sitting, lifting, carrying, pushing, pulling, climbing, balancing, stooping, kneeling, crouching, crawling, and reaching.

**Medical Restrictions:**

Social Security Administration found her to be disabled.

Nancy (Dickey) Beisswenger, PT gave restrictions defined at less than the sedentary work level, which means that Jamie is unemployable and unable to work in any occupation.

Dr. Meghana Karande gave restrictions defined at the sedentary work level, which would prevent her from returning to any of her past occupations.

Dr. Donald Hopewell gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Dr. Joseph Thomas gave restrictions defined at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

**Conclusions of Medical Restrictions:** After a careful evaluation of the medical records and the rehabilitation interview, it is felt Ms. Jamie Flanagan now has vocational restrictions at less than the sedentary work level.

**Potential for Future Employability:** Based on the above Physical profile one scenario will be given in this report in regard to Jamie's potential for future employability: (1) Less than Sedentary Work. A four-step process can determine her potential for future employability.

**(1) Less than sedentary work:** Based on Jamie's medical limitations she cannot return to her previous work and has no transferable job skills. She also has no training potential and cannot perform unskilled jobs.

22

PAGE 5/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

LIN00486

## PLACEMENT POTENTIAL

Placement is the ability of the potential worker to complete the job seeking, application and interview process to obtain employment. Placement is distinct and separate from the workers ability to perform essential job functions. As part of the placement process the applicant must be able to demonstrate ability to perform essential job functions with or without a reasonable accommodation. The employer may consider a disability where there is a substantial risk of further injury to the employee or where employment of a disabled worker would pose a threat to other workers.

There are a number of entry-level jobs generally available in the community having a high turn over and paying low wages. These jobs are either unskilled labor or lower level semi-skilled work. These unskilled jobs are mostly found in the food service, retail and service industries. Most of these jobs are at the Light or Medium strength level. Industrial production occupations and many retail and food service occupations require the worker to attend to task, usually at a fixed work station, for 1 hour 50 minutes in the AM followed by a 10-20 minute break and a second 1 hour 50 minute work period prior to the lunch break. A similar schedule is followed in the PM.

A worker who is unable to maintain posture (sitting, standing or walking) while attending to work tasks is unable to perform essential duties of such jobs unless special accommodations can be made.

A worker who is unable to use arms and hands for repetitive reaching, handling, gripping, grasping, pushing, pulling, or fingering continuously for 1 hour 50 minute periods during the work day divided by breaks is unable to perform essential functions of production and similar jobs where pace of production is an occupational requirement.

In the *Journal of Rehabilitation*, a study was conducted that included the following conclusion: "When psychological overlay such as depression has been diagnosed, the rehabilitation counselor will have increased difficulty in retuning the client back to the community and to gainful employment..."

As the result of her pain, impairments and vocational restrictions, and use of narcotic pain medication, it is unlikely an employer in the normal course of business would consider employing Ms. Jamie Flanagan.

## SUMMARY AND CONCLUSION

It was requested that Ms. Janie Flanagan be evaluated to determine whether or not she is employable in the open labor market.

On August of 2010 in the course and scope of Jamie Flanagan's employment with Skaggs/Cox Medical Center in Branson, Missouri, she developed low back pain with pain radiating down her right leg and within two weeks she was having excruciating pain. She has

23

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 87 of 200     LIN00487

had one low back surgery on April 1, 2011; seven or eight injections; and physical therapy. By January 2011 she was not getting any better and had missed work. She went home crying from work. Her primary care physician was helping her with pain management. Both of her legs would go numb and she had burning in her feet. She tried a spinal cord stimulator, but it didn't work. She stated that she has restrictions of seven pounds lifting; 30-45 minutes of driving; sitting for twenty minutes; standing for 15 to 20 minutes; fatigue; weakness; poor memory; and poor concentration. She last worked on August 28, 2013.

Jamie stated that in order of severity her medical problems are: 1. Low Back (constant pain with radiating pain down both legs). 2. Auto Immune Condition (shoulders/elbows/fingers) 3. Residual's to medication—Confusion, memory, and concentration. 4. Stomach problems due to the medication she is taking.

Nancy (Dickey) Beisswenger, PT, Dr. Donald Hopewell, and Dr. Joseph Thomas all gave restrictions at less than the sedentary work level, which means she is unemployable and unable to work in any occupation.

Jamie has not been able to work for approximately three years and as a practical matter she will not be able to return to competitive, gainful employment.

It is with a reasonable degree of professional and vocational certainty that the following are given regarding Ms. Jamie Flanagan:
1. The physical and activity restrictions that were relied on in forming this evaluation are listed on pages two through ten of this report.
2. Ms. Flanagan is unable to perform any of her past work.
3. It is highly unlikely that any reasonable employer in the normal course of business would hire Ms. Flanagan for competitive, gainful employment.
4. Ms. Flanagan does not have any transferable jobs for the sedentary work level.
5. Ms. Flanagan would have problems being retrained in a formal training program due to her constant pain, use of narcotic pain medication, and functional limitations.
6. Ms. Flanagan is unemployable in the open labor market.
7. It is with a reasonable degree of professional and vocational certainty that Jamie Flanagan "Is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow."

Phillip Eldred, M. S., C.R.C.
Certified Rehabilitation Counselor

24

LIN00488

Case 3:17-cv-05060-MDH      Document 35-3      Filed 05/15/18      Page 88 of 200

# SEEKER DATA

**Flanagan, Jamie S.**
**1625 Musky Dime Drive**
**Crane, MO 65693**

**Phone 1:** (417) 459-5879                          **SSN:** 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
**Phone 2:**                                                    **eMail:**

**Reg/Case:**                                                  **Job Ready:**
**Source:**                                    **Record Opened:** 10/04/2016
**Funding:**                                  **Record Updated:** 10/04/2016
**Program:**                                    **Record Closed:**

**Counselor:** Phillip Eldred                              **Phone:**
**Placement Specialist:**                                        **Phone:**

**Job Goal:**

**Desired Salary:**                                        **Bilingual:** No
**Hours:** 0                                               **Language:**

**Shift:** Day                                     **Transportation:** None
**Overtime:** Never                                        **License:**
**Weekends:** Never
**Relocate:** No

**Skr1:**
**Skr2:**
**Skr3:**

Rehabilitation Consulting Services Inc.                                    Page  1
10/04/2016

LIN00489

# WORK HISTORY

Name: Flanagan, Jamie S.         SSN: ▉▉▉▉▉

Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|----------|------------------|-----|-----|-----|-----|---------|----------|-----|----------|
| 075.264-010 | Nurse Practitioner | 8 | 9 | 0 | Y | N | N | L | 10.02.01 |
| 075.167-010 | Nurse, Supervisor | 7 | 0 | 10 | Y | N | N | L | 10.02.01 |
| 075.364-010 | Nurse, General Duty | 7 | 1 | 4 | Y | N | N | M | 10.02.01 |

Rehabilitation Consulting Services Inc.        Page 2
10/04/2016

LIN00490

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.                                    SSN: ████████
                                                           Reg/Case:

---

**075.264-010  Nurse Practitioner**
**O*NET Code:  29-1171.00  Nurse Practitioners**

Provides general medical care and treatment to patients in medical facility, such as clinic, health center, or public health agency, under direction of physician: Performs physical examinations and preventive health measures within prescribed guidelines and instructions of physician. Orders, interprets, and evaluates diagnostic tests to identify and assess patient's clinical problems and health care needs. Records physical findings, and formulates plan and prognosis, based on patient's condition. Discusses case with physician and other health professionals to prepare comprehensive patient care plan. Submits health care plan and goals of individual patients for periodic review and evaluation by physician. Prescribes or recommends drugs or other forms of treatment such as physical therapy, inhalation therapy, or related therapeutic procedures. May refer patients to physician for consultation or to specialized health resources for treatment. May be designated according to field of specialization as Pediatric Nurse Practitioner (medical ser.). Where state law permits, may engage in independent practice.
Alternate Titles:  Primary Care Nurse Practitioner

DLU: 1989

---

**O*NET Title: Nurse Practitioners**
**O*NET Code: 29-1171.00**

Diagnose and treat acute, episodic, or chronic illness, independently or as part of a healthcare team. May focus on health promotion and disease prevention. May order, perform, or interpret diagnostic tests such as lab work and x rays. May prescribe medication. Must be registered nurses who have specialized graduate education.

CORE TASKS: Analyze and interpret patients' histories, symptoms, physical findings, or diagnostic information to develop appropriate diagnoses.   Diagnose or treat acute health care problems such as illnesses, infections, or injuries. Recommend diagnostic or therapeutic interventions with attention to safety, cost, invasiveness, simplicity, acceptability, adherence, and efficacy.   Prescribe medications based on efficacy, safety, and cost as legally authorized.   Educate patients about self-management of acute or chronic illnesses, tailoring instructions to patients' individual circumstances. Prescribe medication dosages, routes, and frequencies based on patient characteristics such as age and gender.   Order, perform, or interpret the results of diagnostic tests, such as complete blood counts (CBCs), electrocardiograms (EKGs), and radiographs (x-rays).   Maintain complete and detailed records of patients' health care plans and prognoses. Recommend interventions to modify behavior associated with health risks.   Develop treatment plans based on scientific rationale, standards of care, and professional practice guidelines.   Detect and respond to adverse drug reactions, with special attention to vulnerable populations such as infants, children, pregnant and lactating women, or older adults.   Read current literature, talk with colleagues, or participate in professional organizations or conferences to keep abreast of developments in nursing.   Counsel patients about drug regimens and possible side effects or interactions with other substances such as food supplements, over-the-counter (OTC) medications, or herbal remedies.   Diagnose or treat chronic health care problems such as high blood pressure and diabetes.   Provide patients with information needed to promote health, reduce risk factors, or prevent disease or disability.   Treat or refer patients for primary care conditions, such as headaches, hypertension, urinary tract infections, upper respiratory infections, and dermatological conditions. Consult with or refer patients to appropriate specialists when conditions exceed the scope of practice or expertise. Diagnose or treat complex, unstable, comorbid, episodic, or emergency conditions in collaboration with other health care providers as necessary.   Schedule follow-up visits to monitor patients or evaluate health or illness care.   Perform routine or annual physical examinations.   Supervise or coordinate patient care or support staff activities.   Maintain current knowledge of state legal regulations for nurse practitioner practice including reimbursement of services.   Provide patients or caregivers with assistance in locating health care resources.   Maintain departmental policies and procedures in areas such as safety and infection control.   Perform primary care procedures such as suturing, splinting, administering immunizations, taking cultures, and debriding wounds.   Advocate for accessible health care that minimizes environmental health risks.   Keep abreast of regulatory processes and payer systems such as Medicare, Medicaid, managed care, and private sources.

Preliminary Crosswalk shows this DOT Occupation is 1 of 1 DOT's under this O*NET Code.

---

Rehabilitation Consulting Services Inc.                                         Page 3
10/04/2016

LIN00491

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▓▓▓▓▓▓

Reg/Case:

Please note: O*NET Codes are under development and subject to change.

Rehabilitation Consulting Services Inc.
10/04/2016

Page 4

LIN00492

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 92 of 200

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.                                                SSN: ▮▮▮▮▮▮
                                                                        Reg/Case:

|  |  |
|---|---|
| **Title:** | |
| **Industry:** Medical Services | **DOT Code:** 075.264-010 |

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 13-14
Language Grades 13-14

**Strength: Light**   Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

**Physical Demands:**

| | | **Environmental Conditions:** | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| **Work Situations:** | Directing, controlling, or planning activities of others. | **Data:** | 2 Analyzing |
|---|---|---|---|
| | Making judgments and decisions. | **People:** | 6 Speaking-Signaling |
| | Dealing with people. | **Things:** | 4 Manipulating |

| **Aptitudes:** | **DOT** | **OAP** |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 2 (67-89 Percentile) | Not Included |
| Form Perception | 2 (67-89 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

Rehabilitation Consulting Services Inc.                                         Page 5
10/04/2016

LIN00493
Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 93 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮▮▮

Reg/Case:

---

**075.167-010 Nurse, Supervisor**
**O*NET Code: 29-1141.00 Registered Nurses**

Directs, through head nurses, activities of nursing staff: Plans and organizes activities in nursing services, such as obstetrics, pediatrics, or surgery, or for two or more patient-care units to ensure patient needs are met in accordance with instructions of physician and hospital administrative procedures. Coordinates activities with other patient care units. Consults with NURSE, HEAD (medical ser.) 075.137-014 on nursing problems and interpretation of hospital policies to ensure patient needs are met. Plans and organizes orientation and in-service training for unit staff members, and participates in guidance and educational programs. Assists in formulating budget. Engages in studies and investigations related to improving nursing care.
DLU: 1987

---

**O*NET Title: Registered Nurses**
**O*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

---

PAGE 13/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

LIN00494

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 94 of 200

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.                                            SSN: ▮▮▮▮▮▮
                                                                   Reg/Case:

| Title: | | DOT Code: | 075.167-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Grades 13-14
Mathematics Grades 9-12
Language Grades 13-14

**Strength: Light**  Lifting, Carrying, Pushing, Pulling 20 Lbs. occasionally, frequently up to 10 Lbs., or negligible amount constantly. Can include walking and or standing frequently even though weight is negligible. Can include pushing and or pulling of arm and or leg controls.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Occasionally | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Occasionally | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | | Data: | 1 Coordinating |
|---|---|---|---|---|
| | Directing, controlling, or planning activities of others. | | People: | 6 Speaking-Signaling |
| | Dealing with people. | | Things: | 7 Handling |
| | Attaining precise set limits, tolerances, and standards. | | | |
| | Performing effectively under stress. | | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 3 (34-66 Percentile) | |

LIN00495
Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 95 of 200

# OCCUPATIONAL DESCRIPTION

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮▮
Reg/Case:

**075.364-010 Nurse, General Duty**
**O\*NET Code: 29-1141.00 Registered Nurses**

Provides general nursing care to patients in hospital, nursing home, infirmary, or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient. May rotate among various clinical services of institution, such as obstetrics, surgery, orthopedics, outpatient and admitting, pediatrics, and psychiatry. May prepare rooms, sterile instruments, equipment and supplies, and hand items to SURGEON (medical ser.) 070.101-094; OBSTETRICIAN (medical ser.) 070.101-054, or other medical practitioner. May make beds, bathe, and feed patients. May serve as leader for group of personnel rendering nursing care to number of patients.
Alternate Titles: Nurse, Staff

DLU: 1989

**O\*NET Title: Registered Nurses**
**O\*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records. Administer medications to patients and monitor patients for reactions or side effects. Record patients' medical information and vital signs. Monitor, record, and report symptoms or changes in patients' conditions. Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans. Modify patient treatment plans as indicated by patients' responses and conditions. Monitor all aspects of patient care, including diet and physical activity. Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit. Prepare patients for and assist with examinations or treatments. Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs. Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems. Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained. Refer students or patients to specialized health resources or community agencies furnishing assistance. Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia. Administer local, inhalation, intravenous, or other anesthetics. Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry. Hand items to surgeons during operations. Observe nurses and visit patients to ensure proper nursing care. Conduct specified laboratory tests. Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions. Engage in research activities related to nursing. Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures. Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition. Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers. Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals. Provide or arrange for training or instruction of auxiliary personnel or students. Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

Please note: O\*NET Codes are under development and subject to change.

Rehabilitation Consulting Services Inc.
10/04/2016

Page 8

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 96 of 200

LIN00496

# OCCUPATIONAL REQUIREMENTS

Name: Flanagan, Jamie S.

SSN: ▮▮▮▮▮▮

Reg/Case:

| Title: | | DOT Code: | 075.364-010 |
|---|---|---|---|
| Industry: | Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength: Medium**     Lifting, Carrying, Pushing, Pulling 20 - 50 Lbs. occasionally, 10 - 25 Lbs. frequently or up to 10 Lbs. constantly.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Occasionally | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Frequently | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Frequently | | |
| Field of Vision | Never | | |

| Work Situations: | Dealing with people. | Data: | 3 Compiling |
|---|---|---|---|
| | Attaining precise set limits, tolerances, and standards. | People: | 6 Speaking-Signaling |
| | Making judgments and decisions. | Things: | 4 Manipulating |
| | Performing effectively under stress. | | |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3 (46 - 54 Percentile) |
| Numerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Spatial Aptitude | 3 (34-66 Percentile) | Not Included |
| Form Perception | 3 (34-66 Percentile) | Not Included |
| Clerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Motor Coordination | 3 (34-66 Percentile) | Not Included |
| Finger Dexterity | 3 (34-66 Percentile) | Not Included |
| Manual Dexterity | 3 (34-66 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 4 (11-33 Percentile) | |
| Color Discrimination | 4 (11-33 Percentile) | |

PAGE 16/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

## WORK HISTORY

Name: a                                                    SSN:
                                                           Case:

| DOT Code | Occupation Title | SVP | Yrs | Mos | Inc | Has CWF | Uses CWF | Str | GOE Code |
|---|---|---|---|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | 1 | 0 | N | N | N | S | 10.02.01 |

Rehabilitation Consulting Services Inc.                                    Page 1o
10/04/2016

LIN00498
Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 98 of 200

# OCCUPATIONAL DESCRIPTION

Name: a                                              SSN:
                                                    Reg/Case:

---

**075.127-014  Nurse, Consultant**
**O\*NET Code:  29-1141.00  Registered Nurses**

Advises hospitals, schools of nursing, industrial organizations, and public health groups on problems related to nursing activities and health services:  Reviews and suggests changes in nursing organization and administrative procedures. Analyzes nursing techniques and recommends modifications.  Aids schools in planning nursing curriculums, and hospitals and public health nursing services in developing and carrying out staff education programs.  Provides assistance in developing guides and manuals for specific aspects of nursing services.  Prepares educational materials and assists in planning and developing health and educational programs for industrial and community groups.  Advises in services available through community resources.  Consults with nursing groups concerning professional and educational problems.  Prepares or furnishes data for articles and lectures.  Participates in surveys and research studies.
DLU:  1977

---

**O\*NET Title: Registered Nurses**
**O\*NET Code: 29-1141.00**

Assess patient health problems and needs, develop and implement nursing care plans, and maintain medical records. Administer nursing care to ill, injured, convalescent, or disabled patients. May advise patients on health maintenance and disease prevention or provide case management. Licensing or registration required.

