
EXHIBIT
A

**Walton, Parnell D**

**From:** LFGAppeals
**Sent:** Wednesday, August 17, 2016 9:03 AM
**To:** SA-EMLRIP112-P
**Subject:** FW: Jamie Flanagan

**From:** Catrina Howard
**Sent:** Wednesday, August 17, 2016 10:02:57 AM (UTC-05:00) Eastern Time (US & Canada)
**To:** LFGAppeals
**Subject:** Jamie Flanagan

On May 8, 2016, I sent a letter to your company requesting a copy of my client's entire file and the curriculum vitae of experts utilized in denying Mrs. Flanagan's benefits. On June 6, 2016 I received the curriculum vitae for Joseph G. Thomas, M.D. and what is purported to be a curriculum vitae for Brandy Thomas, MA, CRC. In the June 6, 2016, with the curriculum vitae's letter you wrote "...a file copy is being created and will be sent to you once complete." To date I have received no file copy. Oddly, however, I have received a file copy c.d. with a person named Gibson on the c.d. I assume this is Gibson's records, but I cannot access the file because you utilize a password system of a Social Security number and Mrs. Flanagan's Social Security number does not open Gibson's file. I will assume the Gibson c.d. is for another case.

Our deadline to appeal the decision is October 23, 2016. To date you have not provided a copy of the entire file. I have the file from a prior request dated February 24, 2016, which consists of 612 pages. It would be very sufficient to simply provide us everything from the date of that c.d. forward. If I do not receive anything further evidencing the records from and after the date of that c.d. I am going to assume there are no further records after February 24, 2016 relevant to Mrs. Flanagan's claim and proceed to develop evidence. If later in a court action there are records from and after our appeal in February 2016 and the disc you sent on February 24, 2016, I will argue to the court your company intentionally refused to provide any further documentation used to deny Mrs. Flanagan's benefits.

Rick Vasquez

Cc: Jamie Flanagan
Cc: Reid Hastings

Catrina Howard
Law Offices of Rick Vasquez
1736 E Sunshine St. Ste 103
Springfield, Mo
65804

417-889-7735
www.rickvasquezlaw.com

1

# GR LIFE CLAIM PROFILE

**Date:** 8/21/2017  **LFG**  **Claim #:** 1140128972

| | | |
|---|---|---|
| **Insurer:** The Lincoln National Life Insurance Company | **Posted:** 6/20/2014 | **Location:** HOME |
| **Policy:** 00001015732500000 - | **Status:** CLOSED | **User ID:** HELLEB |
| Lester E. Cox Medical Center | **Business:** TRUE LIFE | |

**Close Date:** 9/3/2014  **Close Reason:** Not TD Any Occ

## Claimant Information

| | | | |
|---|---|---|---|
| **Name:** JAMIE FLANAGAN | **Phone:** (417)459-5879 | **DOB:** 4/3/1980 |
| **SSN:** ~~redacted~~ | **Sex:** F | **Hire:** 3/1/2010 |
| **Address:** 1625 MUSKY DME DRIVE | **Ins Eff:** 5/1/2013 | **Class:** 3 |
| CRANE MO 65633 USA | **Occ:** Nurse Practi | **DOT** |
| | **Salary:** $90,043.20 | **Period:** Monthly |

## Claim Information

**Special Provisions:** Optional coverage exists - see contract

**Age:** 33

**DLW:** 8/25/2013  **DOD:** 8/25/2013  **S/A:** S  **W/R:** N

**Type:** WAIVER  **Nature:** ILLNESS

**Diagnosis Pri:** 722.83  Postlaminectomy Syndrome Lumbar Region

**Sec:** 724.02  Spinal Stenosis Lumbar Region

**Recovery Date:** 4/3/2047

## Benefit Information

| | | |
|---|---|---|
| **Date Ben Begin:** | **Months Paid:** 0 | **Actual Age:** 33 |
| **Modal:** $0.00 | **Reins:** | **Reserve:** |
| **Waiver:** | **Waiver Approved:** | **Date Waiver Approved:** |
| **Face Bas:** | **Face Sup:** | **Face Vol:** |
| **Cur Bas:** | **Cur Sup:** | **Cur Vol:** |

## Policy Information

| | Basic | Supplemental | Voluntary |
|---|---|---|---|
| **Method:** | | | |
| **Min:** | | | |
| **Max:** | | | |
| **Add:** | | | |
| **Dis:** | | | |

## Offset Information

| Type | Status | Awarded | Terminated | Mo Amount | Mo Used |
|---|---|---|---|---|---|
| LI | PROCESSED | | 4/3/2047 | $181,000.00 | |
| OLI | PROCESSED | | 4/3/2047 | $70,000.00 | |

## Dependent Information

| Type | DOB | Name |
|---|---|---|

1

LIN001002

# GR LIFE CLAIM PROFILE

## Alert Information

| Status | Level | Description | Posted | Resolved |
|---|---|---|---|---|
| T | W | CHECK FOR CURRENT PREMIUM PAYMENT | 6/23/2014 | 8/4/2014 |
| T | W | VERIFY ELIM PERIOD MET, MED RECS REQUESTED & TE&E REQUESTED | 6/23/2014 | 8/4/2014 |
| T | W | CHECK WAIVER BEGIN DATE | 6/23/2014 | 8/4/2014 |
| T | W | UPDATE LTD WITH AN ACTIVITIES CHECK | 6/23/2014 | 8/4/2014 |

## Action Plan

\*\*\* Nat'l Acct Grp: Per Grid: LI is ER pd, OLI/ODLI is EE pd, Josh Evans @ joshua.evans@coxhealth.com @ (417) 269-6528, initial calls are not req'd, can email GRP when/if doc is needed & determination of cl & Policy has 12 month own occ wording. \*\*\*

\*\*\* Clmt's Email: jamieandjason0306@gmail.com \*\*\*

\*\*\* TE&E in file & need beneficiary form as of 7/14 \*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

7/17/14 - CRB & CPH - Management review : There is no direction rationale in the action plan explaining decision path, so HIE will need to summarize a direction rationale and refer back to management review. Referred back to HIE

7/14/14 HIE - Rec'd reply email from Grp on 7/10/14 adv'ing Jamie was class 3 for life coverage, she had grp life cov in the amot of $181K, she also had Optional life cov on herself in the amt of $70K, she pd $16.66 pr month for the opt. life coverage. Prior to approving cl, sent cl to be reviewed by ODR, will f/u w/ ODR on 7/16/14. Will f/u w/ clmt on 8/25/14 for contracting wording of 12 mons own occ for an updated of her dx & tx/updated APS/med recs from 7/1/14 to current, & possible RTW. Will send approval ltrs to both clmt & grp via email once the cl has been reviewed by ODR.

7/12/14 ACV for HIE - unable to check if HIE recvd email response back from ER regarding eligibility. will leave fu on 7/14/14 for HIE to check her email

7/10/14 HIE - I contacted the grp adm Josh, I explained the nature of my call in regards to confirming life elig for Mrs. Flanagan, he advd he understood, he stated he would like to reply via email as proof of confirmation, he stated he has rec'd my previous email on 6/26/14 & he will reply either 7/10 or 7/11 becasue he has to do some research, I advd I understood. I thanked him for his time & we both ended the call. Will f/u w/ Grp on 7/14/14.

7/8/14 HIE - I tried to reach the grp adm Josh, Heather advd he call in sick today but he should return on 7/9/14, I informed her that I had previously sent him an email in regards to confirming life elig for the clmt, she advd he will reply but he would be playing catch up on 7/9/14 upon his return, she advd to allow until 7/10/14 for Josh to reply in regards to elig via email. I thanked her for her time & we both ended the call. Will f/u w/ grp on 7/10/14.

7/2/14 HIE - Rec'd incoming v/m from Grp Adm Heather adv'ing she was returning my call in regards to Ms. Flanagan Life Waiver of prem cl, she stated to c/b @ 417 380 5040. She then disconnected the call. I returned the Grp Adm's call, I explained that I was verifying Ms. Flanagan's life coverage as of her dlw of 8/25/13, salary & life benefit amt, she advd Joshua would be the one whom would anser these questions, she is his back up, she's unable to get into their system, she stated Joshua would return to work on 7/8/14 due to holiday & vacation, she advd to plz c/b on Tuesday 7/8/14 & speak w/ Joshua, I advd that I would do so, I thanked her for her time & we both ended the call. Will f/u w/ Grp on 7/8/14.

7/2/14 BRX mailed intro letter to ee for HIE

7/1/14 HIE - Rec'd incoming call from clmt, she advd she was sorry for missing my calls, I thanked her for returning my calls. I explained the nature of my call in regards to WOP-she advd she understood, I verified the clmt's ss#/add/dlw /er/occ/dob/doh/eff date of cov/dlw -she advd all is correct, she has 12th grade education & a masters degree in nursing, she advd she has trouble w/ sleeping which is one of her big issues along w/ muscle spasms/numbness & pain in her legs & feet, she has flare ups, she rec'd steroid (oral) a couple of months ago, she is seen every 3 mons, LOV was 2 mons ago, NOV is 7/29/14, she's able to drive for only 20 mins but mostly her spouse takes her where she needs to go, she doesn't need assistance w/ ADLs, she stated her dx is getting better, still has bad days, pain 9/10 sometimes or 2-3/10 is a good day, she only takes pain meds which affects her concentration & memory, she advd she does a lot of reading, watches TV, rest a lot thru out the day, not much of anything else, she just stays home, the meds she takes causes stomach issues also, & she also becomes disoriented, she

2

**LIN001003**

rest a lot w / a lot changes in positions, she also stated the meds affects her attention & alertness a lot. She can be reached via email @ jamieandjason0306@gmail.com. I explained to her this does not affect her LTD benefits, she stated she understood. I thanked her for her time & we both ended the call.

7/1/14 HIE - Tried to reach the clmt, auto rec'd v/m, left message w / nature of my call in regards to WOP, her current status of her dx & tx, advd to plz return call to (402) 361-2991. Ended call. Tried to reach the grp adm Joshua, rec'd v/m of Heather Laskey, Left message w / nature of my call in regards to confirm life efig for Ms. Jamie Flanagan, advd I had issues an email to Joshua on 6/26/14 in regards to confirming Ms. Flanagan's life elig, no reply has been rec'd at this time, advd to return call to (402) 361-2991. Ended call. Since no reply rec'd from Grp Adm Joshue via email, will allow 1 more day for reply from grp since I was able to leave a message w / Ms. Heather Laskey. Will f/u w / Grp on 7/2/14. If no reply from grp rec'd, then will send pend ltr to grp for elig.

6/26/14 HIE - Sent email to Grp Adm Joshua Evans to confirm life elig. for the clmt, will f/u w / Grp on 6/30/14. Tried to reach the clmt, phone rang & rang, no v/m picked up, unable to leave a message, disconnected call. Will f/u w / clmt on 6/30/14.

Jamie Flanagan Cl # 1140128972
PATH:6/26/14 HIE - Conduct initial call to clmt & send email to Grp to confirm life elig due to unable to locate clmt on any census(s) in AWD. Ck'd LTD cl, LTD cl was overturned on 2nd appeal & cl was approved & LTD has a f/u set for 9/19/14 w / the clmt.
ASSESSMENT:33 yr old Female, Nurse practitioner, DLW 8/25/13, Dx'd w / post laminectomy syndrome lumbar region & spinal stenosis lumber region. Approving cl due to contract wording for own occ of 12 mons due to the clmt, & the clmt has failed conservative txs after sx was performed on 4/11, her oswestry score was 64%, her right less is worse than left, she has numbness/burning down both legs, ache in her calves, feels weakness, spasms in her back w / stabbing/aching, cannot put weight on her right hip, pain in shoulder/elbow s/wrist, cannot drive more than 30 mins, & her pain progresses w / activity. spondylolisthesis w / failed fusion & nerve root scarring & failed spinal cord stimulator.
SUMMARY:33 yr old Female, Nurse practitioner, DOH 3/1/10, WP-0 days, the DOH/membership, Eff. 5/1/13, DLW 8/25/13, Dx'd w / post laminectomy syndrome lumbar region & spinal stenosis lumber region. She was dx'd w / spondylolisthesis along w / failed fusion & nerve root scarring & failed spinal cord stimulator.
MEDICAL FINDINGS:Dx'd w / post laminectomy syndrome lumbar region & spinal stenosis lumber region.
AWD dated 11/15/13: ER's portion of cl: doh 3/1/10, insured 5/1/10, 40 hrs, nurse practitioner, dlw 8/23/13, pd $43.29 pr hr, pr Grp Adm Judy Hampton on 11/15/13. Auth form signed & dated by clmt on 11/10/13. EE's portion of cl: nurse practitioner, tx'ing Dr(s): Diane Cornelison (neuro/pain mgt), Charles Mace (neuro), Donald Hopewell (neuro/pain mgt), Wayne Wallender (anestesiat/pain mgt), Knox (FP), I. Winkler (rheumatology), Glady Jacob (neuro), Thomas Woodward ( M), Barbara Podovoovich (pain/psych), hospitalized 4/1/11-4/4/11, pr clmt as of 11/10/13. APS-dx'd w / post lami syndrome lumber & spinal stenosis, & chronic pain. Low back pain w / pain spreads into lower extremities, normal physical exam/x-rays, CT/MRI, spondylolisthesis w / failed fusion & nerve root scarring. Symptoms have been constant since 8/10, 1st OV 10/6/10, pt unable to work 1/1/13, LOV 10/31/13, pt seen every 3 mons, failed lumbar fusion on 4/1/11, tx: epidurals/PT w / no benefit, spondylolisthesis w / failed fusion & nerve root scarring R&Ls: pain increased thru the day, weak-unable to control w / pain meds, work is unlimited ability to rest/take breaks, this will progress overtime, pt has achieved max medical improvement, sit/stand/walk-unqualifiable. Expect pt to return to prior level of functioning-never, recommend voc rehab yes, pr Dr. Donald Hopewell (neuro/pain) on 11/17/13. Med recs dated 10/8/10 thru 10/31/13: 8/15/13 - pot seen for low back pain & evaluation for SCS as req'd by Dr. Cornelison, pain across lower lumbar spine w / radiation into bilateral hips, posterior & lateral extremities bilaterally, her sx have been present since 8/10 w / no known accident or injury as cause, had previous lumbar fusion of L5_S1 by Dr. Mace in 4/11, she currently see's Dr. Hopewell for pain mgt, however Dr. Cornelison has performed the injections. Pt has aching, throbbing, burning/hot, continuous numbness/tingling. FBSS-w / most of her pain in LEs, chronic pain syndrome, & spondylolithsis, pt is suffering from significant epidural fibrosis & is on high dose narcotics, despite her current conservative txs for this, she is in significant pain, recommended SCS, dual lead scs trial. 9/19/13 - pt seen for weakness in legs, no true motor deficits, sensation not motor pnonomena?, pain worse w / prolonged position in back, comfortable in chair, neuro exam showed normal, f/u in 3 mons. 10/31/13 - lumbar spondylsois w / post lemi syndrome, pt req'd cord stimulator trial, no benefit from trial. Neurologic exam showed normal, trial of methadone for morphine 10mg, f/u in 3 mons.
FCE was performed on 4/22/14 - showed upper extremity ROM & strength was WNL/WFL & 5/5, work level less than sedentary, 7 lbs restriction, oswestry score was 64%, this is a ?rippled perception of disability, right less is worse than left, numbness/burning down both legs, ache in her calves, feels weakness, spasms in her back w / stabbing/aching, pt feels as if her back is crushing if she stands, cannot put weight on her right hip, pain in shoulder/elbow s/wrist, cannot drive more than 30 mins, her pain progresses w / activity.
Peer review performed on 6/9/14 by Dr. Meghana Karande indicated lumbar deg. Disease s/p lumbar fusion & chronic but stable pain, R&Ls would include: clmt may stand/walk up to 2 hrs each out of 8 hrs w / normal breaks, sit up to 6 out of 8 hrs w / normal breaks, she would require position changes for 5 mins every hr, the clmt may lefit/carry/push & pull up to 20 lbs occasionally & 10 lbs freq, reach would not be restriced in alldirections, may climb stairs, kneed, bend, stoop, squat, crouch occasionally, climbing ropes, ladders & scaffolds & crawl would be never, handling/fingering/feeling would be unrestricted. The R&Ls would apply form 11/24/13 & onwards these would likely be permanent.
EDUCATION/WORK EXPERIENCE:Nurse practitioner (med occ), college w / MA degree & NP.

3

# GR LIFE CLAIM PROFILE

BILLING/CENSUS (SELF BILLED ONLY):Self-billed Grp, Grp pd 3/1/14-3/31/14. Sold census is in AWD & Grp will be able to send in screen prints showing BAE, LI benefits & any OLI/ODLI proof. Unable to locate clmt on any 7 census(s) in AWD, will get confirmation from Grp.
BENEFIT:Class 3: 2 x BAE, rounded to the next higher $1,000; subject to a minimum of $10K & a max of $300K.
$90,043.20 x 2 = $180,086.40 rounded to the next higher $1,000 = $181,000.

OLI - pending to confirm if the clmt elected OLI coverage w / Grp.
EOI NEEDED?  No, not a late entrant.
AGE REDUCTIONS (IF NOT FOUND IN SYSTEM):Reduce by 35% @ 65 & 20% @ 70.
DEPENDENT VERIFICATION:                    Spouse:Can waiver ODLI coverages, pending to confirm if the clmt elected ODLI coverages w /
Grp.
Child:
PERTINENT CONTRACT NFO:AWD, dated 7/1/13, pgs 1, 3-14, 24, 27-28, & 30-31 of 40.

TD before reaching age 60, for at least 6 mons in a row, & terms at age 67.

TD means an insured person is unable, due to sickness or injury, to perform the material & substantial duties of 1) the insured person's regular occ during the 1st 12 mons of disability; or 2) any occ for which the insured person is or becomes reasonably fitted by reason of training, education, experience, age & physical & mental capacity, after the 1st 12 mons of disability.

6/24/14 CPH - Reassigned claim from J9B to HIE.

