## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

| | |
|---|---|
| JAMIE S. FLANAGAN )<br><br>  Plaintiff, )<br><br>v.  )<br><br>THE LINCOLN NATIONAL LIFE )<br>INSURANCE COMPANY )<br><br>  Defendant, )<br> )<br> )<br> )<br> )<br> ) | Case No.:  17-CV-05060-MDH |

## PLAINTIFF'S STATEMENT IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Admitted.

9. Admitted.

10. Admitted.

1

11. Admitted.

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted

16. Admitted.

17. Admitted.

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Admitted.

28. Admitted.

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Admitted.

42. Admitted.

43. Admitted.

44. Admitted.

45. Admitted.

46. Admitted.

47. Defendant states that instead of seeking treatment during the following five month Period she attended a Functional Capacity Evaluation (FCE) at the request of her attorney presumably to support her claim. Plaintiff states the record reflects she was at maximum medical improvement from her condition and was only being treated with pain modalities which would not necessitate the need for ongoing medical treatment. Moreover, the document Defendant refers to at Exhibit A 786-804 indicates the evaluation was performed and submitted to Plaintiff's doctor, Dr. Hopewell. There is nothing indicating the evaluation was requested by counsel and any presumption the Defendant draws is simply speculative. The remainder of the report speaks for itself.

48. Admitted.

49. Admitted.

50. Admitted.

51. The Plaintiff admits the document she submitted with her appeal was the Functional Capacity Evaluation, however, counsel notes there is no evidence this evaluation was done at his request, counsel did not communicate with nor pay for the evaluation and any statement to the contrary is incorrect.

52. Admitted.

53. Admitted.

54. Plaintiff denies that Dr. Karande contacted Dr. Hopewell. (Exhibit A. p. 539)

55. Admitted.

56. Admitted.

57. Admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Admitted.

62. Admitted.

63. Admitted.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted.

4

69. Admitted.

70. Plaintiff admits the allegations in paragraph 70, however, notes that it is not unusual for a patient having received a fusion to only see a doctor ever 90 to 180 days.

71. Admitted.

72. Plaintiff avers Nurse Hartsock, who Defendant claims in paragraph 72 phoned Dr. Hopewell's office and spoke to a nurse who clarified that Plaintiff would know or the doctor may know how much she can lift is wholly unreliable hearsay from an unknown witness.

73. Admitted.

74. Admitted.

75. Admitted.

76. Defendant avers that Stacey Nidositko performed a detailed transferable skills analysis as set forth in State of Fact 76. Plaintiff notes the report of Ms. Nidositko is set for on page 568 of Exhibit A, speaks for itself and is hardly reflective of a detailed analysis.

77. Admitted.

78. Admitted.

79. Admitted.

80. In statement 80 Defendant asserts correctly that counsel for Plaintiff submitted letter from Dr. Hopewell that he had no recollection of any conversation with the "patient's insurance company regarding her disability." However, Defendant goes on to state "This is not surprising since it was an outside independent physician, not

5

Lincoln who discussed the claim with Dr. Hopewell." Defendant then goes on to reference what it avers the letter did not address. First of all Defendant's statement as to it not being surprising is not evidence, but opinion. Second, what is not contained in the letter is not evidence as to the veracity of the letter or any fact, but rather simply opinion.

81. Admitted.

82. Admitted, with the same replies as noted in answer to Statement 76 excepted here.

83. Admitted.

84. Admitted.

85. Plaintiff denies the allegation in Statement 85 that that Mr. Eldred contended with no basis or explanation whatsoever, that Dr. Thomas' restrictions were sub-sedentary or that two "TSA's" were somehow consistent with Dr. Thomas report. Mr. Eldred stated in his opinion Dr. Thomas report was sub-sedentary, which is merely contrary to Defendant's opinions. Each opinion in the record stands on its own merit and the court is certainly competent to review and evaluate evidence without assistance. Mr. Eldred's report is well documented and speaks for itself. (Exhbit A. 441-464)

86. Admitted.

87. Admitted.

88. Admitted.

89. Admitted.

90. Admitted.

91. Admitted.

92. Admitted.

93. In statement 93 Defendant assets that Plaintiff has not met her burden of proof

6

and that it correctly upheld its denial of benefits. Plaintiff objects to these statements

and denies the same noting these are the ultimate issues of the case, not facts and the

same is averred improperly in a statement of fact.

