| | |
|---|---|
| JAMIE S. FLANAGAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 3:17-cv-05060-MDH |
| THE LINCOLN NATIONAL LIFE | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## REPLY SUGGESTIONS IN FURTHER SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff primarily relies on the fact that one of her several treating physicians checked a box indicating that she cannot lift even a piece of paper, which Plaintiff herself admits is not accurate, as well as a vocational advocate who goes beyond his expertise and claims Plaintiff is disabled without conducting any actual vocational analysis. Such reliance, along with the misplaced critiques she launches against Lincoln, demonstrate that she still does not understand that the burden was hers, that Lincoln had no burden to disprove her claim, and that submission of conclusory forms is obviously insufficient. At bottom, Plaintiff ignores the actual medical evidence set forth in the administrative record that explicitly contradicts the conclusions of her primary supporters. Tellingly, Plaintiff does not cite to any medical evidence in her Opposition other than a deficient FCE, nor does she cite to any case law to support her argument. In short, Plaintiff simply failed to meet her burden of proving disability from ***any*** occupation and the various critiques she launches against Lincoln merely serve to reinforce that inevitable conclusion — Lincoln reached the only decision supported by all the evidence.

### I. Plaintiff Misinterprets the Burden of Proof.

As Lincoln detailed in its initial Supporting Suggestions (Dkt. No. 33 at pp. 30-31), consistent with Eighth Circuit law and the Group Policy, Plaintiff bears the burden of proving

total disability. Although Plaintiff admits this in her Opposition, (Dkt. No. 39 at p. 7), she then proceeds to argue as if Lincoln had a burden to disprove her claim. Plaintiff is wrong. Lincoln had no burden to prove that she was able to return to work in some capacity, rather, it was, and is, Plaintiff's burden to prove that she is totally disabled from **any** occupation. *See, e.g., Sahulka v. Lucent Technologies, Inc.*, 206 F.3d 763, 769 (8th Cir. 2000) ("when a plan places the burden on the claimant to provide necessary information, the claimant cannot shift the burden of investigation to the plan administrator . . . In such cases, a rule compelling plan administrators to independently investigate and verify the information that claimants submit would add substantial and unnecessary costs to the administration of ERISA plans"); *Torres v. UNUM Life Ins. Co. of America*, 405 F.3d 670, 678 (8th Cir. 2005) (insurer is not required to "articulate a theory" for claimant's inability to perform his or her job, but rather the claimant bears burden of submitting evidence proving disability).

Although not entirely clear, Plaintiff seems to imply that because Lincoln asked Dr. Hopewell to complete several Lincoln forms, that submission of those forms satisfies her burden of proof. Obviously that is not the case. Forms are certainly considered, but they are considered in the context of all of the other evidence in the file. Of course, it is not enough for Plaintiff's treating physician to simply submit half-completed forms with no bases for the opinions set forth therein, particularly when the opinions expressed on those forms conflict with the contemporaneous medical records. *See e.g.*, *Rose v. Cooperative Ben. Adm'rs, Inc.*, 2007 WL 1306457, *9 (E.D. Mo. May 2, 2007) (finding Plaintiff's treating physician's APSD form "internally inconsistent" with contemporaneous records, and thus, not entitled to significant weight); *Young v. Am. Int'l Life Assur. Co. of N.Y.*, 357 F. App'x 464, 469 (3d Cir. 2009) (treating doctor's advocacy statement that plaintiff could not return to work due to risk of heart

attack was "seriously undermined" by doctor's "own [treatment] records" which indicated "normal stress tests and EKGs and no physical abnormalities."); *Drach v. Sun Life Assurance Co. of Canada*, 2016 WL 5417191, *6 (D.N.J. Sept. 28, 2016) citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823-24 (2003) (rejecting Plaintiff's claim that Sun Life "shut its eyes" to treating physician's APS form, because "the conclusions of that [form] were undermined by contemporaneous treatment records").

The first form Lincoln asked Plaintiff to provide, a Physician's Statement, was designed to assist Lincoln in determining Plaintiff's physical and cognitive restrictions and limitations. (AR at 923-925). But Dr. Hopewell declined to complete the full form. (*Id.*). He left the section pertaining to Plaintiff's ability to perform ADLs blank. (*Id.* at 924). He also wrote "unquantifiable" concerning Plaintiff's ability to, among other tasks, sit, stand, walk, and lift. (*Id.*). Perhaps Dr. Hopewell's initial reluctance to complete the forms constituted an acknowledgement that he had no real basis upon which to opine, without conducting any actual functional analysis or evaluation. And as such, his submission certainly provided Lincoln with no basis upon which to conclude that it should weigh his opinions heavily.

