IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMIE S. FLANAGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-cv-05060-MDH |
| | ) | |
| THE LINCOLN NATIONAL LIFE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are the parties' cross motions for summary judgment. (Docs. 32 and 34). Plaintiff claims that she was entitled to long term disability benefits under a group employment long term disability policy issued by Defendant to Plaintiff's former employer, but was denied those benefits. Defendant denies the claim, and argues Plaintiff has not met her burden to establish that she is totally disabled as defined in the policy at issue. For the reasons set forth herein, the Court **DENIES** Lincoln's motion for summary judgment (Doc. 32) and **GRANTS** Flanagan's motion for summary judgment (Doc. 34).

## BACKGROUND

Plaintiff was employed by Lester E. Cox Medical Center as a nurse practitioner beginning on March 1, 2010 and ending on August 25, 2013. Plaintiff was insured under a group policy of insurance for long term disability through her employment. Cox Medical established and maintained the employee welfare benefit plan that included long term disability coverage. Cox Medical funded its plan, in part, by a Group Long-Term Disability Insurance Policy that Lincoln issued to Cox Medical. The policy's certificate of coverage states that Lincoln has sole

1

discretionary authority to determine eligibility and to administer claims in accord with its interpretation of policy provisions on the Plan Administrator's behalf.

When Plaintiff left work in August 2013, she applied for long term disability benefits through Defendant. As part of her application she submitted an employee statement indicating she could not work, along with a Long-Term Disability Claim Physician's Statement completed on November 17, 2013, by Dr. Hopewell. Dr. Hopewell stated under "objective findings" that Plaintiff has normal physical exam, x-rays, CT and MRI, spondylolisthesis, failed fusion, and nerve root scarring. Dr. Hopewell stated he saw Plaintiff every three months and that her symptoms were constant since August 2010. Dr. Hopewell's statement also indicates he believed she was first unable to work on January 1, 2013; that she had a failed lumbar fusion that occurred on April 1, 2011; and that she would receive no benefit from medical rehabilitation or therapy. Dr. Hopewell also stated the placement of a spinal cord stimulator had failed and that Plaintiff would be unable to work without unlimited ability to rest and take breaks. On January 24, 2013, Dr. Hopewell's records also note Plaintiff continued to have cervical pain and a recent MRI showed root scarring.

Defendant states Dr. Hopewell's Long-Term Disability Claim Physician's Statement is incomplete because he failed to complete the section regarding Plaintiff's Activities of Daily Living ("ADLs"). This section has been left blank. The section asks whether Plaintiff has lost the ability to safely and completely perform ADLs without another person's active hands on help, including, bathing, dressing, toileting, transferring, continence, and eating. While Dr. Hopewell failed to indicate whether Plaintiff has lost the ability to do these things, there is nothing in the record to indicate she has, nor does she claim to have, lost the ability to complete these basic daily tasks.

On April 22, 2014, Nancy Beisswenger, OTR/L conducted a functional capacity evaluation and concluded Plaintiff was able to do less than sedentary work. She found Plaintiff could sit for 20 minutes at a time, stand for 10 minutes and walk occasionally. Plaintiff could lift 7 pounds occasionally, with no frequent lifting. Defendant argues there is no basis for this opinion.

On April 12, 2014, the Social Security Administration found Plaintiff to be permanently and totally disabled and approved her for SSDI benefits.[1] Social Security found Plaintiff to be disabled as of August 22, 2013, when she left employment.

Defendant denied Plaintiff's initial claim for benefits on December 14, 2013. On May 6, 2014, Plaintiff appealed the denial submitting Ms. Beiswenger's report and the Social Security Decision. Defendant in turn submitted the file to Dr. Karande, board certified in physical medicine and rehabilitation, for review. After receiving Dr. Karande's June 9, 2014 report, Defendant informed Plaintiff that they had again reviewed her claim and decided disability benefits during the 24 month own occupation period were appropriate and issued a favorable decision on June 16, 2014. Dr. Karande's report was based on a review of documents, including Dr. Hopewell's records from October 2010 through October 2013, and the physician statement dated November 17, 2013. Dr. Karande's limitations were consistent with sedentary work, which Defendant found entitled Plaintiff to benefits which ran from November 23, 2014 to November 24, 2015 for the own occupation period.