CORE TASKS: Maintain accurate, detailed reports and records.   Administer medications to patients and monitor patients for reactions or side effects.   Record patients' medical information and vital signs.   Monitor, record, and report symptoms or changes in patients' conditions.   Consult and coordinate with healthcare team members to assess, plan, implement, or evaluate patient care plans.   Modify patient treatment plans as indicated by patients' responses and conditions.   Monitor all aspects of patient care, including diet and physical activity.   Direct or supervise less-skilled nursing or healthcare personnel or supervise a particular unit.   Prepare patients for and assist with examinations or treatments.   Instruct individuals, families, or other groups on topics such as health education, disease prevention, or childbirth and develop health improvement programs.   Assess the needs of individuals, families, or communities, including assessment of individuals' home or work environments, to identify potential health or safety problems.   Prepare rooms, sterile instruments, equipment, or supplies and ensure that stock of supplies is maintained.   Refer students or patients to specialized health resources or community agencies furnishing assistance.   Consult with institutions or associations regarding issues or concerns relevant to the practice and profession of nursing.
SUPPLEMENTAL TASKS: Inform physician of patient's condition during anesthesia.   Administer local, inhalation, intravenous, or other anesthetics.   Provide health care, first aid, immunizations, or assistance in convalescence or rehabilitation in locations such as schools, hospitals, or industry.   Hand items to surgeons during operations.   Observe nurses and visit patients to ensure proper nursing care.   Conduct specified laboratory tests.   Direct or coordinate infection control programs, advising or consulting with specified personnel about necessary precautions.   Engage in research activities related to nursing.   Prescribe or recommend drugs, medical devices, or other forms of treatment, such as physical therapy, inhalation therapy, or related therapeutic procedures.   Order, interpret, and evaluate diagnostic tests to identify and assess patient's condition.   Perform physical examinations, make tentative diagnoses, and treat patients en route to hospitals or at disaster site triage centers.   Perform administrative or managerial functions, such as taking responsibility for a unit's staff, budget, planning, or long-range goals.   Provide or arrange for training or instruction of auxiliary personnel or students.   Work with individuals, groups, or families to plan or implement programs designed to improve the overall health of communities.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOT's under this O\*NET Code.

Please note: O\*NET Codes are under development and subject to change.

Rehabilitation Consulting Services Inc.                          Page 1í
10/04/2016

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 99 of 200
LIN00499

# OCCUPATIONAL REQUIREMENTS

Name: a

SSN:
Reg/Case:

| | | |
|---|---|---|
| **Title:** | | **DOT Code:** 075.127-014 |
| **Industry:** Medical Services | | |

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning  Grades 13-14
Mathematics  Grades 9-12
Language  Grades 13-14

**Strength: Sedentary**     Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Never | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a variety of duties. | Data: | 1 Coordinating |
|---|---|---|---|
| | Directing, controlling, or planning activities of others. | People: | 2 Instructing |
| | Dealing with people. | Things: | 7 Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89 Percentile) | 3+ (56 - 66 Percentile) |
| Verbal Aptitude | 2 (67-89 Percentile) | 3  (46 - 54 Percentile) |
| Numerical Aptitude | 2 (67-89 Percentile) | Not Included |
| Spatial Aptitude | 4 (11-33 Percentile) | Not Included |
| Form Perception | 4 (11-33 Percentile) | Not Included |
| Clerical Aptitude | 3 (34-66 Percentile) | Not Included |
| Motor Coordination | 4 (11-33 Percentile) | Not Included |
| Finger Dexterity | 4 (11-33 Percentile) | Not Included |
| Manual Dexterity | 4 (11-33 Percentile) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11 Percentile) | |
| Color Discrimination | 5 (Below 11 Percentile) | |

PAGE 19/24 * RCVD AT 10/19/2016 8:58:51 AM [Central Daylight Time] * SVR:NE1PWFAX101/5 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):06-06

**LIN00500**

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 100 of 200

# Curriculum Vitae

### Phillip Aaron Eldred
924 East Snider
Springfield, Missouri 65803
(417) 844-8329 (417) 833-0274

## Professional Career:

### Position: Certified Rehabilitation Counselor

Vocational Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

January 2016 to Present
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

Rehabilitation Consulting Service
3433 South Campbell, Suite H
Springfield, Missouri 65807

October 1990 to January 2016
Examples of Work Performed: Vocational Consultation; evaluation of vocational disabilities sustained in injuries; vocational testing; employment potential; future lost vocational opportunities sustained due to injuries; evaluation of problems maintaining employment; job placement; work life expectancy; and any future lost wages due to injuries.

### Position: Senior Counselor

Missouri Division of Vocational Rehabilitation
613 E. Kearney
Springfield, Missouri 65803

August 3, 1981 to August 31, 2006
Examples of Work Performed:
1. Provides counseling and guidance services by effectively communicating vocational-related issues with clients.
2. Promotes case findings, receives and screens referrals, conducts interviews and gathers information to determine eligibility and prognosis for Vocational Rehabilitation.
3. Screens, analyzes, interprets, and evaluates medical, psychological, social, educational, and employment information regarding applicants.

1

LIN00501
Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 101 of 200

4. Arranges for or administers pyschological tests to ascertain client's mental level, aptitudes, interests and abilities.
5. Plans with clients regarding services necessary to the attainment of realistic vocational goals.
6. Prepares and recommends individualized rehabilitation plans.
7. Arranges for provision of rehabilitation services in accordance with approved individualzed rehabilitation plans.
8. Assumes responsibility for suitable placement and follow-up in employment.

**Position: Elementary Counselor**

Pleasant Hope School District
Pleasant Hope, Missouri

August 1980 to May 1981
Examples of Work Performed: Involved with evaluation and diagnosis of special education students. Counseled with students and parents. Group testing and individual intelligence testing.

**Organizations and Memberships:**

Member, National Rehabilitation Association
Member, Missouri Rehabilitation Association

**Education & Certifications:**

**Bachelor of Science in Secondary Education:** May 1973
Southwest Missouri State University
Springfield, Missouri
Major: Speech and Business
Certification:
    Missouri Life Certificate - Teacher, Grades 7-12
    Speech, Drama, English, and Business Education

**Master of Science in Guidance and Counseling:** August 1980
Southwest Missouri State University
Springfield, Missouri
Certification:
    Missouri Life Certificate - Counselor, Grades 7-12
    Missouri Life Certificate - School Psychological Examiner, Grades K-12

**Certified Rehabilitation Counselor:** October 1991
Commission on Rehabilitation Counselor Certification
300 N. Martingale Road, Suite 460, Schaumburg, Illinois, 60173

2

LIN00502

## Rehabilitation Education:

Rehabilitation Continuing Education Program, University of Missouri, Columbia, Missouri
Classes Taken:

Utilization of DSM-III - 1981
Dictionary of Occupational Titles - 1982
Interpretation of Psychological Testing - 1982
Convulsive Disorders - 1982
Medical Aspects - 1982
Prosthetics and Orthotics - 1982
Psycho-Pharmacology - 1982
Job Placement - 1982
Job Placement II - 1982
Vocational Counseling - 1983
Learning Disability - 1983
Vocational Counseling  1984
Transferable Job Skills - 1984
Professional Judgment/Mental Disabilities - 1985
Reality Therapy (Dr. Glasser) - 1985
Chronic Mental Illness - 1985
Learning Disability - 1985
Learning Disability - 1986
Rehabilitation Facility Programming/Services - 1986
Medical Aspects - 1987
Medical Aspects - 1988
Chemical Dependency Workshop - 1988
Learning Disability Phase II - 1989
Tests and Measurements - 1990
Legal Issues - 1991
Assistive Technology - 1991
Transferable Job Skills - 1991
Americans With Disabilities Act/Assistive Technology - 1992
Low Back Pain Seminar - 1992
Accommodation Strategies for Learning Disabilities - 1993
Diagnostic and Statistical Manual-IV Training - 1995
Learning Disability - 1997
Preventing Mental Health Malpractice: Ethical & Legal Issues - 1997
Employment and Individuals With Psychiatric Disabilities - 1998
Psychotropics Made Simple - 1998
Orthopaedic Syndromes and Their Relationship to Employment - 1998
Transition School to Work - 1999
Transition Workshop - 1999
Update In Supported Employment Practices - 2000
Ethics In Rehabilitation Counseling – 2000
Informed Choice Training – 2001

3

LIN00503

Case 3:17-cv-05060-MDH          Document 35-3          Filed 05/15/18          Page 103 of 200

Outcome Based Training – 2002
Transition Symposium – 2002
Ticket to Work – 2002
Choices Training – 2003
Ethics in Rehabilitation – 2003
Order of Selection Training – 2003
ADHD Training – 2004
Self-Employment Training – 2004
Power Up – 2005
Investing in Our Future – 2005

Greene County Medical Society and Greene County Bar Association-Springfield
Class Taken:  The Americans With Disabilities Act of 1990 and Workers
              Compensation Issues - 1992

University of Missouri-Kansas City School of Law
Class Taken:  Workers' Compensation Seminar - 1991

Lorman Business Center, Inc.
Classes Taken:  Advanced Workers' Compensation In Missouri - 1992
                Missouri Return To Work Issues In Workers' Compensation - 1999
                Introduction To Workers' Compensation In Missouri - 2000
                Workers' Compensation in Missouri - 2002

Southwest Missouri State University
Classes Taken:  Americans With Disabilities Act Conference - 1992
                Successfully Employing People With Disabilities - 1993
                Consumer Choice and Empowerment in Supported Employment - 1994

Missouri Occupational Information Coordinating Committee
Class Taken:  Labor Market and Occupational Information Workshop – 1992

Missouri Department of Mental Health's Division of Comprehensive Psychiatric Services,
The Missouri Institute of Mental Health, and the University of Missouri-Columbia,
School of Medicine
Classes Taken:  Fundamentals of Supported Employment - 1994
                Transition Symposium – 2002
                Spring Training Institute – 2003
                Spring Training Institute – 2005

Missouri Planning Council for Developmental Disabilities
Class Taken:  Employment and Individuals With Psychiatric Disabilities - 1998

University of Wisconsin - Stout
Class Taken:  Power to Shine: Job Retention Strategies for the New Employee – 1999

4

LIN00504

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 104 of 200

American Schools Association – Chicago
Classes Taken:          Family First – 2010
                        Clinicains in Court – 2010
                        Ethics in Couseling and Psychotherapy – 2010
                        How to Raise Your Self-Esteem – 2010

CM Home Study – Camarillo, CA
Classes Taken:          More Effective Interviewing – 2015
                        Rehabiliation Update – 2015
                        Counseling Ethics – 2015

American Schools Association – Chicago
Class Taken:            Planning For Uncertainty – 2015

5

LIN00505

 

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:

8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

August 24, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term Disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

        Secure password: Social Security number (no spaces/dashes)

If you should have any questions, please contact our office at the number listed above.

Sincerely,

Abbie Kauffman
Assisting on behalf of Reid Hastings
800-423-2765 *2543
Coordinator, Admin Svcs Gen Admin
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00506**

**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

SPRINGFIELD
MO 658
17 AUG '16
PM 2 L

Hesler
08/17/2016
US POSTAGE $00.46⁵

ZIP 65804
011D12810600

AUG 1 9 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

68114-406699

LIN00507

AUG 1 9 2016



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

August 17, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

> Re:   *Claimant: Jamie Flanagan*
> *Policyholder: Lester E. Cox Medical Center*
> *Policy# 00001015732600000*
> *Claim# 1130226196*

Dear Reid Hastings:

On May 8, 2016, I sent a letter to your company requesting a copy of my client's entire file and the curriculum vitae of experts utilized in denying Mrs. Flanagan's benefits. On June 6, 2016 I received the curriculum vitae for Joseph G. Thomas, M.D. and what is purported to be a curriculum vitae for Brandy Thomas, MA, CRC. In the June 6, 2016, with the curriculum vitae's letter you wrote "...a file copy is being created and will be sent to you once complete." To date I have received no file copy. Oddly, however, I have received a file copy c.d. with a person named Gibson on the c.d. I assume this is Gibson's records, but I cannot access the file because you utilize a password system of a Social Security number and Mrs. Flanagan's Social Security number does not open Gibson's file. I will assume the Gibson c.d. is for another case.

Our deadline to appeal the decision is October 23, 2016. To date you have not provided a copy of the entire file. I have the file from a prior request dated February 24, 2016, which consists of 612 pages. It would be very sufficient to simply provide us everything from the date of that c.d. forward. If I do not receive anything further evidencing the records from and after the date of that c.d. I am going to assume there are no further records after February 24, 2016 relevant to Mrs. Flanagan's claim and proceed to develop evidence. If later in a court action there are records from and after our appeal in February 2016 and the disc you sent on February 24, 2016, I will argue to the court your company intentionally refused to provide any further documentation used to deny Mrs. Flanagan's benefits.

**LIN00508**

Page 2
Re: Jamie Flanagan

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LIN00509

LIN00510

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 110 of 200



**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

JUN 1 3 2016

Hasler
06/09/2016
US POSTAGE

FIRST-CLASS MAIL

$00.46⁵

ZIP 65804
011D12810600

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

68114$4066 C011

JUN 1 3 2016

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

June 9, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
8801 Indian Hills Dr.
Omaha, NE 68114-4066

*Re:*   *Claimant: Jamie Flanagan*
*Policyholder: Lester E. Cox Medical Center*
*Policy# 00001015732600000*
*Claim# 1130226196*

Dear Reid Hastings:

Thank you for your letter of June 6, 2016 with the curriculum vitae of every expert utilized in the determination as to Mrs. Flanagan's denial. This letter will confirm I received curriculum vitae of Joseph Thomas, M.D. I also received a document from Brandy Thomas, M.A., C.R.C.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LIN00511

 

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

June 6, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQYEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:   Policyholder:  LESTER E COX MEDICAL CENTER
      Policy Number: 00001015732600000
      Claim Number: 1130226196
      Claimant:  Jamie Flanagan

Dear Mr. Vasquez:

We are writing in reference to your request for a complete copy of your client's entire file, to include copies of the curriculum vitae of every expert utilized in our determination.

The curriculum vitae are enclosed and a file copy is being created and will be sent to you once complete.

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Reid Hastings
800-423-2765 *2543
Senior Claims Examiner, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00512**

LIN00513

**Law Offices of**
**RICK S. VASQUEZ**
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

Hasler
05/18/2016
US POSTAGE    FIRST-CLASS MAIL
$00.46⁵

ZIP 65804
011D12810600

MAY 2 3 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

68103-233737

MAY 2 3 2016



# Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

May 18, 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

> *Re:* *Jamie Flanagan*
> *Policy# 00001015732600000*
> *Claim# 1130226196*

Dear Sir/Madam:

I am in receipt of your denial letter of April 26, 2016. Please provide a copy of every document upon which your company relied in denying Mrs. Flanagan's claim ie forming the April 26, 2016 denial. Likewise, please provide a copy of the curriculum vitae of every expert utilized in the determination. If you cannot provide the requested documentation within 30 days please advise so in writing.

Thank you for your time and attention to this matter.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: cch
CC: Jamie Flanagan

**LIN00514**



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

April 26, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:   Policyholder: LESTER E COX MEDICAL CENTER
      Policy Number: 00001015732600000
      Claim Number: 1130226196
      Claimant: Jamie Flanagan

Dear Mr. Vazquez:

We have completed our review of your client's Long Term Disability appeal. Based on the information provided, we have determined that we are unable to approve benefits beyond 11/23/2015. In our appeal review process, all information previously submitted as well as any new documentation was used to make a determination.

To be eligible for benefits under the policy issued to your client's employer, an individual must satisfy all of the provisions of the policy. This includes, but is not limited to, the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

This policy has a 24 month Own Occupation Period which ended on 11/23/2015. In order to be considered Totally Disabled beyond this date, the medical evidence must support that your client would be Totally Disabled as defined above. As such, in considering your client's eligibility for Long Term Disability benefits beyond 11/23/2015, we evaluated whether your client is Totally Disabled as defined above.

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00515**

<u>**Summary of Initial Claim Filing**</u>

As you know your client's claim was originally approved from 11/24/2013 to 11/24/2015 as we found your client met the definition of Total Disability that applied during this period. Benefits were terminated as of 11/24/2015, because we determined your client was not Totally Disabled as defined above. Our evaluation included review of the medical documentation. For complete details please refer to our letter dated 9/28/2015.

<u>**Summary of Appeal**</u>

On 2/3/2016, your client filed an appeal in response to our determination to terminate benefits. Additional information was submitted with your appeal.

Your client's entire file was reviewed upon appeal. Disability must be supported from 11/24/2015 forward, which will be the focus of our determination.

Dr. Donald Hopwell saw your client on 1/20/2015 for a follow-up of post laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis. Your client continued to do reasonably well with her pain, although your client was having more problems with the cold weather. Your client reported problems sleeping at night due to pain. Dr. Hopewell opined that your client was having neuropathic pain and your client was prescribed amitriptyline. Your client was to follow up in 3 months.