LIN001005
Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 5 of 64

# Chronological Activity List

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Claimant:** | JAMIE FLANAGAN | | | **Occupation:** | Nurse Practi | **Months Dis:** | 47 |
| **SSN:** | 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 | **DOB:** | 4/3/1980 | **Posted:** | 6/20/2014 | **Months Pd:** | 0 |
| **Claim #:** | 1140128972 | **DOD:** | 8/25/2013 | **Ben:** | | | |
| **Coverage:** | GR LIFE | **Status:** | CLOSED | **Close Date:** | 9/3/2014 | **Assignee:** | HELLEB |
| **Policy Holder:** | Lester E. Cox Medical Center | | | | | **Deceased:** | |
| **Case Mgr. Status:** INV 7/23/2014 | | | | **Close Code:** | Not TD Any Occ | | |

| Posted Date | Category | Seq | Item | | Status | User |
|---|---|---|---|---|---|---|

Action Plan

*** Nat'l Acct Grp: Per Grid: LI is ER pd, OLI/ODLI is EE pd, Josh Evans @ joshua.evans@coxhealth.com @ (417) 269-6528, initial calls are not req'd, can email GRP when/if doc is needed & determination of cl & Policy has 12 month own occ wording. *** *** Clmt's Email: jamieandjason0306@gmail.com ****** TE&E in file & need beneficiary form as of 7/14 ***********************************************************************************7/17/14 - CRB & CPH - Management review : There is no direction rationale in the action plan explaining decision path, so HIE will need to summarize a direction rationale and refer back to management review . Referred back to HIE7/14/14 HIE - Rec'd reply email from Grp on 7/10/14 adv'ing Jamie was class 3 for life coverage, she had grp life cov in the amot of $181K, she also had Optional life cov on herself in the amt of $70K, she pd $16.66 pr month for the opt. life coverage. Prior to approving cl, sent cl to be reviewed by ODR, will f/u w/ ODR on 7/16/14. Will f/u w/ clmt on 8/25/14 for contracting wording of 12 mons own occ for an updated of her dx & tx/updated APS/med recs from 7/1/14 to current, & possible RTW. Will send approval ltrs to both clmt & grp via email once the cl has been reviewed by ODR.7/12/14 ACV for HIE - unable to check if HIE recvd email response back from ER regarding eligibility. will leave fu on 7/14/14 for HIE to check her email7/10/14 HIE - I contacted the grp adm Josh, I explained the nature of my call in regards to confirming life elig for Mrs. Flanagan, he advd he understood, he stated he would like to reply via email as proof of confirmation, he stated he has rec'd my previous email on 6/26/14 & he will reply either 7/10 or 7/11 becasue he has to do some research, I advd I understood. I thanked him for his time & we both ended the call. Will f/u w/ Grp on 7/14/14. 7/8/14 HIE - I tried to reach the grp adm Josh, Heather advd he call in sick today but he should return on 7/9/14, I informed her that I had previously sent him an email in regards to confirming life elig for the clmt, she advd he will reply but he would be playing catch up on 7/9/14 upon his return, she advd to allow until 7/10/14 for Josh to reply in regards to elig via email. I thanked her for her time & we both ended the call. Will f/u w/ grp on 7/10/14. 7/2/14 HIE - Rec'd incoming v/m from Grp Adm Heather adv'ing she was returning my call in regards to Ms. Flanagan Life Waiver of prem cl, she stated to c/b @ 417 380 5040. She then disconnected the call. I returned the Grp Adm's call, I explained that I was verifying Ms. Flanagan's life coverage as of her dlw of 8/25/13, salary & life benefit amt, she advd Joshua would be the one whom would anser these questions, she is his back up, she's unable to get into their system, she stated Joshua would return to work on 7/8/14 due to holiday & vacation, she advd to plz c/b on Tuesday 7/8/14 & speak w/ Joshua, I advd that I would do so, I thanked her for her time & we both ended the call Will f/u w/ Grp on 7/8/14. 7/2/14 BRX mailed intro letter to ee for HIE7/1/14 HIE - Rec'd incoming call from clmt, she advd she was sorry for missing my calls, I thanked her for returning my calls. I explained the nature of my call in regards to WOP-she advd she understood, I verified the clmt's ss#/add/dlw/er/occ/dob/doh/eff date of cov/dlw-she advd all is correct, she has 12th grade education & a masters degree in nursing, she advd she has trouble w/ sleeping which is one of her big issues along w/ muscle spasms/numbness & pain in her legs & feet, she has flare ups, she rec'd steroid (oral) a couple of months ago, she is seen every 3 mons, LOV was 2 mons ago, NOV is 7/29/14, she's able to drive for only 20 mins but mostly her spouse takes her where she needs to go, she doesn't need assistance w/ ADLs, she stated her dx is getting better, still has bad days, pain 9/10 sometimes or 2-3/10 is a good day, she only takes pain meds which affects her concentration & memory, she advd she does a lot of reading, watches TV, rest a lot thru out the day, not much of anything else, she just stays home, the meds she takes causes stomach issues also, & she also becomes disoriented, she rest a lot w/ a lot changes in positions, she also stated the meds affects her attention & alertness a lot. She can be reached via email @ jamieandjason0306@gmail.com. I explained to her this does not affect her LTD benefits, she stated she understood. I thanked her for her time & we both ended the call. 7/1/14 HIE - Tried to reach the clmt, auto rec'd v/m, left message w/ nature of my call in regards to WOP, her current status of her dx & tx, advd to plz return call to (402) 361-2991. Ended call. Tried to reach the grp adm Joshua, rec'd v/m of Heather Laskey, Left message w/ nature of my call in regards to confirm life elig for Ms. Jamie Flanagan, advd I had issues an email to Joshua on 6/26/14 in regards to confirming Ms. Flanagan's life elig, no reply has been rec'd at this time, advd to return call to (402) 361-2991. Ended call. Since no reply rec'd from Grp Adm Joshue via email, will allow 1 more day for reply from grp since I was able to leave a message w/ Ms. Heather Laskey. Will f/u w/ Grp on 7/2/14. If no reply from grp rec'd, then will send pend ltr to grp for elig. 6/26/14 HIE - Sent email to Grp Adm Joshua Evans to confirm life elig. for the clmt, will f/u w/ Grp on 6/30/14. Tried to reach the clmt, phone rang & rang, no v/m picked up, unable to leave a message, disconnected call. Will f/u w/ clmt on 6/30/14. Jamie Flanagan Cl # 1140128972PATH:6/24/14 HIE - Conduct initial call to clmt & send email to Grp to confirm life elig due to unable to locate clmt on any census(s) in AWD. Ck'd LTD cl, LTD cl was overturned on 2nd appeal & cl was approved & LTD has a f/u set for 9/19/14 w/ the clmt. ASSESSMENT:33 yr old Female, Nurse practitioner, DLW 8/25/13, Dx'd w/

LIN001006

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 6 of 64

post laminectomy syndrome lumbar region & spinal stenosis lumber region. Approving cl due to contract wording for own occ of 12 mons due to the clmt, & the clmt has failed conservative txs after sx was performed on 4/11, her oswestry score was 64%, her right less is worse than left, she has numbness/burning down both legs, ache in her calves, feels weakness, spasms in her back w/ stabbing/aching, cannot put weight on her right hip, pain in shoulder/elbows/wrist, cannot drive more than 30 mins, & her pain progresses w/ activity. spondylolisthesis w/ failed fusion & nerve root scarring & failed spinal cord stimulator.SUMMARY:33 yr old Female, Nurse practitioner, DOH 3/1/10, WP-0 days, the DOH/membership, Eff. 5/1/13, DLW 8/25/13, Dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region. She was dx'd w/ spondylolisthesis along w/ failed fusion & nerve root scarring & failed spinal cord stimulator. MEDICAL FINDINGS:Dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region.AWD dated 11/15/13: ER's portion of cl: doh 3/1/10, insured 5/1/10, 40 hrs, nurse practitioner, dlw 8/23/13, pd $43.29 pr hr, pr Grp Adm Judy Hampton on 11/15/13. Auth form signed & dated by clmt on 11/10/13. EE's portion of cl: nurse practitioner, tx'ing Dr(s): Diane Cornelison (neuro/pain mgt), Charles Mace (neuro), Donald Hopewell (neuro/pain mgt), Wayne Wallender (anestesiat/pain mgt), Knox (FP), I. Winkler (rheumatology), Glady Jacob (neuro), Thomas Woodward (IM), Barbara Podovoovich (pain/psych), hospitalized 4/1/11-4/4/11, pr clmt as of 11/10/13. APS-dx'd w/ post lami syndrome lumber & spinal stenosis, & chronic pain. Low back pain w/ pain spreads into lower extremities, normal physical exam/x-rays, CT/MRI, spondylolisthesis w/ failed fusion & nerve root scarring. Symptoms have been constant since 8/10, 1st OV 10/6/10, pt unable to work 1/1/13, LOV 10/31/13, pt seen every 3 mons, failed lumbar fusion on 4/1/11, tx: epidurals/PT w/ no benefit, spondylolisthesis w/ failed fusion & nerve root scarring R&Ls: pain increased thru the day, weak-unable to control w/ pain meds, work is unlimited ability to rest/take breaks, this will progress overtime, pt has achieved max medical improvement, sit/stand/walk-unqualifiable. Expect pt to return to prior level of functioning-never, recommend voc rehab yes, pr Dr. Donald Hopewell (neuro/pain) on 11/17/13. Med recs dated 10/8/10 thru 10/31/13: 8/15/13 - pot seen for low back pain & evaluation for SCS as req'd by Dr. Cornelison, pain across lower lumbar spine w/ radiation into bilateral hips, posterior & lateral extremities bilaterally, her sx have been present since 8/10 w/ no known accident or injury as cause, had previous lumbar fusion of L5_S1 by Dr. Mace in 4/11, she currently see's Dr. Hopewell for pain mgt, however Dr. Cornelison has performed the injections. Pt has aching, throbbing, burning/hot, continuous numbness/tingling. FBSS-w/ most of her pain in LE's, chronic pain syndrome, & spondylolithsis, pt is suffering from significant epidural fibrosis & is on high dose narcotics, despite her current conservative txs for this, she is in significant pain, recommended SCS, dual lead scs trial. 9/19/13 - pt seen for weakness in legs, no true motor deficits, sensation not motor pnonomena?, pain worse w/ prolonged position in back, comfortable in chair, neuro exam showed normal, f/u in 3 mons. 10/31/13 - lumbar spondylsois w/ post lemi syndrome, pt req'd cord stimulator trial, no benefit from trial. Neurologic exam showed normal, trial of methadone for morphine 10mg, f/u in 3 mons.FCE was performed on 4/22/14 - showed upper extremity ROM & strength was WNL/WFL & 5/5, work level less than sedentary, 7 lbs restriction, oswestry score was 64%, this is a ?rippled perception of disability, right less is worse than left, numbness/burning down both legs, ache in her calves, feels weakness, spasms in her back w/ stabbing/aching, pt feels as if her back is crushing if she stands, cannot put weight on her right hip, pain in shoulder/elbows/wrist, cannot drive more than 30 mins, her pain progresses w/ activity. Peer review performed on 6/9/14 by Dr. Meghana Karande indicated lumbar deg. Disease s/p lumbar fusion & chronic but stable pain, R&Ls would include: clmt may stand/walk up to 2 hrs each out of 8 hrs w/ normal breaks, sit up to 6 out of 8 hrs w/ normal breaks, she would require position changes for 5 mins every hr, the clmt may lefit/carry/push & pull up to 20 lbs occasionally & 10 lbs freq, reach would not be restriced in alldirections, may climb stairs, kneed, bend, stoop, squat, crouch occasionally, climbing ropes, ladders & scaffolds & crawl would be never, handling/fingering/feeling would be unrestricted. The R&Ls would apply form 11/24/13 & onwards these would likely be permanent. EDUCATION/WORK EXPERIENCE:Nurse practitioner (med occ), college w/ MA degree & NP. BILLING/CENSUS (SELF BILLED ONLY):Self-billed Grp, Grp pd 3/1/14-3/31/14. Sold census is in AWD & Grp will be able to send in screen prints showing BAE, LI benefits & any OLI/ODLI proof. Unable to locate clmt on any 7 census(s) in AWD, will get confirmation from Grp. BENEFIT:Class 3: 2 x BAE, rounded to the next higher $1,000; subject to a minimum of $10K & a max of $300K.$90,043.20 x 2 = $180,086.40 rounded to the next higher $1,000 = $181,000. OLI - pending to confirm if the clmt elected OLI coverage w/ Grp. EOI NEEDED? No, not a late entrant. AGE REDUCTIONS (IF NOT FOUND IN SYSTEM):Reduce by 35% @ 65 & 20% @ 70. DEPENDENT VERIFICATION: Spouse:Can waiver ODLI coverages, pending to confirm if the clmt elected ODLI coverages w/ Grp. Child:PERTNENT CONTRACT INFO:AWD, dated 7/1/13, pgs 1, 3-14, 24, 27-28, & 30-31 of 40. TD before reaching age 60, for at least 6 mons in a row, & terms at age 67.TD means an insured person is unable, due to sickness or injury, to perform the material & substantial duties of 1) the insured person's regular occ during the 1st 12 mons of disability; or 2) any occ for which the insured person is or becomes reasonably fitted by reason of training, education, experience, age & physical & mental capacity, after the 1st 12 mons of disability. 6/24/14 CPH - Reassigned claim from J9B to HIE.

7/24/2014 12:46:17 PM   Referrals        1        Senior Review                                    Initial         HIELLEB
Rec'd from ODR on 7/17/14 was advd to complete rationale explaining decision path: Summarized direction rationale: Approving cl due to contracting wording of 12 mons own occ & clmt is a 33 yr old female, Nurse practitioner, DLW 8/25/13, she was dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed

LIN001007

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 7 of 64

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

fusion, she has failed conservative txs after sx was performed on 4/11, her oswestry score was 64%, her right less is worse than her left, she has numbness & burning down both legs, aches in calves, weakness, spasms in back w/ stabbing/aching pains, she's not able to put weight on right hip, she also has pain in shoulder/elbow s/wrist, unable to drive more than 30 mins, & her pain progresses w/ activity, failed spinal cord stimulator, she rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, sit/stand/walk-unqualifiable, & she was recommend voc rehab.   - Senior Review - HIELLEB - Jul 24, 2014 12:49:27 pm

Reviewed file for Management Review. Referred fiel back to HIELLEB to set DAR with needed information including f/u path. Once completed review back to SR1 for additional review . - Senior Review - CXPHILL - Aug 06, 2014 02:38:13 pm
Made corrections, returned call back to ODR for further review , will f/u w/ ODR on 8/13/14.   - Senior Review - HIELLEB - Aug 11, 2014 04:42:46 pm
CXPHILL notes indicate to return to SR1 not CXPHILL, made correction  - Senior Review - HIELLEB - Aug 13, 2014 04:31:08 pm

Reviewed file for management review and recommend defined waiver approval based upon policy 12-month OO wording and r/I's provided. Refer to PEER Review in LTD claim showing the r/I's would not prevent clmt from working in some sedentary capacity. Referred back to HIELLEB for continued handling.   - Senior Review - CXPHILL - Aug 28, 2014 01:19:25 pm

| 9/3/2014 | Referrals | 1 | Senior Review | Completed | HIELLEB |

Rec'd from ODR on 7/17/14 was advd to complete rationale explaining decision path: Summarized direction rationale: Approving cl due to contracting wording of 12 mons own occ & clmt is a 33 yr old female, Nurse practitioner, DLW 8/25/13, she was dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx was performed on 4/11, her oswestry score was 64%, her right less is worse than her left, she has numbness & burning down both legs, aches in calves, weakness, spasms in back w/ stabbing/aching pains, she's not able to put weight on right hip, she also has pain in shoulder/elbow s/wrist, unable to drive more than 30 mins, & her pain progresses w/ activity, failed spinal cord stimulator, she rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, sit/stand/walk-unqualifiable, & she was recommend voc rehab.   - Senior Review - HIELLEB - Jul 24, 2014 12:49:27 pm

Reviewed file for Management Review. Referred fiel back to HIELLEB to set DAR with needed information including f/u path. Once completed review back to SR1 for additional review . - Senior Review - CXPHILL - Aug 06, 2014 02:38:13 pm
Made corrections, returned call back to ODR for further review , will f/u w/ ODR on 8/13/14.   - Senior Review - HIELLEB - Aug 11, 2014 04:42:46 pm
CXPHILL notes indicate to return to SR1 not CXPHILL, made correction  - Senior Review - HIELLEB - Aug 13, 2014 04:31:08 pm

Reviewed file for management review and recommend defined waiver approval based upon policy 12-month OO wording and r/I's provided. Refer to PEER Review in LTD claim showing the r/I's would not prevent clmt from working in some sedentary capacity. Referred back to HIELLEB for continued handling.   - Senior Review - CXPHILL - Aug 28, 2014 01:19:25 pm

| 8/11/2014 4:37:10 PM | Summary/Assessment/P:1h | | 33 yr old female, Nurse practitioner, DLW 8/25/13, she was | Requested | HIELLEB |

Summary Notes
33 yr old female, Nurse practitioner, DLW 8/25/13, she was dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx was performed on 4/11 - HIELLEB - Aug 11, 2014 04:41:41 pm
Assessment Notes
the clmt was dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx was performed on 4/11, her oswestry score was 64%, her right less is worse than her left, she has numbness & burning down both legs, aches in calves, weakness, spasms in back w/ stabbing/aching pains, not able to put weight on right hip, has pain in shoulder/elbow s/wrist, unable to drive more than 30 mins, & her pain progresses w/ activity, failed spinal cord stimulator, she has rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, sit/stand/walk-unqualifiable, & she was recommend voc rehab.   - HIELLEB - Aug 11, 2014 04:41:41 pm
Path Notes
Approving cl due to contracting wording of 12 mons for own occ & the clmt was dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx

LIN001008

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

w as performed, she failed spinal cord stimulator, she rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, R&Ls: sit/stand/w alk-unqualifiable, & she w as recommend voc rehab. Sent cl back to ODR for further review, w ill f/u w/ ODR on 8/13/14.    - HIELLEB - Aug 11, 2014 04:41:41 pm