94. Admitted.

95. Plaintiff admits that Defendant provided all of the file with the exception of

Brandy Thomas curriculum vitae.

96. Admitted.

## SUGGESTIONS

Defendant sets forth two arguments in support of its motion, i.e.:
A. Plaintiff's medical evidence failed to satisfy her burden of proof proving total disability from any occupation.
B. Plaintiff's vocational evidence could not possibly meet her burden of proving disability from any occupation.

### A. Plaintiff's medical evidence failed to satisfy her burden of proof proving total disability from any occupation.

Despite the vast disparity in arguments made by counsel on both sides in this matter,

there is no real dispute other than subtle nuances between the parties as to the applicable

law in this matter. Defendant is correct that Plaintiff bears the burden of proof herein,

however, counsel urges the very points made by Defendant in its brief essentially prove

Plaintiff has shouldered her burden of proof.

There are 4 medical opinions of disability in this record, one from a

functional capacity evaluation (FCE), and three from physicians, Dr. Hopewell, Dr.

Karande and Dr. Thomas. The FCE indicates Plaintiff could sit for 20 minutes at a time,

stand for 10 minutes and walk occasionally. (Exh. A 804) Plaintiff was found to be able

to lift7 pounds occasionally, with no frequent lifting. (Id.) Plaintiff was found to be able

to do less than sedentary work. (Id.)

7

The second opinion herein are two separate opinions from Dr. Hopewell, Plaintiff's treating neurologist, and the only physician who gives an opinion who has ever seen Plaintiff. On November 17, 2013 Dr. Hopewell noted restrictions in response to the question "What the patient should not do" and replied "Work due to unlimited ability to rest/take breaks." Dr. Hopewell indicated Plaintiff's condition was at maximum improvement and she would never return to her prior level of function. Dr. Hopewell said sitting, standing, walking, etc. limits were "Unquantifiable." (Id. 924) Obviously, not working is inherently less than sedentary work as are unlimited rest periods and breaks. Later, Dr. Hopewell gave an opinion on April 21, 2015, which indicated Plaintiff could never lift nor carry any weight, could sit a third of an 8-hour work day, but only for a 20 minute duration, and stand and walk occasionally. (Ex. A p. 637) Again, less than 10 pounds is less than the definition for sedentary work.

Defendant had the file reviewed by Dr. Karande who found Plaintiff could stand or walk 2 hours in an 8-hour day, sit up to 6 hours, and requires a 5 minute position change every hour. (Ex. A p. 749). Dr. Karande's opinion is for sedentary work. Defendant had the file evaluated by Joseph G. Thomas, M.D. on March 9, 2016 an occupational medicine doctor (Ex. A p. 526) Dr. Thomas reviewed the report of Dr. Hopewell, the functional capacity evaluation and the report of Dr. Karande and stated "I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of lifting. Per the FCE, the claimant could lift up to 7 pounds occasionally." (Ex. A p. 524) Dr. Thomas indicates claimant can perform frequent sitting up to 20 minutes at a time and occasional standing and walking up to 10 minutes at a time. (Id.) Dr. Thomas noted the validity of the FCE and that the limitations are

8

consistent with the diagnosis of post laminectomy syndrome and chronic pain syndrome. (Ex A p. 525) Dr. Thomas states "The most objective testing for functional ability that was available was a Functional Capacity Evaluation and this was performed on 4/24/14. Her function was determined to be less than sedentary work based on her lifting limitations. It was determined to be a valid test. There was no medical evaluation contrary to this conclusion. (Ex. A p. 526) Dr. Thomas goes on to note "from 11/25/2015, the claimant would have decreased capacity for prolonged sitting, prolonged standing, lifting, bending, stooping and balancing.....I am in agreement with the Abilities Form provided by Dr. Hopewell on 4/21/15 with the exception of the lifting noted above. (Id.) This is Defendant's expert providing an opinion for less than sedentary work and giving 1) credence to the FCE and; 2) agreement with Dr. Hopewell with one exception which still in total limits Plaintiff to 7 pounds and less than sedentary work.