The second form Dr. Hopewell completed, an Abilities Form dated April 21, 2015 (AR at 637) checked boxes indicating that Plaintiff could frequently sit, finger, and handle with occasional standing and walking; restrictions entirely consistent with sedentary functioning. The form also contained a lifting restriction of zero pounds. (*Id.*). In her Opposition, Plaintiff claims that Lincoln should have simply accepted Dr. Hopewell's opinion that "Plaintiff could never lift nor carry any weight" (Dkt. 39 at p. 8) as proof that she is incapable of sedentary work, simply because he was "the only physician who gives an opinion who has ever seen Plaintiff." (*Id.*). But again, the ability to see Plaintiff is not of much value if the physician does not base his opinion

3

on any actual evaluation or analysis, particularly when the opinion directly contradicts all of the other evidence in the administrative record. Indeed, Plaintiff herself admits that she can lift at least up to 7 pounds occasionally (Dkt. No. 35 at p. 12; Dkt. No 39 at pp 9-10) and that she can do ADL's that require lifting more than zero pounds, like cooking, showering, and dressing (AR at 71). These admissions alone cast great doubt on the veracity of Dr. Hopewell's form. *See Davis v. Sun Life Assurance Co. of Canada*, 2017 WL 3841630, n.49 (D. Mass. Sept. 1, 2017) (explaining that treating physician's opinion should be afforded less weight on *de novo* review when APS form conflicted with contemporaneous medical records).

That is why, upon receipt of the form, Lincoln reached out to Dr. Hopewell to clarify the zero lifting restriction. Nurse Hartsock called Dr. Hopewell's office on September 2, 2015 and Nurse Cherry indicated that Plaintiff would know how much she could lift (thus demonstrating that Dr. Hopewell's office deferred to Plaintiff's own self-assessment of her capabilities) (AR at 71). Nurse Hartsock called Plaintiff and Plaintiff acknowledged the ability to do ADL's and to travel, which was contrary to the no lifting box Dr. Hopewell had checked. (AR at 71, 83, 278). Thus, contrary to Plaintiff's uncivil accusation that this point is "the most absurd evidence Defendant makes in this case", Lincoln engaged in exactly the type of analysis designed to produce an accurate determination. (Dkt. 39 at p. 11).[1] Plaintiff's meritless critiques are an attempt to distract the Court from her failure to meet her burden.

---

[1] Plaintiff also attacks Lincoln for relying on Dr. Hopewell's "unnamed nurse." (Dkt. No. 39 at p. 12). But Lincoln did no such thing. Nurse Cherry — not unnamed — told Lincoln to speak to Plaintiff directly and that is what Lincoln did. (AR at 71). It was Plaintiff, not Nurse Cherry, who told Lincoln that she had greater than zero lifting capacity in direct contradiction to Dr. Hopewell's Abilities Form.

## II. Traditional Evidentiary Rules Do Not Apply To This Review of a Closed Administrative Record.

Much like Plaintiff confuses the burden of proof, she also incorrectly attempts to muddle traditional rules of evidence with judicial review of an ERISA benefits determination, based on an administrative record. Throughout her Opposition, Plaintiff claims that materials in the administrative record including telephone calls in the claims notes and statements from physicians are "non-evidenced double hearsay" (Dkt. No. 39 at p. 10) and "self-serving hearsay" (*Id.* at p. 12). But these critiques are erroneous in ERISA litigation.

Judicial review of an ERISA benefits determination is not an evidentiary proceeding and the normal Federal Rules of Evidence do not apply. *See e.g.*, *Black v. Long Term Disability Ins.*, 582 F.3d 738, 746, n.3 (7th Cir. 2009) ("The Federal Rules of Evidence, however, do not apply to an ERISA administrator's benefits determination, and we review the entire administrative record, including hearsay evidence relied upon by the administrator."); *Herman v. Hartford Life and Acc. Ins. Co.*, 508 Fed. App'x 923, 928 (11th Cir. 2013) ("[Plaintiff's] hearsay argument is misplaced, as the district court's review was limited only by what was available to the plan administrator, not by the Federal Rules of Evidence."); *Tran v. United of Omaha Life Ins. Co.*, 780 F. Supp. 2d 965, 972 (D. Neb. 2011) ("an ERISA plan administrator or fiduciary is not a court of law and is not bound by the rules of evidence") (internal citation omitted); *Malenski v. Standard Ins. Co.*, 2012 WL 4485331, at *1 (E.D. Ok. Sept. 27, 2012) ("the Court reviews the administrative record actually considered by the plan administrator, including exhibits ordinarily excluded under the Federal Rules of Evidence.") (internal citations omitted). To conclude otherwise would potentially exclude the entire administrative record from judicial review. *Rabuck v. Hartford Life & Acc. Ins. Co.*, 522 F. Supp. 2d 844, 879 (W.D. Mich. 2007) ("Hartford was not bound by the Federal Rules of Evidence in making its decision whether to grant or deny