Approximately five months later, on November 24, 2014, Defendant notified Plaintiff it needed proof of continued disability and requested medical records and additional documentation. On March 2, 2015, Defendant began investigating whether Plaintiff could meet the standard for

---

[1] Defendant states that the SSDI award is not binding on Lincoln because ERISA claims and SSDI determinations are two vastly different types of benefit programs.

disability after the "own occupation" period of 2 years. In response, Dr. Hopewell[2] completed Defendant's Abilities Form on April 21, 2015, stating Plaintiff could never lift or carry any weight, could sit for 20 minute durations and could stand and walk occasionally.

Defendant obtained a transferable skills analysis from Stacey Nidositko, MS, CRC, a vocational rehabilitation counselor. Nidositko's September 23, 2015, report indicates she reviewed a form completed by Plaintiff, and Dr. Karande's peer review dated June 9, 2014. The report does not indicate any review of the treating provider's medical records. Based on the review of Dr. Karande's report, Nidositko found that Plaintiff can perform work as a nurse consultant and as a call center nurse.

On September 28, 2015, six days after Nidositko's report was issued, Defendant denied Plaintiff's benefits beyond November 24, 2015 – the date the own occupation period changed to any occupation. During the first two years of disability, Plaintiff must prove she cannot perform her own occupation to be eligible. The letter states, in part,

> TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:
>
> 1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.
> 2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.

Defendant found Plaintiff could perform sedentary work, which is defined as:

> Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are only required occasionally (1-33%) and if all other sedentary criteria are met. Sedentary work may require exertion up to 10 lbs. occasionally and a negligible degree of exertion on a frequent (34 66%) or constant (67-100%) basis.

---

[2] Dr. Hopewell is the only physician with medical records before the Court who has physically examined and treated Plaintiff.

Defendant's letter informed Plaintiff of the following determination:

> In summary, it is our determination that based upon your age, education, training, past work experience and your current abilities, that you are not prevented from performing work in other occupations, even if you can no longer perform your Own Occupation. Therefore, you no longer meet the definition of disability in this policy and benefits will be denied as of 11/24/2015. Your payment for benefits through 11/24/2015 is being sent under separate cover.

Plaintiff appealed this determination. On March 9, 2016, Defendant obtained a peer file review from Dr. Thomas, board certified occupational medicine. Dr. Thomas reviewed Dr. Hopewell's medical records and file and stated that he agreed with the Abilities Form, with the exception of the lifting restriction. Dr. Thomas found that Plaintiff could lift up to 7 pounds. However, Dr. Thomas found that Plaintiff's function is less than sedentary work and was in agreement with Dr. Hopewell that she would be unable to work.

Defendant then obtained a second vocational expert report from Brandy Thomas, M.A., that agreed with the analysis provided by Nidositko, that Plaintiff could perform sedentary occupations, including the jobs of nurse consultant and call center nurse. On April 26, 2016, Defendant denied Plaintiff's appeal reciting portions of Dr. Hopewell's report and Dr. Thomas's report, but leaving out other findings in the reports. The denial states Plaintiff can perform sedentary work, which is defined as lifting up to 10 pounds occasionally. Plaintiff points out that the records, including Defendant's own reviewing medical expert Dr. Thomas, and the FCE upon which he relied, limited Plaintiff to lifting 7 pounds or less than sedentary work.