Your client was seen by Dr. Hopewell on 4/16/2015 for follow-up of pain related to lumbar spondylolisthesis, lumbar post laminectomy syndrome, and lumbar spondylosis, all of which were noted to be exacerbated by your client's autoimmune disease. Your client reported significant problems with hypersomnelence on amitriptyline. However, the medication was improving a dyesthetic pain. Dr. Hopewell indicated that your client would need a formal sleep study if your client's hypersomnolence continued. Your client's neurologic exam was normal.

On 4/21/2015, Dr. Hopewell completed an Abilities Form, on which he indicated that your client was unable to lift any weight. Your client was able to frequently sit for 20 minutes at a time and frequently finger, handle, and reach above the shoulder. Your client was able to occasionally stand, walk, drive, and operate foot controls. Your client was never able to climb, bend, or kneel.

Dr. Hopewell saw your client on 6/3/2015 for follow-up of pain. Your client reported a flare of pain issues as a result of a fall approximately 1 month prior. There was nothing to suggest a new process, but simply an aggravation of her long-standing issues.

Your client was seen by Dr. Hopewell on 7/15/2015 for a follow-up of chronic low back pain. Your client reported that overall her pain was marginally better, but she had increasing problems with dysphoria and was still having problems sleeping. Dr. Hopewell opined that your client's mood was significantly increasing your client's pain issue.

On 12/9/2015, a Dr. Hopewell progress note indicated that your client's overall pain was doing reasonably well on your client's current regimen without complications. Your client was to return for a routine follow-up in 3 months.

During the course of our review, we consulted with Dr. Joseph Thomas, an independent physician who is Board Certified in Occupational Medicine. His review stated in part:

"The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell of 04/21/2015 with the exception of lifting.
- Per the FCE, the claimant could lift up to 7 pounds occasionally.
- She could perform frequent sitting with 20 minutes of continuous sitting.
- She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
- She could perform occasional bending and stooping.
- She could perform frequent reaching and fingering."

## Appeal Decision

We understand that your client has been diagnosed with chronic low back pain, lumbar spondylosis, lumbar post laminectomy syndrome, lumbar spondylolisthesis, and autoimmune disease. However, our review of the medical documentation, which included consultation with and/or review of a written report from an independent physician who is Board Certified in Occupational Medicine does not support restrictions and limitations that would render your client unable to perform each of the main duties of any gainful occupation that your client has the training, education, and experience to perform beyond 11/23/2015.

The medical information received from Dr. Hopewell confirms that your client would have decreased capacity for sitting, standing, lifting, bending, and stooping. However, based on all medical information received for review, there was no medical or clinical evidence of a functionally impairing condition which would preclude or require restrictions from performing in any sedentary level occupation on a full time basis from 11/25/2015 forward

## Vocational

We reviewed your client's past training, education and work experience to evaluate your client's capacity to perform work-related activity. The documentation provided suggests your client is not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

Using *The Dictionary of Occupational Titles* as a reference, we found that your client would be capable of performing the following occupations:

| DOT# | Occupation | Monthly Wage | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5,347.00 | Sedentary |
| 2. 075.374-916 | Call Center Nurse | $5,481.00 | Sedentary |

LIN00517

The preceding list is just a sample of various jobs that your client shows transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your client's area and are appropriate from the standpoint of adequate salary levels relative to your client's prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives, only that the occupations identified exists within the local labor market.

We are aware that your client is qualified to receive other income benefits, such as Social Security Disability Income (SSDI). However, please understand our group policy and review process is independent from that of the Social Security Administration (SSA). Although benefits have been approved for SSDI, this decision was based on the SSA's plan provisions and information received by the SSA. The claim decision made under your client's Lincoln Financial Group policy was based upon information we have obtained from you, your client, your client's treating medical professionals and the results of any internal and/or independent reviews of your client's claim.

As a reminder, your client has exhausted their first level of appeal. If your client disagrees with this decision, you, your client, or a person legally authorized as your client's representative, may pursue a final administrative appeal.

To initiate this process please have your client or an authorized representative submit a written request for review to the following address within 180 days after you receive this denial notice.


Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 402-361-1460

The following should be included with the appeal letter:

1. The policy number and claim number;
2. The reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal,
   such as medical treatment records, laboratory results, x-rays or other
   testing results.

Following receipt of your client's appeal, we will review the claim and provide you or your client with a full written explanation of the decision within 45 days. You or your client may also request copies of the pertinent documents related to the claim.

If your client's plan is subject to ERISA, he or she may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your client's local U.S. Department of Labor Office or your client's state insurance regulatory agency. In addition, once all required reviews of your client's claim have been completed, your client has the right to bring a civil action under applicable law.

**LIN00518**

REF #1252698

Please contact me directly at the number below with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Reid Hastings
800-423-2765 *2543
Senior Claims Examiner, Claims
Appeals Department – Claims Solutions Shared Services
The Lincoln National Life Insurance Company

LIN00519

Claimant: Jamie Flanagan
SS#: 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
Claim #: 1130226196
Referral from: Cheryl Geary
Date: 3-21-16
Policyholder: Lester E. Cox Medical Center

This VRC was requested to complete a TSA to determine Ms. Flanagan's transferable work skills & evaluate whether occupations exist at or above the wage requirements noted & at the level of functionality indicated.

**This VRC reviewed the following documentation for this report:**
JD, DOT, Educational Background Form, dated 03/27/2015, TSA completed by Stacey Nidositko, MS, CRC, dated 9/23/15, & Peer Review from Dr. Joseph G. Thomas dated 3/9/16.

The following information obtained from the file was utilized in determining what occupations Ms. Flanagan is qualified & able to perform.

**Work Experience:**

| DOT Code | Occupation Title | SVP | Yrs | Str |
|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 03/2010-08/2013 | L |

**Education & Training:**
Claimant is a 35 year old female who has earned a Master's of Science in Nursing. She has worked as a Nurse Practitioner since 2004. She worked as a Registered Nurse from 2000-2003. She notes that she took 2 courses towards her Doctorate in Nursing Practices in 2010. She notes that she has an e-mail address. JD from the policyholder notes that the employee has indirect supervisory responsibilities over clinical staff. JD also notes that the employee must have knowledge of Microsoft Office software products, primarily Excel & Work, knowledge of database software & EMR Word Processing Software.

**Diagnosis/L&R's:**
The claimant is diagnosed with post laminectomy syndrome – lumbar spinal stenosis & has the following restrictions/limitations based upon the Peer Review/Medical Review from Peer Review from Dr. Joseph G. Thomas dated 3/9/16. Dr. Joseph G. Thomas opines that as of 11/25/15, the claimant has restrictions of:

-The claimant could lift up to 7 pounds occasionally.
-She could perform frequent sitting with 20 minutes of continuous sitting.

-She could perform occasional standing/walking with 10 minutes of continuous standing or walking.
-She could perform occasional bending and stooping.
-She could perform frequent reaching and fingering.
-These limitations are for an 8 hour work day and 40 hour work week.

**Wage Requirement:** $5,252.52/month ($30.30/hr.)

**Skills & Abilities:** Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.

**Occupations the customer can perform in the labor market of Crane, MO (Springfield, MO Metropolitan area) include but are not limited to the following:**

| DOT Code | Occupation | SVP | Str | Wage | Source |
|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | S | $5,347.00/mo. | ERI 2016 |
| *075.374-916 | Call Center Nurse | 7 | S | $5,481.00/mo. | ERI 2016 |

*eDOT code

**LIN00520**

## Summary:

A Transferable Skills Analysis was completed using the above noted information. Occupations were identified based upon the medical information from Peer Review from Dr. Joseph G. Thomas dated 3/9/16., that meet Ms. Flanagan's skills, educational/work history, & wage requirement. The limitations outlined by Dr. Joseph G. Thomas, give Ms. Flanagan reasonable functional capacity to perform the occupations identified.

Brandy Thomas, MA, CRC
Vocational Rehabilitation Counselor

LJN00521



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

March 15, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
       Policy Number: 00001015732600000
       Claim Number: 1130226196
       Claimant: Jamie Flanagan

Dear RICK VASQUEZ:

On 2/10/2016, we acknowledged your client's appeal and advised that we were in the process of reviewing the appeal and you would be notified of the results within 45 days.

We are approaching our initial deadline for deciding Mrs. Flanagan's appeal under the Employee Retirement Income Security Act (ERISA), and have not yet reached a determination. The appeal decision is currently pending due to a Vocational Review. An extension of time to process your client's appeal is required. Due to these special circumstances, we are exercising our right to take a 45-day extension of time to decide the appeal.

We are currently reviewing Mrs. Flanagan's appeal. You can expect to receive a decision from us by 5/3/2016.

Please contact me directly at 402-361-7640 with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Cheryl Geary
Assisting on behalf of Reid Hastings
Consultant, Claims
The Lincoln National Life Insurance Company

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LLN00522


**RRS**

Reliable Review Services

Date:               March 09, 2016

To:                 Samantha Chappelear
                    Lincoln Financial Group

Re:                 RRS Case #30216001448

Employee:              Jamie Flanagan
Claim #:               1130226196
Review Type:           Peer File Review
Disability Type:       LTD
Disability Definition: Unspecified

# Advisory Report

## Clinical History

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year female who worked in a light level occupation as a Nurse Practitioner. The referral stated the claimant stopped work on 08/25/2013 due to her lumbar conditions. The claimant has diagnoses of post laminectomy syndrome, spinal stenosis and chronic pain. The referral stated the claimant met the policy definition of disability to 11/24/2015.

A Functional Capacity Evaluation was performed on 04/24/2014 by Nancy Beisswenger OTR/L. The claimant's lumbar spine and extremities had near full range of motion. The claimant's lower extremity strength was 5/5. The claimant could perform occasional sitting and occasional walking/standing. She was limited to lifting/handling up to 7 pounds.

Dr. Karande, Physical Medicine & Rehabilitation, did a medical record review on 06/09/2014. He felt the FCE should be evaluated with caution as isometric testing was not performed as the therapist discretion secondary to multiple diagnoses and lifting restrictions. Dr. Karande concluded that the claimant would be capable of light duty work with occasional lifting up to 20 pounds.

LIN00523

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 123 of 200



Reliable Review Services

From the Abilities Form dated 04/21/2015 by Dr. Donald Hopewell, Neurology and Pain Management, the claimant could not perform any lifting. She could perform occasional standing/walking and frequent sitting, reaching, fingering and handling.

From the medical note dated 07/15/2015, Dr. Donald Hopewell felt depression and rheumatology issues were affecting the claimant's back pain. Amitriptyline had improved the claimant's pain but caused hyper somnolence. Dr. Donald Hopewell noted neurological examination remained normal.

The most recent lumbar spine MRI and lumbar spine CT scan, both dated 10/15/2015 showed L5/S1 fusion. There was facet arthropathy at the level of L4/L5. There was disk protrusion with an annular tear that contacts the L4 nerve root.

On 12/09/2015, Dr. Donald Hopewell noted the claimant returned for follow up at her request to discuss problems with her disability and some of the issues regarding denial of her claim. Dr. Donald Hopewell noted that overall the claimant's pain as doing reasonably well on her current regiment without complications. She was to return for follow up in three months.

## Questions and Reviewer's Response

**1. Please provide a review summary of the medical findings.**

The claimant had had lumbar fusion at the level of L5/S1 but this has not been successful. The lumbar spine MRI dated 10/15/2015 showed fusion at the level of L5/S1, facet arthropathy at the level of L4/L5, and disk protrusion with annular tear impacting the left L4 nerve root.

The claimant had a Functional Capacity Evaluation on 04/24/2014 that showed near normal range of motion and strength. She was limited to 7 pounds of lifting/handling. Her treating provider, Dr. Hopewell, completed an Abilities Form on 04/21/2015. The claimant was prohibited from any lifting. She could perform occasional standing/walking and frequent sitting, reaching and fingering. Dr. Hopewell felt depression and rheumatology issues were affecting the claimant's back pain.

**2. Based on the medical findings, please provide a description of the claimant's impairments, and how these would translate into functional limitations or medically appropriate restrictions from 11/25/2015 and forward.**

The claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing. I am in agreement with the Abilities Form provided by Dr. Hopewell on 04/21/2015 with the exception of lifting.

- ➢ Per the FCE, the claimant could lift up to 7 pounds occasionally.

- ➢ She could perform frequent sitting with 20 minutes of continuous sitting.

LIN00524


**RRS**
Reliable Review Services

> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.

> She could perform occasional bending and stooping.

> She could perform frequent reaching and fingering.

**A. For any outlined functional limitations and/or medically appropriate restrictions, please specify from and to dates to which the limitations and/or restrictions apply.**

These limitations would be effective from 11/25/2015 and forward.

**B. Please provide the maximal physical capacities the claimant retains and can safely perform at with specific from and to dates.**

> The claimant could lift up to 7 pounds occasionally.

> She could perform frequent sitting with 20 minutes of continuous sitting.

> She could perform occasional standing/walking with 10 minutes of continuous standing or walking.

> She could perform occasional bending and stooping

> She could perform frequent reaching and fingering.

> These limitations are for an 8 hour work day and 40 hour work week.

These limitations would be effective during the time period under reviewer from 11/25/2015 and forward.

**3. Are the restrictions or limitations placed upon the claimant`s physical / functional activities by the attending physician(s) reasonable and consistent with the medical findings? Please explain.**

The limitations placed on the functional activity of the claimant by the treating providers are reasonable and consistent with the medical findings with the exception of lifting. The claimant had a Functional Capacity Evaluation on 04/24/2014 and this was determined to be a valid test. The lifting restriction was up to 7 pounds occasionally. The limitations are consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. The claimant requires opiate medication for pain control. She was using amitriptyline with some improvement in sleep and pain control but this caused hyper somnolence.

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 125 of 200

LJN00525



**Reliable Review Services**

Other co-morbid conditions of depression and rheumatology were referred to in the medical record. Their impact is deferred to other specialists.

## Assessment/Rationale

This review is from an occupational medicine perspective.

This review was requested to determine functional limitations or medically appropriate restrictions from 11/25/2015 and forward.

The claimant is a 35 year female who suffers from post-laminectomy syndrome and chronic pain syndrome. The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 04/24/2014. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. Her condition is chronic and degenerative. Minimal improvement is anticipated.

From 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing as noted above. I am in agreement with the Abilities Form provided by Dr. Hopewell on 04/21/2015 with the exception of lifting as noted above.

*The opinion above is based on the information available for review and held to a reasonable degree of clinical accuracy. I attest that I have no relationship or association with the claimant who is the subject of this independent review. I also attest that I have no substantial personal or financial relationship with the treating provider(s) and/or treatment facility (ies).*

*I hereby submit this attestation that I have complied, to the highest degree possible, with the provisions of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the standards decreed thereunder.*

Joseph G. Thomas, MD
Board Certified
Occupational Medicine
FL: ME87102

## Documents Received For Review

| Document Date | Document Type | Document Source |
|---|---|---|
| 03/02/2016 | Referral Form | Client |
| Undated | Claim Summary and Review Questions | Client |

Claimant Name: Jamie Flanagan

RRS ID:30216001448

**LIN00526**

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 126 of 200



Reliable Review Services

| | | |
|---|---|---|
| 11/15/2013 – 02/10/2016 | Chronological Activity List | Client |
| 01/25/2016 | Correspondence | Law Offices of Rick Vasquez |
| 10/15/2015 | MR Lumbar with and without Contrast | Michael Workman, MD |
| 10/15/2015 | CT Lumbar Spine without Contrast | Michael Workman, MD |
| 10/22/2014, 01/20/2015, 04/16/2015, 06/03/2015, 07/15/2015, 12/09/2015 | Progress Note | Donald Hopewell, MD |
| 07/18/2015 | Authorization for Use and Disclosure of Protected Health Information | Claimant |
| 03/18/2015 | Authorization for Release of Information – Disability | Claimant |
| 04/21/2015 | Abilities Form | Donald Hopewell, MD |
| 03/27/2014 | Treating Medical Professionals | Claimant |
| 03/27/2015 | Insured's Supplementary Statement | Claimant |
| 06/09/2014 | Medical File Review | Meghana Karande, MD |
| Undated | Occupational Description and Requirements | Client |
| 04/23/2014 | Correspondence Re: Office Visit | Nancy Beisswenger, OTR/L |
| 04/22/2014 | Functional Capacity Evaluation | Nancy Beisswenger, OTR/L |
| 11/10/2013 | Employee's Statement | Claimant |
| 11/17/2013 | LTD Physician's Statement | Donald Hopewell, MD |
| 09/19/2012 | Office Visit | Charles Mace, MD |
| 01/09/2013 | X-ray Lumbar Spine 6 views min | Skaggs Community Health Center |
| 12/28/2012 | MR Lumbar Spine with and without Contrast | Skaggs Community Health Center |
| 12/28/2012 | MR Thoracic Spine without Contrast | Skaggs Community Health Center |
| 11/02/2012 | CT Lumbar Spine with Contrast Myelo | Skaggs Community Health Center |
| 11/02/2012 | CT Cervical Spine with Contrast Myelo | Skaggs Community Health Center |
| 04/01/2011, 11/02/2012 | X-ray Lumbar Spine 2 or 3 views | Skaggs Community Health Center |
| 11/02/2012 | X-ray Cervical Spine 2 or 3 views | Skaggs Community Health Center |
| 11/02/2012 | X-ray Myelogram Complete | Skaggs Community Health Center |
| 12/16/2011, 09/12/2012 | CT Lumbar Spine without Contrast | Skaggs Community Health Center |
| 07/10/2012 | MR Cervical Spine without Contrast | Skaggs Community Health Center |
| 10/19/2011, 12/16/2011 | X-ray Lumbar Spine 4 views min | Skaggs Community Health Center |
| 10/08/2010 | Cervical Spine Complete | Skaggs Community Health Center |
| 10/08/2010 | MRI Cervical without Contrast | Skaggs Community Health Center |

Claimant Name: Jamie Flanagan

RRS ID:30216001448

LJN00527



| 08/02/2011, 11/02/2011, 02/01/2012, 05/01/2012, 05/09/2012, 07/31/2012, 10/29/2012, 01/24/2013, 04/25/2013, 07/23/2013, 09/19/2013, 10/31/2013 | Follow-Up Worksheet | Donald Hopewell, MD |
|---|---|---|
| 08/15/2013 | Office Visit | Wayne Wallender, DO |
| 10/22/2010 | Office Visit | Glady Jacob, MD |
| 11/10/2013 | Authorization for Release of Information | Claimant |
| 11/15/2013 | Employer's Statement | Employer |
| 11/15/2013 | Job Analysis | Employer |
| 06/23/2009 | Job Description | Employer |

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 128 of 200

LIN00528

MAR 0 4 2016



Law Offices of
RICK S. VASQUEZ
1736 E. Sunshine, Suite 103
Springfield, Missouri 65804

Hasler
02/29/2016
US POSTAGE $00.48⁵
FIRST-CLASS MAIL
ZIP 65804
011D12810600

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
Po Box 2337
Omaha, NE 68103

681032337 3

LIN00529

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

February 29, 2016

The Lincoln National Life Insurance Company
Attn: Reid Hastings/Senior Claims Examiner
Po Box 2337
Omaha, NE 68103

Re:     *Jamie Flanagan*
        *Group Policy# 00001015732600000*
        *Group Claim# 1130226196*

Dear Sir/Madam:

I am in receipt of your February 10, 2016 letter. The letter from Dr. Hopewell was included with my letter of February 3, 2016 and faxed on February 10, 2016 when your company alleged it did not receive the same. I would note your letter indicates my client's file is being sent separately. It is now 2 weeks later and I have not received a file.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan

LIN00530

 

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

February 25, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:     Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

Secure password: Social Security number (no spaces/dashes)

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.