--ODR review is not yet complete, setting DAR out another 2 w eeks. - A1CAMPB - Aug 20, 2014 03:22:11 pm
Rec'd from ODR review w as advd' to approve for defined w aiver due to contract w ording & peer review performed. Approving cl for defined w aiver from dlw to 12 month ow n occ w ording to 8/25/14, peer review performed doesn't support the clmt of being TDAO. Send defined w aiver approval ltr to clmt via regular mail & grp's defined w aiver via email.   - HIELLEB - Sep 03, 2014 03:34:44 pm

| 9/3/2014 | Summary/Assessment/P:1h | | 33 yr old female, Nurse practitioner, DLW 8/25/13, she w as | Completed | HIELLEB |

Summary Notes
33 yr old female, Nurse practitioner, DLW 8/25/13, she w as dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx w as performed on 4/11 - HIELLEB - Aug 11, 2014 04:41:41 pm
Assessment Notes
the clmt w as dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx w as performed on 4/11, her osw estry score w as 64%, her right less is w orse than her left, she has numbness & burning dow n both legs, aches in calves, w eakness, spasms in back w/ stabbing/aching pains, not able to put w eight on right hip, has pain in shoulder/elbow s/w rist, unable to drive more than 30 mins, & her pain progresses w/ activity, failed spinal cord stimulator, she has rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, sit/stand/w alk-unqualifiable, & she w as recommend voc rehab.   - HIELLEB - Aug 11, 2014 04:41:41 pm
Path Notes
Approving cl due to contracting w ording of 12 mons for ow n occ & the clmt w as dx'd w/ post laminectomy syndrome lumbar region & spinal stenosis lumber region w/ failed fusion, she has failed conservative txs after sx w as performed, she failed spinal cord stimulator, she rec'd epidurals & PT w/ no benefits, & she has achieved max medical improvement, R&Ls: sit/stand/w alk-unqualifiable, & she w as recommend voc rehab. Sent cl back to ODR for further review, w ill f/u w/ ODR on 8/13/14.    - HIELLEB - Aug 11, 2014 04:41:41 pm

--ODR review is not yet complete, setting DAR out another 2 w eeks. - A1CAMPB - Aug 20, 2014 03:22:11 pm
Rec'd from ODR review w as advd' to approve for defined w aiver due to contract w ording & peer review performed. Approving cl for defined w aiver from dlw to 12 month ow n occ w ording to 8/25/14, peer review performed doesn't support the clmt of being TDAO. Send defined w aiver approval ltr to clmt via regular mail & grp's defined w aiver via email.   - HIELLEB - Sep 03, 2014 03:34:44 pm

| 9/3/2014 | Documents/Mail | 2 | Waiver Defined Approval-Group | Completed | hielleb |

Waiver Defined Approval-Group

| 9/3/2014 | Documents/Mail | 1 | Waiver Defined Approval Claimant | Completed | hielleb |

Waiver Defined Approval Claimant

| 7/14/2014 | Claim Tasks | 6 | Terminate Claim / Coverage | Requested | HIELLEB |

LIFEDOCS Investigation Type: Term Date

Terms at age 67

Item Closed w ith Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm

| 9/3/2014 | Claim Tasks | 6 | Terminate Claim / Coverage | Completed | HIELLEB |

LIFEDOCS Investigation Type: Term Date

Terms at age 67

Item Closed w ith Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm

| 7/14/2014 | Claim Tasks | 4 | Review Claim | Requested | HIELLEB |

LIFEDOCS Investigation Type: Other

Source: HIE - ODR bas & oli = $251K

Date Requested: 14-JUL-14

LIN001009

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

7/14/14 HIE - sent cl to be reviewed by ODR, will f/u w/ ODR on 7/16/14.
Sent cl back to ODR w/ approval rationale, will f/u w/ ODR on 7/28/14. - HIELLEB - Jul 24, 2014 12:42:11 pm
Not rec'd at this time from ODR, will continue to f/u w/ ODR in 1 wk on 8/4/14. - HIELLEB - Jul 28, 2014 05:32:04 pm
cl still ODR review, will continue to f/u w/ ODR on 8/6/14. - HIELLEB - Aug 04, 2014 04:38:03 pm

Spoke w/ AEW, she advd if the clm is still in TE1 initials, yes, it is still being rev'd by ODR, will f/u w/ ODR in 1 wk on
8/13/14. - HIELLEB - Aug 06, 2014 12:48:33 pm
Sent cl to be rev'd by CXPHILL however it should have been placed into SR1 initials, will continue to f/u w/ ODR
review on 8/15/14. - HIELLEB - Aug 13, 2014 04:31:50 pm
Cl is still in ODR review at this time, will continue to f/u w/ ODR on 8/20/14. - HIELLEB - Aug 18, 2014 01:47:56 pm

--Claim is still in ODR at this time, setting f/u out 1 week. - A1CAMPB - Aug 20, 2014 03:23:05 pm
The clm is still in ODR, will continue to f/u in 1 wk on 9/3/14. - HIELLEB - Aug 27, 2014 03:11:26 pm

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm

| 9/3/2014 | Claim Tasks | 4 | Review Claim | Completed | HIELLEB |

LIFEDOCS Investigation Type: Other

Source: HIE - ODR bas & oll = $251K

Date Requested: 14-JUL-14

7/14/14 HIE - sent cl to be reviewed by ODR, will f/u w/ ODR on 7/16/14.
Sent cl back to ODR w/ approval rationale, will f/u w/ ODR on 7/28/14. - HIELLEB - Jul 24, 2014 12:42:11 pm
Not rec'd at this time from ODR, will continue to f/u w/ ODR in 1 wk on 8/4/14. - HIELLEB - Jul 28, 2014 05:32:04 pm
cl still ODR review, will continue to f/u w/ ODR on 8/6/14. - HIELLEB - Aug 04, 2014 04:38:03 pm

Spoke w/ AEW, she advd if the clm is still in TE1 initials, yes, it is still being rev'd by ODR, will f/u w/ ODR in 1 wk on
8/13/14. - HIELLEB - Aug 06, 2014 12:48:33 pm
Sent cl to be rev'd by CXPHILL however it should have been placed into SR1 initials, will continue to f/u w/ ODR
review on 8/15/14. - HIELLEB - Aug 13, 2014 04:31:50 pm
Cl is still in ODR review at this time, will continue to f/u w/ ODR on 8/20/14. - HIELLEB - Aug 18, 2014 01:47:56 pm

--Claim is still in ODR at this time, setting f/u out 1 week. - A1CAMPB - Aug 20, 2014 03:23:05 pm
The clm is still in ODR, will continue to f/u in 1 wk on 9/3/14. - HIELLEB - Aug 27, 2014 03:11:26 pm

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm

| 7/14/2014 | Claim Tasks | 5 | Open Review | Requested | HIELLEB |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Source: 12 mons own occ

Date Requested: 14-JUL-14

7/14/14 HIE - F/u w/ clm ton 8/25/14 for contracting wording of 12 mons own occ for an updated of her dx &
tx/updated APS/med recs from 7/1/14 to current, & possible RTW.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm

| 8/20/2014 | Claim Tasks | 5 | Open Review | Completed | HIELLEB |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Source: 12 mons own occ

Date Requested: 14-JUL-14

7/14/14 HIE - F/u w/ clm ton 8/25/14 for contracting wording of 12 mons own occ for an updated of her dx &
tx/updated APS/med recs from 7/1/14 to current, & possible RTW.

LIN001010

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 10 of 64

# Chronological Activity List

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| | Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm | | | | |
| 8/18/2014 8:15:53 PM | Claim Tasks | 7 | 45 Day.Need Decision/Extension | Requested | HIELLEB |
| | Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm | | | | |
| 8/19/2014 | Claim Tasks | 7 | 45 Day.Need Decision/Extension | Completed | HIELLEB |
| | Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:52 pm | | | | |
| 6/26/2014 | Claim Tasks | 3 | Call Employer | Requested | HIELLEB |
| | LIFEDOCS Investigation Type: Employer Contact | | | | |

Date Requested: 26-JUN-14

7/14/14 HIE - Rec'd reply email from Grp on 7/10/14 adv'ing Jamie was class 3 for life coverage, she had grp life cov in the amot of $181K, she also had Optional life cov on herself in the amt of $70K, she pd $16.66 pr month for the opt. life coverage.

7/10/14 HIE - I contacted the grp adm Josh, I explained the nature of my call in regards to confirming life elig for Mrs. Flanagan, he advd he understood, he stated he would like to reply via email as proof of confirmation, he stated he has rec'd my previous email on 6/26/14 & he will reply either 7/10 or 7/11 becasue he has to do some research, I advd I understood. I thanked him for his time & we both ended the call. Will f/u w/ Grp on 7/14/14.

7/8/14 HIE - I tried to reach the grp adm Josh, Heather advd he call in sick today but he should return on 7/9/14, I informed her that I had previously sent him an email in regards to confirming life elig for the clmt, she advd he will reply but he would be playing catch up on 7/9/14 upon his return, she advd to allow until 7/10/14 for Josh to reply in regards to elig via email. I thanked her for her time & we both ended the call. Will f/u w/ grp on 7/10/14.

7/2/14 HIE - Rec'd incoming v/m from Grp Adm Heather adv'ing she was returning my call in regards to Ms. Flanagan Life Waiver of prem cl, she stated to c/b @ 417 380 5040. She then disconnected the call. I returned the Grp Adm's call, I explained that I was verifying Ms. Flanagan's life coverage as of her dlw of 8/25/13, salary & life benefit amt, she advd Joshua would be the one whom would answer these questions, she is his back up, she's unable to get into their system, she stated Joshua would return to work on 7/8/14 due to holiday & vacation, she advd to plz c/b on Tuesday 7/8/14 & speak w/ Joshua, I advd that I would do so, I thanked her for her time & we both ended the call Will f/u w/ Grp on 7/8/14.

7/1/14 HIE - Tried to reach the grp adm Joshua, rec'd v/m of Heather Laskey, Left message w/ nature of my call in regards to confirm life elig for Ms. Jamie Flanagan, advd I had issues an email to Joshua on 6/26/14 in regards to confirming Ms. Flanagan's life elig, no reply has been rec'd at this time, advd to return call to (402) 361-2991. Ended call. Since no reply rec'd from Grp Adm Joshue via email, will allow 1 more day for reply from grp since I was able to leave a message w/ Ms. Heather Laskey. Will f/u w/ Grp on 7/2/14.

6/26/14 HIE - Sent email to grp to confirm life elig for clmt for basic life & OLI coverages, will f/u w/ Grp on 6/30/14.

| | Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm | | | | |
| 7/14/2014 | Claim Tasks | 3 | Call Employer | Completed | HIELLEB |
| | LIFEDOCS Investigation Type: Employer Contact | | | | |

Date Requested: 26-JUN-14

7/14/14 HIE - Rec'd reply email from Grp on 7/10/14 adv'ing Jamie was class 3 for life coverage, she had grp life cov in the amot of $181K, she also had Optional life cov on herself in the amt of $70K, she pd $16.66 pr month for the opt. life coverage.

7/10/14 HIE - I contacted the grp adm Josh, I explained the nature of my call in regards to confirming life elig for Mrs. Flanagan, he advd he understood, he stated he would like to reply via email as proof of confirmation, he stated he has rec'd my previous email on 6/26/14 & he will reply either 7/10 or 7/11 becasue he has to do some research, I advd I understood. I thanked him for his time & we both ended the call. Will f/u w/ Grp on 7/14/14.

7/8/14 HIE - I tried to reach the grp adm Josh, Heather advd he call in sick today but he should return on 7/9/14, I informed her that I had previously sent him an email in regards to confirming life elig for the clmt, she advd he will reply but he would be playing catch up on 7/9/14 upon his return, she advd to allow until 7/10/14 for Josh to reply in

LIN001011

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 11 of 64

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

regards to elig via email. I thanked her for her time & we both ended the call. Will f/u w/ grp on 7/10/14.

7/2/14 HIE - Rec'd incoming v/m from Grp Adm Heather adv'ing she was returning my call in regards to Ms. Flanagan Life Waiver of prem cl, she stated to c/b @ 417 380 5040. She then disconnected the call. I returned the Grp Adm's call, I explained that I was verifying Ms. Flanagan's life coverage as of her dlw of 8/25/13, salary & life benefit amt, she advd Joshua would be the one whom would answer these questions, she is his back up, she's unable to get into their system, she stated Joshua would return to work on 7/8/14 due to holiday & vacation, she advd to plz c/b on Tuesday 7/8/14 & speak w/ Joshua, I advd that I would do so, I thanked her for her time & we both ended the call Will f/u w/ Grp on 7/8/14.

7/1/14 HIE - Tried to reach the grp adm Joshua, rec'd v/m of Heather Laskey, Left message w/ nature of my call in regards to confirm life elig for Ms. Jamie Flanagan, advd I had issues an email to Joshua on 6/26/14 in regards to confirming Ms. Flanagan's life elig, no reply has been rec'd at this time, advd to return call to (402) 361-2991. Ended call. Since no reply rec'd from Grp Adm Joshue via email, will allow 1 more day for reply from grp since I was able to leave a message w/ Ms. Heather Laskey. Will f/u w/ Grp on 7/2/14.

6/26/14 HIE - Sent email to grp to confirm life elig for clmt for basic life & OLI coverages, will f/u w/ Grp on 6/30/14.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/10/2014 | Telephone (OUT) | 8 | Josh | Completed | HIELLEB |

I contacted the grp adm Josh, I explained the nature of my call in regards to confirming life elig for Mrs. Flanagan, he advd he understood, he stated he would like to reply via email as proof of confirmation, he stated he has rec'd my previous email on 6/26/14 & he will reply either 7/10 or 7/11 becasue he has to do some research, I advd I understood. I thanked him for his time & we both ended the call.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/8/2014 | Telephone (OUT) | 7 | Heather | Completed | HIELLEB |

I tried to reach the grp adm Josh, Heather advd he call in sick today but he should return on 7/9/14, I informed her that I had previously sent him an email in regards to confirming life elig for the clmt, she advd he will reply but he would be playing catch up on 7/9/14 upon his return, she advd to allow until 7/10/14 for Josh to reply in regards to elig via email. I thanked her for her time & we both ended the call.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 6/26/2014 | Claim Tasks | 1 | Open Review | Requested | BRXHA3 |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Source: INTRO LTR

Date Requested: 26-JUN-14

6/26/14 HIE - Send intro ltr to clmt.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:50 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/2/2014 | Claim Tasks | 1 | Open Review | Completed | BRXHA3 |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Source: INTRO LTR

Date Requested: 26-JUN-14

6/26/14 HIE - Send intro ltr to clmt.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:50 pm

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/2/2014 | Telephone (OUT) | 6 | Heather | Completed | HIELLEB |

I returned the Grp Adm's call, I explained that I was verifying Ms. Flanagan's life coverage as of her dlw of 8/25/13, salary & life benefit amt, she advd Joshua would be the one whom would anser these questions, she is his back up, she's unable to get into their system, she stated Joshua would return to work on 7/8/14 due to holiday & vacation, she advd to plz c/b on Tuesday 7/8/14 & speak w/ Joshua, I advd that I would do so, I thanked her for her time & we both ended the call.

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|
| 7/2/2014 | Telephone (IN) | 5 | Heather | Completed | HIELLEB |

Rec'd incoming v/m from Grp Adm Heather adv'ing she was returning my call in regards to Ms. Flanagan Life Waiver

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 12 of 64

LIN001012

| Posted Date | Category | Seq | Item | Status | User |
|---|---|---|---|---|---|

of prem cl, she stated to c/b @ 417 380 5040. She then disconnected the call.

| 6/26/2014 | Claim Tasks | 2 | Open Review | Requested | HIELLEB |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Date Requested: 26-JUN-14

7/1/14 HIE - Tried to reach the clmt, auto rec'd v/m, left message w/ nature of my call in regards to WOP, her current status of her dx & tx, advd to plz return call to (402) 361-2991. Ended call.

6/26/14 HIE - Tried to reach the clmt, phone rang & rang, no v/m picked up, unable to leave a message, disconnected call. Will f/u w/ clmt on 6/30/14.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm

| 7/1/2014 | Claim Tasks | 2 | Open Review | Completed | HIELLEB |

LIFEDOCS Investigation Type: Clmt/Insured Contact

Date Requested: 26-JUN-14

7/1/14 HIE - Tried to reach the clmt, auto rec'd v/m, left message w/ nature of my call in regards to WOP, her current status of her dx & tx, advd to plz return call to (402) 361-2991. Ended call.

6/26/14 HIE - Tried to reach the clmt, phone rang & rang, no v/m picked up, unable to leave a message, disconnected call. Will f/u w/ clmt on 6/30/14.

Item Closed with Claim by System - HIELLEB - Sep 03, 2014 03:39:51 pm

| 7/1/2014 | Telephone (IN) | 4 | JAMIE FLANAGAN | Completed | HIELLEB |

Rec'd incoming call from clmt, she advd she was sorry for missing my calls, I thanked her for returning my calls. I explained the nature of my call in regards to WOP-she advd she understood, I verified the clmt's ss#/add/dlw/er/occ/dob/doh/eff date of cov/dlw-she advd all is correct, she has 12th grade education & a masters degree in nursing, she advd she has trouble w/ sleeping which is one of her big issues along w/ muscle spasms/numbness & pain in her legs & feet, he has flare ups, she rec'd steroid (oral) a couple of months ago, she is seen every 3 mons, LOV was 2 mons ago, NOV is 7/29/14, she's able to drive for only 20 mins but mostly her spouse takes her where she needs to go, she doesn't need assistance w/ ADLs, she stated her dx is getting better, still has bad days, pain 9/10 somtimes or 2-3/10 is a good day, she only takes pain meds which affects her concentration & memory, she advd she does a lot of reading, watches TV, rest a lot thru out the day, not much of anything else, she just stays home, the meds she takes causes stomach issues alsot, & she also becomes disoriented, she rest alot w/ a lot changes in positions, she also stated the meds affects he attention & alertness alot. She can be reached via email @ jamieandjason0306@gmail.com. I explained to her this does not affect her LTD benefits, she stated she understood. I thanked her for her time & we both ended the call.

| 7/1/2014 | Telephone (OUT) | 3 | Joshue/Heather Laskey | Completed | HIELLEB |

Tried to reach the grp adm Joshua, rec'd v/m of Heather Laskey, Left message w/ nature of my call in regards to confirm life elig for Ms. Jamie Flanagan, advd I had issues an email to Joshua on 6/26/14 in regards to confirming Ms. Flanagan's life elig, no reply has been rec'd at this time, advd to return call to (402) 361-2991. Ended call.

| 7/1/2014 | Telephone (OUT) | 2 | JAMIE FLANAGAN | Completed | HIELLEB |

Tried to reach the clmt, auto rec'd v/m, left message w/ nature of my call in regards to WOP, her current status of her dx & tx, advd to plz return call to (402) 361-2991. Ended call.

| 6/26/2014 | Telephone (OUT) | 1 | JAMIE FLANAGAN | Completed | HIELLEB |

Tried to reach the clmt, phone rang & rang, no v/m picked up, unable to leave a message, disconnected cal..

| 9/3/2014 3:39:43 PM | Status | | Not TD Any Occ | CLOSED | HIELLEB |

LIN001013
Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 13 of 64

 **Lincoln**
Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

The Lincoln National Life
Insurance Company
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

June 4, 2013

Andrew Hedgpeth
Lester E. Cox Medical Center
3801 S National Ave
Springfield, MO    65807

Re:    Policy No.  000010157325 – Life/AD&D and Optional Life
       Policy No.  000010157326 – Long Term Disability
       Group I.D.  LESTERECOX

Dear Mr. Hedgpeth:

Enclosed you will find amendments and revised policies for the above referenced policy numbers. As requested, we updated the rates as follows:

➢  Monthly Group Life Rate          $.060 per $1,000 of insurance
➢  Monthly Basic AD&D Rate          $.020 per $1,000 of insurance
➢  Long Term Disability             $.460% of Covered Payroll per Month

These amendments are effective July 1, 2013.