Defendant in its suggestions goes to great length to attempt to discredit Dr. Hopewell, as well Defendant must, as he is the only physician eliciting an opinion who spent any real time with Plaintiff. However, the attack on Dr. Hopewell is unfounded. Defendant attached an exhibit "B" to its suggestions which define sedentary work as "lifting, carrying, pushing, pulling 10 pounds occasionally, may involve standing and or walking for brief periods of time." (Defendant's Suggestions Exh. B, page 2) The critique of Dr. Hopewell fails for the most obvious reason which is Defendant's own expert, Dr.Thomas, stated " I am in agreement with the abilities form provided by Dr. Hopewell on 4/21/15 with the exception of the lifting noted above. (Exh. A to Plaintiff's Suggestions, page 526) In fact Dr. Thomas agrees that the FCE, is the most objective opinion as to claimant's ability to lift which he finds at 7 pounds in accordance with the

9

FCE.  Defendant critiques the FCE as invalid and unreliable, but its own expert found it the most objective evidence, something it does not address in its denials of Plaintiff's benefits, nor its brief because Defendant's own expert meets Plaintiff's burden of proof.

This issue is further driven home by Defendant's definition of sedentary work as it relates to lifting and carrying 10 pounds occasionally, mostly sitting and standing and or walking for brief periods.  The FCE finds Plaintiff can lift 7 pounds occasionally and Dr. Thomas agrees.  Those two opinions are less than sedentary work.  Dr. Hopewell's opinion is for zero pounds, again less than sedentary work.  What matters is that all three of these opinions conclude less than sedentary work.  Moreover, Plaintiff can only sit for 20 minutes at a time, which one can readily ascertain is inconsistent with "mostly sitting."  Finally, Defendant's contention that this record evidences the capacity for sedentary work is a myth which one must believe in a non-evidenced double hearsay phone call from Dr. Karande  to Dr. Hopewell to reach an opinion that Plaintiff can perform sedentary work and then two vocational opinions that are based on selected evidence reviewed by said experts, one of whom by her own curriculum vitae works solely for Defendant.

If we assume everything espoused by Defendant regarding Dr. Hopewell as to the treating physician rule, there is one glaring error, i.e., their own expert, Dr. Thomas, adopted verbatim his opinion with one exception.  However, there are more examples of bias toward Dr. Hopewell in defiance of the record.  Defendant sets forth Dr. Hopewell's report is "ambiguous, lukewarm and untimely" from one of her many doctor's. (Defendant's Suggestions page 33)  However, Defendant does not mention Dr. Hopewell is the only physician from who it elicited a written form.  Then Defendant states in its

10

brief "Dr. Hopewell declined to provide any narrative reports or letters explaining his opinions, though he had every opportunity to do so. Rather his opinions were set forth on two forms." Id. page 34. Defendant then goes on to critique Dr. Hopewell's completion of these forms. Defendant doesn't state they generated the form and provided it to Dr. Hopewell. What Dr. Hopewell did state unequivocally is that he did not believe there was anything he could do to sway the opinion of the insurer. (Exhibit A page 553)

Defendant states "And it was inconsistent with the fact that Plaintiff saw no less than five other practitioners whose records Dr. Hopewell did not even purport to review...." in criticizing Dr. Hopewell's opinion. (Defendant's Suggestions p. 36) There is no evidence that Dr. Hopewell did or did not read any other practitioner's records. In fact there are MRI reports from other practitioners in his records so we know he reviewed those reports. Moreover, most records are available through a computer program and Dr. Hopewell may well have read the whole file, however, what is paramount here is we cannot discredit a doctor for facts we assume that are not in evidence. Moreover, it may surprise Defendant that doctors first priority is to treat their patient and not repeatedly pacify insurance companies with motives contrary to their patient.

Defendant urges that Dr. Hopewell's opinion that Plaintiff could lift zero pounds is "conclusory and unexplained." (Defendant's Suggestions page 35) First of all zero means zero. Second, every opinion is necessarily conclusory and every other opinion in this record is no different and herein is twice 7 pounds and once 10 pounds or all but one below sedentary. However, the most absurd evidence Defendant makes in this case (and for the record I would make it clear this is Defendant's absurdity. Not its counsel) is set forth in Defendant's suggestions "...upon review of this form Nurse

11

Hartsock called Dr. Hopewell for clarification, and his nurse simply stated that Flanagan would know how much she could lift." (Id. page 35) This is not evidence relevant to this case. Defendant is relying on a statement of an unnamed nurse, who they do not even know if she ever spoke to Dr. Hopewell. Defendant does not know if this unnamed nurse ever spoke to or treated Plaintiff and then concludes this is a factor in discrediting Plaintiff and Dr. Hopewell. This is a large layer of self-serving hearsay from an unknown nurse and not reliable evidence. Certainly, this cannot be maintained in any court.