5

plaintiff's appeal. In a sense, its entire file is hearsay, although some documents may fall under exceptions to the hearsay rule. Thus, the court will not disregard this evidence on the basis that it was hearsay."); *Null v. Cmty. Hosp. Ass'n*, 379 F. App'x 704, 706 (10th Cir. 2010) ("[Plaintiff] cannot prevail on her hearsay argument" pertaining to a reported telephone conversation between reviewing physician and treating physician because the rules of evidence did not apply in the ERISA benefits context).

In sum, Plaintiff's hearsay arguments fail. Plaintiff, or her counsel, had the right to request the claims file at any time after Lincoln's initial determination. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2560.503-1 (requiring administrators to produce all relevant documents upon request, following an adverse benefits determination). And they had the right to ask Lincoln any questions about the challenged phone conversations, or submit additional information. But they did not do so.

### III. The FCE Plaintiff Relies On Did Not, By Its Terms, Accurately Measure Plaintiff's Maximum Capabilities, But Even It Supports Sedentary Capacity.

Plaintiff devotes a significant portion of her Opposition to a talismanic reliance on the FCE her counsel submitted to Lincoln. (AR at 786-804). But similar to Dr. Hopewell's unsupported, conclusory opinions, Plaintiff's reliance on the FCE is also form over substance.

The mere existence of a FCE does not mean that it is an accurate assessment of a claimant's maximum functional capacity. And certainly, this one provided no such assessment. To the contrary, this FCE essentially constituted a recitation of Plaintiff's own subjective limitations rather than an objective measurement of her true functional capacity. Ms. Beisswenger openly adopted Plaintiff's subjective complaints without objective measurement and actually failed to complete the full FCE.

6

As Dr. Karande remarked in his independent report, the FCE was "incomplete as isometric strength testing was not performed due to therapist discretion, secondary to multiple diagnoses and lifting restrictions. Furthermore, there is no quantification of muscle strength or range of motion. Thus, this test would have to be interpreted with caution." (AR at 748). Not only did Ms. Beisswenger not perform the aforementioned tests, but she also admitted that Plaintiff "showed a tendency toward the exaggeration of the degree of task difficulty." (AR at 802).

This finding alone provides good reasons to question the validity of Plaintiff's subjective complaints. But rather than conduct any actual testing in an effort to reconcile these discrepancies, Ms. Beisswenger simply accepted Plaintiff's stated 7 pound lifting restriction as fact. Plaintiff told Ms. Beisswenger that she had "7 lb. weight restrictions after her back surgery. She states it has not been removed and she adheres to it" (sic). (AR at 791). However, the administrative record is devoid of any evidence that any physician actually set such a restriction or continued it after her recovery from surgery, but for Plaintiff's own say so.[2] Since Ms. Beisswenger simply accepted Plaintiff's word regarding this restriction, she never tested Plaintiff's lifting capabilities beyond 7 pounds. Rather, she tested occasional lifting up to 7 pounds and did not test frequent lifting at all. (AR at 788). The FCE states,

> **Occasional Material Handling:** 7 lb., Tested only to (stated) permanent restrictions
> **Frequent Material Handling:** Not Tested. Frequent Lifting is Not Recommended

(*Id.* at 788).

---

[2] Even if this 7 pound lifting restriction was supported, which it is not, Plaintiff's statement that she was under this restriction since her April, 2011 back surgery means that she was able to work as a nurse (medium strength) for more than two years with such a limitation.

Moreover, other inconsistencies from the FCE provide additional reasons to question the conclusions set forth therein. For instance, Plaintiff admits that she had recently gone fishing. (AR at 792). How could she bait and hold a fishing pole, let alone reel in a fish, if she cannot do any frequent lifting? On the other hand, Plaintiff told Ms. Beisswenger that her pain restricted her to "short necessary journeys under 30 minutes." (AR at 792). But Plaintiff was able to travel from Missouri to Texas and Florida. (AR at 83, 278). Similarly, Ms. Beisswenger made blanket statements that Plaintiff is limited to sitting 20 minutes and standing 10 minutes at a time. But she never explains how often in an 8-hour workday Plaintiff could sit or stand. Nor does she explain how she reached such conclusions other than, again, accepting Plaintiff's own self-assessments, which were inconsistent with other evidence.