On October 18, 2016, Plaintiff filed a second appeal to Defendant. A vocational expert, Phil Eldred, conducted an evaluation that was submitted with the appeal. Mr. Eldred opined that the report of Beisswenger, and the FCE, gave Plaintiff restrictions at less than sedentary work; that Dr. Karande noted Plaintiff to be at a sedentary work level; that Dr. Hopewell reported less than sedentary work; and that Dr. Thomas gave restrictions at less than sedentary work which rendered

5

Plaintiff unemployable and unable to work in any occupation. Mr. Eldred ultimately found Plaintiff to be unable to work at a sedentary level, unable to return to her previous work, and that she has no transferable job skills for less than sedentary work.

Defendant then requested additional medical evidence. On February 6, 2017, Defendant denied Plaintiff's claim for benefits.[3] Defendant stated Plaintiff's own occupation period ended on November 24, 2015, and therefore disability beyond that date was evaluated as to whether Plaintiff could perform the main duties of any occupation for which Plaintiff was qualified. Defendant stated it reviewed the medical documentation, including Dr. Karande's report, and referred Plaintiff to its prior letters dated September 28, 2015 and April 26, 2016. Plaintiff then filed the current lawsuit.

**STANDARD**

Both parties have filed motions for summary judgment asking the Court to rule on the undisputed material facts as a matter of law. Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248.

---

[3] During this appeal an internal medical records review was conducted by a nurse who concluded there was no clinical findings in the file demonstrating functional limitations to support Plaintiff is unable to perform duties of any sedentary occupation.

The case presents the Court with issues regarding the review of the denial of benefits under ERISA. Here, the Court reviews this ERISA benefits case for an abuse of discretion, because the Defendant reserved the sole discretionary authority to determine eligibility and administer claims under the plan. See *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 987 (8th Cir. 2014); and *Cash v. Wal-Mart Grp. Health Plan,* 107 F.3d 637, 640–41 (8th Cir. 1997) (internal citation omitted). Under this standard of review, the court must uphold defendant's decision "so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." *Hampton v. Reliance Standard Life Ins. Co.,* 769 F.3d 597, 600 (8th Cir. 2014) (internal citations omitted). "A decision is reasonable 'if a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.'" *Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Employees*, 812 F.3d 628, 634 (8th Cir. 2016) (internal citation omitted); see also *Carlson v. Standard Ins. Co.*, 920 F. Supp. 2d 1028, 1032 (W.D. Mo. 2013) ("The deferential standard does not allow a reviewing court to reject an administrator's discretionary decision simply because the court disagrees. The proper inquiry is whether the plan administrator's decision was reasonable; i.e. supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal citations omitted).

In addition, the Court must also weigh the Defendant's inherent conflict of interest as a plan administrator in both administering the plan and paying benefits. Defendant, as the administrator, owes a fiduciary duty to the employee claiming benefits under the plan, and also has a corporate interest in avoiding payment of claims. See *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 117, 128 S. Ct. 2343, 2351, 171 L. Ed. 2d 299 (2008). As such, this inherent conflict is considered as a factor in the Court's review, but does not change the abuse of discretion review.

See *Id*. The parties agree Plaintiff bears the burden of demonstrating her entitlement to benefits under the Plan.

**DISCUSSION**

Here, Plaintiff has the burden to establish that she is disabled after the own occupation period and that Defendant's determination that she was not disabled under "any occupation" was an abuse of its discretion and unreasonable. Plaintiff must establish that due to an injury or sickness she is unable to perform each of the main duties of any occupation which her training, education, or experience will reasonably allow. Plaintiff argues the medical opinions of disability in the record find Plaintiff is unable to perform sedentary work and therefore she should be entitled to benefits.

The physician medical records before the Court come from Dr. Hopewell, Dr. Karande, and Dr. Thomas. Dr. Hopewell, Plaintiff's treating neurologist, opined that Plaintiff could not perform sedentary work. Dr. Hopewell stated Plaintiff could not work "due to unlimited ability to rest/take breaks," and that she was "at maximum improvement." Dr. Hopewell further stated Plaintiff could never lift or carry any weight and put further restrictions on her ability to stand, walk, and sit at below the definition of a sedentary work level.