Sincerely,

Sarah Day
Assisting on behalf of Reid Hastings
Coordinator, Administrative Services
The Lincoln National Life Insurance Company

©2016  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LJN00531**



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

February 24, 2016

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD, MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant: Jamie Flanagan

Dear Rick Vasquez:

We have received your request for a copy of the Long Term disability claim file for the above-named insured.

Please see the enclosed CD as it contains the information requested, including a copy of the policy, all file documentation and any correspondence in the file.

To view the CD, please pull up the document on your computer and input the secured password referenced below.

Secure password: Social Security number (no spaces/dashes)

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.

Sincerely,

Sarah Day
Assisting on behalf of Reid Hastings
Coordinator, Administrative Services
The Lincoln National Life Insurance Company

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LIN00532



EXHIBIT

A


**Lincoln**
Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

February 10, 2016

**The Lincoln National Life**
**Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

LAW OFFICES OF RICK VASQUEZ
ATTN RICK VASQUEZ
1736 EAST SUNSHINE STE 103
SPRINGFIELD MO 65804

Re:    Policyholder: LESTER E COX MEDICAL CENTER
      Policy Number: 00001015732600000
      Claim Number: 1130226196
      Claimant: Jamie Flanagan

Dear Mr. Vasquez:

This is to acknowledge receipt of your client's appeal for Long Term Disability benefits. We received your letter on 2/3/2016.

It appears that the most recent medical records (office treatment notes and/or test results) in your client's file are from Dr. Donald Hopewell dated 12/9/2015.

Your appeal letter indicated that additional records submitted with your appeal included the following:
- MRI & CT of the Lumbar Spine Report
- Dr. Donald Hopewell's office note
- Dr. Donald Hopewell's letter

The MRI, CT, and office note were all received. However, Dr. Hopewell's letter was not received with your appeal request.

In an effort to provide Mrs. Flanagan's claim with a full and fair review, it would be your best interest to submit additional medical records (in addition to what was previously submitted) for our review of your client's appeal. For specific details regarding the basis of our determination and the information previously reviewed, please refer to our letter dated 9/28/2015.

It is important that we have all available medical records so that we have a clear picture of Mrs. Flanagan's current condition.

©2016 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LIN00533

Please submit any and all additional medical evidence that you believe would support your client's appeal. Please have the medical records submitted to our office no later than 3/11/2016.

If we do not receive the additional information by 3/11/2016, we will review the appeal and render a decision based upon the information currently available in Mrs. Flanagan's file.

If you will not be submitting new medical records, please advise us in writing so that we may begin an immediate review of the appeal. For your convenience, all documents may be sent via facsimile to 402-361-1460.

Please note that we are not making a final determination on Mrs. Flanagan's disability claim at this time as we want to provide your client with every opportunity to submit a complete appeal.

In addition, complete copy of your client's claim file is being sent to you separately. However, we are not including a transcript or notes from the conversation between Dr. Meghana Karande and Dr. Hopewell. Due to Dr. Karande's review taking place in June 2014, those notes are no longer available.

Please contact me directly at (402) 361-2543 with any questions you may have or email us at LFGAppeals@lfg.com.

Sincerely,

Reid Hastings
Senior Claims Examiner, Claims
Appeals Department – Claims Shared Services
The Lincoln National Life Insurance Company

LIN00534

Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, MO  65804
Telephone: (417) 889-7735
Facsimile: (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

## FACSIMILE COVER SHEET

DATE:        2/10/16

TO:     Reed-Lincoln National Insurance Co.

FAX NO.:     402-361-1460

SENDER:     Catrina-Vasquez Law Office
RE.:

NUMBER OF PAGES (Including this cover sheet):     <u>2</u>

CONFIRMATION HARD COPY TO FOLLOW VIA MAIL:

Yes _  No _X_
SPECIAL INSTRUCTIONS/COMMENTS:

*IF YOU DID NOT RECEIVE ALL OF THE PAGES IN GOOD CONDITION,*
*PLEASE ADVISE US AT YOUR EARLIEST CONVENIENCE.  THANK YOU.*

PAGE 1/2 * RCVD AT 2/10/2016 11:41:46 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

LIN00535

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 135 of 200



**MERCY CLINIC NEUROLOGY JOPLIN**
100 Mercy Way Suite 520
Joplin MO 64804-4524
Dept: 417-556-6876
Dept Fax: 417-556-6874

12/9/2015

RE:Jamie Flanagan
DOB: ████████

To Whom It May Concern:

I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability.

If you have any further questions, please feel free to contact me.

Sincerely,

Donald K. Hopewell, MD

PAGE 2/2 * RCVD AT 2/10/2016 11:41:46 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

LIN00536

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 136 of 200



# Fax Transmission

### 8801 Indian Hills Dr., Omaha, NE 68114

**From:**    Name:
             Fax Number:    1460
             Voice Phone:

**To:**      Name:
             Company:
             Fax Number:    18778433950
             Voice Phone:

**Fax Notes :**

Date and time of transmission: Wednesday, February 10, 2016 11:41:46 AM

Number of pages including this cover sheet: 03

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

This facsimile transmission is intended only for the addressee named above. It contains information that is privileged, confidential or otherwise protected from use and disclosure. If you are not the intended recipient you are hereby notified that any review, disclosure, copying or dissemination of this transmission, or the taking of any action in reliance on its contents, or other use is strictly prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we can arrange for its return to us. Thank you for your cooperation.

LIN00537

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, MO 65804
Telephone: (417) 889-7735
Facsimile: (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

## FACSIMILE COVER SHEET

DATE:     2/10/16

TO:   Reed-Lincoln National Insurance Co.

FAX NO.:    402-361-1460

SENDER:    Catrina-Vasquez Law Office
RE.:

NUMBER OF PAGES (Including this cover sheet):    2

CONFIRMATION HARD COPY TO FOLLOW VIA MAIL:

Yes _ No _X_

SPECIAL INSTRUCTIONS/COMMENTS:

*IF YOU DID NOT RECEIVE ALL OF THE PAGES IN GOOD CONDITION,
PLEASE ADVISE US AT YOUR EARLIEST CONVENIENCE. THANK YOU.*

PAGE 1/2 * RCVD AT 2/10/2016 11:41:45 AM [Central Standard Time] * SVR:NE1PWFAX101/3 * DNIS:1460 * CSID:4178897096 * DURATION (mm-ss):00-27

LIN00538

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 138 of 200

 **Mercy** ✝

**MERCY CLINIC NEUROLOGY JOPLIN**
100 Mercy Way Suite 520
Joplin MO 64804-4524
Dept: 417-556-6876
Dept Fax: 417-556-6874

12/9/2015

RE: Jamie Flanagan
DOB: 4/03/1980

To Whom It May Concern:

I have no recollection of any conversation with the patients insurance company regarding any aspect of her care including disability.

If you have any further questions, please feel free to contact me.

Sincerely,

Donald K. Hopewell, MD

LIN00539

FEB 0 2 2016

7014 2120 0001 9379 9506

Springfield, Missouri 65804

Hasler
01/27/2016
US POSTAGE
$06.25

ZIP 65804
011D12810600

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Hasler
01/27/2016
US POSTAGE
$00.70

FIRST-CLASS MA

ZIP 65804
011D12810600

 Law Offices of Rick S. Vasquez

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

January 25, 2016

FEB 0 2 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Re:   *Jamie Flanagan*
      *Group Policy# 00001015732600000*
      *Group Claim# 1130226196*

Dear Sir/Madam:

This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:

1.  MRI & CT of the Lumbar Spine Report;
2.  Dr. Donald Hopewell's office note; and
3.  Dr. Donald Hopewell's letter.

I note on page 2 of your denial referencing a series of documents used in denying Mrs. Flanagan. I would note as follows:

1.  Dr. Hopewell's November 17, 2013 opinion prohibits all work;

2.  The April 24, 2014 Functional Capacity Evaluation of Nancy Dickey-Beisswenger, OTR/L is also for less than sedentary work;

3.  The April 21, 2015 opinion of Dr. Hopewell is also for less than sedentary work.

Please provide a copy of all pertinent documentation related to this claim including a copy of the transcript of the conversation between Dr. Karande's and Dr. Hopewell and a copy of Dr. Karande's notes from said conversation.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan
Enclosure

**LIN00541**

MR Lumbar w wo Contrast                     FLANAGAN, JAMIE SUE  - 5606724

* Final Report *

Result type:        MR Lumbar w wo Contrast
Result date:        15 October 2015 8:56
Result status:      Auth (Verified)
Result title:       MR Lumbar w wo Contrast
Performed by:       Workman MD, Michael on 15 October 2015 11:33
Electronically Signed By: Workman MD, Michael on 20 October 2015 8:38
Encounter info:     880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015

## * Final Report *

**Reason For Exam**

**MR Lumbar w wo Contrast**
MR Lumbar with and without Contrast  10/15/2015 at 8:56 AM:

History:  35-year-old female, back surgery in 2011 with complaints of back pain that
radiates in the lower extremities, right greater than left.,

Contrast: Multihance 12 cc.

Findings: L5 anterolisthesis measures 6 mm. Vertebral body height is preserved. Disc
height is normal from T12-L4. No disc herniation or bulge is demonstrated. Widely
patent vertebral canal and neural foramen.
Small left extraforaminal zone bulge/protrusion at L3-L4 without impingement or
contact with the exiting nerve root.

L4-L5: Mild disc height loss with mild T2 dark disc. Small left extraforaminal zone
protrusion with contrast enhancement is demonstrated. There is contact with the
exiting left L4 nerve root. Vertebral canal and right neural foramen are widely
patent.

L5-S1: Status post posterior lumbar interbody fusion with magnetic susceptibility
artifact from hardware placement. Widely patent vertebral canal, lateral recess and
neural foramen. Contrast enhancement is present along the access tract of interbody
cage device.

IMPRESSION:

1.  PLIF L5-S1 without complicating feature.

2.  L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with
annular fissure. There is contact with the exiting left L4 nerve root.

Radiologist: Dr Michael Workman , 10/15/2015 11:33 AM / Edited by:  Debra 198003591
NTS_Thomas , 10/15/2015 11:41 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist            Workman MD, Michael

Printed by:    Finnegan MA, Shellsea
Printed on:    11/16/2015 9:26

LIN00542



MR Lumbar w/o w/o contrast

Correlate

REPORT

Completed Action List

LIN00543

## CT Lumbar Spine wo Contrast

FLANAGAN, JAMIE SUE - 5606724

\* Final Report \*

Result type: CT Lumbar Spine wo Contrast
Result date: 15 October 2015 9:47
Result status: Auth (Verified)
Result title: CT Lumbar Spine wo Contrast Routine
Performed by: Workman MD, Michael on 15 October 2015 11:37
Electronically Signed By: Workman MD, Michael on 20 October 2015 8:38
Encounter info: 680027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015

## \* Final Report \*

**Reason For Exam**

**CT Lumbar Spine wo Contrast**
CT Lumbar Spine wo Contrast  10/15/2015 9:47 AM

History:  35 years Female status post fusion with back and leg pain.

Findings:  L5 anterolisthesis measures 6 mm. Status post posterior lumbar interbody fusion L5-S1 with intact pedicle screws and posterior fixation rods.  There is no evidence for hardware failure or loosening. Bone graft is confluent interbody and dorsolaterally. Widely decompressed thecal sac and neural foramen. No osseous stenosis. Contrast is present within the renal collecting system consistent with recent gadolinium contrast.

L4-5: Mild facet joint arthropathy bilaterally with small disk bulge/protrusion that is more focal in the left extraforaminal zone. No vertebral canal or right neuroforaminal stenosis.  However there is contact of disc protrusion with exiting left L4 nerve root.

Disk height is normal T12-L4. No stenosis.

IMPRESSION LUMBAR SPINE:

1. PLIF L5-S1 without complicating feature and expected postoperative change.

2. Degenerative disk disease and spondylosis L4-5 with facet joint arthropathy and disk bulge/protrusion left subarticular and extraforaminal zone. There is contact with the exiting left L4 nerve root but no definite impingement.

Radiologist: Dr Michael Workman , 10/15/2015 11:37 AM / Edited by:  Linda 198003275 NTS_Heigl , 10/15/2015 11:44 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist   PhysiWorkman MD, Michael
Signed              10/20/15 08:38:02
(Electronic Signature)

Printed by: Finnegan MA, Shellsea
Printed on: 11/16/2015 9:26

Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 144 of 200

LIN00544

CT Lumbar Spine wo Contrast          FLANAGAN, JAMIE SUE  - 5606724

*Final Report*

Transcriptionist     LMH
Technologist         LLM

REPORT
This document has an image

Completed Action List:
* Order by Mace MD, J Charles on 15 September 2015 9:41
* Perform by Marcum , Laura L on 15 October 2015 9:47
* VERIFY by Workman MD, Michael on 20 October 2015 8:38 Requested on 15 October 2015 11:44
* Endorse by Mace MD, J Charles on 30 October 2015 10:06

Printed by:    Finnegan MA, Shellsea
Printed on:    11/16/2015 9:26

Page 2 of 2
(End of Report)

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 145 of 200

LIN00545

Flanagan, Jamie S (MR # E140238803) DOB: ████████          Encounter Date: 12/09/2015

## Progress Notes                                    Jamie S Flanagan (MR# E140238803)

### Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Hopewell, Donald K, MD | Signed | Hopewell, Donald K, MD | 12/9/2015 12:28 PM |

### Progress Notes

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

LIN00546

FEB 0 2 2016

7014 2120 0001 9379 9506

Springfield, Missouri 65804

Hasler
01/27/2016
US POSTAGE
$06.25
ZIP 65804
011D12810600

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

Hasler
01/27/2016
US POSTAGE
$00.70
FIRST-CLASS MAIL
ZIP 65804
011D12810600

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 147 of 200

LIN00547

 **Law Offices of Rick S. Vasquez**

1736 East Sunshine, Suite 103
Springfield, Missouri 65804
Telephone (417) 889-7735
Facsimile (417) 889-7096

*Rick S. Vasquez*
*Fredrick E. Vasquez*

January 25, 2016

FEB 0 2 2016

Claims Shared Services
The Lincoln National Life Insurance Company
Po Box 2337
Omaha, NE 68103

> *Re: Jamie Flanagan*
> *Group Policy# 00001015732600000*
> *Group Claim# 1130226196*

Dear Sir/Madam:

This correspondence comes as an appeal of the denial of September 28, 2015 on behalf of my client Jamie Flanagan. I am enclosing the following in conjunction with our appeal:

1. MRI & CT of the Lumbar Spine Report;
2. Dr. Donald Hopewell's office note; and
3. Dr. Donald Hopewell's letter.

I note on page 2 of your denial referencing a series of documents used in denying Mrs. Flanagan. I would note as follows:

1. Dr. Hopewell's November 17, 2013 opinion prohibits all work;

2. The April 24, 2014 Functional Capacity Evaluation of Nancy Dickey-Beisswenger, OTR/L is also for less than sedentary work;

3. The April 21, 2015 opinion of Dr. Hopewell is also for less than sedentary work.

Please provide a copy of all pertinent documentation related to this claim including a copy of the transcript of the conversation between Dr. Karande's and Dr. Hopewell and a copy of Dr. Karande's notes from said conversation.

Most Sincerely,

Rick S. Vasquez
Attorney at Law

RSV: ceh
CC: Jamie Flanagan
Enclosure

LIN00548

MR Lumbar w wo Contrast                    FLANAGAN, JAMIE SUE - 5606724

* Final Report *

Result type:          MR Lumbar w wo Contrast
Result date:          15 October 2015 8:56
Result status:        Auth (Verified)
Result title:         MR Lumbar w wo Contrast
Performed by:         Workman MD, Michael on 15 October 2015 11:33
Electronically Signed By: Workman MD, Michael on 20 October 2015 8:38
Encounter info:       880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015

## * Final Report *

**Reason For Exam**

**MR Lumbar w wo Contrast**
MR Lumbar with and without Contrast  10/15/2015 at 8:55 AM:

History:  35-year-old female, back surgery in 2011 with complaints of back pain that
radiates in the lower extremities, right greater than left.,

Contrast: Multihance 12 cc.