It is very important that we receive a signed copy of the amendment for our records. Please fax the signed copy to (877)573-6177. **If we do not hear from you within 30 days, payment of the required premium will be considered acceptance of the amendment as issued.**

If you have any questions on this change, please feel free to contact your broker or Customer Service Professional at (800)423-2765, Option 2; or via e-mail at ClientServices@LFG.com. Thank you for giving The Lincoln National Life Insurance Company an opportunity to serve you.

Sincerely,

The Lincoln National Life Insurance Company

Enclosures

**LIN001014**

AMENDMENT NO. 4

TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010157325

ISSUED TO: Lester E. Cox Medical Center

It is agreed that the above policy be replaced with the attached Policy, which is revised and dated July 1, 2013.

The effective date of this amendment is July 1, 2013; but only with respect to losses incurred on or after that date. Nothing contained in this amendment shall change any of the terms and conditions of this Policy; except as stated above.

THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

_____
Officer of the Company

Accepted by the Group Policyholder this _____ day of _____ 20_____

By _____ Title _____

GL1100 AMEND.

**LIN001015**

# The Lincoln National Life Insurance Company

A Stock Company     Home Office Location: Fort Wayne, Indiana
Group Insurance Service Office:  8801 Indian Hills Drive, Omaha, NE 68114-4066 (402) 361-7300

Group Policyholder:

### Lester E. Cox Medical Center

In Consideration of the Group Policyholder's application for this Policy and payment of all premiums when due, The Lincoln National Life Insurance Company agrees to make the payments provided in this Policy to the persons entitled to them.

The first premium for this Policy is due on its effective date.  Subsequent premiums are due on June 1, 2012, and on the same day of each month after that.  Policy anniversaries will be each January 1st; unless shown otherwise on the Premium Rate Schedule inside.

The provisions and conditions set forth on the following pages are a part of this Policy, as fully as if recited over the signatures below.

The Lincoln National Life Insurance Company has executed this Policy at its Group Insurance Service Office in Omaha, Nebraska.  The issue date of this Policy is May 1, 2012.

*Chals A. Brantly*

SECRETARY

*Dennis R. Glass*

PRESIDENT

**GROUP INSURANCE POLICY**
No. 000010157325
PROVIDING
LIFE INSURANCE
ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE
DEPENDENT LIFE INSURANCE

GL1101-TITLE PAGE

95
07/01/13

**LIN001016**

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 16 of 64

# TABLE OF CONTENTS

Schedule of Insurance........................................................................................3

Definitions ......................................................................................................4

General Provisions ...........................................................................................5

Provisions Applicable to Participating Employers.............................................6

Eligibility and Effective Dates for Personal Insurance.......................................7

Individual Terminations ...................................................................................8

Continuation of Coverage .................................................................................9

Premiums and Premium Rates ........................................................................10

Grace Period...................................................................................................12

Policy Termination .........................................................................................12

Beneficiary.....................................................................................................13

Assignments ...................................................................................................14

Facility of Payment.........................................................................................15

Death Benefit..................................................................................................15

Settlement Options .........................................................................................15

Extension of Death Benefit .............................................................................16

Accelerated Death Benefit ..............................................................................17

Conversion Privilege.......................................................................................19

Dependents Life Insurance..............................................................................20

Claims Procedures for Life or Accidental Death and Dismemberment Benefits .......22

Accidental Death and Dismemberment Insurance ............................................25

Safe Driver Benefit.........................................................................................26

Notice.............................................................................................................27

Prior Insurance Credit Provision .....................................................................29

GL1101-1

LIN001017

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 17 of 64

# SCHEDULE OF INSURANCE

The amount of an Insured Person's insurance is determined from the following table. The initial amount of coverage is the amount which applies to an Insured Person's Class on the date his or her coverage takes effect. An Insured Person may become eligible for increases in the amount of insurance in accord with the table. Any such increase will take effect on the latest of:

    (1)    the first day of the Insurance Month which coincides with or follows the date on which the Insured Person becomes eligible for the increase; provided he or she is Actively at Work on that day;

    (2)    the day the Insured Person resumes Active Work, if not Actively at Work on the day the increase would otherwise take effect; or

    (3)    the day any required evidence of insurability is approved by the Company.

Any decrease will take effect on the day of the change; whether or not the Insured Person is Actively at Work.

The amount of an Insured Person's Life Insurance shall be reduced by the amount of any Life Insurance in effect as a result of exercising the rights under the Conversion Privilege section of this Policy.

## CLASSIFICATION

| | |
|---|---|
| Class 1 | Executives and Physicians |
| Class 2 | All Full-Time Weekend Option Participants |
| Class 3 | All Other Full-Time Employees excluding Regular Part-Time Grandfathered Physicians |
| Class 4 | Regular Part-Time Grandfathered Physicians |
| Class 5 | Grandfathered Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson |
| Class 6 | Regular Part-Time Grandfathered Executives and Physicians of Skaggs Community Hospital Association d/b/a Cox Medical Center Branson |

WAITING PERIOD (For date insurance begins, refer to "Effective Date" section)

For Classes 1, 4, 5 and 6:
    None

For Classes 2 and 3:
    One year of continuous Active Work

GL1101-2

07/01/13

LIN001018

## B A S I C   I N S U R A N C E

### LIFE AND AD&D INSURANCE

| | Amount of Personal<br>Life Insurance | AD&D Insurance<br>Principal Sum |
|---|---|---|
| Class 1 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. |
| Class 2 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. |
| Class 3 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. |
| Class 4 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. |
| Class 5 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $500,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $500,000. |
| Class 6 | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. | Two times Basic Annual Earnings, rounded to the next higher $1,000; subject to a minimum of $10,000 and a maximum of $300,000. |

Personal Life and AD&D Insurance will be reduced as follows:
- At age 65, benefits will reduce by 35% of the original amount;
- At age 70, benefits will reduce an additional 20% of the original amount.

Benefits will terminate when the Insured Person retires.

If the Insured Person first enrolls for Personal Life and AD&D Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which he or she is eligible.

GL1101-2

3-2

07/01/13

LIN001019
Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 19 of 64

# SCHEDULE OF INSURANCE (CONTINUED)

for Classes 1 and 5, **Basic Annual Earnings** means the Insured Person's annual contracted rate from the Group from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It also includes:
1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Group Policyholder just prior to that date, if shorter.

It does **not** include commissions, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

For Classes 2 and 3, Bonus Eligible Employees, **Basic Annual Earnings** means the Insured Person's annual base salary or annualized hourly pay from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It also includes:
1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Group Policyholder just prior to that date, if shorter. The Insured Person must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

for Classes 2 and 3, **FOR PRODUCTION-BASED EMPLOYEES BASIC ANNUAL EARNINGS** means $1/12^{th}$ of the Insured Person's production earnings from the Group Policyholder for the 13 months prior to the Determination Date. If the Insured Person has not completed a full 13 months of service with the Group Policyholder, it is determined by annualizing the compensation over the actual period of employment with the Group Policyholder prior to the Determination Date; or

The **"Determination Date"** is last day worked just prior to the loss. It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will **not** exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid, whichever is less.

for Classes 4 and 6, **Basic Annual Earnings** means the Insured Person's annual contracted rate from the Group from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

For Classes 1, 2, 3, 4 and 6, The combined amounts of Basic and Optional Life Insurance are subject to a maximum of $600,000 or Five Time Basic annual Earnings.

For Classes 5, The combined amounts of Basic and Optional Life Insurance are subject to a maximum of $800,000 or Five Time Basic annual Earnings.

Insured Persons are not required to make contributions for Basic Personal Life Insurance and AD&D Insurance.

GL1101-2

3-3

07/01/13

LIN001020
Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 20 of 64

## O P T I O N A L   I N S U R A N C E

### LIFE INSURANCE

Amount of Personal
Life Insurance

Class 1     A Person may elect Optional Life Insurance in any $10,000 increment; subject to a maximum of Three times Basic Annual Earnings (rounded to the next higher $10,000). Coverage is subject to a minimum of $10,000 and an overall maximum of $300,000.

Class 2     A Person may elect Optional Life Insurance in any $10,000 increment; subject to a maximum of Three times Basic Annual Earnings (rounded to the next higher $10,000). Coverage is subject to a minimum of $10,000 and an overall maximum of $300,000.

Class 3     A Person may elect Optional Life Insurance in any $10,000 increment; subject to a maximum of Three times Basic Annual Earnings (rounded to the next higher $10,000). Coverage is subject to a minimum of $10,000 and an overall maximum of $300,000.

Class 4     A Person may elect Optional Life Insurance in any $10,000 increment; subject to a maximum of Three times Basic Annual Earnings (rounded to the next higher $10,000). Coverage is subject to a minimum of $10,000 and an overall maximum of $300,000.

Class 5     The Approved Amount of Optional Personal Life Insurance under the Prior Carrier's Plan as of April 30, 2013

Class 6     A Person may elect Optional Life Insurance in any $10,000 increment; subject to a maximum of Three times Basic Annual Earnings (rounded to the next higher $10,000). Coverage is subject to a minimum of $10,000 and an overall maximum of $300,000.

Personal Life Insurance will be reduced as follows:
- At age 65, benefits will reduce by 35% of the original amount;
- At age 70, benefits will reduce an additional 20% of the original amount.

Benefits will terminate when the Insured Person retires.

If the Insured Person first enrolls for Personal Life Insurance at age 65 or older, the above age reductions will apply to:
- Any Guarantee Issue Amount available without evidence of insurability; and
- The maximum amount of insurance for which he or she is eligible.

GL1101-2

07/01/13

LIN001021

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 21 of 64

for Classes 1 and 5, **Basic Annual Earnings** means the Insured Person's annual contracted rate from the Group from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It also includes:

1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Group Policyholder just prior to that date, if shorter.

It does **not** include commissions, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

For Classes 2 and 3, Bonus Eligible Employees, **Basic Annual Earnings** means the Insured Person's annual base salary or annualized hourly pay from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It also includes:

1. bonuses averaged over the 12 months just prior to the Determination Date; or over the actual period of employment with the Group Policyholder just prior to that date, if shorter. The Insured Person must be bonuses eligible, in an established bonus program.

It does **not** include commissions, tips and tokens, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

for Classes 2 and 3, FOR PRODUCTION-BASED EMPLOYEES BASIC ANNUAL EARNINGS means $1/12^{th}$ of the Insured Person's production earnings from the Group Policyholder for the 13 months prior to the Determination Date. If the Insured Person has not completed a full 13 months of service with the Group Policyholder, it is determined by annualizing the compensation over the actual period of employment with the Group Policyholder prior to the Determination Date; or

The **"Determination Date"** is last day worked just prior to the loss. It does **not** include commissions, tips and tokens, bonuses, overtime pay, taxable fringe benefits, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will **not** exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid, whichever is less.

for Classes 4 and 6, **Basic Annual Earnings** means the Insured Person's annual contracted rate from the Group from the Group Policyholder before taxes on the Determination Date. The **"Determination Date"** is the last day worked just prior to the loss.

It does **not** include commissions, bonuses, overtime pay, or any other extra compensation. It does **not** include income from a source other than the Group Policyholder. It will not exceed the amount shown in the Group Policyholder's financial records or the amount for which premium has been paid; whichever is less.

GL1101-2

07/01/13

LIN001022

## SCHEDULE OF INSURANCE (CONTINUED)

For All Classes, Evidence of Insurability must be submitted to and approved by the Company when:
1.  Optional Life Insurance amounts exceed the guarantee issue amount of $200,000 or 200% of salary, whichever is less, at initial enrollment;
2.  the amount of Optional Life Insurance increases after the initial enrollment by more than $10,000 due to salary or benefit increases over a 12-month period based on the month of the policy anniversary;
3.  an increased amount of Optional Life Insurance coverage is requested and any amount of coverage has been previously withdrawn or declined or is pending underwriting review; or
4.  initial coverage is elected more than 31 days after first becoming eligible.

Refer to the Evidence of Insurability section for any additional requirements.

For Classes 1, 2, 3, 4 and 6, The combined amounts of Basic and Optional Life Insurance are subject to a maximum of $600,000 or Five Time Basic annual Earnings.

For Classes 5, The combined amounts of Basic and Optional Life Insurance are subject to a maximum of $800,000 or Five Time Basic annual Earnings.

An Insured Person may elect Optional Personal Life Insurance, provided such Insured Person is also enrolled in the Basic Insurance Program.

GL1101-2

07/01/13

LIN001023

## DEPENDENTS INSURANCE
### (For Classes 1, 2, 3, 4, and 6)

| Dependent | Amount of Life Insurance |
|---|---|

Option 1

Spouse
$5,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 2

Spouse
$10,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 3

Spouse
$20,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 4

Spouse
$30,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 5

Spouse
$40,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 6

Spouse
$50,000, subject to a maximum of 100% of the Insured Employee's Optional Life Insurance Benefit

Option 1

Dependent Child
  (age 14 days to 6 months)
$100

GL1101-2

07/01/13

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 24 of 64

LIN001024

Dependent Child                                                    2,500
    (age 6 months to 23 years,
      23 years if a full-time student)

### Option 2

Dependent Child                                                      100
    (age 14 days to 6 months)

Dependent Child                                                    5,000
    (age 6 months to 23 years,
      23 years if a full-time student)

### Option 3

Dependent Child                                                      100
    (age 14 days to 6 months)

Dependent Child                                                    7,500
    (age 6 months to 23 years,
      23 years if a full-time student)

### Option 4

Dependent Child                                                      100
    (age 14 days to 6 months)

Dependent Child                                                   10,000
    (age 6 months to 23 years,
      23 years if a full-time student)

### Option 5

Dependent Child                                                      100
    (age 14 days to 6 months)

Dependent Child                                                   12,500
    (age 6 months to 23 years,
      23 years if a full-time student)

GL1101-2

07/01/13

LIN001025

Option 6

| | |
|---|---|
| Dependent Child (age 14 days to 6 months) | 100 |
| Dependent Child (age 6 months to 23 years, 23 years if a full-time student) | 15,000 |

Spouse Life Insurance will be reduced as follows:
- by 35% of the original amount when the Insured Employee attains age 65.

Spouse Insurance will terminate when the Insured Employee attains age 70 or retires, whichever occurs first.

Evidence of Insurability must be submitted to and approved by the Company when:
1. Optional Spouse Life Insurance amounts exceed the guarantee issue amount of $10,000 at initial enrollment;
2. the amount of Optional Spouse Life Insurance increases after the initial enrollment due to salary or benefit increases; or
3. initial coverage is elected more than 31 days after first becoming eligible.

Refer to the Evidence of Insurability section for any additional requirements.

GL1101-2

07/01/13

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 26 of 64

LIN001026

## DEPENDENTS INSURANCE
### (For Class 5)

| Dependent | Amount of Life Insurance |
|---|---|
| Spouse | The Approved Amount of Spouse Life Insurance under the Prior Carrier's Plan as of April 30, 2013 |

### Option 1

| | |
|---|---|
| Dependent Child<br>(age 14 days to 6 months) | $100 |
| Dependent Child<br>(age 6 months to 23 years,<br>23 years if a full-time student) | 4,000 |

### Option 2

| | |
|---|---|
| Dependent Child<br>(age 14 days to 6 months) | 100 |
| Dependent Child<br>(age 6 months to 23 years,<br>23 years if a full-time student) | 6,000 |

### Option 3

| | |
|---|---|
| Dependent Child<br>(age 14 days to 6 months) | 100 |
| Dependent Child<br>(age 6 months to 23 years,<br>23 years if a full-time student) | 8,000 |

### Option 4

| | |
|---|---|
| Dependent Child<br>(age 14 days to 6 months) | 100 |

GL1101-2

07/01/13

LIN001027

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 27 of 64

## SCHEDULE OF INSURANCE (CONTINUED)

Dependent Child                                                                 10,000
   (age 6 months to 23 years,
    23 years if a full-time student)

Spouse Life Insurance will be reduced as follows:
- by 35% of the original amount when the Insured Employee attains age 65.

Spouse Insurance will terminate when the Insured Employee attains age 70 or retires, whichever occurs first.

Evidence of Insurability must be submitted to and approved by the Company when:
1. Optional Spouse Life Insurance amounts exceed the guarantee issue amount of $10,000 at initial enrollment;
2. the amount of Optional Spouse Life Insurance increases after the initial enrollment due to salary or benefit increases; or
3. initial coverage is elected more than 31 days after first becoming eligible.

Refer to the Evidence of Insurability section for any additional requirements.