Defendant urges that the FCE is invalid and recites the opinion of Dr. Karande to to this effect. This argument can have no basis in fact in this case when Defendant's latter reviewing expert Dr. Thomas opined it was the most objective evidence and reliable.

## B. Plaintiff's vocational evidence could not possibly meet her burden of proving disability from any occupation.

With all due respect to Defendant's counsel the notion that Defendant obtained two separate "Transferable Skills Analyses" and that Plaintiff can perform work within her skills, education work history and restrictions, simply cannot pass muster. Suffice it to say the briefs filed herein go into far more depth debating the vocational reports than the approximately three pages of two expert reports tendered by Defendant.

The Defendant utilized a vocational report from Stacey Nidositko, MS, CRC, a Vocational Rehabilitation Counselor dated September 23, 2015. (Ex. A p. 568) The report from Ms. Nidositko indicates she reviewed a form completed by Plaintiff and the only medical evidence or opinion reviewed that she noted was Dr. Karande's report

12

of June 9, 2014, which indicated Plaintiff could perform sedentary work. (Id.) There is no evidence Ms. Nidositko reviewed any treating reports nor opinions from Dr. Hopewell nor the functional capacity evaluation. Premised upon solely Dr. Karande's opinion Ms. Nidositko opined Plaintiff could perform sedentary skilled work. (Id.) There is no logical reason Defendant would not provide its vocational expert all of the medical or, at the very least all opinions evidencing limitations to enable her to make a discretionary opinion. Ms. Nidositko based on a small portion of the evidence opined Plaintiff could perform sedentary work.

Defendant further utilized a vocational report dated March 21, 2016, from Brandy Thomas, M.A., CRC. (Ex. A p 520-521) This vocational evaluator reviewed only the prior report of Stacey Nidositko, MS, CRC and Dr. Thomas' report of March 9, 2016. (Id.) It is important to note Dr. Thomas' agreement with most of Dr. Hopewell's report and his affirmation of the FCE and contrast that these documents were not provided to Brandy Thomas. (Id.) Brandy Thomas mirrors Stacey Nidositko's analysis as to claimant's ability to perform sedentary skilled work. (Id.) 27. The curriculum vitae of Brandy Thomas (Exhibit B) shows no specific qualifications as a vocational expert and evidences the only work Ms. Thomas has performed since 2014 is for Defendant.

There is simply no credibility and abject bias in a reliance on opinions of experts who are only provided a small portion of the record. If we are to believe Defendant, Phil Eldred lacks credibility because he summarized the medical he reviewed in reaching his "stale and unsupported opinion." (Defendant's Suggestions pages 43-44) I do not see how
summarizing the record reflects anything more than an acknowledgment of what you reviewed but we know Mr. Eldred saw and read the entire record and Defendant's experts

13

saw only the limited, chosen portions of evidence they were afforded by Defendant.

We also know Defendant premised its decisions on an expert with little to no credentials who apparently only performs services for Defendant. (Exhibit B to Plaintiff's Suggestions) Furthermore, Defendant does not like that Mr. Eldred draws conclusions, but it calls its reports a "Transferrable Skills Analysis" which implies instantly any person can work who is reviewed and then the reports conclude by drawing conclusions. Moreover, both of Defendant's reports are premised upon conclusions based on a portion of the evidence. Mr. Eldred acknowledges in his report that Dr. Karanade finds Plaintiff can perform sedentary work, he simply concludes in his opinion, the overwhelming reports from the FCE, Dr. Hopewell and finally Defendant's expert Dr. Thomas lead to a conclusion of no work and draws his conclusion thereon.

Plaintiff does not like Defendant's vocational reports and defendant does not like Plaintiff's vocational report, such is the nature of litigation. What we know from the record is that Plaintiff's vocational report is premised on a complete review of the record whereas Defendant's reports are premised upon either great negligence in presenting their experts with the record or deliberate selection of evidence to net a desired result. Either way such conduct cannot be condoned in our legal system to deny someone the benefit of the premiums they paid for coverage.

Rick S. Vasquez #41317
1736 E. Sunshine St., Suite 103
Springfield, Missouri 65804
Phone: (417) 889-7735
Fax: (417) 889-7096
**Attorney for Plaintiff**

14