Finally, Plaintiff places much emphasis on the fact that Dr. Thomas deferred to the FCE. (Dkt. No. 39 at p. 10). As the only effort to assess functionality that Plaintiff submitted, it is understandable that he might do so. But that does not make the FCE any more reliable or any less subject to the numerous problems with it as discussed above and in Dr. Karande's report. More importantly, as is evident from Dr. Thomas's report, and as Lincoln has explained, the FCE findings themselves (as opposed to the unsupported "sub-sedentary" conclusion set forth therein) are entirely consistent with sedentary functionality. (Dkt. No. 33 at pp. 38-41; Dkt. No. 38 at pp. 6-9). As such, Plaintiff's reliance on the FCE is misplaced and does not support her unsuccessful efforts to meet her burden.

**IV. Plaintiff's Repetitive Critiques of Lincoln's Vocational Reviewers Are Misplaced and Adopt The Wrong Definition of Sedentary Work.**

In critiquing Lincoln's vocational reviewers for identifying several sedentary occupations that Plaintiff could perform based on her physical restrictions and limitations as set forth by independent physicians, Plaintiff relies on an incorrect definition of sedentary work. Plaintiff

8

states that sedentary work is defined as "lifting, carrying, pushing, pulling 10 pounds occasionally, may involve standing and or walking for brief periods of time." (Dkt. No. 39 at p. 9). But the correct definition, as set forth in the eDOT descriptions of Call Center Nurse and Nurse Consultant (Exh. B to Dkt. No. 33) is that sedentary work involves "[e]xerting up to 10 pounds of force occasionally **or** a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time." (emphasis added).

Nowhere in Plaintiff's Opposition does she acknowledge that vital "or". This is because there is no dispute that Plaintiff can lift at least 7 pounds occasionally, which is consistent with lifting a negligible amount frequently. It is actually widely acknowledged throughout the record that Plaintiff can lift a negligible amount of weight frequently based on her admission that she can cook, clean, travel, bathe herself, dress herself, and fish. Thus, while the weight of the evidence clearly shows that Plaintiff can lift at least 10 pounds occasionally, the minor difference between 7 pounds and 10 pounds is immaterial, because Plaintiff's capacity to lift negligible amounts of weight frequently meets the standard for sedentary work capacity.

Plaintiff also relies on that mistaken definition of sedentary work to again criticize Lincoln's vocational reviewers for not crossing over into the field of medical expertise. But as Lincoln has already discussed in its initial Supporting Suggestions (Dkt. No. 33 at pp. 42-44) and its opposition (Dkt. No. 39 at pp. 9-13), vocational reviewers are not physicians and thus cannot opine on medical issues such as appropriate medical restrictions and limitations. Rather, they compare occupational duties with stated restrictions and limitations from physicians, **not** with restrictions and limitations the vocational reviewer determines him or herself. So despite the fact that Lincoln vocational professionals have access to the entire file, any critique about the

9

documents the vocational reviewers relied on is invalid, because vocational reviewers do not reach independent medical conclusions.

Finally, again, Ms. Thomas used Dr. Thomas' restrictions and limitations, which Dr. Thomas adopted from the FCE. Thus, Ms. Thomas assumed a functional capacity that Plaintiff admits that she has. Accordingly, Plaintiff's critiques are misplaced. Lincoln's vocational consultants properly performed their roles in comparing assumed physical restrictions and limitations with the duties of several sedentary occupations, which Mr. Eldred failed to do. Lincoln is entitled to judgment.

## V. Conclusion

For the reasons detailed above and in Lincoln's initial Supporting Suggestions and Opposition, the Court should grant Lincoln's Motion for Summary Judgment and deny Plaintiff's Motion.

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

/s/ AnnRene S. Braun
AnnRene S. Braun, MO #67962
Byrne J. Decker (pro hac vice)
Steven J. Silver (pro hac vice)
4520 Main Street, Suite 400
Kansas City, MO 64111
Telephone: 816.471.1301
Facsimile: 816.471.1303
annrene.braun@ogletree.com

**ATTORNEYS FOR DEFENDANT**

10

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 5th day of July, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Rick S. Vasquez      MO #41317
LAW OFFICES OF RICK S. VASQUEZ
1736 E. Sunshine Street, Suite 103
Springfield, MO 65804
(417) 889-7735
(417) 889-7096 (*Facsimile*)
vasquezlaw@sbcglobal.net

**ATTORNEY FOR PLAINTIFF**

/s/ AnnRene S. Braun
**ATTORNEY FOR DEFENDANT**

34688289.1