Dr. Karande, who was hired by Defendant to initially review Plaintiff's claim, rendered an opinion on June 9, 2014, that Plaintiff could perform sedentary work. This opinion was rendered prior to Dr. Hopewell's April 21, 2015 opinion providing specific restrictions for Plaintiff. Defendant subsequently hired Dr. Thomas, after Plaintiff's second appeal, to review Plaintiff's claim. Dr. Thomas found Plaintiff unable to perform work at a sedentary work level. Dr. Thomas rendered this opinion on March 9, 2016. Dr. Thomas agreed with Dr. Hopewell's opinion, other than he believed Plaintiff could lift up to 7 pounds (as opposed to no lifting), which is still less

8

than sedentary work. Dr. Thomas found the FCE test to be valid, and further stated "there is no medical evaluation to the contrary," finding Plaintiff's condition to be "chronic and degenerative" with "minimal improvement" anticipated. Dr. Thomas's opinion supports benefits under the policy. Finally, a functional capacity evaluation completed by Nancy Beisswenger, an occupational therapist, found Plaintiff's work level was "less than sedentary."

The Court finds Defendant's decision to deny benefits is unreasonable. Here, Plaintiff's treating physician and the FCE found Plaintiff's work level at less than sedentary. Then Defendant's own expert, Dr. Thomas, also opined that Plaintiff could not perform sedentary work. Contrary to this medical evidence and opinion of record, Defendant relied on a prior opinion from Dr. Karande and selectively noted only portions of the vocational evaluations which supported its denial of benefits. Further, even after receiving Dr. Thomas' opinion, that was consistent with Plaintiff's own treating physician, Defendant decided to rely instead on the non-physician vocation report of Brandy Thomas, that was allegedly based on a review of Nidositko's and Dr. Thomas's opinions. Brandy Thomas did not review Dr. Hopewell's records, or the FCE, but rendered a report finding Plaintiff could perform sedentary work which contradicted the opinions in the record upon which she claims she relied. Her opinion was also contradicted by Phil Eldred, whose vocational evaluation concluded, like Dr. Hopwell and Dr. Thomas, that Plaintiff was unable to work in any occupation and therefore should be entitled to benefits.

The Court finds Defendant's denial of benefits, based on the record as a whole, is unreasonable. Considering an inherent conflict of interest as a factor, Defendant chose to pick only opinions that supported denial of Plaintiff's benefits, while ignoring treating physician records and the medical opinion of one of its own experts that found Plaintiff is unable to perform work. The Court finds no reasonably objective evaluation of the medical record supports denial

9

of benefits.  The only examining and treating physician, and a physician selected by Defendant, to review Plaintiff's records, found Plaintiff to be disabled and unable to perform work.  The only evidence supporting denial of benefits is the opinion of Dr. Karande, who performed a file review in June 2014, prior to Dr. Hopewell providing his opinion on specific restrictions in April 2015, and the non-physician opinions who failed to fully review all the medical records, never physically examined Plaintiff, and whose opinions contradict the opinion of two licensed and fully qualified physicians who found her to be unable to work.

## CONCLUSION

For the reasons set forth herein, and after weighing Defendant's conflict of interest as a factor, the Court finds Defendant abused its discretion in denying Plaintiff's appeal for benefits.  Wherefore, the Court **DENIES** Defendant's motion for summary judgment and **GRANTS** Plaintiff's motion for summary judgment.   Plaintiff is entitled to judgment as a matter of law on this claim and shall be awarded such sums that are fair and reasonable under the effective policy of insurance, including back pay to the date the benefits were terminated as of November 24, 2015, and pay from the entry of Judgment herein forward.  Plaintiff is also entitled to interest on the unpaid benefits from the date each payment became due, reasonable attorneys' fees and any costs expended.

**IT IS SO ORDERED.**

DATED:	December 6, 2018

                                              _/s/ Douglas Harpool_
                                              **DOUGLAS HARPOOL**
                                              **UNITED STATES DISTRICT JUDGE**