Findings: L5 anterolisthesis measures 6 mm. Vertebral body height is preserved. Disc
height is normal from T12-L4. No disc herniation or bulge is demonstrated. Widely
patent vertebral canal and neural foramen.
Small left extraforaminal zone bulge/protrusion at L3-L4 without impingement or
contact with the exiting nerve root.

L4-L5: Mild disc height loss with mild T2 dark disc. Small left extraforaminal zone
protrusion with contrast enhancement is demonstrated. There is contact with the
exiting left L4 nerve root. Vertebral canal and right neural foramen are widely
patent.

L5-S1: Status post posterior lumbar interbody fusion with magnetic susceptibility
artifact from hardware placement. Widely patent vertebral canal, lateral recess and
neural foramen. Contrast enhancement is present along the access tract of interbody
cage device.

IMPRESSION:

1.  PLIF L5-S1 without complicating feature.

2.  L4-L5 facet joint arthropathy and left extraforaminal zone disc protrusion with
annular fissure. There is contact with the exiting left L4 nerve root.

Radiologist: Dr Michael Workman , 10/15/2015 11:33 AM / Edited by:  Debra 198003591
NTS_Thomas , 10/15/2015 11:41 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist                 Workman MD, Michael

Printed by:    Finnegan MA, Shellsea                                  Page 1 of 2
Printed on:    11/16/2015 9:26                                        (Continued)

LIN00549

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 150 of 200

LIN00550

CT Lumbar Spine wo Contrast                    FLANAGAN, JAMIE SUE - 5606724

* Final Report *

Result type:        CT Lumbar Spine wo Contrast
Result date:        15 October 2015 9:47
Result status:      Auth (Verified)
Result title:       CT Lumbar Spine wo Contrast Routine
Performed by:       Workman MD, Michael on 15 October 2015 11:37
Electronically Signed By: Workman MD, Michael on 20 October 2015 8:38
Encounter info:     880027702120, SNI Imaging, Referred Outpatient, 10/15/2015 - 10/16/2015

## * Final Report *

**Reason For Exam**

**CT Lumbar Spine wo Contrast**
CT Lumbar Spine wo Contrast  10/15/2015 9:47 AM

History:  35 years Female status post fusion with back and leg pain.


Findings:  L5 anterolisthesis measures 6 mm. Status post posterior lumbar interbody
fusion L5-S1 with intact pedicle screws and posterior fixation rods.  There is no
evidence for hardware failure or loosening. Bone graft is confluent interbody and
dorsolaterally. Widely decompressed thecal sac and neural foramen. No osseous
stenosis. Contrast is present within the renal collecting system consistent with
recent gadolinium contrast.

L4-5: Mild facet joint arthropathy bilaterally with small disk bulge/protrusion that
is more focal in the left extraforaminal zone. No vertebral canal or right
neuroforaminal stenosis.  However there is contact of disc protrusion with exiting
left L4 nerve root.

Disk height is normal T12-L4. No stenosis.


IMPRESSION LUMBAR SPINE:

1. PLIF L5-S1 without complicating feature and expected postoperative change.

2. Degenerative disk disease and spondylosis L4-5 with facet joint arthropathy and
disk bulge/protrusion left subarticular and extraforaminal zone. There is contact
with the exiting left L4 nerve root but no definite impingement.

Radiologist: Dr Michael Workman , 10/15/2015 11:37 AM / Edited by:  Linda 198003275
NTS_Heigl , 10/15/2015 11:44 AM

Electronically signed by: Dr Michael Workman  10/20/2015 8:38 AM

**Signature Line**
Radiologist    PhysiWorkman MD, Michael
Signed            10/20/15 08:38:02
(Electronic Signature)


Printed by:     Finnegan MA, Shellsea                                    Page 1 of 2
Printed on:     11/16/2015 9:26                                          (Continued)

LIN00551

## CT Lumbar Spine wo Contrast         FLANAGAN, JAMIE SUE  - 5606724

* Final Report *

Transcriptionist   LMH
Technologist       LLM

**REPORT**
This document has an image

**Completed Action List:**
* Order by Mace MD, J Charles on 15 September 2015 9:41
* Perform by Marcum , Laura L on 15 October 2015 9:47
* VERIFY by Workman MD, Michael on 20 October 2015 8:38 Requested on 15 October 2015 11:44
* Endorse by Mace MD, J Charles on 30 October 2015 10:06

LIN00552

## Progress Notes                                    Jamie S Flanagan (MR# E140238803)

### Progress Notes Info

| Author | Note Status | Last Update User | Last Update Date/Time |
|---|---|---|---|
| Hopewell, Donald K, MD | Signed | Hopewell, Donald K, MD | 12/9/2015 12:28 PM |

### Progress Notes

The patient is a 35-year-old who returns for followup at her request. There apparently is a problem with her private disability policy despite the fact that she has been granted social security disability. She discussed with me some their issues regarding their denial of her disability. They seemed to center around the fact that her physical examination is normal and that there has been fluctuation in her pain levels that had paralleled other physical problems or stress related issues. As we had discussed when these issues were clinically relevant I told her again that this is what happens to all human beings who have chronic medical problems ie that they fluctuate to some degree based on other physical or emotional stressors. They are at their best when these factors are absent and flare when these factors are present. We also discussed again that normal physical exams are common in patients with spine based pain issues. We spent approximately 20 minutes face-to-face discussing the issues. Unfortunately I don't think there is anything that I can do to sway opinion to of her insurance carrier. Overall her pain is doing reasonably well on her current regimen without complications. She'll return for routine followup in 3 months.

DK Hopewell M.D.

LIN00553



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 28, 2015

JAMIE  FLANAGAN
1625 MUSKY DIME DRIVE
CRANE, MO 65633

Re:    Policyholder: LESTER E COX MEDICAL CENTER
       Policy Number: 00001015732600000
       Claim Number: 1130226196
       Claimant:  Jamie Flanagan

Dear Mrs. Flanagan:

We have completed our review of your Long Term Disability claim and benefits beyond 11/24/2015 **have been denied.**

The Policy issued to LESTER E COX MEDICAL CENTER contains, but is not limited to the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 11/24/2015.  After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations.  Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2015  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00554**

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- Office and treatment notes from Dr. Hopewell dated 10/08/2010 to 07/15/2015
- Office and treatment notes from Dr. Mace dated 09/19/2012
- Office and treatment notes from Ozarks Pain Specialists dated 08/15/2013
- Attending Physician Statement completed by Dr. Hopewell on 11/17/2013
- Functional Capacity Exam completed by Nancy (Dickey) Beisswenger, OTR/L on 04/22/2014
- An Independent Peer Review completed on 06/09/2014 by Meghana Karande MD
- An Abilities Form completed by Dr. Hopewell on 04/21/2015

Dr. Hopewell Completed the Attending Physician Statement on 11/17/2013 on which he stated you had a diagnosis of post lami syndrome and spondylolisthesis. It was noted you had a failed lumbar fusion on 04/01/2011. The restrictions and limitations given were the inability to work without unlimited ability to rest and take breaks.

Dr. Hopewell saw you on 09/19/2013 for weakness in your legs. The exam was normal and no true motor deficits were found.

When you saw Dr. Hopewell on 01/20/2015 he stated you were doing reasonably well and the neurologic exam remained normal.

On 04/16/2015 when you saw. Dr Hopewell, you sated you were tired all the time on the amitriptyline. You reported a recent flare of lower back pain which caused dysesthesias more prominently in your feet than legs. This flare was due to prolonged car rides and personal stress.

On 06/03/2015 you reported another flare of pain following a fall. Dr. Hopewell felt it was an aggravation of an existing process and not a new one.

When you saw Dr. Hopewell on 07/15/2015 you reported that your pain was marginally controlled. The exam remained normal.

The file was sent for a review with Meghana C Karande MD, an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review was completed on 06/09/2014 and stated in part: "restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." The reviewer contacted Dr. Hopewell for clarification on the restrictions and limitations given on the claim form. Dr. Hope well said those restrictions and limitations were based off of what the claimant had told him.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using The Dictionary of Occupation Titles as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|------|------------|-------------|-----------------|
| 1. 075.127-014 | Nurse, Consultant | $5341.00/mo | Sedentary |
| 2 .075.374-916 | Call Center Nurse | $5312.00/mo | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your area and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives; only that the occupations identified exist within the local labor market.

## Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 11/24/2015. Your payment for benefits through 11/24/2015 is being sent under separate cover.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

## Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 800-922-3503

REF #875257

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. If you wish, you may also request copies of the pertinent documents related to the claim.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Mike Machian
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

CC:  LAW OFFICES OF RICK VASQUEZ
     ATTN: RICK VASQUEZ
     1736 EAST SUNSHINE STE 103
     SPRINGFIELD, MO 65804

LIN00557

**Machian, Mike**

| | |
|---|---|
| **From:** | Jamie Flanagan <jamieandjason0306@gmail.com> |
| **Sent:** | Thursday, October 01, 2015 8:23 AM |
| **To:** | Machian, Mike |
| **Subject:** | Payment and status of inquiry |

Mr. Machian,

This morning I received a payment in my checking account for $2038.32. I have not received any correspondence from Lincoln about what this is for and why I am receiving it. Could you please clarify for me?

Also, where are we at on the status of my my review? Thank you for your promptness. I appreciate all you do and have done for me.

Jamie Flanagan

**LIN00558**

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 158 of 200



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 29, 2015

RICK VASQUEZ
1736 EAST SUNSHINE   STE 103
SPRINGFIELD MO 65804

This page is for mailing purposes only. Please disregard.

©2013  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00559**



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 28, 2015

JAMIE  FLANAGAN
1625 MUSKY DIME DRIVE
CRANE, MO 65633

Re:     Policyholder:  LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant:  Jamie Flanagan

Dear Mrs. Flanagan:

We have completed our review of your Long Term Disability claim and benefits beyond 11/24/2015 **have been denied.**

The Policy issued to LESTER E COX MEDICAL CENTER contains, but is not limited to the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.      During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.      After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.
The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 11/24/2015.  After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations.  Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2015  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00560**

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- Office and treatment notes from Dr. Hopewell dated 10/08/2010 to 07/15/2015
- Office and treatment notes from Dr. Mace dated 09/19/2012
- Office and treatment notes from Ozarks Pain Specialists dated 08/15/2013
- Attending Physician Statement completed by Dr. Hopewell on 11/17/2013
- Functional Capacity Exam completed by Nancy (Dickey) Beisswenger, OTR/L on 04/22/2014
- An Independent Peer Review completed on 06/09/2014 by Meghana Karande MD
- An Abilities Form completed by Dr. Hopewell on 04/21/2015

Dr. Hopewell Completed the Attending Physician Statement on 11/17/2013 on which he stated you had a diagnosis of post lami syndrome and spondylolisthesis. It was noted you had a failed lumbar fusion on 04/01/2011. The restrictions and limitations given were the inability to work without unlimited ability to rest and take breaks.

Dr. Hopewell saw you on 09/19/2013 for weakness in your legs. The exam was normal and no true motor deficits were found.

When you saw Dr. Hopewell on 01/20/2015 he stated you were doing reasonably well and the neurologic exam remained normal.

On 04/16/2015 when you saw. Dr Hopewell, you sated you were tired all the time on the amitriptyline. You reported a recent flare of lower back pain which caused dysesthesias more prominently in your feet than legs. This flare was due to prolonged car rides and personal stress.

On 06/03/2015 you reported another flare of pain following a fall. Dr. Hopewell felt it was an aggravation of an existing process and not a new one.

When you saw Dr. Hopewell on 07/15/2015 you reported that your pain was marginally controlled. The exam remained normal.

The file was sent for a review with Meghana C Karande MD, an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review was completed on 06/09/2014 and stated in part: "restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." The reviewer contacted Dr. Hopewell for clarification on the restrictions and limitations given on the claim form. Dr. Hope well said those restrictions and limitations were based off of what the claimant had told him.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using The Dictionary of Occupation Titles as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|---|---|---|---|
| 1. 075.127-014 | Nurse, Consultant | $5341.00/mo | Sedentary |
| 2 .075.374-916 | Call Center Nurse | $5312.00/mo | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your area and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives; only that the occupations identified exist within the local labor market.

## Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 11/24/2015. Your payment for benefits through 11/24/2015 is being sent under separate cover.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

### Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 800-922-3503

**LIN00562**

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. If you wish, you may also request copies of the pertinent documents related to the claim.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Mike Machian
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

CC:   LAW OFFICES OF RICK VASQUEZ
      ATTN: RICK VASQUEZ
      1736 EAST SUNSHINE STE 103
      SPRINGFIELD, MO 65804

 **Lincoln** Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 28, 2015

JAMIE FLANAGAN
1625 MUSKY DIME DRIVE
CRANE, MO 65633

Re:    Policyholder: LESTER E COX MEDICAL CENTER
       Policy Number: 00001015732600000
       Claim Number: 1130226196
       Claimant: Jamie Flanagan

Dear Mrs. Flanagan:

We have completed our review of your Long Term Disability claim and benefits beyond 11/24/2015 **have been denied.**

The Policy issued to LESTER E COX MEDICAL CENTER contains, but is not limited to the following:

**TOTAL DISABILITY** or **TOTALLY DISABLED** will be defined as follows:
1.    During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
2.    After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

The loss of a professional license, an occupational license or certification, or a driver's license for any reason does **not**, by itself, constitute Total Disability.

The Own Occupation Period for this claim will end on 11/24/2015. After a thorough review of the information currently contained in your claim file, we have determined you are capable of performing work in other occupations. Outlined below is the information reviewed which led to our determination.

**Information review and action taken**

In our review of your claim, all previously submitted as well as any new documentation is used to make a determination.

©2015 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00564**

We evaluated current information from your physician(s), as well as other sources, including vocational information. The documentation contained in your claim file includes the following:

- Office and treatment notes from Dr. Hopewell dated 10/08/2010 to 07/15/2015
- Office and treatment notes from Dr. Mace dated 09/19/2012
- Office and treatment notes from Ozarks Pain Specialists dated 08/15/2013
- Attending Physician Statement completed by Dr. Hopewell on 11/17/2013
- Functional Capacity Exam completed by Nancy (Dickey) Beisswenger, OTR/L on 04/22/2014
- An Independent Peer Review completed on 06/09/2014 by Meghana Karande MD
- An Abilities Form completed by Dr. Hopewell on 04/21/2015

Dr. Hopewell Completed the Attending Physician Statement on 11/17/2013 on which he stated you had a diagnosis of post lami syndrome and spondylolisthesis. It was noted you had a failed lumbar fusion on 04/01/2011. The restrictions and limitations given were the inability to work without unlimited ability to rest and take breaks.

Dr. Hopewell saw you on 09/19/2013 for weakness in your legs. The exam was normal and no true motor deficits were found.

When you saw Dr. Hopewell on 01/20/2015 he stated you were doing reasonably well and the neurologic exam remained normal.

On 04/16/2015 when you saw. Dr Hopewell, you sated you were tired all the time on the amitriptyline. You reported a recent flare of lower back pain which caused dysesthesias more prominently in your feet than legs. This flare was due to prolonged car rides and personal stress.

On 06/03/2015 you reported another flare of pain following a fall. Dr. Hopewell felt it was an aggravation of an existing process and not a new one.

When you saw Dr. Hopewell on 07/15/2015 you reported that your pain was marginally controlled. The exam remained normal.

The file was sent for a review with Meghana C Karande MD, an independent physician reviewer Board Certified in Physical Medicine and Rehabilitation. The review was completed on 06/09/2014 and stated in part: "restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted." The reviewer contacted Dr. Hopewell for clarification on the restrictions and limitations given on the claim form. Dr. Hope well said those restrictions and limitations were based off of what the claimant had told him.

We reviewed your past training, education and work experience to evaluate your capacity to perform work-related activity. The documentation provided suggests you are not limited from working in a sedentary work capacity. The definition of sedentary work capacity, as defined by the Department of Labor, is:

Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34-66%) or constant (67-100%) basis.

Using The Dictionary of Occupation Titles as a reference, we found that you would be capable of performing the following occupations:

| DOT# | Occupation | Wage (mean) | Physical Demand |
|------|-----------|-------------|-----------------|
| 1. 075.127-014 | Nurse, Consultant | $5341.00/mo | Sedentary |
| 2 .075.374-916 | Call Center Nurse | $5312.00/mo | Sedentary |

The preceding list is just a sample of various jobs that you show transferable skills to perform. The list is not all-inclusive and is only a sample of possibilities. The jobs listed are found to exist within your area and are appropriate from the standpoint of adequate salary levels relative to your prior earnings. NOTE: Current hiring or job availability is not a consideration when identifying occupational alternatives; only that the occupations identified exist within the local labor market.

### Summary

In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 11/24/2015. Your payment for benefits through 11/24/2015 is being sent under separate cover.

If you disagree with our decision, you may appeal this determination by following the steps outlined below.

### Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 800-922-3503

REF #875257

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. If you wish, you may also request copies of the pertinent documents related to the claim.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Mike Machian
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

CC:  LAW OFFICES OF RICK VASQUEZ
     ATTN: RICK VASQUEZ
     1736 EAST SUNSHINE STE 103
     SPRINGFIELD, MO 65804

**LIN00567**

**Claimant:** Jamie Flanagan
**SS#:** _ ᶜ
**Claim #:** 1130226196
**Referral from:** Mike Machian
**Date:** 9-23-15
**Policyholder:** Lester E. Cox Medical Center

This VRC was requested to complete a TSA to determine Ms. Flanagan's transferable work skills & evaluate whether occupations exist at or above the wage requirements noted & at the level of functionality indicated.