The following chart applies to the Extension of Death Benefit provision when benefits end upon attainment of the Social Security Normal Retirement Age:

| Year of Birth | Normal Retirement Age |
|---|---|
| 1937 and prior | 65 |
| 1938 | 65 and 2 months |
| 1939 | 65 and 4 months |
| 1940 | 65 and 6 months |
| 1941 | 65 and 8 months |
| 1942 | 65 and 10 months |
| 1943 - 54 | 66 |
| 1955 | 66 and 2 months |
| 1956 | 66 and 4 months |
| 1957 | 66 and 6 months |
| 1958 | 66 and 8 months |
| 1959 | 66 and 10 months |
| 1960 and later | 67 |

Note: Persons born on January 1 of any year should refer to the Normal Retirement Age for the previous year.

Under the Continuation of Coverage provision, the word "retire" or "retirement" means an Insured Person's attainment of the Social Security Normal Retirement Age. The use of the word "retire" or "retirement" elsewhere in this Policy means an Insured Person's retirement from employment with the Employer.

If any evidence of insurability is required, it will be provided at the Person's own expense.

GL1101-2

07/01/13

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 28 of 64

LIN001028

## SCHEDULE OF INSURANCE (CONTINUED)

**OPEN ENROLLMENT PERIOD** means a designated timeframe for eligible employees to elect coverage who did not enroll during their initial eligibility period or for employees with existing coverage under this Policy to elect additional benefit amounts. Evidence of insurability is not required during this period provided certain conditions are met as described in the Schedule of Insurance. Participation in an Open Enrollment Period does not change the Policy provisions related to Waiting Periods. Employees who have been previously declined for a benefit amount or increase are not eligible to participate in the Open Enrollment.

There will be an Open Enrollment Period beginning December 1st and ending December 31st for eligible Employees to enroll for or to increase their current benefit amounts.

Coverage elected during this period will be effective:
   (1) January 1st following the enrollment period, if Actively at Work on that day; or
   (2) The day the Insured Person resumes Active Work, if not Actively at Work on the day the elected coverage or increase would otherwise take effect.

GL1101-2

3-12

07/01/13

LIN001029

## DEFINITIONS

**ACTIVE WORK** or **ACTIVELY AT WORK** means an employee's full-time performance of all customary duties of his or her occupation at:
   (1)   the GROUP POLICYHOLDER'S place of business; or
   (2)   any other business location where the employee is required to travel.

Unless disabled on the prior workday or on the day of absence, an employee will be considered Actively at Work on the following days:
   (1)   a Saturday, Sunday or holiday which is not a scheduled workday;
   (2)   a paid vacation day, or other scheduled or unscheduled non-workday; or
   (3)   an excused or emergency leave of absence (except a medical leave).

**COMPANY** means The Lincoln National Life Insurance Company, an Indiana corporation, whose Group Insurance Service Office address is 8801 Indian Hills Drive, Omaha, Nebraska 68114-4066.

**DAY OR DATE** means at 12:01 A.M., Standard Time, at the GROUP POLICYHOLDER'S place of business; when used with regard to eligibility dates and effective dates. It means 12:00 midnight, Standard Time, at the same place; when used with regard to termination dates.

**FULL-TIME EMPLOYEE** means an employee of the GROUP POLICYHOLDER:
   (1)   whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
   (2)   who is not a temporary or seasonal employee; and
   (3)   who is regularly scheduled to work at such occupation at least:
       (a)   for Classes 1, 3 and 5, 72 hours each pay period; and
       (b)   for Class 2, 48 hours each pay period.

**GROUP POLICYHOLDER** means the person, partnership, corporation, or trust as shown on the Title Page of this Policy.

**INSURANCE MONTH** means that period of time:
   (1)   beginning at 12:01 A.M. Standard Time, at the GROUP POLICYHOLDER'S place of business on the first day of any calendar month; and
   (2)   ending at 12:00 midnight on the last day of the same calendar month.

**INSURED PERSON** means a PERSON for whom the coverages provided by this Policy are in effect.

**PERSON** means a FULL-TIME EMPLOYEE or REGULAR PART-TIME EMPLOYEE of the GROUP POLICYHOLDER:
   (1)   who is a member of an employee class which is eligible for coverage under this Policy; and
   (2)   who has completed an enrollment form.

**PERSONAL INSURANCE** means the insurance provided by this Policy on Insured Persons.

**PHYSICIAN** means a licensed practitioner of the healing arts other than the Insured Person or a relative of the Insured Person.

**POLICY** means this Group Insurance Policy issued by the Company to the Group Policyholder.

**REGULAR PART-TIME EMPLOYEE** means an employee of the GROUP POLICYHOLDER who is regularly scheduled to work at least 20 hours each week or 40 hours each pay period.

GL1101-3 91

(REV)<br>07/01/13

4

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 30 of 64

LIN001030

# GENERAL PROVISIONS

ENTIRE CONTRACT. The entire contract between the parties consists of:
(1)  this Policy and the Group Policyholder's application (a copy is attached);
(2)  the Participating Employer's participation agreement; and
(3)  the Insured Persons' enrollment cards, if any.

All statements made by the Group Policyholder and by Insured Persons are representations and not warranties. No statement made by an Insured Person will be used to contest the coverage provided by this Policy; unless:
(1)  it is contained in a written statement signed by that Insured Person; and
(2)  a copy of the statement is furnished to the Insured Person or Beneficiary.

Only an Officer of the Company may change this Policy or extend the time for payment of any premium. No change will be valid unless made in writing and signed by an Officer of the Company. Any change so made will be binding on all persons referred to in this Policy.

INCONTESTABILITY. Except for the non-payment of premiums, the Company may not contest the validity of this Policy as to any Insured Person after it has been in force for two years during his or her lifetime. This clause will not affect the Company's right to contest claims made for disability, accidental death, or accidental dismemberment benefits.

NONPARTICIPATION. This Policy will not be entitled to share in the surplus earnings of the Company.

BASIS OF RESERVE. The reserve for this Policy will not be less than the reserve computed using:
(1)  the 1970 Intercompany Group Life Disability Valuation Table; and
(2)  interest at not less than three percent per annum.

INFORMATION TO BE FURNISHED. The Group Policyholder and Participating Employers may be required to furnish any information needed to administer this Policy. Clerical error by the Group Policyholder or Participating Employer will not:
(1)  affect the amount of insurance which otherwise would be in effect; or
(2)  continue insurance which otherwise would be terminated.

Once an error is discovered, an equitable adjustment in premium will be made. If a premium adjustment involves the return of unearned premium, the amount of the return will be limited to the twelve month period which precedes the date the Company receives proof such an adjustment should be made.

The Company may inspect any of the Group Policyholder's records or Participating Employers' records which relate to this Policy.

MISSTATEMENT OF AGE. If an Insured Person's age has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit depends upon age; then the benefit will be that which would have been payable, based upon the person's correct age.

CERTIFICATES. The Group Policyholder will be furnished with individual Certificates for delivery to each Insured Person. These certificates summarize the benefits provided by this Policy. If there is a conflict between the Policy and the Certificate, the Policy will control.

CONFORMITY WITH STATE STATUTES. If any provision of this Policy conflicts with any applicable law, the provision will be deemed to conform to the minimum requirements of the law.

WORKER'S COMPENSATION. This Policy is not to be construed to provide benefits required by Worker's Compensation laws.

GL1101-4.1 95

5

LIN001031

# PROVISIONS APPLICABLE TO PARTICIPATING EMPLOYERS

A Participating Employer has no rights under this Policy except as provided in this Section. The Participating Employer will be responsible for all premiums payable with respect to any of its Employees who are Insured Persons under this Policy.

PARTICIPATING EMPLOYER means an employer who has been approved by the Company for participation in the coverage provided by this Policy. The following are Participating Employers:

Skaggs Community Hospital Association d/b/a Cox Medical Center Branson
Cox Monnett

EFFECTIVE DATE. As it applies to any Participating Employer, the Effective Date of this Policy will be the later of:
(a)  the date this Policy is issued;
(b)  the first day of the Insurance Month following the Company's approval of the employer's Participation Agreement; or
(c)  a date agreed upon by the Company, the Participating Employer, and the Group Policyholder.

TERMINATION: A Participating Employer's participation under this Policy ends on the earliest of the following dates:
(a)  the date the employer no longer meets the definition of a Participating Employer;
(b)  the date the Participating Employer has fewer than 10 Insured Persons;
(c)  the date the Participating Employer suspends active business operations, is placed in bankruptcy or receivership, dissolves, merges or relocates;
(d)  the date the Participating Employer, without good cause, fails to:
    (a)  promptly furnish the Company any information it may reasonably require; or
    (b)  perform its duties pertaining to this Policy in good faith;
(e)  the last day of the Insurance Month for which premium is paid;
(f)  the last day of the Insurance Month in which the Company receives the Participating Employer's written request to cease participation; or
(g)  the date the Company terminates the coverage under this Policy for all Participating Employer's in this state.

On the day participation ends, Policy coverage will terminate for all the Participating Employer's employees and their Dependents. If an employer ceases to be a Participating Employer, it may not be a Participating Employer again; until the Company reapproves it as such.

GL1101-4a 04

6

07/01/13

LIN001032

## ELIGIBILITY AND EFFECTIVE DATES FOR PERSONAL INSURANCE

ELIGIBILITY. A Person becomes eligible for the coverage provided by this Policy on the later of:
(1) the Policy's date of issue; or
(2) the date the Waiting Period is completed.

WAITING PERIOD. (See Schedule of Insurance).

EFFECTIVE DATE. Personal Insurance becomes effective on the latest of:
(1) (a) for Classes 1, 4, 5 and 6, the date the Person becomes eligible for the coverage;
    (b) for Classes 2 and 3, the first day of the Insurance Month coinciding with or next following the date the Person becomes eligible for the coverage;
(2) the date the Person resumes Active Work, if not Actively at Work on the day he or she becomes eligible;
(3) the date the Person makes written application for Personal Insurance; and signs:
    (a) a payroll deduction order, if Insured Persons pay any part of the Policy premium; or
    (b) an order to pay premiums from the Person's Section 125 Plan account, if Employer contributions are made through a Section 125 Plan; or
(4) the date the Company approves the Person's coverage, if evidence of insurability is required.

EVIDENCE OF INSURABILITY. Evidence of insurability satisfactory to the Company must be submitted when:
(1) a Person makes written application for Personal Insurance more than 31 days after becoming eligible for the coverage; or
(2) a Person makes written application for Personal Insurance after he or she has requested:
    (a) to cancel Personal Insurance;
    (b) to stop payroll deductions for the coverage; or
    (c) to stop premium payments from the Section 125 Plan account.

EXCEPTIONS. If an Insured Person's coverage terminates due to an approved leave of absence or military leave, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within six months after the leave begins;
(2) the Person applies or is enrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.

If an Insured Person's coverage terminates due to a lay-off, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person returns within six months after the date the lay-off begins;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

If an Insured Person's coverage terminates because his or her employment ends, the Company will waive any Waiting Period or evidence of insurability requirement upon his or her return; provided:
(1) the Person is rehired within six months after employment terminated;
(2) the Person applies or is reenrolled within 31 days after resuming Active Work; and
(3) the reinstated amount of insurance does not exceed the amount which terminated.
Reinstatement will take effect on the date the Insured Person returns to Active Work.

LIN001033

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 33 of 64

## INDIVIDUAL TERMINATIONS

An Insured Person's coverage will terminate on the earliest of:
(1)  the date this Policy terminates;
(2)  the last day of the Insurance Month in which the Insured Person requests termination;
(3)  the last day of the last Insurance Month for which premium payment is made on the Insured Person's behalf;
(4)  the date the Insured Person ceases to be in a class of employees which is eligible for coverage under this Policy;
(5)  with respect to any particular insurance benefit, the date the portion of the Policy providing that benefit terminates;
(6)  the date on which the Insured Person's employment with the Group Policyholder or Participating Employer terminates; or
(7)  the date the Insured Person enters the armed services of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard.  (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

Ceasing Active Work results in termination of insurance; but coverage may be continued as follows:
(1)  If the Insured Person is disabled due to illness or injury, then coverage may be continued until the earlier of:
(a)  12 Insurance Months after the disability begins; or
(b)  the date the Person is no longer disabled;
provided premium payments are made on his or her behalf.

If the Insured Person is totally disabled due to illness or injury, and active employment is a condition of insurance; then Life Insurance may be continued until the earlier of:
(a)  the date the Insured Person is no longer totally disabled; or
(b)  the date the Insured Person qualifies for any Extension of Death Benefit under this Policy;
provided this Policy (or the Participating Employer's participation) remains in effect; and premium payments are made on the Insured Person's behalf.  For the first 6 months of continued Life Insurance, the Insured Person will be required to pay the Group Policyholder or Participating Employer only that part of the premium he or she would have been required to pay as an Active Employee.  "Total Disability" will be defined in the Extension of Death Benefit section of this Policy.
(2)  If the Insured Person ceases work due to a temporary lay off, an approved leave of absence, or a military leave; then coverage may be continued:
(a)  for three Insurance Months after the lay off or leave begins;
(b)  provided premium payments are made on his or her behalf.

GL1101-5 93 MO

8

(FMLA)
07/01/13

LIN001034

## CONTINUATION OF COVERAGE

This section applies to any Basic or Optional Personal Life Insurance and Accidental Death and Dismemberment Insurance provided by this Policy. Such insurance may be continued until the Insured Person attains age 98, by paying the required premiums, when:
  (1)   an Insured Person's employment with the Employer ends for a reason other than sickness or injury or retirement; and
  (2)   the insurance has been in force for at least 12 months in a row just prior to the date employment ends.
Continuation of insurance under this provision will follow any state required continuation or other continuation allowed under the Ceasing Active Work section of this Policy.

To continue insurance, written application and the first premium payment must be made to the Company, within 31 days of the date insurance would otherwise end.

The Continuation of Coverage is not available when Policy coverage terminates solely because:
  (1)   an Insured Person's Employer ceases to be a Participating Employer; or
  (2)   this Policy terminates.
For life insurance that terminates under this Policy due to an Insured Person's termination of membership in an eligible class; see the Conversion Privilege section of this Policy.

AMOUNT OF COVERAGE. The amount of continued insurance may not exceed the amount in force when employment ends. During the continuation period the amount of insurance may not be increased. Continued insurance will be subject to any reduction on account of age, as shown in the Schedule of Insurance.

The Insured Person may decrease the amount of continued insurance at any time, by completing a request form supplied by the Company. The decrease will take effect on the first day of the Insurance Month after the Company receives the request.

PAYMENT OF PREMIUM. Timely payment of premium must be made directly to the Company, throughout the period of continued insurance. Premiums will be based on attained age as shown in the premium information provided with the application. A direct billing fee will be added to the premium based on the frequency chosen. The premium frequency may be changed by sending the Company advance written request on forms supplied by the Company. Such request may be sent at any time while continued insurance is in force, except during a Grace Period.

TERMINATION OF COVERAGE. Continued insurance will end on the earliest of:
  (1)   the date this Policy terminates;
  (2)   the last day of the Insurance Month in which termination is requested;
  (3)   the last day of the Insurance Month for which premium is paid;
  (4)   the date the Insured Person attains age 98, or dies;
  (5)   the date insurance would otherwise end had the Insured Person remained an Active Employee; or
  (6)   the date the Insured Person enters the armed forces of any state or country on active duty; except for duty of 30 days or less for training in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

When continued insurance ends, the Insured Person may be entitled to purchase an individual life policy, in accord with the Conversion Privilege section of this Policy.

GL1101-5.5 01

TG PORT (Life, AD&D)
07/01/13

LIN001035

# PREMIUMS AND PREMIUM RATES

PAYMENT OF PREMIUMS. No coverage provided by this Policy will be in effect until the first premium for such coverage is paid. For coverage to remain in effect, each subsequent premium must be paid on or before its due date. The Group Policyholder is responsible for paying all premiums as they become due. Premiums are payable on or before their due dates at the Company's Group Insurance Service Office. The premium must be paid in U.S. dollars.

PREMIUM RATE CHANGE. The Company may change any premium rate on any of the following dates:
(1)  the date this Policy's terms are changed;
(2)  the date the Company's liability is changed due to a change in federal, state or local law;
(3)  the date the Group Policyholder (or any covered division, subsidiary or affiliated company) relocates, dissolves or merges, or is added to or removed from this Policy;
(4)  the date any coverage for one or more classes ceases to be provided under this Policy;
(5)  the date the number of Insured Persons changes by 25% or more from the enrollment on the date this Policy took effect, or the most recent Rate Guarantee Date expired, if later; or
(6)  on any premium due date on or after this Policy's first anniversary, or any later rate guarantee date agreed upon by the Company.

Unless the Company and the Group Policyholder agree otherwise, the Company will give at least 31 days' advance written notice of any increase in premium rates.

PREMIUM AMOUNT. The amount of premium due on each due date will be the sum of the products obtained by multiplying each rate shown in the Premium Rate Schedule by the amount of insurance to which the rate applies.

Premium adjustments will not be pro-rated daily. Instead, premium will be adjusted as follows.
(1)  When an Insured Person's insurance or increase takes effect, premium will be charged from the monthly due date coinciding with or next following that change.
(2)  When all or part of an Insured Person's insurance terminates, the applicable premium will cease on the monthly due date coinciding with or next following that termination.
(3)  When premiums are paid other than monthly, increases or decreases will result in adjustment from the premium due date coinciding with or next following that change.

The above manner of charging premium is for accounting purposes only. It will not extend coverage beyond a date it would have otherwise terminated. Each premium payment will include any adjustments in past premiums, which are needed due to changes that have not yet been taken into account. If a premium adjustment involves a return of unearned premium, the refund will be limited to the prior 12-month period.