## This VRC reviewed the following documentation for this report:
JD, DOT, Educational Background Form, dated 3-27-15, & Peer Review from Dr. M. Karande, dated 6-9-14.

The following information obtained from the file was utilized in determined what occupations Ms. Flanagan is qualified & able to perform.

## Work Experience:

| DOT Code | Occupation Title | SVP | Yrs | Str |
|---|---|---|---|---|
| 075.264-010 | Nurse Practitioner | 8 | 03/2010-08/2013 | |

## Education & Training:
Claimant is a 35 year old female who has earned a Master's of Science in Nursing. She has worked as a Nurse Practitioner since 2004. She worked as a Registered Nurse from 2000-2003. She notes that she took 2 courses towards her Doctorate in Nursing Practices in 2010. She notes that she has an e-mail address. JD from the policyholder notes that the employee has indirect supervisory responsibilities over clinical staff. JD also notes that the employee must have knowledge of Microsoft Office software products, primarily Excel & Work, knowledge of database software & EMR Word Processing Software.

## Diagnosis/L&R's:
The claimant is diagnosed with post laminectomy syndrome - lumbar spinal stenosis & has the following restrictions/limitations based upon the Peer Review from Dr. M. Karande, dated 6-9-14. Dr. Karande opines that the claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry push, and pull up to 20 lbs occasionally and 10 lbs frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and crawl would be never. Handling, fingering, and feeling would be unrestricted.

## Wage Requirement: $5252.52/month ($30.30/hr)

**Skills & Abilities:** Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.

## Occupations the customer can perform in the labor market of Crane, MO (Springfield, MO Metropolitan area) include but are not limited to the following:

| DOT Code | Occupation | SVP | Str | Wage | Source |
|---|---|---|---|---|---|
| 075.127-014 | Nurse, Consultant | 7 | S | $5341.00/mo | OES 2014 |
| 075.374-916 | Call Center Nurse | 7 | S | $5312.00/mo | OES 2014 |

## Summary:
A Transferable Skills Analysis was completed using the above noted information. Occupations were identified based upon the Peer Review from Dr. M. Karande, dated 6-9-14, that meet Ms. Flanagan's skills, educational/work history, & wage requirement. The limitations outlined by Dr. Karande, give Ms. Flanagan reasonable functional capacity to perform the occupations identified.

Stacey Nidositko, MS, CRC
Vocational Rehabilitation Counselor

**LIN00568**

HealthPort
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000



# INVOICE

**Invoice #:** 0174400652
**Date:** 8/20/2015
**Customer #:** 1666596

| Ship to: | Bill to: | Records from: |
|---|---|---|
| SHERRY MILLER<br>LINCOLN NATIONAL LIFE INS<br>PO BOX 2609<br>OMAHA, NE 68103-2609 | SHERRY MILLER<br>LINCOLN NATIONAL LIFE INS<br>PO BOX 2609<br>OMAHA, NE 68103-2609 | MERCY CLINICS JOPLIN<br>100 MERCY WAY<br>JOPLIN, MO 64804-4524 |

**Requested By:** LINCOLN NATIONAL LIFE INS        **DOB:**
**Patient Name:** FLANAGAN JAMIE

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| Basic Fee | | | 23.94 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Elect) 1 | 4 | 0.55 | 2.20 |
| Electronic Divry Fee | | | 2.00 |
| Subtotal | | | 28.14 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 28.14 |
| Less Payment | | | -28.14 |
| Balance Due | | | 0.00 |

**Pay your invoice online at www.HealthPortPay.com**

Terms: Net 30 days

- - - - - - - - - - - - - - - - - - - - - - - - - - ✂ - - - - - - - - - - - - - - - - - - - - - - - - - - -

HealthPort
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

| Invoice #: 0174400652 |
|---|
| Check # _____ |
| Payment Amount $_____ |

## Please return stub with payment.
Please include invoice number on check.
To pay invoice online, please go to www.HealthPortPay.com or call (770) 754 6000.
Email questions to Collections@healthport.com.



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates

13104208I

July 29, 2015

The Lincoln National Life
Insurance Company
Service Office:
PO Box 2609
Omaha, NE 68103-2609
toll free (800) 423-2765
www.Lincoln4benefits.com

DR DONALD HOPEWELL
RELEASE OF INFORMATION
100 MERCY WAY
JOPLIN, MO 64804

Re: Policy Number: 00001015732600000
    Claim Number: 1130226196
    Patient: Jamie Flanagan PAT
    DOB:

## ATTN MED RECORDS/ROI DEPT:

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| Documentation | Time Period |
|---|---|
| Office/Treatment Notes | 1/1/2015 to present |
| Diagnostic Test Results | 1/1/2015 to present |

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

**\*\*Please fill out all forms that are attached\*\***

Payment instructions:

- **Pre-payment:** If you require a pre-payment **we must have your Tax Identification Number (TIN) & NPI.** Note that pre-payment via check will delay payment by up to 30 days.

- **Credit Card Payment:** If you accept a credit card, **payment can be made immediately** upon receipt of your invoice.

- **Please fax this remittance form and records to 877-843-3950.**

©2015 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

AUG 06 2015

1/20/2015✓
to
7/15/2015✓

E7402388C3

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT**

Sincerely,

Sherry Miller
Assisting on behalf of Mike Machian
Clerk, Claims
The Lincoln National Life Insurance Company

# Mercy️ Health

## Authorization for Use and Disclosure of Protected Health Information

**Release TO:** Name: Lincoln National Life Insurance Company
Address: P.O. Box 2609
City: Omaha     State: NE   Zip: 68103-2609
Phone #: 1-800-423-2765 (extension 7498 - Mihe Machian)

**Release FROM:** Provider/Facility: Dr. Donald Hopewell
Address: 100 Mercy Way, Suite 520
City: Joplin     State: MO   Zip: 64804

**Patient or Individual Identification:**
Printed Name: Jamie Sue Flanagan    Date of Birth: _____
Other Name(s) Used: Jamie Myers
Address: 1625 Musky Dime Drive
City: Crane     State: MO   Zip: 65633
Last 4 Digits of Social Security #: _____   Phone #: 417-459-5879

**Purpose of Request** (Must check one):
☐ Request of the Patient or Individual ☐ Attorney/Legal ☐ Billing/Payment ☐ Treatment or Consultation
☒ Other, (specify): further evaluation for continued disability benefits— URGENT!

*Please Provide Both*

**I Request My Records be Provided:** ☒ Paper (hard copy) ☒ Electronically via email* ☐ Electronically via CD*
Email address: mihe.machian@lfg.com
* Electronic availability is subject to location and type of records. Billing records and films cannot be provided electronically via email and are available for mail or pick-up only.

**Information to be Released – Covering the Periods of Health Care** (must check one):
☒ Any and all** ☐ From (date): _____ To (date): _____
**includes all records through the date the patient or patient representative signs this authorization.

**Please check type of information to be released** (check all that apply):

| | | | |
|---|---|---|---|
| ☒ Complete Medical Record | ☐ Consultation(s) | ☐ Operative Report(s) | ☐ Physician Order(s) |
| ☐ History / Physical Exams | ☐ Diagnostic Testing Report(s) | ☐ Patient Allergies | ☐ Progress Note(s) |
| ☐ Lab Test Result(s) | ☐ EKG/Cardiology/Report(s) | ☐ Pathology Report(s) | ☐ Radiology Reports/Image(s) |
| ☐ Emergency Record(s) | ☐ Itemized Billing Statement(s) | ☐ Patient Medication(s) | ☐ Treatment Plan(s) |
| ☐ Discharge Summary | ☐ Nurses Notes | ☐ Clinic Records | ☐ Therapy Records |
| ☐ Abstract | ☐ Other (specify): _____ | | |

**NOTE:** This form MAY NOT BE used to release Psychotherapy Notes

**Drug and/or Alcohol Abuse, and/or Psychiatric, and Communicable/Non-Communicable Diseases**
I understand if my medical or billing record contains information in reference to drug and/or alcohol abuse or treatment, psychiatric care, communicable and/or non communicable diseases including but not limited to hepatitis, gonorrhea, syphilis and/or other sensitive information, I agree to its release. Check One: ☒ YES ☐ NO

*Form continues on back side.*

MRC_4969 (3/16/15) Page 1 of 2

## HIV/AIDS Records Release

I understand if my medical or billing record contains information in reference to HIV/AIDS (Human Immunodeficiency Virus/Acquired Immunodeficiency Syndrome) testing and/or treatment, I agree to its release. *Check One:* ☒ YES ☐ NO

## Time Limit & Right to Revoke Authorization

Except to the extent that action has already been taken in reliance on this authorization I can revoke this authorization at any time. Unless revoked, this authorization will expire on the following date or event _____ or not to exceed 1 year from date of signature. Indicating "any and all" records to be released will only include all records through the date the patient or patient representative signs this authorization as long as the authorization is not expired or revoked.

## Re-disclosure

I understand the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer protected by the Health Insurance Portability and Accountability Act (HIPAA) of 1996 or state statute.

## Right to Refuse

I understand that I do not have to sign this Authorization, and my treatment or payment for services will not be denied if I do not sign.

## Signature of Patient or Personal Representative Who May Request Disclosure

I understand there may be a charge for copying my records. State law governs what the Releasing Entity may charge. I have read this form, understand and agree to the uses and disclosures of information as described in this Authorization. I understand that refusing to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to covered entities as provided by State statute and/or 45 CFR $164.502(a)(1). I hereby knowingly and voluntarily authorize Mercy Health to use and disclose the protected health information specified above.

_Jamie Flanagan_        07/18/2015   08:15
Signature of individual or personal representative      Date      Time

Printed name of individual's personal representative, if applicable: _____

Rationale for serving as personal representative to the individual (e.g., parent, legal guardian): 

Witness Signature (where legally required): _____

Verified by (OFFICE USE ONLY): _____

Identity of Requestor Verified (OFFICE USE ONLY) via:
☐ Photo ID ☐ Matching Signature ☐ Other, specify: _____

MRC_4969 (3/16/15) Page 2 of 2

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 173 of 200    LIN00573

MERCY HOSPITAL JOPLIN
100 Mercy Way
Joplin MO 64804-4524

FLANAGAN,JAMIE S
MRN: E140238803
DOB: ████████, Sex: F
Enc. Date: 01/20/15

## Physician Progress Notes

Progress Notes by Hopewell, Donald K, MD at 1/20/2015  9:53 AM                                                        Version 1 of 1

| Author: Hopewell, Donald K. MD | Service: (none) | Author Type: Physician |
| Filed: 1/20/2015 10:11 AM | Note Time: 1/20/2015  9:53 AM | Status: Signed |
| Editor: Hopewell, Donald K. MD (Physician) | | |

The patient is a 34-year-old who returns for followup of lumbar post laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis. The last time I saw her she had a flare of her back pain which significantly improved with a short course of dexamethasone. She continues to do reasonably well with her pain overall although she is having more problems with the cold weather. Her biggest problem currently is sleeping at night because of pain. She talks about dysesthetic pain in the lower extremities particularly in the feet that occurs when she tries to sleep area her pain otherwise he is lumbar in location and is worse with prolonged position or extended period of time on her feet. She has no new motor, sensory, or bowel or bladder complaints. She is having no problems from her medications.

We reviewed past history, family history, social history, and review of systems. This is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal.

This is a patient with chronic low back pain do to post laminectomy syndrome, lumbar spondylosis, and lumbar spondylolisthesis all in the setting of mixed connective tissue disease. The symptom she's having at night I think her neuropathic and we discussed options in terms of medications for that problem. We had tried her on amitriptyline in the past and she had some problems with daytime hypersomnolence that were intolerable when she was working. Will return amitriptyline 10 mg at at bedtime but I told her to take an hour or 2 before she wants to be asleep and see if we can improve her ability to fall sleep and stay asleep and control the neuropathic symptom she's having at night. She'll return for routine followup in 3 months but we'll keep us apprised of response to the amitriptyline.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 1/20/2015 10:11 AM

JCPL HEALTH INFORMATION
MANAGEMENT
100 Mercy Way

FLANAGAN JAMIE S
MRN: E140238803

Printed by 95369 at 8/6/15  1:47 PM

Case 3:17-cv-05060-MDH   Document 35-3   Filed 05/15/18   Page 174 of 200   LIN00574

MERCY HOSPITAL JOPLIN
100 Mercy Way
Joplin MO 64804-4524

FLANAGAN, JAMIE S
MRN: E140238803
DOB: ~~█████~~, Sex: F
Enc. Date: 04/16/15

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 4/16/2015 12:25 PM**                                         Version 1 of 1

| | | |
|---|---|---|
| Author: Hopewell, Donald K, MD | Service: (none) | Author Type: Physician |
| Filed: 4/16/2015 12:30 PM | Note Time: 4/16/2015 12:25 PM | Status: Signed |
| Editor: Hopewell, Donald K, MD (Physician) | | |

The patient is a 35-year-old who returns for followup of pain related to lumbar spondylolisthesis, lumbar post laminectomy syndrome, lumbar spondylosis, all of which are either a direct result of her exacerbated by her underlying autoimmune disease. Last time I saw her she was having is a static quality pain in the lower extremities particularly at night and we tried her on amitriptyline. She has had significant problems with hypersomnolence on this medication and tells me that she basically is tired all the time. She had a recent flare of her low back pain which does cause dysesthesias more prominently in the feet than in the legs and this is all flared because of prolonged car rides and personal stress including loss of her father recently. She also has exacerbations of her symptoms associated with weather changes. She's had no new neurologic symptoms otherwise.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal.

Until the patient she definitely needs to stop her amitriptyline because of the somnolence issue she does feel that it was improving a dysesthetic quality pain and she was having. If she continues to be hypersomnolent then she needs a formal sleep study as well. We'll continue her narcotic regimen otherwise unchanged and she'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 4/16/2015 12:30 PM

JOPL HEALTH INFORMATION
MANAGEMENT
100 Mercy Way

FLANAGAN, JAMIE S
MRN: E140238803

Printed by 95369 at 8/6/15 1:47 PM

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 175 of 200    LIN00575

MERCY HOSPITAL JOPLIN
100 Mercy Way
Joplin MO 64804-4524

FLANAGAN,JAMIE S
MRN: E140238803
DOB: ~~████~~, Sex: F
Enc. Date: 06/03/15

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 6/3/2015 10:09 AM** _____ Version 1 of 1

| | | |
|---|---|---|
| Author: Hopewell, Donald K, MD | Service: (none) | Author Type: Physician |
| Filed: 6/3/2015 10:13 AM | Note Time: 6/3/2015 10:09 AM | Status: Signed |
| Editor: Hopewell, Donald K, MD (Physician) | | |

Patient is a 35-year-old who returns for followup of pain related to lumbar spondylosis, lumbar spondylolisthesis, lumbar post laminectomy syndrome, and inflammatory arthropathy secondary to autoimmune disease. The patient requested early followup because she fell about a month ago now landing on her right buttock. She's had increased pain that is typical of her pain in the past it is lumbar and she gets dysesthetic pains down into the right lower extremity predominantly. She's also found a small area of mass in the right low lumbar region that has been tender and she did not appreciate previously. We stopped the amitriptyline and she is not having as much problems with daytime hypersomnolence but still tends to fall sleep when she is riding in a car or sitting without radicular stimulation for a period of time. We discussed again the possibility of sleep study and she will discuss this with her primary care physician.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records. Neurologic examination on this date remains normal. The area of tenderness that she has a small freely mobile and soft most likely representing a lipoma.

This is a patient is a flare of her pain issues following a fall. There is nothing to suggest new process but simply an aggravation of her long-standing issues. We will try five-day course of dexamethasone and also try Lidoderm patches in addition to her chronic narcotic regimen which we will continue unchanged. She'll return for routine followup in 3 months.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 6/3/2015 10:13 AM

JOPL HEALTH INFORMATION
MANAGEMENT
100 Mercy Way

FLANAGAN,JAMIE S
MRN: E140238803

Printed by 95369 at 8/6/15  1:47 PM

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 176 of 200    LIN00576

MERCY HOSPITAL JOPLIN
100 Mercy Way
Joplin MO 64804-4524

FLANAGAN JAMIE S
MRN: E140238803
DOB: ▓▓▓▓▓▓, Sex: F
Enc. Date: 07/15/15

## Physician Progress Notes

**Progress Notes by Hopewell, Donald K, MD at 7/15/2015 11:13 AM**                                   Version 1 of 1

| | | |
|---|---|---|
| Author: Hopewell, Donald K, MD | Service: (none) | Author Type: Physician |
| Filed: 7/15/2015 11:19 AM | Note Time: 7/15/2015 11:13 AM | Status: Signed |
| Editor: Hopewell, Donald K, MD (Physician) | | |

The patient is a 35-year-old who returns for followup of chronic low back pain do to lumbar spondylosis, lumbar post laminectomy syndrome lumbar spondylolisthesis all in the setting of autoimmune disease with an inflammatory arthropathy component. The patient feels that overall her pain is marginally controlled she is having problems sleeping because if she stays in one position for very long her pain tends to flare. She's been having increasing problems with dysphoria and tells me that she's been crying a great deal. She also told me "I don't think more pain medicines will help" she tells me that she's having agree problems getting up and moving around first thing in the morning. She does not describe this as pain but tells me that they seem immensely fatigued in terms of her legs and that they just don't seem to work very well. She also has been having a great deal of problems with heat intolerance. She's having no problems from her current narcotic regimen.

We reviewed past history, family history, social history, and review of systems. This information is all unchanged from that documented in her current records.