## PREMIUM RATE SCHEDULE

| | |
|---|---|
| Monthly Basic Group Life Rate | $.06 per $1,000 of insurance |
| Monthly Basic AD&D Rate | .02 per $1,000 of insurance |

GL1101-6 04

10

07/01/13

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 36 of 64

LIN001036

## PREMIUMS AND PREMIUM RATES

Monthly Optional Group Life Rate

Classes 1, 2, 3, 4 and 6

| Insured Employee's Attained Age | Monthly Rate per $1,000 of insurance |
|---|---|
| Less than 25 | $.06 |
| 25 - 29 | .06 |
| 30 - 34 | .08 |
| 35 - 39 | .11 |
| 40 - 44 | .17 |
| 45 - 49 | .27 |
| 50 - 54 | .47 |
| 55 - 59 | .75 |
| 60 - 64 | .99 |
| 65 - 69 | 1.60 |
| 70 - 74 | 2.84 |
| 75 - 79 | 2.84 |
| 80 and over | 2.84 |

Monthly Optional Group Life and Optional Spouse Life Rate
Class 5                                        $.238 per $1,000 of insurance

Monthly Optional Spouse Life Rate
Classes 1, 2, 3, 4 and 6

| Option 1 | 1.00 per Insured Spouse |
|---|---|
| Option 2 | 2.00 per Insured Spouse |
| Option 3 | 4.00 per Insured Spouse |
| Option 4 | 6.00 per Insured Spouse |
| Option 5 | 8.00 per Insured Spouse |
| Option 6 | 10.00 per Insured Spouse |

Monthly Optional Child Life Rate

| Option 1 | 1.00 per Insured Child(ren) |
|---|---|
| Option 2 | 2.00 per Insured Child(ren) |
| Option 3 | 4.00 per Insured Child(ren) |
| Option 4 | 6.00 per Insured Child(ren) |
| Option 5 | 8.00 per Insured Child(ren) |
| Option 6 | 10.00 per Insured Child(ren) |

The above rates are guaranteed until January 1, 2016, unless an exception listed in the Premium Rate Change section applies.

After that, any premium rate change will be as shown in the renewal letter. The Company will send the Group Policyholder a renewal letter prior to each Policy Anniversary.

GL1101-6 04

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 37 of 64

LIN001037

## GRACE PERIOD

A grace period of 60 days from the due date will be allowed for the payment of each premium after the first. This Policy will remain in effect during the grace period; unless the Group Policyholder gives the Company advance written notice of termination. The Group Policyholder will remain liable for payment of a pro rata premium for the time this Policy remained in force during the grace period.

## POLICY TERMINATION

TERMINATION BY THE COMPANY. To terminate this Policy, the Company must give the Group Policyholder at least 31 days' advance written notice of its intent to do so. The Company may terminate this Policy coverage on the due date of any premium; if:
   (1)   the total number of Insured Persons is less than ten;
   (2)   all of the premium is paid by the Group Policyholder and less than 100% of those eligible for coverage are insured;
   (3)   part of the premium is paid by Insured Persons and less than 75% of those eligible for coverage are insured (this part 3 will not apply to any voluntary, optional or supplemental insurance provided under this Policy);
   (4)   the Group Policyholder, without good cause, fails to:
      (a)   promptly furnish any information the Company reasonably requires; or
      (b)   perform its duties pertaining to this Policy in good faith;
   (5)   the Company terminates all other policies where permitted by their terms, which provide life insurance or weekly disability income insurance in the same state in which this Policy was issued; or
   (6)   state law otherwise requires this Policy to be terminated.

TERMINATION BY GROUP POLICYHOLDER. The Group Policyholder may terminate this Policy at any time, by giving the Company advance written notice. Coverage will then terminate:
   (1)   on the date the Company receives the notice; or
   (2)   any later date the Group Policyholder and the Company have agreed upon.

The Group Policyholder remains responsible for the payment of premiums to the date of termination.

AUTOMATIC TERMINATION. If any premium remains unpaid at the end of the Grace Period; then this Policy will automatically terminate, without any action on the Company's part, on the last day of the Grace Period. The Group Policyholder remains responsible for the payment of premiums to the date of termination.

EFFECT ON INCURRED CLAIMS. Termination of this Policy will not affect benefits otherwise payable for a claim incurred while this Policy is in force.

GL1101-7 04

No Bene.-ten lives
07/01/13

LIN001038

# BENEFICIARY

PAYMENTS TO BENEFICIARY. At an Insured Person's death, the amount of his or her Personal Life Insurance will be paid to the surviving Beneficiary. If the Insured Person has not named a Beneficiary, or if no named Beneficiary survives the Insured Person; then payment will be made to that Insured Person's:
- (1) surviving spouse; or, if none
- (2) surviving child or children in equal shares; or, if none
- (3) surviving parent or parents in equal shares; or, if none
- (4) surviving brothers and sisters in equal shares; or, if none
- (5) estate, or in accord with the Facility of Payment section of this Policy.

The amount payable to anyone shown above will be reduced by any amount paid in accord with the Facility of Payment section.

In determining who is to receive payment, the Company may rely upon an affidavit by a member of the class of relatives to receive payment. The Company will make payment based upon the affidavit it has; unless it receives notice of a valid claim by some other person, at its Group Insurance Service Office, before paying the proceeds. Such payment will release the Company from any further obligation for the Insured Person's life insurance benefit.

If an Insured Person's named Beneficiary dies:
- (1) within 15 days of the Insured Person's death; and
- (2) before the Company receives satisfactory proof of the Insured Person's death;

then payment will be made as if the Insured Person had survived that Beneficiary; unless other provisions have been made.

NAMING THE BENEFICIARY. An Insured Person's Beneficiary will be as shown on his or her enrollment card, unless changed. This Policy may replace a group policy providing similar coverages. In that event, the Beneficiary which the Insured Person named under the prior policy will be the Beneficiary under this Policy, until changed.

CHANGING THE BENEFICIARY. Only the Insured Person, or his or her assignee, may change the Beneficiary. A new Beneficiary may be named by filing a written notice of the change with the Company at its Group Insurance Service Office. The change will be effective as of the date it was signed; subject to any action the Company takes before receiving notice of the change.

When applying for a conversion policy under the Conversion Privilege Section, an Insured Person must name a Beneficiary. The Beneficiary named for the conversion policy may be someone other than the person named under this Policy. In that event, the application for the conversion policy will be treated as a written notice of change of Beneficiary.

GL1101-7.1A 96

13

Pref. Bene.
07/01/13

LIN001039

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 39 of 64

# ASSIGNMENTS

Personal Life Insurance and Accidental Death Insurance may be assigned. The assignments allowed under this Policy are absolute assignments and funeral assignments as described below.

No assignment will be binding on the Company unless and until:
(1)   it is made on a form furnished by the Company;
(2)   the original is completed and filed with the Company at its Group Insurance Service Office; and
(3)   it is approved by the Company.

The Company and the Group Policyholder do not assume responsibility for the validity or effect of an assignment.

ABSOLUTE ASSIGNMENTS.   An Insured Person may make an irrevocable assignment of his or her Personal Life Insurance and Accidental Death Insurance as a gift (with no consideration), providing he or she has the legal capacity and the mental capacity to do so. It may be made to a trust or to one or more of the Insured Person's relatives, their estates, or to a trustee of a trust under which one of the relatives is a beneficiary.

The term "relatives" includes, but is not limited to, an Insured Person's spouse, parents, grandparents, aunts, uncles, siblings, children, adopted children, stepchildren, and grandchildren.

In some states, community property is an established form of ownership that must be considered in making an assignment. If an Insured Person makes an absolute assignment to two or more assignees, such assignees will be joint owners with the right of survivorship between them. An Insured Person should consult with his or her own legal advisor before making an assignment.

Once the assignment has been recorded by the Company, the Insured Person can no longer change the beneficiary and cannot apply for conversion. Only the assignee can change the beneficiary designation if the previous designation is revocable. An assignment will have no effect on a prior irrevocable beneficiary designation. Only the assignee can apply for conversion but only when the Conversion Privilege provision would have been available to the Insured Person in the absence of the assignment under this Policy.

An absolute assignment cannot be used as a collateral assignment.

FUNERAL ASSIGNMENTS.   Upon an Insured Person's death, the beneficiary may assign the Personal Life Insurance benefit and Accidental Death Insurance benefit to a funeral home for payment of burial expenses. After payment has been made for the burial expenses to the assigned funeral home, the remaining death benefit is then paid in accord with the Beneficiary and Settlement Options sections of this Policy.

GL1101-7.1C 01

14

07/01/13

LIN001040

## FACILITY OF PAYMENT

Policy benefits may become payable to an Insured Person's estate, to a minor, or to a person who the Company does not consider competent to give a valid release. In that event, the Company has the option to pay one or more of the following:
  (1)   a person who has assumed the care and support of the Insured Person or Beneficiary;
  (2)   a person who has incurred expense as a result of the Insured Person's last illness or death;
  (3)   the personal representative of the Insured Person's estate; or
  (4)   any person related by blood or marriage to the Insured Person.

No payment made under this section may exceed $2,000. Any payment made in good faith under this section will fully discharge the Company to the extent of the payment. Any remaining amount of benefit will be paid as shown in the Beneficiary section.

## DEATH BENEFIT

AMOUNT PAYABLE ON DEATH. Upon receipt of satisfactory proof of an Insured Person's death, the Company will pay a death benefit equal to the amount of Personal Life Insurance in effect on the date of death. This amount is shown in the Schedule of Insurance. The benefit will be paid as shown in the Beneficiary, Facility of Payment, and Settlement Options sections.

## SETTLEMENT OPTIONS

INSTALLMENTS. All or part of the death benefit may be received in installments, by making written election to the Company.

ELECTION. While living, an Insured Person may direct the Company to pay the death benefit in installments. If no such direction is in effect at the time of the Insured Person's death, the Beneficiary may make such an election.

CONDITIONS. Any election, whether by an Insured Person or a Beneficiary, must comply with the Company's practices at the time it is made. The amount applied under a settlement option must be at least $2,000. It must be sufficient to provide a payment of at least $20 per month.

GL1101-8 96

15

07/01/13

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 41 of 64

LIN001041

BENEFIT. Life insurance will be continued, **without payment of premiums**, for an Insured Person who:
    (1)  becomes Totally Disabled while insured under this policy and before reaching age 60;
    (2)  remains Totally Disabled for at least 6 months in a row; and
    (3)  submits satisfactory proof within the 7th through the 12th months of disability; or:
        (a)  as soon as reasonably possible after that; but
        (b)  not later than the 24th month of disability, unless he or she was legally incapacitated.

PREMIUM PAYMENT. Premium payments must continue until:
    (1)  the day the Insured Person is approved for this Extension of Death Benefit; or
    (2)  the day this Policy terminates (whichever occurs first).

Upon receipt of satisfactory proof, the Company will refund up to 12 months' premium paid for the Insured Person's life insurance, from the 1st day of Total Disability.

DEFINITION. For this benefit, Total Disability or Totally Disabled means an Insured Person is unable, due to sickness or injury, to perform the material and substantial duties of:
    (1)  the Insured Person's regular occupation during the first 12 months of disability; or
    (2)  any occupation for which the Insured Person is or becomes reasonably fitted by reason of training, education, experience, age and physical and mental capacity, after the first 12 months of disability.

AMOUNT CONTINUED. The life insurance continued by this section:
    (1)  will be the amount of Personal Life Insurance and any Dependent Life Insurance in effect on the day the Insured Person's Total Disability begins; and
    (2)  will be subject to the reductions and terminations in effect under this Policy on that day.

If the Insured Person receives an Accelerated Death Benefit, the amount will be reduced in accord with that provision. Any Accidental Death and Dismemberment Benefit will not be continued.

ADDITIONAL PROOF. At any time during this continuation, the Company may require the Insured Person:
    (1)  to submit further proof of his or her continued Total Disability; and
    (2)  to be examined by a Physician of the Company's choice, as often as reasonably necessary.

After the first two years of Total Disability, the Company will not request proof or an exam more than once a year. Proof will be at the Insured Person's expense; unless the Company requests an exam by a Physician of its choice.

When an Insured Person dies after submitting proof, further proof must be submitted to the Company showing that he or she remained continuously and Totally Disabled until death. When an Insured Person dies within 12 months after Total Disability begins, but before submitting proof; then his or her death benefit will still be paid under the terms of this Policy. But the Company must first receive satisfactory proof of his or her continuous Total Disability, from the last day of Active Work until the date of death.

TERMINATION. Any life insurance extended under this section will terminate automatically on:
    (1)  the day the Insured Person ceases to be Totally Disabled;
    (2)  the day the Insured Person fails to take a required medical examination;
    (3)  the 60th day after the Company mails a request for additional proof, if it is not given;
    (4)  the effective date of the Insured Person's individual conversion policy, with respect to any amount of life insurance converted in accord with the Conversion Privilege section; or
    (5)  the day the Insured Person reaches Social Security Normal Retirement Age (SSNRA), as shown in the Schedule of Insurance (whichever occurs first).

Discontinuance of this Policy will not terminate any life insurance extended under this section.

RIGHTS AFTER TERMINATION. If Total Disability ends, and the Insured Person **does not return** to a class eligible for Policy coverage; then he or she may exercise the Conversion Privilege. If Total Disability ends, and the Insured Person **does return** to an eligible class; then his or her Policy coverage will resume when premium payments are resumed, and any conversion policy is surrendered as provided below.

CONVERSION POLICIES. If the Insured Person has exercised the Conversion Privilege, and the benefits payable under this Policy and the conversion policy combined would exceed:
    (1)  the Insured Person's original amount of Policy coverage prior to the conversion; or
    (2)  the greater amount for which he or she later becomes insured under this Policy;

then benefits will be payable under the terms of this Policy. But the conversion policy must first be surrendered to the Company; and no claim may be made under the conversion policy, except for refund of premium less any dividends and policy loans.

GL1101-9 96 MO

Stand. Ext. - SSNRA
07/01/13

LIN001042

BENEFIT. The Accelerated Death Benefit is an advance payment of part of the Insured Person's Personal Life Insurance. It may be paid to the Insured Person, in a lump sum, once during the Insured Person's lifetime.

To qualify, a Terminal Insured Person must:
   (1)   have satisfied the Active Work requirement under this Policy;
   (2)   have been insured under this Policy for at least 12 months; and
   (3)   have at least $2,000 of Personal Life Insurance under this Policy on the day before the Accelerated Death Benefit is paid.

Receiving the Accelerated Death Benefit will reduce the Remaining Life Insurance and the Death Benefit payable at death, as shown on the next page.

"Claimant," as used in this section, means the Terminal Insured Person for whom the Accelerated Death Benefit is requested.

"Terminal" means the Insured Person has a medical condition which is expected to result in death within 12 months, despite appropriate medical treatment.

APPLYING FOR THE BENEFIT. To withdraw the Accelerated Death Benefit, the Insured Person (or his or her legal representative) must send the Company:
   (1)   written election of the Accelerated Death Benefit, on forms supplied by the Company; and
   (2)   satisfactory proof that the Claimant is Terminal, including a Physician's written statement.

The Company reserves the right to decide whether such proof is satisfactory.

Before paying an Accelerated Death Benefit, the Company must also receive the written consent of any irrevocable beneficiary, assignee or bankruptcy court with an interest in the benefit. (See Limitations 3, 4, and 5.)

**NOTE: THIS IS NOT A LONG-TERM CARE POLICY. RECEIVING THIS ACCELERATED DEATH BENEFIT WILL REDUCE THE BENEFIT PAYABLE AT DEATH. ANY AMOUNT WITHDRAWN MAY BE TAXABLE INCOME, SO THE INSURED PERSON SHOULD CONSULT A TAX ADVISOR BEFORE APPLYING FOR THIS BENEFIT.**

AMOUNT OF THE BENEFIT. The Insured Person may elect to withdraw an Accelerated Death Benefit in any $1,000 increment; subject to:
   (1)   a minimum of $1,000 or 10% of the Claimant's amount of Life Insurance (whichever is greater); and
   (2)   a maximum of $250,000 or 75% of the Claimant's amount of Life Insurance (whichever is less).

To determine the Accelerated Death Benefit, the Company will use the lesser of A or B below:
   A.   the Claimant's amount of Life Insurance which is in force on the day before the Accelerated Death Benefit is paid; or
   B.   the Claimant's amount of Life Insurance which would be in force 12 months after that date; if the coverage is scheduled to reduce, due to age, within 12 months after the Accelerated Death Benefit is paid.

LIN001043
Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 43 of 64

ADMINISTRATIVE CHARGE:  NONE

WITHDRAWAL FEE:  NONE

EFFECT ON AMOUNT OF LIFE INSURANCE.  "Remaining Life Insurance" means the amount of Life Insurance which remains in force on the Claimant's life after an Accelerated Death Benefit is paid.  The Remaining Life Insurance will equal:
  (1)   the Claimant's amount of Life Insurance which was used to determine the Accelerated Death Benefit (A or B above); minus
  (2)   any percentage by which the Claimant's coverage is scheduled to reduce, due to age; if the reduction occurs more than 12 months after the Accelerated Death Benefit is paid, and while he or she is still living; minus
  (3)   the amount of the Accelerated Death Benefit withdrawn.

PREMIUM:  There is no additional charge for this benefit.  Continuation of the Remaining Life Insurance will be subject to timely payment of the premium for the reduced amount; unless the Insured Person qualifies for waiver of premium under this Policy's Extension of Death Benefit provision, if included.

CONDITIONS.  If the Claimant exercises the Conversion Privilege after an Accelerated Death Benefit is paid, the amount of the conversion policy will not exceed the amount of his or her Remaining Life Insurance. If the Claimant has Accidental Death and Dismemberment benefits under this Policy, the Principal Sum will not be affected by the payment of an Accelerated Death Benefit.

EFFECT ON DEATH BENEFIT.  When the Claimant dies after an Accelerated Death Benefit is paid, the amount of Remaining Life Insurance in force on the date of death will be paid as a Death Benefit.  The Insured Person's Death Benefit will be paid in accord with the Beneficiary section of this Policy.  If the Claimant dies after application for an Accelerated Death Benefit has been made, but before the Company has made payment; then the request will be void and no Accelerated Death Benefit will be paid.  The amount of Life Insurance in force on the date of death will be paid in accord with Policy provisions.

EFFECT ON TAXES AND GOVERNMENT BENEFITS.  Any Accelerated Death Benefit amount withdrawn may be taxable income to the Insured Person.  Receipt of the Accelerated Death Benefit may also affect the Claimant's eligibility for Medicaid, Supplemental Security Income and other government benefits. The Claimant should consult his or her own tax and legal advisor before applying for an Accelerated Death Benefit.  The Company is not responsible for any tax owed or government benefit denied, as a result of the Accelerated Death Benefit payment.