Neurologic examination on this date remains normal.

Patient was tearful during the interview and physical examination and as we discussed in more detail I think it is clear that she is having significant depressive symptomatology. I'm not sure if this is because of poor pain control or whether or not this is related to other light stressors as well as her chronic pain issues and limited functional capacity. Regardless I think her mood is significantly increasing her pain issue. She also has concerns about whether not for R. median disease may be playing some role particularly in the heat intolerance. I told her that I think this probably is in fact the case and what she is talking about in terms of the leg issues first thing in the morning maybe a warming up phenomena that could be on the basis of her autoimmune disease as well. She will plan on seeing her rheumatologist for reevaluation. I have also strongly encouraged her to talk with her family Dr. about altering her antidepressant regimen. We've agreed to not change her narcotic regimen currently and see what impact the above followup visits have on her overall situation. She'll return for routine followup in 3 months and if necessary we will alter her narcotic regimen at that time.

DK Hopewell M.D.

Electronically signed by Hopewell, Donald K, MD at 7/15/2015 11:19 AM

## END OF REPORT

JOPL HEALTH INFORMATION
MANAGEMENT
100 Mercy Way

FLANAGAN JAMIE S
MRN: E140238803

Printed by 95369 at 8/6/15 1:47 PM

Case 3:17-cv-05060-MDH    Document 35-3    Filed 05/15/18    Page 177 of 200    LIN00577

## Machian, Mike

| | |
|---|---|
| **From:** | Machian, Mike |
| **Sent:** | Friday, August 14, 2015 3:08 PM |
| **To:** | 'Jamie Flanagan' |
| **Subject:** | RE: Release |

We have not received them yet, but I expect to have them soon.

**From:** Jamie Flanagan [mailto:jamieandjason0306@gmail.com]
**Sent:** Friday, August 14, 2015 10:18 AM
**To:** Machian, Mike
**Subject:** Release

Mr . Machian,

Have you gotten my records from Dr. Hopewell yet?

Thanks,
Jamie

1

**LIN00578**

 **HealthPort®**

120 Bluegrass Valley Parkway
Alpharetta, GA 30005

FIRST-CLASS MAIL
PRESORTED
U.S. POSTAGE PAID
HEALTHPORT

**FIRST CLASS**

FIRST CLASS

**To be opened by the
addressee only**

# REQUESTED RECORDS
# ENCLOSED



REC'D AUG 1 3 2015 1210-12081

# Lincoln
## Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates

July 29, 2015

The Lincoln National Life
Insurance Company
Service Office:
PO Box 2609
Omaha, NE 68103-2609
toll free (800) 423-2765
www.Lincoln4benefits.com

DR DONALD HOPEWELL
RELEASE OF INFORMATION
100 MERCY WAY
JOPLIN, MO 64804

Re:     Policy Number:      00001015732600000
        Claim Number:       1130226196
        Patient:            Jamie Flanagan    PAT
        DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
| --- | --- |
| Office/Treatment Notes | 1/1/2015 to present |
| Diagnostic Test Results | 1/1/2015 to present |

| Qty | Description | Unit Price | Line Total |
| --- | --- | --- | --- |
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

**\*\*Please fill out all forms that are attached\*\***

Payment instructions:

- **Pre-payment:** If you require a pre-payment *we must have your Tax Identification Number (TIN) & NPI.* Note that pre-payment via check will delay payment by up to 30 days.

- **Credit Card Payment:** If you accept a credit card, *payment can be made immediately* upon receipt of your invoice.

- **Please fax this remittance form and records to 877-843-3950.**

©2015 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

AUG 0 6 2015

E740238803

**LIN00580**

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT**

Sincerely,

Sherry Miller
Assisting on behalf of Mike Machian
Clerk, Claims
The Lincoln National Life Insurance Company

**LIN00581**

# Mercy ⚓ Mercy Health

## Authorization for Use and Disclosure of Protected Health Information

**Release TO:**
Name: Lincoln National Life Insurance Company
Address: P.O. Box 2609
City: Omaha     State: NE   Zip: 68103-2609
Phone #: 1-800-423-2765 (extension 7498 - Mike Machian)

**Release FROM:**
Provider/Facility: Dr. Donald Hopewell
Address: 100 Mercy Way, Suite 520
City: Joplin     State: MO   Zip: 64804

**Patient or Individual Identification:**
Printed Name: Jamie Sue Flanagan    Date of Birth: ▯
Other Name(s) Used: Jamie Myers
Address: 1625 Husky Dime Drive
City: Crane     State: MO   Zip: 65633
Last 4 Digits of Social Security #: ▯    Phone #: 417-459-5879

**Purpose of Request** *(Must check one):*
☐ Request of the Patient or Individual ☐ Attorney/Legal ☐ Billing/Payment ☐ Treatment or Consultation
☒ Other, (specify): further evaluation for continued disability benefits - URGENT!

*Please provide both*

**I Request My Records be Provided:** ☒ Paper (hard copy) ☒ Electronically via email* ☐ Electronically via CD*
Email address: mike.machian@lfg.com
* Electronic availability is subject to location and type of records. Billing records and films cannot be provided electronically via email and are available for mail or pick-up only.

**Information to be Released – Covering the Periods of Health Care** *(must check one):*
☒ Any and all** ☐ From (date): _____ To (date): _____
** includes all records through the date the patient or patient representative signs this authorization.

**Please check type of information to be released** *(check all that apply):*
☒ Complete Medical Record ☐ Consultation(s) ☐ Operative Report(s) ☐ Physician Order(s)
☐ History / Physical Exams ☐ Diagnostic Testing Report(s) ☐ Patient Allergies ☐ Progress Note(s)
☐ Lab Test Result(s) ☐ EKG/Cardiology/Report(s) ☐ Pathology Report(s) ☐ Radiology Reports/Image(s)
☐ Emergency Record(s) ☐ Itemized Billing Statement(s) ☐ Patient Medication(s) ☐ Treatment Plan(s)
☐ Discharge Summary ☐ Nurses Notes ☐ Clinic Records ☐ Therapy Records
☐ Abstract ☐ Other (specify): _____

**NOTE:** This form MAY NOT BE used to release Psychotherapy Notes

**Drug and/or Alcohol Abuse, and/or Psychiatric, and Communicable/Non-Communicable Diseases**
I understand if my medical or billing record contains information in reference to drug and/or alcohol abuse or treatment, psychiatric care, communicable and/or non communicable diseases including, but not limited to hepatitis, gonorrhea, syphilis and/or other sensitive information, I agree to its release. Check One: ☒ YES ☐ NO

*Form continues on back side.*

MRC_4748 (1/16/15) Page 1 of 2

**HIV/AIDS Records Release**

I understand if my medical or billing record contains information in reference to HIV/AIDS (Human Immunodeficiency Virus/Acquired Immunodeficiency Syndrome) testing and/or treatment, I agree to its release. **Check One:** ☒ YES ☐ NO

**Time Limit & Right to Revoke Authorization**

Except to the extent that action has already been taken in reliance on this authorization I can revoke this authorization at any time. Unless revoked, this authorization will expire on the following date or event _____ or not to exceed 1 year from date of signature. Indicating "any and all" records to be released will only include all records through the date the patient or patient representative signs this authorization as long as the authorization is not expired or revoked.

**Re-disclosure**

I understand the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer protected by the Health Insurance Portability and Accountability Act (HIPAA) of 1996 or state statute.

**Right to Refuse**

I understand that I do not have to sign this Authorization, and my treatment or payment for services will not be denied if I do not sign.

**Signature of Patient or Personal Representative Who May Request Disclosure**

I understand there may be a charge for copying my records. State law governs what the Releasing Entity may charge. I have read this form, understand and agree to the uses and disclosures of information as described in this Authorization. I understand that refusing to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to covered entities as provided by State statute and/or 45 CFR §164.502(a)(1). I hereby knowingly and voluntarily authorize Mercy Health to use and disclose the protected health information specified above.

_Jamie Flanagan_      07 | 18 | 2015    08:15

Signature of individual or personal representative      Date     Time

Printed name of individual's personal representative, if applicable: _____

Rationale for serving as personal representative to the individual (e.g., parent, legal guardian): _____

_____

_____

_____

Witness Signature (where legally required): _____

Verified by (OFFICE USE ONLY): _____

Identity of Requestor Verified (OFFICE USE ONLY) via:
     ☐ Photo ID    ☐ Matching Signature    ☐ Other, specify: _____

MIC_4989 (3/16/15) Page 2 of 3

\*\*\*\*\*\*AUTO\*\*MIXED AADC 300
1458 2 MB 0.439                          001458
LINCOLN NATIONAL LIFE INS
SHERRY MILLER                            6pgs
PO BOX 2609
OMAHA, NE  68103-2609



# ATTENTION
## Confidential Information enclosed.
## To be viewed by authorized persons only.

## If you have questions regarding any information you have requested, please call the phone number on the enclosed invoice.

Health information is reproduced by HealthPort, a health information management outsourcing service.  Your healthcare provider contracts with HealthPort to process authorized requests for copies of health records.

Reproductions are made from the medical facility's original records.  The confidentiality of these records is protected by federal and state laws and regulations, including the Health Insurance Portability and Accountability Act (HIPAA).

If you requested items that are not maintained in the medical record, your request for those items was forwarded to the appropriate department and will be sent under separate cover.  Likewise, information that you asked to have delivered to another address is sent separately.

This package may or may not contain medical records, depending on what was requested and how it was processed.

You may not make any disclosure or use of these records without the permission of the individual who is the subject of the records.

**LIN00584**

HealthPort
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000



## HealthPort.
### INVOICE

Invoice #: 0174400652
Date: 8/7/2015
Customer #: 1666596

| Ship to: | Bill to: | Records from: |
|---|---|---|
| SHERRY MILLER | SHERRY MILLER | MERCY CLINICS JOPLIN |
| LINCOLN NATIONAL LIFE INS | LINCOLN NATIONAL LIFE INS | 100 MERCY WAY |
| PO BOX 2609 | PO BOX 2609 | JOPLIN, MO 64804-4524 |
| OMAHA, NE 68103-2609 | OMAHA, NE 68103-2609 | |

**Requested By:** LINCOLN NATIONAL LIFE INS  **DOB:**
**Patient Name:** FLANAGAN JAMIE

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| Your request for copies of medical records has been processed. Full payment in advance is required and must be received within 30 days of the receipt of this invoice, before your copies will be released. Promptly return the bottom portion of this invoice along with a check for the balance due. To expedite the request or to pay by credit card, please call 770-754-6000. | | | |
| **FULL PAYMENT REQUIRED PRIOR TO RELEASE OF RECORDS** | | | |
| Basic Fee | | | 23.94 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Elect) 1 | 4 | 0.55 | 2.20 |
| Electronic Dlvry Fee | | | 2.00 |
| Subtotal | | | 28.14 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 28.14 |
| Balance Due | | | 28.14 |

Pay your invoice online at www.HealthPortPay.com

### Please remit this amount : $ 28.14 (USD)

--------------------------------✂------------------------------------------------

HealthPort
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

| Invoice #: 0174400652 |
|---|
| Check # _____ |
| Payment Amount $_____ |

## Please return stub with payment.
Please include invoice number on check.
To pay invoice online, please go to www.HealthPortPay.com or call (770) 754 6000.
Email questions to Collections@healthport.com.

**LIN00585**

 

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life Insurance Company**
Service Office:
PO Box 2609
Omaha, NE 68103-2609
toll free (800) 423-2765
www.Lincoln4benefits.com

July 29, 2015

DR DONALD HOPEWELL
RELEASE OF INFORMATION
100 MERCY WAY
JOPLIN, MO 64804

Re:   Policy Number:   00001015732600000
      Claim Number:    1130226196
      Patient:         Jamie Flanagan
      DOB:

**ATTN MED RECORDS/ROI DEPT:**

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| **Documentation** | **Time Period** |
|---|---|
| Office/Treatment Notes | 1/1/2015 to present |
| Diagnostic Test Results | 1/1/2015 to present |

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
| | Processing Fee | | |
| | Pages - | | |
| | Actual Postage | | |
| | Tax Identification Number | TIN- | |
| | | Total | |

**\*\*Please fill out all forms that are attached\*\***

Payment instructions:

- **Pre-payment:** If you require a pre-payment *we must have your Tax Identification Number (TIN) & NPI.* Note that pre-payment via check will delay payment by up to 30 days.

- **Credit Card Payment:** If you accept a credit card, *payment can be made immediately* upon receipt of your invoice.

- **Please fax this remittance form and records to 877-843-3950.**

©2015  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00586**

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

**YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT**

Sincerely,

Sherry Miller
Assisting on behalf of Mike Machian
Clerk, Claims
The Lincoln National Life Insurance Company

**LIN00587**

# Mercy ✝ Mercy Health

## Authorization for Use and Disclosure of Protected Health Information

**Release TO:**
Name: Lincoln National Life Insurance Company
Address: P.O. Box 2609
City: Omaha  State: NE  Zip: 68103-2609
Phone #: 1-800-423-2765 (extension 7498 - Mike Machian)

**Release FROM:**
Provider/Facility: Dr. Donald Hopewell
Address: 100 Mercy Way, Suite 520
City: Joplin  State: MO  Zip: 64804

**Patient or Individual Identification:**
Printed Name: Jamie Sue Flanagan  Date of Birth: 1 , ,
Other Name(s) Used: Jamie Myers
Address: 1625 Musky Dime Drive
City: Crane  State: MO  Zip: 65633
Last 4 Digits of Social Security #: _____  Phone #: 417-459-5879

**Purpose of Request** (Must check one):
☐ Request of the Patient or Individual  ☐ Attorney/Legal  ☐ Billing/Payment  ☐ Treatment or Consultation
☒ Other, (specify): further evaluation for continued disability benefits - URGENT!

Please Provide Both

**I Request My Records be Provided:** ☒ Paper (hard copy)  ☒ Electronically via email*  ☐ Electronically via CD*
Email address: mike.machian@lfg.com

* Electronic availability is subject to location and type of records. Billing records and films cannot be provided electronically via email and are available for mail or pick-up only.

**Information to be Released – Covering the Periods of Health Care** (must check one):
☒ Any and all**  ☐ From (date): _____  To (date): _____
** includes all records through the date the patient or patient representative signs this authorization.

**Please check type of information to be released** (check all that apply):

☒ Complete Medical Record  ☐ Consultation(s)  ☐ Operative Report(s)  ☐ Physician Order(s)
☐ History / Physical Exams  ☐ Diagnostic Testing Report(s)  ☐ Patient Allergies  ☐ Progress Note(s)
☐ Lab Test Result(s)  ☐ EKG/Cardiology/Report(s)  ☐ Pathology Report(s)  ☐ Radiology Reports/Image(s)
☐ Emergency Record(s)  ☐ Itemized Billing Statement(s)  ☐ Patient Medication(s)  ☐ Treatment Plan(s)
☐ Discharge Summary  ☐ Nurses Notes  ☐ Clinic Records  ☐ Therapy Records
☐ Abstract  ☐ Other (specify): _____

**NOTE:** This form MAY NOT BE used to release Psychotherapy Notes

**Drug and/or Alcohol Abuse, and/or Psychiatric, and Communicable/Non-Communicable Diseases**
I understand if my medical or billing record contains information in reference to drug and/or alcohol abuse or treatment, psychiatric care, communicable and/or non communicable diseases including but not limited to hepatitis, gonorrhea, syphilis and/or other sensitive information, I agree to its release. **Check One:** ☒ YES  ☐ NO

*Form continues on back side.*

MRC_4969 (3/16/15) Page 1 of 2

## HIV/AIDS Records Release

I understand if my medical or billing record contains information in reference to HIV/AIDS (Human Immunodeficiency Virus/Acquired Immunodeficiency Syndrome) testing and/or treatment, I agree to its release. *Check One:* ☒ YES ☐ NO

## Time Limit & Right to Revoke Authorization

Except to the extent that action has already been taken in reliance on this authorization I can revoke this authorization at any time. Unless revoked, this authorization will expire on the following date or event _____ or not to exceed 1 year from date of signature. Indicating "any and all" records to be released will only include all records through the date the patient or patient representative signs this authorization as long as the authorization is not expired or revoked.

## Re-disclosure

I understand the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer protected by the Health Insurance Portability and Accountability Act (HIPAA) of 1996 or state statute.

## Right to Refuse

I understand that I do not have to sign this Authorization, and my treatment or payment for services will not be denied if I do not sign.

## Signature of Patient or Personal Representative Who May Request Disclosure

I understand there may be a charge for copying my records. State law governs what the Releasing Entity may charge. I have read this form, understand and agree to the uses and disclosures of information as described in this Authorization. I understand that refusing to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to covered entities as provided by State statute and/or 45 CFR §164.502(a)(1). I hereby knowingly and voluntarily authorize Mercy Health to use and disclose the protected health information specified above.

_Jamie Flanagan_     07/18/2015    08:15
Signature of individual or personal representative     Date     Time

Printed name of individual's personal representative, if applicable: _____

Rationale for serving as personal representative to the individual (*e.g., parent, legal guardian*): _____

Witness Signature (where legally required): _____

Verified by (OFFICE USE ONLY): _____

Identity of Requestor Verified (OFFICE USE ONLY) via:
    ☐ Photo ID    ☐ Matching Signature    ☐ Other, specify: _____

MRC_4969 (3/16/15) Page 2 of 2

LIN00589


**Lincoln** Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

July 16, 2015

JAMIE  FLANAGAN
1625 MUSKY DIME DRIVE
CRANE, MO 65633

Re:     Policyholder:  LESTER E COX MEDICAL CENTER
        Policy Number: 00001015732600000
        Claim Number: 1130226196
        Claimant:  Jamie Flanagan

Dear Mrs. Flanagan:

Please refer to our letter of 07/02/2015 in which we requested additional information for your disability claim. As of the above date, we have received no response to our request.