LIMITATIONS.  No Accelerated Death Benefit will be paid:
  (1)   if any required premium is due and unpaid;
  (2)   on any conversion policy purchased in accord with the Conversion Privilege;
  (3)   without the written approval of the bankruptcy court, if the Insured Person has filed for bankruptcy;
  (4)   without the written consent of the beneficiary, if the Insured Person has named an irrevocable beneficiary;
  (5)   without the written consent of the assignee, if the Insured Person has assigned his or her rights under this Policy;
  (6)   if any part of the Life Insurance must be paid to the Insured Person's child, spouse or former spouse; pursuant to a legal separation agreement, divorce decree, child support order or other court order;
  (7)   if the Claimant is Terminal due to a suicide attempt, while sane; or due to an intentionally self-inflicted injury;
  (8)   if a government agency requires the Insured Person or the Claimant to use the Accelerated Death Benefit to apply for, receive or continue a government benefit or entitlement; or
  (9)   if an Accelerated Death Benefit has been previously paid for the Claimant under this Policy.

GL1101-9.8 01 MO

ADB-DEP.
07/01/13

LIN001044

# CONVERSION PRIVILEGE - CONVERSION BENEFITS

**GENERAL CONVERSION BENEFIT.** An individual life policy (known as a conversion policy) may be purchased from the Company without evidence of insurability, if all or part of anyone's life insurance under this Policy terminates due to:

(1)  termination of the Insured Person's employment or membership in an eligible class; or
(2)  a dependent's ceasing to be an eligible family member due to the Insured Person's death or divorce, or a child's marriage or attainment of the limiting age.

To purchase a conversion policy, application and payment of the first premium must be made within 31 days after the life insurance is terminated. Any policy issued under the General Conversion Benefit will:

(1)  be for an amount not to exceed the amount of the life insurance which was terminated; less the amount of any group life insurance for which the person becomes eligible within 31 days after insurance terminates;
(2)  be on any form (except term) then issued by the Company at the age and amount for which application is made;
(3)  be issued at the Insured Person's age at nearest birthday;
(4)  be issued without disability or other supplemental benefits; and
(5)  require premiums based on the class of risk to which the person then belongs.

**CONVERSION BENEFIT-POLICY TERMINATION OR AMENDMENT.** A conversion policy also may be purchased from the Company if:

(1)  all or a part of anyone's insurance terminates due to amendment or termination of this Policy; and
(2)  that person has been covered continuously under this Policy for at least five years.

Any conversion policy issued due to Policy termination or amendment will be subject to the same conditions as a policy issued under the General Conversion Benefit except its amount may not exceed the lesser of:

(1)  $10,000; or
(2)  the Amount of Life Insurance which terminates less the amount of any group life insurance for which the Insured Person becomes eligible within 31 days after the termination.

## PROVISIONS APPLICABLE TO ALL CONVERSION POLICIES

**EFFECTIVE DATES.** The coverage provided by a conversion policy issued under this Section will be effective on the later of:

(1)  its date of issue; or
(2)  31 days after the date on which the person's life insurance terminated.

**DEATH DURING CONVERSION PERIOD.** The Company will pay a death benefit under this Policy equal to the amount of the life insurance which could have been converted, if the person:

(1)  was entitled to purchase a conversion policy; and
(2)  dies within the 31 day conversion period.

This death benefit will be paid even if no one applied for the conversion policy. If the first premium was paid for the conversion policy, the amount of the premium will be refunded and the conversion policy will be void.

**NOTICE OF CONVERSION PRIVILEGES-INSURED PERSONS.** When an Insured Person's Personal Insurance terminates, written notice of the right to convert will be:

(1)  given personally to the Insured Person; or
(2)  mailed to the Insured Person at his last known address.

An additional period in which to convert will be granted if this written notice is not given to the Insured Person at least 15 days before the end of the 31 day conversion period. Any such extension of the conversion period will expire on the earliest of:

(1)  15 days after the Insured Person is given the written notice; or
(2)  60 days after the end of the 31 day conversion period even if the Insured Person is never given the notice.

No death benefit will be payable under this Policy after the 31 day conversion period has expired even though the right to convert may be extended.

GL1101-10 MO

DEP.-$10,000
07/01/13


Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 45 of 64

LIN001045

## DEPENDENTS LIFE INSURANCE

BENEFIT. Upon receipt of satisfactory proof of a Dependent's death while insured under this Policy, the Company will pay the amount of the Dependents Life Insurance in effect on the date of such death. This amount is shown in the Schedule of Insurance. The death benefit will be paid:
- (1) to the Insured Person; or
- (2) if the Insured Person fails to survive the Dependent, to the Insured Person's Beneficiary or according to the Facility of Payment Section.

DEPENDENT. A Dependent means a person who meets the definition of a dependent of the Insured Person under the provision of the U.S. Internal Revenue Code; and is an Insured Person's:
- (1) spouse who is not legally separated from the Insured Person;
- (2) unmarried child at least 14 days but less than 23 years of age;
- (3) unmarried child less than 23 years of age, if attending an accredited educational institution for the minimum credit hours required to maintain full-time student status there; or
- (4) unmarried child who is totally and permanently disabled and who became so disabled prior to reaching 23 years of age.

A legally adopted child is considered the Insured Person's child from the date of placement in the Insured Person's home for an agency adoption; or from the date the adoption petition is filed, if later, for a private adoption.

In addition to naturally born and legally adopted children, the word "child" includes an Insured Person's stepchild or foster child; provided the child resides in the Insured Person's household and is dependent on the Insured Person for principal support.

The term Dependent does not include anyone serving in the armed forces of any state or country; except for duty of 30 days or less for training in the Reserves or National Guard.

ELIGIBILITY. An Insured Person becomes eligible for Dependents Life Insurance on the latest of:
- (1) the date the Insured Person becomes eligible for Personal Insurance;
- (2) the effective date of this Section; or
- (3) the date the Insured Person first acquires a Dependent.

EFFECTIVE DATES. An Insured Person's Dependents Life Insurance will become effective on the latest of the following dates:
- (1) the date the Insured Person becomes eligible for Dependents Life Insurance;
- (2) the date the Insured Person makes written application for Dependents Life Insurance and signs a payroll deduction order; and
- (3) the date the Company approves any required evidence of insurability on all the Insured Person's Dependents.

If an Insured Person acquires a new Dependent while insured for Dependents Life Insurance, insurance for that Dependent will take effect on the date the Dependent is acquired.

If a Dependent is confined in a hospital on the date his or her Dependents Life Insurance would otherwise take effect, then Dependents Life Insurance for that Dependent will not take effect until ten days after final discharge from the hospital.

LIN001046

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 46 of 64

EVIDENCE OF INSURABILITY. Each Insured Person's Dependent must submit evidence of insurability satisfactory to the Company if the Insured Person:

(1) makes application for Dependents Insurance more than 31 days after the date such Insured Person becomes eligible for Dependents Insurance; or
(2) elects to be insured for Dependents Insurance after such Insured Person had requested:
    (a) termination of the Dependents Insurance; or
    (b) cancellation of the payroll deduction order; or
(3) makes application for Dependents Insurance after it has automatically terminated, due to failure to pay premium by the end of the grace period.

INDIVIDUAL TERMINATION OF DEPENDENT INSURANCE. An Insured Person's Dependents Insurance will cease for all of the Insured Person's Dependents on the earliest of:

(1) the date the Insured Person's Personal Insurance terminates;
(2) the date Dependent Insurance is discontinued under this Policy;
(3) the date the Insured Person ceases to be in a class of employees eligible for Dependent Insurance;
(4) the date the Insured Person requests that the Dependent Insurance be terminated; or
(5) the last day of the premium paying period for which the Insured Person has made any required contribution toward the cost of the Dependent Insurance.

Dependents Insurance on a particular Dependent will cease on the earliest of:

(1) the date he or she ceases to be a Dependent as defined in this Policy;
(2) the date he or she becomes covered under this Policy as an Insured Person; or
(3) the date he or she enters the armed forces of any state or country; except for duty of 30 days or less in the Reserves or National Guard. (If the Insured Person sends proof of military service, the Company will refund any unearned premium.)

MISSTATEMENT OF AGE. If the age of a Dependent has been misstated, premiums will be subject to an equitable adjustment. If the amount of benefit is dependent upon age, the benefit will be that which would have been payable based upon the Dependent's correct age.

ASSIGNMENT. Dependents Insurance may not be assigned.

INCONTESTABILITY. Except for non-payment of premiums, the Company may not contest the validity of this Policy as to any Dependent, after it has been in force for two years during the lifetime of that Dependent. This clause will not affect the Company's right to contest claims made for accidental death, or dismemberment benefits.

GL1101-12 97

21

LIN001047

## CLAIMS PROCEDURES
## FOR LIFE OR ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

**NOTE:** This Policy may include an Extension of Death Benefit, an Accelerated Death Benefit or a Living Benefit. If so, please refer to that section for special claim procedures.

### NOTICE AND PROOF OF CLAIM

**Notice of Claim.** Written notice of an accidental death or dismemberment (AD&D) claim must be given within 20 days after the loss occurs; or as soon as reasonably possible after that.* The notice must be sent to the Company's Group Insurance Service Office. It should include the Insured Person's name, address and Policy number.

**Claim Forms.** When notice of claim is received, the Company will send claim forms for filing the required proof. If the Company does not send the forms within 15 days; then the Insured Person or Beneficiary (the claimant) may send the Company written proof of claim in a letter. It should state the nature, date and cause of the loss.

**Proof of Claim.** The Company must be given written proof of an AD&D claim within 90 days after the date of the loss; or as soon as reasonably possible after that.* Proof of claim must be provided at the claimant's own expense. It must show the nature, date and cause of the loss. In addition to the information requested on the claim form, documentation must include:
- (1) A certified copy of the death certificate, for proof of death.
- (2) A copy of any police report, for proof of accidental death or dismemberment.
- (3) A signed authorization for the Company to obtain more information.
- (4) Any other items the Company may reasonably require in support of the claim.

**\* Exception:** Failure to give notice or furnish proof of claim within the required time period will not invalidate or reduce the claim; if it is shown that it was done as soon as reasonably possible. These time limits will not apply to a life insurance claim, or to any claim while the claimant lacks legal capacity.

**EXAM OR AUTOPSY.** At anytime while a claim is pending, the Company may have the Insured Person examined:
- (1) by a Physician of the Company's choice;
- (2) as often as reasonably required.

If the Insured Person fails to cooperate with an examiner or fails to take an exam, without good cause; then the Company may deny benefits, until the exam is completed. In case of death, the Company may also have an autopsy done, where it is not forbidden by law. Any such exam or autopsy will be at the Company's expense.

**TIME OF PAYMENT OF CLAIMS.** Any benefits payable under this Policy will be paid:
- (1) immediately after the Company receives complete proof of claim and confirms liability; and
- (2) in no event more than 30 days after the Company receives acceptable proof of claim.

### TO WHOM PAYABLE

**Death.** Any benefits payable for the Insured Person's death will be paid in accord with the Beneficiary, Facility of Payment, and Settlement Options sections of this Policy. If this Policy includes Dependent Life Insurance; then any benefits payable for an insured Dependent's death will be paid to:
- (1) the Insured Person, if he or she survives that Dependent; or
- (2) the Insured Person's Beneficiary, or in accord with the Facility of Payment section; if the Insured Person does not survive that Dependent.

**Dismemberment.** If this Policy includes Accidental Death and Dismemberment Benefits; then any benefit, other than the Insured Person's death benefit, will be paid to the Insured Person.

GL1101-13A 02 MO

L/ADD
07/01/13

LIN001048

**NOTICE OF CLAIM DECISION.** The Company will send the claimant a written notice of its claim decision. If the Company denies any part of the claim; then the written notice will explain:
  (1)   the reason for the denial, under the terms of this Policy and any internal guidelines;
  (2)   how the claimant may request a review of the Company's decision; and
  (3)   whether more information is needed to support the claim.

The Company will send this notice:
  (1)   within 15 days after resolving the claim;
  (2)   within 30 days after receiving acceptable proof of claim; and
  (3)   if reasonably possible, within:
    (a)   90 days after receiving the first proof of a death or dismemberment claim; or
    (b)   45 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.

**Delay Notice.** If the Company needs more than 15 days to process a claim, in a special case; then an extension will be permitted. If needed, the Company will send the claimant a written delay notice:
  (1)   by the 15th day after receiving the first proof of claim; and
  (2)   every 30 days after that, until the claim is resolved.
The notice will explain the special circumstances which require the delay, and when a decision can be expected.

In any event, the Company must send written notice of its decision within:
  (1)   180 days after receiving the first proof of a death or dismemberment claim; or
  (2)   105 days after receiving the first proof of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.
If the Company fails to do so; then there is a right to an immediate review, as if the claim was denied.

**Exception:** If the Company needs more information from the claimant to process a claim; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for claim processing.

**REVIEW PROCEDURE.** The claimant may request a claim review, within:
  (1)   60 days after receiving a denial notice of a death or dismemberment claim; or
  (2)   180 days after receiving a denial notice of a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy.

To request a review, the claimant must send the Company a written request, and any written comments or other items to support the claim. The claimant may review certain non-privileged information relating to the request for review.

**Notice of Decision.** The Company will review the claim and send the claimant a written notice of its decision. The notice will explain the reasons for the Company's decision, under the terms of this Policy and any internal guidelines. If the Company upholds the denial of all or part of the claim; then the notice will also describe:
  (1)   any further appeal procedures available under this Policy;
  (2)   the right to access relevant claim information; and
  (3)   the right to request a state insurance department review, or to bring legal action.

For a death or dismemberment claim, the notice will be sent within 60 days after the Company receives the request for review; or within 120 days, if a special case requires more time. For a claim for any Extension of Death Benefit, Living Benefit or Accelerated Death Benefit available under this Policy, the notice will be sent within 45 days after the Company receives the request for review; or within 90 days, if a special case requires more time.

GL1101-13A 02 MO

L/ADD
07/01/13

LIN001049

**Delay Notice.** If the Company needs more time to process an appeal, in a special case; then it will send the Insured Person a written delay notice, by the 30th day after receiving the request for review. The notice will explain:

   (1)   the special circumstances which require the delay;
   (2)   whether more information is needed to review the claim; and
   (3)   when a decision can be expected.

**Exception:** If the Company needs more information from the claimant to process an appeal; then it must be supplied within 45 days after the Company requests it. The resulting delay will not count towards the above time limits for appeal processing.

**Claims Subject to ERISA** (Employee Retirement Income Security Act of 1974). Before bringing a civil legal action under the federal labor law known as ERISA, an employee benefit plan participant or beneficiary must exhaust available administrative remedies. Under this Policy, the claimant must first seek two administrative reviews of the adverse claim decision, in accord with this section. If an ERISA claimant brings legal action under Section 502(a) of ERISA after the required reviews; then the Company will waive any right to assert that he or she failed to exhaust administrative remedies.

**RIGHT OF RECOVERY.** If benefits have been overpaid on any claim; then full reimbursement to the Company is required within 60 days. If reimbursement is not made; then the Company has the right to:

   (1)   reduce future benefits until full reimbursement is made; and
   (2)   recover such overpayments from the Insured Person, or from his or her Beneficiary or estate.

Such reimbursement is required whether the overpayment is due to fraud, the Company's error in processing a claim, or any other reason.

**LEGAL ACTIONS.** No legal action to recover any AD&D benefits may be brought until 60 days after the required written proof of claim has been given. No such legal action may be brought more than three years after the date written proof of claim is required. These time limits will not apply to a life insurance claim, however.

GL1101-13A 02 MO

L/ADD
07/01/13

LIN001050

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 50 of 64

# ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE

**BENEFIT.** If an Insured Person sustains an accidental bodily injury, and the injury directly causes one of the following losses within 365 days of the date of that injury; then the Company will pay the benefit listed:

| LOSS | BENEFIT |
|------|---------|
| Loss of one hand by severance at or above the wrist | One-half the Principal Sum |
| Loss of one foot by severance at or above the ankle | One-half the Principal Sum |
| Irrecoverable loss of the sight in one eye | One-half the Principal Sum |
| Any combination of two or more of the losses listed above | Principal Sum |
| Loss of life | Principal Sum |

The total benefit for all losses resulting from the same accident may not exceed the Principal Sum. The Principal Sum for the Insured Person's classification is shown in the Schedule of Insurance.

**TO WHOM PAYABLE.** Benefits for loss of life will be paid in accord with the Beneficiary Section. All other benefits will be paid to the Insured Person.

**LIMITATIONS.** Benefits are not payable for any loss to which a contributing cause is:
   (1)   intentional self-inflicted injury or self-destruction while sane;
   (2)   disease, bodily or mental infirmity, or medical or surgical treatment of these;
   (3)   the Insured Person's participation in a riot;
   (4)   duty as a member of any military, naval or air force;
   (5)   war or any act of war, declared or undeclared;
   (6)   the Insured Person's participation in the commission of a felony;
   (7)   use of drugs; except when prescribed by a Physician;
   (8)   voluntary inhalation of gas, including carbon monoxide;
   (9)   travel or flight in any aircraft, including balloons and gliders; except as a fare paying passenger on a regularly scheduled flight; or
  (10)   the Insured Person's driving a vehicle while having an alcohol concentration of .10 grams of alcohol or more per 100 milliliters of blood.

GL1101-14 90 MO

OCC.
07/01/13

LJN001051

## SAFE DRIVER BENEFIT

BENEFIT. If an Insured Person dies as a direct result of a covered auto accident, for which Accidental Death and Dismemberment Benefits are payable; then:
- (1)   an additional Seat Belt Benefit will be payable, if the Insured Person was wearing a properly fastened seat belt at the time of the accident; and
- (2)   an additional Air Bag Benefit will be payable, if the auto was equipped with air bag(s).

The Seat Belt Benefit equals $10,000 or 10% of the Principal Sum, whichever is less; and the Air Bag Benefit equals $10,000 or 10% of the Principal Sum, whichever is less. The Seat Belt Benefit and the Air Bag Benefit will not be less than $1,000 per Insured Person. The Principal Sum is the amount payable because of the Insured Person's accidental death.

A copy of the police report must be submitted with the claim. The position of the seat belt or presence of an air bag must be certified by:
- (1)   the official accident report; or
- (2)   the coroner, traffic officer or other investigating officer.

Upon receipt of satisfactory written proof, the additional benefit will be paid in accord with the Beneficiary section.