The policy issued to LESTER E COX MEDICAL CENTER indicates any request for information must be provided to our office within 45 days.

We must receive the following information in order to continue our review of your claim:
*   Special Authorization for Dr. Hopewell,

We will allow you an additional 30 days to have the information submitted to our office for review. Without this information, benefits beyond 07/17/2015 cannot be released and it will be necessary to suspend our review of your claim. To ensure this information is received and processed quickly, feel free to use our toll-free fax number 800-922-3503.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com.  You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Mike Machian
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

©2015  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

**LIN00590**

 **Mercy** Mercy Health

# Authorization for Use and Disclosure
# of Protected Health Information

**Release TO:**
Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Phone #: _____

**Release FROM:**
Provider/Facility: _____

Address: _____

City: _____ State: _____ Zip: _____

## Patient or Individual Identification:

Printed Name: _____ Date of Birth: _____

Other Name(s) Used: _____

Address: _____

City: _____ State: _____ Zip: _____

Last 4 Digits of Social Security #: _____ Phone #: _____

## Purpose of Request (Must check one):

☐ Request of the Patient or Individual  ☐ Attorney/Legal  ☐ Billing/Payment  ☐ Treatment or Consultation

☐ Other, (specify): _____

## I Request My Records be Provided:  ☐ Paper (hard copy)  ☐ Electronically via email*  ☐ Electronically via CD*

Email address: _____

*Electronic availability is subject to location and type of records. Billing records and films cannot be provided electronically via email and are available for mail or pick-up only.*

## Information to be Released – Covering the Periods of Health Care (must check one):

☐ Any and all**  ☐ From (date): _____ To (date): _____

** includes all records through the date the patient or patient representative signs this authorization.

### Please check type of information to be released (check all that apply):

| | | | |
|---|---|---|---|
| ☐ Complete Medical Record | ☐ Consultation(s) | ☐ Operative Report(s) | ☐ Physician Order(s) |
| ☐ History / Physical Exams | ☐ Diagnostic Testing Report(s) | ☐ Patient Allergies | ☐ Progress Note(s) |
| ☐ Lab Test Result(s) | ☐ EKG/Cardiology/Report(s) | ☐ Pathology Report(s) | ☐ Radiology Reports/Image(s) |
| ☐ Emergency Record(s) | ☐ Itemized Billing Statement(s) | ☐ Patient Medication(s) | ☐ Treatment Plan(s) |
| ☐ Discharge Summary | ☐ Nurses Notes | ☐ Clinic Records | ☐ Therapy Records |
| ☐ Abstract | ☐ Other (specify): _____ | | |

**NOTE:** *This form MAY NOT BE used to release Psychotherapy Notes*

## Drug and/or Alcohol Abuse, and/or Psychiatric, and Communicable/Non-Communicable Diseases

I understand if my medical or billing record contains information in reference to drug and/or alcohol abuse or treatment, psychiatric care, communicable and/or non communicable diseases including but not limited to hepatitis, gonorrhea, syphilis and/or other sensitive information, I agree to its release. **Check One:** ☐ YES ☐ NO

*Form continues on back side.*

MRC_4969 (3/16/15) Page 1 of 2

**HIV/AIDS Records Release**
I understand if my medical or billing record contains information in reference to HIV/AIDS (Human Immunodeficiency Virus/Acquired Immunodeficiency Syndrome) testing and/or treatment, I agree to its release. *Check One:* ☐ YES ☐ NO

**Time Limit & Right to Revoke Authorization**
Except to the extent that action has already been taken in reliance on this authorization I can revoke this authorization at any time. Unless revoked, this authorization will expire on the following date or event _____
or not to exceed 1 year from date of signature. Indicating "any and all" records to be released will only include all records through the date the patient or patient representative signs this authorization as long as the authorization is not expired or revoked.

**Re-disclosure**
I understand the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer protected by the Health Insurance Portability and Accountability Act (HIPAA) of 1996 or state statute.

**Right to Refuse**
I understand that I do not have to sign this Authorization, and my treatment or payment for services will not be denied if I do not sign.

**Signature of Patient or Personal Representative Who May Request Disclosure**
**I understand there may be a charge for copying my records. State law governs what the Releasing Entity may charge.** I have read this form, understand and agree to the uses and disclosures of information as described in this Authorization. I understand that refusing to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to covered entities as provided by State statute and/or 45 CFR §164.502(a)(1). I hereby knowingly and voluntarily authorize Mercy Health to use and disclose the protected health information specified above.

_____     _____     _____
Signature of individual or personal representative                    Date                    Time

Printed name of individual's personal representative, if applicable: _____

Rationale for serving as personal representative to the individual (*e.g., parent, legal guardian*):

_____

_____

Witness Signature (where legally required): _____

Verified by (*OFFICE USE ONLY*): _____

Identity of Requestor Verified (*OFFICE USE ONLY*) via:
      ☐ Photo ID   ☐ Matching Signature   ☐ Other, specify: _____

MRC_4969 (3/16/15) Page 2 of 2



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
Service Office:
PO Box 2609
Omaha, NE 68103-2609
toll free (800) 423-2765
www.Lincoln4benefits.com

July 2, 2015

JAMIE FLANAGAN
1625 MUSKY DIME DRIVE
CRANE, MO 65633

Re:    Policyholder: LESTER E COX MEDICAL CENTER
      Policy Number: 00001015732600000
      Claim Number: 1130226196
      Claimant: Jamie Flanagan

Dear Mrs. Flanagan:

This letter is in reference to your claim for Long Term Disability Benefits.

We will soon request additional medical information from your physician Dr. Hopewell, however their office requires a specific authorization to be completed

We are enclosing this authorization for your signature or completion and return to our office for forwarding to them.

We are unable to proceed with your request for benefits, until this necessary medical information is obtained from your physician.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Mike Machian
Senior Claims Examiner, Claims
The Lincoln National Life Insurance Company

©2015 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LIN00593



**Mercy Health**

# Authorization for Use and Disclosure of Protected Health Information

**Release TO:**
Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Phone #: _____

**Release FROM:**
Provider/Facility: _____

Address: _____

City: _____ State: _____ Zip: _____

## Patient or Individual Identification:

Printed Name: _____ Date of Birth: _____

Other Name(s) Used: _____

Address: _____

City: _____ State: _____ Zip: _____

Last 4 Digits of Social Security #: _____ Phone #: _____

## Purpose of Request (Must check one):

☐ Request of the Patient or Individual ☐ Attorney/Legal ☐ Billing/Payment ☐ Treatment or Consultation

☐ Other, (specify): _____

## I Request My Records be Provided: ☐ Paper (hard copy) ☐ Electronically via email* ☐ Electronically via CD*

Email address: _____

*Electronic availability is subject to location and type of records. Billing records and films cannot be provided electronically via email and are available for mail or pick-up only.*

## Information to be Released – Covering the Periods of Health Care (must check one):

☐ Any and all** ☐ From (date): _____ To (date): _____

*** includes all records through the date the patient or patient representative signs this authorization.*

## Please check type of information to be released (check all that apply):

| | | | |
|---|---|---|---|
| ☐ Complete Medical Record | ☐ Consultation(s) | ☐ Operative Report(s) | ☐ Physician Order(s) |
| ☐ History / Physical Exams | ☐ Diagnostic Testing Report(s) | ☐ Patient Allergies | ☐ Progress Note(s) |
| ☐ Lab Test Result(s) | ☐ EKG/Cardiology/Report(s) | ☐ Pathology Report(s) | ☐ Radiology Reports/Image(s) |
| ☐ Emergency Record(s) | ☐ Itemized Billing Statement(s) | ☐ Patient Medication(s) | ☐ Treatment Plan(s) |
| ☐ Discharge Summary | ☐ Nurses Notes | ☐ Clinic Records | ☐ Therapy Records |
| ☐ Abstract | ☐ Other (specify): _____ | | |

**NOTE:** *This form MAY NOT BE used to release Psychotherapy Notes*

## Drug and/or Alcohol Abuse, and/or Psychiatric, and Communicable/Non-Communicable Diseases

I understand if my medical or billing record contains information in reference to drug and/or alcohol abuse or treatment, psychiatric care, communicable and/or non communicable diseases including but not limited to hepatitis, gonorrhea, syphilis and/or other sensitive information, I agree to its release. *Check One:* ☐ YES ☐ NO

*Form continues on back side.*

MRC_4969 (3/16/15) Page 1 of 2

## HIV/AIDS Records Release

I understand if my medical or billing record contains information in reference to HIV/AIDS (Human Immunodeficiency Virus/Acquired Immunodeficiency Syndrome) testing and/or treatment, I agree to its release. *Check One:* ☐ **YES** ☐ **NO**

## Time Limit & Right to Revoke Authorization

Except to the extent that action has already been taken in reliance on this authorization I can revoke this authorization at any time. Unless revoked, this authorization will expire on the following date or event _____
or not to exceed 1 year from date of signature. Indicating "any and all" records to be released will only include all records through the date the patient or patient representative signs this authorization as long as the authorization is not expired or revoked.

## Re-disclosure

I understand the information disclosed by this authorization may be subject to re-disclosure by the recipient and no longer protected by the Health Insurance Portability and Accountability Act (HIPAA) of 1996 or state statute.

## Right to Refuse

I understand that I do not have to sign this Authorization, and my treatment or payment for services will not be denied if I do not sign.

## Signature of Patient or Personal Representative Who May Request Disclosure

**I understand there may be a charge for copying my records. State law governs what the Releasing Entity may charge.** I have read this form, understand and agree to the uses and disclosures of information as described in this Authorization. I understand that refusing to sign this form does not stop disclosure of health information that has occurred prior to revocation or that is otherwise permitted by law without my specific authorization or permission, including disclosures to covered entities as provided by State statute and/or 45 CFR §164.502(a)(1). I hereby knowingly and voluntarily authorize Mercy Health to use and disclose the protected health information specified above.


_____          _____          _____
*Signature of individual or personal representative*          *Date*          *Time*

Printed name of individual's personal representative, if applicable: _____

Rationale for serving as personal representative to the individual *(e.g., parent, legal guardian)*:

_____

_____

_____

Witness Signature (where legally required): _____

_____

Verified by *(OFFICE USE ONLY)*: _____

Identity of Requestor Verified *(OFFICE USE ONLY)* via:
   ☐ Photo ID   ☐ Matching Signature   ☐ Other, specify: _____

MRC_4969 (3/16/15) Page 2 of 2

LIN00595



**HealthPort**
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

# HealthPort
## INVOICE

Invoice #: **0171205265**
Date: **6/26/2015**
Customer #: 1397130

**Ship to:**

MEAGAN HAKE
LINCOLN FINANCIAL GROUP
PO BOX 2609
OMAHA, NE 68103-2609

**Bill to:**

MEAGAN HAKE
LINCOLN FINANCIAL GROUP
PO BOX 2609
OMAHA, NE 68103-2609

**Records from:**

MERCY CLINICS JOPLIN
100 MERCY WAY
JOPLIN, MO 64804-4524

**Requested By:** LINCOLN FINANCIAL GROUP          **DOB:**
**Patient Name:** FLANAGAN JAMIE

| Description | Quantity | Unit Price | Amount |
|---|---|---|---|
| Basic Fee | | | 23.94 |
| Retrieval Fee | | | 0.00 |
| Per Page Copy (Paper) 1 | 4 | 0.55 | 2.20 |
| Electronic Dlvry Fee | | | 2.00 |
| Subtotal | | | 28.14 |
| Sales Tax | | | 0.00 |
| Invoice Total | | | 28.14 |
| Less Payment | | | -28.14 |
| Balance Due | | | 0.00 |

**Pay your invoice online at** www.HealthPortPay.com

Terms: Net 30 days

------------------✂------------------

**HealthPort**
P.O. Box 409875
Atlanta, GA 30384-9875
Fed Tax ID 58 - 2659941
(770) 754 - 6000

Invoice #: **0171205265**

Check # _____

Payment Amount $_____

# Please return stub with payment.
Please include invoice number on check.
To pay invoice online, please go to www.HealthPortPay.com or call (770) 754 6000.
Email questions to Collections@healthport.com.

 **Lincoln** Financial Group®

REF #665683

*118100961*

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

May 28, 2015

B/S

The Lincoln National Life
Insurance Company
Service Office:
PO Box 2609
Omaha, NE 68103-2609
toll free (800) 423-2765
www.Lincoln4benefits.com

DR DONALD HOPEWELL
RELEASE OF INFORMATION
100 MERCY WAY
JOPLIN, MO 64804

Re:  Policy Number:  00001015732600000
     Claim Number:   1130226196
     Patient:        Jamie Flanagan  PAT
     DOB:

## ATTN MED RECORDS/ROI DEPT:

We are evaluating your patient's disability claim. Please submit the requested records listed below. A signed authorization form is included.

| Documentation | Time Period |
|---|---|
| Office/Treatment Notes | 01/01/2015 to Present |
| Diagnostic Test Results | 01/01/2015 to Present |

| Qty | Description | Unit Price | Line Total |
|---|---|---|---|
|  | Processing Fee |  |  |
|  | Pages - |  |  |
|  | Actual Postage |  |  |
|  | Tax Identification Number | TIN- |  |
|  |  | Total |  |

**\*\*Please fill out all forms that are attached\*\***

Payment instructions:



- **Pre-payment:** If you require a pre-payment **we must have your Tax Identification Number (TIN) & NPI.** Note that pre-payment via check will delay payment by up to 30 days.

- **Credit Card Payment:** If you accept a credit card, **payment can be made immediately** upon receipt of your invoice.

- **Please fax this remittance form and records to 877-843-3950.**

JUN 1 2 2015

©2015 Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations

E74023803 Dr. Hopwell

LIN00597

Please contact Claim Services on our toll free line at **1-800-423-2765** with any questions regarding this request. Thank you for your cooperation.

## YOU MUST RETURN THIS COMPLETED FORM TO RECEIVE PAYMENT

Sincerely,

Meagan Hake
Assisting on behalf of Mike Machian
Clerk, Claims
The Lincoln National Life Insurance Company





**Financial Group**

The Lincoln National Life Insurance Company
PO Box 2609, Omaha, NE 68103-2609
toll free (800) 423-2765
www.LincolnFinancial.com

## AUTHORIZATION FOR RELEASE OF INFORMATION - DISABILITY

◻ Please check this box if you or your authorized representative would like to receive a copy of this form.

I the undersigned authorize any physician, medical professional, or other provider of health care services, hospital, clinic, other medical or medically related facility, to release information to The Lincoln National Life Insurance Company in connection with a claim for benefits.

**Patient Information:** (Name of Claimant Whose Information Will Be Released)
Patient Name: (Last, First, Middle)  Jamie Flanagan _____ Date of Birth: _____

Other Names Used: _____ Social Security Number _____

**Authorizations:**

Name and address of health provider or entity to release information

_____

**Description of the information to be disclosed:**

☒ Entire Medical Record, including but not limited to patient histories, office notes (EXCEPT psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and other related records sent to you by other health care providers

Other: _____

**Expiration:** This Authorization will be considered valid until the happening of the earliest following event.

1 The term of the coverage of the policy if the claim is for a health insurance benefit;

2 The duration of the claim if the claim is not for a health insurance benefit; or

3 Twelve (12) months from the date of the signature below.

**Right to Revoke:** I have the right to revoke this authorization, in writing, at any time. I understand that revocation is not effective to the extent that the Company has taken action in reliance on this authorization. To initiate revocation of this Authorization, direct all correspondence to the Company at the above checked address.

**Claimant Rights:**

1.  I understand that the information used or disclosed may be subject to re-disclosure by the recipient and may no longer be protected by federal or state law. For Colorado claims, the disclosed information may not be redisclosed or reused by the recipient under Colorado law.

2.  I understand that a photocopy of this Authorization is to be considered as valid as the original.

3.  I understand that I am entitled to receive a copy of this Authorization.

4.  I understand that this information may be released to my employer for self-insured plans only.

5.  I understand that my treatment, payment, enrollment, or eligibility for benefits will not be conditioned on whether I sign this Authorization

**Authorized Representative Information:** Complete this section if a personal representative is authorizing disclosure of the claimant's information. A copy of a power of attorney or other court-initiated document will be required, unless parent signing for patient under 18

Name (Last, First, Middle) _____ Relationship to claimant: _____

Address _____ Phone _____

**Signature/Date:** The Claimant whose information will be released or the claimant's authorized representative must sign and date this form in order to process.

Sign *Jamie Flanagan*                    Date 03/18/2015

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
GLA1053

LIN00599

Date:     6/18/2015

To:       Lincoln National Life Insurance Company
          Po Box 2609.
          Omaha. NE 68103

From:     Correspondence Coordinator
          Mercy Clinics Joplin
          100 Mercy Way
          Joplin. MO 64804-4524

Re:       REJECTION LETTER.
          Medical Records Request for Jamie Flanagan
Ref #:

Dear  Lincoln National Life Insurance Company:

We are in receipt of your request. however. the marked deficiencies does not allow us to fulfill your request.

___Letter of Representation was not included.

___Faxed requests can not be accepted.

___Unable to identify the patient. please supply SS#. and/or date of birth.

_X_The patient authoization does not meet HIPAA compliance for our facility.

___Insufficent documentation to allow another person to sign for the patient.

___Authorization signed and dated prior to the requested dates of service.

_X_Other:

Original Ink Release- Must be mailed in.
Enclosed Our Authorization Form

Sincerely.

Correspondence Coordinator
Health Information Management Department 417-556-2175

Case 3:17-cv-05060-MDH     Document 35-3     Filed 05/15/18     Page 200 of 200     LIN00600