DEFINITIONS. As used in this provision:

"Auto" means a 4-wheel passenger car, station wagon, jeep, pick-up truck or van-type car. It must be licensed for use on public highways. It includes a car owned or leased by the Group Policyholder.

"Intoxicated," "Impaired," or "Under the Influence of Drugs" shall be defined as by the jurisdiction where the accident occurs.

"Seat Belt" means a properly installed:
- (1)   seat belt or lap and shoulder restraint; or
- (2)   other restraint approved by the National Highway Traffic Safety Administration.

LIMITATIONS. Safe Driver Benefits will not be paid if:
- (1)   the Accidental Death and Dismemberment Benefit is not paid under this Policy for the Insured Person's death; or
- (2)   at the time of the accident, the Insured Person or any other person who was driving the auto in which the Insured Person was traveling:
  - (a)   was driving without a valid drivers' license;
  - (b)   was driving in excess of the legal speed limit; or
  - (c)   was driving while intoxicated, impaired, or under the influence of drugs (except for drugs taken as prescribed by a Physician for the driver's use).

     The above limitations will apply, whether or not the driver is convicted.

LIN001052

Case 3:17-cv-05060-MDH   Document 35-6   Filed 05/15/18   Page 52 of 64

## NOTICE CONCERNING COVERAGE
## LIMITATIONS AND EXCLUSIONS UNDER THE LIFE AND
## HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of Missouri who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state, to write these types of insurance are members of the Missouri Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the guaranty association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases to keep coverage in force. The valuable extra protection provided by these insurers through the guaranty association is not unlimited, however. And as noted below this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

The Missouri Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in Missouri. You should not rely on coverage by the Missouri Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus. Insurance companies or their agents are required by law to give or send you this notice. However, insurance companies and their agents are prohibited by law from using the existence of the guaranty association to induce you to purchase any kind of insurance policy. YOU MAY CONTACT EITHER THE ASSOCIATION OR THE MISSOURI DEPARTMENT OF INSURANCE AT THE FOLLOWING ADDRESSES SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS NOTICE.

The Missouri Life and Health Insurance Guaranty Association
994 Diamond Ridge, Suite 102
Jefferson City, MO 65109

Missouri Division of Insurance
P.O. Box 690
Jefferson City, MO 65102-0690

The state law that provides for this safety-net coverage is called the Missouri Life and Health Insurance Guaranty Association Act. Included is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the guaranty association.

MO NOTICE A 06

27

07/01/13

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 53 of 64

LIN001053

Generally, persons will be protected by the Life and Health Insurance Guaranty Association if they live in this state, and hold a life or health insurance contract, or an annuity, or a certificate under a group policy or contract. However, not all individuals with a right to recover under life or health insurance policies or annuities are protected by the Act. A person is not protected when:

1. The person is eligible for protection under the laws of another state;
2. The person purchased the insurance from a company that was not authorized to do business in this state;
3. The policy is issued by an organization which is not a member insurer of the association; or
4. The person does not live in this state, except under limited circumstances.

Additionally, the Association may not provide coverage for the entire amount a person expects to receive from the policy. The Association does not provide coverage for any portion of the policy where the person has assumed the risk, for any policy of reinsurance (unless an assumption certificate was issued), for interest rates that exceed a specified average rate, for employers' plans that are self-funded, for parts of plans that provide dividends or credits in connection with the administration of policy, or for unallocated annuity contracts (which are generally issued to pension plan trustees).

The Act also limits the amount the Association is obligated to pay persons on various policies. The Association does not pay more than the contractual obligation of the insurance company. The Association does not have to pay more than three hundred thousand dollars ($300,000) in death benefits for any one life regardless of the number of policies that insure that life. The Association does not have to pay amounts over one hundred thousand dollars ($100,000) in cash surrender or withdrawal benefits on one life regardless of the number of policies insuring that individual. For health insurance benefits, the Association is not obligated to pay over one hundred thousand dollars ($100,000) including net cash surrender and withdrawal benefits. On an annuity contract, the Association is not liable for over one hundred thousand dollars ($100,000) in present value. Finally, the Association is never obligated to pay more than a total of three hundred thousand dollars ($300,000) for any one insured for any combination of insurance benefits.

MO NOTICE A 06

28

07/01/13

LIN001054

AMENDMENT TO BE ATTACHED TO AND MADE PART OF GROUP POLICY NO.: 000010157325

ISSUED TO: Lester E. Cox Medical Center

The Policy is amended by the addition of the following provisions.

## PRIOR INSURANCE CREDIT UPON TRANSFER OF
## LIFE INSURANCE CARRIERS

This provision prevents loss of life insurance coverage for an Insured Person, which could otherwise occur solely because of a transfer of insurance carriers. This Policy will provide the following Prior Insurance Credit, when it replaces a prior plan.

"Prior Plan" means a prior carrier's group life insurance policy, which this Policy replaced within 1 day of the prior plan's termination date.

FAILURE TO SATISFY ACTIVE WORK RULE. Subject to payment of premiums, this Policy will provide life coverage for a Person who:
  (1)  was insured under the prior plan on its termination date;
  (2)  was otherwise eligible under this Policy; but was not Actively-At-Work due to Injury or Sickness on its Effective Date;
  (3)  is not entitled to any extension of life insurance under the prior plan; and
  (4)  is not Totally Disabled (as defined in the Extension of Death Benefit section of this Policy) on the date this Policy takes effect.

AMOUNT OF LIFE INSURANCE. Until the Person satisfies this Policy's Active Work rule, the amount of his or her group life insurance under this Policy will not exceed the amount for which the Person was insured under the prior plan on its termination date.

This Amendment takes effect on the effective date of coverage under this Policy. In all other respects, this Policy remains the same.

### THE LINCOLN NATIONAL LIFE INSURANCE COMPANY

Officer of the Company

GL1101-AMEND. PC1

Prior Ins. Cred. - Life
07/01/13

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 55 of 64

LIN001055

# Chronological Activity List

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Claimant:** | JAMIE FLANAGAN | | | **Occupation:** | Nurse Practi | | | |
| **SSN:** | ▬ | **DOB:** | ▬ | **Posted:** | 6/20/2014 | **Months Dis:** | 47 | |
| **Claim #:** | 1140128972 | **DOD:** | 8/25/2013 | **Ben:** | | **Months Pd:** | 0 | |
| **Coverage:** | GR LIFE | **Status:** | CLOSED | **Close Date:** | 9/3/2014 | **Assignee:** | HIELLEB | |
| **Policy Holder:** | Lester E. Cox Medical Center | | | | | **Deceased:** | | |
| **Case Mgr. Status:** | INV 7/23/2014 | | | **Close Code:** | Not TD Any Occ | | | |

Case 3:17-cv-05060-MDH     Document 35-6     Filed 05/15/18     Page 56 of 64

LIN001056



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Packet 1409792621146

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 3, 2014

JAMIE  FLANAGAN
986 S. HEDGE DR
NIXA, MO 65714

Re:   Policyholder:  LESTER E COX MEDICAL CENTER
      Policy Number: 00001015732500000
      Claim Number: 1140128972
      Claimant:  Jamie Flanagan

Dear Mrs. Flanagan:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy.  Eligibility for this benefit does not have to be initiated by you or your employer.  We conduct this assessment to determine whether your group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

For the life insurance coverage to be continued without payment of premiums, you must remain Totally Disabled per your policy provision.  Based on information gathered in connection with your claim, waiver of your life insurance premiums has been approved for the period of 08/25/2013 to 08/25/2014 for the following:

- Employee Life coverage in the amount of $181,000.00
- Optional Employee Life coverage in the amount of $70,000.00

To be eligible for continued benefits under the policy issued to Lester E Cox Medical Center by The Lincoln National Life Insurance Company it must be established that you remain continuously Totally Disabled from any occupation.  The policy definition of Totally Disabled as specified in the Extension of Death Benefit provision is as follows:

> An Insured Person (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training or experience; and (2) is not engaging in any gainful employment or occupation.

©2014  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LIN001057

Our records show that you last worked on August 25, 2013, due to lumbar post laminectomy syndrome, spinal stenosis, and chronic pain. The Attending Physician's Statement dated November 17, 2013, by Dr. Donald Hopewell indicated you had reported to have symptoms of low back pain with pain spreading into your lower extremities, your examination showed normal, and spondylolisthesis with a failed fusion and nerve root scarring. You had failed a post lumber fusion spinal cord stimulator trial. Your pain was reported to increase throughout the day and it was unable to be controlled with medications. Also, Dr. Hopewell was unable to quantify restrictions for sit, stand, walk, manipulation, and postural limitations, and you were recommended vocational rehabilitation. Notes dated September 19, 2013, indicated you complained of weakness in the legs, your examination showed normal, and there were no motor deficits. Notes dated October 31, 2013, indicated the spinal cord stimulator trial had failed and you were prescribed Methadone. You had a Functional Capacity Evaluation performed on April 23, 2014 by occupational therapy which indicated the Isometric strength testing was not performed due to therapist discretions, secondary to multiple diagnosis and lifting restrictions. Reaching was not restricted, squatting was recommended very occasional to not recommended, bending was not recommended, sitting was occasional (20 minute duration), standing was occasional to very occasional (10 minutes duration), walking was to be occasional, and stair climb was determined to be very occasional. Balancing was only recommended at protective heights and crawling was very occasional to not recommended, you were able to occasionally lift up to 7 pounds, your velocity was good, and crepitus was not noted. Your movement pattern did not indicate pain but suggested some quadriceps weakness. You demonstrated the ability to crawl on a carpeted surface without complaints of pain or discomfort, you had slow transition from standing to floor, gait decreased pelvic rotation, and increased right leg length with test progression with walking.

A Peer review was performed by Dr. Meghana Karande (Board Certified in Physical Medicine and Rehabilitation) on June 9, 2014 optined "Thus, on the basis on lumbar degenerative disease status post lumbar fusion and chronic but stable pain, restrictions and limitations would include: The claimant may stand/walk up to two hours each out of eight hours with normal breaks. The claimant may sit up to 6 out of 8 hours with normal breaks. She would require position changes for five minutes every hour. The claimant may lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. Reach would not be restricted in all directions. The claimant may climb stairs, kneel, bend, stoop, squat, and crouch occasionally. Climbing ropes, ladders and scaffolds and scrawl would be never. Handling, fingering, and feeling would be unrestricted. "

Therefore, we cannot waive your group life insurance premiums under the Extension of Death Benefit provision of this policy after 08/25/2014.

A separate letter that does not include your confidential information has been mailed to Lester E Cox Medical Center advising of our decision.

We will also be refunding Lester E Cox Medical Center for all the premiums paid to us for your group life insurance for the period of 08/25/2013 to 08/25/2014. Please contact Lester E Cox Medical Center directly to obtain a refund for these premiums paid.

Additionally, you may have the right to convert your group life insurance to an individual life insurance policy. Please contact Lester E Cox Medical Center within 15 days from the date of this letter regarding your eligibility for the conversion privilege.

LIN001058

REF #262867

## Appeal Rights

You, your attorney or a person legally authorized as your representative may appeal the denial by requesting a review of your denied claim. To initiate this process, submit your written request for review to us at the following address within 180 days after you receive this denial notice.

Claims Shared Services
The Lincoln National Life Insurance Company
PO Box 2337
Omaha, NE 68103
Fax: 800-922-3503

Please include the following with your appeal:

1. The policy and claim number;
2. Your reason(s) for appealing; and
3. If applicable, any additional documentation to support the appeal, such as medical treatment records, laboratory results, x-rays or other testing results.

Following receipt of your appeal, we will review the claim and provide you with a full written explanation of the decision within 45 days. If you wish, you may also request copies of the pertinent documents related to the claim.

If your plan is subject to ERISA, you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office or your state insurance regulatory agency. In addition, once all required reviews of your claim have been completed, you have the right to bring a civil action under applicable law.

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Hazel Ellebb
Life Waiver Benefit Specialist
The Lincoln National Life Insurance Company

LIN001059



Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

Packet 1409792625025
**The Lincoln National Life
Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.Lincoln4benefits.com

September 3, 2014

LESTER E COX MEDICAL CENTER
ATTN JOSHUA EVANS
3801 S NATIONAL AVE
SPRINGFIELD, MO 65807

Re:    Extension of Death Benefit
Insured:  Jamie Flanagan
Policy Number: 00001015732500000
Claim Number: 1140128972

Dear Mr. Evans:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that provides a prompt assessment of the Extension of Death Benefit provided by your Group Life Policy. Eligibility for this benefit does not have to be initiated by the employer or the insured. We conduct this assessment to determine whether the group life insurance coverage can remain in force without payment of premiums as defined in the Extension of Death Benefit provision.

For the life insurance coverage to be continued without payment of premiums, Jamie Flanagan must remain Totally Disabled per the policy provision. Based on information that we've gathered in connection with Jamie Flanagan's claim, waiver of the life insurance premiums has been approved for the period of 08/25/2013 to 08/25/2014 for the following:

- Employee Life coverage in the amount of $181,000.00
- Optional Employee Life coverage in the amount of $70,000.00

Information submitted in the claim does not support that Mrs. Flanagan remained continuously totally disabled after 08/25/2014. A separate letter has been mailed to Jamie Flanagan advising of our decision and providing appeal rights.

Any premium that had been paid on Mrs. Flanagan's behalf for the period of 08/25/2013 to 08/25/2014 should be taken on your next billing statement as a credit.

There may be two options available in order for Jamie Flanagan's life insurance coverage to remain in force. One option is to continue to pay premiums on Mrs. Flanagan's behalf. Another option is to exercise the right to convert the life insurance policy. Mrs. Flanagan has

©2014  Lincoln National Corporation www.lincoln4benefits.com
Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.
Affiliates are separately responsible for their own financial and contractual obligations.

LIN001060

been advised to contact Lester E Cox Medical Center regarding eligibility for the conversion privilege.

**This decision does not affect your claim for Long Term Disability Benefits.**

Please contact our office with any questions you may have at the number listed above or email us at nationalaccountclaims@lfg.com. You can also register for our website at www.Lincoln4Benefits.com to view your benefits and claim status online 24 hours a day.

Sincerely,

Hazel Ellebb
Life Waiver Benefit Specialist
The Lincoln National Life Insurance Company

LIN001061

**Ellebb, Hazel**

| | |
|---|---|
| **From:** | joshua.evans@coxhealth.com |
| **Sent:** | Thursday, July 10, 2014 3:29 PM |
| **To:** | Ellebb, Hazel |
| **Subject:** | RE: (secure) Jamie Flanagan |

Jamie was in Class 3. She had group life coverage in the amount of $181,000.00. She also had optional coverage on herself in the amount of $70,000.00. She paid $16.66 per month for the optional coverage. Please let me know if you have any other questions.

Thanks,

Josh

-----------Original Message:

  FROM: Hazel.Ellebb@lfg.com
    TO: "joshua.evans@coxhealth.com"
<joshua.evans@coxhealth.com>
   DATE: June 26, 2014 1:09:23 PM EDT
SUBJECT: (secure) Jamie Flanagan

Hello Mr. Evans,

I am currently reviewing a Life Waiver of Premium (Extension of Death
Benefit) claim # 1140128972 for Ms. Jamie Flanagan. I need to confirm
her life eligibility as of her day last worked of 8/25/13. What class #
would Ms. Flanagan should be listed as for her life coverage, did she
elect Optional life coverage for herself and/or any dependents? If so,
Please confirm the amount of life coverages and the amount of premiums
paid for her life coverages. If you should have any additional questions
or concerns, please feel free to contact me directly at (402) 361-2991.
Thank you in advance for your assistance, it is greatly appreciated.

Sincerely,

1

Case 3:17-cv-05060-MDH    Document 35-6    Filed 05/15/18    Page 62 of 64

LIN001062

Mrs. Hazel Ellebb
Claim Solutions - Group Protection
Lincoln Financial Group
8801 Indian Hills Drive
Omaha, NE 68114

Toll Free Phone: 800.423.2765
Phone: 402.361.2991
Fax: 402.361.1689
Email: hazel.ellebb@LFG.com (link:
mailto:hazel.ellebb@LFG.com)
You're In Charge®
Find us on facebook: www.facebook.com/LincolnFinancialGroup

Notice of Confidentiality: **This E-mail and any of its
attachments may
contain
Lincoln National Corporation proprietary information, which
is
privileged, confidential,
or subject to copyright belonging to the Lincoln National
Corporation
family of
companies. This E-mail is intended solely for the use of the
individual
or entity to
which it is addressed. If you are not the intended recipient
of this
E-mail, you are
hereby notified that any dissemination, distribution,
copying, or action
taken in
relation to the contents of and attachments to this E-mail
is strictly
prohibited
and may be unlawful. If you have received this E-mail in
error, please
notify the
sender immediately and permanently delete the original and
any copy of
this E-mail
and any printout. Thank You.**

LIN001063


Financial Group®

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

July 2, 2014

**The Lincoln National Life Insurance Company**
Service Office:
8801 Indian Hills Drive
Omaha, NE 68114-4066
toll free (800) 423-2765
www.LFG.com

JAMIE FLANAGAN


Re: Extension of Death Benefit
Policy Holder: LESTER E. COX MEDICAL CENTER
Policy Number: 00001015732500000
Claim Number: 1140128972

Dear Mrs. Flanagan:

In order to provide the highest quality of customer service, The Lincoln National Life Insurance Company has implemented an integrated process that allows us to take a proactive approach in reviewing all disability related benefits you may be eligible for without you or your employer having to initiate the process.

The Lincoln National Life Insurance Company is currently reviewing your eligibility for the Extension of Death Benefit under your group life insurance policy with LESTER E. COX MEDICAL CENTER. Should you qualify for this benefit, your life insurance would remain in force without payment of premiums.

Currently we are reviewing the documentation provided for your Long Term Disability claim in order to make a determination regarding your Extension of Death Benefit under the group life insurance policy. We will contact you if additional information is needed or when a claim decision has been reached. Failure to provide requested documentation for your Long Term Disability claim may result in the termination of benefits under both policies.

Please contact our office with any questions you may have 1-800-423-2765 or email us at Claims@LFG.com. You can also register at our employee website at www.Lincoln4Benefits.com and view your benefits and claim status online 24 hours a day.

Sincerely,

Brandi Hawkins on behalf of Hazel Ellebb
Life Waiver Benefit Specialist
The Lincoln National Life Insurance Company

**LIN001064**